JESSICA STEBBINS BINA
(BAR NO. 248485)
jessica.stebbinsbina@lw.com
ELYSE M. GREENWALD
(BAR NO. 268050)
elyse.greenwald@lw.com
LATHAM & WATKINS LLP
10250 Constellation Boulevard
Suite 1100
Los Angeles, CA 90067
Tel: 424.653.5500
Fax: 424.653.5501

*Attorneys for Plaintiffs and Counterdefendants*

[Additional Counsel Listed on Next Page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC., | CASE NO. 2:20-cv-08819 CBM-AS |
| Plaintiffs, | **DISCOVERY MATTER** |
| v. | **DECLARATION OF NICHOLAS J. BOYLE** |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., | |
| Defendant. | Judge: Alka Sagar |
| | Discovery Cutoff: November 4, 2022 |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., | Pretrial-Conference: August 1, 2023 Trial: October 3, 2023 |
| Counterclaimant, | **PUBLIC REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| v. | |
| COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC., | |
| Counterdefendants. | |

BOYLE DECL. ISO COSTAR'S STATEMENT OF POSITION REGARDING CREXI'S MOTION TO COMPEL DISCOVERY REGARDING COSTAR'S SETTLEMENT WITH ARCGATE
2:20-cv-08819-CBM-AS

BELINDA S LEE (BAR NO. 199635)
belinda.lee@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: 415.391.0600

NICHOLAS J. BOYLE*
nicholas.boyle@lw.com
SARAH A. TOMKOWIAK*
sarah.tomkowiak@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201

*Attorneys for Plaintiffs and Counterdefendants*

*\* Admitted pro hac vice*

---

BOYLE DECL. ISO COSTAR'S STATEMENT OF POSITION REGARDING CREXI'S MOTION TO COMPEL
DISCOVERY REGARDING COSTAR'S SETTLEMENT WITH ARCGATE
2:20-cv-08819-CBM-AS

I, NICHOLAS J. BOYLE, declare as follows:

1.      I am an attorney licensed to practice law in the State of New York and the District of Columbia and am a partner at Latham & Watkins, LLP, located at 555 Eleventh Street, NW Suite 1000 Washington, D.C. 20004, and counsel for Plaintiff and Counterdefendants CoStar Group, Inc., and CoStar Realty Information, Inc. ("CoStar") in the above-captioned case against Commercial Real Estate Exchange, Inc. ("CREXi").  I have personal knowledge of the facts set forth below, and if called upon, can and will testify competently thereto.

2.      I am submitting this declaration in connection with and in support of CoStar's Statement of Position in Opposition to CREXi's Motion to Compel Arcgate Documents.

**CREXi's Interrogatory Responses**

3.      Attached as **Exhibit A** is a true and correct copy of CREXi's Supplemental Responses to CoStar's Interrogatories Nos. 2, 5, and 12 dated March 9, 2022, which contains information CREXi has designated "Highly Confidential – Attorneys' Eyes Only" under the Stipulated Protective Order, ECF No. 105.

4.      Attached as **Exhibit B** is a true and correct copy of a June 10, 2022 letter from Christine M. Zaleski, counsel for CREXi, to Latham & Watkins LLP attaching an amended Appendix C to CREXi's March 9, 2022 Supplemental Response to Interrogatory No. 12, which CREXi has designated "Confidential" under the Stipulated Protective Order, ECF No. 105.

**The Parties' Dispute Regarding Discovery From CREXi's BPOs**

5.      On January 27, 2022, my colleague Sarah Tomkowiak, counsel for CoStar, sent a letter to Elizabeth McCloskey and Nicholas Goldberg, counsel for CREXi, memorializing the parties' January 13, 2021 meet and confer on CoStar's First Set of Interrogatories dated October 8, 2021.  The letter asks CREXi to explain why CREXi failed to ask Arcgate and its other BPOs for information responsive to Interrogatory Nos. 2, 3, and 13.  CoStar does not attach a copy of this letter because

1

BOYLE DECL. ISO COSTAR'S STATEMENT OF POSITION REGARDING CREXI'S MOTION TO COMPEL ARCGATE DOCUMENTS
2:20-cv-08819-CBM-AS

it references interrogatory responses designated by CREXi as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the Stipulated Protective Order, ECF No. 105.

6.     On March 22, 2022, my colleague Jackie Carney, counsel for CoStar, sent an email to counsel for CREXi memorializing the parties' March 21, 2022 meet and confer on CoStar's First Set of Interrogatories dated October 8, 2021, during which CoStar again asked CREXi to produce information responsive to CoStar's Interrogatories Nos. 2, 3, and 13 in its possession, custody, or control, including from CREXi's BPOs.  CoStar does not attach a copy of this email because it references interrogatory responses designated by CREXi as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the Stipulated Protective Order, ECF No. 105.

7.     CREXi continued to take the position that it would not ask its third-party agents for information in CREXi's control responsive to CoStar's discovery requests.

8.     On April 29, 2022, my colleague Sarah Tomkowiak sent a letter to Max Alderman, counsel for CREXi, regarding, *inter alia*, CREXi's responses to CoStar's Interrogatories 2, 3, and 13.  In the letter, CoStar stated that it would seek relief from the Court if CREXi did not agree to provide responsive information from its BPOs. CoStar does not attach a copy of this letter because it references interrogatory responses designated by CREXi as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the Stipulated Protective Order, ECF No. 105.

9.     CREXi did not agree to send correspondence to its BPOs asking for responsive information to CoStar's Interrogatory Nos. 2, 3, 13, and 14 and Request for Production No. 5 until June 10, 2022, after the parties met and conferred and exchanged multiple rounds of emails regarding CoStar's discovery requests.  CREXi subsequently refused to promptly produce its correspondence to the BPOs or any of the BPOs' responses.  After CoStar again stated that it would move to compel, CREXi made a small production of documents containing its correspondence to its

BPOs and their responses, which contained strikingly similar, and in many instances, verbatim, language and American legal jargon and uniformly denied that the BPOs had accessed or used CoStar's websites.   A true and correct copy of the email exchange between counsel between May 17, 2022 and August 5, 2022 is attached hereto as **Exhibit C**.  CoStar does not quote or attach copies of the BPOs' responses because CREXi has designated these as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the Stipulated Protective Order, ECF No. 105.

**The Ten-X Litigation Against CREXi's Co-Founders**

10.      Attached as **Exhibit D** is a true and correct copy of the complaint filed on April 12, 2016 by Ten-X against CREXi and its co-founder and CEO Michael DeGiorgio and co-founder Luke Morris in *Ten-X, LLC v. Commercial Real Estate Exchange, Inc.*, No. BC616600 (Cal. Super. Ct. Apr. 12, 2016).

11.      Attached as **Exhibit E** is a true and correct copy of the October 21, 2016 order granting a preliminary injunction against CREXi in *Ten-X, LLC v. Commercial Real Estate Exchange, Inc.*, No. BC616600 (Cal. Super. Ct. Apr. 12, 2016).

12.      Attached as **Exhibit F** is a true and correct copy of the May 5, 2017 Settlement Agreement entered into by the parties in *Ten-X, LLC v. Commercial Real Estate Exchange, Inc.*, No. BC616600 (Cal. Super. Ct. Apr. 12, 2016), including Mr. DeGiorgio's public apology, as Attachment A thereto.

13.      Attached as **Exhibit G** is a true and correct copy of the declaration dated May 12, 2017 submitted by Mr. DeGiorgio in support of the settlement in *Ten-X, LLC v. Commercial Real Estate Exchange, Inc.*, No. BC616600 (Cal. Super. Ct. Apr. 12, 2016).

**The Xceligent Litigation**

14.      In 2016, CoStar sued Xceligent, Inc. ("Xceligent") in *CoStar Group, Inc., et al. v. Xceligent, Inc.*, 4:16-cv-01288 (W.D. Mo.) for copyright infringement and unfair competition and obtained a permanent injunction and a $500 million judgment.  A true and correct copy of the December 3, 2019 judgment (ECF No. 204

3

in *CoStar Group, Inc., et al. v. Xceligent, Inc.*, 4:16-cv-01288 (W.D. Mo.)) is attached hereto as **Exhibit H.**

**The Leon Capital Litigation**

15.    On August 20, 2021, CoStar sued its former subscriber Leon Capital after it learned that Leon Capital—which invests in and promotes CREXi and whose CEO and founder is also a co-founder of CREXi—was accessing CoStar's database without authorization, using passwords that it had no right to use, and exporting records *en masse*.  A true and correct copy of the Complaint filed by CoStar (ECF No. 1 in *CoStar Group, Inc. et al. v. Leon Capital Group, LLC*, 21-cv-02227 (D.D.C.)) is attached hereto as **Exhibit I.**

16.    On June 7, 2022, the U.S. District Court for the District of Columbia denied Leon Capital's motion to dismiss on four of CoStar's five claims, including a claim for violating the Computer Fraud and Abuse Act.  A true and correct copy of the Court's Order on Leon Capital's motion to dismiss and memorandum opinion (ECF Nos. 18, 19 in *CoStar Group, Inc. et al. v. Leon Capital Group, LLC*, 21-cv-02227 (D.D.C.)) is attached hereto as **Exhibit J.**

17.    In the course of preparing to amend its complaint**,** CoStar discovered that, as recently as July 2022, Leon Capital continued to access CoStar's products without authorization, until CoStar blocked access by the offending Leon Capital employees.  Attached as **Exhibit K** is a true and correct copy of CoStar's proposed Amended Complaint (ECF No. 21-4 in *CoStar Group, Inc. et al. v. Leon Capital Group, LLC*, 21-cv-02227 (D.D.C.), which contains CoStar's allegations regarding this unauthorized access at ¶¶ 72-74.

**Arcgate's Production of Arcgate-CREXi Communications**

18.    Attached as **Exhibit L** is a true and correct copy of a January 4, 2020 email from Arcgate's CREXi work group to Ashley Kobovitch and Forrest Kobayashi, copying Lawson Dees, produced by CoStar at Bates No. CoStar00037004.

19.     Attached as **Exhibit M** is a true and correct copy of an email chain dated November 28, 2019 to January 2, 2020 between Forrest Kobayashi and Arcgate's CREXi work group, copying Lawson Dees, produced by CoStar at Bates No. CoStar00036876.

20.     Attached as **Exhibit N** is a true and correct copy of a January 8, 2020 email from Forrest Kobayashi to Arcgate's CREXi work group, copying Lawson Dees, produced by CoStar at Bates No. CoStar00037485.

21.     Attached as **Exhibit O** is a true and correct copy of a May 14, 2020 email from James Burton to Arcgate's CREXi work group produced by CoStar at Bates No. CoStar00046462.

22.     Attached as **Exhibit P** is a true and correct copy of an email chain dated May 15 to May 22, 2020 between James Burton and Arcgate's CREXi work group produced by CoStar at Bates No. CoStar00046597.

23.     Attached as **Exhibit Q** is a true and correct copy of an April 19, 2020 email chain between Lawson Dees and Arcgate's CREXi work group produced by CoStar at Bates No. CoStar00046209.

**CREXi and the Arcgate Litigation**

24.     CREXi served its initial responses and objections to CoStar's First Set of Requests for Production on November 23, 2021, which reference the Arcgate lawsuit in response to multiple requests (*see, e.g.* RFP No. 54).  Attached as **Exhibit R** is a true and correct copy of CREXi's Responses and Objections to CoStar's First Set of Requests for Production dated November 23, 2021.

25.     Attached as **Exhibit S** is a true and correct copy of an email chain dated December 2, 2021 to November 29, 2021 from Elizabeth McCloskey to counsel for CoStar.  In the first email dated November 29, 2021, Ms. McCloskey makes reference to the "litigation instituted by CoStar in India" with Arcgate.

26.     In this email dated November 29, 2021, CREXi also demanded that "CoStar immediately produce to CREXi" the communications with CREXi that

Arcgate provided to CoStar pursuant to the settlement, and purported to assert a "confidentiality" interest in the documents.  *See* Ex. S.

27.     At CREXi's request, on April 1, 2022, CoStar produced to CREXi the documents it received from Arcgate as part of the CoStar-Arcgate settlement.  To the best of my knowledge, CoStar still has not received any designations from CREXi's counsel regarding these documents under the Protective Order in this case.

28.     CREXi has not produced its contemporaneous communications with Arcgate about Arcgate's work for CREXi, including the emails referenced above, or communications that would confirm (or refute) the testimony provided by Arcgate's CEO Kunal Bagla in support of the Consent Terms and Permanent Injunction, even though these communications are responsive to multiple of CoStar's Requests for Production.

29.     On February 17, 2022, I received a letter from Warren Braunig regarding the Arcgate settlement.  A true and correct copy of that letter is attached hereto as **Exhibit T**.

30.     On February 2, 2022, CREXi served CoStar with its Third Set of Requests for Production on CoStar.  A true and correct copy of CREXi's Third Set of Requests for Production is attached hereto as **Exhibit U**.

31.     On March 4, 2022, CoStar served CREXi with its Responses and Objections to CREXi's Third Set of Requests for Production.  A true and correct copy of CoStar's Responses and Objections dated March 4, 2022 is attached hereto as **Exhibit V**.

**Other Materials**

32.     A true and correct copy of a public record, identified through an Internet search, associating CREXi's counsel Elizabeth McCloskey with the U.S. cell phone number (917) 291–1330 is attached hereto as **Exhibit W**.

33.     Attached as **Exhibit X** is a true and correct copy of an email dated July 21, 2022 from Elizabeth McCloskey to counsel for CoStar.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed on August 17, 2022, in Washington, D.C.

3

4    _____
     NICHOLAS J. BOYLE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# EXHIBIT A

# [PUBLIC REDACTED VERSION]

KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS #158708
epeters@keker.com
WARREN A. BRAUNIG #243884
wbraunig@keker.com
ELIZABETH K. MCCLOSKEY #268184
emccloskey@keker.com
NICHOLAS S. GOLDBERG #273614
ngoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendant and Counterclaimant
COMMERCIAL REAL ESTATE EXCHANGE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Defendant. | Case No. 2:20-cv-08819 CBM (ASx) <br><br> **DEFENDANT AND COUNTERCLAIMANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES NOS. 2, 5 AND 12** <br><br> Ctrm:      8B, 8th Floor <br> Judge:     Hon. Consuelo B. Marshall <br><br> Date Filed    September 25, 2020 <br><br> Trial Date:   October 3, 2023 |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Counterclaimant, <br><br> v. <br><br> COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC., <br><br> Counterdefendants | |

**CONTAINS HIGHLY CONFIDENTIAL —
ATTORNEYS' EYES ONLY INFORMATION**

| PROPOUNDING PARTY: | PLAINTIFFS COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC. |
|---|---|
| RESPONDING PARTY: | DEFENDANT AND COUNTERCLAIMANT COMMERCIAL REAL ESTATE EXCHANGE, INC. |
| SET NO.: | ONE |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the applicable Local Rules of the United States District Court for the Central District of California, Defendant and Counterclaimant COMMERCIAL REAL ESTATE EXCHANGE, INC. ("CREXi") hereby submits these supplemental responses and objections to Plaintiffs COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC.'s ("CoStar's") Interrogatory Nos. 2, 5, and 12, dated October 8, 2021, as follows.

## PRELIMINARY STATEMENT

The supplemental objections and responses set forth herein are made solely for the purpose of and in relation to this matter. The objections herein are based upon the information and documentation that is presently available and known to CREXi. CREXi's investigation in this matter is continuing; discovery has just commenced. Further investigation, discovery, analysis, legal research, or trial preparation may yield additional information, which may result in the modification of these objections and responses. Accordingly, CREXi reserves the right to correct, amend, or supplement its objections and responses should it become aware of any inadvertent omission, error, or additional information that it may subsequently discover and determine to be relevant.

## GENERAL OBJECTIONS

1.    CREXi asserts each of the following General Objections and Objections to Definitions and Instructions to each of CoStar's interrogatories. In addition to these General Objections and Objections to Definitions and Instructions,

1

CREXi may state specific objections to specific interrogatories where appropriate. By setting forth additional specific objections, CREXi does not in any way intend to limit or restrict its General Objections and Objections to Definitions and Instructions, each of which is incorporated in response to each of CoStar's interrogatories. To the extent that CREXi provides a response to any of CoStar's interrogatories to which CREXi objects, such response shall not constitute a waiver of any General Objection, Objection to Definitions and Instructions, or specific objection.

2.      CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they seek information for purposes other than this litigation. CREXi provides these responses solely for the purposes of this litigation. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and any and all other objections that would form the basis for excluding such response in the same manner as if such responses were statements offered as evidence in court, all of which objections and grounds are reserved and may be interposed at the time of trial or any other appropriate time.

3.      CREXi objects to the interrogatories to the extent that they seek to impose obligations and demands on CREXi beyond those contemplated by the Federal Rules of Civil Procedure, the local rules of the United States District Court for the Central District of California, or any other applicable rules or orders of the Court. For example, without limitation, CREXi objects to the interrogatories and accompanying definitions and instructions to the extent that they seek to impose a duty on CREXi to supplement its responses beyond that required under the Federal Rules of Civil Procedure. CREXi will provide and supplement these responses only as required by applicable law or Rule.

4.      CREXi objects to the interrogatories and accompanying definitions and instructions to the extent that they seek information protected from disclosure by the attorney-client privilege, the common interest or joint defense privilege, the

work-product doctrine, or any other applicable privilege, doctrine, or immunity. CREXi will provide only non-privileged and otherwise discoverable information in response to these interrogatories.  To the fullest extent permitted by law, any inadvertent disclosure of privileged or protected information is not a knowing or voluntary waiver of said privilege or protection with respect to the documents produced or the subject matter thereof.

5.     CREXi construes these interrogatories as not seeking information or documents from the files of outside counsel that constitute attorney-client communication and work product generated in connection with this litigation or anticipated litigation, and objects to these interrogatories as overbroad, unduly burdensome, and not proportional to the needs of the case insofar as they purport to require a search for such privileged or protected material.

6.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they seek confidential, proprietary, or trade secret information, or material impinging on the privacy interests of CREXi or CREXi employees.  To the extent CREXi will produce information or documents containing such information, it will do so only subject to the terms of a Protective Order after it is entered in this case or subject to an otherwise appropriate confidentiality agreement entered into by the Parties.

7.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they seek information or documents that are subject to confidentiality or nondisclosure agreements with other parties.  CREXi will produce such information and documents only to the extent that CREXi is permitted to do so under its agreement with such parties and only after those parties receive the appropriate notice and are provided with a reasonable opportunity to raise objections, and the Court resolves any objections.

8.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent that they are duplicative and cumulative, request

3

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF
INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)

1833341                                                                          Exhibit A, Page 11

information provided in response to overlapping or duplicative interrogatories or requests for production, request information equally or more readily accessible to CoStar, and request information available to CoStar from sources for whom production would be easier, less costly, or less burdensome.

9.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they purport to impose an obligation on CREXi to conduct anything beyond a reasonable and diligent search of readily accessible files (including electronic files) where responsive documents and information stored in the ordinary course of business reasonably would be expected to be found.

10.     CREXi objects to the interrogatories and accompanying definitions as unduly burdensome to the extent that they seek production or identification of electronically-stored information ("ESI") within thirty days of service of these interrogatories.  Pursuant to the parties agreed-upon Stipulated Discovery Order, CREXi will produce ESI on a rolling basis.

11.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they purport to require preservation or production of ESI stored on nonactive systems or backup media, voicemail, or mobile devices.

12.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they are overbroad, unduly burdensome, unreasonably invasive, vague, ambiguous, or made for the purpose of harassment.  CREXi further objects to the instruction that demands "all responsive information in [CREXi's] possession, custody, or control" in response to the interrogatories, when less than "all" information in CREXi's possession, custody, or control is necessary and material to the claims or defenses in this case, as overbroad, unduly burdensome, and not proportional to the needs of the case.

13.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they seek information that is not relevant and not proportional to the needs of the case.

4

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)                    Exhibit A, Page 12

1833341

14.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they purport to require CREXi to draw legal conclusions premised on contested or unsettled facts or undeveloped, incomplete, or assumed information. CREXi's responses shall not be construed as providing a legal conclusion concerning the meaning or application of any terms of phrases used in CoStar's interrogatories.

15.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they purport to require CREXi to create or generate documents that do not currently exist or of which it has no knowledge.

16.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they are premature because they call for responses that are the subject of expert testimony or discovery.

17.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they purport to give meaning or legal significance to a document, fact, or purported fact whose meaning or significance is or may be the subject of dispute between the parties.  CREXi responds to these interrogatories based on its reasonable interpretation and understanding of the interrogatories and the accompanying definitions and instructions.  CREXi's responses shall not constitute an admission or concession regarding the definitions used in the interrogatories.

18.     CREXi does not make any incidental or implied admissions regarding the information subject to these interrogatories.  The fact that CREXi responds or objects to any request or any part of a request shall not be taken as an admission that CREXi accepts or admits the existence of any facts set forth or assumed by such request, or that CREXi's response or any related production is or contains admissible evidence.  The fact that CREXi has answered part or all of any request is not intended and shall not be construed as a waiver of all or any part of any

objection to any request.  Any failure to object on a particular ground shall not be construed as a waiver of CREXi's right to object on additional grounds.

19.     CREXi objects to the interrogatories and accompanying definitions and instructions to the extent they seek information that is outside of CREXi's possession, custody, or control.  CREXi further objects to the instruction that "information set forth in Documents and Communications in the possession or custody of any other Persons from whom You have the right to obtain such Documents and Communications" shall be deemed to be within CREXi's possession, custody, or control as overbroad, unduly burdensome, and inconsistent with the duties and obligations imposed by the Federal Rules of Civil Procedure.  CREXi disclaims any obligation to obtain or produce any documents or information that are not within CREXi's possession, custody, or control, or that are in the possession of third parties.  CREXi further disclaims any obligation to produce information in the possession of CoStar, any CoStar-related entity, or any third party from whom production would be easier, less costly, or less burdensome.

20.     CREXi objects to the interrogatories as improperly compound and containing multiple subparts.  Pursuant to Federal Rule of Civil Procedure 33(a)(1), a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.  CREXi will follow the discovery limits set forth by the Federal Rules of Civil Procedure or any applicable order of the Court in this case.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     CREXi objects to every definition asserted by CoStar to the extent that the definition is inconsistent with or would expand the definition of a term beyond its ordinary or plain meaning; create an undue burden in responding to these Requests; or impose obligations on CREXi that are inconsistent with CREXi's obligations under any applicable rule, order or law.

2.    CREXi objects to the definitions of "and" and "or" as overbroad, unduly burdensome, vague and ambiguous, including in that the definition purports to include the "disjunctively or conjunctively."  CREXi will construe "and" and "or" to have their ordinary meaning.

3.    CREXi objects to the definition of "Arcgate" as overbroad and unduly burdensome to the extent that it encompasses entities that have never provided CREXi with services.  CREXi further objects to the definition as vague, ambiguous, and unintelligible to the extent that it relies on the undefined phrase "other derivations of Arcgate."  CREXi further objects to the definition on the ground that it assumes that the named and unnamed entities encompassed within that definition "provided services to CREXi."  By responding to any request concerning Arcgate, CREXi does not admit that such named and unnamed entities provided services to CREXi.  CREXi will construe "Arcgate" as used in these requests to relate to the Arcgate entity or entities that provided services to CREXi.

4.    CREXi objects to the definition of "BPO" as vague, ambiguous, and unintelligible to the extent that it relies on the undefined phrases "business process outsourcing firm or similar contractor" and "obtaining or verifying."  CREXi further objects to the definition as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to any claims or defenses in this case.  CREXi will construe "BPO" to mean independent contractors that it has engaged to populate online listings regarding commercial real estate that is available for sale or lease, or to screen photographs from those listings for potential infringement of third parties' intellectual property rights.

5.    CREXi objects to the definition of "Broker Information" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information related to commercial real estate brokers, without limitation.  CREXi will construe "Broker Information" to mean the name and brokerage, to the

7

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 15

1833341

extent known, of brokers who provide online listings regarding commercial real estate that is available for sale or lease.

6.     CREXi objects to the definition of "Communication" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is inconsistent with the Federal Rules of Civil Procedure and purports to create an obligation greater than that under the Rules. CREXi will construe the word "Communication" consistent with the definition and obligations under the Federal Rules of Civil Procedure.

7.     CREXi objects to the definition of "CoStar" as overbroad, vague, ambiguous, and unduly burdensome to the extent that the definition includes "affiliates, assigns, departments, divisions, parents, predecessors, subsidiaries, and successors, and for each of the foregoing, all present or former Employees, agents, and representatives."  CREXi further objects to the definition of "CoStar" as not proportional to the needs of this case, as it seeks information concerning entities that are not parties to the case and do not relate to any claim or defense in this case. CREXi will construe "CoStar" to mean CoStar Group, Inc., CoStar Realty Information, Inc., LoopNet, Inc., and Ten-X Holding Company, Inc.

8.     CREXi objects to the definition of "CoStar Access Credentials" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is predicated on information that is unknown to CREXi.  CREXi further objects to this definition as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information concerning websites and databases that are not alleged in the First Amended Complaint and are not relevant to any claims or defenses in this case.  CREXi further objects to this definition as unintelligible to the extent it seeks information concerning unspecified websites and databases and websites and databases in which CoStar has no current or past ownership interest.  CREXi further objects to this definition as vague and unintelligible to the extent it relies on the undefined terms

8

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)

1833341                                                                    Exhibit A, Page 16

"passcodes" and "any other credential."  CREXi will construe "CoStar Access Credentials" to mean usernames that may be used to access the CoStar-affiliated websites and databases alleged in the First Amended Complaint; specifically, www.costar.com, www.loopnet.com, and www.ten-x.com (the "Relevant CoStar Websites"), and CoStar's Professional Directory (the "Relevant CoStar Databases").

9.     CREXi objects to the definition of "CoStar Data" and "CoStar Datum" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is predicated on information that is unknown to CREXi.  CREXi objects to this definition as vague and unintelligible to the extent that it seeks documents that CREXi "had reason to believe" were subject to certain actions, without defining what constitutes such reason.  CREXi further objects to this definition as vague and unintelligible to the extent that it purports to request data that "CoStar has claimed [CREXi] copied, sourced or otherwise appropriated" without limitation, although CoStar has not provided CREXi with exhaustive information concerning what information is at issue.  CREXi will construe "CoStar Data" and "CoStar Datum" to mean any data that CoStar claimed CREXi copied, sourced, or otherwise appropriated from CoStar in the First Amended Complaint (the "Relevant CoStar Data").

10.     CREXi objects to the definition of "CoStar Database" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information concerning databases that are not alleged in the First Amended Complaint and are not relevant to any claims or defenses in this case.  CREXi further objects to this definition as unintelligible to the extent that it seeks information concerning unspecified databases and databases in which CoStar has no current or past ownership interest.  CREXi will construe the phrase "CoStar Database" to mean the CoStar-affiliated databases alleged in the First Amended

Complaint; specifically, CoStar's Professional Directory (the "Relevant CoStar Databases").

11.     CREXi objects to the definition of "CoStar Photograph" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is predicated on information that is unknown to CREXi.  CREXi objects to this definition as vague and unintelligible to the extent that it seeks documents that CREXi "had reason to believe" were subject to certain actions, without defining what constitutes such reason.  CREXi further objects to this definition as vague and unintelligible to the extent that it purports to request information about images that CoStar has not identified but may identify in the "future."  CREXi objects to "CoStar Photograph" to the extent that the definition seeks to imply that CoStar owns a legally valid copyright in any particular photograph.  CREXi will construe "CoStar Photograph" to mean any photograph that CoStar has claimed CREXi infringed in the First Amended Complaint or in subsequent communications between the parties (the "Relevant CoStar Photographs").

12.     CREXi objects to the definition of "CoStar Watermark" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is predicated on information that is unknown to CREXi.  CREXi objects to this definition as vague and unintelligible, particularly with respect to the undefined term "star logo."  CREXi will construe the phrase "CoStar Watermark" to mean both (1) the stylized CoStar name and (2) the CoStar recycling symbol logo discussed at Paragraph 65 of the First Amended Complaint, which the Court has held does not constitute copyright management information under the Digital Millennium Copyright Act ("DMCA") as a matter of law.  Order on Mot. to Dismiss, Dkt. No. 71, at 6.

13.     CREXi objects to the definition of "CoStar Website" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information concerning websites that are not alleged in the First Amended

10

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)

1833341                                                                                    Exhibit A, Page 18

Complaint and are not relevant to any claims or defenses in this case.  CREXi further objects to this definition as unintelligible to the extent that it seeks information concerning unspecified websites and websites in which CoStar has no current or past ownership interest.  CREXi will construe the phrase "CoStar Website" to mean the CoStar-affiliated websites alleged in the First Amended Complaint; specifically, www.costar.com, www.loopnet.com, and www.ten-x.com (the "Relevant CoStar Websites").

14.    CREXi objects to CoStar's definition of the terms "CREXi," "you," and "your" as overbroad, unduly burdensome, vague, and ambiguous, to the extent that the definition includes "affiliates, assigns, departments, divisions, parents, predecessors, subsidiaries, and successors, and for each of the foregoing, all present or former Employees, agents, and representatives."  CREXi will construe the terms "CREXi," "you," and "your" to mean Commercial Real Estate Exchange, Inc.

15.    CREXi objects to the definitions of the terms "CREXi Website" or "Your Website" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information concerning websites that are not alleged in the First Amended Complaint and are not relevant to any claims or defenses in this case.  CREXi further objects to this definition as inconsistent with the plain meaning of the term to the extent that it seeks information concerning websites that are controlled by third parties.  CREXi further objects to this definition as unintelligible to the extent that it seeks information concerning unspecified websites.  CREXi will construe the phrase "CREXi Website" or "Your Website" to mean the CREXi-affiliated website alleged in the First Amended Complaint; specifically, www.crexi.com.

16.    CREXi objects to the definition of "Document" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is inconsistent with the Federal Rules of Civil Procedure and purports to create an obligation greater than that under the Rules. CREXi will construe the word

11

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)

1833341                                                                                      Exhibit A, Page 19

"Document" consistent with the definition and obligations under the Federal Rules of Civil Procedure.

17.    CREXi objects to the definition of "Employee" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks to expand the ordinary meaning of that word.  CREXi will construe "Employee" to have its ordinary and plain meaning.

18.    CREXi objects to the definition of "Identify" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it contains multiple subparts, is inconsistent with the Federal Rules of Civil Procedure, and purports to create an obligation greater than that under the Rules. CREXi will construe the word "Identify" consistent with the definition and obligations under the Federal Rules of Civil Procedure.

19.    CREXi objects to the definition of "Including," "includes," and "include" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks to expand the ordinary meaning of that word. CREXi will construe "including," "includes," and "include" to have their ordinary and plain meaning.

20.    CREXi objects to CoStar's definition of the term "Leon Capital," as overbroad, unduly burdensome, vague and ambiguous, to the extent that the definition includes "affiliates, assigns, departments, divisions, Employees, parents, predecessors, subsidiaries, and successors."  CREXi will construe the term "Leon Capital" to mean "Leon Capital Group, LLC."

21.    CREXi objects to the definition of "Person," as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks to expand the ordinary meaning of that word.  CREXi will construe "Person" to have its ordinary and plain meaning.

22.    CREXi objects to the definition of "Property Information" as overbroad, unduly burdensome, and not proportional to the needs of this case to the

12

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF
INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 20

1833341

extent that it seeks property information concerning commercial real estate, without limitation.  CREXi will construe "Property Information" to mean property information regarding commercial real estate that is or was available for sale or lease during the relevant time period.

23.     CREXi objects to the definition of "Property Listing Information" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information concerning commercial real estate that is available for sale or lease, without limitation.  CREXi will construe "Property Listing Information" to mean information provided for online listings regarding commercial real estate that is or was available for sale or lease during the relevant time period.

24.     CREXi objects to the definitions of the terms "Regarding" and "relating" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that they seek to expand the ordinary meaning of those words. CREXi will construe the terms "Regarding" and "relating" to have their ordinary and plain meaning.

25.     CREXi objects to Instructions Two and Five, nominally obligating CREXi to "comply with any Interrogatory in full" and to provide "[s]eparate answers … to each subdivision" of an interrogatory as unduly burdensome to the extent those instructions impose obligations that exceed those under the Federal Rules of Civil Procedure.  CREXi objects to the interrogatories to the extent that they are compound and contain multiple "subdivision[s]" that should count separately toward the total number of permitted interrogatories, in accordance with Federal Rule of Civil Procedure 33(a)(1).  Although CREXi is attempting to reasonably answer all twenty-three interrogatories propounded by CoStar, should CoStar insist on answers to responses to every subpart of every interrogatory, CREXi reserves the right to refuse to answer based on this objection.

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 21

1833341

26.     CREXi objects to Instruction Four to the extent it seeks production or identification of ESI, which is premature under the parties' ESI stipulation.  CREXi further objects to Instruction Four's demand that CREXi produce any documents pursuant to Federal Rule of Civil Procedure 33(d) "on or before the date [CREXi] answer[s] the Interrogator[ies]" as unduly burdensome.  CREXi will produce documents pursuant to Rule 33(d) on a rolling basis consistent with any agreement of the parties, Court-ordered schedule, or other order entered in this case.

27.     CREXi objects to Instruction Six, nominally obligating CREXi to state in writing if no information exists that is responsive to a particular interrogatory, as unduly burdensome to the extent that instruction imposes obligations that exceed those under the Federal Rules of Civil Procedure.

28.     CREXi objects to Instruction Seven to the extent that it seeks to impose a duty on CREXi to supplement its responses beyond that required under the Federal Rules of Civil Procedure.  CREXi will provide and supplement these responses only as required by applicable law or Rule.

29.     CREXi objects to Instruction Eight to the extent that is unduly burdensome and seeks to impose obligations on CREXi greater than or inconsistent with the Federal Rules of Civil Procedure and/or the Local Rules.  If CREXi withholds or redacts responsive information on the basis of the attorney-client privilege, work-product doctrine, or other similar privileged, CREXi will produce a privilege log that complies with the Federal Rules, Local Rules, and the ESI stipulation.  CREXi will meet and confer with CoStar regarding the timing for exchanging privilege logs.

30.     CREXi objects to Instructions Nine and Ten obligating it to construe the singular form of any word to include the plural and vice versa, and a word used in the present, past, future, subjunctive, or other tense, voice or mood, to include all other tenses, voices, or moods, to the extent such construction is inconsistent with or would expand the definition of any term beyond its ordinary or plain meaning;

14

create an undue burden in responding to these Requests; or impose obligations on CREXi that are inconsistent with CREXi's obligations under any applicable rule, order or law.

31.     CREXi objects to Instruction Twelve to the extent it obligates CREXi to search for and produce documents and information for the time period January 1, 2016, through the present, as overbroad, unduly burdensome, and not proportional to the needs of the case.  CREXi will construe these requests as seeking documents and information for the time period January 1, 2016, through October 2, 2020.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 2:

Identify all instances in which You have accessed any CoStar Database or CoStar Website using efforts to conceal from CoStar that You were doing so, such as through the use of another Person's CoStar Access Credentials, another Person's user account(s), dummy accounts, multiple accounts linked to one individual, aliases, fake identities, virtual private networks, multiple and changing or rotating IP addresses, proxy services, IP masking or anonymization services (e.g., KProxy), and/or TOR browsers or similar browsers, and Describe in Detail the Persons involved, the IP addresses used, masked, or rotated, the CoStar Access Credentials or accounts used, the source(s) of the CoStar Access Credentials, how the CoStar Access Credentials were obtained, the reason(s) for the use of such efforts, the purpose(s) for which the user accounts are and were used, the circumstances surrounding the creation (and deletion, if applicable) of the user accounts, and the precise means employed to conceal from CoStar that You were accessing any CoStar Database or CoStar Website.

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 23

1833341

CONFIDENTIAL

## RESPONSE TO INTERROGATORY NO. 2:

[CONTAINS CONFIDENTIAL INFORMATION]

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this interrogatory on the basis that CoStar's websites are publicly available, therefore asking for details concerning access to those websites is irrelevant, unduly burdensome and disproportionate to the needs of the case. CREXi objects to this interrogatory as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Website" and "CoStar Database." CREXi construes those terms as stated in the foregoing Objections to Definitions. CREXi objects to this interrogatory as vague and ambiguous, particularly with respect to the undefined and unexplained term "dummy accounts." CREXi objects to this interrogatory on the grounds that it seeks information in third parties' possession, custody, or control, and that is outside of CREXi's possession, custody, or control. CREXi objects to this interrogatory on the ground that it is predicated on information that is uniquely within CoStar's possession—records of access to CoStar's databases and websites—which CoStar has failed to produce to CREXi. CREXi objects to the request to "Identify all instances" as overbroad, unduly burdensome, and not proportional to the needs of the case. CREXi further objects to this interrogatory on the grounds that it is compound and contains multiple subparts that should count separately toward the total number of permitted interrogatories, in accordance with Federal Rule of Civil Procedure 33(a)(1).

Subject to and without waiving the foregoing objections, CREXi responds as follows: ████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

16

**CONFIDENTIAL**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CREXI's SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)

Case No. 2:20-cv-08819 CBM (ASx)

1833341

Exhibit A, Page 25

**CONFIDENTIAL**

1 ████████████████████████████████████████
2 ████████████████████████████████████████
3 ███████████████████████████████████████
4 ███
5 ███████████████████████████████
6 ██████████████████████████████████████████
7 ███████████████████████████████████
8 ████████████████████████████████████████
9 ███████████████████████████████████████████
10 ██████████████████████████████████████
11 █████████████████████████████████████
12 █████████████████████████████████████
13 ███████████████████████████████████████████
14 ███████████████████████████████████████████
15 ████████████████████████████████████
16 ██████████████████████████████████████
17 ████████████████████
18 ████████████████████████████████████████
19 ██████████████████████████████████████
20 ███████████████████████████████████████
21 ████████████████████████████████████████
22 ██████████████████████████████████████
23 ██████████████████████████████████████
24 ███████████████████████████████████████
25 ██████████████████████
26 ████████████████████████████████
27 ███████████████████████████████████████
28 ████████████████████████████████

CONFIDENTIAL-ATTORNEYS' EYES ONLY

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

[CONTAINS CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY]

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions, and the Objections made in the foregoing Response to Interrogatory No. 2.  Subject to and without waiving those objections, CREXi supplements its response as follows:

**INTERROGATORY NO. 5:**

Identify and Describe in Detail any relationship between You and any BPO. In responding to this interrogatory, Identify the names and dates of any contracts for services with the BPOs, and, if applicable, when such contracts were terminated and why, the scope of work that the BPOs perform or performed for You, the known business addresses for the BPOs, the names of all Persons employed by You who have communicated for business purposes with the BPOs, the names of all Persons employed by or otherwise associated with BPOs who source information or photographs for use in any CREXi Website, the individuals who manage and/or train such Persons, any other Persons at the BPOs with whom You have communicated, the dates and locations of any informational or training sessions that You held for the BPOs, the means by which You tracked and recorded the BPOs'

19

performance of work under any contracts for services, the names and descriptions of any IP anonymizers, proxies, masking tools or other anonymizers that CREXi recommended or provided to the BPOs, and the means by which You communicated with such Persons and sent or received photographs and other Documents to and/or from such Persons (for example, and without limitation, via e-mail, online or cloud services account, or Skype).

**RESPONSE TO INTERROGATORY NO. 5:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions.  CREXi objects to this interrogatory as overbroad, seeking information irrelevant to the claims and defenses in this case, not proportional to the needs of this case, and thus oppressive and unduly burdensome. CREXi further objects to this interrogatory on the grounds that it is compound and contains multiple subparts that should count separately toward the total number of permitted interrogatories, in accordance with Federal Rule of Civil Procedure 33(a)(1).  CREXi objects to the definition of "BPO" as vague, ambiguous, and unintelligible to the extent that it relies on the undefined phrases "business process outsourcing firm or similar contractor" and "obtaining or verifying," as provided by CoStar's definition of "BPO."  CREXi objects to this interrogatory as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship.  CREXi objects to the extent that this interrogatory seeks information that is in third parties' possession, custody, or control, and that is outside of CREXi's possession, custody, or control.

Subject to and without waiving the foregoing objections, CREXi responds as follows:  CREXi is willing to meet and confer with CoStar regarding this interrogatory.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

[CONTAINS CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY]

20

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)            Exhibit A, Page 28

1833341

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions, and the Objections made in the foregoing Response to Interrogatory No. 5. Subject to and without waiving those objections, CREXi supplements its response as follows:

21

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

| | |
|---|---|
| 1 | ██████████████████████████████ |
| 2 | ████████████████████████████████ |
| 3 | ██████████████████████████████ |
| 4 | █████████████████████████████ |
| 5 | ████████ |
| 6 | ████████████████████████████ |
| 7 | ████████████████████████████████ |
| 8 | █████████████████████████████ |
| 9 | ████████████████████████████████ |
| 10 | ███████████████████████████ |
| 11 | ██████████████████████████████ |
| 12 | ███████████████████████████████ |
| 13 | █████████████████████████████ |
| 14 | ████████████████████████ |
| 15 | █████████████████████████████ |
| 16 | ██████████████████████████████ |
| 17 | ██████████████████████████████ |
| 18 | ██████████████████████████████ |
| 19 | ████████████████████████████ |
| 20 | ██████████████████████████████ |
| 21 | ███████████████████████████████ |
| 22 | ████████████████████████████████ |
| 23 | ███████████████████████████ |
| 24 | ████████████████████ |
| 25 | █████████████████████████████ |
| 26 | ███████████████████████████████ |
| 27 | ███████████████████████████████ |
| 28 | █████████████████████████████ |

22

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF
INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 31
1833341

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  ████████████████████

2  ███████████████████████████████████████████

3  ████████████████████████████████████

4  ██████████████████████████████████████████

5  █████████████████████████████████████

6  ██████████████████████████████████████

7  ██████████████████████████████████████████

8  ███████████████████████████████████████████

9  ████████████████████████████████████████

10  █████████████████████████████████████████

11  ███████████████████████████████████

12  ██████████████████████████████████

13  ██████████████████████████████████████

14  ██████████████████████████████████████████

15  ███████████████████████████████████████████

16  ██████████████████████████████████████████

17  █████████████████████████████████████████

18  ███████████████████████████████████████████

19  ██████████████████████████████████████████

20  ████████████████████████████████████

21  ██████████████████████████████████

22  █████████████████████████████████████

23  ██████████████████████████████████████

24  ███████████████████████████████████████████

25  ███████████████████████████████████████████

26  ███████████████████████████████████

27  ██████████████████████████████████████

28  ███████████████████████████████████████████

24

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF
INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 32

1833341

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF
INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 33

1833341

**CONFIDENTIAL ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

1. ████████████████████████████████████████
2. ████████████████████████████████████████████
3. ████████████████████████████████████████████
4. ████████████████████████████████████████
5. ██████████████████████████████████████
6. ████████████████████████████████████████
7. ████████████████████████████████████████████
8. ████████████████████████████████████████
9. ████████████████████████████████████████
10. ██████████████████████████████████
11. ██████████████████████████████████████████████
12. ████████████████████████████████████████████
13. ████████████████████████████████████████████
14. ████████████████████████████████████████
15. ████████████████████
16. ██████████████████████████████████████████
17. ████████████████████████████████████████
18. ████████████████████████████████████████████
19. ████████████████████████████████████████████
20. ████████████████████████████████████████████
21. ██████████████████████████████████████████████
22. ████████████████████████████████████████
23. ████████████████████████████████████████████
24. ████████████████████████████████████████████
25. ██████████████████████████████
26. ████████████████████████████████████████
27. ██████████████████████████████████████████████
28. ████████████████████████████████████████████

27

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF
INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)                    Exhibit A, Page 35

1833341

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**



28

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF
INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 36

1833341

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

29

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 37

1833341

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

[REDACTED]

**INTERROGATORY NO. 12:**

For each of the CoStar Photographs listed in Exhibits C and D to the Amended Complaint, to the extent CREXi takes the position that a Third Party uploaded the image to the CREXi Website without any involvement from CREXi, please Identify the Person who uploaded each CoStar Photograph (and specify whether they are affiliated with CREXi as an Employee, agent or independent contractor or a Third Party, and which Third Party), the relevant URL, and the date of the upload.

**RESPONSE TO INTERROGATORY NO. 12:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to the interrogatory as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Website." CREXi construes that term as stated in the foregoing Objections to Definitions. CREXi further objects to this interrogatory on the grounds that it is compound and contains multiple subparts that should count separately toward the total number of permitted interrogatories, in accordance with Federal Rule of Civil Procedure 33(a)(1).

Subject to and without waiving the foregoing objections, CREXi responds as

30

CONFIDENTIAL

follows:

Among the services CREXi provides is a listing platform that allows commercial real estate brokers, owners and other customers of CREXi ("CREXi users") to display a listing of a particular commercial real estate ("CRE") property. CREXi is a user-driven platform.

The listing content on CREXi's website is populated at the direction of, and with the consent of, CRE brokers and other CREXi users.  CREXi populates listings with publicly available facts about CRE listings, as well as information and photographs originated, provided, and submitted at the direction of CREXi users.  CREXi incorporates by reference its response to Interrogatory No. 1.

Pursuant to Federal Rule of Civil Procedure 33(d), CREXi will produce responsive non-privileged documents that identify the requested information.

CREXi's investigation is ongoing and CREXi reserves its right to supplement its response to this interrogatory in light of additional information learned and documents obtained during the course of discovery.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

[CONTAINS CONFIDENTIAL INFORMATION]

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions, and the Objections made in the foregoing Response to Interrogatory No. 12. Subject to and without waiving those objections, CREXi supplements its response as follows:

Among the services CREXi provides is a listing platform that allows commercial real estate brokers, owners and other customers of CREXi ("CREXi users") to display a listing of a particular commercial real estate ("CRE") property.

All of the listing content on CREXi's website is populated at the direction of, and with the consent of, CRE brokers and/or other CREXi users.  CREXi populates listings with publicly available facts about CRE listings, as well as information and photographs originated, provided, and submitted at the direction of CREXi users.

31

**CONFIDENTIAL**

CREXi is an online service provider that is entitled to safe harbor immunity for alleged copyright infringement under the Digital Millennium Copyright Act ("DMCA"). CREXi respects third parties' intellectual property rights and does not knowingly copy, publish, or distribute CoStar copyrighted photographs. CREXi has taken several affirmative steps, beyond those required by law, to seek to avoid alleged copyright infringement. Photographs are populated to CREXi's websites by CREXi users directly and/or at the direction of CREXi users.

Under CREXi's terms of service, CREXi users specifically warrant that they are responsible for the content that they provide to CREXi and that the content "does not and will not violate third-party rights of any kind, including without limitation any intellectual property rights":

> You are solely responsible for the content of any Customer Content you submit through the Services. You agree not to submit any Customer Content, including but not limited to any User Content, that: (i) may create a risk of harm, loss, physical or mental injury, emotional distress, death, disability, disfigurement, or physical or mental illness to you, to any other person, or to any animal; (ii) may create a risk of any other loss or damage to any person or property; (iii) seeks to harm or exploit children by exposing them to inappropriate content, asking for personally identifiable details or otherwise; (iv) may constitute or contribute to a crime or tort; (v) contains any information or content that we deem to be unlawful, harmful, abusive, racially or ethnically offensive, defamatory, infringing, invasive of personal privacy or publicity rights, harassing, humiliating to other people (publicly or otherwise), libelous, threatening, profane, obscene, or otherwise objectionable; (vi) contains any information or content that is illegal (including, without limitation, the disclosure of insider information under securities law or of another party's trade secrets); (vii) contains any information or content that you do not have a right to make available under any law or under contractual or fiduciary relationships; (viii) contains any information or content that you know is not correct and current; or (ix) to the extent applicable, violates any school or other applicable policy, including those related to cheating or ethics.
>
> You agree that any Customer Content that you submit does not and will not violate third-party rights of any kind, including without limitation any intellectual property rights or rights of privacy.

32

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 40

1833341

**CONFIDENTIAL**

1    CREXi Terms of Service, § 3.5(b).

2         In addition, with respect to "Customer Content" made available on CREXi's

3    platform, CREXi users represent and warrant that they have all rights necessary to

4    grant CREXi a license to display such information:

> With respect to that portion of Customer Content that
> consists of videos, images, music, comments, questions,
> documents, spreadsheets, and any other content submitted,
> posted, or otherwise made available by you through the
> Services ("User Content"), by submitting, posting, storing,
> or otherwise making such User Content available through
> the Services, you hereby grant, and represent and warrant
> that you have all rights necessary to grant (including
> without limitation any necessary consents and
> authorizations from individual persons identified in the
> User Content and licenses from third-parties whose content
> is included in the User Content), to us a royalty-free,
> sublicensable, transferable, perpetual, irrevocable, non-
> exclusive, worldwide license to use, host, store, reproduce,
> modify, publish, list information regarding, translate,
> distribute, publicly perform, publicly display, and make
> derivative works of all such User Content, and the names,
> voice, and/or likeness contained in the User Content, in
> whole or in part, and in any form, media, or technology,
> whether now known or hereafter developed, solely for use
> in connection with our provision of the Services as
> described in the Agreement and our product
> documentation. Further, and without limiting the generality
> of the foregoing, you hereby grant, and represent and
> warrant that you have all rights necessary to grant, to us a
> royalty-free, sublicensable, transferable, perpetual,
> irrevocable, non-exclusive, worldwide license to use, host,
> store, reproduce, modify, publish, list information
> regarding, translate, distribute, publicly perform, publicly
> display, and make derivative works of any User Content
> you provide consisting of information about individual
> properties, including but not limited to information
> regarding title and legal status, current and potential
> valuations, physical condition and aesthetic/tenant
> improvement attributes, environmental reports,
> encumbrances, rent roll and pending lease negotiations,
> and tenant defaults or issues ("Property Information"), and
> hereby expressly acknowledge and agree that we may sell,
> license, and otherwise distribute and commercialize such
> Property Information, whether alone or in combination
> with other information, to other users of the Services with
> no duty of any kind to account to you or any third-party for
> such sale, license, or other distribution or
> commercialization, and you agree that our making
> available of such Property Information to third-parties will
> not be a violation of our confidentiality obligations under
> Section 9.

33

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF
INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)          Exhibit A, Page 41

1833341

CONFIDENTIAL

1   *Id.*, § 3.2(c).

2        Consistent with its Terms of Service, CREXi takes "no responsibility and

3   assume[s] no liability for any User Content that" any user or third-party "submits,

4   posts, or otherwise makes available through [CREXi's] Services." *Id.*  Likewise,

5   CREXi is "not responsible for the content of any Customer Content or the way

6   [CREXi users] choose to use [CREXi's] Services to store or process any Customer

7   Content." *Id.*, § 3.3.

8        CREXi also has a DMCA Policy that is consistent with the requirements of

9   the DMCA and qualifies for safe-harbor immunity.  *See id.*, § 5.2.  CoStar has

10  never served CREXi with a takedown notice that is compliant with the provisions

11  of the DMCA.  Nevertheless, CREXi in good faith has taken steps to promptly

12  remove images from its platform that CoStar has identified as CoStar copyrighted

13  images in its FAC and otherwise through this litigation.  CoStar has never identified

14  any CoStar data that is improperly displayed on CREXi's website.

15       Based on currently available information after a reasonably diligent

16  investigation, Appendix C attached hereto reflects information concerning the

17  Photographs listed in Exhibits C and D to the Amended Complaint, including

18  (1) the URL of the Photograph; (2) the date the photograph was uploaded to

19  CREXi's system; (3) the name of the person who uploaded the photograph; and

20  (4) whether the person who uploaded the photograph is a third party registered user

21  on CREXi who uploaded the photograph directly; the photograph was

22  automatically uploaded pursuant to an application programming interface

23  agreement with a third party partner of CREXi; or a CREXi employee or

24  independent contractor uploaded the photograph at the instruction of a third-party

25  CREXi user.

26       CREXi's investigation is ongoing and CREXi reserves its right to

27  supplement its response to this interrogatory in light of additional information

28  learned and documents obtained during the course of discovery.

34

1

2   Dated:  March 9, 2022                    KEKER, VAN NEST & PETERS LLP

3

4                                    By:   */s/ Warren A. Braunig*
                                          ELLIOT R. PETERS
5                                         WARREN A. BRAUNIG
                                          ELIZABETH K. MCCLOSKEY
6                                         NICHOLAS S. GOLDBERG
                                          CONNIE P. SUNG
7                                         ANN NIEHAUS
                                          CHRISTINE M. ZALESKI
8
                                          Attorneys for Defendant and Counterclaimant
9                                         COMMERCIAL REAL ESTATE
                                          EXCHANGE, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CREXI'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO COSTAR'S FIRST SET OF
INTERROGATORIES (NOS. 2, 5, 12)
Case No. 2:20-cv-08819 CBM (ASx)                    Exhibit A, Page 43

1833341

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On March 9, 2022, I served the following document(s):

- **DEFENDANT AND COUNTERCLAIMANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES NOS. 2, 5 AND 12**

☑  by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

Nicholas J. Boyle
Sarah A. Tomkowiak
Lauren M. McGuire
Walter Allen Perry
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Tel.:  202-637-2200
Fax:  202-637-2201
nicholas.boyle@lw.com
sarah.tomkowiak@lw.com
lauren.mcguire@lw.com
allen.perry@lw.com

Elyse M. Greenwald
Latham & Watkins LLP
10250 Constellation Blvd.
Suite 1100
Los Angeles, CA 90067
Tel.:  424-653-5500
Fax:  424-653-5501
elyse.greenwald@lw.com

Executed on March 9, 2022, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_/s/Laresa Brown_
Laresa Brown

36

**VERIFICATION**

I, Lawson Dees, am the Vice President of Operations at Commercial Real Estate Exchange, Inc. ("CREXi"), and am authorized to make this verification on CREXi's behalf. I have reviewed the entirety of Defendant and Counterclaimant Commercial Real Estate Exchange, Inc.'s Supplemental Responses and Objections to Plaintiffs' Interrogatories Nos. 2, 5, and 12. I am informed and believe that the matters stated therein are true and, on that ground, certify or declare under penalty of perjury under the laws of the State of California that, to the best of my knowledge, the foregoing is true and correct.

Executed at El Segundo, California on this 9th day of March, 2022.

Lawson Dees

# EXHIBIT B

# [PUBLIC REDACTED VERSION]



Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

**Christine M. Zaleski**
(415) 773-6693
czaleski@keker.com

June 10, 2022

**VIA E-MAIL**

Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
costarcrexi.lwteam@lw.com

Re:   *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*; Case No. 20:cv-08819

Dear Counsel:

We are providing herewith an amended version of Appendix C to CREXi's March 9, 2022 interrogatory response.  For 1188 entries, we have corrected the name of the Independent Contractor responsible for uploading images, as reflected in column D of the appendix ("Uploaded by").  In conjunction with service of this amended Appendix C, we have also provided a redline showing the precise changes.  The changes fall into two categories:

1.   ████████████████████████████████████████
     ██████  The mistake was due to a processing error on our end, because those two companies had an employee with the same name.

2.   ████████████████████████████████████████████
     ████████████████████████████████████████
     ██████████████████████████████████████
     ████████████████████████████████████████
     ████████████████████████████████████████
     ██████████████████████████████

The remainder of the data is identical to what we provided before.

Very truly yours,

Christine M. Zaleski

CZ:lab

Exhibit B, Page 46

# [CONTAINS CONFIDENTIAL INFORMATION]

# APPENDIX C
# (Amended June 10, 2022)

# [PAGES 48-226 TO DECLARATION OF NICHOLAS J. BOYLE REDACTED]

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On June 10, 2022, I served the following document(s):

**AMENDED APPENDIX C TO DEFENDANT AND COUNTERCLAIMANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES NOS. 2, 5 AND 12**

☑   by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

| | |
|---|---|
| Nicholas J. Boyle | Elyse M. Greenwald |
| Sarah A. Tomkowiak | Latham & Watkins LLP |
| Lauren M. McGuire | 10250 Constellation Blvd. |
| Walter Allen Perry | Suite 1100 |
| Latham & Watkins LLP | Los Angeles, CA 90067 |
| 555 Eleventh Street, NW | Tel.:   424-653-5500 |
| Suite 1000 | Fax:   424-653-5501 |
| Washington, D.C. 20004-1304 | elyse.greenwald@lw.com |
| Tel.:   202-637-2200 | |
| Fax:   202-637-2201 | |
| nicholas.boyle@lw.com | |
| sarah.tomkowiak@lw.com | |
| lauren.mcguire@lw.com | |
| allen.perry@lw.com | |

Executed on June 10, 2022, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Laresa Brown

PROOF OF SERVICE

# EXHIBIT C

# [PUBLIC REDACTED VERSION]

| | |
|---|---|
| **From:** | Elizabeth K. McCloskey <emccloskey@keker.com> |
| **Sent:** | Friday, August 5, 2022 3:15 PM |
| **To:** | Carney, Jackie (DC); csung@keker.com; jgeorge@keker.com; crexstar@keker.com |
| **Cc:** | #C-M COSTAR - CREXI - LW TEAM; Tomkowiak, Sarah (DC) |
| **Subject:** | RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process |

Jackie,

We have already responded to your team's baseless accusations regarding Neptune's purported deletion of evidence.  Those accusations are false and baseless.

With respect to the outreach to the independent vendors who have worked with CREXi, we produced today our correspondence to those vendors, as well as any responses we have received.  You will note that not all of the contractors responded to CREXi's correspondence, including, unsurprisingly, those CoStar has sued or subpoenaed.

Thanks,
Elizabeth

---

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Thursday, August 4, 2022 6:39 PM
**To:** Elizabeth K. McCloskey <EMcCloskey@keker.com>; Connie P. Sung <CSung@keker.com>; Jason George <JGeorge@keker.com>; CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com; sarah.tomkowiak@lw.com
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

**[EXTERNAL]**

Elizabeth,

CoStar has asked CREXi, for nearly eight months, to produce documents and information responsive to CoStar's discovery requests (Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5) from its third-party agents.  At every turn, CREXi has stonewalled CoStar's efforts to obtain this critical discovery, only agreeing in June even to solicit responsive information from the third parties under its control.

Almost a month ago, CoStar asked CREXi to produce, at minimum, its outreach to its third-party agents asking them to provide the requested documents and information, along with any responses received to date, so CoStar can understand whether CREXi's agents are cooperating in discovery.  To date, CREXi has not produced any of these documents and refuses to do so until "this process is complete" (whatever that means).  CoStar can think of no reason CREXi would continue to withhold responsive information it has received from third-party agents (which CoStar has sought for eight months) other than to obstruct discovery.  Indeed, CoStar knows CREXi is withholding this discovery—CoStar recently received a production from ███████ which included a letter and declaration that ███████ provided to CREXi in response to CREXi's outreach to ███████ on July 6, 2022 regarding CoStar's discovery requests.  CREXi must provide all similar correspondence and declarations it has received from its agents, in addition to all letters that CREXi sent to these agents, immediately.

1

This refusal to produce documents from CREXi's agents is especially troubling, given today's developments in India.  As you are aware, because you were in contact with Neptune, CoStar sued CREXi's agent Neptune in India on July 11, and the Court issued an order authorizing a court-appointed Commission to collect evidence from Neptune.  The Court's Expert Commissioner executed that commission on July 15 and his report, released today, documented widespread evidence of "[m]ass deletion of data relating to CoStar and Crexi" by Neptune.

CoStar is extremely troubled by the Court Commissioner's findings – including apparent subterfuge and mass deletion of evidence, the Court Commissioner's recovery of evidence of wrongdoing (including handwritten notes discussing evidence deletion), missing computers/devices, evidence of the uploading of CoStar materials to CREXi's system, changing stories regarding whether Neptune had ever received a preservation notice or had preserved logs of website access, and the apparent involvement of CREXi's counsel, who made cell phone calls to Neptune's director Mr. Ganesh Subramanian just after the suit was filed and before the commission was executed.

In light of the recent events, CoStar can no longer afford to wait for the requested discovery from CREXi's agents, as it (justifiably) fears that critical evidence of wrongdoing by CREXi and its agents is being destroyed.  We demand CREXi's full cooperation in producing the materials requested by CoStar immediately, or CoStar will forthwith move to compel the production by CREXi of evidence from CREXi's agents, including communications related to the destruction of evidence by Arcgate, Neptune, and any other third-party agents, and all communications between these agents and CREXi's counsel.

Please commit, no later than tomorrow, August 5, to producing these materials by August 9, or CoStar will move to compel.

Regards,
Jackie

---

**From:** Carney, Jackie (DC)
**Sent:** Thursday, July 7, 2022 10:05 AM
**To:** 'Elizabeth K. McCloskey' <emccloskey@keker.com>; csung@keker.com; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Tomkowiak, Sarah (DC)
<Sarah.Tomkowiak@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Elizabeth—

If you have information about certain agents and whether they are cooperating, and it sounds like you do, why withhold it, other than to obstruct discovery?

Why do we need an update now?  We have been discussing this issue for seven months.  It is CoStar's position that CREXi should have asked its agents for this information months ago.  CREXi refused to do so until very recently, and now is refusing to produce confirmation that those requests went out.  If you have sent out the letters that you represented you would, in your June 10 email, then why not provide them now?  Your refusal to engage on this simple request is troubling.

You agreed below to "produce CREXi's requests as well as any written responses we receive from the vendors."  In particular given that you "did not impose a deadline" on your agents, and now need to just "wait for their responses," that makes it more imperative for CREXi to let us know as and when you hear back.  You're refusing to do so on the basis that you want to respond only when the very last of an unknown number of your agents responds, whenever that may be (months from now?).  Why?  There's no reason other than as a gambit to delay the discovery process.

Exhibit C, Page 229

Again, if you choose to withhold information about whether CREXi's agents are cooperating or not, we will have to assume they are not, and take steps to obtain that discovery.  If you have information to the contrary, the burden is on you to provide it rather than continue to delay discovery.

Thanks,
Jackie

**From:** Elizabeth K. McCloskey <emccloskey@keker.com>
**Sent:** Wednesday, July 6, 2022 7:39 PM
**To:** Carney, Jackie (DC) <Jackie.Carney@lw.com>; csung@keker.com; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Jackie,

CREXi agreed to cooperate with respect to these discovery requests.  It is cooperating.  You contend that there's no reason for CREXi to wait to provide to CoStar a comprehensive report once the process is complete, but what's the reason that CoStar needs piecemeal, incomplete and constant updates?  And what threat are you trying to make, by saying that CoStar will "proceed accordingly"?  Is CoStar attempting to renege on the parties agreement with respect to Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5?

To be clear, CoStar never requested, as part of the agreement we reached in the correspondence below, that CREXi demand that the third party independent contractors respond to CREXi's request by a date certain, and so we did not impose a deadline on those independent contractors.  As such, we need to wait for their responses.  As soon as we've received responses, we will let you know.  In the meantime, you would be mistaken to make any assumptions regarding how the independent contractors are responding, and I trust that you will not make any false representations to the Court or anyone else regarding the status of CREXi's requests and the independent contractors' responses.

Thanks,
Elizabeth

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Wednesday, July 6, 2022 4:26 PM
**To:** Elizabeth K. McCloskey <EMcCloskey@keker.com>; Connie P. Sung <CSung@keker.com>; Jason George <JGeorge@keker.com>; CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com; sarah.tomkowiak@lw.com
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

**[EXTERNAL]**

Elizabeth,

There's no reason to wait and make a formal discovery production, or wait until this process is "complete," especially with respect to CREXi's own outreach (which we assume has happened).  We need to know whether these agents are cooperating, as and when each agent responds.  If CREXi is going to withhold that information, we will assume these agents are not cooperating, and proceed accordingly.  If you have information to the contrary, you can provide it.  If you decline to do so, that's your decision, but you cannot later complain that an agent had in fact agreed to cooperate.

Thanks,
Jackie

Exhibit C, Page 230

**From:** Elizabeth K. McCloskey <emccloskey@keker.com>
**Sent:** Wednesday, July 6, 2022 5:46 PM
**To:** Carney, Jackie (DC) <Jackie.Carney@lw.com>; csung@keker.com; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Jackie,

Thanks for your email, and for relaying the questions that CoStar has regarding CREXi's outreach to third-party independent contractors with which it has, at various times, worked.  CREXi is fulfilling its agreement, as set forth in my email below of June 10, to request that those third parties provide the information requested by CoStar's Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5.  As soon as that process is complete, CREXi will, as appropriate, amend its responses to CoStar's Interrogatory Nos. 2, 3, 13 and 14, and produce the correspondence with the independent contractors.  We expect that will answer each of CoStar's questions, as you raise below.

Although we understand that CoStar is anxious to receive this information, we don't believe it efficient for either party for us to provide that information piecemeal.  CREXi has made every effort to be cooperative with CoStar regarding these requests, and continues to do so, and thus we appreciate your patience while we carry out our agreement.

Thanks,
Elizabeth

---

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Wednesday, July 6, 2022 9:27 AM
**To:** Connie P. Sung <CSung@keker.com>; Elizabeth K. McCloskey <EMcCloskey@keker.com>; Jason George <JGeorge@keker.com>; CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com; sarah.tomkowiak@lw.com
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

**[EXTERNAL]**

Thanks Connie.  Do you now have all responses?  If not, which are yet to come in?  And could you let us know which individuals/entities are willing to produce and which are not, and if any have attached conditions?  We'd like to get this basic information promptly.  We also ask that you promptly send us copies of the correspondence that CREXi sent to these third parties; there is no reason to wait for a formal document production.

Please provide (1) this basic information; and (2) copies of the correspondence sent to these third parties by Tuesday, July 12.  If you do not, we will be forced to conclude that these third parties are not cooperating.

Best,
Jackie

---

**From:** Connie P. Sung <csung@keker.com>
**Sent:** Tuesday, July 5, 2022 10:25 PM
**To:** Carney, Jackie (DC) <Jackie.Carney@lw.com>; emccloskey@keker.com; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Jackie,

Exhibit C, Page 231

CREXi is collecting responses from third-party independent contractors regarding these CoStar requests.  We will include the correspondence in a forthcoming production.

Best regards,
Connie

_____

**Connie P. Sung**
*She / her*
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 773 6607 direct | 415 391 5400 main
csung@keker.com | vcard | keker.com

---

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Tuesday, July 5, 2022 10:17 AM
**To:** Connie P. Sung <CSung@keker.com>; Elizabeth K. McCloskey <EMcCloskey@keker.com>; Jason George <JGeorge@keker.com>; CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com; sarah.tomkowiak@lw.com
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

[EXTERNAL]

---

Connie,

Per our below email, please let us know today whether CREXi will produce copies of its correspondence to its agents in response to Interrogatory Nos. 2, 3 13 and 14 and RFP No. 5.

Jackie

---

**From:** Carney, Jackie (DC)
**Sent:** Wednesday, June 29, 2022 1:58 PM
**To:** 'Connie P. Sung' <csung@keker.com>; emccloskey@keker.com; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Connie,

Given that it has been over two weeks since CREXi agreed to ask its agents for responsive information, we expect that CREXi has now sent correspondence to the independent contractors identified in its supplemental response to Interrogatory No. 5 and in your email of June 10, 2022 requesting that these third parties provide information requested by CoStar's Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5.  Please produce copies of this correspondence to CoStar promptly, and no later than the end of this week, as well as any written responses CREXi has received from these third parties.

The parties have discussed these discovery requests and the issue of CREXi's obligation to obtain responsive information from its third party agents numerous times—indeed, since December 2021—and we stated over a month ago that CoStar intended to seek relief from the Court.  We agreed not to file a motion to compel with respect to these discovery

5

requests in reliance on CREXi's representation that it would promptly seek these documents from its agents. *See* June 10, 2022 Email from E. McCloskey (stating that "CREXi will proceed with preparing and sending letters to each of the independent contractors identified above"). If CREXi now refuses to provide copies of its correspondence with these agents, or has not yet asked its agents for responsive information,  CoStar will seek relief from the Court.


Best,
Jackie

---

**From:** Connie P. Sung <csung@keker.com>
**Sent:** Tuesday, June 14, 2022 4:48 PM
**To:** Carney, Jackie (DC) <Jackie.Carney@lw.com>; emccloskey@keker.com; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process


Jackie,

Your e-mail contains baseless conjecture and demonstrably false statements regarding the purported "direction and control" CREXi has over its vendors, who are or were at all times independent contractors and not agents of CREXi.  Setting aside CoStar's mischaracterizations, CREXi is willing to relay CoStar's requests to CREXi's vendors (with the exception of Arcgate, which has refused to cooperate with CREXi ever since CoStar's coercive and improper "settlement," which bars Arcgate from cooperating with CREXi).  We will agree to produce CREXi's requests as well as any written responses we receive from the vendors.  We believe that CREXi's requests of its vendors will satisfy Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5.

We have previously responded in writing, numerous times, to CoStar's false narrative regarding Arcgate's inadvertent failure to retain server logs *seven months after* CREXi had specifically advised Arcgate to preserve documents.  Suffice to say, CoStar's continuing effort to deflect from its own intentional destruction of evidence does not become any more convincing with time or repetition.


Best,
Connie

---

**Connie P. Sung**
*She / her*
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 773 6607 direct | 415 391 5400 main
csung@keker.com | vcard | keker.com

---

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Monday, June 13, 2022 8:05 AM
**To:** Elizabeth K. McCloskey <EMcCloskey@keker.com>; Jason George <JGeorge@keker.com>; CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com; sarah.tomkowiak@lw.com
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

**[EXTERNAL]**

---

Elizabeth,

Thank you for agreeing to request that the third parties identified in CREXi's supplemental response to Interrogatory No. 5 provide the information requested by CoStar's Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5. We expect that these third parties will in fact provide the requested information once CREXi asks, given the direction and control that CREXi indisputably exercises over them. Indeed, based on documents ▮▮▮▮▮▮ recently produced to CoStar, CREXi is regularly controlling how these agents respond to discovery in this litigation, including, for example, by determining whether Zoom meetings involving "workflow updates" are recorded (and thus discoverable). CREXi has also interviewed and obtained testimony from ▮▮▮▮▮ employees for use in this action, and we have no doubt that CREXi has exercised similar control over its other agents. CREXi should continue to direct these individuals and companies to cooperate regarding CoStar's discovery requests.

Additionally, with respect to your refusal to ask Arcgate for the information requested, we disagree that CoStar's settlement agreement with Arcgate forbids Arcgate from cooperating with CREXi. In any event, CREXi has still not produced its own Arcgate-related materials in response to these and other of CoStar's discovery requests, and has not stated a valid basis for withholding this discovery. We are further still waiting to learn what steps CREXi has taken to mitigate the destruction of the Arcgate server logs. Please advise.

Finally, we expect that CREXi will produce all of the correspondence sent to and responses received from each third party. Please confirm that CREXi intends to do so. For any documents that CREXi produces from its agents in response to Interrogatory Nos. 2, 3, 13 and 14, we expect that CREXi will designate, by Interrogatory No. and Bates No., which documents are responsive to which interrogatories.

Thanks,
Jackie

---

**From:** Elizabeth K. McCloskey <emccloskey@keker.com>
**Sent:** Friday, June 10, 2022 11:58 AM
**To:** Carney, Jackie (DC) <Jackie.Carney@lw.com>; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Jackie,

CREXi will agree to request that the third-party independent contractors who have performed work for CREXi provide the information requested by CoStar's Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5.

To be more specific, CREXi will send correspondence to the independent contractors identified in its supplemental response to Interrogatory No. 5: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ and the individual independent contractors. In light of CoStar's settlement agreement with Arcgate, which forbids Arcgate from cooperating with CREXi, CREXi will not make this request of Arcgate. CREXi's correspondence will ask the independent contractors to provide information responsive to CoStar's requests identified above, as follows: (1) instances in which the independent contractors accessed CoStar.com or LoopNet.com using efforts to conceal from CoStar that they were doing so, Interrogatory No. 2; (2) logs showing any access of CoStar.com or LoopNet.com while performing work for CREXi, Interrogatory No. 3, (3) IP addresses associated with each office in which the independent contractors performed work for CREXi, Interrogatory No. 13, (4) CoStar account credentials for CoStar.com or LoopNet.com, created by any of the independent contractors, while performing work for CREXi, Interrogatory No. 14; (5) documents sufficient to show all current or former accounts that the independent contractors registered on CoStar.com or LoopNet.com, while performing work for CREXi, Request for Production No. 5.

Exhibit C, Page 234

Let us know if you have any questions regarding the above.  Assuming CoStar agrees that making these requests will satisfy CoStar with respect to Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5, CREXi will proceed with preparing and sending letters to each of the independent contractors identified above.

Thanks,
Elizabeth

---

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Thursday, June 9, 2022 10:46 AM
**To:** Elizabeth K. McCloskey <EMcCloskey@keker.com>; Jason George <JGeorge@keker.com>; CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com; sarah.tomkowiak@lw.com
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

**[EXTERNAL]**

---

Counsel:

We write to follow up on the parties' meet and confer on June 2, 2022 regarding CoStar's Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5, regarding discovery in CREXi's control from its third-party agents.  During our meet and confer, you confirmed that you intended to follow up with us this week about whether CREXi is willing to ask its third-party agents for the requested discovery.  Please let us know by tomorrow if CREXi has now agreed to do so, and if so:  (1) which third parties CREXi intends to seek responsive discovery from; and (2) the method by which CREXi intends provide CoStar with those third parties' responses.

If CREXi is not willing to seek such discovery, please confirm that CREXi consents to the informal discovery process for resolving this dispute.  We propose using the following procedure, as outlined in our May 23, 2022 email:

1. CoStar provides CREXi with its neutral statement (not to exceed one page) on Monday, June 13.
2. CREXi has two business days to propose changes to the neutral statement. CREXi's revised neutral statement is due COB Wednesday, June 15.
3. On Thursday, June 16, CoStar provides CREXi with (1) the revised neutral statement, identifying any remaining areas of disagreement; (2) its portion of the joint statement (not to exceed 10 pages); and (3) five available dates for a telephone conference with Judge Sagar.
4. On or before June 30, CREXi provides CoStar with (1) its response on available dates and (2) its portion of the joint statement (not to exceed 10 pages).  If CREXi is not available on at least three of the five dates proposed by CoStar, you must provide its availability for a meet and confer the following business day.
5. On or before July 7, CoStar may draft a reply (limited to 3 pages).
6. On July 8, CoStar must submit the neutral statement and joint statement to Judge Sagar's chambers.

Best,
Jackie

---

**From:** Carney, Jackie (DC)
**Sent:** Friday, May 27, 2022 5:20 PM
**To:** 'Elizabeth K. McCloskey' <emccloskey@keker.com>; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Thanks, Elizabeth. We are available at 2:30 PST / 5:30 EST on Thursday 6/2. Sarah and I will join.

**From:** Elizabeth K. McCloskey <emccloskey@keker.com>
**Sent:** Friday, May 27, 2022 5:00 PM
**To:** Carney, Jackie (DC) <Jackie.Carney@lw.com>; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Datta, Sohom (NY) <Sohom.Datta@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Thanks, Jackie.  I am in a deposition on 6/1, so we are not available that day.  We are available to confer on Thursday 6/2 12-1 or 2-4pm PST.  Let us know if you can be available during one of those windows.

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Friday, May 27, 2022 11:26 AM
**To:** Elizabeth K. McCloskey <EMcCloskey@keker.com>; Jason George <JGeorge@keker.com>; CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com; sohom.datta@lw.com
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

[EXTERNAL]

Elizabeth,

We are not available on Tuesday, 5/31 at 3-5 PM PT / 6-8 PM ET.  We are available to meet and confer on Wednesday, 6/1 between 10-11 AM ET / 7-8 AM PT and 3-6 PM ET / 12-3 PM PT.  Please let us know if there is a time in those windows that works for your team.

Thanks,
Jackie

**From:** Elizabeth K. McCloskey <emccloskey@keker.com>
**Sent:** Friday, May 27, 2022 12:43 PM
**To:** Carney, Jackie (DC) <Jackie.Carney@lw.com>; jgeorge@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>; Datta, Sohom (NY) <Sohom.Datta@lw.com>
**Subject:** Re: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Thank you, Jackie, for providing this additional information. We have had a conflict come up this afternoon, but we are available to meet and confer on Tuesday 5/31 3-5pm. Let us know if there is a time in that window that works for you.

Thanks,
Elizabeth

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Wednesday, May 25, 2022 7:50:04 AM
**To:** Jason George <JGeorge@keker.com>; Elizabeth K. McCloskey <EMcCloskey@keker.com>; CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com <costarcrexi.lwteam@lw.com>; sohom.datta@lw.com <sohom.datta@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

[EXTERNAL]

Jason,

The parties have discussed this issue on multiple occasions, both in the context of CoStar's Interrogatories and in the context of CoStar's First Set of Requests for Production. We provided you with the dates of those meet and confers in our email of May 17. The parties have also sent numerous letters back and forth on these particular discovery requests, the most recent of which confirmed that the parties are indeed at an impasse. *See* Apr. 29, 2022 Letters from S. Tomkowiak to CREXi regarding CoStar's Interrogatories; May 18, 2022 Letter from C. Zaleski to CoStar regarding CoStar's First Set of RFPs, at 2. The parties have more than satisfied Judge Sagar's directives and C.D. Cal. L.R. 37-1. Nevertheless, we will respond to your questions:

1) CREXi's first question is based on the assumption that CREXi's legal conclusion (i.e. that "CREXi has no legal right to demand documents or information from the third parties at issue") is a fact. It is not. The Court (not CREXi) will decide whether CREXi has control over the third parties at issue. Further, we have asked several times, including during our meet and confers on January 25 and March 21, 2022, whether CREXi has asked any of the third parties at issue for responsive information, and if so, whether any of the third parties have refused to provide it. CREXi has been evasive each time.

2) The third parties CoStar contends are within CREXi's control for the purposes of these requests are ███████ ████████████████████████████████████████████████████████████████ 7) the individuals referenced as "contractors" in CREXi's Supplemental Response to Interrogatory No. 5; and (8) any other third parties retained by CREXi to perform similar work that are presently unknown to CoStar. As for the factual bases for our assertion of control, we point you to the numerous discovery correspondence we have sent on this subject, and in particular, our letter of April 22, 2022 regarding CoStar's First Set of Requests for Production, at 2-3.

3) Contrary to your assertion, CoStar has cited multiple cases to support its position that CREXi has control over the third parties listed above. Again, we direct you to our letter of April 22, 2022 regarding CoStar's First Set of Requests for Production, at 2-3, where we generally discussed our position and responded to your objections regarding discovery of third party documents in this case. In that letter, we cite to:

- *Allen v. Woodford*, No. CVF051104OWWLJO, 2007 WL 309945, at *2 (E.D. Cal. Jan. 30, 2007) *modified on reconsideration*, No. 1:05-CV-1104 OWW NEW, 2007 WL 9747771 (E.D. Cal. Mar. 16, 2007);
- Restatement (Third) of Agency § 1.01, cmt. c.;
- *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1213 (C.D. Cal. 2007);
- *Diaz v. Allstate Ins. Grp.*, 185 F.R.D. 581, 592 (C.D. Cal. 1998); and
- *Abante Rooter & Plumbing, Inc. v. Total Merch. Servs*., *LLC*, No. 19CV05711EMCTSH, 2020 WL 4036386, at *2 (N.D. Cal. July 17, 2020).

This is certainly sufficient legal authority, in addition to *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006), to satisfy L.R. 37-1.

We are available to meet and confer this Friday at 2-2:30 pm PT / 5-5:30 pm ET. Sarah Tomkowiak and Sohom Datta will join from the Latham team.

Best,
Jackie

**Jacqueline T. Carney**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.637.2320
Email: jackie.carney@lw.com
https://www.lw.com

**From:** Jason George <jgeorge@keker.com>
**Sent:** Tuesday, May 24, 2022 2:50 PM
**To:** Carney, Jackie (DC) <Jackie.Carney@lw.com>; emccloskey@keker.com; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Jackie,

We disagree that the parties are at an impasse on this issue, or that CoStar has satisfied its obligation to meet and confer, pursuant both to Judge Sagar's directives, as well as C.D. Cal. L.R. 37-1.  Specifically, we request clarification regarding, at least, the following topics:

(1)  What relief CoStar actually seeks from this request—how you envision CREXi obtaining the information you have requested from the various third parties, when CREXi has no legal right to demand documents or information from the third parties at issue;
(2)  Which specific third parties CoStar contends are within CREXi's control for the purposes of these requests, and CoStar's factual basis for asserting that is the case; and
(3)  What "legal authority [CoStar] believes is dispositive of the dispute," C.D. Cal. L.R. 37-1.  CoStar has only cited a single case, *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006), and that case did not involve an attempt to compel document production from third parties.

We are available to meet and confer this Friday at 2-4 p.m. Let us know if something in that timeframe works for you.

Thanks,
Jason

**Jason George**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1890
+14159628847 direct | 415 391 5400 main
jgeorge@keker.com | vcard | keker.com
Pronouns: He/Him/His

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Monday, May 23, 2022 1:52 PM
**To:** Elizabeth K. McCloskey <EMcCloskey@keker.com>; CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

[EXTERNAL]

Elizabeth,

Thank you for your correspondence of May 20, 2022. We have reviewed your responses regarding Interrogatory Nos. 2, 3, 13 and 14, and we still believe the parties are at an impasse on the issue of CREXi's obligation to obtain responsive

information from its third party agents. Despite your assertion otherwise, CoStar has provided the factual and legal bases for its position that the information sought by these interrogatories and RFP No. 5 is within CREXi's possession, custody and control repeatedly in various discovery correspondence. Thus, we not believe further correspondence on this issue will be productive. We intend to seek relief from the Court.

We propose the following procedure to resolve this dispute:

1. CoStar provides CREXi with its neutral statement (not to exceed one page) on Wednesday, May 25.
2. CREXi has two business days to propose changes to the neutral statement. CREXi's revised neutral statement is due COB Friday, May 27.
3. On Tuesday, May 31, CoStar provides CREXi with (1) the revised neutral statement, identifying any remaining areas of disagreement; (2) its portion of the joint statement (not to exceed 10 pages); and (3) five available dates for a telephone conference with Judge Sagar.
4. On or before June 14, CREXi provides CoStar with (1) its response on available dates and (2) its portion of the joint statement (not to exceed 10 pages). If CREXi is not available on at least three of the five dates proposed by CoStar, you must provide its availability for a meet and confer the following business day.
5. On or before June 20, CoStar may draft a reply (limited to 3 pages).
6. On June 21, CoStar must submit the neutral statement and joint statement to Judge Sagar's chambers.

Please let us know by tomorrow if (1) you consent to the informal discovery process for resolving this dispute; and (2) you agree to the above procedure.

Best,
Jackie

**Jacqueline T. Carney**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.637.2320
Email: jackie.carney@lw.com
https://www.lw.com

---

**From:** Elizabeth K. McCloskey <emccloskey@keker.com>
**Sent:** Wednesday, May 18, 2022 6:04 PM
**To:** Carney, Jackie (DC) <Jackie.Carney@lw.com>; crexstar@keker.com
**Cc:** #C-M COSTAR - CREXI - LW TEAM <COSTARCREXI.LWTEAM@lw.com>
**Subject:** RE: CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

Thanks, Jackie. We are preparing a response to CoStar's correspondence of April 29, which address the discovery requests you list below. Once you've reviewed our correspondence, please let us know if you still consider the parties to be at an impasse, such that you would like to move forward with a motion.

Separately, we provided by email on May 16 a proposed procedure for the cross-motions on ESI custodians. When does CoStar expect to respond to that proposal?

Thanks,
Elizabeth

---

**From:** jackie.carney@lw.com <jackie.carney@lw.com>
**Sent:** Tuesday, May 17, 2022 7:53 AM

**To:** CREXSTAR <CREXSTAR@keker.com>
**Cc:** costarcrexi.lwteam@lw.com
**Subject:** CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc: Consent to Informal Discovery Process

**[EXTERNAL]**

Counsel:

We intend to ask Judge Sagar to resolve the parties' dispute regarding Interrogatory Nos. 2, 3, 13 and 14 and Request for Production No. 5, regarding discovery in CREXi's control from its third-party agents.  We met and conferred on these discovery requests (and generally on the issue of CREXi's obligation to obtain responsive information from its third party agents) on December 6 and December 10, 2021, and January 13, January 25, and March 21, 2022.  We further confirmed that we are at an impasse on this discovery in our April 22 and April 29, 2022 correspondence, and stated that we would seek relief from the Court.

Please let us know by Thursday, May 19, if (1) you consent to the informal discovery process for resolving this dispute; and (2) will agree to follow the procedure that we laid out in our May 10 email for this particular dispute.

Best,
Jackie

**Jacqueline T. Carney**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.637.2320
Email: jackie.carney@lw.com
https://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

Exhibit C, Page 240

# EXHIBIT D

1 | BRAD D. BRIAN (State Bar No. 79001)
brad.brian@mto.com
2 | KEVIN L. BRADY (State Bar No. 287771)
kevin.brady@mto.com
3 | MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
4 | Thirty-Fifth Floor
Los Angeles, California 90071-1560
5 | Telephone:    (213) 683-9100
Facsimile:     (213) 687-3702
6 |

**FILED**
Superior Court of California
County of Los Angeles

APR 1 2 2016

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Shaunya Bolden

7 | CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
8 | MUNGER, TOLLES & OLSON LLP
560 Mission Street
9 | Twenty-Seventh Floor
San Francisco, California 94105
10 | Telephone:    (415) 512-4000
Facsimile:     (415) 512-4077

11 |

12 | Attorneys for Ten-X, LLC

13 |

14 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

15 |

16 |
TEN-X, LLC

17 |                    Plaintiff,

18 |          vs.

19 | COMMERCIAL REAL ESTATE
20 | EXCHANGE, INC., MICHAEL
DEGIORGIO, AND DOES 1-5,

21 |

22 |                    Defendants.

**BC 6 1 6 6 0 0**

Case No.

**COMPLAINT FOR:**
**(1) MISAPPROPRIATION OF TRADE SECRETS;**
**(2) BREACH OF THE DUTY OF LOYALTY;**
**(3) BREACH OF CONTRACT (INVENTION AGREEMENT);**
**(4) BREACH OF CONTRACT (CONFIDENTIALITY AGREEMENT)**

23 |

24 |

**JURY TRIAL DEMANDED**

25 |

26 |

27 |

28 |

Exhibit D, Page 241

1    Plaintiff Ten-X, LLC, formerly known as Auction.com, LLC ("Ten-X" or "Plaintiff"), by
2  and through its undersigned attorneys, brings this complaint against Commercial Real Estate
3  Exchange Inc., referred to as "CREXi," its founder and Chief Executive Officer, Mike DeGiorgio
4  ("DeGiorgio"), and Doe Defendants 1-5 (collectively "Defendants") for damages, unjust
5  enrichment, injunctive relief, and other remedies. Ten-X alleges on personal knowledge all facts
6  known to it, and on information and belief as to all other facts, as follows:

7                              **SUMMARY OF ALLEGATIONS**

8         1.    This case is about a start-up online commercial real estate company, CREXi, that
9  recently launched based on stolen ideas, inventions, know-how, trade secrets, and confidential
10  information taken from Ten-X, the nation's largest and most successful online real estate
11  marketplace. Specifically, CREXi's co-founder and Chief Executive Officer, Defendant Mike
12  DeGiorgio, started working on the know-how, ideas and information for CREXi while employed
13  by Ten-X but failed to disclose his work in violation of his contractual obligations and his duty of
14  loyalty to Ten-X. Further, DeGiorgio misappropriated valuable trade secret and confidential
15  business information belonging to his employer Ten-X as he was founding his new start-up,
16  CREXi. Ten-X brings this litigation to enjoin the improper use of its ideas, inventions, trade
17  secrets, and confidential information at CREXi and to receive compensation – through unjust
18  enrichment damages or royalties – for the use of its property.

19        2.    Ten-X is an online real estate marketplace that brings together buyers and sellers,
20  and the agents and brokers who represent them, to conduct real estate transactions online from
21  start to finish. Until recently, the company was called "Auction.com," and its business consisted
22  of running online auctions for residential and commercial real estate. In January of this year, the
23  company rebranded itself to become "Ten-X," and it announced that it was expanding its business
24  offerings to include a new "non-auction" product called "Offer Select" that facilitates commercial
25  real estate transactions online in a more traditional real estate format without the auction clock.
26  Ten-X's auction and non-auction products are distinguished from other real estate websites that
27  merely contain property listings. In contrast, Ten-X allows users to buy and sell properties

28

Exhibit D, Page 242

1  entirely through the internet, from start to finish – finding the property, conducting due diligence,

2  filling out the required paperwork, signing legal documents, and closing the transaction.

3       3.       The start-up CREXi is the only other real estate company known to Ten-X that also

4  offers an online commercial real estate tool that claims to facilitate real estate transactions from

5  start to finish.  CREXi issued a press release on February 25, 2016, entitled: "CREXi Launches

6  Platform to Transform the Trillion Dollar Commercial Real Estate Market...."  CREXi's press

7  release described its business as "a commercial real estate marketplace that simplifies transactions

8  for brokers with a suite of easy-to-use tools to manage the entire process from listing to closing."

9       4.       Several former Ten-X employees founded and now run CREXi.  One of those

10  former Ten-X employees, DeGiorgio, serves as CREXi's Chief Executive Officer.

11       5.       Ten-X is informed and believes and therefore alleges that DeGiorgio began

12  working on founding CREXi in the summer of 2014 while a Vice President of Business

13  Development at Ten-X.  He was observed meeting with another co-founder from Ten-X at his

14  home to develop the know-how, ideas, and information for CREXi's commercial real estate

15  product that would operate online and outside the confines of an "auction" timed bidding process.

16  Ten-X is informed and believes and therefore alleges that he solicited investments for the new

17  company and received an investment from a Ten-X customer, Leon Capital, who gave him

18  $200,000 for the company.  CREXi was incorporated by Cooley, who Ten-X is informed and

19  believes are DeGiorgio's attorneys, in October 2014, and DeGiorgio resigned shortly thereafter in

20  November 2014.

21       6.       Ten-X welcomes competition in the online real estate marketplace, and it

22  recognizes that in California employees are free to move openly between employers.  Ten-X

23  objects, however, to Defendants' misconduct in the creation and operation of CREXi.  CREXi is a

24  company built on stolen ideas and information and is not competing fairly against Ten-X.  The

25  problems are numerous.

26       7.       *First*, Ten-X owns the designs, know-how, and idea for CREXi because DeGiorgio

27  created CREXi in 2014 while employed by Ten-X.  DeGiorgio agreed, in his Proprietary

28  Information and Inventions Agreement ("Invention Agreement"), that Ten-X "shall own all right,

1  title, and interest…relating to any and all inventions…, designs, know-how, ideas and information

2  made or conceived or reduced to practice, in whole or in part, by me during the term of my

3  employment with the Company….” Under the Invention Agreement, DeGiorgio was required to

4  “promptly disclose” to Ten-X any such inventions, designs, know-how, ideas, or information

5  conceived of during his employment and then to “make all assignments necessary to accomplish”

6  Ten-X’s ownership of the ideas and inventions. DeGiorgio did not do that.

7      8.    DeGiorgio breached his Invention Agreement and violated his duty of loyalty to

8  Ten-X because he never disclosed his work developing a non-auction commercial real estate

9  product for CREXi while he was employed by Ten-X. In fact, he did the opposite. DeGiorgio hid

10  from Ten-X’s management his work on CREXi.

11      9.    *Second,* DeGiorgio also stole Ten-X trade secret and confidential information.

12  Starting in July 2014 and continuing to a few weeks before his resignation in November 2014,

13  DeGiorgio forwarded dozens of highly confidential, trade secret customer lists to his personal

14  email account. These spreadsheets contain more than 7,000 customer names, as well as contact

15  information, and in many instances, information about buying preferences. These customers were

16  buyers and potential buyers who had visited Ten-X’s real estate listings, attended Ten-X open

17  houses, or were otherwise identified by Ten-X as potential buyers.

18      10.   DeGiorgio also emailed to his personal email address internal legal documents and

19  analysis compiled by Ten-X’s in-house counsel related to the commercial real estate business. For

20  one of these documents, Ten-X’s counsel explicitly instructed: “Please do not distribute the

21  attached to anyone outside of Auction.com as it is <u>intended for internal use only</u> and solely to be

22  used for your informational and educational purposes” (emphasis added).

23      11.   CREXi and DeGiorgio’s misappropriation of Ten-X information violates the

24  California Uniform Trade Secret Act (“CUTSA”) and DeGiorgio’s confidentiality agreements

25  with Ten-X.

26      12.   Ten-X tried to address its concerns with CREXi and DeGiorgio directly without

27  burdening the Court, but it was unsuccessful in achieving a resolution of its dispute. Therefore,

28  Ten-X turns to the Court and respectfully requests (a) an injunction against CREXi’s continued

-4-

COMPLAINT

Exhibit D, Page 244

04/12/2016

1 use of Ten-X trade secrets and confidential information, (b) an injunction against the operation of
2 a business owned by Ten-X pursuant to the Invention Agreement, (c) unjust enrichment damages
3 for the improper benefit Defendants obtained from the use of Ten-X trade secrets and confidential
4 information, and/or (d) a royalty for any continued use of Ten-X's ideas, inventions, know-how,
5 trade secrets, and confidential information.

**THE PARTIES**

7     13.     Plaintiff Ten-X is a Delaware limited liability company with its principal place of
8 business in Irvine, California. Until recently, Ten-X was known as Auction.com, LLC, but in
9 early 2016, it transitioned to its new name Ten-X as it debuted a new, broader line of online real
10 estate businesses that go beyond traditional auctions.

11     14.     Ten-X is informed and believes and therefore alleges that Defendant CREXi is a
12 Delaware corporation and has its principal place of business in Venice Beach, California.

13     15.     Ten-X is informed and believes and therefore alleges that Defendant Michael
14 DeGiorgio is an individual who resides in Marina del Rey, California. On information and belief,
15 he is the founder and Chief Executive Officer of CREXi. Through November 21, 2014,
16 DeGiorgio was the Vice President of Business Development for Auction.com (now Ten-X).

17     16.     The true names and capacities, whether individual, corporate, associate or
18 otherwise, of defendants named DOES 1 through 5, inclusive, are unknown to Plaintiff, who sues
19 these defendants by fictitious names. Ten-X is informed and believes and therefore alleges that
20 each of Defendants designated as a DOE is responsible in some manner for the events and
21 happenings referred to herein and thereby proximately caused harm to Ten-X. Plaintiff will seek
22 leave of this Court to amend this complaint to state the true names and capacities of such
23 fictitiously named defendants when appropriate facts have been ascertained.

24     17.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant
25 times, DeGiorgio was and now is the agent, servant, employee, and representative of CREXi and,
26 in doing the things herein alleged, was acting within the course and scope of his authority as an
27 agent, servant, employee, representative and alter ego with the permission and consent of CREXi.

28

04/12/2016

-5-
COMPLAINT

Exhibit D, Page 245

1

**JURISDICTION AND VENUE**

2        18.     This Court has jurisdiction over Defendants because they are domiciled and/or have
3    their principal place of business in California.

4        19.     Venue is proper in this Court pursuant to California Code of Civil Procedure
5    Section 395.5. Ten-X is informed and believes and therefore alleges that Defendant CREXi has
6    its principal place of business in Venice Beach, which is in Los Angeles County. Ten-X is
7    informed and believes and therefore alleges that Defendant DeGiorgio has during the course of
8    founding CREXi lived in Los Angeles County, and his address as the agent for service of process
9    for CREXi is in Marina del Rey, California, which is in Los Angeles County. Thus, Ten-X is
10   informed and believes and therefore alleges that the unlawful conduct alleged herein took place
11   and/or had effects in Los Angeles County.

12

**FACTUAL ALLEGATIONS**

13

**Ten-X's Business and Protectable Interests**

14       20.     Ten-X is the nation's leading online real estate marketplace. It is a marketplace
15   where buyers, sellers, and the agents and brokers who represent them can buy and sell residential
16   and commercial real estate entirely online. Buyers and sellers can choose to engage in real estate
17   transactions either though an online auction or through a more traditional non-auction process
18   where there is no deadline on the end of the bidding process.

19       21.     Ten-X's customers are both the buyers and the sellers of real estate. It has invested
20   significant resources to develop robust and detailed customer information and relationships.

21       22.     On the seller side, Ten-X has developed strong relationships with sellers of
22   residential and commercial property across the nation. Some of its largest customers are financial
23   institutions that hold a large number of foreclosed properties that are a natural fit for the online
24   auction process. Ten-X also has customers who are smaller real estate investors, investment firms,
25   small companies, individuals, and brokers. Ten-X competes against other traditional and online
26   real estate companies to become the exclusive listing for commercial and residential real estate
27   properties across the country.

28

04/12/2016

-6-

Exhibit D, Page 246

23.     On the buyer side, Ten-X's customers are individuals and businesses who buy commercial and residential real estate and are willing to do so online.  Again, these customers include large companies, small investment firms, partnerships, individuals, and "mom and pop" shops – anyone worldwide who buys real estate online.  Ten-X has invested significant time and resources building a database of actual and potential online real estate buyers.  When a potential buyer looks at real estate listings on Ten-X's website, the potential buyer must have a Ten-X account and sign a confidentiality agreement to see detailed information about the property.  When the customer creates an account and signs a confidentiality agreement, Ten-X compiles the customer information in its customer database.  The database stores information about the name, address, email, phone number of the buyer, the buyer's interest in commercial or residential properties, which properties they are interested in, and the date and frequency that the customer viewed the listing.  Ten-X employees often annotate the customer's database entry with further commentary based on conversations and communications with the potential buyer.  This information helps with the existing real estate listing for which the potential buyer expressed interest, and to provide information about that potential customer for future listings.  Reports can be run from the various Ten-X database tools that hold this customer information.  To run a report, the user must login with a password.  These reports that list information on customers from the database are called "Heat Trees" or "Lead Lists."

24.     Heat Trees and Lead Lists are important for Ten-X's sales team when the team is working on generating buyer interest for a new property listing.  For example, if a new commercial property – such as a hotel – is going online, the sales team works to market the listing to potential buyers so that there are more interested bidders.  They will do that through email blasts with property information, and the Heat Trees and Lead Lists are helpful to provide a targeted and sometimes personalized mailing list for potential buyers who have demonstrated interest in buying that type of commercial real estate online.  The sales team will also reach out through targeted communications to particular potential buyers using the Heat Trees and Lead Lists, and the associated annotations.  Without this detailed compilation of potential customers, Ten-X would have a much harder time identifying potential buyers and promoting its properties to

COMPLAINT

Exhibit D, Page 247

04/12/2016

1    them.  In the hands of a competitor, the Heat Trees and lead lists would be valuable and provide a

2    head start in developing and implementing a marketing plan for a commercial real estate listing.

3          25.     Ten-X takes reasonable steps to maintain the confidentiality of these Heat Trees

4    and Lead Lists, including by entering into confidentiality agreements with its employees that are

5    designed to protect this type of proprietary information.  In addition, Ten-X keeps its database

6    with this customer information protected with a password and login requirement so that only

7    authorized Ten-X employees can access the information.  Further, Ten-X instructs its employees

8    about the importance of maintaining the confidentiality of Ten-X proprietary information through

9    its Employee Handbook.

10                             **DeGiorgio's Employment at Ten-X**

11          26.     Defendant DeGiorgio worked at Ten-X on commercial real estate business

12    development from January 2013 until his last day of employment on November 21, 2014.  At the

13    time he resigned, he was a Vice President of Business Development.

14          27.     While at Ten-X, DeGiorgio worked with people across a variety of departments to

15    facilitate online commercial real estate auctions and to discuss how to grow and expand the Ten-X

16    product offering.

17          28.     When he accepted his offer of employment, DeGiorgio signed his offer letter,

18    which is attached as **Exhibit A**.  Among other things, the offer letter provided: "During the course

19    of your employment with the Company, you will be provided and have access to confidential

20    business information and trade secrets, including the receipt of confidential information necessary

21    to your employment and the receipt of training to effectively perform the functions of your

22    position ("Confidential Information").  Except as required in the performance of your duties, you

23    will not, at any time during or after your employment, use, disclose or disseminate any

24    Confidential Information.  You shall deliver to the company any and all copies of Confidential

25    Information, or other Company property, upon the termination of the employment relationship,

26    and at any other time upon the Company's request."

27          29.     DeGiorgio also agreed to the terms of the Employee Handbook, which had a

28    section on Confidentiality.  The Employee Handbook provided, among other things, that

Exhibit D, Page 248

1  DeGiorgio would "have access to Confidential Information about the Company's products,

2  marketing strategies, employee relationships and/or business plans, including, without limitation,

3  information relative to research, development, supplies, purchasing, business studies, plans,

4  projections, practices, customer and employee information and finances." The Handbook further

5  provided various policies and procedures for using Ten-X's computer system. Specifically, the

6  Handbook provided: "Employees may not leak, place, post, email, transmit, or otherwise disclose

7  confidential, non-public, sensitive and/or proprietary Company information to anyone outside of

8  the Company by any means not approved by the CIO, at any time or for any reason, or otherwise

9  use Technology Resources in violation of customers', clients' or employees' confidentiality

10  agreements with the Company." The "Standards of Conduct" for Ten-X are set forth in the

11  Handbook and grounds for discipline include "[u]nauthorized use of Company equipment, time,

12  materials, and facilities" and "[d]isclosure or misappropriation of proprietary, confidential or trade

13  secret information of the Company." A copy of that Employee Handbook section is attached as

14  **Exhibit B**.

15        30.      Moreover, DeGiorgio signed an Invention Agreement at the commencement of his

16  employment. A copy of that agreement is attached as **Exhibit C**. Paragraph 2 of that Agreement

17  provides: "Company shall own all right, title and interest (including patent rights, copyrights, trade

18  secret rights, mask work rights, *sui generis* database rights and all other intellectual and industrial

19  property rights of any sort throughout the world) relating to any and all inventions (whether or not

20  patentable), works of authorship, mask works, designs, know-how, ideas and information made or

21  conceived or reduced to practice, in whole or in part, by me during the term of my employment

22  with Company to and only to the fullest extent allowed by California Labor Code Section 2870

23  (which is attached as Appendix A) (collectively "Inventions") and I will promptly disclose all

24  Inventions to Company. I will also disclose anything I believe is excluded by Section 2870 so that

25  the Company can make an independent assessment. I hereby make all assignments necessary to

26  accomplish the foregoing." The Invention Agreement attached a copy of Labor Code Section

27  2870.

28

04/12/2016

31.     The Invention Agreement also reminds DeGiorgio of his obligations to protect and not disclose Ten-X's confidential information, providing: "that all inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of company or that are received by or for Company in confidence, constitute 'Proprietary Information.' I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information."

32.     The Invention Agreement also requires at Paragraph 5 as follows: "Until one (1) year after the term of my employment, I will not encourage or solicit any employee or consultant of Company to leave Company for any reason (except for the bona fide firing of Company personnel within the scope of my employment)."

33.     Finally, the Invention Agreement states in Paragraph 9: "I also understand that any breach of this Agreement will cause irreparable harm to Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond."

### DeGiorgio Builds CREXi While Working for Ten-X and Misappropriates Ten-X Trade Secret and Confidential Information

34.     Ten-X is informed and believes and therefore alleges that while still employed by Ten-X, DeGiorgio decided to form a rival online commercial real estate company.

35.     In 2014, DeGiorgio was introduced to Fernando De Leon of Leon Capital through a commercial real estate transaction for Ten-X. DeGiorgio worked with De Leon on a transaction wherein Leon purchased a commercial property through a Ten-X auction. Thereafter, in May 2014, DeGiorgio met with De Leon and a representative of Ten-X in Las Vegas at an industry conference and discussed potential business opportunities through Ten-X.

36.     Starting in July 2014 and continuing to a few weeks before his resignation in November 2014, DeGiorgio forwarded more than thirty-five highly confidential Heat Trees, Lead Lists, and other customer spreadsheets from his Ten-X email to his personal email address

04/12/2016

1  containing more than 7,000 customer entries. DeGiorgio never asked for permission to forward
2  Ten-X confidential information such as Heat Trees, Lead Lists, and other customer spreadsheets to
3  his personal email; nor was such conduct authorized by anyone at Ten-X.

4       37.     On July 23 and August 14, 2014, DeGiorgio forwarded highly confidential and
5  privileged legal memoranda and analysis by Ten-X legal counsel from his Ten-X email to his
6  personal email. One forwarded email attached "a guidebook we put together that has a state-by-
7  state summary of what activities require a real estate license" and the other was described as
8  "FAQs on sales governed by a 1031 Exchange." Ten-X counsel noted in the 1031 Exchange
9  email: "Please do not distribute the attached to anyone outside of Auction.com as it is intended for
10  internal use only and solely to be used for your informational and educational purposes."

11       38.     Ten-X is informed and believes and therefore alleges that DeGiorgio tried to cover
12  up his wrongdoing by deleting the confidential emails he forwarded to his personal email address.
13  The vast majority of those forwarded emails were recovered from his deleted items folder in his
14  Ten-X email. Ten-X is informed and believes and therefore alleges that DeGiorgio knew or had
15  reason to know that sending this information to his personal email was improper.

16       39.     In the midst of emailing these documents to himself, on August 20, 2014,
17  DeGiorgio emailed a Ten-X employee about a meeting at Houston's restaurant. He asked: "Any
18  interest in coming to this tonight? Interesting new business idea here. Worth your time." The
19  same day, DeGiorgio emailed Matthew Cors, Erek Benz, and two other Ten-X employees,
20  encouraging them to attend the Houston's meeting to discuss a "new venture investment
21  opportunity" related to real estate.

22       40.     Ten-X is informed and believes and therefore alleges that after the August 20
23  Houston's invitation and while still employed by Ten-X, DeGiorgio worked with Ten-X employee
24  Erek Benz at DeGiorgio's apartment on developing a new online commercial real estate business
25  idea. Ten-X is informed and believes and therefore alleges that at first, DeGiorgio worked on the
26  development of this new business from his Ten-X computer and his Ten-X phone, but later he
27  purchased a separate personal computer and personal phone that he used for his CREXi work at
28  home.

Exhibit D, Page 251

1    41.    Also close to the time of the August 20 invitation to Houston's, Ten-X is informed
2  and believes and therefore alleges that DeGiorgio sought and received an investment of $200,000
3  from Leon Capital for his new business. Leon Capital's website states that it invested in CREXi
4  in 2014.[1]

5    42.    On September 18, 2014, DeGiorgio emailed his work contacts from his Ten-X
6  email to his personal email. This detailed contact list contains more than 1,300 entries, which
7  include the contact's name, company, job title, mailing address, business and mobile phone
8  number, email address, and in many instances, specific information about the contact's buying and
9  selling history and preferences. Ten-X is informed and believes and therefore alleges that
10  DeGiorgio compiled this contact list primarily in the course of his employment for Ten-X.

11    43.    On October 1, 2014, DeGiorgio canceled a previously scheduled appointment with
12  a friend and explained: "I have an opportunity to drive a couple deals I'm working on outside of
13  auction. Came up late but could be big for me personally. Any chance we can grab a drink later
14  tonight?"

15    44.    On October 6, 2014, Erek Benz, who had been hired by Ten-X at DeGiorgio's
16  recommendation just a few months earlier, resigned.

17    45.    Benz's Linked In profile lists him as a "Co-Founder" of CREXi.

18    46.    On October 10, 2014, CREXi was incorporated as a Delaware corporation. Cooley
19  LLP filed the incorporation paperwork. Ten-X is informed and believes and therefore alleges that
20  Cooley is DeGiorgio's counsel.

21    47.    On October 23, 2014, the www.crexi.com domain name was registered.

22    48.    On November 21, 2014, DeGiorgio resigned from Ten-X. He told supervisors at
23  Ten-X that he was resigning to spend time with a sick relative. He did not tell any of his
24  supervisors about his work creating a rival commercial real estate company that would compete
25  directly with Ten-X.

26

27  _____

28  [1] http://leoncapitalgroup.com/crexi/ (last visited March 21, 2016)

04/12/2016

49.     DeGiorgio's Linked In profile lists him as a "Co-Founder" and Chief Executive Officer of CREXi.

50.     Upon resigning from Ten-X, DeGiorgio did not return to the company the Heat Trees, customer lists, legal memoranda and other proprietary information that he sent to his personal email account over the prior five months.  Nor did he inform Ten-X that he had sent this information to himself and thus would have access to it after resigning.  Likewise, DeGiorgio never informed Ten-X that he had developed the idea for CREXi prior to his resignation.

**Further Departures for CREXi**

51.     After Benz and DeGiorgio resigned, Luke Morris continued to work at Ten-X and to gain access to highly sensitive, confidential Ten-X information.  For example, he attended meetings in which there were discussions of the development of Ten-X's own highly confidential new non-auction product that did not launch publicly until March 2016.  Ten-X is informed and believes and therefore alleges that Luke Morris stayed behind at Ten-X as a mole to gather additional trade secret and confirmation information for CREXi.

52.     In January 2015, Luke Morris scanned and emailed himself a CREXi non-disclosure agreement.  The next month, he took notes with the subject "CREXi" that included items such as "Data driven guidance that includes stock prices, comps, commodities, trends, etc (site wsj article)," "Simple video like iex," "Legal zoom - adjust the contract online to your liking," and "Linked in - log in with your professional profile."  On February 5, 2015, DeGiorgio had a scheduled meal on his Outlook calendar with Luke Morris.

53.     From April 1-7, 2015, Luke Morris ran a variety of searches for Heat Trees and Lead Lists on Ten-X's proprietary database.

54.     Then on April 6, 2015, Luke Morris received an email from Jeremy Griffen of Rialto Capital, the subject line of which is "Crexi."  Griffen said: "Hey bud, spoke to Mike D about this last week…he mentioned you are pretty familiar with it.  Have a few minutes to catch up about it this week."  Lucas responded "Yes I do.  Are you free tomorrow."

55.     On May 8, 2015, Luke Morris resigned from Ten-X.  Morris told Ten-X Founder Jeff Frieden and his supervisor Joe Cuomo that he was leaving Ten-X to develop an application

-13-
COMPLAINT

04/12/2016

1   with his father that would allow users to lease apartment buildings. Luke Morris did not disclose
2   that he was joining CREXi.

3       56.     Luke Morris's Linked-In profile indicates that he is "Co-Founder and CPO" of
4   CREXi.

5       57.     Luke Morris was not the only future CREXi employee to stay behind and continue
6   to work for Ten-X.

7       58.     On August 18, 2015, Ethan Morris resigned from Ten-X. Ten-X is informed and
8   believes and therefore alleges that Ethan Morris joined CREXi. Ethan Morris is identified on
9   CREXi's website as working there in "sales."

10      59.     On August 25, 2015, Matthew Cors resigned from Ten-X. He was a client manager
11  at Ten-X. Ten-X is informed and believes and therefore alleges that Cors joined CREXi. Cors is
12  identified on CREXi's website as working there in "customer experience."

13      60.     On September 11, 2015, Steve Narrish resigned from Ten-X. He was a client
14  manager at Ten-X. Ten-X is informed and believes and therefore alleges that Narrish joined
15  CREXi. Narrish is identified on CREXi's website as working there in "sales."

16                          **CREXi Launches Its New Product**

17      61.     On February 25, 2016, CREXi issued a press release entitled "CREXi Launches
18  Platform to Transform the Trillion Dollar Commercial Real Estate Market…." The press release
19  describes Luke Morris, DeGiorgio, and Benz as "co-founders" of a business that is a "commercial
20  real estate platform for brokers, buyers and sellers." It goes on: "CREXi is a commercial
21  marketplace that simplifies transactions for brokers with a suite of easy-to-use tools to manage the
22  entire process from listing to closing."

23      62.     Ten-X has analyzed the information about CREXi's product available on its
24  website. It appears to offer a commercial real estate product that is very similar to Ten-X's Offer
25  Select. Offer Select is Ten-X's new "non-auction" product that began development in 2014 and
26  debuted the week of March 15, 2016 at the South by Southwest Interactive festival in Austin,
27  Texas.

28

-14-

COMPLAINT

Exhibit D, Page 254

1    63.    In the short time that CREXi has been on the market, Ten-X has lost at least one

2    customer to CREXi. The two sites are competitors and will compete both for the best listings

3    from sellers and for the attention of buyers of commercial real estate online.

4    64.    Ten-X is informed and believes and therefore alleges that CREXi was able to

5    circumvent some of its start-up costs by utilizing Ten-X's trade secret and confidential customer

6    and legal information. As a result, CREXi obtained an unfair and improper head start.

7    **Efforts to Resolve Without Court Intervention Were Unsuccessful**

8    65.    Ten-X reached out to CREXi and DeGiorgio about its concerns that CREXi's

9    business was based on stolen ideas, documents, and information from Ten-X. The parties were

10   unable to reach any agreement. Ten-X therefore respectfully comes before the Court seeking

11   relief.

12   <div align="center">

**FIRST CAUSE OF ACTION**
**Misappropriation of Trade Secrets in Violation of the**
13   **California Uniform Trade Secrets Act, California Civil Code § 3426, *et seq.***

14   **(CREXi, DeGiorgio, & Does 1-5)**
</div>

15   66.    Ten-X realleges and incorporates by reference Paragraphs 1 - 65.

16   67.    DeGiorgio had access to highly confidential and proprietary information about

17   Ten-X's online commercial real estate business while working for Ten-X.

18   68.    Specifically, DeGiorgio had access to confidential compilations of customer

19   information, including those defined above as "Heat Trees" or "Lead Lists." DeGiorgio also had

20   access to a confidential summaries of Ten-X's legal analysis, including guidebook with a state-by-

21   state summary of what activities require a real estate license and a detailed memorandum on sales

22   governed by a 1031 Exchange. These were prepared by Ten-X's counsel and will be referred to

23   here as "Legal Memos." Collectively, this information shall be referred to as the "Trade Secrets."

24   69.    The Trade Secrets constitute trade secrets as defined by California's Uniform Trade

25   Secret Act, Civil Code, section 3426, et seq.

26   70.    Ten-X derives independent economic value from the Trade Secrets by virtue of the

27   fact that they are kept secret and are not in the hands of its competitors.

28

04/12/2016

<div align="center">
-15-

COMPLAINT
</div>

1     71.    The Trade Secrets are a compilation of information that standing alone might not

2 be a trade secret, but in the aggregate, constitute a protectable trade secret.

3     72.    Ten-X spent considerable time and energy developing the Trade Secrets. Ten-X is

4 informed and believes and therefore alleges that having access to these Trade Secrets gave CREXi

5 an unfair head start and allowed CREXi to launch its business and market its properties faster than

6 it would have been able to do so if it started from scratch.

7     73.    Ten-X takes reasonable steps to keep the Trade Secrets confidential and out of the

8 hands of its competitors. These efforts include having employees sign confidentiality agreements

9 as a condition of employment, instructing employees about confidentiality obligations in the

10 Employee Handbook, and password protecting the database that holds the Trade Secrets.

11     74.    The efforts Ten-X takes to keep the Trade Secrets confidential are reasonable under

12 the circumstances to maintain their secrecy.

13     75.    DeGiorgio misappropriated and threatened to misappropriate the Trade Secrets by

14 emailing them to his personal email address from his Ten-X email address from July 2014 through

15 the end of October 2014 in violation of his obligation not to disclose Ten-X's proprietary and

16 confidential information.

17     76.    CREXi, by and through DeGiorgio, also misappropriated and threatened to

18 misappropriate the Trade Secrets when they were emailed by DeGiorgio to his personal Google

19 email address after the founding of CREXi.

20     77.    DeGiorgio disclosed the Trade Secrets of Ten-X to his personal Google email

21 without the express or implied consent of Ten-X and in violation of his duties to maintain the

22 secrecy of the Trade Secrets and to limit their use. In doing so, DeGiorgio personally acquired

23 these Trade Secrets.

24     78.    At the time of this disclosure and acquisition, Defendants knew or had reason to

25 know that the disclosure of the Trade Secrets to DeGiorgio's personal Google email and

26 DeGiorgio's accompanying acquisition of the Trade Secrets happened through improper means,

27 including in breach of DeGiorgio's contractual obligation not to disclose Ten-X's proprietary and

28 confidential information.

Exhibit D, Page 256

79.     Defendants' misappropriation of the Trade Secrets has harmed and threatens to harm Ten-X and/or unjustly enriched Defendants.  Among other things, Ten-X is informed and believes and therefore alleges that CREXi and DeGiorgio were able to raise money for, launch, and operate CREXi faster and with less start-up expense by virtue of DeGiorgio having misappropriated the Trade Secrets to his personal email address.

80.     On information and belief, Defendants' misappropriation of the Trade Secrets was willful and malicious and, accordingly, Ten-X is entitled to recover exemplary damages and its reasonable attorneys' fees and costs.

81.     Defendants' actions have caused and will continue to cause irreparable harm to Ten-X unless enjoined by the Court.  Ten-X has no adequate remedy at law.  Accordingly, Ten-X is entitled to injunctive relief pursuant to California Civil Code section 3426.2.

## SECOND CAUSE OF ACTION
### Breach of the Duty of Loyalty

### (DeGiorgio and Does 1-5)

82.     Ten-X realleges and incorporates by reference Paragraphs 1 - 65.

83.     While an employee, DeGiorgio owed to Ten-X at all times a duty of loyalty under the common law and applicable California statutes, including California Labor Code sections 2854, 2860, and 2863.

84.     As part of his duty to Ten-X, DeGiorgio owed duties of undivided loyalty and care and was obligated not to take action inimical to the best interests of Ten-X.  Consistent with that duty, DeGiorgio signed an Invention Agreement, and Section 6 provided that he would not engage in outside business activities that compete with, or may have the appearance of competing with the interests of Ten-X during the term of his Ten-X employment.

85.     While employed by Ten-X, DeGiorgio violated his duty of loyalty by developing and starting (through conduct wholly independent of the threatened or actual misappropriation of Ten-X's Trade Secrets) CREXi's online commercial real estate business that will directly compete with Ten-X's online commercial real estate business.

-17-
COMPLAINT

Exhibit D, Page 257

1     86.    Ten-X is informed and believes and therefore alleges that DeGiorgio further

2  violated his duty of loyalty by soliciting a Ten-X customer, Leon Capital, while still employed by

3  Ten-X and asking the customer to invest in DeGiorgio's new competitive business.

4     87.    DeGiorgio's actions are in violation of his duties to Ten-X and have caused and

5  will cause irreparable harm to Ten-X for which there is no adequate remedy at law.

6     88.    Ten-X was harmed as a proximate result of DeGiorgio's breach of his duty of

7  loyalty to Ten-X.

8     89.    Ten-X is entitled to an award for all of the damages it has suffered as a result of

9  DeGiorgio's breach of his duty of loyalty, including but not limited to the return of all wages,

10  compensation and other benefits that DeGiorgio received from Ten-X during the period of breach

11  of loyalty.

12     90.    Plaintiff is informed and believes and thus alleges that each of the acts by

13  DeGiorgio was done willfully and maliciously, with the deliberate intent to injure Ten-X's

14  business and improve his own business, for financial gain, thereby entitling Ten-X to exemplary

15  damages and/or attorneys' fees to be proved at trial.

### THIRD CAUSE OF ACTION
### Breach of Contract (Invention Agreement)

### (DeGiorgio and Does 1-5)

91.    Ten-X realleges and incorporates by reference Paragraphs 1 - 65.

92.    DeGiorgio signed an Invention Agreement for good and valuable consideration when he commenced his employment at Ten-X.  Ten-X has performed all of its obligations under this valid agreement except those it was prevented or excused from performing.  The agreement is attached as **Exhibit C.**

93.    The Invention Agreement provided: "Paragraph 2 of that Agreement provides: "Company shall own all right, title and interest (including patent rights, copyrights, trade secret rights, mask work rights, *sui generis* database rights and all other intellectual and industrial property rights of any sort throughout the world) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or

04/12/2016

1 | conceived or reduced to practice, in whole or in part, by me during the term of my employment
2 | with Company to and only to the fullest extent allowed by California Labor Code Section 2870
3 | (which is attached as Appendix A) (collectively "Inventions") and I will promptly disclose all
4 | Inventions to Company. I will also disclose anything I believe is excluded by Section 2870 so that
5 | the Company can make an independent assessment. I hereby make all assignments necessary to
6 | accomplish the foregoing." The Invention Agreement attached a copy of Labor Code Section
7 | 2870.

8 |     94.    Paragraph 6 of the Invention Agreement provides: "I agree that during the term of
9 | my employment with Company (whether or not during business hours), I will not engage in any
10 | activity that is in any way competitive with the business or demonstrably anticipated business of
11 | Company, and I will not assist any other person or organization in competing or in preparing to
12 | compete with any business or demonstrably anticipated business of the Company."

13 |     95.    Ten-X is informed and believes and therefore alleges that DeGiorgio began
14 | working on the development of his invention, idea, designs, know-how and plans for the CREXi
15 | business while he was still employed by Ten-X.

16 |     96.    Ten-X is informed and believes and therefore alleges that DeGiorgio developed the
17 | invention, idea, designs, know-how and plans for CREXi during the term of his employment with
18 | Ten-X.

19 |     97.    DeGiorgio never disclosed his invention, idea, designs, know-how and plans for
20 | CREXi to Ten-X as required by Section 2 of the Invention Agreement.

21 |     98.    The invention, idea, designs, know-how and plans for CREXi related (and still
22 | relate) to Ten-X's business, and to its actual and anticipated research or development. In parallel,
23 | Ten-X was developing its own non-auction commercial real estate marketplace online. Therefore,
24 | a non-auction commercial real estate product where transactions are conducted from start to finish
25 | are the type of invention, idea, designs, know-how and plans that must be disclosed and assigned
26 | by DeGiorgio to Ten-X pursuant to Paragraph 2 of the Invention Agreement.

27 |     99.    The failure to disclose his invention, idea, designs, know-how and plans for CREXi
28 | to Ten-X breached the Invention Agreement.

-19-

Exhibit D, Page 259

100.   DeGiorgio's participation in activity that competed with Ten-X during the term of DeGiorgio's employment breached the Invention Agreement.

101.   Ten-X was damaged as a result of the breach of the Invention Agreement.  Ten-X's employee DeGiorgio should have come to Ten-X when he conceived of the idea for, and started developing, CREXi and disclosed that idea.  By not notifying Ten-X, DeGiorgio deprived Ten-X of the valuable option to own the CREXi invention, idea, designs, know-how and plans.

102.   CREXi was also unjustly enriched as a result of its breach of the Invention Agreement.  Any profits that CREXi or DeGiorgio have or will receive from or derived from the stolen invention, idea, designs, know-how and plans for the non-auction commercial real estate business should be disgorged.

103.   Paragraph 9 of the Invention Agreement provides that "any breach of this Agreement will cause irreparable harm to Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond."

104.   DeGiorgio's breach of the Invention Agreement warrants injunctive relief to stop the irreparable harm caused by CREXi's operation as a business based on ideas owned by Ten-X pursuant to the Invention Agreement.

**FOURTH CAUSE OF ACTION**
**Breach of Contract (Confidentiality Agreement)**

**(DeGiorgio and Does 1-5)**

105.   Ten-X realleges and incorporates by reference Paragraphs 1 - 65.

106.   Defendant DeGiorgio signed a binding promise to keep confidential Ten-X's confidential information in the Invention Agreement, the Offer Letter, and the Employee Handbook as set forth above and in Exhibits A-C.  Ten-X has performed all of its obligations under these valid agreements except those it was prevented or excused from performing.

107.   In all instances, DeGiorgio agreed to protect Ten-X's most proprietary information and not to use or disclose it outside of Ten-X.  For example, in the Invention Agreement,

04/12/2016

DeGiorgio agreed "that all inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of company or that are received by or for Company in confidence, constitute 'Proprietary Information.' I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information."

108. DeGiorgio entered into binding agreements in the Invention Agreement, the Offer Letter, and the Employee Handbook upon the commencement of his employment with Ten-X.

109. DeGiorgio materially breached his contractual obligations to maintain the confidentiality of Ten-X's confidential and proprietary information when he emailed the Heat Trees, Lead Lists, and Legal Memos to his personal email address from his Ten-X email address.

110. Ten-X has been injured as a direct and proximate result of Defendant DeGiorgio's breaches and will continue to suffer injury, loss, harm and damage, unless and until Defendant CREXi and DeGiorgio are restrained from further breaches of their obligations and are required to abide by the terms of the agreements.

111. As a direct and proximate result of the conduct of Defendants, and each of them, Ten-X has suffered and continues to suffer damages in an amount according to proof at the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, Ten-X prays that judgment be entered in its favor and against Defendants, as follows:

1. A preliminary injunction and permanent injunction enjoining and restraining Defendants, their representatives, agents, attorneys, and all persons or entities acting in concert with them during the pendency of this action and thereafter perpetually from obtaining, accessing, using, retaining, transmitting, copying, or disclosing any of Ten-X's confidential, proprietary, or trade secret documents or information, including, but not limited to, a preliminary injunction and

Exhibit D, Page 261

1 permanent injunction enjoining and restraining CREXi and DeGiorgio from using, contacting, or

2 communicating in any way with contacts obtained from Ten-X's Heat Trees, Lead Lists, Customer

3 Lists and Contacts of actual or potential customers for commercial online real estate purchases.

4     2.    An Order directing Defendants to immediately return to Ten-X any and all property

5 or information belonging to Ten-X that was retained or disclosed by DeGiorgio or any former

6 Ten-X employee now working at CREXi, including but not limited to electronic devices,

7 equipment, storage media, web-based accounts, confidential documents, spreadsheets, customer

8 lists, files and all documents and development work at CREXi that was derived from Ten-X

9 property or information. Identified Ten-X property at CREXi or with DeGiorgio should be

10 returned unmodified from its current state. To facilitate this, the Court shall issue an Order

11 requiring Defendants to work with an agreed upon third party forensics vendor to preserve then

12 remediate and return of all Ten-X documents and information from the possession of Defendants

13 and other former Ten-X employees now working at CREXi.

14     3.    An award to Ten-X of restitution, unjust enrichment, royalties, and/or damages,

15 including but not limited to compensatory and exemplary damages, as permitted by law;

16     4.    An award to Ten-X of its costs of suit, including, but not limited to, reasonable

17 attorney's fees, as permitted by law, including Cal. Civil Code §§ 3426.3 and 3426.4; and

18     5.    Any other and further relief that the Court may deem just and proper.

19

**DEMAND FOR JURY TRIAL**

20     Ten-X demands a jury trial on all issues so triable.

21

22 DATED: April 12, 2016             MUNGER, TOLLES & OLSON LLP

23                                  BRAD D. BRIAN
CAROLYN HOECKER LUEDTKE

24                                  KEVIN L. BRADY

25

26                       By:

27                              CAROLYN HOECKER LUEDTKE
Attorneys for Ten-X, LLC

28

-22-
COMPLAINT

Exhibit D, Page 262

04/12/2016

# EXHIBIT E

ORIGINAL

1  BRAD D. BRIAN (State Bar No. 79001)
   brad.brian@mto.com
2  STEVEN M. PERRY (State Bar No. 106154)
   steven.perry@mto.com
3  JENNIFER L. BRYANT (State Bar No. 293371)
   jennifer.bryant@mto.com
4  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
5  Los Angeles, California 90071-1560
   Telephone:    (213) 683-9100
6  Facsimile:     (213) 687-3702

7

8  CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
   carolyn.luedtke@mto.com
9  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
10 San Francisco, California 94105-2907
   Telephone:    (415) 512-4000
11 Facsimile:     (415) 512-4077

12 Attorneys for Plaintiff TEN-X, LLC

13

14         SUPERIOR COURT OF THE STATE OF CALIFORNIA

15           COUNTY OF LOS ANGELES, CENTRAL DISTRICT

16

17 TEN-X, LLC,                          Case No. BC616600

18          Plaintiff,                  ~~SUPPLEMENTAL~~ [~~PROPOSED~~] ORDER
                                        GRANTING PLAINTIFF TEN-X, LLC'S
19    vs.                               MOTION FOR PRELIMINARY
                                        INJUNCTION
20 COMMERCIAL REAL ESTATE
   EXCHANGE, INC., MICHAEL
21 DEGIORGIO, AND DOES 1-5,
                                        Date:     October 6, 2016
22          Defendants.                 Dept.:    24
                                        Judge:    Hon. Robert L. Hess

23                                      Action Filed:    April 12, 2016

24                                      **RES ID:**    __160427123966__

25

26

27

28

FILED
Superior Court of California
County of Los Angeles

OCT 21 2016

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
H. Kwon Balba

REC'D
OCT 06 2016
FILING WINDOW

[~~PROPOSED~~] ORDER GRANTING PLAINTIFF TEN-X, LLC'S MOTION FOR PRELIMINARY INJUNCTION

## [PROPOSED] ORDER

On September 23, 2016 and October 3, 2016, Plaintiff Ten-X, LLC's motion for a preliminary injunction was heard in the courtroom of the Hon. Robert L. Hess, Dept. 24, 111 North Hill Street, Los Angeles, California 90012.  After hearing the arguments of the parties and after reviewing the briefs and evidence submitted, this Court hereby GRANTS Plaintiff's motion.

The Court finds that:

(1)     Ten-X is highly likely to succeed on the merits of its claims for breach of the duty of loyalty, breach of a Proprietary Information and Inventions Agreement, breach of a Confidentiality Agreement, and misappropriation of trade secrets;

(2)     Ten-X will be irreparably harmed if Defendants are allowed during the pendency of this case to offer a competing service that is likely to belong to Ten-X pursuant to Defendant Michael DeGiorgio's Proprietary Information and Inventions Agreement and California common law;

(3)     Ten-X will be irreparably harmed if Defendant Michael DeGiorgio ("DeGiorgio") is allowed to dispose of or dilute his ownership interest in Commercial Real Estate Exchange, Inc. ("CREXi") prior to the final resolution of this action;

(4)     Ten-X will be irreparably harmed if Defendants are allowed to continue to use, disseminate, or possess Ten-X's trade secrets and confidential documents (or the customer names contained in confidential Ten-X compilations) that were misappropriated from Ten-X; and

(5)     the harm Ten-X would suffer if an injunction is denied outweighs any potential harm to Defendants if an injunction is granted.

Based on these findings, the Court orders as follows:

(1)     Until the conclusion of the litigation, Defendants DeGiorgio and CREXi and their agents and employees (hereinafter "Defendants") are hereby barred from operating an online commercial real estate marketplace that "facilitate[s] the transaction process"[1] in a format that is

---

[1] CREXI Business Plan, October 2, 2014, at p.3, attached to Bryant Supplemental Declaration as Exhibit 120 (containing "Company Description" for CREX.com as "online commercial real estate marketplace allowing buyers and sellers to facilitate the transaction process using intuitive online

-1-
Exhibit E, Page 264

1    not a time limited auction and that offers any of the following features from the transaction

2    process through a website controlled by DeGiorgio, CREXi, or a vendor operating on behalf of

3    CREXi:

4         Offer / Negotiation Features:

5              (a)    Functionality that provides potential buyers of property or their agents a

6    mechanism to deliver offers to sellers of property or their agents through an application or tool

7    contained on the website; or

8              (b)    The online display of offers from potential buyers of property that permits

9    such buyers to see pending offers of other parties and to submit, adjusted, additional offers

10   through an application or tool contained on the website; or

11             (c)    The online display of offers from potential buyers of property  that permits

12   the sellers of property or their agents to evaluate the offers and to solicit  revised offers through an

13   application or tool contained on the website (for example, a solicitation  for "best and final

14   offers"); or

15             (d)    Functionality that allows sellers of property or their agents to negotiate,

16   accept, or reject offers through an application or tool contained on the website; or

17        Contracting / Closing Features:

18             (e)    An online tool that automatically creates executable commercial real estate

19   contracts from data input wholly or partially by buyers of property through the website; or

20             (f)    Functionality that allows the parties in a commercial real estate transaction

21   to negotiate and/or sign a contract through an application or tool contained on the website; or

22             (g)    Functionality that allows the parties in a commercial real estate transaction

23   to manage or close the transaction through an application or tool contained on the website.

24

25   interfaces tailored to individual assets and transactions."  The Business Plan goes on to describe
     "CREX.com Features/Benefits" as "allow[ing] for an easy and transparent way to transact real
26   estate online" including "[m]ultiple ways of submitting bid price and negotiating terms online,"
     "[t]ransparent bidding that accommodates buyer's needs," "[e]veryone gets the last look," and
27   "[g]ives buyers and sellers more time to react and move."  *Id.* at p.3  CREXi describes the industry
     as "lacking a one stop shop to purchase CRE, sell CRE, finance CRE, research CRE, and network
28   within the CRE community."  *Id.* at p.6.

[PROPOSED] ORDER GRANTING PLAINTIFF TEN-X, LLC'S MOTION FOR PRELIMINARY INJUNCTION
Exhibit E, Page 265

1    To be clear, this injunction does not prohibit Defendants from operating an online

2  commercial real estate business that lists properties that are for sale or that provides information or

3  due diligence about properties that are for sale (including but not limited to the price of the

4  property or the listing agent for the property).[2]  Moreover, as the foregoing restrictions only

5  impact activity occurring on a website controlled by DeGiorgio, CREXi, or a vendor operating on

6  behalf of CREXi, they do not prevent communications between parties through email, instant

7  message or other electronic means not contained within such a website.

8    (2)    Until the conclusion of the litigation, DeGiorgio shall not sell or borrow against his

9  ownership interest in CREXi.

10    (3)    Until the conclusion of the litigation, in the event that Defendants DeGiorgio or

11  CREXi desire to engage in any equity investment transaction that will result in the dilution of any

12  stock or other ownership interest in CREXi owned by DeGiorgio (a "Dilution Transaction"), the

13  Defendants shall provide Plaintiff the opportunity to purchase, on the same terms as provided to

14  any investor in the Dilution Transaction, an equity interest in CREXi such that the combined

15  positions of DeGiorgio and Plaintiff after the Dilution Transaction (on a percentage ownership

16  basis) shall be equal to the position of DeGiorgio prior to the Dilution Transaction.  To comply

17  with this requirement, Defendants shall provide Plaintiff with the operative investment

18  agreements, including all terms, no less than 30 days prior to consummation of the Dilution

19  Transaction and Plaintiff shall have 15 days from such notification to inform Defendants of

20  whether it will participate in the Dilution Transaction upon the terms set forth herein;

21    (4)    Until the conclusion of this litigation, or for one year from the date of this order

22  (whichever comes first), DeGiorgio and CREXi are barred from marketing CREXi or its property

23  listings to any of the following categories of individuals or entities:

24    (a)    The more than 75,000 individuals or entities listed in the annotated Ten-X

25  customer lists that were taken by Defendants, combined to create the master CREXi marketing

26  _____

27  [2] Defendant DeGiorgio describes CREXi as currently a "listing management" platform that allows for the listing of property and information about the property.  DeGiorgio Decl. ¶¶ 21, 23.  He

28  explains that CREXi "does not offer technology to submit offers and financing, set terms, draft contracts, navigate escrow or close the transaction."  *Id.* at ¶ 23; *see also* Luke Morris Decl. ¶ 9.

-3-

Exhibit E, Page 266

1   list, and contacted as part of CREXi's marketing campaign.  These customer lists are those that

2   (i) CREXi identified by Bates number in its supplemental response to Ten-X's interrogatory no. 4

3   as Ten-X documents that CREXi combined to create CREXi's "master list" of customers and then

4   used in its marketing efforts for CREXi and (ii) were the subject of a showing of confidentiality in

5   the declaration of Cyrus Khadivi.  A list of the document bates numbers for the customer lists

6   covered by this sub-paragraph are contained in footnote 3;[3]

7            (b)      the annotated customer list named "Buyers with Deposit Fall 2013"

8   produced with bates number CREX00000096 attached to the Declaration of Jennifer Bryant as

9   Exhibit 87 and the confidentiality of which was addressed in the Declaration of Cyrus Khadivi at

10  Paragraph 21 – a document which contains more than 45,000 Ten-X customer names and

11  additional detailed information about those customers and which was identified by CREXi as

12  being in its possession at the commencement of this litigation;

13           (c)      the annotated customer lists named "Copy of PCG Business Development

14  Client List.xls" produced with bates number CREX00000204 and -205 attached to the Declaration

15  of Jennifer Bryant as Exhibits 60 and 61 and the confidentiality of which was addressed in the

16  Declaration of Cyrus Khadivi at Paragraph 22 – two Ten-X documents with detailed information

17  about 291 customers and which were identified by CREXi as being in its possession at the

18  commencement of this litigation;

19           (d)      the annotated customer list named "Copy of PCG Holiday Client List 2012

20  Commercial updated Master List 11 19 2012.xls" with bates number CREX00000232 attached to

21  the Declaration of Jennifer Bryant as Exhibit 63 and the confidentiality of which was addressed in

22

---

[3] The bates numbers for these documents are as follows: CREX00007543, CREX00007544, CREX00007548, CREX00007606, CREX00007621, CREX00007631, CREX00007651, CREX00007653, CREX00007773, CREX00007799, CREX00007803, CREX00007805, CREX00007849, CREX00007852, CREX00007857, CREX00007880, CREX00007942, CREX00007951, CREX00007983, CREX00008976, CREX00008980, CREX00008982, CREX00008996, CREX00008998, CREX00009006, and CREX00009017. The confidentiality of all of these documents are addressed in the Declaration of Cyrus Khadivi ¶¶ 24-30, 32, 34 , 36-37, & 39.  This group of documents includes the annotated customer list entitled "Retail Master Blast List 2.xls" that was produced as CREX00007631, that was attached to the Declaration of Jennifer Bryant in Support of Ten-X's Motion for a Preliminary Injunction as exhibit 109, and that was described in paragraph 32 of the Declaration of Cyrus Khadivi. The list in question contains approximately 32,900 customers and is marked "confidential information – do not distribute."

1  the Declaration of Cyrus Khadivi at Paragraph 35 – a Ten-X document with detailed information

2  about just over 80 contacts and which was identified by CREXi as being in its possession at the

3  commencement of this litigation; and

4          (e)      the annotated list of customers named "2012_2013_MD_andTEAM_

5  Results_BD_Only.xls" with bates number CREX000004081 attached to the Declaration of

6  Jennifer Bryant as Exhibit 50 and the confidentiality of which was addressed in the Declaration of

7  Cyrus Khadivi at Paragraph 31 – a voluminous Ten-X report that compiles contact information for

8  sellers of commercial real estate willing to transact business online and which was identified by

9  CREXi as being in its possession at the commencement of this litigation.

10         (5)      DeGiorgio and CREXi shall delete or return to Ten-X all copies and originals of all

11  Ten-X documents in the possession of DeGiorgio or CREXi or anyone employed by DeGiorgio or

12  CREXi, and all documents and information derived therefrom, including but not limited to the

13  documents and information identified in the "Exhibit A" to each Defendant's Supplemental

14  Interrogatory Responses.  DeGiorgio and CREXi shall also delete from their customer, user, or

15  marketing lists or databases any names found on the Ten-X documents and information identified

16  in the "Exhibit A" to each Defendant's Supplemental Interrogatory Responses.

17         (6)      DeGiorgio and CREXi shall provide a written certification under penalty of perjury

18  within 14 business days of this order confirming that they have complied with ordering paragraph

19  5 above.

20         This injunction shall be effective upon the payment of an injunction bond in the amount of

21  $150,000 by Ten-X pursuant to California Code of Civil Procedure §§ 529 and 995.

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING PLAINTIFF TEN-X, LLC'S MOTION FOR PRELIMINARY INJUNCTION

1  **IT IS SO ORDERED.**

2  DATED: _10/21_ , 2016

3

4  By: _Robert L. Hess_

5  The Hon. Robert L. Hess

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING PLAINTIFF TEN-X, LLC'S MOTION FOR PRELIMINARY INJUNCTION

# PROOF OF SERVICE

I, Abby Chianglin, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 355 South Grand Avenue, Los Angeles, California 90071-1560, in said County and State. On October 6, 2016, I served the following document(s):

**SUPPLEMENTAL [PROPOSED] ORDER GRANTING PLAINTIFF TEN-X, LLC'S MOTION FOR PRELIMINARY INJUNCTION**

on interested parties listed on the attached Service List, by the following means of service:

☐ **BY HAND (AS INDICATED ON ATTACHED SERVICE LIST):** I caused such document to be placed in addressed, sealed envelope(s), clearly labeled to identify the person being served at the address(es) and to be delivered by hand to the offices on the attached Service List.

☐ **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST):** I placed true copies/the originals of said document(s) in sealed envelopes addressed as indicated above, and deposited said envelopes in interoffice mail for collection and deposit with the United States Postal Service at 355 South Grand Avenue, Los Angeles, California, on the date indicated above. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service in the ordinary course of business with first class postage thereon fully prepaid on the same day it is placed for collection, processing, and mailing.

☒ **BY EMAIL VIA PDF FILE:** By transmitting on this date via email true and correct copies of said documents(s) scanned into an electronic file in Adobe PDF format to the email addresses of the persons on the service list. The transmissions were reported as complete and without error.

☐ **BY FEDEX (AS INDICATED ON ATTACHED SERVICE LIST):** I placed true copies of the above mentioned document(s) in sealed envelope or package designated by FedEx, addressed to the persons indicated on the attached Service List for overnight delivery and deposited same in interoffice mail for collection and deposit to an employee authorized by FedEx to receive such parcel on that date, following ordinary business practices. I am familiar with the firm's practice of collection and processing correspondence/ It is deposited with an employee authorized by FedEx to receive such parcel with delivery fees paid or provided for the same day it is placed for collection.

☒ **(STATE)**          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 6, 2016.



Abby Chianglin

PROOF OF SERVICE

31272282.1

Exhibit E, Page 270

1

**SERVICE LIST**

2

**TEX-X, LLC v. Commercial Real Estate Exchange, Inc, et al., BC61660**

3

| | |
|---|---|
| William P. Donovan, Jr. | Counsel for Defendants Commercial Real |
| wdonovan@cooley.com | Estate Exchange, Inc. and Michael |
| Christina Davis | DeGiorgio |
| cdavis@cooley.com | |
| Cooley LLP | |
| 1333 Second Street, Suite 400 | |
| Santa Monica, CA 90401-4100 | |
| Phone: 310-883-6400 | |
| Fax:   310-883-6500 | |

4

5

6

7

8

9

Dennis Childs
dchilds@cooley.com
Megan Donohue
mdonohue@cooley.com
Cooley LLP
4401 Eastgate Mall
San Diego, California 92121
Phone: 858-550-6000
Fax:   858-550-6420

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

PROOF OF SERVICE

# EXHIBIT F

# SETTLEMENT AGREEMENT AND RELEASE

It is hereby agreed by and among the parties herein as follows:

1.      Parties and Effective Date

1.1.      "Plaintiff" shall mean Ten-X, LLC, including its predecessor company Auction.com, and Ten-X, LLC's subsidiaries and affiliates.

1.2.      "CREXi" shall mean Commercial Real Estate Exchange, Inc.

1.3.      "DeGiorgio" shall mean Michael DeGiorgio, the chief executive officer of CREXi.

1.4.      "Defendants" shall mean CREXi and DeGiorgio.

1.5.      This Settlement Agreement and Release (this "Agreement") is made and entered into as of the 5th day of May 2017 (the "Effective Date"), by and between Ten-X, CREXi, and DeGiorgio.  The above parties are sometimes referred to in this Agreement individually as "Party" or collectively as "the Parties."

2.      Background Facts

This Agreement is made in light of the following facts:

2.1.      On April 12, 2016, Ten-X filed a lawsuit against CREXi and DeGiorgio alleging four causes of action – misappropriation of trade secrets, breach of confidentiality agreement, breach of the duty of loyalty, and breach of Proprietary Information and Invention Agreement. Not all Defendants were named in all causes of action.  The case is captioned *Ten-X, LLC v. Commercial Real Estate Exchange, Inc. Michael DeGiorgio, and Does 1-5*, Case No. BC616600, Los Angeles Superior Court (hereinafter referred to as the "Litigation").

2.2.      On October 21, 2016, the Court issued a preliminary injunction.  Then, on January 26, 2017, the Court issued a modified preliminary injunction barring Defendants from taking part in certain activities and requiring them to take other actions.

2.3.      Trial was set in this matter for June 13, 2017.

2.4.      On May 1, 2017, the Parties signed a binding term sheet setting forth the terms to settle the Litigation.  The Parties agreed to prepare this long form settlement agreement within 5 business days to reflect the terms of the May 1 term sheet.

3.      Purpose of this Agreement

3.1.      The Parties wish to fully and finally settle the Litigation on the terms and conditions set forth in this Agreement.  It is the intent of the Parties that there be a complete and global resolution of all potential and actual claims through the Effective Date.

34737182.1

Page **1** of **11**

3.2.     The Parties acknowledge and agree that the execution of this Agreement by the Parties is for settlement purposes only and is intended solely as a compromise of claims and defenses that the Parties recognize they would have contested had the Litigation not settled, and that no Party admits any wrongdoing or liability with respect to any matter alleged in the Litigation.  This settlement of claims in the Litigation among the Parties is voluntary and does not and shall not constitute an admission or other basis for liability by any of the Parties or an admission of the existence of any facts upon which liability could be based.

4.     <u>Agreements and Undertakings</u>

In light of the foregoing and in consideration for the releases, agreements, representations, warranties and undertakings set forth in this Agreement, the Parties agree as follows:

4.1.     Within three (3) business days of the first $400,000 payment pursuant to Section 4.3 below, Plaintiff shall file in Los Angeles Superior Court a dismissal with prejudice of all claims set forth in the Litigation.

4.2.     Within three (3) business days of the first $400,000 payment pursuant to Section 4.3 below, the Parties shall file a joint stipulation to dissolve the October 21, 2016 preliminary injunction and the January 26, 2017 order modifying preliminary injunction, with Ten-X able to recover on its preliminary injunction bond.

4.3.     In full and final settlement of all of Ten-X's claims in the Litigation, CREXi and DeGiorgio agree to pay Ten-X the sum of $1.6 million, to be paid in four equal installments as follows:

(a)     By no later than June 1, 2017, Defendants will cause to be delivered to Ten-X the sum of $400,000.  Such payment shall be made by Defendants by wire transfer to the account set forth in Section 4.3(f) below (the "Account").

(b)     By no later than September 1, 2017, Defendants will cause to be delivered to Ten-X the additional sum of $400,000 by wire transfer to the Account.

(c)     By no later than December 1, 2017, Defendants will cause to be delivered to Ten-X the additional sum of $400,000 by wire transfer to the Account.

(d)     By no later than March 1, 2018, Defendants will cause to be delivered to Ten-X the additional sum of $400,000 by wire transfer to the Account.

(e)     If a payment pursuant to Section 4.3(a)-(d) is late, CREXi will be assessed and shall pay interest to Ten-X in the amount of $5,000 per month for each late payment, which will continue to accrue month to month until paid (*i.e.*, if September 2017 payment and December 2017 payment were not paid until January 1, 2018, this would be $25,000).

(f)     Wiring instructions for payment pursuant to this Section are as follows:

34737182.1

1162741.01

Account Name:  Ten-X, LLC Concentration Account

Account/Beneficiary Address:   1 Mauchly, Irvine, California, 92618

Bank Name:  Wells Fargo Bank, N.A.

Bank Address:  420 Montgomery Street, San Francisco, CA  94104

ABA Routing No. (Wire & ACH):  121000248

SWIFT Code:  WFBIUS6S

Account No.:  4125526475

4.4.    The monetary consideration set forth in paragraph 4.3 hereby constitutes the sole and entire payment to be made in settlement of the Litigation.  Neither Ten-X, on the one hand, nor Defendants, on the other hand, will attempt to collect from each other their attorneys' fees or expenses in connection with any matters related to this dispute and/or this settlement, nor will Defendants attempt to collect on the injunction bond posted by Ten-X in connection with the preliminary injunction issued in the Litigation.

4.5.    The Parties have agreed upon a joint public statement, the contents of which are reflected in Exhibit A.  The Parties may each release this statement to persons or entities of their choosing starting on May 8, 2017.

4.6.    Defendants represent and certify in this Agreement that, after multiple rounds of remediation by qualified, independent forensic vendors, as well as concerted investigation by Defendants and their counsel, they are no longer in possession of any Ten-X or Auction.com customer lists, or any documents derived from Ten-X or Auction.com customer lists. Defendants agree to provide under oath by May 15, 2017 a certification to this effect.

4.7.    Defendants agree that, for the 129 registered users referenced in paragraph 5 of the January 25, 2017 Order Modifying Preliminary Injunction, they will not solicit those users for business for one year from the Effective Date.  However, if those 129 users re-register for CREXi without solicitation, CREXi does not have to bar them from the CREXi site.

4.8.    Nothing in this Agreement constitutes an actual or implied license for the use of another Party's intellectual property (such as patents, copyright, or trademarks).

4.9.    The Parties agree that this Agreement is not subject to a confidentiality provision.

5.    Underline{General Releases}

5.1.    In consideration for the payment and promises set forth above, and except as provided in paragraph 5.2, Ten-X and its executives, employees, board members, attorneys and investors hereby release and forever discharge CREXi and its executives, employees, board members, and attorneys from any and all claims, damages, lawsuits, liabilities, and controversies of whatever nature, type, kind, description or character, in law or in equity, whether known or

34737182.1

Page **3** of **11**

unknown, suspected and unsuspected, including malicious prosecution and abuse of process and
including but not limited to any claims that Plaintiff could assert at common law or by any
statute, rule, regulation, ordinance or law, whether federal, state or local, or on any other grounds
whatsoever, which Plaintiff does, did, or might have, own, or hold, from the beginning of time
through the Effective Date.  Ten-X and its executives, employees, board members, attorneys and
investors also hereby release and forever discharge CREXi investors from any and all claims,
damages, lawsuits, liabilities, and controversies of whatever nature, type, kind, description or
character, known or unknown, suspected or unsuspected, arising out of the allegations, claims
and defenses made in this Litigation.

     5.2.    Plaintiff and DeGiorgio acknowledge DeGiorgio's ongoing contractual
obligations with respect to Ten-X confidential information as set forth in his January 8, 2013
countersigned December 24, 2012 offer of employment letter, his Confidentiality Agreement
signed January 14, 2013, and his Proprietary Information and Inventions Agreement signed
January 8, 2013 (copies of which are attached to the Complaint in the Litigation as Exhibits A-
C).  Plaintiff does not release DeGiorgio from any violations of such obligations that occur after
the Effective Date, provided, however, that any such claims must be brought pursuant to Section
8 of this Agreement.

     5.3.    In consideration for the payment and promises set forth above, CREXi and its
executives, employees, board members, attorneys and investors hereby release and forever
discharge Ten-X and its executives, employees, board members, and attorneys from any and all
claims, damages, lawsuits, liabilities, and controversies of whatever nature, type, kind,
description or character, whether known or unknown, suspected and unsuspected, including
malicious prosecution and abuse of process and including but not limited to any claims that
Defendants could assert at common law or by any statute, rule, regulation, ordinance or law,
whether federal, state or local, or on any other grounds whatsoever, which Defendants do, did, or
might have, own, or hold, from the beginning of time through the Effective Date.  CREXi and its
executives, employees, board members, attorneys and investors also hereby release and forever
discharge Ten-X investors from any and all claims, damages, lawsuits, liabilities, and
controversies of whatever nature, type, kind, description or character, known or unknown,
suspected or unsuspected, arising out of the allegations, claims and defenses made in this
Litigation.

     5.4.    WAIVER OF CIVIL CODE SECTION 1542:  The Parties specifically
understand, acknowledge and agree that (except for the releases of the other Parties' investors,
which are limited to claims arising out of the allegations, claims, or defenses made in this
Litigation) this is a full and final general release, applying to any real or potential dispute based
on events occurring prior to the Effective Date.  The Parties further understand and expressly
waive any and all claims between or among them, known, unknown, speculative, ascertained in
the future, or which they do not know of or suspect to exist, whether through ignorance,
oversight, error, negligence, or otherwise, and which if known, would materially affect their
decision to execute this Agreement.  The Parties, having been fully advised by counsel, hereby
expressly waive any right or benefit of the provisions of Section 1542 of the California Civil
Code, which provides as follows, and under all federal, state and common-law statutes or
principles of similar effect:

34737182.1

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

With respect to the release of the other Parties' investors, the Parties waive any rights or benefits of Section 1542 in connection with the release of any claims arising out of the allegations, claims, or defenses made in this Litigation.

5.5.    Each of the Parties acknowledges the inclusion of unknown claims in the releases was separately bargained for and was an essential element of the settlement.

5.6.    Nothing in the Settlement Agreement will release or serve as a bar to (i) any claims based on any actions by the Parties that occur after the Effective Date or (ii) any claims alleging breach of the Settlement Agreement.

6.    Warranties of Authority and Nonassignment

6.1.    Each of the Parties to this Agreement warrants that said Party has full authority to enter into this Agreement, to make the releases and covenants set forth above, and to enter into the obligations set forth in this Agreement. The Parties hereby warrant that they have not assigned or transferred any claim to any other party or person, and that no other consents, approvals, authorizations, releases or settlements are necessary from any other person or entity to release and discharge completely the other Parties from the claims specified above.

7.    Further Representations and Warranties

7.1.    In entering into this Agreement, the Parties represent and warrant that they have fully discussed and reviewed all aspects of this Agreement with their counsel; that they have carefully reviewed and understand all of the provisions of this Agreement; and that they are freely, knowingly, and voluntarily entering into this Agreement without any form of duress.

7.2.    In entering into this Agreement, all Parties represent and warrant that they have made such investigation of the facts pertaining to this settlement and this Agreement as they deem necessary and that they are not relying on and have not relied upon any representation or statement made by any other Party or by any person affiliated with or representing any of the other Parties with respect to any of the facts involved in the disputes compromised or with regard to the claims or asserted claims of either.

8.    Alternative Dispute Resolution

8.1.    Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration in San Francisco, California, before one arbitrator to be selected jointly by the

34737182.1

Parties. The arbitration shall be administered by JAMS in accordance with the expedited procedures set forth in the JAMS Comprehensive Arbitration Rules and Procedures, as those Rules exist on the Effective Date of this Agreement, including Rules 16.1 and 16.2 of those Rules.

8.2.    The arbitrator shall be empowered to award, without limitation, any interim or permanent injunctive or equitable relief that would be available in a court of competent jurisdiction. Judgment on the Award may be entered in any court having jurisdiction.

8.3.    The Parties agree that, prior to bringing any claim in arbitration, they will first engage in reasonable, good-faith efforts to meet and confer to resolve any disputes, which shall include a face-to-face or telephonic meeting of executives with the authority to settle the controversy within thirty (30) days of any provided notice of breach.

8.4.    In any arbitration arising out of or related to this Agreement, the arbitrator shall award to the prevailing party, if any, the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration. If the arbitrator determines a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the arbitrator may award the prevailing party an appropriate percentage of the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration.

8.5.    All questions with respect to the construction of this Agreement, and the rights and liabilities of the Parties hereto, shall be governed by and construed in accordance with the laws of the State of California without reference to conflicts of law principles or rules.

9.    <u>Materials Related to this Case</u>

9.1.    Defendants agree that within fourteen (14) days of the final dismissal of the Litigation under Section 4.1, their attorneys, and any other agents, vendors, retained experts or consultants working on the Litigation (including, but not limited to, the Cooley firm, the Keker firm, Transperfect, Inventus, Curia, and Discovia) shall delete all copies of Ten-X documents produced in this litigation, remediated from any source, or otherwise in their possession. Attorneys at the Keker firm may keep an archive copy of materials as determined necessary so long as it is kept confidential and not disclosed to Defendants or others not related to Ten-X. If copies of materials reside on disaster recovery backup tapes, those need not be deleted so long as the backup tapes will be overwritten in the ordinary course of business.

9.2.    Plaintiff agrees that within fourteen (14) days of the final dismissal of the Litigation under Section 4.1, its attorneys, and any other agents, vendors, retained experts or consultants working on this Litigation (including, but not limited to, the Munger firm and Stroz Friedberg) shall delete all copies of CREXi documents produced in this Litigation, or otherwise in their possession. Attorneys at the Munger firm may keep an archive copy of materials as determined necessary so long as it is kept confidential and not disclosed to Ten-X or others not related to DeGiorgio or CREXi. If copies of materials reside on disaster recovery backup tapes, those need not be deleted so long as the backup tapes will be overwritten in the ordinary course of business.

34737182.1

1162741.01

10.     Performance of Agreement

      10.1.   The Parties each agree to perform all acts and execute, deliver and file all documents necessary to carry out the provisions, purposes and intent of this Agreement.

11.     Successors In Interest

      11.1.   This Agreement shall be binding upon and shall inure to the benefit of each of the Parties hereto and each of their respective successors in interest and assigns.

12.     Mutually Drafted Settlement Agreement

      12.1.   Each of the Parties hereto has been fully and competently represented by counsel of its own choosing in the negotiation and preparation of this Agreement.  Accordingly, the Parties agree that the rule of construction of contracts resolving any ambiguities against the drafting party shall be inapplicable to this Agreement.  Each of the Parties hereto further acknowledges that it has read this entire Agreement and fully understands its terms, conditions and effects.

13.     Entire Agreement

      13.1.   This Agreement, including Exhibit A, contains the entire agreement of the Parties relating to the subject matters addressed herein.  In executing this Agreement and making the settlement contained herein, none of the Parties is relying upon any promise, representation or statement not contained within this Agreement.

13.2    Any modification or amendment to this Agreement will be effective only if such modification or amendment (a) is contained in a written instrument expressly referring to this Agreement, (b) such written instrument expressly states that it is intended to be a modification of or amendment to this Agreement, and (c) is signed by all affected Parties.  Any purported modification of or amendment to this Agreement that does not comply with all of the foregoing provisions of this Section 13.2 shall be void, and of no force or effect.

14.     Headings

      14.1.   Paragraph headings are for convenience only and are not part of the Agreement.

15.     Counterparts

      15.1.   The Parties may execute this Agreement in counterparts, each of which shall be deemed an original or the equivalent thereof. Signatures by facsimile or in electronic form (including in PDF form) are binding.

16.     Notice

      16.1.   All notices under this Agreement shall be sent by email and U.S. mail to the following:

34737182.1

1162741.01

**To Ten-X:**
Lee Leslie
Executive Vice President and
Chief Legal Officer
Ten-X, LLP
1 Mauchly
Irvine, California  92618

Copies to:
Carolyn Hoecker Luedtke
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105
(415) 512-4027
Carolyn.Luedtke@mto.com

**To CREXi:**
Luke Morris
Co-Founder
Commercial Real Estate Exchange, Inc.
2809 Ocean Avenue
Venice, CA 90291

Copies to:
Elliot Peters
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, California  94111
(415) 676-2273
EPeters@keker.com

**To Michael DeGiorgio:**
Michael DeGiorgio
c/o Commercial Real Estate Exchange, Inc.
2809 Ocean Avenue
Venice, CA 90291

Copies to:
Elliot Peters
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, California  94111

34737182.1

(415) 676-2273
EPeters@keker.com

16.2.   Changes in the names or addresses of the representatives set forth above may be made by a written notification to the other party at its address set forth above (or such other addresses subsequently designated by any Party).

17.   Gender and Number

17.1.   Wherever the context so requires, the singular shall include the plural; the plural shall include the singular; the masculine gender shall include the feminine and neuter genders; the feminine gender shall include the masculine and neuter genders; and the neuter gender shall include the masculine and feminine genders.

BY THE SIGNATURES BELOW, EACH OF THE PERSONS SIGNING THIS AGREEMENT REPRESENTS THAT THE PERSON HAS READ AND UNDERSTANDS THIS AGREEMENT, IS AUTHORIZED TO SIGN THIS AGREEMENT, AND THAT THE PARTY(IES) ON BEHALF OF WHOM THE PERSON SIGNS THIS AGREEMENT AGREES TO BE BOUND BY ITS TERMS.

IN WITNESS WHEREOF, the Parties hereto have agreed to and executed this Agreement.

May 5, 2017

By: _____

Print Name: Lou Leslie
_____
Ten-X, LLC

May 5, 2017

By: _____

Print Name: Michael DeGiorgio
_____
Commercial Real Estate Exchange, Inc.

May 5, 2017

By: _____

Print Name: Michael DeGiorgio
_____
Michael DeGiorgio

347371821

1162741.01

Page **9** of **11**

**APPROVED AS TO FORM**

May 5, 2017

By: _____

Print Name: _____

Carolyn Hoecker Luedtke

*Counsel for Plaintiff Ten-X, LLC.*

May 5, 2017

By: _____

Print Name: _____

Elliot R. Peters

*Counsel for Defendants Commercial Real Estate
Exchange, Inc. and Michael DeGiorgio*

34737182.1

1162741.01

Page **10** of **11**

Exhibit F, Page 281

**Exhibit A**
**Joint Public Statement**

Ten-X, LLC (formerly known as Auction.com) and CREXi, Inc. have entered into a settlement agreement concerning a complaint filed by Ten-X in California Superior Court against CREXi, Inc. and its founder Michael DeGiorgio in April 2016, which alleged claims for breach of contract and misappropriation of trade secrets. In the settlement, CREXi has agreed to pay $1.6 million. In addition, CREXi will be subject to ongoing restrictions, including a prohibition against using Ten-X property.

Regarding the settled litigation, CREXi's CEO Michael DeGiorgio stated: "We apologize to Ten-X for the actions which led to this lawsuit. I regret my conduct at the time I departed Ten-X and believe that the settlement is a fair resolution. With the litigation now settled, CREXi looks forward to competing in the commercial real estate marketplace on a level playing field."

Ten-X's CEO Tim Morse stated: "We are pleased that this litigation has been brought to a successful resolution by our legal team. Ten-X is proud of its history of bringing innovation to the commercial real estate marketplace and of our employees who expend tremendous effort developing products and services for our clients. We hope that the outcome of this matter – both the injunction we obtained in the Fall and the ultimate settlement of the case – sends a message that Ten-X will vigorously protect its rights when necessary."

34737182.1

1162741.01

Page **11** of **11**

# EXHIBIT G

1

## CERTIFICATION

2      I, Michael DeGiorgio, declare:

3      I am the Chief Executive Officer of Commercial Real Estate Exchange, Inc. ("CREXi"),

4  a corporation organized and existing under the laws of Delaware, which is a defendant in the

5  action entitled *Ten-X, LLC v. Commercial Real Estate Exchange, Inc., et al.,* Los Angeles

6  County Superior Court Case No. BC616600.  I am making this certification on behalf of both

7  myself, as an individual, and on behalf of CREXi.

8      Pursuant to the settlement agreement entered into by the parties in the above captioned

9  action, I hereby certify that, after multiple rounds of remediation by qualified, independent

10  forensic vendors, as well as concerted investigation by CREXi, CREXi and I are no longer in

11  possession of any Ten-X or Auction.com customer lists, or any documents derived from Ten-X

12  or Auction.com customer lists.

13      I declare under penalty of perjury under the laws of the State of California that the

14  foregoing is true and correct.

15      Executed at Venice, California on May **12**, 2017.

16

17

18                                               Michael DeGiorgio

19

20

21

22

23

24

25

26

27

28

1
**CERTIFICATION**
CASE NO. BC616600

Exhibit G, Page 283

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

COSTAR GROUP, INC., COSTAR
REALTY INFORMATION, INC., and
LOOPNET, INC.,

      Plaintiffs,

v.

XCELIGENT, INC.,

      Defendant.

Case No. 4:16-cv-01288-FJG

## JUDGMENT AND PERMANENT INJUNCTION

Pursuant to the stipulation of Plaintiffs and counterclaim defendants CoStar Group, Inc. ("CoStar Group") and CoStar Realty Information, Inc.,  ("CoStar Realty," and together with CoStar Group, "CoStar"),[1] and Alfred T. Giuliano, chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of the Defendant and counterclaim plaintiff Xceligent, Inc. ("Xceligent"), this Court hereby LIFTS the stay entered on December 27, 2017 (Doc. No. 189) and ORDERS that final judgment shall be and is hereby entered in the above-captioned action, pursuant to Federal Rule of Civil Procedure 58(a), as follows:

1.    Judgment is hereby ENTERED in favor of CoStar and against Xceligent in the amount of five hundred million dollars ($500,000,000.00) on CoStar Realty's claims of copyright infringement, and on CoStar Group's claims of breach of contract, violation of the Computer Fraud and Abuse Act, violation of the Digital Millennium Copyright Act, and unfair competition.   This Judgment includes damages of $50,000 per instance of

---

[1] LoopNet, Inc. was also a named plaintiff and counterclaim defendant at the time the Amended Complaint was filed.  Since that time, LoopNet, Inc. merged into CoStar Realty, thereby ceasing to being a separate, stand-alone entity.

Exhibit H, Page 284

misappropriation of CoStar-owned data and statutory damages pursuant to 17 U.S.C. § 504(c) in the amount of $50,000 per instance of infringement of CoStar's copyrighted photographs.

2.      All counterclaims asserted by Xceligent against CoStar are hereby DISMISSED WITH PREJUDICE.

3.      Any obligations arising under the Court's July 28, 2017 Order (Doc. No. 100) with respect to the Philippines Documents are hereby dissolved.

4.      This judgment redresses only acts, omissions, and injuries that are attributable to Xceligent alone, and does not redress acts, omissions, or injuries that are attributable to any other entity or individual, including without limitation any of Xceligent's former directors, officers, employees, representatives, affiliates, agents, or contractors.  Nothing in this Judgment shall diminish either CoStar's or Xceligent's causes of action, claims, or rights with respect to such entities and individuals and/or any other non-parties to this action.

5.      Any outstanding motions are hereby DENIED AS MOOT.

**<u>PERMANENT INJUNCTION</u>**

This Court hereby ORDERS that a Permanent Injunction is entered as follows:

1.      For the purposes of this Permanent Injunction, the following definitions shall apply:

a.      "Circumvention Measures" means any method of circumventing CoStar's abuse monitor or blocking software including without limitation virtual private networks, proxies, anonymizers, and/or TOR browsers.

2

b.      "CoStar" means all and any parent, subsidiary, sister company, affiliate, related entity, assignee, transferee, designee, predecessor or successor in interest.  For the avoidance of doubt, the defined term CoStar includes LoopNet, Inc., which merged into CoStar Realty on January 1, 2017.

c.      "CoStar Content" means both CoStar Photograph(s) and CoStar Data (both as defined below).

d.      "CoStar Data" means any and all information or data, whether now in existence or later created, which (i) has been copied or otherwise obtained by Xceligent from any CoStar Website or CoStar Database or any other website or database owned and operated by CoStar now or in the future; and/or (ii) Xceligent otherwise knowingly obtained from CoStar, whether directly from CoStar or indirectly through a third party (or through a chain of third parties) which originally obtained the information or data from CoStar and which does not have CoStar's written authorization to distribute the information or data.

e.      "CoStar Database" means any subscription or password-protected database owned or operated by CoStar, now or in the future, including databases licensed under the name or names CoStar, CoStar Property, CoStar Comps, CoStar Tenant, CoStar Suite, CoStar Market Analytics, CoStar Portfolio Strategy, CoStar Go, CoStar Mobile, CoStar Risk Analytics, CoStar Real Estate Manager, CoStar Brokerage Applications, CoStar Private Sale Network, CoStar News, CoStar Lease Comps, and/or CoStar Lease Analysis.

f.      "CoStar Photograph(s)" means any and all copyrighted images (or portions thereof), whether in the form of a photograph, video, or other non-textual format,

3

and whether now in existence or later created, in which CoStar (including any of its parents, subsidiaries, or affiliates) owns or controls an exclusive right under Section 106 of the United States Copyright Act (17 U.S.C. § 106).

g.      "CoStar Website(s)" means any website owned or operated by CoStar, now or in the future, including loopnet.com, costar.com, showcase.com, cityfeet.com, apartments.com, apartmentfinder.com, apartmenthomeliving.com, westsiderentals.com, apartamentos.com, forrent.com, forrentuniversity.com, after55.com, corporatehousing.com, cozy.co, bizbuysell.com, bizquest.com, landsofamerica.com, landandfarm.com, landwatch.com, costar.co.uk, propex.co.uk, showcase.co.uk, shopproperty.co.uk, findafranchise.com, belbex.com, realla.com, realla.co, thomas-daily.de, grecam.com.com, and webpages within those domains.  For the avoidance of doubt, the defined term CoStar Website does not include third-party websites that are hosted, provided, or powered by CoStar or that reside on CoStar systems.

h.      "Xceligent" means Xceligent, Inc., and all and any of its predecessors, successors-in-interest, assigns, transferees, designees, or agents; as well as those who purchase or otherwise have or gain access to all or any part of any Xceligent Database (as defined below), any of its source code, or any other significant portion of its assets; and includes all current and former Xceligent Employees (as defined below), but specifically excludes (i) CoStar or any of its successors or assigns; and (ii) the Trustee, the Estate, or any of the Trustee's agents, employees, attorneys, and professionals.

i.      "Xceligent Database" means any database (or portion thereof) or website owned or operated by Xceligent currently, in the past, or in the future, including

4

any database (or portion thereof) or website licensed under the name or names CDX, CommercialSearch, realtor.com powered by CommercialSearch, XPRT, Contact Management System, and ClientLook.

j.      "Xceligent Employee" means any individual who acts, acted or purports to act on behalf of Xceligent, including without limitation any former executive, director, officer or employee of Xceligent and any employee of any entity that was hired by Xceligent to perform commercial real estate research, whether in the United States or abroad.  For the avoidance of doubt, "Xceligent Employee" does not mean the Trustee or any of the Trustee's agents, employees, attorneys, and professionals.

2.      Xceligent is permanently restrained and enjoined from (a) infringing by any means, directly or indirectly, any exclusive rights under the Copyright Act in CoStar Photographs, (b) accessing CoStar Websites or CoStar Databases for the purposes of competitive use, including without limitation for the purposes of copying CoStar Data, verifying broker-sourced data using CoStar Data, or generating leads from CoStar Data, (c) employing Circumvention Measures to bypass CoStar's abuse monitor and/or blocking software for any purpose, (d) publishing CoStar Content in or on any Xceligent Database or in or on any other third party database or website without specific written authorization from CoStar, (e) providing CoStar Content to any other individual or entity for any purpose without specific written authorization from CoStar, or (f) inducing any individual or entity to provide CoStar Content or securing CoStar Content from any individual or entity without specific written authorization from CoStar.

3.      If Xceligent is found to have violated the terms of this Judgment and Permanent Injunction by infringing a CoStar Photograph, copying CoStar Data relating to

5

a real estate listing, or accessing a CoStar Website for competitive purposes, Xceligent shall pay CoStar the amount of $50,000 per infringing photograph per day of infringement, and $50,000 per real estate listing.  This relief is non-exclusive and shall be in addition to any other relief ordered by the Court.

4.      Xceligent remains prohibited from selling, transferring, assigning, making available or continuing to make available all or any portion of the Xceligent Databases to any entity or individual other than CoStar unless Xceligent shall, to CoStar's satisfaction, identify, segregate, and permanently remove and delete all CoStar Content from the relevant database(s) or portions thereof.  In the event that, contrary to this Order, any such Xceligent Database or portion thereof is sold, transferred, assigned or otherwise made available to any individual or entity (other than CoStar) without such remediation having taken place, such individual and/or entity shall be subject to this Order on the same terms as Xceligent.

5.      Xceligent shall abide by the terms of use and terms of service applicable to the CoStar Databases and CoStar Websites.

6.      This Court shall retain jurisdiction of this matter in law and equity for purposes of enforcing and/or adjudicating claims of violations of this Judgment and Permanent Injunction.  Any such matters shall be raised by motion.  The parties irrevocably and fully waive and relinquish any argument that venue in or jurisdiction by the Court is improper or inconvenient.

7.      The parties irrevocably and fully waive any and all right to appeal this Judgment and Permanent Injunction, to have it vacated or set aside in whole or in part,

Exhibit H, Page 289

to seek or obtain a new trial thereon, or otherwise to attack in any way, directly or collaterally, its validity or enforceability.

   **IT IS SO ORDERED.**


Date: December 3, 2019                          **/S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                           Fernando J. Gaitan, Jr.
                                                United States District Judge

7

Exhibit H, Page 290

# EXHIBIT I

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

COSTAR GROUP, INC.
1331 L Street, NW
Washington, D.C., 20005

and

COSTAR REALTY INFORMATION, INC.,
1331 L Street, NW
Washington, D.C., 20005

Civil Action No. 1:21-cv-02227

               Plaintiffs,

       v.

LEON CAPITAL GROUP, LLC,
3500 Maple Avenue, Suite 1600
Dallas, Texas, 75219

               Defendant.

## COMPLAINT

Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively "CoStar")

through its undersigned counsel, bring this Complaint against Defendant Leon Capital Group, LLC

("Leon Capital") and allege as follows:

### NATURE OF THE ACTION

1.     CoStar is the nation's leading provider of commercial real estate information, and

operates the nation's most comprehensive commercial real estate information database. The

database, into which CoStar has invested billions of dollars and decades of research, is made

available for a monthly subscription fee, generating significant revenue for CoStar.

2.     CoStar brings this case against Leon Capital to redress its unauthorized access to,

and use of, CoStar's database, as well as Leon Capital's breach of its now-terminated subscription

license to the CoStar database.

3.     Leon Capital's license to access the database was terminated in May 2021 after CoStar learned that Leon Capital's founder and CEO, in that capacity, was advising and directing CoStar's competitor Commercial Real Estate Exchange, Inc. ("CREXi"), and holding himself out as the "co-founder" of CREXi.  The license does not permit such competitive access.  Upon termination, the remaining license payments were due immediately.  Leon Capital has refused to pay the remaining license payments, despite requests to Leon Capital itself and its counsel.

4.     Even worse, after termination and while refusing to make payment, Leon Capital surreptitiously continued to access and use the CoStar subscription database without authorization. It hacked into the database using access credentials obtained from its Managing Director's prior employer.  And it did so in secret while telling CoStar that it no longer had any use for CoStar's database.  Indeed, the very day after CoStar canceled Leon Capital's license, Leon Capital's Managing Director used the stolen credentials to access CoStar's database.  Shortly thereafter, Leon Capital downloaded *hundreds* of CoStar records from the database.

5.     Leon Capital's wrongdoing is willful, and part of a broader attack on CoStar. CREXi, the CoStar competitor co-founded and advised by Leon Capital, was sued by CoStar last year for infringing more than 10,000 of CoStar's copyrighted images, misappropriating CoStar's data and services, and—tellingly—accessing the CoStar subscription database without authorization.  CREXi obtained that access in exactly the same way as Leon Capital: hacking into the database by using pilfered credentials obtained from legitimate license-holders.  Yet despite that lawsuit (and CoStar's prior successful lawsuits against others who have engaged in the same wrongdoing), Leon Capital made the calculated, and brazen, decision to use stolen credentials to secretly access CoStar's database and download masses of data.

6.     Leon Capital's current copycat misconduct is also consistent with history.  Leon

2

Capital was instrumental in the founding of CREXi, and CREXi's founding was based on data misappropriated from Ten-X, now part of CoStar. Ten-X sued CREXi for misappropriation, and CREXi was enjoined from using the information that it stole from Ten-X and made a seven-figure damages payment. At the time, CREXi's founder Michael DeGiorgio apologized for the wrongdoing. Nevertheless, CREXi, advised by Leon Capital, has continued to build its business on stolen information, including data swiped from the CoStar database. Leon Capital has followed suit.

7. CoStar has successfully pursued actions in federal courts around the country against other entities, like Leon Capital, that have hacked into CoStar's subscription database by using passwords issued to legitimate subscribers. For example, in *CoStar Group, Inc. v. SandBox Real Estate and Development LLC*, the District of New Jersey permanently enjoined a brokerage company and its employee from accessing the CoStar database without authorization and entered a judgment of $500,000 based on the fraudulent conduct. No. 2:18-cv-14611-JLL-SCM (D.N.J. Jan. 1, 2019), ECF No. 13. The Northern District of California entered a similar judgment in *CoStar Group, Inc. v. Mahoney & Associates Commercial Real Estate*. No. 5:18-cv-06096-NC (N.D. Cal. Jan. 10, 2019), ECF No. 22.

8. Those precedents, and the pending case against CREXi, have not deterred Leon Capital. CoStar seeks damages to redress the harm that it has suffered as a result of Leon Capital's actions and injunctive relief to preclude any further wrongdoing.

## THE PARTIES

9. Plaintiff CoStar Group, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 1331 L Street, NW, Washington, District of Columbia, 20005.

10. Plaintiff CoStar Realty Information, Inc. is a corporation organized and existing

3

under the laws of the State of Delaware with its principal place of business and corporate offices located at 1331 L Street, NW, Washington, District of Columbia, 20005. It is a wholly owned subsidiary of CoStar Group, Inc.

11.     Defendant Leon Capital, LLC is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business and corporate offices located at 3500 Maple Avenue, Suite 1600, Dallas, Texas, 75219.

## JURISDICTION AND VENUE

12.     This action arises under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq. The Court has federal question jurisdiction over claims arising under this statute pursuant to 28 U.S.C. §§ 1331. The Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal-law claims that they form part of the same case or controversy. The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the parties in this action are diverse, and the amount in controversy exceeds $75,000.

13.     Personal jurisdiction and venue over Leon Capital are proper because Leon Capital agreed to submit to the jurisdiction of this Court pursuant to the License Agreement and Terms of Use at issue in this matter. Under Section 18 of CoStar's Terms and Conditions, incorporated into Leon Capital's License Agreement, as well as CoStar's Terms of Use, agreed to by Leon Capital, the Licensee (Leon Capital) "irrevocably consents to the jurisdiction and venue of the federal and state courts located in the District of Columbia . . . for purposes of any action brought against Licensee in connection with this Agreement or use of the Licensed Product." This action arises in connection with Leon Capital's License Agreement and use (and subsequent misuse) of CoStar's database, the Licensed Product.

4

## FACTUAL ALLEGATIONS

### *CoStar's Business*

14.     Founded in 1987, CoStar employs more than four thousand people worldwide. As a result of these employees' diligent efforts—and the investment of over $5 billion over the last three decades—CoStar has developed the most comprehensive database of commercial real estate information in the world, which includes painstakingly-researched and verified data about commercial real estate properties and transactions, integrated with millions of copyrighted photographs.

15.     CoStar and its affiliates expend enormous time and resources to populate and maintain the CoStar database, including averaging 24,000 thousand phone calls per day to brokers, owners, developers, and other real estate professionals, canvassing a half million properties per year nationwide, and taking nearly one million photographs annually. CoStar's marketing research operations make millions of data changes to the CoStar database each day. CoStar works continuously to verify that the data contained in its database are up-to-date and reliable.

16.     While the subscription database provides exceptional benefits to CoStar's paying customers, it also has a positive impact on consumer welfare in the larger commercial real estate ecosystem. CoStar's subscription database provides greater transparency in the form of readily available, professionally researched, and regularly updated commercial real estate information. The existence of this information has made traditional commercial real estate transactions more efficient, and has also facilitated a more diverse range of commercial real estate deals. The net result is greater liquidity and significantly mitigated risk in one of the world's most valuable and important asset classes: commercial real estate.

17.     The important role that CoStar plays in the commercial real estate market is demonstrated by the extent to which its users interact with the service. Each day, users conduct

Exhibit I, Page 295

nearly nine million searches for commercial real estate on CoStar products, including its subscription database. CoStar estimates that its products play a part in supporting one trillion dollars of commercial real estate leases, sales, and mortgage originations in the United States each year.

18.    CoStar's database is the engine that drives CoStar's business, attracting paying subscribers, licensees, and users, and powering its various information services, analytical tools, and digital marketplaces.

19.    CoStar licenses its database for a monthly subscription fee. Those fees, which vary based on a number of factors, generate significant revenue for CoStar. While the marginal cost of any single unauthorized access may be limited, in the aggregate stealing access to CoStar presents a major threat to the ongoing viability of CoStar's products.

***CoStar Goes to Significant Lengths to Protect its Databases Through Technological Means and Terms of Use***

20.    CoStar goes to significant lengths to protect the data that it makes available. For example, CoStar contractually prohibits customers from sharing passwords, and employs password authentication modes that vary according to risk, firewalls, and other software to limit access and manipulation of its data.

21.    In addition to its state-of-the-art anti-piracy technology, CoStar operates its own anti-piracy program, which includes monitoring suspicious activity and unauthorized uses of its subscription database. That program—which caught the unauthorized access at issue here—is also costly to administer.

22.    CoStar also carefully structures its license agreements to ensure that all licensees have a clear duty to maintain the confidentiality of CoStar's proprietary information.

23.    Further, because the contents of the subscription database—including CoStar's

6

photographs and professionally researched data—are central to its business, as part of its ordinary course of business, CoStar registers its photographs with the United States Copyright Office.

24.     As a significant investor in CREXi, a company CoStar is currently litigating against, and a savvy investment entity in its own right, Leon Capital is fully aware of the contractual obligations CoStar requires of its customers, as well as the steps CoStar takes to protect its subscription database.

25.     Leon Capital is subject to two contractually binding sets of terms: (1) CoStar's Terms and Conditions (Commercial) (hereafter, "Terms and Conditions") (attached as Exhibit A) and (2) CoStar's Terms of Use ("Terms of Use") (attached as Exhibit B).

26.     Leon Capital's License Agreement (the "License Agreement") (attached as Exhibit C), to which Leon Capital is also bound, explicitly incorporates by reference the Terms and Conditions, and Leon Capital agreed to the Terms of Use when it accessed the subscription database online.

27.     In order to log into the CoStar subscription database, users, including Leon Capital's employees, must enter their username and password on a login page. Below the "Log In" button, users are reminded, "By clicking 'Log In', I accept CoStar's Terms of Use." The text includes a conspicuous hyperlink (in blue font) to CoStar's Terms of Use:



7

28.     Leon Capital employees, including its Managing Director Sean Wood, clicked on this "Log In" button on over 100 occasions while improperly attempting to access the database within the course and scope of their employment for Leon Capital throughout May and June 2021.

29.     In addition, before users (such as Leon Capital's employees) first log into CoStar's subscription database, CoStar sends them an email reminding them that their use of CoStar's database is subject to CoStar's Terms of Use.  The email states, "Use is subject to the CoStar Terms of Use.  By logging in, you agree to be bound by such terms."  Leon Capital employees received these emails.  For example, Connor White received an email regarding CoStar's Terms of Use on January 29, 2021.

30.     Further, after initially logging into CoStar's database, users (such as Leon Capital's employees) are periodically required to agree (again) to CoStar's Terms of Use.  Every 30 days, or upon login if the user has not logged in for 30 days, a pop-up window appears that displays CoStar's Terms of Use and requires the user to affirmatively agree to the terms before proceeding to the database, by clicking "Accept":

Exhibit I, Page 298



31.     Thus, for example, if a user has not logged into CoStar's database for 45 days, the next time the user logs in and tries to access information, the pop-up window will appear, and the user must re-accept the terms in order to gain access.  Users who decline are redirected to the homepage.  The text at the top of the pop-up window states: "YOUR USE OF THIS WEBSITE CONSTITUTES YOUR AGREEMENT TO BE BOUND BY THESE TERMS OF USE."  While accessing the database for purposes of his work at Leon Capital, Leon Capital's Managing Director, Sean Wood, accepted CoStar's terms on behalf of Leon Capital by clicking "accept" on the pop-up window on June 9, 2021.

32.     CoStar's users, including Leon Capital employees, are also reminded of their obligation to abide by CoStar's Terms of Use throughout their interactions with the database.  For example, when a user attempts to export (i.e., download) data from portions of CoStar's databases, text at the bottom of the page reads, "By using this site, you agree to our Terms of Use.  As with the login page, "Terms of Use" is a hyperlink, and clicking those words displays CoStar's Terms of Use.  Leon Capital Managing Director Wood would have seen this text when he exported data

9

Exhibit I, Page 299

from portions of the CoStar database, discussed below in Paragraph 61, in May and June 2021.

33.    Moreover, when users, such as Leon Capital employees, view other results in the subscription database, the bottom of results pages also advises: "By using this site, you agree to our Terms of Use." As with the login page, "Terms of Use" is a hyperlink, and clicking those words displays CoStar's Terms of Use. Leon Capital's Managing Director Wood would have seen this hyperlink at the bottom of results pages as he utilized the database throughout May and June 2021.

34.    As a result of these numerous and conspicuous notices, Leon Capital had actual and constructive notice that its use of CoStar's subscription database is subject to CoStar's Terms of Use, which form a binding contract. CoStar's Terms of Use make clear that they form a binding contract, stating: "By accessing or using this Site (or any part thereof), you agree to be legally bound by the Terms of Use that follow . . . . They constitute a legal contract between you and CoStar . . . ." This term is industry standard.

35.    Both CoStar's Terms and Conditions and the Terms of Use explicitly and clearly prohibit access and/or use by competitors, both direct and indirect. CoStar's Terms and Conditions provide that the "Licensee shall not . . . access or use the Licensed Product if Licensee is a direct or indirect competitor of CoStar." Likewise, CoStar's Terms of Use also expressly forbid competitors from accessing, using, or transmitting any portion of CoStar's content in the subscription database service:

> [Y]ou shall not . . . (2) Access or use any portion of the Product if you are a direct or indirect competitor of CoStar, nor shall you provide, disclose or transmit any portion of the Product to any direct or indirect competitor of CoStar (by way of example, a "direct or indirect competitor" of CoStar includes, but is not limited to, Internet listing services or other real estate information services and employees, independent contractors and agents of such services).

10

36.     This restriction can come as no surprise to Leon Capital: it is also industry standard.  Many other commercial real estate marketplaces—such as those operated by 42Floors, Inc., Catalyst Real Estate Software, Inc., Yardi Systems, Inc., and Brevitas, Inc.—prohibit competitive use of their websites.

37.     CoStar's Terms and Conditions also provide that "CoStar may terminate any portion of this Agreement immediately without further obligation to Licensee: (1) upon CoStar's good faith determination of any violation by Licensee of any provision of Section 1, 2, 3 or 13(a) hereunder."  Further, "[u]pon Licensee's breach of any term of this Agreement that leads to a termination of this Agreement, all License Fees and all other fees payable hereunder shall become immediately due and payable in full."

38.     The Terms of Use provide that only "Authorized Users" may access CoStar's password-protected services, and that users may not "access any portion of a Passcode Protected Product unless you are an Authorized User for such Passcode Protected Product using the Passcodes assigned to you by CoStar to access the components and services of the Passcode Protected Product that your License Agreement authorizes you to access."  In other words, using credentials issued to another person is strictly prohibited.

39.     An "Authorized User" is defined as "an individual (a) employed by a CoStar Client or an Exclusive Contractor (as defined below) of a CoStar Client at a site identified in the License Agreement, and (b) who is specified in the License Agreement as a user of a specific Passcode Protected Service and represented by the Client to be an employee or Exclusive Contractor of the Client.  An 'Exclusive Contractor' is defined as an individual person working solely for the CoStar Client and not another company with real estate information needs or for themselves and performing substantially the same services for such CoStar Client as an employee of such CoStar

11

Client."

40. In short, an individual may not use CoStar credentials obtained through a previous employer to access or use the CoStar subscription product once that person has left the employer (because they are no longer "employed by a CoStar Client") or if they are acting as a "direct or indirect competitor of CoStar" (even if also employed simultaneously by a CoStar Client). Nor may the person use those credentials (even of a current employer) at any time to "provide, disclose, or transmit" information to CoStar's competitors.

41. As set forth in more detail below, Leon Capital violated CoStar's Terms and Conditions and Terms of Use, and fraudulently accessed and used CoStar's subscription database without authorization.

### *Leon Capital Violated CoStar's Binding Terms and Conditions and Terms of Use*

42. Leon Capital is a competitor, or at the very least an indirect competitor, of CoStar. Leon Capital's website advertises Leon Capital's CEO and founder, Fernando De Leon, as a "co-founder" of CREXi. Mr. De Leon's public statements indicate that Leon Capital promotes CREXi, directs customers to the company, and has continuously advised CREXi on business strategy.

43. In an interview with CREXi posted on CREXi's website on September 1, 2020, Mr. De Leon stated that he helped CREXi "refine their business model" and "champion[ed] the platform to brokers and other professionals" and that he "asked all the brokers we deal with to use CREXi," "introduced CREXi to many investment sales brokers," and that Leon Capital "[was] able to take insight from those brokers back to CREXi's team and help them shape the products that *we* [sic] offered and the platform accordingly." (Emphasis added.)

44. Mr. De Leon also stated that "[m]y involvement in CREXi hasn't changed much: I join in on semi-monthly touchpoints with Mike [the CREXi CEO] and advise on new ideas and strategic moves."

45.     On March 5, 2021, CoStar asked Leon Capital to explain Mr. De Leon's public statements concerning his and Leon Capital's business relationship with CREXi.  Despite a second request on April 21, 2021, Leon Capital failed to address any of CoStar's concerns regarding Mr. De Leon's statements, namely that Leon Capital is competing with CoStar while simultaneously using CoStar's subscription database.  Accordingly, CoStar concluded that Leon Capital is a competitor, or at the very least an indirect competitor, of CoStar through its relationship with CREXi.

46.     As a competitor, Leon Capital is prohibited from using CoStar's subscription services pursuant to CoStar's Terms and Conditions, which are incorporated into Leon Capital's subscription license.

47.     Term 2 of CoStar's Terms and Conditions provides that any licensee shall not "access or use the Licensed Product if the Licensee is a direct or indirect competitor of CoStar." Given his public statements, it is clear that Mr. De Leon, in his role as CEO of Leon Capital, has maintained an extensive and involved business relationship with CREXi, one of CoStar's competitors.

48.     Under Term 6 of CoStar's Terms and Conditions, "CoStar may terminate any portion of this Agreement immediately without further obligation to Licensee: (1) upon CoStar's good faith determination of any violation by Licensee of any provision of Section 1, 2, 3 or 13(a) hereunder."

49.     Term 6 also contains an acceleration clause: "Upon Licensee's breach of any term of this Agreement that leads to a termination of this Agreement, all License Fees and all other fees payable hereunder shall become immediately due and payable in full."

50.     Further, Term 7 of the Terms and Conditions provides that after termination of a

13

license, CoStar may audit the Licensee to ensure that it has deleted and destroyed all elements of CoStar's product. This audit occurs at CoStar's expense and requires the cooperation of the Licensee.

51. CoStar asked Leon Capital and Mr. De Leon to explain his public statements regarding Leon Capital's business relationship with CREXi on two separate occasions, and he refused to do so.

52. Accordingly, upon CoStar's good-faith determination that Leon Capital is a competitor (or at the very least an indirect competitor) of CoStar, on May 24, 2021, CoStar, in writing, exercised its right to terminate the contract, sought payment of the fees owed for the remainder of the contract term under the acceleration clause, and requested Leon Capital's cooperation with an audit.

53. To date, three months later, Leon Capital has failed to pay the amount due to CoStar under the contract, totaling $47,081.28 and has failed to respond to CoStar's request for an audit.

***Leon Capital Accesses CoStar's Database Without Authorization and Downloads Hundreds of Records***

54. On April 19, 2021 Leon Capital, through counsel, told CoStar that Leon Capital would "no longer use its subscription with CoStar." Notwithstanding that unequivocal representation, and notwithstanding the fact that CoStar cancelled Leon Capital's subscription on May 24, 2021, Leon Capital has continued, covertly, to access and use CoStar's product. Indeed, the *very day* after the cancellation, Leon Capital's Managing Director Wood accessed the CoStar product without authorization, in violation of CoStar's Terms of Use. In May and June 2021, following CoStar's termination of Leon Capital's contract, Mr. Wood, acting within the course and scope of his employment for Leon Capital, improperly and without authorization exported over *five hundred* (500) records that CoStar works to provide and maintain at significant cost.

55.     Leon Capital was able to gain access to the password-protected database without authorization, and download masses of data, by using the same improper means as that employed by its associate and advisee CREXi: using credentials issued to other, legitimate, licensees.

56.     Following the termination of Leon Capital's subscription contract on May 24, 2021, Leon Capital's Managing Director Wood continued to access CoStar's subscription database and servers without authorization, on behalf of and within the course and scope of his employment for Leon Capital, using credentials issued to Dalfen Industrial, his previous employer.

57.     Around May 1, 2021, Leon Capital hired Mr. Wood to "spearhead the growth of Leon Capital Group's industrial development and investment platform." On information and belief, Mr. Wood has continuously maintained his employment with Leon Capital since around May 1, 2021.

58.     Beginning on May 25, 2021, Mr. Wood began using a device associated with Leon Capital. The device was named "LCG – CW," and utilized hundreds of times by Connor White (i.e. "CW"), a Development Associate at Leon Capital Group, between January and May 2021. On information and belief, LCG is an abbreviation of "Leon Capital Group."

59.     As noted above, every time Mr. Wood, acting as Leon Capital's Managing Director, logged into the CoStar subscription database on the Leon Capital device, he was notified that he was accepting the Terms of Use. Further, on at least one occasion while acting as Managing Director, on June 9, 2021, a pop up window appeared with the Terms of Use and Mr. Wood affirmatively accepted CoStar's terms by clicking "Accept."

60.     Mr. Wood's usage of the CoStar product increased significantly after he began at Leon Capital, as compared to his usage of the Costar database when employed by Dalfen Industrial. Indeed, Mr. Wood logged more activity in the CoStar database in May 2021 than in

15

any other month in his history with CoStar, accumulating nearly 30,000 hits.  And while during his time at Dalfen Industrials he had not conducted exports from the CoStar product; however, once he starting working at Leon Capital, that activity spiked.

61.     Indeed, in his role as Leon Capital's Managing Director, Mr. Wood mined the CoStar database for data.  After beginning at Leon Capital, Mr. Wood conducted no fewer than 97 CoStar sessions, accumulating nearly 50,000 hits.  He conducted exports of nearly 500 records related to industrial properties in the Phoenix and Dallas markets, as well as at least 25 sales transaction records.  There is no question that these records were downloaded for use by, and on behalf of, Leon Capital, which is based in Texas and is involved in real estate projects across Arizona and Texas.  Mr. Wood downloaded these records, within the course and scope of his employment, for Leon Capital after CoStar terminated Leon Capital Group's License.

62.     Mr. Wood continued to access CoStar's database without authorization through June 2021, accumulating over 20,000 hits in June 2021.

63.     Because of unusual activity on his account, on or around June 21, 2021 CoStar sent an email to Mr. Wood's registered email address, notifying him that additional security features would be added to his account.

64.     Despite the enhanced security, Mr. Wood continued to access CoStar on behalf of Leon Capital, and within the course and scope of his employment for Leon Capital.  On each occasion, he represented (falsely) that he was an authorized user of the CoStar database.

65.     On August 12, 2021, CoStar terminated Mr. Wood's access under the Dalfen Industrial license.

66.     Mr. Wood is not the only Leon Capital employee to have used credentials issued to their previous employer to access Costar's database without authorization.

16

67.     Corbin Stall, who previously worked at Jones Lang LaSalle, Inc. ("JLL"), was hired by Leon Capital around May 1, 2021 to "assist[] in all aspects of industrial acquisitions and development." On information and belief, Mr. Stall has continuously maintained his employment with Leon Capital since around May 1, 2021.

68.     On at least May 25 and May 28, 2021, Mr. Stall used his JLL credentials to access the CoStar database.

69.     Each time Mr. Stall logged into the subscription product, he was notified that he was accepting the Terms of Use.

70.     On August 12, 2021, CoStar terminated Mr. Stall's access under the JLL license.

71.     Leon Capital is responsible for the unauthorized access to, and copying from, CoStar's database. Sean Wood is a Managing Director of the company who utilized a device consistently associated with Leon Capital to access the database and download hundreds of records. And the content of those records indicate that Leon Capital was using them for its own benefit and business, namely, in connection with its industrial development platform.

72.     All actions alleged to be taken by employees of Leon Capital, including their entry into a contract with CoStar, are alleged, on information and belief, to have been taken within the course and scope of employment of, on behalf of, at the direction of, and for the benefit of Leon Capital, and authorized or ratified by Leon Capital.

73.     In particular, Mr. Wood within the course and scope of his employment, on behalf of, and for the benefit of Leon Capital used the CoStar database to obtain information about industrial properties, the reason he was recently hired by Leon Capital. The access occurred from a device associated with Leon Capital, and the content accessed related to properties in Phoenix and Dallas, consistent with Leon Capital's scope of business. Further, Mr. Wood's access in May

17

2021 was substantially distinct from his previous use of the CoStar product. This change in usage directly corresponds to his change in employment.

74.     That Leon Capital's misconduct was knowing, willful and undertaken with the intent of harming CoStar is further underscored by Leon Capital's close association with CREXi. Not only has CREXi engaged in the exact same conduct—hacking into CoStar's database using credentials issued to legitimate clients—but CoStar sued CREXi as a result, setting forth in detail the reason why the conduct was unlawful and harmful. Leon Capital is familiar with that lawsuit, but nevertheless proceeded to engage in the same wrongdoing.

75.     Like CREXi, Leon Capital made a calculated, willful, and brazen decision to steal and free-ride on CoStar's products and services.

76.     Leon Capital's free-riding on an authorized user's license caused financial harm to CoStar and its paying subscribers.

77.     Based on prior precedent, CoStar is entitled to damages of *at least* hundreds of thousands of dollars, if not significantly more.

## FIRST CLAIM FOR RELIEF
### Breach of Contract – Subscription License Agreement (Non Payment)

78.     CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

79.     Leon Capital agreed to CoStar's Terms and Conditions pursuant to its License Agreement, Exhibit C.

80.     CoStar has performed all of the conditions, covenants, and promises required on its part to be performed in accordance with the License Agreement.

81.     CoStar's Terms and Conditions prohibit competitors from accessing, using, or transmitting any portion of CoStar's content in the subscription database.

18

82.     As described above, Leon Capital is a competitor of CoStar, and accessed and used CoStar's content, in violation of CoStar's Terms of Use.

83.     CoStar's Terms and Conditions provide that CoStar may terminate the License Agreement upon CoStar's good faith determination of any violation by the Licensee of the License Agreement.

84.     CoStar terminated Leon Capital's License Agreement pursuant to its good faith determination that Leon Capital is a competitor of CoStar.

85.     CoStar's Terms and Conditions also provide that upon Leon Capital's breach of any term of the License Agreement, and following CoStar's termination, all License Fees shall become immediately due and payable in full.

86.     Despite proper termination of the License Agreement and request for payment of fees, Leon Capital has failed to pay.  CoStar has been damaged by the amount due under the contract, totaling $47,081.28.

### SECOND CLAIM FOR RELIEF
### Breach of Contract – Terms of Use (Improper Access and Use)

87.     CoStar repeats and realleges each and every allegation set forth above and incorporates them herein by reference.

88.     Use of CoStar's subscription database is subject to contractually binding Terms of Use.  Such terms are common in the industry, and as a sophisticated business entity, Leon Capital and its employees would be well aware of both the presence and binding nature of the Terms of Use.

89.     Leon Capital had actual and/or constructive knowledge that access to the CoStar database is subject to CoStar's Terms of Use.  As described above, Leon Capital's Managing Director, acting within the course and scope of his employment for Leon Capital, and for Leon

19

Capital's benefit, affirmatively accepted CoStar's Terms of Use that appeared in a pop-up window

on June 9, 2021. Additionally, Leon Capital was on notice of CoStar's Terms of Use because

references to CoStar's Terms of Use appear: (1) directly below the log-in button for the CoStar

database, a log-in button used repeatedly by Leon Capital's Managing Director and at least one

other Leon Capital employee; (2) in an email to users before they log into the database for the first

time, an email received by Leon Capital employees, including Connor White on January 29, 2021;

(3) at the bottom of the page when users export data from portions of CoStar's database, an action

completed by Leon Capital's Managing Director; and (4) at the bottom of each results page, which

would have been seen by Leon Capital's Managing Director throughout his interactions with the

database. Leon Capital, through its Managing Director and at least one other employee, had clear

and explicit notice that its use of the database was subject to CoStar's Terms of Use.

90.     CoStar's Terms of Use prohibit competitors from accessing, using, or transmitting

any portion of CoStar's content in the subscription database.

91.     CoStar's Terms of Use also explicitly require that an Authorized User be

"employed by the Licensee" to lawfully utilize the subscription product, and prohibit using a

passcode to access the subscription product for services other than those authorized under a

particular License Agreement.

92.     CoStar has performed all of the conditions, covenants, and promises required on its

part to be performed in accordance with its Terms of Use.

93.     In direct breach of CoStar's Terms of Use, Leon Capital, through its Managing

Director, accessed CoStar's subscription database despite being its competitor, in order to use that

content to benefit Leon Capital's business.

94.     Further, Leon Capital, through its Managing Director, breached CoStar's Terms of

Use by accessing CoStar's Passcode Protected Product by using a password issued under a different License Agreement, and by storing, copying, and exporting any portion of the Product into any database or other software when he was not an Authorized User (because he was no longer employed by the subscriber).

95.     As described above, Leon Capital's Managing Director acted within the course and scope of his employment for Leon Capital, for Leon Capital's benefit and on its behalf.

96.     Leon Capital's breaches of CoStar's Terms of Use have been material, willful, repeated, and systematic.

97.     Leon Capital caused damage and continues to cause irreparable harm to CoStar by free-riding on another licensee's subscription.

98.     CoStar is therefore entitled to damages in an amount to be proven at trial, injunctive relief, and other relief as the Court deems appropriate.

<div align="center">

**THIRD CLAIM FOR RELIEF**
**Computer Fraud and Abuse Act (CFAA)**

</div>

99.     CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

100.     CoStar's computers and servers, located in the United States, are involved in interstate and foreign commerce and communication.

101.     Leon Capital's access to CoStar's computers and servers is subject to its binding terms and conditions.

102.     Leon Capital, through its Managing Director, improperly accessed CoStar's servers without authorization when the Managing Director, acting within the scope and in the course of his employment, and on Leon Capital's behalf, used his former employer's login credentials to access CoStar's database, in violation of CoStar's Terms of Use and for the benefit of Leon Capital.

<div align="center">21</div>

103.    Authorized CoStar users are provided access to CoStar's password protected platform by way of non-transferable subscriptions between CoStar and its institutional client subscriber.  Access to the subscription product by someone other than an employee or exclusive contractor of the institutional client subscriber (or by a competitor of CoStar) constitutes a violation of CoStar's Terms of Use and a trespass on CoStar's servers.

104.    Leon Capital's repeated unauthorized access to CoStar's computers and servers allowed it to access, obtain, and use CoStar's contractually protected information involving interstate communication in violation of 18 U.S.C. § 1030, specifically data about commercial real estate.

105.    CoStar has suffered over $5,000 worth of damages and losses over a one-year period, in an amount to be proven at trial.  Leon Capital's unauthorized access consumed time and money spent identifying, investigating, and attempting to block and otherwise respond to Leon Capital's unauthorized access, as described throughout this Complaint.  This work included an investigation of the unauthorized actions taken by Leon Capital in CoStar's computer systems once it had gained access, including a review of the resources utilized or diverted by Leon Capital, the data downloaded by Leon Capital, and any other damage done to CoStar's computer systems.  The work consumed significant employee time that could have been spent on other matters.  Further, Leon Capital's unauthorized access has impaired and corrupted CoStar's efforts to measure and analyze legitimate subscriber traffic.  Leon Capital's unlawful conduct undermined the soundness and therefore the value of those data and analyses, which are used for multiple business purposes.

106.    CoStar has suffered and will continue to suffer irreparable harm as a result of Leon Capital's access to its computers and servers without, and in excess of, authorization, which entitles CoStar to injunctive relief.

## FOURTH CLAIM FOR RELIEF
### Fraud (in the alternative to Claims 2 and 5)

107.    CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

108.    In the alternative to CoStar's claim for breach of contract, and to the extent there is an absence of a binding agreement between the parties or such agreement is ineffective, Leon Capital is liable to CoStar for common law fraud.

109.    While employed by Leon Capital and acting within the scope of and in the course his employment, Managing Director Wood logged into CoStar's subscription database. By doing so, he represented that he, on behalf of Leon Capital, accepted CoStar's Terms of Use each time he logged into the product.

110.    By accepting CoStar's Terms of Use, Mr. Wood represented to CoStar, on behalf of Leon Capital, that he would not access any portion of a Passcode Protected Product unless he was an Authorized User for such Passcode Protected Product (as those terms are defined in the Terms of Use).

111.    Mr. Wood's representations to CoStar that Leon Capital would abide by CoStar's Terms of Use were false. Every time Mr. Wood accessed CoStar's subscription database in the scope and course of his employment with Leon Capital, and entered the credentials of an Authorized User and Clicked, "Log In," he was representing on behalf of Leon Capital that he was an Authorized User when in fact, as Leon Capital and he knew, he was not, because he was no longer employed by the Licensee of the product.

112.    By using the credentials from his previous employer, Mr. Wood, acting for Leon Capital, deliberately concealed from CoStar the truth about his status as a non-Authorized User,

23

and thereby, on behalf of Leon Capital, misrepresented his identity when gaining access to and using CoStar's subscription database. Mr. Wood, acting for Leon Capital, intended for CoStar to rely on his misrepresentation and grant him access to the database.

113.    CoStar relied on the foregoing representations and omissions by providing Leon Capital, acting through Mr. Wood, with the information and data available on its subscription database, which included allowing Mr. Wood, on behalf of Leon Capital, to view and download information on various properties.

114.    Leon Capital's conduct was egregious. By using fraudulent credentials, Mr. Wood, acting for Leon Capital and within the scope of his employment, acted with willful disregard of CoStar's rights, and intentionally concealed and misrepresented his identity to CoStar in order to access CoStar's database for the benefit of Leon Capital.

115.    As a result of this fraudulent misconduct, CoStar has been damaged in an amount to be proven at trial and is entitled to punitive damages.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment (in the alternative to Claims 2 and 4)

116.    CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

117.    In the alternative to CoStar's claims for breach of contract and fraud, and to the extent there is an absence of a binding agreement between the parties or such agreement is ineffective, Leon Capital is liable to CoStar under the doctrine of unjust enrichment.

118.    CoStar expects that any user of its database is an Authorized User (as that term is defined in the Terms of Use) who pays, or who is employed by or contracted to an entity that pays, CoStar's subscription fees.

119.    Each time Leon Capital's Managing Director logged in and used the CoStar

database in the course and scope of his employment with Leon Capital and on its behalf, he willingly accepted a benefit for Leon Capital that he and Leon Capital knew or should have known they did not pay for.

120.    By accessing the CoStar database, Leon Capital received and retained the benefit of CoStar subscription issued to a third party, without paying for that subscription, and had knowledge of the benefits CoStar conferred upon it as a result of such unlawful access.

121.    Leon Capital voluntarily accepted, retained, and received the benefits CoStar provided and was enriched by those benefits.

122.    Leon Capital's acceptance and retention of these benefits under the circumstances make it inequitable and unjust for it to retain the benefit without payment to CoStar.

123.    Leon Capital has been unjustly enriched at the expense of CoStar, and as a result, CoStar is entitled to an award reflecting the value of the services Leon Capital obtained, the benefits it received from those services, and the profit it obtained as a result.

## PRAYER FOR RELIEF

WHEREFORE, CoStar prays for judgment against Leon Capital as follows:

A.    For an award of $47,081.28, the amount due under Leon Capital's License Agreement;

B.    For an award pursuant to 18 U.S.C. § 1030(g) of compensatory damages;

C.    For an award of damages arising from Leon Capital's breaches of CoStar's Terms of Use and the misappropriation of CoStar material as a result of those breaches or, in the alternative, for an award of damages arising from Leon Capital's materially false representations and the unauthorized access to CoStar's proprietary database that resulted from such misrepresentations, or, in the alternative, for an award reflecting the value of the services Leon Capital obtained and disgorging all profits, benefits, and other compensation obtained by Leon

<center>25</center>

Capital;

D.      For a permanent injunction (1) barring Leon Capital's continued unauthorized access to CoStar's computers and servers; (2) barring Leon Capital from sharing or distributing any content impermissibly acquired from CoStar's database with any other organization or individual; (3) ordering Leon Capital to identify to CoStar the location of all such content in whatever form it may now take, wherever stored (including without limitation in the systems of third parties), and however altered or manipulated, and the identities of all individuals and entities to whom or which Leon Capital transferred any such content; (4) ordering Leon Capital to segregate and render inaccessible to its employees and all third parties (other than CoStar) all content Leon Capital impermissibly acquired from CoStar's database, in whatever form, wherever stored (including without limitation in the systems of third parties), and however altered or manipulated; (5) ordering Leon Capital to identify all benefits and profits that resulted from such information; and (6) ordering Leon Capital to cooperate fully with the contractual audit request issued by CoStar;

E.      For further permanent injunctive relief as deemed necessary by the Court;

F.      For an award of CoStar's costs, including its reasonable attorneys' fees and disbursements of counsel, as permitted by law;

G.      For prejudgment and post-judgment interest, as permitted by law;

H.      For punitive damages to the extent available; and

I.      For such further and additional relief as the Court may deem just and proper.

### JURY DEMAND

CoStar demands a trial by jury on all issues properly tried to a jury.

Dated: August 20, 2021

Respectfully submitted,

*/s/ Nicholas J. Boyle*           

NICHOLAS J. BOYLE
D.C. Bar No. 481098
nicholas.boyle@lw.com
SARAH A. TOMKOWIAK
D.C. Bar No. 987680
sarah.tomkowiak@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Attorneys for Plaintiffs

# EXHIBIT J

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**LEON CAPITAL GROUP, LLC,**<br><br>Defendant. |

Case No. 21-cv-2227 (CRC)

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that [12] Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.  The Court dismisses Claim One of the complaint.  The Court denies the motion to dismiss as to the remaining claims.  It is further

**ORDERED** that the parties shall file a joint status report with a proposed schedule for further proceedings by June 21, 2022.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  June 7, 2022

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**LEON CAPITAL GROUP, LLC,**<br><br>Defendant. | Case No. 21-cv-2227 (CRC) |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar")

operate a commercial real estate database. CoStar here sues a former licensee of its database,

Leon Capital Group, LLC ("Leon Capital"), over claims that Leon Capital is too closely tied to

one of CoStar's competitors—the Commercial Real Estate Exchange, Inc. ("CREXi"). CoStar's

complaint raises five claims, all of which Leon Capital has moved to dismiss. As explained

below, the Court will dismiss Claim One, for breach of contract, because Leon Capital's

payment of the amount due under the contract has mooted the claim. But the Court finds that

CoStar has at least plausibly stated the other four claims for relief. The Court will, accordingly,

grant the motion to dismiss in part and deny it in part.

I.     **Background**

CoStar operates "the nation's most comprehensive commercial real estate information

database," which it licenses to users for a monthly fee.[1] Compl. ¶¶ 1, 19. Until May 2021, one

---

[1] The Court draws the following facts from the allegations in the complaint, which the
Court must accept as true at the motion to dismiss stage. <u>See</u> <u>Sparrow v. United Air Lines, Inc.</u>,
216 F.3d 1111, 1113 (D.C. Cir. 2000).

of those licensees was Leon Capital, a Texas-based real estate investment and development firm.
Id. ¶¶ 3, 11; Mem. in Supp. of Mot. Dismiss ("MTD") at 2.  Leon Capital's use of CoStar's
database was governed by two sets of terms.  Compl. ¶ 25.

First, by virtue of its License Agreement, Leon Capital agreed to abide by CoStar's
Terms and Conditions.  Id. ¶ 26; see generally Compl. Ex. A.  Among those terms was a
limitation on "access or use" of the database by any "direct or indirect competitor of CoStar."
Compl. ¶ 35; see Compl. Ex. A ¶ 2(c)(3).  The Terms and Conditions also authorized CoStar,
upon a "good faith determination" that a licensee had violated certain provisions—including the
bar on competitor access—to terminate the license immediately.  Compl. ¶ 37; Compl. Ex. A ¶
6(b)(1).  Such a termination would accelerate all fees due on the remainder of the license.
Compl. ¶ 37; Compl. Ex. A ¶ 6(d).

Second, when Leon Capital employees logged on to CoStar's database, their conduct was
governed by that product's Terms of Use.  See Compl. ¶¶ 27–28, 30; see generally Compl. Ex.
B.  Like the Terms and Conditions, the Terms of Use forbade access to the database by "direct or
indirect competitor[s] of CoStar."  Compl. ¶ 35; Compl. Ex. B at 6.  The Terms of Use offered
examples of what Costar considered to be its competitors, including "Internet listing services or
other real estate information services."  Compl. ¶ 35; Compl. Ex. B at 6.  In addition, the Terms
of Use provided that only "Authorized User[s]" could access CoStar's password-protected
services.  Compl. ¶ 38; Compl. Ex. B at 6.  The Terms of Use defined "Authorized User" as "an
individual (a) employed by a CoStar Client or an Exclusive Contractor . . . of a CoStar Client at a
site identified in the License Agreement, and (b) who is specified in the License Agreement as a
user of a specific Passcode Protected Product and represented by the Client to be an employee or
Exclusive Contractor of the Client."  Compl. Ex. B at 3.

CoStar alleges that Leon Capital violated both sets of terms. The first set of allegations relates to the Terms and Conditions' prohibition on the use of CoStar products by any direct or indirect competitor. Compl. ¶ 42. In the spring of 2021, CoStar determined Leon Capital to be a competitor, based on the relationship of Leon Capital and its CEO with CREXi. Id. ¶¶ 42–52. At that point, CoStar had been embroiled in copyright litigation with CREXi for more than six months. See Compl., CoStar Grp., Inc. v. Com. Real Est. Exch., Inc., No. 20-cv-8819 (C.D. Cal. Sept. 25, 2020). After inquiring about Leon Capital's relationship to CREXi and receiving no substantive response, on May 24, 2021, CoStar exercised its right to terminate the contract. Compl. ¶¶ 45, 51–52. It requested $47,081.28 in remaining annual fees under the acceleration clause. Id. ¶ 53. As of the filing of the complaint, Leon Capital had not paid that balance. Id.

CoStar also alleges that, notwithstanding the termination of its License Agreement, Leon Capital continued to access its database in May and June of 2021, in violation of the product's Terms of Use. Id. ¶ 54. Here, CoStar focuses on the actions of Leon Capital's Managing Director Sean Wood, who joined Leon Capital in May 2021. Id. ¶¶ 55, 57, 59. CoStar alleges that, beginning on May 25, 2021—the day after the termination of the License Agreement— Wood began logging on to CoStar's database with credentials issued to his previous employer, Dalfen Industrial. Id. ¶¶ 56–65. Acting on behalf of and in the course of his employment with Leon Capital, and using a Leon Capital device, Wood allegedly "mined the CoStar database for data"—ultimately exporting several hundred records. Id. ¶¶ 58, 61. On August 12, 2021, CoStar terminated Wood's Dalfen username. Id. ¶ 65. At the same time, it terminated the access of another Leon Capital employee who had similarly employed a username connected with an old employer. See id. ¶¶ 66–70.

3

A week later, CoStar filed suit.  The complaint raises five claims.  CoStar first seeks

payment of the amount due under the Terms and Conditions' termination clause, which CoStar

triggered based on Leon Capital's alleged violation of the non-competition provision.  Id. ¶¶ 78–

86.  The remaining claims all relate to Wood's continued use of CoStar's database after May 24,

2021, in his capacity as Leon Capital's Managing Director.  These include a second breach of

contract claim, this time for alleged violations of the Terms of Use.  Id. ¶¶ 87–98.  Two more

claims—one for fraud and one for unjust enrichment—are pled in the alternative to Claim Two,

in the event the Court finds the Terms of Use did not constitute a binding contract between Leon

Capital and CoStar.  Id. ¶¶ 107–15, 116–23.  Finally, CoStar alleges in Claim Three that Wood's

access to and downloading of data from CoStar's servers violated the Computer Fraud and

Abuse Act ("CFAA"), 18 U.S.C. § 1030.  Id. ¶¶ 99–106.  Leon Capital has moved to dismiss all

five claims under Federal Rule of Civil Procedure 12(b)(6).

**II.  Legal Standards**

Rule 12(b)(6) requires dismissal of a complaint that fails "to state a claim upon which

relief can be granted."  When evaluating a 12(b)(6) motion, the court must determine whether the

complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Id.

A court "must treat the complaint's factual allegations as true and must grant plaintiff the

benefit of all inferences that can be derived from the facts alleged."  Sparrow v. United Air

Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation and quotation marks

omitted).  Although a complaint need not provide "detailed factual allegations" to withstand a

12(b)(6) motion, it must offer "more than labels and conclusions."  <u>Twombly</u>, 550 U.S. at 555.

"In determining whether a complaint states a claim, the court may consider the facts alleged in

the complaint, documents attached thereto or incorporated therein, and matters of which it may

take judicial notice."  <u>Stewart v. Nat'l Educ. Ass'n</u>, 471 F.3d 169, 173 (D.C. Cir. 2006).

### III.  Analysis

The Court organizes its discussion of each claim based on the relevant allegations—first

taking up CoStar's breach of contract claim relating to non-payment of the accelerated license

fees; then considering its breach of contract claim relating to Wood's unauthorized access, as

well as the fraud and unjust enrichment claims pled in the alternative to this claim; and finally

turning to the CFAA claim.  As explained below, the Court will dismiss only CoStar's first

claim, and will otherwise deny Leon Capital's motion to dismiss.

### A.  <u>Breach of Subscription License Agreement and Terms and Conditions (Claim One)</u>

With its first breach of contract claim, CoStar relies on several provisions of its standard

Terms and Conditions, which was incorporated by reference in the parties' License Agreement.

Compl. ¶ 26.  CoStar alleges that it validly terminated Leon Capital's License Agreement upon

its good faith determination that Leon Capital had violated the Terms and Conditions' non-

competition provision.  <u>Id.</u> ¶ 84.  CoStar then claims that Leon Capital improperly withheld the

payment due under a term accelerating the remainder of the license fees.  <u>Id.</u> ¶¶ 85–86.

"To prevail on a claim of breach of contract, a party must establish (1) a valid contract

between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty;

and (4) damages caused by breach."  <u>Tsintolas Realty Co. v. Mendez</u>, 984 A.2d 181, 187 (D.C.

2009).  Leon Capital offers two arguments in favor of dismissal:  First, it disputes the existence

Exhibit J, Page 323

of a breach because, in its view, CoStar has offered "no plausible basis on which the court could determine Leon Capital's private investment business is an actual competitor" of CoStar.  MTD at 4.  Second, Leon Capital reports that it has paid the amount due under the acceleration clause—the full damages CoStar seeks with Claim One.  <u>See id.</u> at 1.  It therefore asks the Court to find the claim moot.  <u>See</u> Reply at 4.  The Court only needs to reach this second argument, as it agrees that there is nothing left of CoStar's contract claim as currently pled.

A claim becomes moot "when, among other things, the court can provide no effective remedy because a party has already obtained all the relief that [it has] sought." <u>Conservation Force, Inc. v. Jewell</u>, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (alteration in original) (internal quotation marks omitted).  In its complaint, CoStar specifically alleges that it "has been damaged by the amount due under the contract, totaling $47,081.28." Compl. ¶ 86.  Leon Capital represents that it has now paid the accelerated fees due on the contract—a fact CoStar implicitly concedes.  <u>See</u> Opp'n at 2 (accusing Leon Capital of "conveniently omitting <i>when</i> it made this overdue payment" but noting only that it was "unpaid as of the filing of the complaint").  Because CoStar has received all the relief it seeks in Claim One of the complaint, the claim is moot.

CoStar's efforts to avoid this conclusion are unavailing.  It first argues that the Court may not consider the fact of Leon Capital's belated payment on a 12(b)(6) motion because it is "outside the 'four corners of the complaint.'"  <u>Id.</u> at 13 (quoting <u>Brown v. Gov't of D.C.</u>, 390 F. Supp. 3d 114, 122 (D.D.C. 2019)).  Whether Leon Capital has already provided the relief requested in Claim One, however, does not go to failure to state a claim under 12(b)(6).  <u>Mundo Verde Pub. Charter Sch. v. Sokolov</u>, 315 F. Supp. 3d 374, 380 n.2 (D.D.C. 2018).  It goes instead to mootness, which is properly raised in a motion to dismiss for lack of jurisdiction under Rule

Exhibit J, Page 324

12(b)(1).  Id.  And when evaluating 12(b)(1) motions, courts are not limited to the allegations in the complaint.  See Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).  "[W]here necessary," they may consider, among other things, "undisputed facts evidenced in the record."  Id.  Because CoStar has conceded that the payment was made, the Court may consider that undisputed fact and find the breach of contract claim moot.

CoStar next claims that it "seeks far more than $47,081.28—explicitly pleading 'at least hundreds of thousands of dollars" in damages and seeking injunctive relief as well.  Opp'n at 13–14 (citing Compl. ¶ 77).  But that is simply not how CoStar pled this first contract claim.  In the complaint, CoStar framed it as one for "Non Payment" based on a breach of the "Subscription License Agreement."  See Compl. at 18.  Although CoStar sought injunctive relief and additional damages when laying out *other* claims in the complaint, see, e.g., id. ¶ 98, it did not do so here.  Rather, in the relevant paragraphs in Claim One, CoStar only alleges that it has been "damaged by the amount due under the contract, totaling $47,081.28."  Id. ¶ 86.  Because CoStar has been paid those alleged damages, Claim One is moot.

### B. Breach of Terms of Use (Claim Two)

The Court turns next to CoStar's second breach of contract claim, which focuses on Wood's access of its platform without authorization after the termination of Leon Capital's License Agreement in May 2021.  CoStar alleges that Wood's use of the platform can be attributed to Leon Capital, and that it violated two provisions in the Terms of Use:  (1) the prohibition on competitors' access to CoStar's content; and (2) the requirement that those who access the platform be Authorized Users "employed by the subscriber."  Compl. ¶¶ 93–94.  Leon Capital mounts two attacks on this claim, neither of which succeed.

First, Leon Capital contends that CoStar has not properly alleged a breach of the relevant contract—between it and Leon Capital.  In Leon Capital's telling, to the extent Wood violated any contract at all, it was the one between CoStar and his former employer, Dalfen Industrial, which never terminated his username when he left the company.  See MTD at 7–8.  There are several problems with this argument.  Initially, it touches only on CoStar's Authorized User theory of breach, and ignores the allegation that Wood accessed the database despite working for a competitor.  See Compl. ¶ 93.  The Court will discuss that alternate breach theory at the close of this section.  More fundamentally, it is beside the point whether Wood's actions *also* violated some agreement between Dalfen and CoStar, or whether they, too, could have prevented his misconduct by terminating his username sooner.  Here, CoStar has plausibly alleged facts that would support each element of a breach of contract by Wood:  a valid contract in the Terms of Use; an obligation to refrain from accessing the platform unless authorized; a breach of that duty when Wood used his old employer's username; and damages from that breach.  See id. ¶¶ 88, 91, 94, 97.

Contrary to Leon Capital's suggestion, see Reply at 3–4, CoStar has also plausibly alleged that any violation by Wood can be attributed to Leon Capital.  "Under the doctrine of *respondeat superior*, an employer may be held liable for the acts of his employees committed within the scope of their employment."  Brown v. Argenbright Sec., Inc., 782 A.2d 752, 757 (D.C. 2001).  Leon Capital does not dispute that Wood was its employee at the time of the alleged breach.  And CoStar plausibly alleges that Wood accessed the database "within the scope of his employment" with Leon Capital and "in furtherance of its ends."  District of Columbia v. Coron, 515 A.2d 435, 437 (D.C. 1986).  The complaint notes that Wood used a Leon Capital-associated device, and that the data he accessed concerned industrial properties in Phoenix and

Exhibit J, Page 326

Dallas—areas where Leon Capital "is involved in real estate projects." Compl. ¶¶ 58, 61. That is sufficient at the motion to dismiss stage to support CoStar's claim that Wood violated CoStar's Terms of Use in order "to obtain information about industrial properties" on "behalf of, and for the benefit of Leon Capital." Id. ¶ 73.

Second, Leon Capital argues that the doctrine of double recovery bars this contract claim. See MTD at 8–9. This doctrine provides that "[d]amages for the same injury may be recovered only once even though they are recoverable under two or more legal theories for two or more wrongs." Rice v. District of Columbia, 818 F. Supp. 2d 47, 57 (D.D.C. 2011) (citing Franklin Inv. Co., Inc. v. Smith, 383 A.2d 355, 358 (D.C. 1978)). But the appropriate way for courts to handle this risk is to reduce a final award, not to dismiss one of those theories at the outset. Id.; Cobb v. Wash. Metro. Area Transit Auth., No. 20-cv-3522, 2021 WL 2935891, at *4 (D.D.C. July 13, 2021). Besides, neither of the other sources of recovery Leon Capital identifies—from Dalfen's license fees or Leon Capital's termination penalty—would compensate CoStar for Wood's conduct in May through August of 2021. As to the former, assuming Dalfen's license is subject to the same Terms and Conditions discussed above, access by a *former* employee would not be an authorized use. Dalfen's license fees thus would not compensate CoStar for Wood's continued access after he left his position there. As to the latter, the Court reads the termination clause in the Terms and Conditions to accelerate payment as a remedy for *past* violations. See Compl. Ex. A ¶ 6(d) (accelerating payment of all fees "*[u]pon Licensee's breach* of any terms of this Agreement that leads to a termination" (emphasis added)). Payment of such a penalty would not absolve now-former licensees for future misconduct. That being said, the Court is skeptical that the actual value of the damages here—arising out of extracontractual use of CoStar's database by a single individual—really amounts to the hundreds of thousands of dollars of

9

damage CoStar claims it suffered.  See Compl. ¶ 77.  But because CoStar has not yet been compensated for the alleged breach of the Terms of Use, no rule against double recovery mandates this claim's dismissal.

Finally, the Court returns to CoStar's alternate theory of liability on this claim—that Leon Capital (via Wood) also breached the Terms of Use in the summer of 2021 by accessing the database even though it was CoStar's competitor.  The parties do not mention this theory in their briefing on Claim Two, perhaps because they had already covered that ground when discussing CoStar's first breach claim.  But the Court finds it useful to explain the principles that govern this alternate theory of liability, as the Court will also allow it to survive the motion to dismiss.  This discussion may also streamline litigation going forward, should CoStar seek to amend its complaint to resuscitate any breach of contract claim arising out of Leon Capital's conduct before May 2021.[2]

In its briefing, Leon Capital suggests that none of the competitor allegations provide Costar an avenue for relief because it has offered "no plausible basis on which the court could determine Leon Capital's private investment business is an actual competitor of CoStar's database business."  MTD at 4.  CoStar counters that Leon Capital is "at least an indirect competitor," pointing to allegations that (1) CREXi is a direct competitor of CoStar; (2) Leon Capital's CEO was closely involved in founding, managing, and promoting CREXi; and (3) Leon Capital invested in CREXi.  See Opp'n at 9; Compl. ¶¶ 3, 24, 42.  While something of a

---

[2] These principles largely would have governed the merits of Claim One, had the Court not dismissed it as moot.  The Court sees only one difference:  evaluating any alleged violation of the Terms and Conditions' termination clause would require deciding whether CoStar believed in good faith that Leon Capital was a competitor—not whether it in fact competed.

Exhibit J, Page 328

close call, the Court ultimately concludes CoStar has at least plausibly alleged some sort of indirect competitor relationship.

Crucially, neither party has provided the Court with a particularly usable definition of "indirect competitor." The parties' agreements never define the term: The Terms and Conditions define neither direct nor indirect competitor. And the Terms of Use only provide examples of direct competitors—"Internet listing services or other real estate information services." Compl. Ex. B at 6. CREXi appears to be an Internet listing service, but Leon Capital does not.

The parties also have not pointed to any applicable law that encompasses and fully ties together the conduct of Leon Capital, its CEO, and CREXi. They cite no standard definition of "indirect competition" under District of Columbia law. CoStar has gathered cases from a range of other jurisdictions suggesting that "guiding, promoting, assisting, advising, and investing in CREXi"—as De Leon allegedly did—is sufficient to constitute indirect competition. See Opp'n at 10; see also, e.g., United HealthCare Servs., Inc. v. Corzine, No. 2:21-cv-319, 2021 WL 961217, at *16 (S.D. Ohio Mar. 15, 2021) (finding former employee violated prohibition on indirectly competing with insurance company by "participating in" meetings with competitor's "business development team"); Kan-Di-Ki, LLC v. Suer, No. 7937-VCP, 2015 WL 4503210, at *21 (Del. Ch. July 22, 2015) (unpublished) (crediting evidence that defendant engaged "indirectly in competitive" behavior "by assisting competitors" of a company). But this case law does not establish that Leon Capital—as opposed to its CEO—indirectly competes with CREXi. Neither the cited law nor the allegations in the complaint clarify whether any acts De Leon may have taken to benefit CREXi can and should be attributed to Leon Capital, or whether De Leon, instead, was acting in his personal capacity, without any benefit flowing to or from Leon Capital.

But the Court finds it at least plausible that Leon Capital is sufficiently tied to CREXi, and thus an indirect competitor of CoStar, by virtue of its alleged direct investment in that firm. Compl. ¶ 24. Contrary to Leon Capital's suggestion, this is not the kind of "mere conclusory statement[]" that courts must reject at the motion to dismiss stage. Iqbal, 556 U.S. at 678. To be clear, questions remain. The Court doubts that *any* investment—no matter how small or passive—would sufficiently align the interests of two firms such that competition by one would render the other an indirect competitor. And CoStar has not provided the Court with either details of the alleged investor relationship or any relevant case law to help substantiate this theory. Nevertheless, the Court concludes that, taken together, the allegations in the complaint suggest a close enough financial and operational relationship between Leon Capital, De Leon, and CREXi to plausibly allege indirect competition at this early stage of the litigation. The Court will therefore allow the competitor theory of breach to survive the motion to dismiss, even if additional legal and factual underpinnings may be required at subsequent stages of the case.[3]

C. Alternatives to Claim Two

The Court next addresses objections to the claims CoStar brought in the alternative to Claim Two: one for fraud, and one for unjust enrichment. Both may proceed.

1. *Fraud (Claim Four)*

CoStar claims that, even if the Court finds that no binding contract governed Leon Capital's interactions with CoStar's database after termination of its license in May 2021, Leon

---

[3] The Court is not convinced by any of Leon Capital's other arguments in its briefing—about, for example, whether Leon Capital is an alter ego of CREXi or shares some other parent, sister, or subsidiary relationship. See MTD at 6. These claims ignore the framing of the complaint, which does not rely on any potential direct corporate relationship.

12

Capital may still be liable for fraud. "[U]nder District of Columbia law, a plaintiff claiming fraud must prove (1) the defendant made a false representation; (2) in reference to material fact; (3) with knowledge of its falsity; (4) with the intent to deceive the plaintiff; (5) the plaintiff acted in reasonable reliance on that representation; (6) which consequently resulted in provable damages." Cordoba Initiative Corp. v. Deak, 900 F. Supp. 2d 42, 47 (D.D.C. 2012) (internal quotation marks omitted). CoStar maintains that, each time Wood logged on to its database in his capacity as Leon Capital's Managing Director, he fraudulently asserted that he was an Authorized User when in fact he was not, leading CoStar to grant him access it otherwise would not give. See Compl. ¶¶ 110–13.

Leon Capital first argues that this fraud claim is not sufficiently independent of CoStar's breach of contract claim. It is true that "[c]ourts tend not to allow plaintiffs to allege fraudulent inducement alongside claims for breach because '[t]here is a risk of turning every breach of contract suit into a fraud suit[.]'" Butler v. Enter. Integration Corp., 459 F. Supp. 3d 78, 96 (D.D.C. 2020) (quoting Desnick v. Am. Broad. Cos., Inc., 44 F.3d 1345, 1354 (7th Cir. 1995) (Posner, J.)). But under District of Columbia law, "the claims may stand side-by-side" when, among other things, (1) the "tort 'exist[s] in its own right independent of the contract, and any duty upon which the tort is based . . . flow[s] from considerations other than the contractual relationship," id. (quoting Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080, 1089 (D.C. 2008)), or (2) "when the defendant makes some statement 'prior to and 'independent of the contract' that deceives the plaintiff into agreeing to be bound by the contract," id. (quoting Ludwig & Robinson, PLLC v. BiotechPharma, LLC, 186 A.3d 105, 111 (D.C. 2018)). Either of those exceptions could plausibly cover the allegations here. CoStar has alleged that Wood violated an independent duty: the obligation to make truthful statements in business transactions

and not "suppress or conceal any facts within his knowledge which would materially qualify those stated." Ludwig, 186 A.3d at 110. In addition, CoStar has alleged that Wood misrepresented himself as an Authorized User before accepting the Terms of Use, and that—had he properly identified himself beforehand—CoStar would not have allowed him to complete the transaction. See Compl. ¶¶ 110–13.

Leon Capital also asks the Court to dismiss the fraud claim for failure to "allege an injury distinct from a breach of contract claim." See MTD at 12. Again, it misses the mark. Leon Capital correctly recites the relevant law: To state a viable claim for fraud, "the injury to the plaintiff must be an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit." Choharis, 961 A.2d at 1089 (internal quotation marks omitted). But CoStar has alleged such an injury here. Wood's purported misrepresentations did not just allow him to access the database without compensating CoStar or complying with its rules; rather, because Wood said he was an Authorized User when in fact he was not, CoStar granted him access it very well might not have offered at all. See Jacobson v. Hofgard, 168 F. Supp. 3d 187, 200 (D.D.C. 2016) ("Plaintiffs did not face mere contractual disappointment—they entered into a contract . . . that they would not have otherwise."). As with CoStar's second breach of contract claim, the Court is skeptical that the damages from this conduct is of nearly the magnitude claimed. To the extent Wood used CoStar's database that summer to gather information for Leon Capital's core real estate investment business, and not to steal proprietary information or funnel it directly to CREXi, it seems unlikely that this conduct would cause hundreds of thousands of dollars of injury, even if it did constitute fraud. Still, because there is some distinct injury alleged, the Court will not dismiss Claim Four.

14

### 2. *Unjust Enrichment (Claim Five)*

Leon Capital next seeks dismissal of CoStar's unjust enrichment claim, which it again has pled in the alternative to its second contract claim. "The elements of an unjust enrichment claim are that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Glasgow v. Camanne Mgmt. Inc., 261 A.3d 208, 219 (D.C. 2021) (internal quotation marks omitted). "Nothing precludes a plaintiff from pleading an unjust enrichment claim as an alternative to a breach of contract claim even when seeking the same amount[.]" Id. at 217.

In its motion to dismiss, Leon Capital suggests that CoStar's unjust enrichment claim fails because it has not alleged that "Leon Capital retains any benefit that belongs to CoStar." MTD at 13. The complaint, however, clearly alleges that Leon Capital "received and retained" benefits—conducting searches for information and exporting several hundred records—through Wood's unauthorized use of its database. Compl. ¶¶ 55, 61, 120. CoStar indicates that Leon Capital may still have access to this material, and seeks to prevent it from using that information going forward. See Compl. Prayer for Relief ¶ D.

When CoStar pointed out this problem in its opposition, Leon Capital changed tack. In its reply, Leon Capital seeks dismissal on the ground that CoStar has not alleged "it was deprived of its property, or that it no longer possesses the information as a result of Defendant's actions." Reply at 6. This reframed argument does not work, either. "Where there has been an unjust enrichment, the plaintiff's remedy is restitution, which is typically measured by reference to the defendant's *gain* rather than the plaintiff's *loss.*" Peart v. D.C. Hous. Auth., 972 A.2d 810, 820 (D.C. 2009) (emphasis in original). As a result, CoStar can seek a remedy for the benefit Leon

<div align="center">15</div>

Capital gained by virtue of its unauthorized access—regardless of CoStar's continued access to the same information.

D.  Computer Fraud and Abuse Act (Claim Three)

Finally, the Court turns to CoStar's statutory claim under the Computer Fraud and Abuse Act.  The CFAA prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2).  The statute authorizes a civil suit if a plaintiff can show that the defendant: "(1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1132 (9th Cir. 2009); see 18 U.S.C. § 1030(g).  CoStar claims that Leon Capital, via the acts of its managing director, violated the CFAA when Wood "improperly accessed CoStar's servers without authorization" using his former employer's credentials, and thereby accessed and obtained "protected information" from CoStar's computers and servers.  Compl. ¶¶ 102–04.

Leon Capital urges dismissal of the CFAA claim primarily on the ground that Wood's conduct did not exceed authorized access and was thus insufficient for liability under the CFAA. See MTD at 10 ("Wood's alleged access never went beyond what his valid login credentials were authorized to access.").  In defense of its claim, CoStar posits that Leon Capital focuses on the wrong portion of § 1030(a)(2)—which prohibits accessing a protected computer *without authorization*, as well as exceeding authorized access.  See Opp'n at 17–19.  CoStar has the better of this argument.  As it notes, § 1030(a)(2) prohibits both access without authorization and

16

exceeding authorized access. CoStar's complaint expressly pleads the former theory, so the Supreme Court's discussion of the latter in <u>Van Buren v. United States</u>, 141 S. Ct. 1648 (2021) is largely inapposite.

When properly construed, CoStar's complaint adequately pleads that Wood's conduct, on behalf of Leon Capital, violated § 1030's prohibition on access without authorization. Although the CFAA does not define "without authorization," several courts—including in this district—have held that it is the system owner's "decision to allow or terminate [a user's] authorization to access a computer that determines whether [he] is with or 'without authorization.'" <u>Brekka</u>, 581 F.3d at 1132–33; <u>see also</u> <u>Lewis-Burke Assocs., LLC v. Widder</u>, 725 F. Supp. 2d 187, 193 (D.D.C. 2010) (adopting definition from <u>Brekka</u> that an employee's "authorization" to access a computer "depends on actions taken by the employer"). Here, CoStar alleges that it expressly terminated Leon Capital's access to its database, and that, the very next day, Wood used credentials from his former employer to access it anyway. Compl. ¶¶ 54, 58. The Court is unconvinced by Leon Capital's theory that Wood's access was authorized because he had "valid credentials." MTD at 11. What makes the credentials valid for the purposes of the CFAA is not whether they worked, but whether Wood—and Leon Capital—was authorized to use them at all.

In its reply brief, Leon Capital suggests that CoStar's—and now the Court's—reading of § 1030(a)(2) is improperly broad, and that Wood's conduct does not amount to "covertly access[ing] 'protected computers,'" as defined by the CFAA. Reply at 5. But the only statutory term at the center of this argument is "protected computers," and there is no dispute that CoStar's proprietary and password-protected database qualifies. <u>See</u> 18 U.S.C. § 1030(e)(2)(B) (defining protected computer, as relevant here, as one "used in or affecting interstate or foreign commerce

17

or communication"). Covert access is not a defined term. Regardless, CoStar has plausibly alleged that Wood *did* covertly access CoStar's database, when he relied on out-of-date login credentials that the Terms of Use expressly precluded him from using.

Before closing, the Court takes a moment to discuss a related issue with CoStar's CFAA claim that Leon Capital does not raise, but that may be dispositive at summary judgment: the statute's loss requirement. To bring a CFAA suit, a plaintiff must have suffered "damage or loss by reason of" the alleged violation. 18 U.S.C. § 1030(g). As relevant here, the amount lost must also total at least $5,000 in "aggregat[e]" value. Id. § 1030(g), (c)(4)(a)(i)(I); Compl. ¶ 105. The statute also defines both loss and damage. Loss includes "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Damage is defined as "any impairment to the integrity or availability of data, a program, a system, or information." Id. § 1030(e)(8). As the Supreme Court has noted, both definitions "focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data."[4] Van Buren, 141 S. Ct. at 1660.

Here, the purported damages and losses seem to stem more from the value Leon Capital derived from CoStar's database—the "resources utilized" and "data downloaded"—than the "damage done to CoStar's computer systems." Compl. ¶ 105. Only the latter would appear to

---

[4] This loss requirement also reduces the likelihood, contrary to Leon Capital's suggestion, that the approach to unauthorized use claims detailed above would leave courts "inundated" with cases against "Netflix users and the like." Reply at 5. The statute's focus on "technological harms," as well as the $5,000 minimum loss standard, will necessarily limit claims to large-scale business misconduct affecting a victim's computer systems or data.

Exhibit J, Page 336

count toward the CFAA's minimum loss requirement. That being said, the Court does find
sufficient allegations in the complaint of the right kind of damages. CoStar claims that Leon
Capital's unauthorized access "impaired and corrupted CoStar's efforts to measure and analyze
legitimate subscriber traffic." <u>Id.</u> CoStar doesn't provide much detail on what those efforts are,
and it is very much an open question how much of the alleged remedial effort expended in the
wake of Wood's unauthorized use really focused on this kind of harm. But the allegation is
made and is plausible, and Leon Capital does not address this potential deficiency in its motion.
So the Court will leave CoStar to its proof at summary judgment, with these principles in mind.

**IV.   Conclusion**

   For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss in part and
deny it in part. A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>June 7, 2022</u>

# EXHIBIT K

# EXHIBIT 3

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

COSTAR GROUP, INC.
1331 L Street, NW
Washington, D.C., 20005

and

COSTAR REALTY INFORMATION, INC.,
1331 L Street, NW
Washington, D.C., 20005

        Plaintiffs,

       v.

LEON CAPITAL GROUP, LLC,
3500 Maple Avenue, Suite 1600
Dallas, Texas, 75219

        Defendant.

Civil Action No. 1:21-cv-02227-CRC

## AMENDED COMPLAINT

Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively "CoStar"), by and through their undersigned counsel, bring this Amended Complaint against Defendant Leon Capital Group, LLC ("Leon Capital") and allege as follows:

## NATURE OF THE ACTION

1.    CoStar is the nation's leading provider of commercial real estate information, and operates the nation's most comprehensive commercial real estate information database. The database, into which CoStar has invested billions of dollars and decades of research, is made available for a monthly subscription fee, generating significant revenue for CoStar.

2.    CoStar brings this case against Leon Capital to redress its unauthorized access to and use of CoStar's database as well as Leon Capital's breach of its now-terminated subscription license to the CoStar database.

3.     Leon Capital's license to access the database was terminated in May 2021 after CoStar learned that Leon Capital's founder and CEO, in that capacity, was advising and directing CoStar's competitor Commercial Real Estate Exchange, Inc. ("CREXi") while holding himself out as the "co-founder" of CREXi.  The license does not permit such competitive access.  Upon termination, the remaining license payments were due immediately.  However, Leon Capital—for months—repeatedly refused to pay, despite CoStar's requests.  Leon Capital finally made a belated payment of $47,081.28 in September 2021, but only after CoStar brought the instant action.

4.     Even worse, after termination and while refusing to make payment, Leon Capital surreptitiously continued to access and use the CoStar subscription database without authorization. It hacked into the database using access credentials obtained from its Managing Director's prior employer.  And it did so in secret while telling CoStar that it no longer had any use for CoStar's database.  Indeed, the very day after CoStar canceled Leon Capital's license, Leon Capital's Managing Director used the stolen credentials to access CoStar's database.  Shortly thereafter, Leon Capital downloaded *hundreds* of CoStar records from the database.  Moreover, Leon Capital's wrongdoing continues to this day—CoStar recently obtained evidence showing that as recently as July 19, 2022, and even after this Court ruled that CoStar had stated multiple claims against Leon Capital based on its unauthorized access to CoStar's commercial real estate database, Leon Capital thumbed its nose at CoStar and the Court and accessed and used LoopNet.com, CoStar's commercial real estate marketplace, without authorization.

5.     Leon Capital's wrongdoing is willful, and part of a broader attack on CoStar. CREXi, the CoStar competitor co-founded and advised by Leon Capital, was sued by CoStar in September 2020 for infringing more than 10,000 of CoStar's copyrighted images, misappropriating CoStar's data and services, and—tellingly—accessing the CoStar subscription

database without authorization. CREXi obtained that access in exactly the same way as Leon Capital: hacking into the database by using pilfered credentials obtained from legitimate license-holders. Yet despite that lawsuit (and CoStar's prior successful lawsuits against others who have engaged in the same wrongdoing), Leon Capital made the calculated, and brazen, decision to use stolen credentials to secretly access CoStar's database and download masses of data. And it was not done: Leon Capital doubled down and accessed CoStar's LoopNet site without authorization, including in June and July 2022, despite knowing that this Court had permitted CoStar's case to proceed. Leon Capital's demonstration of disdain for this Court underscores the intentional nature of its misconduct and confirms that its attack on CoStar will not stop absent broad injunctive relief.

6.      Leon Capital's current copycat misconduct is consistent with history. Leon Capital was instrumental in the founding of CREXi, and CREXi's founding was based on data misappropriated from Ten-X, now part of CoStar. Ten-X sued CREXi for misappropriation, and CREXi was enjoined from using the information that it stole from Ten-X and made a seven-figure damages payment. At the time, CREXi's founder Michael DeGiorgio apologized for the wrongdoing. Nevertheless, CREXi, advised by Leon Capital, has continued to build its business on stolen information, including data swiped from the CoStar database. Leon Capital has followed suit.

7.      CoStar has successfully pursued actions in federal courts around the country against other entities, like Leon Capital, that have hacked into CoStar's subscription database by using passwords issued to legitimate subscribers. For example, in *CoStar Group, Inc. v. SandBox Real Estate and Development LLC*, the District of New Jersey permanently enjoined a brokerage company and its employee from accessing the CoStar database without authorization and entered a judgment of $500,000 based on the fraudulent conduct. No. 2:18-cv-14611-JLL-SCM (D.N.J.

Exhibit K, Page 341

Jan. 1, 2019), ECF No. 13. The Northern District of California entered a similar judgment in *CoStar Group, Inc. v. Mahoney & Associates Commercial Real Estate.* No. 5:18-cv-06096-NC (N.D. Cal. Jan. 10, 2019), ECF No. 22.

8.  Those precedents, the pending case against CREXi, and this Court's ruling permitting CoStar's case to proceed, have not deterred Leon Capital. CoStar seeks damages to redress the harm that it has suffered as a result of Leon Capital's actions and injunctive relief to preclude any further wrongdoing.

## THE PARTIES

9.  Plaintiff CoStar Group, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 1331 L Street, NW, Washington, District of Columbia, 20005.

10. Plaintiff CoStar Realty Information, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 1331 L Street, NW, Washington, District of Columbia, 20005. It is a wholly owned subsidiary of CoStar Group, Inc.

11. Defendant Leon Capital, LLC is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business and corporate offices located at 3500 Maple Avenue, Suite 1600, Dallas, Texas, 75219.

## JURISDICTION AND VENUE

12. This action arises under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq. The Court has federal question jurisdiction over claims arising under this statute pursuant to 28 U.S.C. §§ 1331. The Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal-law claims that they form part of the same case or controversy. The Court also has diversity jurisdiction

4

pursuant to 28 U.S.C. § 1332 as the parties in this action are diverse, and the amount in controversy exceeds $75,000.

13.     Personal jurisdiction and venue over Leon Capital are proper because Leon Capital agreed to submit to the jurisdiction of this Court pursuant to the License Agreement and Terms of Use at issue in this matter.   Under Section 18 of CoStar's Terms and Conditions, incorporated into Leon Capital's License Agreement, as well as CoStar's Terms of Use, agreed to by Leon Capital, the Licensee (Leon Capital) "irrevocably consents to the jurisdiction and venue of the federal and state courts located in the District of Columbia . . . for purposes of any action brought against Licensee in connection with this Agreement or use of the Licensed Product."  This action arises in connection with Leon Capital's License Agreement and use (and subsequent misuse) of CoStar's database, the Licensed Product.

## FACTUAL ALLEGATIONS

### CoStar's Business

14.     Founded in 1987, CoStar employs more than four thousand people worldwide.  As a result of these employees' diligent efforts—and the investment of over $5 billion over the last three decades—CoStar has developed the most comprehensive database of commercial real estate information in the world, which includes painstakingly-researched and verified data about commercial real estate properties and transactions, integrated with millions of copyrighted photographs.

15.     CoStar and its affiliates expend enormous time and resources to populate and maintain the CoStar database, including averaging 24,000 thousand phone calls per day to brokers, owners, developers, and other real estate professionals, canvassing a half million properties per year nationwide, and taking nearly one million photographs annually.  CoStar's marketing research operations make millions of data changes to the CoStar database each day.  CoStar works

Exhibit K, Page 343

continuously to verify that the data contained in its database are up-to-date and reliable.

16.     While the subscription database provides exceptional benefits to CoStar's paying customers, it also has a positive impact on consumer welfare in the larger commercial real estate ecosystem.  CoStar's subscription database provides greater transparency in the form of readily available, professionally researched, and regularly updated commercial real estate information. The existence of this information has made traditional commercial real estate transactions more efficient, and has also facilitated a more diverse range of commercial real estate deals.  The net result is greater liquidity and significantly mitigated risk in one of the world's most valuable and important asset classes: commercial real estate.

17.     The important role that CoStar plays in the commercial real estate market is demonstrated by the extent to which its users interact with the service.  Each day, users conduct nearly nine million searches for commercial real estate on CoStar products, including its subscription database.  CoStar estimates that its products play a part in supporting one trillion dollars of commercial real estate leases, sales, and mortgage originations in the United States each year.

18.     CoStar's database is the engine that drives CoStar's business, attracting paying subscribers, licensees, and users, and powering its various information services, analytical tools, and digital marketplaces.

19.     One such marketplace is CoStar's LoopNet.com website ("LoopNet"), the nation's leading digital marketplace for commercial real estate.  Listings on LoopNet contain CoStar copyrighted images, data from the CoStar database, and edits made by CoStar researchers to improve marketability.  Every day buyers, sellers, lessors, lessees, owners, and brokers access and use the marketplace on LoopNet's website in order to list, buy, sell, lease, rent, or browse

6

commercial real estate.

20.     CoStar licenses its database for a monthly subscription fee.  Those fees, which vary based on a number of factors, generate significant revenue for CoStar.  While the marginal cost of any single unauthorized access may be limited, in the aggregate, stealing access to CoStar presents a major threat to the ongoing viability of CoStar's products.

### *CoStar Goes to Significant Lengths to Protect its Databases Through Technological Means and Terms of Use*

21.     CoStar goes to significant lengths to protect the data that it makes available.  For example, CoStar contractually prohibits customers from sharing passwords, and employs password authentication modes that vary according to risk, firewalls, and other software to limit access and manipulation of its data.

22.     In addition to its state-of-the-art anti-piracy technology, CoStar operates its own anti-piracy program, which includes monitoring suspicious activity and unauthorized uses of its subscription database.  That program—which caught the unauthorized access at issue here—is also costly to administer.

23.     CoStar also carefully structures its license agreements to ensure that all licensees have a clear duty to maintain the confidentiality of CoStar's proprietary information.

24.     Further, because the contents of the subscription database—including CoStar's photographs and professionally researched data—are central to its business, as part of its ordinary course of business, CoStar registers its photographs with the United States Copyright Office.

25.     As a significant investor in CREXi, a company CoStar is currently litigating against, and a savvy investment entity in its own right, Leon Capital is fully aware of the contractual obligations CoStar requires of its customers, as well as the steps CoStar takes to protect its subscription database.

<center>7</center>

26.     Leon Capital is subject to two contractually binding sets of terms: (1) CoStar's Terms and Conditions (Commercial) (hereafter, "Terms and Conditions") (attached as Exhibit A) and (2) CoStar's Terms of Use ("Terms of Use") (attached as Exhibit B).

27.     Leon Capital's License Agreement (the "License Agreement") (attached as Exhibit C), to which Leon Capital is also bound, explicitly incorporates by reference the Terms and Conditions, and Leon Capital agreed to the Terms of Use when it accessed the subscription database online.

28.     In order to log into the CoStar subscription database, users, including Leon Capital's employees, must enter their username and password on a login page.  Below the "Log In" button, users are reminded, "By clicking 'Log In', I accept CoStar's Terms of Use."  The text includes a conspicuous hyperlink (in blue font) to CoStar's Terms of Use:



29.     Leon Capital employees, including its Managing Director Sean Wood, clicked on this "Log In" button on over 100 occasions while improperly attempting to access the database within the course and scope of their employment for Leon Capital throughout May and June 2021.

30.     In addition, before users (such as Leon Capital's employees) first log into CoStar's subscription database, CoStar sends them an email reminding them that their use of CoStar's

database is subject to CoStar's Terms of Use. The email states, "Use is subject to the CoStar Terms of Use. By logging in, you agree to be bound by such terms." Leon Capital employees received these emails. For example, Connor White received an email regarding CoStar's Terms of Use on January 29, 2021.

31.     Further, after initially logging into CoStar's database, users (such as Leon Capital's employees) are periodically required to agree (again) to CoStar's Terms of Use. Every 30 days, or upon login if the user has not logged in for 30 days, a pop-up window appears that displays CoStar's Terms of Use and requires the user to affirmatively agree to the terms before proceeding to the database, by clicking "Accept":



32.     Thus, for example, if a user has not logged into CoStar's database for 45 days, the next time the user logs in and tries to access information, the pop-up window will appear, and the user must re-accept the terms in order to gain access. Users who decline are redirected to the homepage. The text at the top of the pop-up window states: "YOUR USE OF THIS WEBSITE CONSTITUTES YOUR AGREEMENT TO BE BOUND BY THESE TERMS OF USE." While

accessing the database for purposes of his work at Leon Capital, Leon Capital's Managing Director, Sean Wood, accepted CoStar's terms on behalf of Leon Capital by clicking "accept" on the pop-up window on June 9, 2021.

33.     CoStar's users, including Leon Capital employees, are also reminded of their obligation to abide by CoStar's Terms of Use throughout their interactions with the database.  For example, when a user attempts to export (i.e., download) data from portions of CoStar's databases, text at the bottom of the page reads, "By using this site, you agree to our Terms of Use.  As with the login page, "Terms of Use" is a hyperlink, and clicking those words displays CoStar's Terms of Use.  Leon Capital Managing Director Wood would have seen this text when he exported data from portions of the CoStar database, discussed below in Paragraph 61, in May and June 2021.

34.     Moreover, when users, such as Leon Capital employees, view other results in the subscription database, the bottom of results pages also advises:  "By using this site, you agree to our Terms of Use."  As with the login page, "Terms of Use" is a hyperlink, and clicking those words displays CoStar's Terms of Use.  Leon Capital's Managing Director Wood would have seen this hyperlink at the bottom of results pages as he utilized the database throughout May and June 2021.

35.     As a result of these numerous and conspicuous notices, Leon Capital had actual and constructive notice that its use of CoStar's subscription database is subject to CoStar's Terms of Use, which form a binding contract.  CoStar's Terms of Use make clear that they form a binding contract, stating: "By accessing or using this Site (or any part thereof), you agree to be legally bound by the Terms of Use that follow . . . .  They constitute a legal contract between you and CoStar . . . ."  This term is industry standard.

36.     Both CoStar's Terms and Conditions and the Terms of Use explicitly and clearly

10

prohibit access and/or use by competitors, both direct and indirect. CoStar's Terms and Conditions provide that the "Licensee shall not . . . access or use the Licensed Product if Licensee is a direct or indirect competitor of CoStar." Likewise, CoStar's Terms of Use also expressly forbid competitors from accessing, using, or transmitting any portion of CoStar's content in the subscription database service:

> [Y]ou shall not . . . (2) Access or use any portion of the Product if you are a direct or indirect competitor of CoStar, nor shall you provide, disclose or transmit any portion of the Product to any direct or indirect competitor of CoStar (by way of example, a "direct or indirect competitor" of CoStar includes, but is not limited to, Internet listing services or other real estate information services and employees, independent contractors and agents of such services).

37.    This restriction can come as no surprise to Leon Capital: it is also industry standard. Many other commercial real estate marketplaces—such as those operated by 42Floors, Inc., Catalyst Real Estate Software, Inc., Yardi Systems, Inc., and Brevitas, Inc.—prohibit competitive use of their websites.

38.    CoStar's Terms and Conditions also provide that "CoStar may terminate any portion of this Agreement immediately without further obligation to Licensee: (1) upon CoStar's good faith determination of any violation by Licensee of any provision of Section 1, 2, 3 or 13(a) hereunder." Further, "[u]pon Licensee's breach of any term of this Agreement that leads to a termination of this Agreement, all License Fees and all other fees payable hereunder shall become immediately due and payable in full."

39.    The Terms of Use provide that only "Authorized Users" may access CoStar's password-protected services, and that users may not "access any portion of a Passcode Protected Product unless you are an Authorized User for such Passcode Protected Product using the Passcodes assigned to you by CoStar to access the components and services of the Passcode

11

Protected Product that your License Agreement authorizes you to access." In other words, using credentials issued to another person is strictly prohibited.

40.     An "Authorized User" is defined as "an individual (a) employed by a CoStar Client or an Exclusive Contractor (as defined below) of a CoStar Client at a site identified in the License Agreement, and (b) who is specified in the License Agreement as a user of a specific Passcode Protected Service and represented by the Client to be an employee or Exclusive Contractor of the Client. An 'Exclusive Contractor' is defined as an individual person working solely for the CoStar Client and not another company with real estate information needs or for themselves and performing substantially the same services for such CoStar Client as an employee of such CoStar Client."

41.     In short, an individual may not use CoStar credentials obtained through a previous employer to access or use the CoStar subscription product once that person has left the employer (because they are no longer "employed by a CoStar Client") or if they are acting as a "direct or indirect competitor of CoStar" (even if also employed simultaneously by a CoStar Client). Nor may the person use those credentials (even of a current employer) at any time to "provide, disclose, or transmit" information to CoStar's competitors.

42.     As set forth in more detail below, Leon Capital violated CoStar's Terms and Conditions and Terms of Use, and fraudulently accessed and used CoStar's subscription database without authorization.

### *Leon Capital Violated CoStar's Binding Terms and Conditions and Terms of Use*

43.     Leon Capital is a competitor, or at the very least an indirect competitor, of CoStar. Leon Capital's website advertises Leon Capital's CEO and founder, Fernando De Leon, as a "co-founder" of CREXi. Mr. De Leon's public statements indicate that Leon Capital promotes CREXi, directs customers to the company, and has continuously advised CREXi on business strategy.

12

44. In an interview with CREXi posted on CREXi's website on September 1, 2020, Mr. De Leon stated that he helped CREXi "refine their business model" and "champion[ed] the platform to brokers and other professionals" and that he "asked all the brokers we deal with to use CREXi," "introduced CREXi to many investment sales brokers," and that Leon Capital "[was] able to take insight from those brokers back to CREXi's team and help them shape the products that *we* [sic] offered and the platform accordingly." (Emphasis added.)

45. Mr. De Leon also stated that "[m]y involvement in CREXi hasn't changed much: I join in on semi-monthly touchpoints with Mike [DeGiorgio, the CREXi CEO] and advise on new ideas and strategic moves."

46. On March 5, 2021, CoStar asked Leon Capital to explain Mr. De Leon's public statements concerning his and Leon Capital's business relationship with CREXi. Despite a second request on April 21, 2021, Leon Capital failed to address any of CoStar's concerns regarding Mr. De Leon's statements, namely that Leon Capital is competing with CoStar while simultaneously using CoStar's subscription database. Accordingly, CoStar concluded that Leon Capital is a competitor, or at the very least an indirect competitor, of CoStar through its relationship with CREXi.

47. As a competitor, Leon Capital is prohibited from using CoStar's subscription services pursuant to CoStar's Terms and Conditions, which are incorporated into Leon Capital's subscription license.

48. Term 2 of CoStar's Terms and Conditions provides that any licensee shall not "access or use the Licensed Product if the Licensee is a direct or indirect competitor of CoStar." Given his public statements, it is clear that Mr. De Leon, in his role as CEO of Leon Capital, has maintained an extensive and involved business relationship with CREXi, one of CoStar's

competitors.

49.     Under Term 6 of CoStar's Terms and Conditions, "CoStar may terminate any portion of this Agreement immediately without further obligation to Licensee: (1) upon CoStar's good faith determination of any violation by Licensee of any provision of Section 1, 2, 3 or 13(a) hereunder."

50.     Term 6 also contains an acceleration clause: "Upon Licensee's breach of any term of this Agreement that leads to a termination of this Agreement, all License Fees and all other fees payable hereunder shall become immediately due and payable in full, and in addition to the foregoing, CoStar's remedies shall include any damages and relief available at law or in equity."

51.     Term 19 expands on CoStar's entitlement to damages and equitable relief in the event of a licensee's breach: "Licensee acknowledges that in the event of a breach of any of these terms by Licensee, CoStar may suffer irreparable harm and shall be entitled to seek injunctive relief (without the necessity of posting a bond) as well as all other monetary remedies available at law or in equity."

52.     Further, Term 7 of the Terms and Conditions provides that after termination of a license, CoStar may audit the Licensee to ensure that it has deleted and destroyed all elements of CoStar's product.  This audit occurs at CoStar's expense and requires the cooperation of the Licensee.

53.     CoStar asked Leon Capital and Mr. De Leon to explain his public statements regarding Leon Capital's business relationship with CREXi on two separate occasions, and he refused to do so.

54.     Accordingly, upon CoStar's good-faith determination that Leon Capital is a competitor (or at the very least an indirect competitor) of CoStar, on May 24, 2021, CoStar, in

writing, exercised its right to terminate the contract, sought payment of the fees owed for the remainder of the contract term under the acceleration clause, and requested Leon Capital's cooperation with an audit.

### *Leon Capital Accessed CoStar's Database Without Authorization and Downloaded Hundreds of Records*

55.     On April 19, 2021 Leon Capital, through counsel, told CoStar that Leon Capital would "no longer use its subscription with CoStar."  Notwithstanding that unequivocal representation, and notwithstanding the fact that CoStar cancelled Leon Capital's subscription on May 24, 2021, Leon Capital has continued, covertly, to access and use CoStar's product.  Indeed, the *very day* after the cancellation, Leon Capital's Managing Director Wood accessed the CoStar product without authorization, in violation of CoStar's Terms of Use.  In May and June 2021, following CoStar's termination of Leon Capital's contract, Mr. Wood, acting within the course and scope of his employment for Leon Capital, improperly and without authorization exported over *five hundred* (500) records that CoStar works to provide and maintain at significant cost.

56.     Leon Capital was able to gain access to the password-protected database without authorization, and download masses of data, by using the same improper means as that employed by its associate and advisee CREXi: using credentials issued to other, legitimate, licensees.

57.     Following the termination of Leon Capital's subscription contract on May 24, 2021, Leon Capital's Managing Director Wood continued to access CoStar's subscription database and servers without authorization, on behalf of and within the course and scope of his employment for Leon Capital, using credentials issued to Dalfen Industrial, his previous employer.

58.     Around May 1, 2021, Leon Capital hired Mr. Wood to "spearhead the growth of Leon Capital Group's industrial development and investment platform."  On information and belief, Mr. Wood has continuously maintained his employment with Leon Capital since around

15

May 1, 2021.

59.     Beginning on May 25, 2021, Mr. Wood began using a device associated with Leon Capital.  The device was named "LCG – CW," and utilized hundreds of times by Connor White (i.e. "CW"), a Development Associate at Leon Capital Group, between January and May 2021.  On information and belief, LCG is an abbreviation of "Leon Capital Group."

60.     As noted above, every time Mr. Wood, acting as Leon Capital's Managing Director, logged into the CoStar subscription database on the Leon Capital device, he was notified that he was accepting the Terms of Use.  Further, on at least one occasion while acting as Managing Director, on June 9, 2021, a pop up window appeared with the Terms of Use and Mr. Wood affirmatively accepted CoStar's terms by clicking "Accept."

61.     Mr. Wood's usage of the CoStar product increased significantly after he began at Leon Capital, as compared to his usage of the CoStar database when employed by Dalfen Industrial.  Indeed, Mr. Wood logged more activity in the CoStar database in May 2021 than any other month in his history with CoStar, accumulating nearly 30,000 hits.  And while during his time at Dalfen Industrials he had not conducted exports from the CoStar product; however, once he starting working at Leon Capital, that activity spiked.

62.     Indeed, in his role as Leon Capital's Managing Director, Mr. Wood mined the CoStar database for data.  After beginning at Leon Capital, Mr. Wood conducted no fewer than 97 CoStar sessions, accumulating nearly 50,000 hits.  He conducted exports of nearly 500 records related to industrial properties in the Phoenix and Dallas markets, as well as at least 25 sales transaction records.  There is no question that these records were downloaded for use by, and on behalf of, Leon Capital, which is based in Texas and is involved in real estate projects across Arizona and Texas.  Mr. Wood downloaded these records, within the course and scope of his

employment, for Leon Capital after CoStar terminated Leon Capital Group's License.

63.    Mr. Wood continued to access CoStar's database without authorization through June 2021, accumulating over 20,000 hits in June 2021.

64.    Because of unusual activity on his account, on or around June 21, 2021 CoStar sent an email to Mr. Wood's registered email address, notifying him that additional security features would be added to his account.

65.    Despite the enhanced security, Mr. Wood continued to access CoStar on behalf of Leon Capital, and within the course and scope of his employment for Leon Capital.  On each occasion, he represented (falsely) that he was an authorized user of the CoStar database.

66.    On August 12, 2021, CoStar terminated Mr. Wood's access to CoStar's database under the Dalfen Industrial license.

67.    Mr. Wood is not the only Leon Capital employee to have used credentials issued to their previous employer to access CoStar's database without authorization.

68.    Corbin Stall, who previously worked at Jones Lang LaSalle, Inc. ("JLL"), was hired by Leon Capital around May 1, 2021 to "assist[] in all aspects of industrial acquisitions and development."  On information and belief, Mr. Stall has continuously maintained his employment with Leon Capital since around May 1, 2021.

69.    On at least May 25 and May 28, 2021, Mr. Stall used his JLL credentials to access the CoStar database.

70.    Each time Mr. Stall logged into the subscription product, he was notified that he was accepting the Terms of Use.

71.    On August 12, 2021, CoStar terminated Mr. Stall's access under the JLL license.

### *Leon Capital Continues, Even Now, to Access CoStar's Products Without Authorization*

17

72.     Leon Capital's misconduct continues to this day.  Even though CoStar terminated Leon Capital's access to the CoStar database, sued Leon Capital based on such access, and then obtained a ruling from this Court denying in substantial part Leon Capital's motion to dismiss, a ruling that held that "the allegations in the complaint suggest a close enough financial and operational relationship between Leon Capital, De Leon, and CREXi to plausibly allege indirect competition," Dkt. 19, Mem. in Supp. Of Order at 12 (June 7, 2022), Leon Capital has continued to access and use CoStar products without authorization.

73.     Since August 2021, and starting only days after CoStar filed its Complaint, Mr. Wood—whose unauthorized access to CoStar's database was described in that Complaint—has accessed LoopNet, CoStar's commercial real estate marketplace, without authorization.  Like the CoStar database Terms and Conditions, LoopNet's Terms and Conditions expressly prohibit competitor access.[1]  Nevertheless, while employed by Leon Capital, Mr. Wood logged in to LoopNet with a user account he created with an email address from his former employer, Dalfen Industrial.  Mr. Wood's unauthorized access of LoopNet using a login associated with his previous employer echoes his unauthorized access to CoStar's database using credentials issued to that same entity.  CoStar has observed multiple unauthorized logins to LoopNet using these credentials, with the most recent access occurring on June 6, 2022.  CoStar has now blocked this unauthorized access to LoopNet by Mr. Wood.

74.     Connor White, a Development Associate within Leon Capital's Multifamily

---

[1] *See* LoopNet Terms and Conditions (attached as Exhibit D) ("By viewing, using, or accessing the Service, You represent and warrant that You are not a competitor of LoopNet, CoStar Realty Information, Inc. or any of its affiliates . . . or acting on behalf of a competitor of LoopNet in registering for or accessing the Service."); *id.* ("You shall not use the Service as part of any effort to compete with LoopNet, including, without limitation, using the Service to provide, alone or in combination with any other product or service, any database services to any third party . . . .").

Division—who, upon information and belief, is responsible for deal sourcing, financial underwriting, feasibility analysis, project financing, and asset management—also has continued Leon Capital's pattern of covertly using CoStar products without authorization, notwithstanding the Court's ruling permitting CoStar's case against Leon Capital to proceed, a case predicated on Leon Capital's unauthorized access to a CoStar product. In May 2022, Mr. White began accessing LoopNet using the "Connect with Google" LoopNet login functionality. Mr. White logged in to LoopNet using "connormwhite@gmail.com." Mr. White used this account to search for and look up information on multifamily properties, consistent with his work for Leon Capital, thereby confirming that his access was for a competitive, i.e., unauthorized, purpose. Mr. White has accumulated nearly a thousand hits on LoopNet in the last two months alone, including logging in on June 8, 2022, the day *after* the Court's Order holding that just because a user has "valid credentials" does *not* mean his access was "authorized" and that CoStar's Terms and Conditions and Terms of Use do not authorize use by competitors. *See* Dkt. 19, Mem. in Supp. of Order, 2, 17 (June 7, 2022). His most recent detected login occurred on July 19, just two days before CoStar moved to file this Amended Complaint. CoStar has now blocked this unauthorized access to LoopNet by Mr. White. In sum, it is clear that Leon Capital's (and specifically Mr. White's) misconduct was not deterred by this Court's ruling that this lawsuit—based on unauthorized access to a CoStar product—would proceed. Leon Capital simply looked for other ways to continue to piggyback on CoStar, flouting CoStar's rights and demonstrating disdain for this Court.

### *Leon Capital Is Responsible For Ongoing Unauthorized Access By Its Executives and Employees*

75.     It is beyond doubt that Leon Capital is responsible for this unauthorized access to, and copying from, CoStar's database and LoopNet. Sean Wood is a Managing Director of the company who utilized a device consistently associated with Leon Capital to access the CoStar

database and download hundreds of records. And the content of those records indicate that Leon Capital was using them for its own benefit and business, namely, in connection with its industrial development platform.

76. All actions alleged to be taken by employees of Leon Capital, including their entry into a contract with CoStar, are alleged, on information and belief, to have been taken within the course and scope of employment of, on behalf of, at the direction of, and for the benefit of Leon Capital, and authorized or ratified by Leon Capital.

77. In particular, Mr. Wood within the course and scope of his employment, on behalf of, and for the benefit of Leon Capital used the CoStar database to obtain information about industrial properties, the reason he was recently hired by Leon Capital. The access occurred from a device associated with Leon Capital, and the content accessed related to properties in Phoenix and Dallas, consistent with Leon Capital's scope of business. Further, Mr. Wood's access in May 2021 was substantially distinct from his previous use of the CoStar product. This change in usage directly corresponds to his change in employment.

78. Moreover, the impermissible piggybacking on CoStar has not stopped. Had the wrongdoing been the work of rogue employees, presumably Leon Capital would have taken steps to ensure that it ceased upon being sued. But instead, the unauthorized access has simply switched to another CoStar product, LoopNet—presumably in an attempt to evade CoStar's detection efforts—and continued apace. Mr. Wood switched his activity to LoopNet just days after CoStar filed its Complaint. And Mr. White's pattern of unauthorized access started within the last few months and has continued after the Court's order permitting CoStar's suit to proceed.

79. That Leon Capital's misconduct was knowing, willful and undertaken with the intent of harming CoStar is further underscored by Leon Capital's close association with CREXi.

20

Not only has CREXi engaged in the exact same conduct—hacking into CoStar's database using credentials issued to legitimate clients—but CoStar sued CREXi as a result, setting forth in detail the reason why the conduct was unlawful and harmful. Leon Capital is familiar with that lawsuit, but nevertheless proceeded to engage in the same wrongdoing.

80. Like CREXi, Leon Capital made a calculated, willful, and brazen decision to steal and free-ride on CoStar's products and services.

81. Leon Capital's free-riding on an authorized user's license caused financial harm to CoStar and its paying subscribers.

82. Based on prior precedent, CoStar is entitled to damages of *at least* hundreds of thousands of dollars, if not significantly more.

## FIRST CLAIM FOR RELIEF
### Breach of Contract – Subscription License Agreement (Improper Access and Use)

83. CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

84. Leon Capital agreed to CoStar's Terms and Conditions pursuant to its License Agreement, Exhibit C.

85. CoStar has performed all of the conditions, covenants, and promises required on its part to be performed in accordance with the License Agreement.

86. CoStar's Terms and Conditions prohibit competitors from accessing, using, or transmitting any portion of CoStar's content in the subscription database.

87. As described above, Leon Capital is a competitor of CoStar, and accessed and used CoStar's content, in violation of CoStar's Terms and Conditions.

88. CoStar's Terms and Conditions provide that CoStar may terminate a License Agreement upon CoStar's good-faith determination that the Licensee violated the Terms and

21

Conditions' prohibition on competitive access, use, and distribution.

89.     CoStar terminated Leon Capital's License Agreement in May 2021 following its good-faith determination that Leon Capital is a competitor of CoStar, based on the public statements of Leon Capital's founder and CEO that he is a "co-founder" of CREXi, and Leon Capital's refusal to address CoStar's concerns about its close affiliation with this CoStar competitor. CoStar also demanded payment under the acceleration clause in the Terms and Conditions.

90.     After several months of delay, Leon Capital paid $47,081.28 in license fees due under the acceleration clause.

91.     This payment, however, does not fully compensate CoStar for damages it suffered as a result of Leon Capital's unauthorized access to and use of CoStar's content, in violation of the CoStar's Terms and Conditions, during the period before CoStar terminated Leon Capital's license.

92.     During that time, Leon Capital continuously and repeatedly violated CoStar's Terms and Conditions by accessing, downloading and using CoStar's content while representing that it did not compete with CoStar.  As Leon Capital knew, this representation was false.  Leon Capital was, at minimum, an indirect competitor of CoStar, by virtue of its close association with CREXi, a direct competitor that was engaged in unauthorized access to CoStar's databases and websites, and mass infringement of CoStar's intellectual property, during the same time period.

93.     As Leon Capital acknowledged when entering into the License Agreement, the breach of any of CoStar's Terms and Conditions may result in "irreparable harm" to CoStar, entitling it to injunctive relief, in addition to all available monetary remedies in law and equity.

94.     Injunctive relief is particularly warranted here, given that Leon Capital continues

to this day to engage in misconduct echoing that alleged in this claim. As discussed above, Leon Capital's unauthorized access to CoStar products (recently, LoopNet) has not been deterred by either the filing of this case or the Court's ruling, over Leon Capital's objections, that CoStar's suit may proceed.

95.     CoStar is therefore entitled to damages in an amount to be proven at trial, injunctive relief, and other relief as the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract – Terms of Use (Improper Access and Use)**

96.     CoStar repeats and realleges each and every allegation set forth above and incorporates them herein by reference.

97.     Use of CoStar's subscription database is subject to contractually binding Terms of Use. Such terms are common in the industry, and as a sophisticated business entity, Leon Capital and its employees would be well aware of both the presence and binding nature of the Terms of Use.

98.     Leon Capital had actual and/or constructive knowledge that access to the CoStar database is subject to CoStar's Terms of Use. As described above, Leon Capital's Managing Director, acting within the course and scope of his employment for Leon Capital, and for Leon Capital's benefit, affirmatively accepted CoStar's Terms of Use that appeared in a pop-up window on June 9, 2021. Additionally, Leon Capital was on notice of CoStar's Terms of Use because references to CoStar's Terms of Use appear: (1) directly below the log-in button for the CoStar database, a log-in button used repeatedly by Leon Capital's Managing Director and at least one other Leon Capital employee; (2) in an email to users before they log into the database for the first time, an email received by Leon Capital employees, including Connor White on January 29, 2021; (3) at the bottom of the page when users export data from portions of CoStar's database, an action

23

completed by Leon Capital's Managing Director; and (4) at the bottom of each results page, which would have been seen by Leon Capital's Managing Director throughout his interactions with the database. Leon Capital, through its Managing Director and at least one other employee, had clear and explicit notice that its use of the database was subject to CoStar's Terms of Use.

99.     CoStar's Terms of Use prohibit competitors from accessing, using, or transmitting any portion of CoStar's content in the subscription database.

100.    CoStar's Terms of Use also explicitly require that an Authorized User be "employed by the Licensee" to lawfully utilize the subscription product, and prohibit using a passcode to access the subscription product for services other than those authorized under a particular License Agreement.

101.    CoStar has performed all of the conditions, covenants, and promises required on its part to be performed in accordance with its Terms of Use.

102.    In direct breach of CoStar's Terms of Use, Leon Capital, through its Managing Director, accessed CoStar's subscription database despite being its competitor, in order to use that content to benefit Leon Capital's business.

103.    Further, Leon Capital, through its Managing Director, breached CoStar's Terms of Use by accessing CoStar's Passcode Protected Product by using a password issued under a different License Agreement, and by storing, copying, and exporting any portion of the Product into any database or other software when he was not an Authorized User (because he was no longer employed by the subscriber).

104.    As described above, Leon Capital's Managing Director acted within the course and scope of his employment for Leon Capital, for Leon Capital's benefit and on its behalf.

105.    Leon Capital's breaches of CoStar's Terms of Use have been material, willful,

repeated, and systematic.

106.    Leon Capital caused damage and continues to cause irreparable harm to CoStar by free-riding on another licensee's subscription.

107.    CoStar is therefore entitled to damages in an amount to be proven at trial, injunctive relief, and other relief as the Court deems appropriate.

<div align="center">

**THIRD CLAIM FOR RELIEF**
**Computer Fraud and Abuse Act (CFAA)**

</div>

108.    CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

109.    CoStar's computers and servers, located in the United States, are involved in interstate and foreign commerce and communication.

110.    Leon Capital's access to CoStar's computers and servers is subject to its binding terms and conditions.

111.    Leon Capital, through its Managing Director, improperly accessed CoStar's servers without authorization when the Managing Director, acting within the scope and in the course of his employment, and on Leon Capital's behalf, used his former employer's login credentials to access CoStar's database, in violation of CoStar's Terms of Use and for the benefit of Leon Capital.

112.    Authorized CoStar users are provided access to CoStar's password protected platform by way of non-transferable subscriptions between CoStar and its institutional client subscriber.  Access to the subscription product by someone other than an employee or exclusive contractor of the institutional client subscriber (or by a competitor of CoStar) constitutes a violation of CoStar's Terms of Use and a trespass on CoStar's servers.

113.    Leon Capital's repeated unauthorized access to CoStar's computers and servers allowed it to access, obtain, and use CoStar's contractually protected information involving

<div align="center">25</div>

interstate communication in violation of 18 U.S.C. § 1030, specifically data about commercial real estate.

114.    CoStar has suffered over $5,000 worth of damages and losses over a one-year period, in an amount to be proven at trial.  Leon Capital's unauthorized access consumed time and money spent identifying, investigating, and attempting to block and otherwise respond to Leon Capital's unauthorized access, as described throughout this Complaint.  This work included an investigation of the unauthorized actions taken by Leon Capital in CoStar's computer systems once it had gained access, including a review of the resources utilized or diverted by Leon Capital, the data downloaded by Leon Capital, and any other damage done to CoStar's computer systems.  The work consumed significant employee time that could have been spent on other matters.  Further, Leon Capital's unauthorized access has impaired and corrupted CoStar's efforts to measure and analyze legitimate subscriber traffic.  Leon Capital's unlawful conduct undermined the soundness and therefore the value of those data and analyses, which are used for multiple business purposes.

115.    CoStar has suffered and will continue to suffer irreparable harm as a result of Leon Capital's access to its computers and servers without, and in excess of, authorization, which entitles CoStar to injunctive relief.

<div align="center">

**FOURTH CLAIM FOR RELIEF**
**Fraud (in the alternative to Claims 2 and 5)**

</div>

116.    CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

117.    In the alternative to CoStar's claim for breach of contract, and to the extent there is an absence of a binding agreement between the parties or such agreement is ineffective, Leon Capital is liable to CoStar for common law fraud.

118.    While employed by Leon Capital and acting within the scope of and in the course

<div align="center">26</div>

his employment, Managing Director Wood logged into CoStar's subscription database. By doing so, he represented that he, on behalf of Leon Capital, accepted CoStar's Terms of Use each time he logged into the product.

119. By accepting CoStar's Terms of Use, Mr. Wood represented to CoStar, on behalf of Leon Capital, that he would not access any portion of a Passcode Protected Product unless he was an Authorized User for such Passcode Protected Product (as those terms are defined in the Terms of Use).

120. Mr. Wood's representations to CoStar that Leon Capital would abide by CoStar's Terms of Use were false. Every time Mr. Wood accessed CoStar's subscription database in the scope and course of his employment with Leon Capital, and entered the credentials of an Authorized User and Clicked, "Log In," he was representing on behalf of Leon Capital that he was an Authorized User when in fact, as Leon Capital and he knew, he was not, because he was no longer employed by the Licensee of the product.

121. By using the credentials from his previous employer, Mr. Wood, acting for Leon Capital, deliberately concealed from CoStar the truth about his status as a non-Authorized User, and thereby, on behalf of Leon Capital, misrepresented his identity when gaining access to and using CoStar's subscription database. Mr. Wood, acting for Leon Capital, intended for CoStar to rely on his misrepresentation and grant him access to the database.

122. CoStar relied on the foregoing representations and omissions by providing Leon Capital, acting through Mr. Wood, with the information and data available on its subscription database, which included allowing Mr. Wood, on behalf of Leon Capital, to view and download information on various properties.

123. Leon Capital's conduct was egregious. By using fraudulent credentials, Mr. Wood,

27

acting for Leon Capital and within the scope of his employment, acted with willful disregard of CoStar's rights, and intentionally concealed and misrepresented his identity to CoStar in order to access CoStar's database for the benefit of Leon Capital.

124.    As a result of this fraudulent misconduct, CoStar has been damaged in an amount to be proven at trial and is entitled to punitive damages.

<div align="center">

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment (in the alternative to Claims 2 and 4)**

</div>

125.    CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

126.    In the alternative to CoStar's claims for breach of contract and fraud, and to the extent there is an absence of a binding agreement between the parties or such agreement is ineffective, Leon Capital is liable to CoStar under the doctrine of unjust enrichment.

127.    CoStar expects that any user of its database is an Authorized User (as that term is defined in the Terms of Use) who pays, or who is employed by or contracted to an entity that pays, CoStar's subscription fees.

128.    Each time Leon Capital's Managing Director logged in and used the CoStar database in the course and scope of his employment with Leon Capital and on its behalf, he willingly accepted a benefit for Leon Capital that he and Leon Capital knew or should have known they did not pay for.

129.    By accessing the CoStar database, Leon Capital received and retained the benefit of CoStar subscription issued to a third party, without paying for that subscription, and had knowledge of the benefits CoStar conferred upon it as a result of such unlawful access.

130.    Leon Capital voluntarily accepted, retained, and received the benefits CoStar provided and was enriched by those benefits.

<div align="center">28</div>

131.     Leon Capital's acceptance and retention of these benefits under the circumstances make it inequitable and unjust for it to retain the benefit without payment to CoStar.

132.     Leon Capital has been unjustly enriched at the expense of CoStar, and as a result, CoStar is entitled to an award reflecting the value of the services Leon Capital obtained, the benefits it received from those services, and the profit it obtained as a result.

## PRAYER FOR RELIEF

WHEREFORE, CoStar prays for judgment against Leon Capital as follows:

A.     For an award of damages, to the extent they are not duplicative, arising from Leon Capital's breach of the License Agreement;

B.     For an award pursuant to 18 U.S.C. § 1030(g) of compensatory damages;

C.     For an award of damages, to the extent they are not duplicative, arising from Leon Capital's breaches of CoStar's Terms of Use and the misappropriation of CoStar material as a result of those breaches or, in the alternative, for an award of damages arising from Leon Capital's materially false representations and the unauthorized access to CoStar's proprietary database that resulted from such misrepresentations, or, in the alternative, for an award reflecting the value of the services Leon Capital obtained and disgorging all profits, benefits, and other compensation obtained by Leon Capital;

D.     For a permanent injunction (1) barring Leon Capital's continued unauthorized access to CoStar's computers and servers; (2) barring Leon Capital from sharing or distributing any content impermissibly acquired from CoStar's database with any other organization or individual; (3) ordering Leon Capital to identify to CoStar the location of all such content in whatever form it may now take, wherever stored (including without limitation in the systems of third parties), and however altered or manipulated, and the identities of all individuals and entities to whom or which Leon Capital transferred any such content; (4) ordering Leon Capital to

segregate and render inaccessible to its employees and all third parties (other than CoStar) all content Leon Capital impermissibly acquired from CoStar's database, in whatever form, wherever stored (including without limitation in the systems of third parties), and however altered or manipulated; (5) ordering Leon Capital to identify all benefits and profits that resulted from such information; and (6) ordering Leon Capital to cooperate fully with the contractual audit request issued by CoStar;

E.      For further permanent injunctive relief as deemed necessary by the Court;

F.      For an award of CoStar's costs, including its reasonable attorneys' fees and disbursements of counsel, as permitted by law;

G.      For prejudgment and post-judgment interest, as permitted by law;

H.      For punitive damages to the extent available; and

I.      For such further and additional relief as the Court may deem just and proper.

## JURY DEMAND

CoStar demands a trial by jury on all issues properly tried to a jury.

Dated:  July 21, 2022

Respectfully submitted,

*/s/ Nicholas J. Boyle*

NICHOLAS J. BOYLE
D.C. Bar No. 481098
nicholas.boyle@lw.com
SARAH A. TOMKOWIAK
D.C. Bar No. 987680
sarah.tomkowiak@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200

Attorneys for Plaintiffs

# EXHIBIT L

| | |
|---|---|
| **From**: | Arcgate - CREXi [crexi@arcgate.com] |
| **Sent**: | 1/4/2020 12:56:43 PM |
| **To**: | Ashley Kobovitch [ashleyk@crexi.com]; Forrest Kobayashi [forrest@crexi.com] |
| **CC**: | Doug Shankman [doug@crexi.com]; Lawson Dees [lawson@crexi.com] |
| **BCC**: | crexi@arcgate.com |
| **Subject**: | Re: CREXi _ Offshore |
| **Attachments**: | image017.jpg; image018.jpg; image027.jpg; image028.jpg; image029.jpg; image030.jpg; image031.jpg; image032.jpg; image019.jpg; image020.jpg; image021.jpg; image022.jpg; image023.jpg; image024.jpg; image025.jpg; image026.jpg |

Hi Ashley / Forrest,

Ideally for lead generation we do not scrub the data from "LoopNet, 42 Floors and Cityfeet" as there have been some Red flags in the past. Please let us know if we are Ok to scrub the data from these websites.

Also note, we have completed city "Vancouver, WA". Please find the Google Sheet for your review. Also, now we are working on city "Clarksville, TN".

Regards,
Arcgate - CREXi Team

On 01/03/2020 09:09 PM, Ashley Kobovitch wrote:

Hi All,

Please see the below websites that should be leveraged in addition to the ones you sent over:

LoopNet www.loopnet.com
42 Floors: https://42floors.com/us/ca/los-angeles
Cityfeet: https://www.cityfeet.com/
Brevitas: https://brevitas.com/
RealNex: https://www.realnex.com/

Please note: Zillow and StreetEasy are residential only and would not be a target for us/should stop being used.  Please let me know if there are any questions!

Thanks,


## Ashley Kobovitch


248-436-4858
908-447-2437


ashleyk@crexi.com


crexi.com

CoStar00037004



**From:** Arcgate - CREXi <crexi@arcgate.com>
**Sent:** Friday, January 3, 2020 6:15 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>; Ashley Kobovitch <ashleyk@crexi.com>; Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

Please find the below listed third party where we can found listings of the brokers. We do understand some of them are direct competitors and some are indirect. We will really appreciate if you can guide us with your white listed websites.

- Zillow  (https://www.zillow.com)
- Streeteasy  (https://streeteasy.com)
- Commercial Brokers Association (https://www.commercialmls.com)
- MLSListings (https://www.mlslistings.com)
- Realtors (https://www.realtor.com)
- Commercial Exchange (https://www.commercialexchange.com/)

Please check and let us know about this.

Regards,
Arcgate - CREXi Team

On 01/02/2020 10:15 PM, Forrest Kobayashi wrote:


Hi Arcgate Team,

Thanks for the Chattanooga delivery!

Regarding third-party sites, can you please provide a shortlist of the third-party sites you are considering using? Generally, we should refrain from using any site that is, or could be considered, a direct competitor of CREXi due to data ownership concerns.

Thanks,
Forrest

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, January 2, 2020 at 9:20 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

CoStar00037005

Hi Forrest,

We have completed work on city "Chattanooga, TN" and now we are working on "Vancouver, WA". Please find the Google Sheet for you review.

Kindly please give us an update for search listings from third party websites such as "Zillow", "StreetEasy" etc. for better search listings.

Regards,
Arcgate - CREXi Team

On 12/31/2019 07:35 PM, Arcgate - CREXi wrote:


Hi Forrest,

Thank you for the update here. Also, can we search listings from third party websites such as "Zillow", "StreetEasy" etc. for better search listings?

We have completed city "Tacoma, WA" and now we are working on city "Chattanooga, TN". Please find the Google Sheet for your review.

Regards,
Arcgate - CREXi Team

On 12/31/2019 12:10 AM, Forrest Kobayashi wrote:



Hi Arcgate Team,

Thanks for letting me know.

For Keller Williams agents, please use Google to search for the individual broker's name to see if they have a personal website with commercial "For Sale" or "For Lease" listings. If the broker does not have a website with commercial listings, please do not list that broker as a target.

Please let me know if you have any other questions.

Thanks,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Saturday, December 28, 2019 at 8:08 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

CoStar00037006

Hi Forrest,

We have completed work on city "Knoxville, TN", we are working on city "Tacoma, WA". Please find the Google Sheet for your review.

Also, we have noticed that Keller Williams has changed their website format, and listings section is not found on brokers profile on website. Please let us know best way to deal with it.

Regards,
Arcgate - CREXi Team

On 12/26/2019 06:30 PM, Arcgate - CREXi wrote:


Hi Forrest,

Please find the Google Sheet for the city "Seattle, WA". Now we are working on city "Knoxville, TN".

Regards,
Arcgate - CREXi Team

On 12/24/2019 06:26 PM, Arcgate - CREXi wrote:


Hi Forrest,

We have completed work on city "Nashville, TN" , now we are working on city "Seattle, WA". Please find the Google sheet for your review.

Regards,
Arcgate - CREXi Team

On 12/21/2019 04:24 PM, Arcgate - CREXi wrote:


Hi Forrest,

We have updated the city "New Orleans, LA" as per the new instructions. Please find the Google Sheet for your review. Now, we are working on city "Nashville, TN".

Regards,
Arcgate - CREXi Team

On 12/20/2019 06:58 PM, Arcgate - CREXi wrote:


Hi Forrest,

CoStar00037007

Thanks for the update. We will surely follow the same instructions for other cities.

Regards,
Arcgate - CREXi Team

On 12/20/2019 06:11 AM, Forrest Kobayashi wrote:



Hi Arcgate Team,

Thank you for this delivery!

For future city deliveries, please do NOT include brokers who do not have at least one "For Sale" or "For Lease" listing. In other words, if Column M and Column N are both "No," please do not include them in the list.

Please let me know if you have any questions.

Thanks,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, December 19, 2019 at 4:16 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

We have completed the task for the City "Oklahoma" as per the new update. Please find the attached spreadsheet for your review.

Regards,
Arcgate - CREXi Team

On 12/17/2019 07:29 PM, Arcgate - CREXi wrote:

Hi Forrest,

We have completed work on "Sacramento, CA". Please find the Google Sheet for your review. Now we are working on cities Tucson, Oklahoma and New Orleans as per the new update.

Please note that if we found brokers listings on the "Broker Profile" page we are considering listings from there.
If not, we search listings section for brokerage firm's listing page. If it can be filtered easily, we can consider, else we have mentioned "Individual Broker listing not available" in Arcgate Remarks.
Please suggest us best way to forward.

Also, we have updated "Tucson" city as well. Find the updated Google Sheet.

CoStar00037008

Regards,
Arcgate - CREXi Team

On 12/16/2019 07:48 PM, Arcgate - CREXi wrote:

Hi Forrest,

Thanks for the update here. We will re-build the lists for the last three delivered cities with this new process.

Regards,
Arcgate - CREXi Team

On 12/16/2019 09:11 AM, Forrest Kobayashi wrote:

Hi Arcgate Team,

Thank you so much for providing this update. Yes, it appears you are populating the spreadsheet correctly. Please CONTINUE to populate Column F in addition to M and N.

After Sacramento delivery, can you please go back and re-build the lists for the last three delivered cities following this new process? Those cities are Tucson, Oklahoma City and New Orleans.

Please let me know if you have any other questions.

Thanks,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Saturday, December 14, 2019 at 6:16 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

Thank you for the new and updated instructions. Going forward we will populate column "M" and "N", column "F" no longer required. Please let us know if we can delete it after migration.

Please find the Google Sheet of the city "Memphis, TN", now we are working on city "Sacramento, CA". Please check and let us know if we are on right track?

Regards,
Arcgate - CREXi Team

On 12/14/2019 04:14 AM, Forrest Kobayashi wrote:

CoStar00037009

Hi Arcgate Team,

As promised, please see attached for an updated set of instructions. We aim to get more qualified listing brokers who have at least one "For Sale" or "For Lease" property.

Please see edits made to the "New companies with new brokers" tab in this sheet here. Note Column M and N as I added "Has Sale Listing" and "Has Lease Listing." Please list "Yes" or "No" depending on if the broker has a For Sale or For Lease listing.

Please review the attached PDF of directions and let me know if you have any questions.

Thanks,
Forrest

---

**From:** Forrest Kobayashi <forrest@crexi.com>
**Date:** Friday, December 13, 2019 at 9:55 AM
**To:** Arcgate - CREXi <crexi@arcgate.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Arcgate Team,

Thank you for your on-time deliveries so far.

We are prepping an updated set of instructions for you and the team to follow. Please HOLD on all further list building until updated instructions are received. I plan to provide these instructions to your team later this afternoon today, 12/13.

Thanks,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, December 12, 2019 at 7:07 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

Please find the Google Sheet that contains data for the City "New Orleans, LA". And now we have started working on City "Memphis, TN".

CoStar00037010

Regards,
Arcgate - CREXi Team

On 12/10/2019 06:37 PM, Arcgate - CREXi wrote:

Hi Forrest,

Please find the <u>Google Sheet</u> that contains data for the City "Oklahoma". And now we have started working on City "New Orleans, LA".

Regards,
Arcgate - CREXi Team

On 12/07/2019 05:22 PM, Arcgate - CREXi wrote:

Hi Forrest,

We have completed work on "Tucson" City and now we are working on "Oklahoma" City. Please find the <u>Google Sheet</u> for your review.

Regards,
Arcgate - CREXi Team

On 12/05/2019 09:42 PM, Forrest Kobayashi wrote:

Hi Arcgate Team,

Thank you so much for on-time delivery. I look forward to reviewing Tucson, AZ next.

Best,
Forrest

CoStar00037011

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, December 5, 2019 at 6:53 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

We have completed work on Austin city and now working on Tucson city. Please find the Google Sheet for your review.

Regards,
Arcgate - CREXi Team

On 12/04/2019 08:11 PM, Arcgate - CREXi wrote:

Hi Forrest,

Thank you for the update here. After completion of "Austin" city we will start work on "Tucson, AZ" city.

Regards,
Arcgate - CREXi Team

On 12/04/2019 02:17 AM, Forrest Kobayashi wrote:

Hi Arcgate Team,

Thank you so much for the fantastic delivery so far.

After reviewing business requirements, we have identified Tucson, AZ as a high-priority city.

I know you and the team are currently working on Austin, TX. Please continue to do so – see below for suggested updated calendar and let me know if this is feasible:

1.   Pittsburgh, PA : 12/03 – DELIVERED

2.   Austin, TX : 12/05 – Underway

3.   Tucson, AZ: NOW 12/07

4.   Oklahoma City, OK: Now 12/10

5.   New Orleans, LA: Now 12/12

6.   Memphis, TN: Now 12/14

CoStar00037012

Please let me know if this updated schedule works for you and the team.

Best,

Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Tuesday, December 3, 2019 at 11:03 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

Thank you for the 25 new cities, we have added these in the list and completed Pittsburgh, PA. city data. Please find the sheet that contains:

- 
- 
- New companies with new brokers
- in
- this tab
- 
- 
- 
- Existing companies with new brokers
- in
- this tab
- 
- 
- 

CoStar00037013

- Disqualified Contacts in
- *
- this tab (i.e. without emails or inappropriate roles)
- 

Now we are working on Austin, TX. Also, we have shared sheet with "Doug and Ashley" as well.

Regards,
Arcgate - CREXi Team

On 12/03/2019 09:48 AM, Forrest Kobayashi wrote:

Hi Arcgate Team,

As promised, please see below for a list of additional cities to be completed after Memphis delivery on 12/12. Please continue to follow the same directions as you have for the Philadelphia and Birmingham list builds.

If you can provide an estimated delivery date on each of these cities, it'd be greatly appreciated. Please start with Sacramento, CA and work your way down our list.

Let me know if you have any questions.

Thanks,
Forrest

| |
|---|
| Sacramento, CA |
| Nashville, TN |
| Seattle, WA |
| Knoxville, TN |
| Tacoma, WA |
| Chattanooga, TN |
| Vancouver, WA |
| Clarksville, TN |
| Bellevue, WA |
| Baton Rouge, LA |
| Salem, OR |
| Shreveport, LA |
| Eugene, OR |
| Metairie, LA |
| Gresham, OR |
| Lafayette, LA |
| Hillsboro, OR |
| Montgomery, AL |

CoStar00037014

| |
|---|
| Henderson, NV |
| Huntsville, AL |
| Reno, NV |
| Mobile, AL |
| Sparks, NV |
| Tuscaloosa, AL |
| Spokane, WA |

…

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Sent:** Saturday, November 30, 2019 4:49 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Lawson Dees <lawson@crexi.com>; Doug Shankman <Doug@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

We have completed Birmingham city data. Please find the sheet that contains:

- 
- 
- New companies with new
- brokers in
- this tab
- 
- 
- 
- Existing companies with
- new brokers in
- this tab
- 
- 
- 
- Disqualified Contacts
- in
- this tab (i.e. without emails or inappropriate roles)
- 

Now we are working on Pittsburgh, PA.

Regards,
Arcgate - CREXi Team
On 11/29/2019 08:30 PM, Arcgate - CREXi wrote:

CoStar00037015

Hi Forrest,

Thanks! we are on track to deliver Birmingham scrub tomorrow.

Regards,
Arcgate – CREXi Team

On 11/29/2019 07:05 PM, Forrest Kobayashi wrote:

Hi Arcgate Team,

Yes, thank you for laying out this calendar. I will be on the lookout for the Birmingham scrub tomorrow.

As Steve mentioned, we intend to complete this exercise for several more cities. I will forward a list of additional cities to prioritize early next week.

Thanks,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, November 28, 2019 at 8:36 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Lawson Dees <lawson@crexi.com>, Doug Shankman <Doug@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

Nice meeting you as well. Looking forward to collaborate with you and thanks for the task. We will deliver the Birmingham scrub by EOD 11/30 and will deliver 1 city every alternate day from there on as per the below:

1. Pittsburgh, PA : 12/03
2. Austin, TX : 12/05
3. Oklahoma, OK : 12/07

CoStar00037016

4. New Orleans, LA : 12/10
5. Memphis, TN : 12/12

Please check and let us know if the above works for you.

Regards,
Arcgate – CREXi Team

On 11/28/2019 01:35 AM, Forrest Kobayashi wrote:

+Doug for visibility, Steve to Bcc

Thank you for the warm introduction, Steve! Much appreciated.

Arcgate Team, really great to meet you and looking forward to working together.

My understanding is that Steve provided the next six cities for you and the team to work on. They are as follows:
- Birmingham, AL
- Pittsburgh, PA
- Austin, TX
- Oklahoma, OK
- New Orleans, LA
- Memphis, TN

Can you please proceed to start on Birmingham, following the same directions as Philadelphia, and deliver that list as soon as possible? We will work down the list as we complete city-by-city.

Please let me know if you have any questions.

Thanks,
Forrest

**From:** Steve Long <stevel@crexi.com>
**Sent:** Wednesday, November 27, 2019 11:59 AM
**To:** Arcgate - Crexi <crexi@arcgate.com>; Forrest Kobayashi <forrest@crexi.com>
**Cc:** Lawson Dees <lawson@crexi.com>
**Subject:** CREXi _ Offshore

Hi all,

I wanted to introduce you to Forrest, he will be taking the lead on future projects. Please work with him to identify next cities we would like your assistance with.

Regards,

Steve Long

📞 917.473.0193

CoStar00037017

 stevel@crexi.com

 crexi.com





CoStar00037018

CoStar00037019

# EXHIBIT M

| | |
|---|---|
| **From**: | Forrest Kobayashi [forrest@crexi.com] |
| **Sent**: | 1/2/2020 4:45:12 PM |
| **To**: | Arcgate - CREXi [crexi@arcgate.com] |
| **CC**: | Doug Shankman [doug@crexi.com]; Ashley Kobovitch [ashleyk@crexi.com]; Lawson Dees [lawson@crexi.com] |
| **Subject**: | Re: CREXi _ Offshore |
| **Attachments**: | image001.jpg; image002.jpg; image003.jpg; image004.jpg; image005.jpg; image006.jpg; image007.jpg; image008.jpg |

Hi Arcgate Team,

Thanks for the Chattanooga delivery!

Regarding third-party sites, can you please provide a shortlist of the third-party sites you are considering using? Generally, we should refrain from using any site that is, or could be considered, a direct competitor of CREXi due to data ownership concerns.

Thanks,
Forrest

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, January 2, 2020 at 9:20 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

We have completed work on city "Chattanooga, TN" and now we are working on "Vancouver, WA". Please find the Google Sheet for you review.

Kindly please give us an update for search listings from third party websites such as "Zillow", "StreetEasy" etc. for better search listings.

Regards,
Arcgate - CREXi Team

On 12/31/2019 07:35 PM, Arcgate - CREXi wrote:

Hi Forrest,

Thank you for the update here. Also, can we search listings from third party websites such as "Zillow", "StreetEasy" etc. for better search listings?

We have completed city "Tacoma, WA" and now we are working on city "Chattanooga, TN". Please find the Google Sheet for your review.

Regards,
Arcgate - CREXi Team

On 12/31/2019 12:10 AM, Forrest Kobayashi wrote:

CoStar00036876

Hi Arcgate Team,

Thanks for letting me know.

For Keller Williams agents, please use Google to search for the individual broker's name to see if they have a personal website with commercial "For Sale" or "For Lease" listings. If the broker does not have a website with commercial listings, please do not list that broker as a target.

Please let me know if you have any other questions.

Thanks,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Saturday, December 28, 2019 at 8:08 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

We have completed work on city "Knoxville, TN", we are working on  city "Tacoma, WA". Please find the Google Sheet for your review.

Also, we have noticed that Keller Williams has changed their website format, and listings section is not found on brokers profile on website. Please let us know best way to deal with it.

Regards,
Arcgate - CREXi Team

On 12/26/2019 06:30 PM, Arcgate - CREXi wrote:

Hi Forrest,

Please find the Google Sheet for the city "Seattle, WA". Now we are working on city "Knoxville, TN".

Regards,
Arcgate - CREXi Team

On 12/24/2019 06:26 PM, Arcgate - CREXi wrote:

Hi Forrest,

We have completed work on city "Nashville, TN" , now we are working on city "Seattle, WA". Please find the Google sheet for your review.

Regards,
Arcgate - CREXi Team

On 12/21/2019 04:24 PM, Arcgate - CREXi wrote:

CoStar00036877

Hi Forrest,

We have updated the city "New Orleans, LA" as per the new instructions. Please find the Google Sheet for your review. Now, we are working on city "Nashville, TN".

Regards,
Arcgate - CREXi Team

On 12/20/2019 06:58 PM, Arcgate - CREXi wrote:


Hi Forrest,

Thanks for the update. We will surely follow the same instructions for other cities.

Regards,
Arcgate - CREXi Team

On 12/20/2019 06:11 AM, Forrest Kobayashi wrote:


Hi Arcgate Team,

Thank you for this delivery!

For future city deliveries, please do NOT include brokers who do not have at least one "For Sale" or "For Lease" listing. In other words, if Column M and Column N are both "No," please do not include them in the list.

Please let me know if you have any questions.

Thanks,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, December 19, 2019 at 4:16 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore


Hi Forrest,

We have completed the task for the City "Oklahoma" as per the new update. Please find the attached spreadsheet for your review.

Regards,
Arcgate - CREXi Team


On 12/17/2019 07:29 PM, Arcgate - CREXi wrote:

Hi Forrest,

We have completed work on "Sacramento, CA". Please find the Google Sheet for your review. Now we are working on

CoStar00036878

cities Tucson, Oklahoma and New Orleans as per the new update.

Please note that if we found brokers listings on the "Broker Profile" page we are considering listings from there.
If not, we search listings section for brokerage firm's listing page. If it can be filtered easily, we can consider, else we have mentioned "Individual Broker listing not available" in Arcgate Remarks.
Please suggest us best way to forward.

Also, we have updated "Tucson" city as well. Find the updated Google Sheet.

Regards,
Arcgate - CREXi Team

On 12/16/2019 07:48 PM, Arcgate - CREXi wrote:

Hi Forrest,

Thanks for the update here. We will re-build the lists for the last three delivered cities with this new process.

Regards,
Arcgate - CREXi Team

On 12/16/2019 09:11 AM, Forrest Kobayashi wrote:

Hi Arcgate Team,

Thank you so much for providing this update. Yes, it appears you are populating the spreadsheet correctly. Please CONTINUE to populate Column F in addition to M and N.

After Sacramento delivery, can you please go back and re-build the lists for the last three delivered cities following this new process? Those cities are Tucson, Oklahoma City and New Orleans.

Please let me know if you have any other questions.

Thanks,
Forrest

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Saturday, December 14, 2019 at 6:16 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

Thank you for the new and updated instructions. Going forward we will populate column "M" and "N", column "F" no longer required. Please let us know if we can delete it after migration.

Please find the Google Sheet of the city "Memphis, TN", now we are working on city "Sacramento, CA". Please check and let us know if we are on right track?

CoStar00036879

Regards,
Arcgate - CREXi Team

On 12/14/2019 04:14 AM, Forrest Kobayashi wrote:

Hi Arcgate Team,

As promised, please see attached for an updated set of instructions. We aim to get more qualified listing brokers who have at least one "For Sale" or "For Lease" property.

Please see edits made to the "New companies with new brokers" tab in this sheet here. Note Column M and N as I added "Has Sale Listing" and "Has Lease Listing." Please list "Yes" or "No" depending on if the broker has a For Sale or For Lease listing.

Please review the attached PDF of directions and let me know if you have any questions.

Thanks,
Forrest

---

**From:** Forrest Kobayashi <forrest@crexi.com>
**Date:** Friday, December 13, 2019 at 9:55 AM
**To:** Arcgate - CREXi <crexi@arcgate.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Arcgate Team,

Thank you for your on-time deliveries so far.

We are prepping an updated set of instructions for you and the team to follow. Please HOLD on all further list building until updated instructions are received. I plan to provide these instructions to your team later this afternoon today, 12/13.

Thanks,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, December 12, 2019 at 7:07 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

CoStar00036880

Hi Forrest,

Please find the Google Sheet that contains data for the City "New Orleans, LA". And now we have started working on City "Memphis, TN".

Regards,
Arcgate - CREXi Team

On 12/10/2019 06:37 PM, Arcgate - CREXi wrote:

Hi Forrest,

Please find the Google Sheet that contains data for the City "Oklahoma". And now we have started working on City "New Orleans, LA".

Regards,
Arcgate - CREXi Team

On 12/07/2019 05:22 PM, Arcgate - CREXi wrote:

Hi Forrest,

We have completed work on "Tucson" City and now we are working on "Oklahoma" City. Please find the Google Sheet for your review.

Regards,
Arcgate - CREXi Team

On 12/05/2019 09:42 PM, Forrest Kobayashi wrote:

Hi Arcgate Team,

Thank you so much for on-time delivery. I look forward to reviewing Tucson, AZ next.

Best,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, December 5, 2019 at 6:53 AM
**To:** Forrest Kobayashi <forrest@crexi.com>

Exhibit M, Page 391

CoStar00036881

Cc: Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>

**Subject:** Re: CREXi _ Offshore

Hi Forrest,

We have completed work on Austin city and now working on Tucson city. Please find the Google Sheet for your review.

Regards,
Arcgate - CREXi Team

On 12/04/2019 08:11 PM, Arcgate - CREXi wrote:

Hi Forrest,

Thank you for the update here. After completion of "Austin" city we will start work on "Tucson, AZ" city.

Regards,
Arcgate - CREXi Team

On 12/04/2019 02:17 AM, Forrest Kobayashi wrote:

Hi Arcgate Team,

Thank you so much for the fantastic delivery so far.

After reviewing business requirements, we have identified Tucson, AZ as a high-priority city.

I know you and the team are currently working on Austin, TX. Please continue to do so – see below for suggested updated calendar and let me know if this is feasible:

1.      Pittsburgh, PA : 12/03 – DELIVERED

2.      Austin, TX : 12/05 – Underway

3.      Tucson, AZ: NOW 12/07

4.      Oklahoma City, OK: Now 12/10

5.      New Orleans, LA: Now 12/12

6.      Memphis, TN: Now 12/14


Please let me know if this updated schedule works for you and the team.

Best,

CoStar00036882

Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Tuesday, December 3, 2019 at 11:03 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Doug Shankman <Doug@crexi.com>, Ashley Kobovitch <ashleyk@crexi.com>, Lawson Dees <lawson@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,


Thank you for the 25 new cities, we have added these in the list and completed Pittsburgh, PA. city data. Please find the sheet that contains:




- 
- 
- New companies with new brokers
- in
- this tab
- 
- 
- 
- Existing companies with new brokers
- in
- this tab
- 
- 
- 
- Disqualified Contacts in
- 
- this tab (i.e. without emails or inappropriate roles)
- 

Now we are working on Austin, TX. Also, we have shared sheet with "Doug and Ashley" as well.

CoStar00036883

Regards,
Arcgate - CREXi Team

On 12/03/2019 09:48 AM, Forrest Kobayashi wrote:

Hi Arcgate Team,

As promised, please see below for a list of additional cities to be completed after Memphis delivery on 12/12. Please continue to follow the same directions as you have for the Philadelphia and Birmingham list builds.

If you can provide an estimated delivery date on each of these cities, it'd be greatly appreciated. Please start with Sacramento, CA and work your way down our list.

Let me know if you have any questions.

Thanks,
Forrest

| |
|---|
| Sacramento, CA |
| Nashville, TN |
| Seattle, WA |
| Knoxville, TN |
| Tacoma, WA |
| Chattanooga, TN |
| Vancouver, WA |
| Clarksville, TN |
| Bellevue, WA |
| Baton Rouge, LA |
| Salem, OR |
| Shreveport, LA |
| Eugene, OR |
| Metairie, LA |
| Gresham, OR |
| Lafayette, LA |
| Hillsboro, OR |
| Montgomery, AL |
| Henderson, NV |
| Huntsville, AL |
| Reno, NV |
| Mobile, AL |
| Sparks, NV |
| Tuscaloosa, AL |

Exhibit M, Page 394

CoStar00036884

Spokane, WA

....

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Sent:** Saturday, November 30, 2019 4:49 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Lawson Dees <lawson@crexi.com>; Doug Shankman <Doug@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

We have completed Birmingham city data. Please find the sheet that contains:

- 
- 
- New companies with new
- brokers in
- this tab
- 
- 
- 
- Existing companies with
- new brokers in
- this tab
- 
- 
- 
- Disqualified Contacts
- in
- this tab (i.e. without emails or inappropriate roles)
- 

Now we are working on Pittsburgh, PA.

Regards,
Arcgate - CREXi Team
On 11/29/2019 08:30 PM, Arcgate - CREXi wrote:

Hi Forrest,

Exhibit M, Page 395

CoStar00036885

Thanks! we are on track to deliver Birmingham scrub tomorrow.

Regards,
Arcgate – CREXi Team

On 11/29/2019 07:05 PM, Forrest Kobayashi wrote:

Hi Arcgate Team,

Yes, thank you for laying out this calendar. I will be on the lookout for the Birmingham scrub tomorrow.

As Steve mentioned, we intend to complete this exercise for several more cities. I will forward a list of additional cities to prioritize early next week.

Thanks,
Forrest

---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Date:** Thursday, November 28, 2019 at 8:36 AM
**To:** Forrest Kobayashi <forrest@crexi.com>
**Cc:** Lawson Dees <lawson@crexi.com>, Doug Shankman <Doug@crexi.com>
**Subject:** Re: CREXi _ Offshore

Hi Forrest,

Nice meeting you as well. Looking forward to collaborate with you and thanks for the task. We will deliver the Birmingham scrub by EOD 11/30 and will deliver 1 city every alternate day from there on as per the below:

1. Pittsburgh, PA : 12/03
2. Austin, TX : 12/05
3. Oklahoma, OK : 12/07
4. New Orleans, LA : 12/10
5. Memphis, TN : 12/12

Please check and let us know if the above works for you.

Regards,
Arcgate – CREXi Team

On 11/28/2019 01:35 AM, Forrest Kobayashi wrote:

+Doug for visibility, Steve to Bcc

Thank you for the warm introduction, Steve! Much appreciated.

Arcgate Team, really great to meet you and looking forward to working together.

CoStar00036886

My understanding is that Steve provided the next six cities for you and the team to work on. They are as follows:

- Birmingham, AL
- Pittsburgh, PA
- Austin, TX
- Oklahoma, OK
- New Orleans, LA
- Memphis, TN

Can you please proceed to start on Birmingham, following the same directions as Philadelphia, and deliver that list as soon as possible? We will work down the list as we complete city-by-city.

Please let me know if you have any questions.

Thanks,
Forrest

**From:** Steve Long <stevel@crexi.com>
**Sent:** Wednesday, November 27, 2019 11:59 AM
**To:** Arcgate - Crexi <crexi@arcgate.com>; Forrest Kobayashi <forrest@crexi.com>
**Cc:** Lawson Dees <lawson@crexi.com>
**Subject:** CREXi _ Offshore

Hi all,

I wanted to introduce you to Forrest, he will be taking the lead on future projects. Please work with him to identify next cities we would like your assistance with.

Regards,

Steve Long

 917.473.0193

 stevel@crexi.com

crexi.com



CoStar00036887

Exhibit M, Page 398
CoStar00036888

# EXHIBIT N

**From**: Forrest Kobayashi [forrest@crexi.com]
**Sent**: 1/8/2020 5:09:19 PM
**To**: Arcgate - CREXi [crexi@arcgate.com]
**CC**: Ashley Kobovitch [ashleyk@crexi.com]; Doug Shankman [doug@crexi.com]; Lawson Dees [lawson@crexi.com]
**Subject**: Followup

Hi Arcgate Team,

Thanks for your consideration and I'm sorry for any confusion.

To answer your question about using third-party websites, we are OK with you identifying brokers as active market participants from any website. By active market participant, we mean having at least one "For Szale" or "For Lease" listing. However, for the contact information we've requested, our preference is to source this information from the broker's social profiles or brokerage website as this tends to be the most up-to-date information. Of course, complying with any website's terms is important to us.

With respect to websites that are traditionally residential, to the extent the listings are multifamily, we are interested in those brokers as well.

If you have any questions, I suggest we jump on a brief call. Let me know a couple of times this week that might work for you.

Thanks,
Forrest

Exhibit N, Page 399

CoStar00037485

# EXHIBIT O

**From**: James Burton [james@crexi.com]
**Sent**: 5/14/2020 8:42:20 PM
**To**: Arcgate - CREXi [crexi@arcgate.com]
**Subject**: NEW HIGH PRIORITY PROJECT
**Attachments**: Capture.JPG; Capture2.JPG; Capture3.JPG; CR_Data_crosstab (2).csv.tsv; image001.png; image002.png; image003.png; image004.png; image005.png

Arcgate –

This is a simple project, but needs to be done really carefully. Please make this your top priority.

1.  Open the attached spreadsheet
2.  Copy the Account ID from the spreadsheet (reference capture)
3.  Paste the Account ID in the ID section on accounts in CREXi admin (reference capture 2)
4.  Please remove the website from the "Website" section and add it to the cross reference notes section (reference capture 3) (there should then not be anything in the "Website" section)
5.  Click on Save & Exit
6.  Please then google each brokerage and please make sure to put their correct home page to their website back in the "website" section (like when you performed account cleanup, do the same but for websites for the attached IDs).

Please let me know if you have any questions.

Thanks,

**JAMES BURTON**

--------

CUSTOMER SUCCESS OPERATIONS MANAGER
213.986.2282
james@crexi.com





CoStar00046462

# EXHIBIT P

**From**: James Burton [james@crexi.com]
**Sent**: 5/22/2020 6:35:37 AM
**To**: Arcgate - CREXi [crexi@arcgate.com]
**Subject**: RE: NEW HIGH PRIORITY PROJECT
**Attachments**: image001.png; image002.png; image003.png; image004.png; image005.png

Great, thank you so much!

Great work!

**JAMES BURTON**

..........

213.986.2282
james@crexi.com





---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Sent:** Thursday, May 21, 2020 11:25 PM
**To:** James Burton <james@crexi.com>
**Subject:** Re: NEW HIGH PRIORITY PROJECT

Hi James,

We have already checked and removed all these links "Showcase, Costar, Looplink, Loopnet, Cityfeet" from all the accounts. Please check.

Regards,
Arcgate - CREXi Team

On 05/21/2020 10:06 PM, James Burton wrote:

What about cityfeet?

**JAMES BURTON**

..........

Exhibit P, Page 401

CoStar00046597

213.986.2282
james@crexi.com



---

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Sent:** Thursday, May 21, 2020 9:13 AM
**To:** James Burton <james@crexi.com>
**Subject:** Re: NEW HIGH PRIORITY PROJECT

Hi James,

Thank you for the notice here. We have again checked and found showcase only in 1 account. We have removed this. Please check and let us know if you have any questions.

Regards,
Arcgate - CREXi Team

On 05/21/2020 06:51 PM, James Burton wrote:

Thank you!

I am still seeing showcase and city feet links in the cross reference notes for websites.

Can we please re-scrub to ensure those are all removed?

Thanks,


JAMES BURTON

‒‒‒‒‒‒‒‒

213.986.2282
james@crexi.com







Exhibit P, Page 402

CoStar00046598

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Sent:** Thursday, May 21, 2020 4:05 AM
**To:** James Burton <james@crexi.com>
**Subject:** Re: NEW HIGH PRIORITY PROJECT

Hi James,

We have completed this task as per the new instructions. Please find the Google Sheet for your review. Also, please check the Arcgate Remarks column.

Regards,
Arcgate - CREXi Team

On 05/15/2020 05:41 PM, Arcgate - CREXi wrote:


Hi James,

Thank you for the new task. We have started working on it.

Price for this task is as per the below:
- To put the website section in cross-reference notes section: $0.05
- Google Search for website to find correct website: $0.1
- To put website on CREXi: $0.05

Please check and let us know if you have any questions.

Regards,
Arcgate - CREXi Team

On 05/15/2020 02:12 AM, James Burton wrote:


Arcgate –

This is a simple project, but needs to be done really carefully. Please make this your top priority.

1.      Open the attached spreadsheet
2.      Copy the Account ID from the spreadsheet (reference capture)
3.      Paste the Account ID in the ID section on accounts in CREXi admin (reference capture 2)
4.      Please remove the website from the "Website" section and add it to the cross reference notes section (reference capture 3) (there should then not be anything in the "Website" section)
5.      Click on Save & Exit
6.      Please then google each brokerage and please make sure to put their correct home page to their website back in the "website" section (like when you performed account cleanup, do the same but for websites for the attached IDs).

Please let me know if you have any questions.

Thanks,

Exhibit P, Page 403

CoStar00046599

**JAMES BURTON**

CUSTOMER SUCCESS OPERATIONS MANAGER

213.986.2282

james@crexi.com





CoStar00046600

# EXHIBIT Q

| | |
|---|---|
| **From**: | Lawson Dees [lawson@crexi.com] |
| **Sent**: | 4/19/2020 6:03:02 PM |
| **To**: | Arcgate - CREXi [crexi@arcgate.com] |
| **Subject**: | RE: Auction Listing Scrub |

Thank you! I'll let you know if we have any feedback.

LAWSON DEES
815.325.2454
lawson@crexi.com

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Sent:** Saturday, April 18, 2020 5:31 AM
**To:** Lawson Dees <lawson@crexi.com>
**Subject:** Re: Auction Listing Scrub

Hi Lawson,

We have completed this task and updated data on the Google Sheet. Please check and we will keep updating the sheet going forward.

Regards,
Arcgate - CREXi Team

On 04/18/2020 08:17 AM, Arcgate - CREXi wrote:

Hi Lawson,

Thank you so much for the update here.

Regards,
Arcgate - CREXi Team

On 04/17/2020 10:30 PM, Lawson Dees wrote:

You do not need to find the e-mails. Thanks!

LAWSON DEES
815.325.2454
lawson@crexi.com

**From:** Arcgate - CREXi <crexi@arcgate.com>
**Sent:** Friday, April 17, 2020 9:55:25 AM
**To:** Lawson Dees <lawson@crexi.com>
**Subject:** Auction Listing Scrub

Hi Lawson,

As per the discussion on our yesterday's call, we have completed the task for the website "https://marketplace.realinsight.com/property/search" and updated on the Google Sheet for the same.

Also, we have started working on the next website "https://www.ten-x.com/commercial/search/". Please note

Exhibit Q, Page 405

CoStar00046209

that we have not found any of the brokers emails on this website. Do we need to search on google to find an email?

We will deliver it by tomorrow (4/18).

Please check and let us know if you have any questions.

Regards,
Arcgate - CREXi Team

CoStar00046210

# EXHIBIT R

1   KEKER, VAN NEST & PETERS LLP
    ELLIOT R. PETERS #158708
2   epeters@keker.com
    WARREN A. BRAUNIG #243884
3   wbraunig@keker.com
    ELIZABETH K. MCCLOSKEY #268184
4   emccloskey@keker.com
    NICHOLAS S. GOLDBERG #273614
5   ngoldberg@keker.com
    CONNIE SUNG - # 304242
6   csung@keker.com
    ANN NIEHAUS - # 325474
7   aniehaus@keker.com
    CHRISTINE M. ZALESKI - # 331727
8   czaleski@keker.com
    633 Battery Street
9   San Francisco, CA 94111-1809
    Telephone:  415 391 5400
10  Facsimile:   415 397 7188

11  Attorneys for Defendant and Counterclaimant
    COMMERCIAL REAL ESTATE EXCHANGE, INC.
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                  WESTERN DIVISION

16

17  COSTAR GROUP, INC., AND          Case No. 2:20-cv-08819 CBM (ASx)
    COSTAR REALTY INFORMATION,
    INC.'s,                          **CREXI'S OBJECTIONS AND**
18                                   **RESPONSES TO COSTAR'S FIRST**
                                     **SET OF REQUESTS FOR**
                Plaintiffs,          **PRODUCTION OF DOCUMENTS**
19

20       v.

21  COMMERCIAL REAL ESTATE
    EXCHANGE, INC.,
22
                Defendant.
23

24

25

26

27

28

---

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)
1762272                                          Exhibit R, Page 407

COMMERCIAL REAL ESTATE
EXCHANGE, INC.,

                    Counterclaimant,

        v.

COSTAR GROUP, INC., AND
COSTAR REALTY INFORMATION,
INC.,

                Counterdefendants

**PROPOUNDING PARTY:**     **COSTAR**

**RESPONDING PARTY:**     **CREXI**

**SET NO.:**     **ONE (NOS. 1–136)**

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the applicable Local Rules of the United States District Court for the Central District of California, Defendant and Counterclaimant COMMERCIAL REAL ESTATE EXCHANGE, INC. ("CREXi") hereby submits these objections and responses to Plaintiff and Counterclaim Defendant COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC.'s ("CoStar") First Set of Requests for Production of Documents, dated October 8, 2021, as follows:

## PRELIMINARY STATEMENT

The objections and responses set forth herein are made solely for the purpose of and in relation to this matter. The objections herein are based upon the information and documentation that is presently available and known to CREXi. CREXi's investigation in this matter is continuing; discovery has just commenced. Further investigation, discovery, analysis, legal research, or trial preparation may yield additional information, which may result in the modification of these objections and responses. Accordingly, CREXi reserves the right to correct, amend, or supplement its objections and responses should it become aware of any inadvertent omission, error, or additional information that it may subsequently discover and determine to be relevant.

## GENERAL OBJECTIONS

1.     CREXi asserts each of the following General Objections and Objections to Definitions and Instructions to each of CoStar's requests. In addition to these General Objections and Objections to Definitions and Instructions, CREXi may state specific objections to specific requests where appropriate. By setting forth additional specific objections, CREXi does not in any way intend to limit or restrict its General

Objections and Objections to Definitions and Instructions, each of which is incorporated in response to each of CoStar's requests. To the extent that CREXi provides a response to any of CoStar's requests to which CREXi objects, such response shall not constitute a waiver of any General Objection, Objection to Definitions and Instructions, or specific objection.

2.     CREXi objects to the requests and accompanying definitions and instructions to the extent they seek information for purposes other than this litigation. CREXi provides these responses solely for the purposes of this litigation. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and any and all other objections that would form the basis for excluding such response in the same manner as if such responses were statements offered as evidence in court, all of which objections and grounds are reserved and may be interposed at the time of trial or any other appropriate time.

3.     CREXi objects to the requests for production and accompanying definitions and instructions to the extent that they seek to impose a duty on CREXi to supplement its responses or production beyond that required under the Federal Rules of Civil Procedure. CREXi will supplement these responses only as required by the Rules.

4.     CREXi objects to the requests for production and accompanying definitions and instructions to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the common-interest privilege, the rules of professional conduct, or any other applicable privilege or protection. CREXi will produce only non-privileged and otherwise discoverable information in response to these requests. To the fullest extent permitted by law, any inadvertent disclosure of privileged or protected information is not a knowing or voluntary waiver of said privilege or protection with respect to the documents produced or the subject matter thereof.

5.      CREXi construes these requests for production as not seeking documents from the files of outside counsel that constitute attorney-client communication and work product generated in connection with this litigation or anticipated litigation, and objects to these requests as overbroad, unduly burdensome, and not proportional to the needs of the case insofar as they purport to require a search for such privileged or protected material.

6.      CREXi objects to the requests for production and accompanying definitions and instructions to the extent they seek confidential, proprietary, or trade secret information, or material impinging on the privacy interests of CREXi or CREXi employees. To the extent CREXi will produce documents containing such information, it will do so only subject to the terms of a Protective Order after it is entered in this case.

7.      CREXi objects to the requests for production and accompanying definitions and instructions to the extent they seek information or documents that are subject to confidentiality or nondisclosure agreements with other parties. CREXi will produce such information and documents only to the extent that CREXi is permitted to do so under its agreement with such parties and only after those parties receive the appropriate notice and are provided with a reasonable opportunity to raise objections, and the Court resolves any objections.

8.      CREXi objects to the requests and accompanying definitions and instructions to as they are duplicative and cumulative, request information already provided in response to earlier requests or interrogatories, request information equally or more readily accessible to CoStar, and request information available to CoStar from sources for whom production would be easier, less costly, or less burdensome.

9.      CREXi objects to the requests and accompanying definitions and instructions to the extent they purport to impose an obligation on CREXi to conduct anything beyond a reasonable and diligent search of readily accessible files

3

(including electronic files) where responsive documents and information reasonably would be expected to be found.

10.    CREXi objects to the requests to the extent that they seek to impose obligations and demands on CREXi beyond those contemplated by the Federal Rules of Civil Procedure, the local rules of the United States District Court for the Central District of California, or any other applicable rules or orders of the Court.

11.    CREXi objects to the requests and accompanying definitions and instructions to the extent they purport to require preservation or production of ESI stored on nonactive systems or backup media, voicemail, or mobile cellular devices or tablets.

12.    CREXi objects to the requests and accompanying definitions and instructions to the extent they are overbroad, unduly burdensome, unreasonably invasive, vague, ambiguous, or made for the purpose of harassment. CREXi further objects to requests that seek the production of "any" or "all" documents concerning a topic, when less than "any" or "all" documents are necessary and material to the claims or defenses in this case as overbroad, unduly burdensome, and not proportional to the needs of the case.

13.    CREXi objects to the requests and accompanying definitions and instructions to the extent they seek information that is not relevant and not proportional to the needs of the case.

14.    CREXi objects to the requests and accompanying definitions and instructions to the extent they purport to require CREXi to draw legal conclusions premised on contested or unsettled facts or undeveloped, incomplete, or assumed information. CREXi's responses shall not be construed as providing a legal conclusion concerning the meaning or application of any terms of phrases used in CoStar's requests.

15.     CREXi objects to the requests and accompanying definitions and instructions to the extent they purport to require CREXi to create or generate documents that do not currently exist or of which it has no knowledge.

16.     CREXi objects to the requests and accompanying definitions and instructions to the extent they are premature because they call for responses that are the subject of expert testimony or discovery.

17.     CREXi objects to the requests and accompanying definitions and instructions to the extent they purport to give meaning or legal significance to a document, fact, or purported fact whose meaning or significance is or may be the subject of dispute between the parties.  CREXi responds to these requests based on its reasonable interpretation and understanding of the requests and the accompanying definitions and instructions.  CREXi's responses and production of documents shall not constitute an admission or concession regarding the definitions used in the requests.

18.     CREXi does not make any incidental or implied admissions regarding the information subject to these requests. The fact that CREXi responds or objects to any request or any part of a request shall not be taken as an admission that CREXi accepts or admits the existence of any facts set forth or assumed by such request, or that CREXi's response or any related production is or contains admissible evidence. The fact that CREXi has answered part or all of any request is not intended and shall not be construed as a waiver of all or any part of any objection to any request. Any failure to object on a particular ground shall not be construed as a waiver of CREXi's right to object on additional grounds.

19.     CREXi objects to CoStar's demand that CREXi produce documents and electronically-stored information and tangible things responsive to CoStar's 136 requests for production of documents within 30 days as unduly burdensome. CREXi will produce documents on a rolling basis consistent with any agreement of the parties, Court-ordered schedule, or other order entered in this case.

20.     CREXi objects to the requests and accompanying definitions and instructions to the extent they seek information that is outside of CREXi's possession, custody, or control. CREXi further objects to the instruction that a document "shall be deemed to be within [CREXi's] control if [CREXi] ha[s] the right to obtain the Document or a copy of the Document from another Person or entity having possession, custody, or control of the Document" as overbroad, unduly burdensome, and inconsistent with the duties and obligations imposed by the Federal Rules of Civil Procedure. CREXi disclaims any obligation to obtain or produce any documents or information that are not within CREXi's possession, custody, or control, or that are in the possession of third parties. CREXi further disclaims any obligation to produce information in the possession of CoStar, any CoStar-related entity, or any third party from whom production would be easier, less costly, or less burdensome.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     CREXi objects to every definition asserted by CoStar to the extent that the definition is inconsistent with or would expand the definition of a term beyond its ordinary or plain meaning; create an undue burden in responding to these Requests; or impose obligations on CREXi that are inconsistent with CREXi's obligations under any applicable rule, order or law.

2.     CREXi objects to the definitions of "and" and "or" as overbroad, unduly burdensome, vague and ambiguous, including in that the definition purports to include the "disjunctively or conjunctively." CREXi will construe "and" and "or" to have their ordinary meaning.

3.     CREXi objects to the definition of "Arcgate" as overbroad and unduly burdensome to the extent that it encompasses entities that have never provided CREXi with services. CREXi further objects to the definition as vague, ambiguous, and unintelligible to the extent that it relies on the undefined phrase "other derivations of Arcgate." CREXi further objects to the definition on the ground that it assumes that the named and unnamed entities encompassed within that definition "provided

6

services to CREXi." By responding to any request concerning Arcgate, CREXi does not admit that such named and unnamed entities provided services to CREXi. CREXi construes "Arcgate" as used in these requests to relate to the Arcgate entity or entities that provided services to CREXi.

4.    CREXi objects to the definition of "Communication" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is inconsistent with the Federal Rules of Civil Procedure and purports to create an obligation greater than that under the Rules. CREXi will construe the word "Communication" consistent with the definition and obligations under the Federal Rules of Civil Procedure.

5.    CREXi objects to the definitions of the terms "Concerning," "Regarding," and "Relating" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that they seek to expand the ordinary meaning of those words. CREXi will construe the terms "Concerning," "Regarding," and "Relating" to have their ordinary and plain meaning.

6.    CREXi objects to the definition of "CoStar Data" and "CoStar Datum" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is predicated on information that is unknown to CREXi. CREXi objects to this definition as vague and unintelligible to the extent that it seeks documents that CREXi "had reason to believe" were subject to certain actions, without defining what constitutes such reason. CREXi further objects to this definition as vague and unintelligible to the extent that it purports to request data that "CoStar has claimed [CREXi] copied, sourced or otherwise appropriated" without limitation, although CoStar has not provided CREXi with exhaustive information concerning what information is at issue. CREXi further objects to the definitions of "CoStar Data" and "CoStar Datum" to the extent that CoStar seeks to imply that it maintains a legally protectible property right and ownership interest in such data or datum. CREXi will construe "CoStar Data" and "CoStar Datum" to mean any data

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)

1762272

Exhibit R, Page 415

that CoStar claimed CREXi copied, sourced, or otherwise appropriated from CoStar in the First Amended Complaint (the "Relevant CoStar Data" or "Relevant CoStar Datum").

7.      CREXi objects to the definition of "CoStar Database" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information concerning databases that are not alleged in the First Amended Complaint and are not relevant to any claims or defenses in this case. CREXi further objects to this definition as unintelligible to the extent that it seeks information concerning unspecified databases and databases in which CoStar has no current or past ownership interest. CREXi will construe the phrase "CoStar Database" to mean the CoStar-affiliated databases alleged in the First Amended Complaint; specifically, CoStar's Professional Directory (the "Relevant CoStar Databases").

8.      CREXi objects to the definition of "CoStar Photograph" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is predicated on information that is unknown to CREXi. CREXi objects to this definition as vague and unintelligible to the extent that it seeks documents that CREXi "had reason to believe" were subject to certain actions, without defining what constitutes such reason. CREXi further objects to this definition as vague and unintelligible to the extent that it purports to request information about images that CoStar has not identified but may identify in the "future." CREXi objects to "CoStar Photograph" to the extent that the definition seeks to imply that CoStar owns a legally valid copyright in any particular photograph.   CREXi will construe "CoStar Photograph" to mean any photograph that CoStar has claimed CREXi infringed in the First Amended Complaint or in subsequent communications between the parties (the "Relevant CoStar Photographs").

9.      CREXi objects to the definition of "CoStar Website" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information concerning websites that are not alleged in the First Amended

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)
1762272                                                              Exhibit R, Page 416

Complaint and are not relevant to any claims or defenses in this case. CREXi further objects to this definition as unintelligible to the extent that it seeks information concerning unspecified websites and websites in which CoStar has no current or past ownership interest. CREXi will construe the phrase "CoStar Website" to mean the CoStar-affiliated websites alleged in the First Amended Complaint; specifically, www.costar.com, www.loopnet.com, and www.ten-x.com (the "Relevant CoStar Websites").

10.    CREXi objects to CoStar's definition of the terms "CREXi," "you," and "your" as overbroad, unduly burdensome, vague, ambiguous, to the extent that the definition includes "affiliates, assigns, departments, divisions, parents, predecessors, subsidiaries, and successors, and for each of the foregoing, all present or former Employees, agents, and representatives." CREXi will construe the terms "CREXi," "you," and "your" to mean Commercial Real Estate Exchange, Inc.

11.    CREXi objects to the definitions of the terms "CREXi Website" or "Your Website" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information concerning websites that are not alleged in the First Amended Complaint and are not relevant to any claims or defenses in this case. CREXi further objects to this definition as inconsistent with the plain meaning of the term to the extent that it seeks information concerning websites that are controlled by third parties. CREXi further objects to this definition as unintelligible to the extent that it seeks information concerning unspecified websites. CREXi will construe the phrase "CREXi Website" or "Your Website" to mean the CREXi-affiliated website alleged in the First Amended Complaint; specifically, www.crexi.com.

12.    CREXi objects to the definition of "Document" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it is inconsistent with the Federal Rules of Civil Procedure and purports to create an obligation greater than that under the Rules. CREXi will construe the word

9

"Document" consistent with the definition and obligations under the Federal Rules of Civil Procedure.

13.     CREXi objects to the definition of "Employee" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks to expand the ordinary meaning of that word. CREXi will construe "Employee" to have its ordinary and plain meaning.

14.     CREXi objects to the definition of "including," "includes," and "include" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks to expand the ordinary meaning of that word. CREXi will construe "including," "includes," and "include" to have its ordinary and plain meaning.

15.     CREXi objects to the definition of "Internet CRE Information Services" as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks information concerning "data and analytical tools," without limitation, rather than "***online*** data and analytical tools." CREXi will construe "Internet CRE Information Services" to be limited to the specified services provided online.

16.     CREXi objects to CoStar's definition of the term "Leon Capital," as overbroad, unduly burdensome, vague and ambiguous, to the extent that the definition includes "affiliates, assigns, departments, divisions, Employees, parents, predecessors, subsidiaries, and successors." CREXi will construe the term "Leon Capital" to mean "Leon Capital Group, LLC."

17.     CREXi objects to the definition of "Person," as overbroad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks to expand the ordinary meaning of that word. CREXi will construe "Person" to have its ordinary and plain meaning.

18.     CREXi objects to the definition of "Property Listing Information" as overbroad, unduly burdensome, and not proportional to the needs of this case to the

extent that it seeks information concerning commercial real estate that is available for sale or lease, without limitation. CREXi construes "Property Listing Information" to mean information provided for online listings regarding commercial real estate that is available for sale or lease.

19.     CREXi objects to Instruction Three, which requests that CREXi produce documents stating the name, affiliation, and position for each custodian for each file produced, to the extent that the instruction purports to apply to non-custodial ESI, as vague, ambiguous, and unintelligible. CREXi will produce documents in the form required by any applicable rule or order, or as specified in the Stipulated Discovery Order to which the parties have agreed in this case, after it is entered.

20.     CREXi objects to Instruction Four concerning documents that have been destroyed, to the extent that such instruction imposes on CREXi any duty or obligation in excess of the duties and obligations imposed by the Federal Rules of Civil Procedure. CREXi further objects to that instruction on the ground that it potentially seeks information concerning documents that may have been destroyed prior to the commencement of this litigation or that were otherwise not subject to any preservation obligation at the time of destruction. In the event that CREXi learns that any Document responsive to CoStar's requests was destroyed at a time that CREXi was obligated to preserve the document, CREXi will act consistently with the obligations imposed by the Federal Rules of Civil Procedure, any applicable Local Rule, or order of the court.

21.     CREXi objects to Instruction Six, which requests that CREXi state in writing if no Documents, Communications, or things exist that are responsive to a particular request as unduly burdensome to the extent that instruction imposes obligations that exceed those under the Federal Rules of Civil Procedure.

22.     CREXi objects to Instructions Ten and Eleven, which requests that CREXi construe the singular form of any word to include the plural and vice versa, and a word used in the present, past, future, subjunctive, or other tense, voice or

11

mood, to include all other tenses, voices, or moods, to the extent such construction is inconsistent with or would expand the definition of any term beyond its ordinary or plain meaning; create an undue burden in responding to these Requests; or impose obligations on CREXi that are inconsistent with CREXi's obligations under any applicable rule, order or law.

23. CREXi objects to Instruction Thirteen, which requests that CREXi search for and produce documents and information for the time period January 1, 2016, through the present, as overbroad, unduly burdensome, and not proportional to the needs of the case. CREXi will construe these requests as seeking documents and information for the time period January 1, 2016, through October 2, 2020.

12

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)     Exhibit R, Page 420
1762272

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR PRODUCTION NO. 1:**

All Documents relating to CoStar, including CoStar's products and services, the contents of CoStar Websites and CoStar Databases, other CoStar-generated content (such as email notifications and alerts), CoStar Photographs, and CoStar Data. Included in this request are all Communications with CoStar, and Documents relating to Communications with CoStar.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it calls for information relating to CoStar generally, including websites, databases, and other aspects of CoStar not at issue in this lawsuit. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs" and "CoStar Data." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request to the extent that it is duplicative of other requests. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.

13

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)      Exhibit R, Page 421

1762272

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents relating to CoStar Photographs, including copies of all CoStar Photographs, all Documents relating to CoStar Photographs being copied and/or uploaded onto, displayed, or published on CREXi Websites, and Documents sufficient to show the Persons who did so, where CoStar Photographs were displayed or published on CREXi Websites, and when CoStar Photographs were displayed or published on CREXi Websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case to the extent that it requests "all" documents relating to more than 10,000 images, as well as documents sufficient to show additional information about those images. CREXi objects to this request as overly broad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Websites." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request on the ground that it is predicated on information that is uniquely within

14

CoStar's possession, which CoStar has failed to produce to CREXi. CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation. CREXi objects to this request to the extent that it is duplicative of other requests. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, including server logs, relating to Your access of CoStar Websites and CoStar Databases, including Your viewing, downloading, exporting, emailing, printing, copying, sourcing, retaining, modifying, appropriating, displaying, distributing, publishing, analyzing, or using any content, including any CoStar Datum or CoStar Photograph, from any CoStar Database or CoStar Website, whether by manual or automated means.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents

15

concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs" and "CoStar Datum."  CREXi construes those terms as stated in the foregoing objections to definitions.  CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost. CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents relating to technological measures employed by CoStar to condition, limit, filter, block or control access to any CoStar Website or CoStar Database.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions.  CREXi objects to this request to the

extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control that are responsive to this request, to the extent that they relate to the Relevant CoStar Websites or the Relevant CoStar Databases.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents relating to current or former accounts that You have registered or created on or with any CoStar Database or CoStar Website, including Documents sufficient to show all Persons who so registered/created accounts, the dates of such registration, any aliases used in registering/creating the accounts, the reason(s) for the use of such aliases, the purpose(s) for which the accounts are and were used, and the circumstances surrounding the creation (and deletion, if applicable) of the accounts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi object to this request as vague and unintelligible to the extent that it seeks documents relating to accounts that CREXi has registered or created, but CREXi has never created such accounts.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in

17

this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to show the websites, internet domains, services, applications, internet service providers, and IP addresses You use or have used to view, download, export, print, copy, source, retain, modify, appropriate, display, distribute, publish, analyze, use, or otherwise access content from CoStar Websites or CoStar Databases.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this case.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which

18

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)     Exhibit R, Page 426

1762272

CoStar has failed to produce to CREXi.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show the IP addresses affiliated with CREXi's corporate offices.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show the websites, internet domains, services, applications, internet service providers, and IP addresses You use or have used to view, download, export, print, copy, source, retain, modify, appropriate, display, distribute, publish, analyze, or use, or otherwise reproduce CoStar Datum or CoStar Photographs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this case.  CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs" and "CoStar Datum." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show the IP addresses affiliated with CREXi's corporate offices.

19

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)       Exhibit R, Page 427

1762272

**REQUEST FOR PRODUCTION NO. 8:**

All Documents concerning the changing, use, or rotation of IP addresses to avoid or bypass access limitations of any CoStar Website or CoStar Database, or to hide or otherwise obscure Your identity while accessing any CoStar Website or CoStar Database.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi. CREXi objects to this request as unduly burdensome as it is predicated on the false assumption that CREXi has engaged in any of the activity described.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control that are responsive to this request, to the extent that they relate to the Relevant CoStar Websites or the Relevant CoStar Database.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents concerning the use of virtual private networks (VPNs), proxies, anonymizers, TOR browsers or similar browsers, dummy accounts, multiple accounts linked to one individual, fake identities or names, personal e-mail or other accounts, credentials issued to or accounts associated with other individuals or entities (including former employers), or any other means or methods to access any CoStar Website or CoStar Database, or to circumvent CoStar's anti-piracy measures, terms of use, terms and conditions, terms of service, licenses, or

any other means employed to condition, limit, filter, block or control access to any CoStar Website or CoStar Database, including third party anonymizer services or proxy services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it targets information in the possession of third parties over whom CREXi has no control.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi. CREXi objects to this request as unduly burdensome as it is predicated on the false assumption that CREXi has engaged in any of the activity described.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control that are responsive to this request, to the extent that they relate to the Relevant CoStar Websites or the Relevant CoStar Database.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents concerning CoStar Access Credentials that You created, obtained, purchased, licensed, or received from CoStar or a Third Party, and how those CoStar Access Credentials were used, including the CoStar Access Credentials themselves, the source(s) of the CoStar Access Credentials, how they were obtained, who used the CoStar Access Credentials (including any sharing of CoStar Access Credentials among Persons), when the CoStar Access Credentials

21

were used, and the purpose(s) for which the CoStar Access Credentials were used.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks documents that are not relevant to any claim or defense in this case. There are no allegations in the First Amended Complaint concerning CREXi's creation or use of access credentials for any website other than www.costar.com and www.loopnet.com, and moreover, information on www.loopnet.com is publicly available without access credentials.  CREXi further objects because this request is predicated on the false assumption that CREXi has engaged in any of the activity described.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition "CoStar Access Credentials," which incorporates the definitions of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions.  CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control that are responsive to this request to the extent that they relate to subscription services offered on www.costar.com.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents concerning any purported permission You obtained to view, download, export, print, copy, source, retain, modify, appropriate, display, distribute, publish, analyze, or use any CoStar Datum or CoStar Photograph.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi further objects to this request as overly broad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case. CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs" and "CoStar Datum." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search for and produce non-privileged centrally maintained documents in its possession, custody or control concerning the process by which CREXi obtains information to create listings, including any discussion about obtaining permissions from brokers with respect to information and photographs for their listings.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents concerning CoStar Datum or CoStar Photographs relied upon, shared, reproduced, published, copied, referenced, or otherwise used to prepare or generate content appearing on any CREXi Website, on any website belonging to any entity affiliated with CREXi, or on any computer or server in Your possession, custody, or control.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs" and "CoStar Datum." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Websites." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request as unduly burdensome to the extent that it is duplicative of other requests. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar concerning this request.

**REQUEST FOR PRODUCTION NO. 13:**

Documents sufficient to show the source(s) from which You obtained any and all CoStar Photographs that are or were in Your possession, custody, or control, including CoStar Photographs that appear or have appeared on any CREXi Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Websites." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request as unduly burdensome to the extent that it is duplicative of earlier requests. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show the source(s) of the Relevant CoStar Photographs that appear or have appeared on www.crexi.com.

**REQUEST FOR PRODUCTION NO. 14:**

All Communications between You and any broker, agent, or other customer regarding how You would obtain, or have obtained, Property Information or Property Listing Information, including all Communications between You and any broker, agent, or other customer regarding the copying of the broker, agent, or other customer's Property Information or Property Listing Information from another website, including any CoStar Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

CREXi incorporates by reference its General Objections and Objections to

Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks every communication with every broker, agent, or customer concerning hundreds of thousands of listings.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites." CREXi construes that term as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi will search for and produce non-privileged centrally maintained documents in its possession, custody or control concerning the process by which CREXi obtains information to add listings, including any discussion about the copying of property information from any other website.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents relating to CREXi's service where CREXi offers to create, build, generate or curate a property listing and place that listing on CREXi Websites, including all related Communications with brokers, agents, or other customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to the request as overly

broad to the extent that it calls for information concerning websites that are not

relevant to any claim or defense in this action, or not in CREXi's custody or control,

including third party websites included within CoStar's definition of "CREXi

Websites." CREXi construes that term as stated in the foregoing objections to

definitions.

Subject to the foregoing general and specific objections, CREXi will search

for and produce non-privileged centrally maintained documents in its possession,

custody or control concerning the process by which CREXi obtains information to

add listings to www.crexi.com.

**REQUEST FOR PRODUCTION NO. 16:**

All CoStar Photographs containing a CoStar Watermark or other CoStar logo

(or any portion of a CoStar Watermark or CoStar logo) that are or were in Your

possession, custody, or control, including CoStar Photographs that appear or have

appeared on any CREXi Website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

CREXi incorporates by reference its General Objections and Objections to

Definitions and Instructions. CREXi objects to the request as overbroad to the

extent that it calls for information concerning websites that are not relevant to any

claim or defense in this action, or not in CREXi's custody or control, including

third party websites included within CoStar's definition of "CREXi Websites."

CREXi construes that term as stated in the foregoing objections to definitions.

CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to

the extent that it requests documents concerning photographs and data that were not

alleged in the complaint and have not been identified by CoStar, as provided by

CoStar's definition of "CoStar Photographs."  CREXi construes that term as stated

in the foregoing objections to definitions. CREXi objects to this request on the

ground that it is predicated on information that is uniquely within CoStar's

possession, which CoStar has failed to produce to CREXi

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents responsive to this request to the extent that they constitute Relevant CoStar Photographs.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents concerning any alterations You made, or a Third Party made at Your direction, to any CoStar Photograph, including removing, adding, changing, or obscuring logos, watermarks, or copyright notices, or cropping, and all versions of each altered CoStar Photograph.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information concerning alteration of CoStar's logos that the Court has determined that CoStar's "watermark logo does not constitute [copyright management information]." Ord. on Mot. to Dismiss, Dkt. No. 71, at 6. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.

Subject to the foregoing general and specific objections, CREXi is willing to

meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents regarding any of Your virtual marketing presentations, including the "Welcome to CREXi" presentations for the Baton Rouge, Birmingham, Memphis, Reno, Richmond, and Tampa markets. This request encompasses any drafts, talking points, scripts, Communications, or other preparation materials regarding Your virtual presentations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it requests every virtual marketing presentation CREXi has ever made throughout virtually its entire history. CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show the "Welcome to CREXi" presentations alleged for the Baton Rouge, Birmingham, Memphis, Reno, Richmond, and Tampa markets.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents concerning any public statement or customer communication issued by or on behalf of CREXi that contained a CoStar Photograph or CoStar Data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as unduly burdensome as it seeks documents that are publicly available that are equally accessible to CoStar or accessible to CoStar at a lower cost.  CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it seeks documents to the extent that it seeks "customer communications issued by or on behalf of CREXi."  CREXi objects to this request as unduly burdensome to the extent that it is duplicative of other requests.  CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs" and "CoStar Data." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  As a result, there is no feasible mechanism by which CREXi could search for and identify responsive documents, even if they existed.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents regarding any instance of CREXi issuing public statements or customer communications concerning CREXi's ownership of photographs or data that appear on CREXi Websites or databases, and any watermarking or adding of a CREXi logo to a photograph.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks documents regarding CREXi's adding a watermark to photographs, which is not relevant to any claim or defense in this case. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as unduly burdensome as it seeks documents that are publicly available that are equally accessible to CoStar or accessible to CoStar at a lower cost. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Websites." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search for and produce non-privileged, centrally maintained documents in its possession, custody or control reflecting public statements claiming ownership of the photographs or data on www.crexi.com.

**REQUEST FOR PRODUCTION NO. 21:**

Documents sufficient to show the total number of instances in which customers of CREXi and/or users of a CREXi database, website, service, or product have accessed, viewed, or downloaded a CoStar Photograph or CoStar Data (or a listing or report or other document or page that includes a CoStar Photograph or

31

1  CoStar Data).

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

3       CREXi incorporates by reference its General Objections and Objections to

4  Definitions and Instructions. CREXi objects to this request as overbroad, unduly

5  burdensome, and seeking information that is not relevant or proportional to the

6  needs of the case as it calls for CREXi to produce documents that are not relevant

7  to any claim or defense and are related to third party access to CoStar's services.

8  CREXi objects to this request as vague and unintelligible to the extent that it calls

9  for documents showing "the total number of instances" in which third parties

10  engaged in a broad range of activity, of which CREXi could have no knowledge.

11  CREXi objects to this request to the extent that it seeks information that is not

12  maintained by CREXi in the ordinary course of business and would require CREXi

13  to prepare a compilation.  CREXi objects to this request as overbroad, vague,

14  ambiguous, and unintelligible to the extent that it requests documents concerning

15  photographs and data that were not alleged in the complaint and have not been

16  identified by CoStar, as provided by CoStar's definition of "CoStar Photographs"

17  and "CoStar Data."  CREXi construes those terms as stated in the foregoing

18  objections to definitions.  CREXi objects to this request on the ground that it is

19  predicated on information that is uniquely within CoStar's possession, which

20  CoStar has failed to produce to CREXi.

21       In light of the foregoing general and specific objections, CREXi will not

22  specifically produce documents responsive to this request.

23  **REQUEST FOR PRODUCTION NO. 22:**

24       All Documents concerning the applicability or non-applicability of copyright

25  law to the content of any CoStar Websites or CoStar Databases.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

27       CREXi incorporates by reference its General Objections and Objections to

28  Definitions and Instructions. CREXi objects to this request as it targets documents

likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request to the extent that they relate to the Relevant CoStar Websites or the Relevant CoStar Databases.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents concerning any policies, procedures, or protocols You have in place to avoid copyright infringement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search of its centrally maintained document repositories and produce non-privileged documents in its possession, custody or control sufficient to show the policies, procedures, or protocols CREXi has in place to avoid copyright infringement.

33

**REQUEST FOR PRODUCTION NO. 24:**

All Documents concerning training, processes, or procedures to evaluate, generate, identify, source, review, verify or curate Property Information, Property Listing Information, or Broker Information for publication on Your Websites or databases, including training manuals, memoranda, and e-mails. Included in this request are Documents purporting to discourage or prohibit CREXi Employees from accessing CoStar Websites or CoStar Databases.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it targets essentially all of CREXi's training materials and related documents, including concerning topics that are not relevant to any claim or defense in this action.  CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all documents concerning a topic. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases."  CREXi construes those terms as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged training manuals or memoranda concerning the preparation of online property listings on www.crexi.com.

**REQUEST FOR PRODUCTION NO. 25:**

The content of Your websites and databases, including webpages, data and reports that are currently being published or displayed, webpages, data and reports that have in the past been published or displayed and remain in existence, and

34

webpages, data and reports that are being prepared for future publication or display, whether or not such webpages and data are static (i.e., available generally to all visitors to Your webpages databases) or dynamic (i.e., made available in response to search requests by visitors to Your webpages databases). Included in this request is a request to inspect the past and current contents of Your websites and databases to identify the CoStar Photographs and CoStar Data that You have incorporated into such websites and databases.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it purports to demand, without limitation, the entire contents of CREXi's website and databases, as well as every past version and contents of CREXi's website and databases, and drafts of future versions of the website that may or may not be in existence, the vast majority of which is not relevant to any claim or defense.  CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs" and "CoStar Data."  CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites."  CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request to the extent that any information sought thereby is subject to any confidentiality or privacy obligation and/or would reveal confidential customer information, in violation CREXi's customers' privacy rights. To the extent that

CREXi produces information responsive to this request, it will be subject to an appropriate Protective Order entered in this case. CREXi objects to this request as unduly burdensome as it seeks documents that are publicly available that are equally accessible to CoStar or accessible to CoStar at a lower cost.  CREXi further objects to the request for an inspection because it does not specify a reasonable time, place, or manner for the inspection as is required by Fed. R. Civ. P. 34.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 26:**

Documents sufficient to show Your practices and policies relating to the saving or storing of Property Listing Information, Property Information, or Broker Information displayed or published on CREXi Websites, including where such Property Listing Information, Property Information, or Broker Information is maintained, how long such Property Listing Information, Property Information, or Broker Information is maintained, and any other criteria relating to its creation, retention, or deletion.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Websites."  CREXi construes that term as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession,

custody or control responsive to this request to the extent that they relate to www.crexi.com.

**REQUEST FOR PRODUCTION NO. 27:**

Documents sufficient to show all CREXi Employees and any other persons who (a) source or provide Property Information, Property Listing Information, or Broker Information for inclusion on any of Your Websites or databases, (b) communicate directly or indirectly with Arcgate, any other BPO, or any other entity that You hired, retained, or engaged to source Property Information, Property Listing Information, or Broker Information for inclusion on Your Websites or databases, and (c) manage any Person described in items (a) and (b), including the names, titles, roles, and responsibilities of such Employees or other Persons, as well as the date ranges during which those Employees or other Persons performed work or services for You.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks detailed information concerning CREXi's workforce, much of which is unrelated to any claim or defense in this action. CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation. CREXi objects to this request to the extent that any information sought thereby is subject to any confidentiality or privacy obligation. To the extent that CREXi produces information responsive to this request, it will be subject to an appropriate Protective Order entered in this case.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce an organizational chart or charts sufficient to show the employees who perform sales and listing functions within CREXi.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents relating to the solicitation of, hiring, retention, or engagement of any Person, entity, or BPO, including Arcgate, for the purposes of sourcing or providing Property Information, Property Listing Information, or Broker Information for inclusion in any of Your websites or databases, including downloading, copying, exporting, mining, or otherwise collecting data from a commercial real estate-related website or database, including any CoStar Database or CoStar Website. This includes potential, considered, or prospective engagements that did not result in a formal relationship.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks materials concerning contractual relationships that were never entered into, and all materials relating to CREXi's solicitations of Property Information from any person, for example, brokers.  CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites."  CREXi construes that term as stated in the

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)     Exhibit R, Page 446

1762272

foregoing objections to definitions.  CREXi objects to this request to the extent that any information sought thereby is subject to any confidentiality or privacy obligation. To the extent that CREXi produces information responsive to this request, it will be subject to an appropriate Protective Order entered in this case.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to identify the entities it has hired to source or provide property listing information, or broker information for inclusion on www.crexi.com.

**REQUEST FOR PRODUCTION NO. 29:**

Documents sufficient to show the means (for example, and without limitation, email, instant messaging or chat apps or services, online or cloud services or accounts) by which You communicated with Arcgate, or any other agent, contractor, BPO, or other Person or entity hired, retained, or engaged for purposes of sourcing or providing Property Information, Property Listing Information, or Broker Information for inclusion on any of Your Websites or databases, including the means by which such Persons or entities conveyed such Property Information, Property Listing Information, or Broker Information to You, and the means by which You conveyed to such Persons or entities the specific properties, brokers or brokerages that they should research.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites."  CREXi

39

construes that term as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show the means by which CREXi communicated with any entities it has retained to source or provide broker information for www.crexi.com.

**REQUEST FOR PRODUCTION NO. 30:**

All agreements, contracts, including any amendments thereto, scopes of work, training materials, instructions, guidance, or protocols with Arcgate, and any other Person, BPO, or other entity hired, retained, or engaged to provide services to You that sourced or provided Property Information, Property Listing Information, or Broker Information to You for publication on Your Websites or databases.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites."  CREXi construes that term as stated in the foregoing objections to definitions.  CREXi objects to this request to the extent that any information sought thereby is subject to any confidentiality or privacy obligation. To the extent that CREXi produces information responsive to this request, it will be subject to an appropriate Protective Order entered in this case.

Subject to the foregoing general and specific objections, CREXi will search for and produce non-privileged, centrally maintained documents in its possession, custody or control reflecting its agreements, contracts, including any amendments

thereto, scopes of work, training materials, instructions, guidance, or protocols with any entity hired to source or provide property information, property listing information, or broker information for www.crexi.com.

**REQUEST FOR PRODUCTION NO. 31:**

Documents sufficient to show all payments You made to Arcgate, and any other Person, BPO, or entity hired, retained, or engaged to provide services to you that sourced or provided Property Information, Property Listing Information, or Broker Information to You for publication on Your Websites or databases, as well as the date of each such payment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action.  CREXi objects to this request to the extent that any information sought thereby is subject to any confidentiality or privacy obligation.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites."  CREXi construes that term as stated in the foregoing objections to definitions.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 32:**

All Communications between You and Arcgate, or any other agent, BPO, contractor, or other Person or entity hired, retained, or engaged for the purpose of sourcing, obtaining, verifying or providing Property Information, Property Listing Information, or Broker Information for Your Websites or databases. This includes

41

potential, considered, or prospective engagements that did not result in a formal relationship.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it "all communications" between CREXi and multiple other parties without regard to the content of the communications or their relevance to any claim or defense in this action. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks materials concerning contractual relationships that were never entered into, and materials relating to CREXi's solicitation of property information from any person, for example, brokers. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites." CREXi construes that term as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi will search for and produce non-privileged, centrally maintained documents in its possession, custody or control reflecting its agreements, contracts, including any amendments thereto, scopes of work, training materials, instructions, guidance, or protocols with any entity hired to source or provide property information, property listing information, or broker information for www.crexi.com.

**REQUEST FOR PRODUCTION NO. 33:**

Documents, including contracts, sufficient to show Your relationship with any provider of services for Your websites or databases, including website hosting, cloud services, interactive voice response systems, data collection appliances or

software, customer support ticketing systems, customer relationship management systems, and telephonic- or internet chat-based customer care services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information showing CREXi's relationship with "any provider of services" for CREXi's website, without regard to whether the service at issue relates to any claim or defense in this action. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request to the extent that any information sought thereby is subject to any confidentiality or privacy obligation.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents regarding any CoStar customer lists, directories, or records, including any lead lists, broker records, or exports from a CoStar Database.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all documents regarding" a topic, which would dramatically expand the scope of the request. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as

provided by CoStar's definition of "CoStar Databases." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it seeks documents regarding undefined items, "CoStar customer lists," "directories," "records," "lead lists," "broker records," or "exports from a CoStar Database." CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control that CREXi knows constitutes a CoStar customer list, directory, lead list, or broker record from the Relevant CoStar Databases.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents regarding the source, development, or generation of CREXi's customer lists, directories, or records, including any lead lists or broker records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it targets highly sensitive competitive information that has no relevance to any claim or defense in this case. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it seeks documents regarding undefined items, including "CREXi's customer lists," "directories," "records," "lead lists" or "broker records."

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents relating to the disclosure to You of, and Your awareness of, agreement to, or rejection of, terms of use, terms and conditions, or licenses for any CoStar Database or CoStar Website, including copies of any such terms of use, terms and conditions, or licenses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi further objects to this request because it is predicated on the false assumption that CREXi has ever agreed to any CoStar terms. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents relating to Your awareness of, agreement to, or rejection of, any terms of use, terms of access, terms of services, or licenses for third-party websites or databases, including copies of any of those terms or licenses.

1762272

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it targets information related entirely to third party websites that are not at issue in this case and have no relevance to any claim or defense in this case.  CREXi objects to this request as vague and unintelligible as to what constitutes documents reflecting awareness of, agreement to, or rejection of terms on any third-party website, anywhere on the internet, without limitation. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents relating to Your terms of use or terms and conditions, or licenses for any CREXi Websites or databases, including copies of any such terms of use, terms and conditions, or licenses. This includes Documents sufficient to show each version of Your terms of use or terms and conditions, or licenses for any CREXi Websites or databases.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case to the extent that it seeks all information concerning any licenses

for any CREXi Websites or databases, which are not at issue in this case and are not relevant to any claim or defense.  CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all documents relating to" a topic, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Websites."  CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show each unique version of the terms of use for www.crexi.com.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents relating to the steps You have taken to protect Your intellectual property, including filing for trademark, patent, or copyright protection; Your use of copyright or trademark notices, symbols, or other indicators of intellectual property status; Your consideration of, development of, use of, or changes to terms of use, terms of access, terms of service, or other licenses on Your Websites, databases, or elsewhere; customer subscriber contracts available on Your Websites or elsewhere that concern intellectual property issues; litigation or threat of litigation involving Your trademarks, patents, copyrights, trade secrets, or other intellectual property; and non-privileged communications relating to Your trademarks, patents, copyrights, trade secrets, or other intellectual property.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case because there is no claim concerning CREXi's copyrights, patents or the other subject matter that is targeted by this request.  CREXi further objects to this request as vague and unintelligible to the extent that it joins unrelated issues in a single compound request.  CREXi objects to this request as unduly burdensome to the extent that it is duplicative of earlier requests.  CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection."

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents concerning any measures that CREXi employs to protect against any unauthorized or competitive access to CREXi Websites or databases, including anti-piracy measures, abuse monitors, firewall blocking, IP reputation

blocking, and anti-scraping or anti-bot technology.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case because there is no claim concerning CREXi's use of measures to protect against unauthorized or competitive access to www.crexi.com. CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all documents concerning" a topic. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Websites." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents concerning any instance in which You have had any involvement (for example, without limitation, as a plaintiff, defendant, or Third Party) in any claim, dispute, or proceeding involving copyright or other intellectual property issues, or involving Property Listing Information, including any claims or disputes that were resolved without litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly

49

burdensome, and seeking information that is not relevant or proportional to the needs of the case as it targets information concerning claims, disputes, or proceedings involving third parties that have no relevance to any claim or defense in this case. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents regarding Your compliance with the preliminary injunction and settlement agreement entered into by You in the Ten-X litigation, captioned *Ten-X, LLC, v. Commercial Real Estate Exchange, Inc. et al.*, Case No. BC616600.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it targets information concerning a preliminary order entered in a closed action that has no relevance to any claim or defense in this case.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 43:**

All Communications with Leon Capital Group relating to CoStar, CoStar

50

Websites, CoStar Databases, CoStar Photographs, or CoStar Datum, including any reports generated from any CoStar Database, and any Communications relating to litigation with CoStar.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship. This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.  CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case because there is no claim or defense related to Leon Capital Group at issue in this case. While CoStar has a complaint pending against that entity in a separate action, it cannot use this action to get discovery related to an unrelated party.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Databases." CREXi construes that term as stated in the foregoing objections to definitions.  CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by

CoStar's definition of "CoStar Photographs" and "CoStar Datum."  CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 44:**

Documents sufficient to show Your corporate structure and ownership interests, including organizational charts with Employee names and titles.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks documents concerning all personnel within CREXi, nearly since the time of CREXi's founding, rather than information concerning the units and departments that are at issue in this case. CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case because information concerning CREXi's corporate structure and ownership interest are not relevant to any claim or defense.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce an organizational chart or charts sufficient to show the employees who perform sales and marketing functions within CREXi.

**REQUEST FOR PRODUCTION NO. 45:**

Documents sufficient to show Your relationship with Your investors and Your board of directors, including the identities of Your investors and board members and the type and amount of the investments made by your investors and

52

board members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship. This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations. By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.  CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case because there is no claim or defense related to CREXi's investors and board members, or their investments in CREXi, which are highly confidential. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents concerning Your Series B capital raise announced on January 24, 2020, Your Series A capital raise announced on May 21, 2018, Your Seed Round announced on May 26, 2017, and Your Seed Round announced on February 25, 2016, including any road show documents or presentation materials related to

53

1  the capital raise.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

3       CREXi incorporates by reference its General Objections and Objections to

4  Definitions and Instructions. CREXi objects to this request as overbroad, unduly

5  burdensome, and seeking information that is not relevant or proportional to the

6  needs of this case to the extent that it seeks "all" documents concerning a topic.

7  CREXi objects to this request as unduly burdensome and not proportional to the

8  needs of this case because it is made for the purpose of harassing one or more third

9  parties with whom CREXi has an existing business relationship. This request is

10  made to advance CoStar's active campaign to use subpoenas, discovery requests,

11  and civil litigation to harass CREXi's business relations and thereby interfere with

12  CREXi's business relationships, harm CREXi's reputation, and prevent CREXi

13  from obtaining beneficial information from those relations. By way of non-limiting

14  example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's

15  contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will

16  not produce information requested solely for the purpose of furthering CoStar's

17  anticompetitive and abusive litigation tactics.  CREXi objects to this request as

18  overbroad, unduly burdensome, and seeking information that is not relevant or

19  proportional to the needs of this case because CREXi's fundraising efforts are not at

20  issue in the complaint, have no relationship to any claim or defense in this action,

21  and are highly confidential.  CREXi objects to this request as it targets documents

22  likely to contain attorney-client privileged information, attorney work product, or

23  information that is otherwise protected by any applicable privilege or protection.

24       In light of the foregoing general and specific objections, CREXi will not

25  specifically produce documents responsive to this request.

26  **REQUEST FOR PRODUCTION NO. 47:**

27       All Documents concerning Your annual, quarterly, and monthly budgets,

28  including but not limited to Your marketing, sales, and research and development

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)       Exhibit R, Page 462
1762272

("R&D") budgets.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks documents for business units that are not related to any claim or defense in this action. CREXi's research and development budget is not probative of any issue in this case and any request for such information is not relevant or proportional to the needs of this case. CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show CREXi's annual, quarterly, and monthly budgets for its marketing and sales functions, to the extent such documents exist.

**REQUEST FOR PRODUCTION NO. 48:**

Documents sufficient to show CREXi's total annual revenue, profits, and costs, and CREXi's annual revenue, profits, and costs associated with each CREXi Website, database, service, and product.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi further objects to this request as overly broad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents

55

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)      Exhibit R, Page 463

1762272

"sufficient to show" are more appropriately targeted to the claims and defenses in this case. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Websites."  CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request to the extent that it seeks information that is not maintained in the ordinary course of business and would require CREXi to prepare a compilation.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show its annual corporate revenue, costs and profits.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents regarding Your statement that CREXi has over $105 billion in closed deals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it seeks "all documents regarding" a statement made at an unspecified time, which also renders it overbroad and disproportionate, as this request is not relevant to any claim or defense in this action. CREXi will construe this as a request for information sufficient to show the volume of closed deals on www.crexi.com.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show the volume of closed deals on www.crexi.com.

**REQUEST FOR PRODUCTION NO. 50:**

Documents sufficient to show all WeWork locations, and any other

temporary or flexible office space locations, where CREXi rents, leases, or uses, or formerly rented, leased or used, office space for its Employees, contractors, or agents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that has no bearing on the claims or defenses in this case. CREXi has already agreed to produce the IP addresses associated with each of its offices.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 51:**

All Documents discussing any transaction opportunities, business opportunities, contracts, or other related revenue sources that involve, use, consider, leverage, or are associated with CoStar Datum or CoStar Photographs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it seeks documents relating to undefined opportunities that are associated with CoStar data or photographs. CREXi objects to this request as overbroad, vague, ambiguous, and unintelligible to the extent that it requests documents concerning photographs and data that were not alleged in the complaint and have not been identified by CoStar, as provided by CoStar's definition of "CoStar Photographs" and "CoStar Datum." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this

request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 52:**

Documents sufficient to show CREXi's relationship with Brevitas, Inc., 42Floors, Inc., TenantBase, Inc., Buildout, Inc., the National Association of Realtors, RealMLS, Realogy, and the Miami Association of Realtors Commercial, and any of their respective affiliates.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as vague, ambiguous and unintelligible as it is not clear what documents would be sufficient to show any alleged relationship.  CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not related to any claim or defense in this case.  CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship. This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations. By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will not produce information requested solely for the purpose of

58

furthering CoStar's anticompetitive and abusive litigation tactics.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents relating to any agreement between CREXi and Brevitas, Inc., 42Floors, Inc., TenantBase, Inc., Buildout, Inc., the National Association of Realtors, RealMLS, Realogy, the Miami Association of Realtors Commercial, or any of their respective affiliates, including: (a) all agreements, whether formal or informal, and all drafts thereof, that relate to the exchange or integration of Property Information, Property Listing Information, or Broker Information, including any amendments thereto, and any side letters relating thereto; (b) all instructions, directions, advice, or suggestions sent to or received from Brevitas, Inc., 42Floors, Inc., TenantBase, Inc., Buildout, Inc., the National Association of Realtors, RealMLS, Realogy, the Miami Association of Realtors Commercial, or their respective affiliates, relating to the exchange of Property Information, Property Listing Information, or Broker Information; (c) all negotiations with Brevitas, Inc., 42Floors, Inc., TenantBase, Inc., Buildout, Inc., the National Association of Realtors, RealMLS, Realogy, the Miami Association of Realtors Commercial, or their respective affiliates, relating to the exchange of Property Information, Property Listing Information, or Broker information; and (d) all documents relating to any concerns, discussions or agreements regarding the exchange of Property Information, Property Listing Information, or Broker Information that actually or potentially belong to CoStar or were sourced from a CoStar Website or CoStar Database.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the

needs of the case as it seeks information that is not related to any claim or defense in this case.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship. This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations. By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar concerning this request.

**REQUEST FOR PRODUCTION NO. 54:**

All Communications with any Person other than your counsel, including Arcgate or any other BPO, relating to this Action, including all efforts to preserve Documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26. CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship. This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations. By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents relating to Your assertion in Paragraph 36 of the Counterclaims that "internet CRE listing services constitute a relevant product market," including but not limited to, Your assertions that (a) "non-digital CRE advertising services are complements—rather than substitutes—for internet CRE listing services," (Paragraph 35) and (b) "[o]ther digital services such as Google, Bing, and Facebook Marketplace, as well as non-digital services such as on-site advertising and print advertising are not reasonably interchangeable with internet CRE listing services." (Paragraph 36).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly

burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXI further objects on the basis that this request prematurely seeks information that will be the subject of expert discovery.  CREXi objects to this request on the grounds that it calls for premature expert discovery, seeks information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost."

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 56:**

All Documents relating to Your assertion in Paragraph 41 of the Counterclaims that "internet CRE information services constitute a relevant product market" including Your assertions that "[t]here are no services that are reasonably interchangeable with internet CRE information services" and that "[i]f the price of internet CRE information services increased by a small by significant amount, CRE customers would not substitute away from these services by a sufficient amount to render the price increase unprofitable."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)      Exhibit R, Page 470

1762272

burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents it intends to rely upon that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents relating to Your assertion in Paragraph 46 of the Counterclaims that "internet CRE auction services constitute a relevant product market," including Your assertions that (a) "internet CRE auction services" and "internet CRE listing services" are not "reasonably interchangeable," and (b) "[i]f the price of internet CRE auction services increased by a small but significant amount, CRE customers would not substitute away from these services by a sufficient amount to render the price increase unprofitable."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter,

the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents it intends to rely upon that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents relating to Your assertion in Paragraph 47 of the Counterclaims that the "[g]eographic markets for internet CRE listing, information, and auction services consist of individual metropolitan areas," including Your allegation in Paragraph 48 that "[c]ustomers of CRE listing, information, and auction services generally do not regard locations in different metropolitan areas as reasonable substitutes."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to

contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents it intends to rely upon that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents concerning competition or competitors in the Relevant Internet CRE Services Markets, including but not limited to, competition with or competitors of CoStar.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks "all documents concerning" competitors and competition broadly.  CREXi objects to this request as vague, ambiguous and unintelligible as to the undefined term "competition" and to the extent it seeks documents relating to CoStar's competitors, the identities of whom are known to CoStar, but not CREXi.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.

Subject to the foregoing general and specific objections, CREXi will search for and produce non-privileged, centrally maintained documents in its possession, custody or control reflecting who CREXi's competitors are, the markets in which

they compete, CREXi's market share, and related competitive analyses.

**REQUEST FOR PRODUCTION NO. 60:**

Documents sufficient to show the geographic markets in which you provide each of the Relevant Internet CRE Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 61:**

Documents sufficient to show each broker, agent, advertiser, business, individual, or other entity that subscribed, purchased, or otherwise used each of Your Relevant Internet CRE Services in each geographic market in which you provide the Relevant Internet CRE Services, and the time period during which the broker, agent, advertiser, business, individual or other entity used or accessed Your Relevant Internet CRE Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks documents showing essentially every customer CREXi has had and the time period in which they used or "accessed" CREXi's services. CREXi objects to this request as overly broad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks documents that have no bearing on any claim or defense in this action. CREXi

66

objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship. This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 62:**

All Documents relating to Your assertion in Paragraph 75 of the Counterclaims that CoStar "flouted" the Consent Decree CoStar entered into with the Federal Trade Commission in connection with CoStar's acquisition of LoopNet.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all documents relating to" CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the grounds that it seeks premature expert

discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26. CREXi objects to this request to the extent that it seeks documents in CoStar's possession, are publicly available, more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 63:**

All Documents relating to the market share of CoStar, CREXi, or any other company that competes in the Relevant Internet CRE Services Markets, including, but not limited to, all Documents relating to Your assertions in the Counterclaims that:

a.   "CoStar's current share of the internet CRE listing services market is over 90%." (Paragraph 102).

b.   "CoStar's current share of the internet CRE information services market is over 90%." (Paragraph 103).

c.   "CoStar's current share of the internet CRE auction services market is 95%." (Paragraph 104).

d.   "CoStar is dominant in an overwhelming majority of metropolitan areas." (Paragraph 105).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all documents relating to" CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as

the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will search for and produce non-privileged, centrally maintained documents in its possession, custody or control reflecting who CREXi's competitors are, the markets in which they compete, CREXi's market share, and related competitive analyses.

**REQUEST FOR PRODUCTION NO. 64:**

For each month, Documents sufficient to show the number of users who visited Your websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites."  CREXi construes that term as stated in the foregoing objections to definitions.  CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation.

Subject to the foregoing general and specific objections, CREXi is willing to

Exhibit R, Page 477

meet and confer with CoStar concerning this request.

**REQUEST FOR PRODUCTION NO. 65:**

For each month, Documents sufficient to show the number of property listings, brokers, and brokerages on Your Websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show the number of property listings, brokers, and brokerages on www.crexi.com.

**REQUEST FOR PRODUCTION NO. 66:**

All Documents relating to actual or potential entrants into the Relevant Internet CRE Services Markets in any Relevant Geographic Market.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks documents that are not relevant to any claim or defense in this case.  CREXi objects to this request as vague, ambiguous and unintelligible as to the undefined term "actual or potential entrants."  CREXi objects to this

70

request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 67:**

All Documents relating to Your assertion in Paragraph 95 of the Counterclaims that "[c]ustomers in the relevant markets characterize CoStar as a monopolist," including but not limited to all Documents relating to the following assertions in Paragraph 95 of the Counterclaims:

a.   "Customers in the relevant markets characterize CoStar as a monopolist and have . . . consistently complained about Costar's supra- competitive prices, but noted that they are forced to continue purchasing services from CoStar because of its monopoly share and anticompetitive conduct." (Paragraph 95).

b.   The "representative statements" listed in Paragraph 95 of Your Counterclaims, including:

i.   "No idea how loopnet / costar gets away with what they do as an extremely litigious attempt at a monopoly that feels more like extortion than a service every time you pay them." (Paragraph 95(i)).

ii.   "We only have so many dollars to spend and costar/loopnet eats up a large part of that. Like everyone else we would like to see a good alternative to costar but at this point I don't think we are prepared to cut the

71

cord." (Paragraph 95(ii)).

      iii.    "It's honestly pretty ridiculous no website can really compete with LoopNet and they rip everyone off.  Crexi is trying but they have a long way to go." (Paragraph 95(iii)).

      iv.    "We have ZERO marketing budget left right now and Costar/Loopnet nearly breaks us with their fees, but I obviouslyv cannot pull that back for the time being." (Paragraph 95(iv)).

      v.    "Too bad CoStar is nearly impossible to compete with…could really use some (accurate) competition in the CRE data space." (Paragraph 95(v)).

      vi.    "We already pay a fortune to Costar." (Paragraph 95(vi)).

      vii.    "CoStar is Satan." (Paragraph 95(vii)).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 67:

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost. CREXi objects to this request as unduly burdensome and not proportional to the

needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship.  This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents it intends to rely upon that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 68:**

Documents sufficient to show the name, business address, and (where applicable) employer of the broker(s), agent(s), or person(s) who made the statements alleged in Paragraph 95 of the Counterclaims; where those statements were made; to whom those statements were made; and when those statements were made.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.  CREXi objects to this

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)     Exhibit R, Page 481

1762272

request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship.  This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers.  CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents it intends to rely upon that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 69:**

All Documents regarding Your assertion that CoStar charges customers "supra-competitive prices," including but not limited to all Documents relating to the following allegations in the Counterclaims:

a.   "Customers have been forced to pay increasingly supra-competitive prices . . . ." (Paragraph 96).

b.   "[O]ne CoStar customer reported a price increase of a whopping 300% to 500% . . . ." (Paragraph 97).

c.   "CoStar then again raised its prices by another 80%, further demonstrating CoStar's ability to raise prices above those that would be charged in a competitive market." (Paragraph 99).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly

burdensome, and premature to the extent that it requests "all documents relating to" CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost. CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 70:**

Documents sufficient to show the broker(s), agent(s), person(s), or other entities who "reported a price increase of a whopping 300% to 500%" as alleged in Paragraph 97 of the Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more

1  readily available to CoStar, or available at a lower cost.  CREXi objects to this

2  request as unduly burdensome and not proportional to the needs of this case

3  because it is made for the purpose of harassing one or more third parties with whom

4  CREXi has an existing business relationship.  This request is made to advance

5  CoStar's active campaign to use subpoenas, discovery requests, and civil litigation

6  to harass CREXi's business relations and thereby interfere with CREXi's business

7  relationships, harm CREXi's reputation, and prevent CREXi from obtaining

8  beneficial information from those relations.  By way of non-limiting example,

9  CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors;

10  and it has issued broad subpoenas to CREXi's customers.  CREXi will not produce

11  information requested solely for the purpose of furthering CoStar's anticompetitive

12  and abusive litigation tactics.

13      Subject to the foregoing general and specific objections, CREXi will conduct

14  a reasonable search and produce non-privileged documents in its possession,

15  custody, or control that are responsive to this request.

16  **REQUEST FOR PRODUCTION NO. 71:**

17      All Documents concerning Your ability to obtain Property Information or

18  Property Listing Information from brokers, agents, Third-Party sources, public

19  sources, or any other sources, including but not limited to Your own efforts to

20  obtain Property Information or Property Listing Information from those sources.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

22      CREXi incorporates by reference its General Objections and Objections to

23  Definitions and Instructions. CREXi objects to this request as overbroad, unduly

24  burdensome, and seeking information that is not relevant or proportional to the

25  needs of the case as it seeks all documents relating to CREXi's "ability" to obtain

26  property information.  CREXi objects to this request as vague, ambiguous, and

27  unintelligible as to the undefined phrase "Your ability to obtain" and interprets that

28  phrase to relate to the process by which CREXi obtains information to add listings.

76

CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.

Subject to the foregoing general and specific objections, CREXi will search for and produce non-privileged centrally maintained documents in its possession, custody or control concerning the process by which CREXi obtains property information from brokers, agents, and other sources.

**REQUEST FOR PRODUCTION NO. 72:**

Documents sufficient to show, on a quarterly basis, the number of researchers You have utilized (whether as Employees or contractors or otherwise), the number of field researchers you have utilized (whether as Employees or contractors or otherwise) in every metropolitan area, the number of photographers you have utilized (whether as Employees or contractors or otherwise) in every metropolitan area, and the average annual cost per researcher (whether salary and associated costs or contracting fee) for such researchers, field researchers, and photographers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks detailed information concerning CREXi personnel over time that has limited relevance to this case. CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation. CREXi objects to this request as unduly burdensome to the extent that it is duplicative of earlier requests. CREXi has already agreed to produce an organizational chart or charts sufficient to show the employees who perform sales and marketing functions

77

within CREXi.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 73:**

All Documents concerning Your sales efforts in the Relevant Internet CRE Services, including business strategy plans, marketing plans, and Communications with brokers, agents, or other customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as undearly burdensome to the extent that it is duplicative and cumulative of other requests. CREXi objects to this request as vague, ambiguous, and unintelligible to the extent that it relies on the undefined phrases "business strategy plans" and "marketing plans." CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks "all documents concerning" CREXi's sales efforts, without limitation, much of which is highly sensitive business information that has no relevance to any claim or defense in this case.  To the extent that any responsive information is relevant, it is subsumed by earlier requests.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar regarding this request.

**REQUEST FOR PRODUCTION NO. 74:**

All Documents relating to Your assertion in Paragraph 118 of the Counterclaims that "[o]nce brokers prepare listing information for a new property, they do not want to re-create it."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly

burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents it intends to rely upon that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 75:**

All Documents concerning any instance of a broker, agent, or other person with Property Information or Property Listing Information who supplied, requested to supply, or offered to supply You or any other CoStar competitor with Property Information or Property Listing Information published on LoopLink powered websites, LoopNet, Ten-X, or CoStar Databases, including any instance in which a broker directed You "to gather listing information from the broker's public listings on LoopNet" or sent You "a link to the broker's inventory on LoopNet or the brokers' own LoopLink-hosted website," as alleged in Paragraph 118 of the Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly

burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks "all documents concerning" instances where CREXi was provided with information via LoopLink, LoopNet, Ten-X, or CoStar databases. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Databases." CREXi construes that term as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 76:**

Documents sufficient to show the name, business address, and (where applicable) employer of every broker, agent, or other person with Property Information or Property Listing Information who supplied, requested to supply, or offered to supply You or any other CoStar competitor with Property Information or Property Listing Information published on LoopLink powered websites, LoopNet, Ten-X, or CoStar databases, including the identity of any broker who directed You "to gather listing information from the broker's public listings on LoopNet" or sent You "a link to the broker's inventory on LoopNet or the brokers' own LoopLink-hosted website," as alleged in Paragraph 118 of the Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks detailed information concerning the identity of every

broker, agent or other person who provided CREXi with property information published via LoopLink, LoopNet, Ten-X, or CoStar databases, which are not all relevant to the claims and defenses in this action. CREXi further objects to this request as overly broad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case. CREXi further objects on the ground that this is request is cumulative and duplicative of earlier requests.  CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation. CREXi objects to this request to the extent that it seeks information concerning LoopLink powered websites, the identities of which are difficult or impossible to ascertain and/or are in CoStar's custody. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Databases." CREXi construes that term as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar concerning this request.

**REQUEST FOR PRODUCTION NO. 77:**

All Documents relating to Your assertion in Your Opposition to CoStar's Motion to Dismiss (Dkt. 86) that CoStar is preventing, blocking, or "chok[ing] off" Your access to "public CRE listing information," including all Documents relating to Your assertion of "input foreclosure."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to

CREXi's contention in the Counterclaim.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents it intends to rely upon that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 78:**

All Documents relating to Your assertion in the Counterclaims that CoStar imposes "exclusionary contractual terms" that "prevent customers from using competitors' products and services."  *See, e.g.*, Paragraph 108(i).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26. CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents it intends to rely upon that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents relating to your assertion in the Counterclaims and Your Opposition to CoStar's Motion to Dismiss that CoStar's terms of service constitute a *de facto* exclusive agreement, including all Documents relating to Your assertion in Paragraph 225 of the Counterclaims that "CoStar has effectively locked customers into exclusive deals with CoStar and prevented them from . . . working with CoStar's competitors."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P.

26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents it intends to rely upon that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 80:**

Documents sufficient to show the name, business address, and (where applicable) employer of every broker, agent, or customer who You contend has entered into an "exclusive" agreement or deal with CoStar or was otherwise prevented from working with CoStar's competitors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as premature. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to

84

produce to CREXi.  CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship. This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers.  CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 81:**

All Documents relating to the percentage or share of the market for brokers, agents, or other potential customers that is allegedly tied up, or the number of such brokers, agents, or other potential customers that are unavailable to CREXi, because of CoStar's allegedly *de facto* exclusive agreements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as vague, ambiguous, and unintelligible as to the undefined phrase "market for brokers, agents, or other potential customers."  CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests relates to markets that are different from the Relevant Internet CRE Services Markets.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it

85

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)        Exhibit R, Page 493
1762272

targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request on the grounds that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are publicly available, more readily available to CoStar, or available at a lower cost.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 82:**

All Documents relating to the number of property listings on Your Websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites."  CREXi construes that term as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession,

custody or control sufficient to show the number of property listings published on www.crexi.com as of October 2020.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents relating to the method by which You obtained the property listings on Your Websites (*e.g.*, whether directly from brokers, through Third Parties, or from CoStar Websites or CoStar Databases).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case to the extent that it seeks information concerning every listing on CREXi's website, rather than the business process that CREXi uses as a matter of policy. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it relies on the undefined term "method by which You obtained the property listings on Your Websites." CREXi will construe that terms to mean the process by which CREXi obtains information to add listings. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including

third party websites included within CoStar's definition of "Your Websites." CREXi construes that term as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi will search for and produce non-privileged centrally maintained documents in its possession, custody or control concerning the process by which CREXi obtains information to add listings.

**REQUEST FOR PRODUCTION NO. 84:**

All Documents concerning any instance in which a broker, agent, or other person with Property Information or Property Listing Information was prevented, discouraged, or in any way hindered from providing You or any other CoStar competitor with independently derived Property Information or Property Listing Information because of LoopLink, LoopNet, Ten-X, or CoStar Databases' terms of service or any other action taken by, or agreement entered into with, CoStar.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to instances in which persons were prevented from providing information to CREXi or unnamed third parties who are "other CoStar competitor[s]," documents relating to which are unlikely to be in CREXi's possession. Further, discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it relies on the undefined term "independently derived."  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Databases."  CREXi construes that term as stated in the foregoing

objections to definitions.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 85:**

Documents sufficient to show the name, business address, and (where applicable) employer of every broker, agent, or other person with Property Information or Property Listing Information who was prevented, discouraged, or in any way hindered from providing You or any other CoStar competitor with independently derived Property Information or Property Listing Information because of LoopLink, LoopNet, Ten-X, or CoStar Databases' terms of service or any other action taken by, or agreement entered into with, CoStar.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests documents concerning "every person" who was prevented or discouraged from working with CREXi or CREXi's competitors, the majority of documents relating to which are unlikely to be in CREXi's possession. Further, discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it relies on the undefined term "independently derived."  CREXi objects to the request as overbroad to the extent that it calls for

1762272

information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Databases." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.  CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship.  This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 86:**

All Documents relating to any instance in which CREXi was blocked from accessing any broker, agent, business, or other entity's LoopLink powered website, including but not limited to all Documents supporting Your assertion in Paragraph 144 of the Counterclaims that CoStar "routinely" blocks CREXi Employees from accessing brokers' LoopLink powered websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

CREXi incorporates by reference its General Objections and Objections to

90

Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as unduly burdensome to the extent that it is duplicative and cumulative of earlier requests.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 87:**

Documents sufficient to show the name, business address, and (where applicable) employer of every broker or agent whose LoopLink powered website(s) CREXi contends it was unable to access because of a "technological block" imposed by CoStar.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests documents concerning "every" person who was prevented from using CREXi's website.  Further, discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship.  This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business

91

relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers.  CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 88:**

All Documents relating to the "technological measures" or "technological blocks" You assert CoStar employs to prevent CREXi from accessing any broker, agent, or other Person's LoopLink powered website(s).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's assertion.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops. CREXi objects to this request as unduly burdensome to the extent that it is duplicative and cumulative of earlier requests. CREXi objects to this request to the extent that it seeks documents that are in CoStar's possession, are more readily available to CoStar, or available at a lower cost to CoStar.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 89:**

All Documents relating to Your assertions in Paragraph 142 of the

Counterclaims, including but not limited to, documents sufficient to show the name, business address, and (where applicable) employer of the broker or agent referenced in Paragraph 142 of the Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship.  This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers.  CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 90:**

All Documents relating to CoStar Employees' alleged use or access of

CREXi Websites, including but not limited to Documents sufficient to show any
CoStar Employees who have allegedly used or accessed CREXi Websites; the
accounts that those Employees allegedly used to access CREXi Websites; the
date(s) that those CoStar Employees allegedly created CREXi accounts; the date(s)
those CoStar Employees allegedly accessed CREXi Websites; and the actions those
CoStar Employees allegedly took on CREXi Websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

CREXi incorporates by reference its General Objections and Objections to
Definitions and Instructions. CREXi objects to this request as overbroad, unduly
burdensome, and premature to the extent that it requests "all" documents.
Discovery has just begun in this matter, the parties have not yet begun exchanging
documents, and CREXi's investigation is ongoing.  CREXi reserves the right to
supplement its responses and production as the case develops.  CREXi objects to
this request on the ground that it is predicated on information that is uniquely
within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi
objects to this request to the extent that it seeks documents that are more readily
available to CoStar, or available at a lower cost.  CREXi further objects to this
request as overbroad, unduly burdensome, and seeking information that is not
relevant or proportional to the needs of this case to the extent that it seeks "all"
documents, when documents "sufficient to show" are more appropriately targeted
to the claims and defenses in this case.  CREXi objects to the request as overbroad
to the extent that it calls for information concerning websites that are not relevant to
any claim or defense in this action, or not in CREXi's custody or control, including
third party websites included within CoStar's definition of "CREXi Websites."
CREXi construes that term as stated in the foregoing objections to definitions.
CREXi objects to this request on the ground that it is predicated on information that
is uniquely within CoStar's possession, which CoStar has failed to produce to
CREXi.  CREXi objects to this request to the extent that it seeks documents that are

1  more readily available to CoStar, or available at a lower cost.

2  　　　Subject to the foregoing general and specific objections, CREXi will conduct

3  a reasonable search and produce non-privileged responsive documents in its

4  possession, custody or control sufficient to show CoStar Employees' alleged use or

5  access of www.crexi.com.

6  **REQUEST FOR PRODUCTION NO. 91:**

7  　　　All Documents relating to Your assertion in Paragraph 171 of the

8  Counterclaims that CoStar "engages in a policy and practice of unilaterally

9  modifying brokers' listings and photographs."

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 91:**

11  　　　CREXi incorporates by reference its General Objections and Objections to

12  Definitions and Instructions. CREXi objects to this request as overbroad, unduly

13  burdensome, and premature to the extent that it requests "all" documents relating to

14  CREXi's contention in the Counterclaim.  Discovery has just begun in this matter,

15  the parties have not yet begun exchanging documents, and CREXi's investigation is

16  ongoing.  CREXi reserves the right to supplement its responses and production as

17  the case develops.  CREXi objects to this request as it targets documents likely to

18  contain attorney-client privileged information, attorney work product, or

19  information that is otherwise protected by any applicable privilege or protection.

20  CREXi objects to this request on the ground that it is predicated on information that

21  is uniquely within CoStar's possession, which CoStar has failed to produce to

22  CREXi.  CREXi objects to this request to the extent that it seeks documents that are

23  more readily available to CoStar, or available at a lower cost.

24  　　　Subject to the foregoing general and specific objections, CREXi will conduct

25  a reasonable search and produce non-privileged documents in its possession,

26  custody or control responsive to this request.

27  **REQUEST FOR PRODUCTION NO. 92:**

28  　　　All Documents relating to Your assertion in Paragraph 171 of the

95

Counterclaims that CoStar prohibits brokers, agents, or any other person with Property Information or Property Listing Information from sharing independently derived Property Information or Property Listing Information with You or any other CoStar competitor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests.  CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it relies on the undefined term "independently derived."  CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it misconstrues and misstates CREXi's allegations in the Counterclaim.  In particular, although this request purports to characterize CREXi's allegations in paragraph 171 of the Counterclaim, the language in this request nowhere appears in that paragraph of the Counterclaim.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost. CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession,

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)      Exhibit R, Page 504
1762272

1    custody or control responsive to this request.

2    **REQUEST FOR PRODUCTION NO. 93:**

3         All Documents relating to Your allegations in Paragraph 177 of the

4    Counterclaims, including documents sufficient to show the name, business address,

5    and (where applicable) employer of the broker or agent who allegedly made the

6    statements in Paragraph 177, when those statements were made, where they were

7    made, and to whom.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

9         CREXi incorporates by reference its General Objections and Objections to

10   Definitions and Instructions. CREXi objects to this request as overbroad, unduly

11   burdensome, and premature to the extent that it requests "all" documents relating to

12   CREXi's contention in the Counterclaim.  Discovery has just begun in this matter,

13   the parties have not yet begun exchanging documents, and CREXi's investigation is

14   ongoing. CREXi reserves the right to supplement its responses and production as

15   the case develops.  CREXi objects to this request as it targets documents likely to

16   contain attorney-client privileged information, attorney work product, or

17   information that is otherwise protected by any applicable privilege or protection.

18   CREXi objects to this request as unduly burdensome and not proportional to the

19   needs of this case because it is made for the purpose of harassing one or more third

20   parties with whom CREXi has an existing business relationship.  This request is

21   made to advance CoStar's active campaign to use subpoenas, discovery requests,

22   and civil litigation to harass CREXi's business relations and thereby interfere with

23   CREXi's business relationships, harm CREXi's reputation, and prevent CREXi

24   from obtaining beneficial information from those relations.  By way of non-limiting

25   example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's

26   contractors; and it has issued broad subpoenas to CREXi's customers.  CREXi will

27   not produce information requested solely for the purpose of furthering CoStar's

28   anticompetitive and abusive litigation tactics.

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)      Exhibit R, Page 505

1762272

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 94:**

All Documents supporting Your assertion in Paragraph 179 of the Counterclaims that "CoStar routinely adds its watermark to photographs provided to CoStar by brokers and other third parties."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 94:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi. CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 95:**

Documents sufficient to show the name, business address, and (where applicable) employer of every broker whose photograph(s) CoStar allegedly added the CoStar Watermark to; the broker provided photograph(s) that CoStar allegedly added the CoStar Watermark to; and when CoStar allegedly added the CoStar Watermark to the broker provided photograph(s).

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)      Exhibit R, Page 506
1762272

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "every" broker relevant to CREXi's allegations.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship.  This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers.  CREXi will not produce information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents relating to Your assertion in Paragraphs 180 and 181 of the Counterclaims that CoStar added its name (as opposed to the CoStar Watermark) to broker provided photographs including but not limited to the Documents sufficient to show the name, business address, and (if applicable) employer of the broker

99

referenced in Paragraphs 180 and 181 of the Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.  CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.  CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship.  This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations.  By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers.  CREXi will not produce

information requested solely for the purpose of furthering CoStar's anticompetitive and abusive litigation tactics.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show broker-provided photographs onto which CoStar added its name.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents relating to Your assertion in Paragraph 14 of the Counterclaims that CoStar "routinely seeds brokers' listings with inaccurate data," including but not limited to all Documents concerning any instance in which CoStar seeded a broker's property listing with inaccurate data, including the identity of the broker, the property listing(s) at issue, the data that was modified, and the basis for claiming that the data was or is inaccurate.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost. CREXi objects to this request on the ground that it seeks premature expert discovery, targets information

that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents relating to any instance in which a broker, agent, or other customer was unable to share with CREXi or any other competitor its own independently derived Property Information or Property Listing Information because of the broker, agent, or other customer's use of CoStar's products or services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops. CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it relies on the undefined term "independently derived." CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi. CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession,

custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents indicating, suggesting, or evidencing that brokers, agents, or other customers are confused or unsure as to the accuracy of their own Property Information or Property Listing Information, or as to the ownership of Property Information or Property Listing Information uploaded to or displayed on CoStar Websites or CoStar Databases.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, vague an unintelligible to the extent that it seeks from CREXi vague and unspecified information concerning the state of mind of third-party customers of CoStar. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases." CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi. CREXi objects to this request to the extent that it seeks documents that are not in the possession of CoStar or a third party, or are more readily available to CoStar. CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)       Exhibit R, Page 511
1762272

**REQUEST FOR PRODUCTION NO. 100:**

All Documents relating to Your assertion in Paragraph 186 of the Counterclaims that "CoStar's policy and practice of asserting intellectual property protection over brokers' own information and photographs places the burden on brokers to keep records proving that the content is, in fact, the brokers' content."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents concerning any instance of a broker, agent, or other customer with Property Information or Property Listing Information lacking access to its

104

independently derived Property Information or Property Listing Information, or failing to maintain backup copies, historical files, or discarding its Property Information or Property Listing Information, and being unable to use CREXi's products or services as a result.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 101:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as vague, ambiguous and unintelligible to the extent that it relies on the undefined term "independently derived."  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 102:**

All Documents relating to Your assertion in Paragraph 186 of the Counterclaims that CoStar's alleged "policy and practice of asserting intellectual property protection over brokers' own information" creates "confusion in the marketplace regarding the legitimate ownership of property photographs," including the specific photographs at issue.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 102:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents relating to Your assertion that CoStar has infringed on CREXi's trademark in its advertisements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 103:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim.  Discovery has just begun in this matter,

106

the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents relating to the chart in Paragraph 204 of the Counterclaims, including all Documents that display the full search result page(s) and context wherein the allegedly infringing advertisements were displayed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege

or protection.  CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case."

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show the search result page(s) and context wherein the allegedly infringing advertisements were displayed relating to the chart alleged at Paragraph 204 of the Counterclaims

**REQUEST FOR PRODUCTION NO. 105:**

All Documents relating to Your assertions in Paragraph 205 of the Counterclaims that "Google has informed CoStar that its practice of infringing CREXi's trademark to advertise CoStar's services violates Google's policies, and has removed CoStar's infringing advertisements," and that "[d]espite Google's actions to remove certain infringing advertisements, CoStar continues to advertise its services unlawfully using the CREXi mark."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim.  Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege

108

or protection.  CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost. CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi. CREXi objects to this request to the extent that it seeks documents that are in CoStar's possession are in the possession of third parties, or are equally or more readily available to CoStar.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show communications between CREXi and Google relating to CREXi's allegations at Paragraph 205 of the Counterclaims

**REQUEST FOR PRODUCTION NO. 106:**

All Documents relating to Your use of the term "CoStar," "LoopNet," "LoopLink," "Ten-X," or any other name associated with CoStar, in the copy of Your advertisements, including in the header or text of any advertisement purchased from Google.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 106:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it is not relevant to any claim or defense in this action.  CREXi

109

has asserted a trademark infringement claim against CoStar, but CoStar has not asserted any trademark infringement claim against CREXi. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents relating to Your efforts to bid on the terms "CoStar," "LoopNet," "LoopLink," "Ten-X," or any other name associated with CoStar or any phrases containing terms associated with CoStar, in any auction for advertisements on an internet search engine, including in any Google Ads auction.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 107:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it is not relevant to any claim or defense in this action.  CREXi has asserted a trademark infringement claim against CoStar, but CoStar has not asserted any trademark infringement claim against CREXi. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

1762272

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 108:**

Google Ads Reports for any advertising campaigns using "CoStar," "LoopNet," "LoopLink," "Ten-X," or any other name associated with CoStar, reflecting, at least, (1) date; (2) landing page; (3) impressions; (4) currency; (5) cost-per-click; and (6) total cost.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it is not relevant to any claim or defense in this action.  CREXi has asserted a trademark infringement claim against CoStar, but CoStar has not asserted any trademark infringement claim against CREXi.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents relating to Your assertion that CoStar made any false or misleading statement in advertising, including the allegations in Paragraphs 325-335 of the Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its

111

responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 110:**

All Documents relating to any customer confusion allegedly caused from any false or misleading statement made by CoStar in advertising alleged in the Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing.  CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)      Exhibit R, Page 520

1762272

documents that are more readily available to CoStar, or available at a lower cost. CREXi objects to this request on the ground that it seeks information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 111:**

All Documents relating to any damages or injury You contend You suffered as a result of any consumer confusion allegedly caused from any false or misleading statement made by CoStar in advertising alleged in the Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 111:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi.  CREXi objects to this request to the extent that it seeks

documents that are more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 112:**

Documents sufficient to show the total costs incurred by CREXi from the operation of each of its Relevant Internet CRE Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information concerning all costs incurred by essentially CREXi's entire business.  CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 113:**

Documents sufficient to show, on a quarterly basis, the costs incurred by CREXi with respect to its operations in every metropolitan area, including a breakdown of those costs in each metropolitan area by accounting category (such as, for example, labor costs).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 113:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the

needs of the case as it seeks information concerning all costs incurred by CREXi's entire business, without limitation. This includes business units and costs that are not relevant to any claim or defense in this action.  CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation. CREXi objects to this request to the extent that it seeks information that is not maintained in the ordinary course of business and would require CREXi to prepare a compilation.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 114:**

For the Relevant Internet CRE Services You provide, Documents sufficient to show every price You have charged, including services which you offer for free (*i.e.*, at a price of $0).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 114:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as vague and ambiguous as to the undefined phrase "price You have charged."

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents relating to Your pricing strategies, pricing projections, or plans related to future pricing considerations or associated timing for Your Relevant Internet CRE Services.

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)       Exhibit R, Page 523

1762272

**RESPONSE TO REQUEST FOR PRODUCTION NO. 115:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action.  While CREXi has asserted an antitrust claim against CoStar, there is no antitrust claim against CREXi. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 116:**

Documents sufficient to show every unique version of Your listing agreements with brokers, agents, or other customers to list properties on Your Websites, and the dates during which each such agreement was used.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 116:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites

116

included within CoStar's definition of "Your Websites." CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request to the extent that it seeks information that is not maintained by CREXi in the ordinary course of business and would require CREXi to prepare a compilation. CREXi objects to this request to the extent that any information sought thereby is subject to any confidentiality or privacy obligation. To the extent that CREXi produces information responsive to this request, it will be subject to an appropriate Protective Order entered in this case. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show each standard template version of its listing agreement.

**REQUEST FOR PRODUCTION NO. 117:**

Documents sufficient to show every unique contract or written agreement You entered into with any customer concerning the provision of the Relevant Internet CRE Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 117:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action. CREXi objects to this request to the extent that any information sought thereby is subject to any confidentiality or privacy obligation. To the extent that CREXi produces information responsive to this request, it will be subject to an appropriate Protective Order entered in this case.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce each standard template version of agreements it enters into with customers for the provision of the Relevant Internet CRE Services in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents relating to local, regional, or national differences in the prices You charge for the Relevant Internet CRE Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 118:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action. CREXi further objects to this request as vague and ambiguous to the extent that it relies on the undefined phrase "local, regional, or national differences in the prices You charge."  CREXi objects to this request as unduly burdensome to the extent that it is duplicative of earlier requests. CREXi objects to this request as seeking highly sensitive and confidential business materials and trade secrets. CREXi will produce information responsive to this request only subject to an appropriate Protective Order entered in this case.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 119:**

All Documents relating to broker, agent, or other customer complaints regarding Your Relevant Internet CRE Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 119:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly

burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents concerning a topic. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 120:**

All Documents relating to customers' statements regarding the relative advantages between the Relevant Internet CRE Services CoStar provides compared to the Relevant Internet CRE Services CREXi provides.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 120:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action. While CREXi has asserted an antitrust claim against CoStar, there is no antitrust claim against CREXi.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents relating to business, marketing or sales plans or projections that refer to CoStar, any CoStar Database, or CoStar Website (including LoopNet, LoopLink, or Ten-X).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 121:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action.  CREXi further objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of this case to the extent that it seeks "all" documents, when documents "sufficient to show" are more appropriately targeted to the claims and defenses in this case. CREXi objects to the request as overbroad to the extent that it calls for information concerning websites and databases that are not relevant to any claim or defense in this action, as provided by CoStar's definition of "CoStar Websites" and "CoStar Databases."  CREXi construes those terms as stated in the foregoing objections to definitions. CREXi objects to this request as seeking highly sensitive and confidential business materials and trade secrets. CREXi will only produce information responsive to this request subject to an appropriate Protective Order entered in this case.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control sufficient to show CREXi's business, marketing or sales plans or projections that refer to CoStar, LoopNet, or Ten-X.

**REQUEST FOR PRODUCTION NO. 122:**

All Documents relating to strategic plans, corporate intelligence reports, market or sales forecasts, sales estimates, or sales data for the Relevant Internet CRE Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 122:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly

burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action. While CREXi has asserted an antitrust claim against CoStar, there is no antitrust claim against CREXi. CREXi objects to this request to the extent that it is duplicative of other requests. Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 123:**

All Documents relating to competitive intelligence regarding the Relevant Internet CRE Services Markets or any submarket thereof, including any market definition, battle cards, SWOT analyses, customer surveys, market surveys, market research, competitive market shares, competitors' relative strengths and weaknesses, competitive market dynamics, trends in costs or pricing, or forecasts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 123:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks information that is not relevant to any claim or defense in this action.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 124:**

Documents sufficient to show, at a line-item level, Your quarterly and annual revenues (including all sources of revenue), costs (including research and development costs, product development costs, investment costs, employee costs, material costs, manufacturing costs, sales and marketing costs) and profits

(including gross profits, net profits and operating profits) for each business line that falls within the Relevant Internet CRE Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 124:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as unduly burdensome to the extent that it is duplicative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce CREXi's annual audited financial statements.

**REQUEST FOR PRODUCTION NO. 125:**

All Documents relating to the loss of business to companies that provide the Relevant Internet CRE Services, including CoStar, including the reasons why business was lost.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 125:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as unduly burdensome to the extent that it is duplicative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case.  CREXi objects to this request as vague and ambiguous to the extent that it relies on the undefined term "companies that provide the Relevant Internet CRE Services."

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control relating to the loss of business relating to the Relevant Internet CRE Services to CoStar, including the reasons why the business was lost.

**REQUEST FOR PRODUCTION NO. 126:**

All Communications with any Third Party relating to this Action or the facts

122

alleged in the Amended Complaint or the Counterclaims, including any Documents that you receive(d) from any Third Party in connection with this Action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 126:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as unduly burdensome to the extent that it is duplicative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case. CREXi objects to this request to the extent that it targets documents likely to be protected by any applicable privilege or protection, including the common interest privilege, attorney-client privilege or work product protection.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 127:**

All Documents relating to Your assertion that You have suffered any harm as a result of the conduct alleged against CoStar in Your Counterclaims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 127:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney

123

work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 128:**

For any customers that You contend stopped working with CREXi, or reduced their business with CREXi, as a result of the conduct you allege in the Counterclaims, all Documents relating to the customer's decision to reduce or eliminate business with CREXi, including any discussed or stated reasons for such decision.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 128:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request to the extent that it is duplicative and cumulative of earlier requests.  CREXi objects to this request as overbroad, unduly burdensome, and premature to the extent that it requests "all" documents relating to CREXi's contention in the Counterclaim. Discovery has just begun in this matter, the parties have not yet begun exchanging documents, and CREXi's investigation is ongoing. CREXi reserves the right to supplement its responses and production as the case develops.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.  CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under

Fed. R. Civ. P. 26.  CREXi objects to this request on the ground that it is predicated on information that is uniquely within CoStar's possession, which CoStar has failed to produce to CREXi. CREXi objects to this request to the extent that it seeks documents that are in the possession of third parties or CoStar.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 129:**

All Documents relating to any barriers or challenges preventing or limiting CREXi's ability to expand the number of property listings on CREXi Websites or the number of brokers, agents, or other customers using CREXi Websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 129:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as vague and ambiguous to the extent that it relies on the undefined term "barriers or challenges." CREXi construes this request to seek documents relating to the manner in which CoStar's anticompetitive conduct has prevented or limited CREXi's ability to grow its business.  CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case. CREXi objects to the request as overly broad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "CREXi Websites."  CREXi construes that term as stated in the foregoing objections to definitions.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 130:**

All Documents relating to public or internal statements You have made regarding the number of property listings on Your Websites or the number of brokers, agents, or other customers using Your Websites, including Documents sufficient to show any such statements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 130:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case as it seeks "all" documents relating to public or internal statements that are not relevant to any claim or defense in this action.  CREXi objects to the request as overbroad to the extent that it calls for information concerning websites that are not relevant to any claim or defense in this action, or not in CREXi's custody or control, including third party websites included within CoStar's definition of "Your Websites."  CREXi construes that term as stated in the foregoing objections to definitions. CREXi objects to this request as unduly burdensome to the extent that it is duplicative of earlier requests.

In light of the foregoing general and specific objections, CREXi will not specifically produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 131:**

All insurance agreements under which an insurance business or any other Person may be liable to satisfy all or part of a possible judgment in this Action or to advance, indemnify, or reimburse any payments made to satisfy the judgment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 131:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as duplicative, as CREXi already produced all applicable insurance agreements on September 16, 2021.

Subject to the foregoing general and specific objections, CREXi will not produce additional documents that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 132:**

All Documents identified in any response to interrogatories served upon you in this Action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 132:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

**REQUEST FOR PRODUCTION NO. 133:**

All Documents that You may use to support Your defense or Your Counterclaims in this Action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 133:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case to the extent that it seeks documents that CREXi "may" use as opposed to those that CREXi will use. CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.  CREXi objects to this request to the extent that it seeks documents that are more readily available to CoStar, or available at a lower cost.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control that CREXi will use to support its defense or its Counterclaims

127

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)      Exhibit R, Page 535

1762272

in this Action.

**REQUEST FOR PRODUCTION NO. 134:**

All Documents relating to Your investigation that You undertook prior to the filing of the Counterclaims in this Action, including all Communications with any Person or Third Party, including any customer, current or former CoStar Employee, broker, agent, or other customer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 134:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case to the extent that it is duplicative of other requests and to the extent that it seeks "all" documents, rather than those targeted at the claims and defenses in this case. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26. CREXi objects to this request as unduly burdensome and not proportional to the needs of this case because it is made for the purpose of harassing one or more third parties with whom CREXi has an existing business relationship. This request is made to advance CoStar's active campaign to use subpoenas, discovery requests, and civil litigation to harass CREXi's business relations and thereby interfere with CREXi's business relationships, harm CREXi's reputation, and prevent CREXi from obtaining beneficial information from those relations. By way of non-limiting example, CoStar has sued one of CREXi's investors; it has sued one of CREXi's contractors; and it has issued broad subpoenas to CREXi's customers. CREXi will not produce information requested solely for the purpose of furthering CoStar's

anticompetitive and abusive litigation tactics.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 135:**

All Documents You identified, reviewed, or relied upon in preparing the Counterclaims including any statements, declarations, interviews, or other information provided by Third Parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 135:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as overbroad, unduly burdensome, and seeking information that is not relevant or proportional to the needs of the case to the extent that it is duplicative of other requests and to the extent that it seeks "all" documents, rather than those targeted at the claims and defenses in this case.  CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection. CREXi objects to this request on the ground that it seeks premature expert discovery, targets information that is not discoverable under the parties' Stipulation Concerning Expert Discovery or is otherwise not discoverable under Fed. R. Civ. P. 26.

Subject to the foregoing general and specific objections, CREXi is willing to meet and confer with CoStar to understand the relevance of this request and determine whether it can be amended to permit CREXi to produce responsive documents.

**REQUEST FOR PRODUCTION NO. 136:**

All Documents referenced in or relied upon in Your initial disclosures.

RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)      Exhibit R, Page 537

**RESPONSE TO REQUEST FOR PRODUCTION NO. 136:**

CREXi incorporates by reference its General Objections and Objections to Definitions and Instructions. CREXi objects to this request as it targets documents likely to contain attorney-client privileged information, attorney work product, or information that is otherwise protected by any applicable privilege or protection.

Subject to the foregoing general and specific objections, CREXi will conduct a reasonable search and produce non-privileged documents in its possession, custody or control responsive to this request.

Dated: November 23, 2021                    KEKER, VAN NEST & PETERS LLP


                                            By: /s/ Warren A. Braunig
                                            ELLIOT R. PETERS
                                            WARREN A. BRAUNIG
                                            ELIZABETH K. MCCLOSKEY
                                            NICHOLAS S. GOLDBERG
                                            CONNIE P. SUNG
                                            ANN NIEHAUS
                                            CHRISTINE M. ZALESKI

                                            Attorneys for Defendant and Counterclaimant
                                            COMMERCIAL REAL ESTATE EXCHANGE, INC.

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made.  I am over the age of eighteen years and not a party to the within action. My business address is Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On November 23, 2021, I served the following document(s):

**CREXI'S OBJECTIONS AND RESPONSES TO COSTAR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

☑  by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format.  The transmission was reported as complete and without error.

| | |
|---|---|
| Nicholas J. Boyle | Elyse M. Greenwald |
| Sarah A. Tomkowiak | Latham & Watkins LLP |
| Lauren M. McGuire | 10250 Constellation Blvd. |
| Walter Allen Perry | Suite 1100 |
| Latham & Watkins LLP | Los Angeles, CA 90067 |
| 555 Eleventh Street, NW | Tel.:  424-653-5500 |
| Suite 1000 | Fax:  424-653-5501 |
| Washington, D.C. 20004-1304 | elyse.greenwald@lw.com |
| Tel.:  202-637-2200 | |
| Fax:  202-637-2201 | |
| nicholas.boyle@lw.com | |
| sarah.tomkowiak@lw.com | |
| lauren.mcguire@lw.com | |
| allen.perry@lw.com | |

Executed on November 23, 2021, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Alisa Thompson

131

# EXHIBIT S

| | |
|---|---|
| **From:** | Elizabeth K. McCloskey <emccloskey@keker.com> |
| **Sent:** | Thursday, December 2, 2021 4:24 PM |
| **To:** | Tomkowiak, Sarah (DC); Greenwald, Elyse (CC); Boyle, Nicholas (DC); McGuire, Lauren (DC); Perry, Allen (DC) |
| **Cc:** | crexstar@keker.com |
| **Subject:** | RE: Costar Group, Inc. et al. v. Commercial Real Estate Exchange, Inc.; Case No. 2:20-cv-08819 CBM (ASx) |

Sarah, in advance of today's meet and confer, here are answers to the questions you posed.  We look forward to discussing this issue with you further at 2pm PST.

1    We are not taking the position that we have a right to block CoStar's outside counsel from having access to the documents produced by Arcgate.  Rather, we asked to see those documents, so that we can assess what information is included and determine whether any confidentiality designations must apply.

2    No.  CREXi is taking the position that it has confidentiality interests in its trade secrets, customer and pricing lists, business strategy and planning documents, and other valuable research, development, commercial, financial, technical, and/or proprietary information.  We expect that CoStar would take the same position.

3    With respect to joint defense/common interest, we are not presently making such a claim with respect to the documents included in Arcgate's production.  We cannot make such a claim, because, at this time, we don't know what documents are included in Arcgate's production.  We have not entered into a written joint defense agreement with Arcgate.

4    With respect to attorney-client privilege, we are not presently making such a claim with respect to the documents included in Arcgate's production.  We cannot make such a claim, because, at this time, we don't know what documents are included in Arcgate's production.

5    CoStar has Arcgate's production, and can readily provide it to CREXi.  That is clear.  Arcgate is intimated by CoStar, due to its litigious history and associated threats, and has not agreed to provide the production to CREXi.

6    CoStar served its first set of Requests for Production on October 8, 2021, and we responded just last week, on November 23, 2021.  We intend to produce documents responsive to requests regarding Arcgate during the course of this litigation.

Thanks,
Elizabeth

**From:** sarah.tomkowiak@lw.com &lt;sarah.tomkowiak@lw.com&gt;
**Sent:** Thursday, December 2, 2021 12:43 PM
**To:** Elizabeth K. McCloskey &lt;EMCCloskey@keker.com&gt;; elyse.greenwald@lw.com; nicholas.boyle@lw.com; lauren.mcguire@lw.com; allen.perry@lw.com
**Cc:** CREXSTAR &lt;CREXSTAR@keker.com&gt;
**Subject:** RE: Costar Group, Inc. et al. v. Commercial Real Estate Exchange, Inc.; Case No. 2:20-cv-08819 CBM (ASx)

[EXTERNAL]

Counsel:

We do not understand the basis for your belief that you do not have these documents.  CREXi, of course, has ready access to the documents it sent to, and received from, Arcgate, and its communications with Arcgate.

In any event, we are happy to consider your request.  To respond we need answers to the questions posed in our email of Tuesday.  We would be happy to meet and confer when we have those answers.  Your response by email would be our preference not least because we have asked for authority on certain points.  And many of our questions should be easily answerable.  For example, does CREXi have a joint defense or common interest agreement with Arcgate or not?

If for some reason you need more time to answer the questions, we are happy to hear from you next week.  Once we have the answers we will be in a position to respond.  Without them, we do not see how we can have a meaningful meet &amp; confer.

Best,
Sarah


**From:** Elizabeth K. McCloskey &lt;emccloskey@keker.com&gt;
**Sent:** Thursday, December 2, 2021 12:55 AM
**To:** Greenwald, Elyse (CC) &lt;Elyse.Greenwald@lw.com&gt;; Boyle, Nicholas (DC) &lt;Nicholas.Boyle@lw.com&gt;; Tomkowiak, Sarah (DC) &lt;Sarah.Tomkowiak@lw.com&gt;; McGuire, Lauren (DC) &lt;lauren.mcguire@lw.com&gt;; Perry, Allen (DC) &lt;Allen.Perry@lw.com&gt;
**Cc:** crexstar@keker.com
**Subject:** RE: Costar Group, Inc. et al. v. Commercial Real Estate Exchange, Inc.; Case No. 2:20-cv-08819 CBM (ASx)


Counsel,

CoStar is now in possession of documents from Arcgate which may contain CREXi confidential information.  We are not certain, because we do not have those documents, and we do not expect Arcgate to give them to us.

CoStar has Arcgate's production, and it will ultimately have to turn that production over to CREXi in litigation.  We request that you do so forthwith so that we may protect CREXi's rights in the documents, and we have previously made demands concerning how you must maintain those documents to protect CREXi's legitimate interests, until we have had an opportunity to review the production.

If you do not agree to provide Arcgate's production, and to maintain the production as Outside Counsel Only, then we will plan to confer regarding this issue on tomorrow afternoon's scheduled call.

Thank you,
Elizabeth

**From:** elyse.greenwald@lw.com &lt;elyse.greenwald@lw.com&gt;
**Sent:** Tuesday, November 30, 2021 8:19 PM
**To:** Elizabeth K. McCloskey &lt;EMcCloskey@keker.com&gt;; nicholas.boyle@lw.com; sarah.tomkowiak@lw.com; lauren.mcguire@lw.com; allen.perry@lw.com
**Cc:** CREXSTAR &lt;CREXSTAR@keker.com&gt;
**Subject:** RE: Costar Group, Inc. et al. v. Commercial Real Estate Exchange, Inc.; Case No. 2:20-cv-08819 CBM (ASx)

[EXTERNAL]

Counsel:

Exhibit S, Page 541

As you will know, given your email and CREXi's prior repeated references to the lawsuit against Arcgate, after hearing from Arcgate, Justice Mehta of the Rajasthan High Court issued an order directing Arcgate to hand over to CoStar, within 5 days of the order, documents relating to Arcgate's work for CREXi dated through October 31, 2020.

We will reach out to our counsel in India regarding the status of that production. In the meantime, we would like to understand the basis for CREXi's positions and requests.

1   Is CREXi taking the position that it has a right to block entirely CoStar's access to, or limit CoStar's non-lawyer personnel's access to, some or all of the documents that are subject to Justice Mehta's order? If so, please explain those alleged rights and their basis, and—most importantly—why CREXi believes that they trump the court order.

2   Is CREXi taking the position that it has a confidentiality interest with regards to the means by which it copied content from, and used as a resource, CoStar websites, and the content copied from or verified on those sites? If so, please advise, and please let us know if you have any authority for that proposition.

3   As to privilege, even assuming it could be raised at this juncture and in these circumstances, could you explain the basis for your claim that communications with Arcgate prior to October 31, 2020 may be encompassed by a joint defense/common interest privilege? We are not aware of any such basis. Please advise whether CREXi, in fact, shared attorney-client privileged materials with Arcgate and/or its counsel in that period, whether CREXi and Arcgate were represented by separate legal counsel at the time such materials were shared, whether such materials were shared pursuant to an oral or written joint defense agreement (and if so, when CREXi and Arcgate entered into any such agreement), and whether such communications with Arcgate were made in furtherance of a purported defense effort rather than in the ordinary course of CREXi's and Arcgate's business relationship.

4   Separate from common interest, you reference the attorney-client privilege. Please explain the basis for CREXi's position that some communications or documents shared with Arcgate may be protected by the privilege outside the common interest doctrine. If that is not CREXi's position, please advise.

5   Given that Arcgate is CREXi's contractor with whom it has a long standing and close relationship, and given that we are making inquiries regarding the status of the production, it would be more efficient, and would remove the unnecessary burden on CoStar, for CREXi to obtain a copy of the production from Arcgate.

6   Lastly, as we work through these issues with you, in order that CoStar is not prejudiced and as a showing of good faith, please confirm that CREXi will produce forthwith a copy of the Arcgate-related documents we have sought from CREXi in discovery. We would appreciate that production by December 7.

Thank you,
Elyse

**Elyse M. Greenwald**

**LATHAM &amp; WATKINS** LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Direct Dial: &#43;1.424.653.5695
Email: elyse.greenwald@lw.com
https://www.lw.com

**From:** Elizabeth K. McCloskey &lt;emccloskey@keker.com&gt;
**Sent:** Monday, November 29, 2021 3:14 PM

**To:** Boyle, Nicholas (DC) &lt;Nicholas.Boyle@lw.com&gt;; Tomkowiak, Sarah (DC) &lt;Sarah.Tomkowiak@lw.com&gt;; McGuire, Lauren (DC) &lt;lauren.mcguire@lw.com&gt;; Perry, Allen (DC) &lt;Allen.Perry@lw.com&gt;; Greenwald, Elyse (CC) &lt;Elyse.Greenwald@lw.com&gt;
**Cc:** crexstar@keker.com
**Subject:** Costar Group, Inc. et al. v. Commercial Real Estate Exchange, Inc.; Case No. 2:20-cv-08819 CBM (ASx)

Counsel,

We understand that, in connection with litigation instituted by CoStar in India, one of CREXi's vendors, Arcgate, has voluntarily produced to CoStar certain documents concerning Arcgate's relationship with CREXi. As you may be aware, CREXi had written and oral confidentiality agreements with Arcgate. We have not yet been furnished with a copy of that production, but we are concerned that it may include documents and communications subject to those confidentiality agreements, or subject to attorney-client or common interest privilege.

As an initial matter, we request that CoStar immediately produce to CREXi a copy of Arcgate's full production.

We further request that CoStar treat the documents included in Arcgate's production as Outside Counsel Only, until CREXi can review the production and assign appropriate confidentiality designations. If CoStar will not agree to do so, we intend to move for a protective order, requesting that the documents be quarantined and/or treated as Outside Counsel Only, until CREXi has had an opportunity to review the production.

We would appreciate a response to this email by tomorrow, November 30.

Thank you,
Elizabeth

---

**Elizabeth K. McCloskey**
Keker, Van Nest &amp; Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 676 2269 direct | 415 391 5400 main
emccloskey@keker.com | vcard | keker.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham &amp; Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

# EXHIBIT T



Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

**Warren Braunig**
(415) 773-6642
wbraunig@keker.com

February 17, 2022

**VIA ELECTRONIC MAIL**

Nicholas J. Boyle                                      Jessica Stebbins Bina
Sarah A. Tomkowiak                              Elyse Greenwald
Latham & Watkins LLP                         Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000   10250 Constellation Blvd., Suite 1100
Washington, DC 20004-1304                Los Angeles, CA 90067
nicholas.boyle@lw.com                         jessica.stebbinsbina@lw.com
sarah.tomkowiak@lw.com                    elyse.greenwald@lw.com

Belinda S. Lee
Latham & Watkins LLP
505 Montgomery St., Ste. 2000
San Francisco, CA 94111
belinda.lee@lw.com

Re:     *CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc.*,
         No. 2:20-cv-8819 (C.D. Cal.)

Dear Counsel:

It has become apparent that CoStar is engaged in unethical and unlawful interference with at least one potential fact witness in the present litigation.  As reflected in CoStar's misleadingly styled "Notice of Judgment in a Related Case," Dkt. Nos. 100, 100-1, CoStar has improperly compensated Arcgate, a third-party independent contractor previously retained by CREXi, in exchange for Arcgate's testimony.  By all appearances, CoStar has also secured Arcgate's commitment to refrain from cooperating in the present litigation, except to the extent Arcgate provides further testimony or evidence for *CoStar's* use.  Having obtained these commitments — which violate the rules of professional conduct, longstanding common-law principles, and perhaps even the federal bribery statute — CoStar is now seeking to profit from its actions by contriving reasons to place its paid-for testimony before the Court.

It is universally understood that, although fact witnesses may be compensated for the time or costs reasonably expended in connection with testifying, they may not be compensated simply for agreeing to testify, or for the testimony itself.  Compensating a witness for testimony is a violation of bedrock principles meant to secure the fairness of judicial proceedings.  *Hamilton v.*

1823336

Exhibit T, Page 544

February 17, 2022
Page 2

*General Motors Corp.*, 490 F.2d 223, 228 (7th Cir. 1973) (agreements to pay fact witnesses "lean[] toward the procurement of perjury; toward the raising up of a class of witnesses who, for a sufficient consideration, will give testimony that shall win or lose the lawsuit[;] toward the perversion of justice; and toward corruption in our courts" (citation omitted)).  As such, it is also a violation of the California Rules of Professional Conduct:

> A lawyer shall not . . . directly or indirectly pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the case.

CRPC 3.4.  Federal law makes criminal such compensation:

> Whoever . . . directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath . . . given or to be given by such person as a witness upon a trial, hearing, or other proceeding . . . , or for or because of such person's absence therefrom[,] shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2).  Impeding a witness's participation in litigation is equally unlawful, *Williamson v. Superior Court*, 21 Cal. 3d 829, 836-38 (1978); unethical, CRPC 3.4(a); and potentially criminal, 18 U.S.C. § 201(c)(2).

CoStar's own filings confirm that it has violated these foundational legal and ethical principles. In March 2021, CoStar filed an action against Arcgate in Indian court, in which CoStar claimed 9,000,000 INR in damages, sought to seize all of Arcgate's servers, and pursued criminal sanctions.  In November 2021, CoStar settled this litigation, promising to withdraw its demands in exchange for the "Consent Terms" it has now gratuitously filed in the present case as Dkt. No. 100-1.

CoStar's "Consent Terms" are troubling to say the least.  In consideration for releasing Arcgate from the considerable monetary and nonmonetary threats against it, CoStar obtained a declaration, no doubt written by CoStar's counsel and tailor-made for use in U.S. federal court. That declaration consists exclusively of slanted and misleading testimony impugning CREXi — a nonparty to the Indian litigation.  Dkt. No. 100-1 at 13, 21-33.  In addition, CoStar obtained Arcgate's promise to answer further questions or requests for information *from CoStar only* — along with a promise *not* to otherwise assist CREXi in litigation on related issues.  Dkt. No. 100-1 at 13-16.  In other words, CoStar secured a one-way cooperation agreement, allowing CoStar to extract further misleading testimony from Arcgate while barring Arcgate from cooperating with CREXi.  CoStar also obtained a purported right to enforce these improper, unethical, and illegal terms through injunctive relief in an Indian court.  Dkt. 100-1 at 17.  This arrangement is already playing out exactly as CoStar intended, with Arcgate refusing to cooperate with CREXi or even provide CREXi with a copy of the documents it produced to CoStar.

February 17, 2022
Page 3

CoStar's agreement with Arcgate and its procurement of the Arcgate declaration are flagrantly inappropriate. Whatever the underlying merits of the Indian causes of action, CoStar's blanket waiver and release is a form of substantial compensation. *See, e.g.*, *State of N.Y. v. Solvent Chem. Co.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996). In return, CoStar has not only obtained a promise to provide fact testimony; it has obtained the testimony itself, drafted specifically and intentionally for improper use in the present litigation. *Patel v. 7-Eleven, Inc.*, 2015 WL 9701133, at *5, 7 (C.D. Cal. Apr. 14, 2015) (paying a fact witness for a declaration filed on the docket justified disqualification of counsel) (Gutierrez, J.). As in Patel, this arrangement was "quid pro quo payment for testimony." *Id.* at *5. CoStar further used the promise of dismissal to secure a one-way commitment from Arcgate to assist CoStar (but not others) in related litigation like this one.

Indeed, CoStar has *already* used its paid-for testimony to prejudice CREXi in the present case. Although the Indian litigation is not "related" within the meaning of the Local Rules and was never previously disclosed to the Court, CoStar filed the full text of the Arcgate settlement on the public docket in this litigation, as a purported "judgment" in a "related case." Dkt. No. 100. CoStar also attached the testimony it obtained, which serves no purpose but to sandbag CREXi with disparaging and misleading testimony that CREXi was not able to cross-examine. Tellingly, CoStar also failed to provide CREXi with any notice before making its unauthorized filing, no doubt anticipating that CREXi would rightfully have objected to it. Magistrate Judge Sagar has since acknowledged reviewing CoStar's paid-for testimony in connection with an unrelated discovery dispute — just the return-on-investment CoStar hoped for.

Finally, although CoStar's arrangement would be unethical and unlawful even if the paid-for testimony were accurate, it is particularly egregious that CoStar has obtained a declaration containing both false and misleading allegations against CREXi. *U.S. v. Blaszak*, 349 F.3d 881, 887 (6th Cir. 2003) (federal bribery statute "clearly prohibits demanding or accepting anything of value in exchange for testimony," including "non-expert truthful testimony"); *Patel*, 2015 WL 9701133, at *5 ("[P]aying or offering to pay money or other rewards to witnesses in return for their testimony, be it truthful or not, . . . violates the integrity of the justice system and undermines the proper administration of justice." (citation omitted)). In misusing an administrative filing to introduce highly misleading (if not outright false) testimony, CoStar has denied CREXi an opportunity to reply consistent with the normal rules of procedure. And in limiting Arcgate's cooperation in discovery or further proceedings, CoStar has impeded CREXi's ability to complete and correct the record, as well as the factfinder's ability to do its job.

Given that the terms of CoStar's arrangement with Arcgate only came to light after CoStar improperly filed its purported "judgment" on the docket, we are deeply concerned that the full scope and severity of CoStar's wrongdoing is not yet known. We therefore demand that CoStar, and its agents, preserve all documents related to CoStar's lawsuit against, and arrangement with, Arcgate. We further demand that CoStar provide, **by no later than February 24**, the following information:

Exhibit T, Page 546

February 17, 2022
Page 4

- The identity of all individuals, including but not limited to counsel, involved in the solicitation, negotiation, drafting, or execution of the documents attached as Exhibit A to CoStar's Notice of Judgment in a Related Case;

- All drafts of the documents attached as Exhibit A to CoStar's Notice of Judgment in a Related Case, including but not limited to drafts created, edited, reviewed, sent, or received by counsel;

- All documents and communications pertaining to the documents attached as Exhibit A to CoStar's Notice of Judgment in Related Case, including but not limited to documents reflecting the negotiation of the Consent Decree, any threats to pursue further action (including damages or criminal contempt sanctions) against Arcgate or the nature of any anticipated future cooperation from Arcgate, and including documents and communications drafted, edited, reviewed, sent, or received by counsel; and

- All documents and communications comprising or including complaints, requests, threats, or demands against any other third party that is related to CREXi or to this litigation, including but not limited to any such documents and communications drafted, edited, reviewed, sent, or received by counsel.

At a minimum, the prejudice CoStar has inflicted on the current proceedings must be fully remedied and appropriately punished by the Court.  The foregoing information is essential to this process.  We look forward to your prompt response.

In the meantime, CREXi demands that CoStar cease and desist from any further improper, unethical, and illegal behavior with respect to Arcgate or any other potential witness in this matter.  CREXi expressly reserves all rights and remedies, including the right to seek monetary sanctions, evidentiary sanctions, revocation of the *pro hac vice* status of non-California lawyers involved in these ethical violations, and disqualification of counsel.  *Patel*, 2015 WL 9701133, at *7-8.

Very truly yours,

KEKER, VAN NEST & PETERS LLP

Warren Braunig

Exhibit T, Page 547

# EXHIBIT U

1    KEKER, VAN NEST & PETERS LLP
     ELLIOT R. PETERS #158708
2    epeters@keker.com
     WARREN A. BRAUNIG #243884
3    wbraunig@keker.com
     ELIZABETH K. MCCLOSKEY #268184
4    emccloskey@keker.com
     NICHOLAS S. GOLDBERG #273614
5    ngoldberg@keker.com
     633 Battery Street
6    San Francisco, CA 94111-1809
     Telephone:  415 391 5400
7    Facsimile:   415 397 7188

8    Attorneys for Defendant and Counterclaimant
     COMMERCIAL REAL ESTATE EXCHANGE, INC.
9
                    UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11
                        WESTERN DIVISION
12

| 13 | COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC., | Case No. 2:20-cv-08819 CBM (ASx) |
| 14 | | **COMMERCIAL REAL ESTATE EXCHANGE, INC.'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| 15 | Plaintiffs, | |
| 16 | v. | Ctrm:        8B, 8th Floor |
| 17 | COMMERCIAL REAL ESTATE EXCHANGE, INC., | Judge:       Hon. Consuelo B. Marshall |
| 18 | Defendant. | Date Filed   September 25, 2020 |
| 19 | COMMERCIAL REAL ESTATE EXCHANGE, INC., | Trial Date:  None set |
| 20 | | |
| 21 | Counterclaimant, | |
| 22 | v. | |
| 23 | COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC., | |
| 24 | Counterdefendants | |
| 25 | | |

26

27

28

COMMERCIAL REAL ESTATE EXCHANGE, INC.'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)
1817932

Exhibit U, Page 548

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Commercial Real Estate Exchange, Inc. demands that Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc., respond and produce the following documents, electronically stored information ("ESI"), and tangible things within thirty (30) days of service of these requests.  Documents should be produced at the law offices of Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, California 94111 attn: Elliot Peters, and in accordance with the definitions and instructions set forth below.  CoStar Group, Inc. and CoStar Realty Information, Inc. are subject to a duty to supplement all responses to these requests in accordance with Federal Rule of Civil Procedure 26(e).

## **DEFINITIONS**

Although the following definitions are stated in terms of a particular inflection of the word defined (i.e., singular, masculine, present tense, etc.), they shall be interpreted to define all of the other inflections of that word, as well.

1.      "ARCGATE" means Arcgate, a Partnership Firm; M/s Arcgate; or Arcgate Teleservices Private Limited, and its past or present divisions, departments, parents, predecessors, successors, subsidiaries, affiliates, and other organizational or operating units; and past or present officers, directors, employees, agents, representatives, consultants, attorneys, and others acting or purporting to act on its behalf.

2.      "COMMUNICATION" means, without limitation, any transfer of information, ideas, opinions, or thoughts by any means, written, oral, or otherwise, at any time or place under any circumstances.  This definition is not limited to transfers between PERSONS but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, or other document which was sent by one or more individuals to another or others; any telephone call between one or more individual and another or others; and any conversation or meeting between one or more individuals and another.

1

COMMERCIAL REAL ESTATE EXCHANGE, INC.'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)
1817932

Exhibit U, Page 549

3.     "COSTAR" means the Plaintiffs collectively, CoStar Group, Inc. and CoStar Realty Information, Inc., including but not limited to any past or present divisions, departments, parents, predecessors, successors, subsidiaries, affiliates, and other organizational or operating units; and past or present officers, directors, employees, agents, representatives, consultants, attorneys, and others acting or purporting to act on its behalf.

4.     "CREXI" means the Defendant and Counterclaimant Commercial Real Estate Exchange, Inc.

5.     "DOCUMENT" is used in the broadest possible sense within the meaning and scope of that term as used in the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, and includes the following items: all originals and copies, drafts, and recordings of any written, printed, graphic or otherwise recorded matter, however produced or reproduced, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail, instant message, text message, or facsimile, and every other means of recording upon any tangible thing, any COMMUNICATION in any form or representation, including letters, words, pictures, sounds, or symbols, or combination thereof, and any record thereby created, regardless of the manner in which the record has been stored.  Any request for "DOCUMENTS" shall be interpreted to include paper and electronic DOCUMENTS.  Any comment or notation appearing on any DOCUMENT, and not a part of the original text, is to be considered a separate "DOCUMENT."

6.     LOOPLINK means the real estate listing management and search engine tool offered by LoopNet and controlled by COSTAR.

7.     "PERSON" means any natural person, corporation, proprietorship, association, joint venture, company, partnership, or other business or legal entity, including governmental bodies and agencies.

8.     "RELATING TO" means relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing,

2

1817932

commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

9.     "THIRD PARTY" means any PERSON that is not CREXI, COSTAR, or any PERSON employed by COSTAR or CREXI, including any employee, agent, or independent contractor.  Photographers who take photographs on behalf of, or at the direction of COSTAR, do not fall within this definition.

10.     "THIS ACTION" means the civil action captioned as *CoStar Group Inc. v. Commercial Real Estate Exchange, Inc.*, No. 20-cv-08819, proceeding in the United States District Court for the Central District of California, including all claims filed by all parties.

11.     "YOU" and "YOUR" mean COSTAR.

12.     The terms "all" and "any" means "all, any, each, and every."

13.     The words "and" and "or" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests for Production.

14.     The terms "including" or "includes" shall be construed without limitation to mean "including, but not limited to."

## INSTRUCTIONS

The following instructions apply to each request set forth below:

1.     Produce all responsive DOCUMENTS and things in YOUR possession, custody, or control, wherever located.  If YOU cannot respond to a request fully, after a diligent attempt to obtain the requested information, YOU must answer the request to the extent possible, specify the portion of the request that YOU are unable to answer, and provide whatever information YOU have regarding the unanswered portion.

2.     In the event that any requested DOCUMENTS have been destroyed, lost, discarded or are otherwise no longer in YOUR possession, custody or control, YOU shall identify the DOCUMENT as completely as possible and specify the

3

DOCUMENT's disposal date, disposal manner, disposal reason, the PERSON who authorized the disposal, and the PERSON who disposed of the DOCUMENT.

3.     Produce entire DOCUMENTS, including attachments, enclosures, cover letters, memoranda, and appendices.

4.     Label each page of each DOCUMENT with a unique identifying control number ("Bates number").

5.     In the event any DOCUMENT or information is withheld on a claim of attorney-client privilege, work-product doctrine, or any other privilege or protection, YOU are requested to provide a privilege log that includes at least the following information:

a.     A unique number for each entry in the log.

b.     The date of the DOCUMENT.  For emails, this should be the sent date of the DOCUMENT, and for loose ESI, this should be the last-modified or creation date of the DOCUMENT.

c.     The author of the DOCUMENT.

d.     Recipients of the DOCUMENT, where reasonably ascertainable.

e.     A description of the DOCUMENT sufficient to identify it without revealing the purportedly privileged information.

f.     A description of the asserted privilege and a description of why the privilege is being asserted over the DOCUMENT.  This description should include information sufficient to ascertain if the DOCUMENT contained attachments over which privilege is also being asserted.

g.     The type of privilege being asserted: (a) AC for Attorney-Client, (b) WP for Attorney Work Product, (c) CI for Common Interest, or (d) PO for protective order.

The log shall also identify where counsel is present in a conversation, specifically for columns (iii) and (iv) noted above.  Where counsel's relationship relevant to the

privilege is not readily ascertainable from columns (iii) or (iv) above, the log shall include a reference to relevant counsel involved in the privilege description field described in (vi) above.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 92:**

All COMMUNICATIONS with ARCGATE, including, but not limited to, COMMUNICATIONS with any counsel or representative for ARCGATE.

**REQUEST FOR PRODUCTION NO. 93:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the November 24, 2021 Consent Terms and Permanent Injunction executed by ARCGATE and COSTAR, including any drafts of that document and any COMMUNICATIONS RELATING TO that document.

**REQUEST FOR PRODUCTION NO. 94:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the declaration executed by Kunal Bagla on November 24, 2021, including any drafts of that declaration and any COMMUNICATIONS RELATING TO that declaration.

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS RELATING TO any COMMUNICATION with a THIRD PARTY RELATING TO ARCGATE.

**REQUEST FOR PRODUCTION NO. 96:**

All contractual or other agreements with ARCGATE.

**REQUEST FOR PRODUCTION NO. 97:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any claim for damages or other relief YOU demanded or requested from ARCGATE.

**REQUEST FOR PRODUCTION NO. 98:**

All DOCUMENTS RELATING TO ARCGATE.

**REQUEST FOR PRODUCTION NO. 99:**

All transcripts, recordings, videotapes, or audiotapes of YOUR "all-hands" or company meetings that reference or relate to CREXi.

**REQUEST FOR PRODUCTION NO. 100:**

All DOCUMENTS, including but not limited to presentations, prepared for or shared during any of YOUR "all-hands" or company meetings.

**REQUEST FOR PRODUCTION NO. 101:**

All DOCUMENTS RELATING TO YOUR automated access, or scraping of, any website, including broker websites.

**REQUEST FOR PRODUCTION NO. 102:**

All policies, practices, background materials or training guides RELATING TO YOUR automated access, or scraping of, any website, including broker websites.

**REQUEST FOR PRODUCTION NO. 103:**

All DOCUMENTS RELATING TO training guides, resource guides or background materials concerning YOUR Portfolio Research Tool.

**REQUEST FOR PRODUCTION NO. 104:**

All DOCUMENTS RELATING TO policies, practices, background materials or training guides RELATING TO obtaining photographs from CREXi.

**REQUEST FOR PRODUCTION NO. 105:**

All DOCUMENTS RELATING TO YOUR cropping or altering of broker or competitor watermarks, logos or other information from photographic images.

**REQUEST FOR PRODUCTION NO. 106:**

DOCUMENTS sufficient to show YOUR policies, procedures, and practices RELATING TO Dynamic Keyword Insertion.

**REQUEST FOR PRODUCTION NO. 107:**

All DOCUMENTS RELATING TO any limitations on the use of any copy in Dynamic Keyword Insertion advertisements.

**REQUEST FOR PRODUCTION NO. 108:**

All DOCUMENTS RELATING TO statements claiming, alleging, or suggesting that YOU hold monopoly power.

**REQUEST FOR PRODUCTION NO. 109:**

DOCUMENTS sufficient to identify the name(s) of your internal customer relationship software, or any software used by YOUR sales department to track or record information RELATING TO YOUR customers, including potential and former customers.

**REQUEST FOR PRODUCTION NO. 110:**

DOCUMENTS sufficient to identify YOUR policies, procedures, and practices RELATING TO YOUR internal customer relationship software, or any software used by YOUR sales department to track or record information RELATING TO YOUR customers, including potential and former customers.

**REQUEST FOR PRODUCTION NO. 111:**

All DOCUMENTS RELATING TO YOUR use, access, or review of data or photographs from CREXI in connection with creating, populating, or updating listings on any COSTAR website.

**REQUEST FOR PRODUCTION NO. 112:**

All DOCUMENTS RELATING TO policies, practices, training guides, or background materials RELATING TO YOUR use, access, or review of data or photographs from CREXI in connection with creating, populating, or updating listings on any COSTAR website.

**REQUEST FOR PRODUCTION NO. 112:**

All DOCUMENTS RELATING TO targets, metrics, incentives, bonuses, or other financial or business metrics in connection with creating, populating, or updating listings on any COSTAR website.

**REQUEST FOR PRODUCTION NO. 113:**

All DOCUMENTS RELATING TO the strategic value to YOU or YOUR

7

business of having brokers or customers utilize YOUR LOOPLINK feature.

**REQUEST FOR PRODUCTION NO. 114:**

DOCUMENTS sufficient to show every broker or customer that utilizes YOUR LOOPLINK feature.

**REQUEST FOR PRODUCTION NO. 115:**

All DOCUMENTS relating to YOUR efforts to block COSTAR competitors, including but not limited to CREXI, from accessing any portion of a customer's or broker's website, including pages hosted by or affiliated with LOOPLINK.


Dated:  February 2, 2022                    KEKER, VAN NEST & PETERS LLP


By:  */s/ Elizabeth K. McCloskey*
Elliot R. Peters
Warren A. Braunig
Elizabeth K. McCloskey
Nicholas S. Goldberg
Connie P. Sung
Christi Zaleski

Attorneys for Defendant and Counterclaimant
COMMERCIAL REAL ESTATE
EXCHANGE, INC.

8

# PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made.  I am over the age of eighteen years and not a party to the within action.  My business address is Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On February 2, 2022, I served the following document(s):

**COMMERCIAL REAL ESTATE EXCHANGE, INC.'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

☑   by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format.  The transmission was reported as complete and without error.

| | |
|---|---|
| Nicholas J. Boyle | Elyse M. Greenwald |
| Sarah A. Tomkowiak | Latham & Watkins LLP |
| Lauren M. McGuire | 10250 Constellation Blvd. |
| Walter Allen Perry | Suite 1100 |
| Latham & Watkins LLP | Los Angeles, CA 90067 |
| 555 Eleventh Street, NW | Tel.:   424-653-5500 |
| Suite 1000 | Fax:   424-653-5501 |
| Washington, D.C. 20004-1304 | elyse.greenwald@lw.com |
| Tel.:   202-637-2200 | |
| Fax:   202-637-2201 | |
| nicholas.boyle@lw.com | |
| sarah.tomkowiak@lw.com | |
| lauren.mcguire@lw.com | |
| allen.perry@lw.com | |

Executed on February 2, 2022, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Susan B. McCabe_ (signature)

Susan B. McCabe

9

COMMERCIAL REAL ESTATE EXCHANGE, INC.'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 2:20-cv-08819 CBM (ASx)

1817932

Exhibit U, Page 557

# EXHIBIT V

1  JESSICA STEBBINS BINA
2  (BAR NO. 248485)
   jessica.stebbinsbina@lw.com
3  ELYSE M. GREENWALD
   (BAR NO. 268050)
4  elyse.greenwald@lw.com
   LATHAM & WATKINS LLP
5  10250 Constellation Boulevard
   Suite 1100
6  Los Angeles, CA 90067
   Tel: 424.653.5525
7  Fax: 424.653.5501
8
9  *Attorneys for Plaintiffs-Counterdefendants*
10 [Additional counsel listed on signature page]

11              **UNITED STATES DISTRICT COURT**
12              **CENTRAL DISTRICT OF CALIFORNIA**

13
14 COSTAR GROUP, INC., and
   COSTAR REALTY
15 INFORMATION, INC.,

                    Plaintiffs,
16
       v.
17
   COMMERCIAL REAL ESTATE
18 EXCHANGE, INC.,

19                  Defendant.
20
21 COMMERCIAL REAL ESTATE
   EXCHANGE, INC.,
22
                    Counterclaimant,
23
       v.
24
   COSTAR GROUP, INC., AND
25 COSTAR REALTY INFORMATION,
   INC.,
26
                    Counterdefendants.
27
28

CASE NO. 2:20-cv-08819-CBM-AS

**COSTAR'S OBJECTIONS AND RESPONSES TO CREXI'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

**PROPOUNDING PARTY:  CREXI RESPONDING PARTY:  COSTAR SET: TWO (NOS. 92-115)**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs and Counterclaim Defendants CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar"), by and through their counsel, hereby submit their objections and responses to Defendant and Counterclaimant Commercial Real Estate Exchange, Inc.'s ("CREXi") Third Set of Requests for Production of Documents, (the "Requests" or individually, a "Request"), dated February 2, 2022.

## PRELIMINARY STATEMENT

The responses set forth below are provided without prejudice to CoStar's right to amend these responses if additional documents or information come to its attention.  This reservation, however, is not to be construed as an undertaking by CoStar of an affirmative duty to alter, supplement, amend, or otherwise modify these responses and objections in any manner, at any time, except as otherwise required by law.  The fact that CoStar has responded to any document request is not intended to be, and shall not be, construed as a waiver of all or part of any objection to any document request.  CoStar's production of documents in response to any request is not intended to be, and shall not be, construed as a waiver of any objection to the admissibility and use of these documents in a hearing on a motion, trial, or any other court proceeding, arbitration, mediation, or other alternative dispute resolution in this or any other action.  CoStar's responses are made without waiving, in any way, the right to object on any basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.  By making these responses, CoStar does not concede that the documents sought are relevant or proportional to the needs of this litigation.

## GENERAL OBJECTIONS

CoStar makes the following General Objections.  These General Objections shall be incorporated into each of CoStar's responses as if fully rewritten therein, and each response is subject to and without waiver of any of these General Objections.

1. CoStar objects to the Requests, and to the section labeled "Definitions" (the "Definitions") and to the section labeled "Instructions" (the "Instructions") included in the Requests, to the extent that they seek to impose on CoStar any discovery obligation greater than or different from those imposed by the Federal Rules of Civil Procedure (the "Federal Rules"), by the Local Rules of the United States District Court for the Central District of California (the "Local Rules"), or by any Order entered by or to-be-entered by the Court in these proceedings, on the grounds that they are unduly burdensome. CoStar assumes no duty to respond to the Requests except as specifically required by the Federal Rules, the Local Rules, or an Order of the Court.

2. CoStar objects to the Requests, Definitions, and Instructions to the extent that they seek the production of documents protected by the attorney-client privilege, the attorney work-product doctrine, the joint defense privilege, the common interest doctrine, and/or any other applicable privilege, immunity, or protection, including under applicable foreign law. CoStar will only produce information that it believes is non-privileged and is otherwise properly discoverable. To the fullest extent allowable under Federal Rule of Evidence 502 and any other applicable law, inadvertent identification or production of any protected or privileged documents shall not constitute a waiver of any privilege or protection with respect to the documents produced or the subject matter thereof; or a waiver of CoStar's right to object to the use of any such information during trial, arbitration, mediation, or any subsequent proceeding; or a waiver of the right to demand the return of any documents produced.

3. CoStar objects to the Requests, Definitions, and Instructions to the extent that they seek the production of documents (i) protected from disclosure by any law, court order, or confidentiality or non-disclosure agreement; or (ii) the disclosure of which would violate the privacy rights of any of CoStar's current or former customers or employees.

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 560

4.      CoStar objects to the Requests, Definitions, and Instructions to the extent that they seek the production of "all" documents or "all" communications concerning a particular topic or topics when less than "all" documents or communications necessary and material to the claims or defenses in this case would be sufficient.  Such Requests are overly broad, unduly burdensome, and/or seek documents that are not relevant or proportional to the needs of the case.

5.      CoStar objects to the Requests, Definitions, and Instructions to the extent that they seek the disclosure of documents that are a matter of public record, are equally available to CREXi, or are already in CREXi's possession, custody, or control, on the basis that such Requests are unduly burdensome.

6.      CoStar objects to the Requests, Definitions, and Instructions to the extent that they seek to impose an undue burden upon CoStar by requesting documents the value of which, if any, is substantially outweighed by the burden or cost of searching, collecting, or reviewing them.

7.      CoStar objects to the Requests, Definitions, and Instructions to the extent that they seek the production of documents that are not in CoStar's possession, custody, or control.

8.      CoStar objects to the Requests, Definitions, and Instructions as unduly burdensome to the extent that they seek to impose an obligation to search the files of all current and former employees, including those who are not reasonably likely to have responsive documents.

9.      CoStar objects to the Requests, Definitions, and Instructions to the extent that they assume facts not in evidence and to the extent that they state or assume legal conclusions.  By providing these objections and responses, CoStar does not admit the factual or legal premise of any of the Requests.

10.     CoStar objects to the Requests, Definitions, and Instructions to the extent that they seek the production of documents that are not relevant to the claims or defenses of any party in this action or disproportionate to the needs of the case,

are overly broad, or are unduly burdensome.

11.    CoStar objects to each and every paragraph of the Definitions section to the extent that the Definitions purportedly set forth therein would (i) expand the definition of a term beyond its ordinary use in the English language; (ii) create an undue burden for CoStar when propounding its objections and responses to the Requests; and/or (iii) impose obligations on CoStar that exceed, or are inconsistent with, the obligations imposed by the Federal Rules.

12.    CoStar objects to the Requests, Definitions, and Instructions to the extent that they purport to require CoStar to make calculations or formulate and compile information in manners otherwise different from those used by CoStar in the ordinary course of its business.  CoStar further objects to each Request to the extent that it seeks information not maintained in the ordinary course of business.

13.    The failure to object on any particular ground or grounds shall not be construed as a waiver of CoStar's right to object on any additional ground(s).  CoStar reserves the right to amend and/or supplement these objections at a later time.

14.    CoStar objects to the Requests as overly broad, unduly burdensome, and seeking information that is not relevant and disproportionate to the needs of this case to the extent that they seek information unrelated to CoStar's commercial real estate websites or products.  To the extent CoStar responds to these Requests, its Responses will be limited to its commercial real estate websites and products that are relevant to this action.

15.    CoStar objects to the Requests as unduly burdensome and unreasonable to the extent that CREXi demands that CoStar produce documents within 30 days. CREXi has served multiple requests that will require CoStar to search custodial and non-custodial sources and it is not practical, feasible, nor necessary for CoStar to complete its production within 30 days.  CoStar is providing these responses on March 4, 2022, and will produce responsive, non-privileged documents at a reasonable time following the parties' meet and confers and/or motion practice

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 562

1  concerning these Requests.

2      16.    CoStar objects to the Requests as overly broad, unduly burdensome,

3  and seeking documents that are not relevant to any party's claims or defenses or

4  proportional to the needs of the case to the extent that Requests include no time

5  period.   In responding to these Requests, CoStar will search for and produce

6  responsive information for the time period from January 1, 2016 to June 23, 2021

7  (the "Relevant Time Period"), unless otherwise indicated.

8              **OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

9      1.     CoStar objects to CREXi's definition of "ARCGATE" as overly broad

10  and unduly burdensome to the extent that the definition purports to include "past or

11  present divisions, departments, parents, predecessors, successors, subsidiaries,

12  affiliates, and other organizational or operating units; and past or present officers,

13  directors, employees, agents, representatives, consultants, attorneys, and other

14  acting or purporting to act on its behalf."  In responding to these Requests, CoStar

15  will construe the term "Arcgate" to mean Arcgate, a Partnership Firm (also known

16  as M/s Arcgate) and/or Arcgate Teleservices Private Limited.

17      2.     CoStar objects to CREXi's definition of "COMMUNICATION" as

18  overly broad and unduly burdensome insofar as it encompasses documents and

19  information that are outside of CoStar's actual possession, custody, or control, or

20  that cannot be located with a reasonably diligent search.  CoStar further objects to

21  the definition as vague and ambiguous to the extent that it suggests intangible items

22  (e.g., "thoughts," "opinions," or "oral" "transfer[s] of information"), absent

23  recordation, may need to be produced.  CoStar also objects to the definition as

24  unduly burdensome to the extent that it purports to require that CoStar create

25  documents or compile information memorializing intangible communications solely

26  for the purposes of responding to these Requests.  In responding to the Requests,

27  CoStar will construe the term "COMMUNICATION" to be synonymous in meaning

28  and equal in scope to the term as it is defined under the Federal Rules.

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 563

3.    CoStar objects to CREXi's definition of "COSTAR" as vague and ambiguous, overly broad, and unduly burdensome to the extent that the definition purports to include "any past or present divisions, departments, parents, predecessors, successors, subsidiaries, affiliates, and other organizational or operating units; and past or present officers, directors, employees, agents, representatives, consultants, attorneys, and others acting or purporting to act on its behalf."  In responding to these Requests, CoStar will construe the term "COSTAR" to mean CoStar Group, Inc. and CoStar Realty Information, Inc.

4.    CoStar objects to CREXi's definition of "DOCUMENT" as vague and ambiguous, overly broad, and unduly burdensome in that it is inconsistent with the Federal Rules and purports to create an obligation greater than that under the Rules. In responding to Requests that incorporate this term, unless otherwise specified, CoStar will construe the term "DOCUMENT" to be synonymous in meaning and equal in scope to the term as defined under Federal Rule of Civil Procedure 34(a)(1)(A).

5.    CoStar objects to the definition of "PERSON" as vague and ambiguous, overly broad, and unduly burdensome, in that it seeks the production of documents pertaining to unspecified and unknowable "corporation[s]," "proprietorship[s]," "association[s]," "joint venture[s]," "compan[ies]," "partnership[s]," "business or legal entit[ies]," "governmental bodies," or "agencies."  In responding to the Requests that incorporate this term, CoStar will construe the term "PERSON" to have its ordinary meaning.

6.    CoStar objects to the definition of "RELATING TO" as vague and ambiguous, overly broad, and unduly burdensome because it seeks to expand the ordinary meaning of the term and incorporates terms that are inconsistent with the true and ordinary meaning of the phrase.  In responding to the Requests that incorporate this term, CoStar will construe the term "RELATING TO" to have its ordinary meaning.

7.     CoStar objects to the definition of "THIRD PARTY" as vague and ambiguous, overly broad, and unduly burdensome because it seeks to expand the ordinary meaning of the term and includes unidentifiable "person[s]" that are not "employee[s], agent[s], or independent contractor[s]" of CoStar or CREXi.   In responding to the Requests that incorporate this term, CoStar will construe the term "THIRD PARTY" to have its ordinary meaning.

8.     CoStar objects to the definitions of "AND" and "OR" as overly broad, unduly burdensome, vague and ambiguous, including in that the definition purports to include the "conjunctive and disjunctive."  In responding to the Requests that incorporate these terms, CoStar will construe the terms "AND" and "OR" to have their ordinary meaning.

9.     CoStar objects to the definitions of "INCLUDING" and "INCLUDES" as overly broad, unduly burdensome, vague and ambiguous.  In responding to the Requests that include these terms, CoStar will construe the terms "INCLUDING" and "INCLUDES" to have their ordinary meaning.

10.    CoStar objects to Instruction No. 1 as unduly burdensome and seeking to impose obligations on CoStar greater than or inconsistent with those required by the Federal Rules and/or by the Local Rules.  CoStar will produce non-privileged information that is reasonably accessible to it after conducting a reasonable search, consistent with its obligations under Federal Rules 26 and 34.

11.    CoStar objects to Instruction No. 2 to the extent that it imposes a burden on CoStar that is greater than or inconsistent with those required by the Federal Rules and/or the Local Rules.  CoStar further objects to Instruction No. 2 to the extent that it is inconsistent with the ESI Order entered by the Court on January 19, 2022, at Dkt. 106 ("ESI Order") and/or the Federal and Local Rules.  CoStar will produce documents consistent with its obligations under the Federal Rules, Local Rules, and the ESI Order.

12.    CoStar objects to Instruction Nos. 3 and 4 to the extent that they are

inconsistent with the ESI Order and/or the Federal and Local Rules.  CoStar will produce documents consistent with its obligations under the Federal Rules, Local Rules, and the ESI Order.

13.    CoStar objects to Instruction No. 5 as unduly burdensome and seeking to impose obligations on CoStar greater than or inconsistent with those required by Federal Rules 26 and 34 and/or the Local Rules.  If CoStar withholds or redacts any responsive documents on the basis of the attorney-client privilege, work-product doctrine, or other similar privileges under domestic or applicable foreign law, CoStar will produce a privilege log that complies with the Federal Rules, Local Rules, and/or the ESI Order.  CoStar will meet and confer with CREXi regarding the timing for exchanging privilege logs.

## SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

## REQUEST FOR PRODUCTION NO. 92:

All COMMUNICATIONS with ARCGATE, including, but not limited to, COMMUNICATIONS with any counsel or representative for ARCGATE.

## RESPONSE TO REQUEST NO. 92:

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 92 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case including to the extent it seeks "all" communications, for an unlimited time period, on any subject, between Arcgate, Arcgate's counsel, or Arcgate's representative and anyone else.  CoStar further objects to Request No. 92 to the extent it seeks communications that are not in CoStar's possession, custody, or control.  CoStar further objects to Request No. 92 because it seeks documents that are not relevant to any claim or defense in this matter.  CoStar further objects to Request No. 92 to the extent that it is duplicative and cumulative of Request Nos. 93 and 94.  CoStar further objects to the undefined term "representative" as vague, ambiguous, and overly

broad.    CoStar  further  objects  to  Request  No.  92  to  the  extent  it  seeks communications that are privileged or otherwise non-discoverable under applicable foreign law.

**REQUEST FOR PRODUCTION NO. 93:**

All  DOCUMENTS  and  COMMUNICATIONS  RELATING  TO  the November  24,  2021  Consent  Terms  and  Permanent  Injunction  executed  by ARCGATE  and  COSTAR,  including  any  drafts  of  that  document  and  any COMMUNICATIONS RELATING TO that document.

**RESPONSE TO REQUEST NO. 93:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 93 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case including  to  the  extent  it  seeks  "all"  documents  and  communications  over  an unlimited time period.  CoStar further objects to this Request to the extent it seeks communications and drafts that are protected by the attorney client privilege or work product doctrine.    CoStar  further  objects  to  this  Request  to  the  extent  it  seeks communications that are privileged or otherwise non-discoverable under applicable foreign law.  CoStar further objects to this Request to the extent it is duplicative and cumulative of Request Nos. 92 and 94.  CoStar further objects to Request No. 93 to the extent that communications related to the consent decree and judgment are based on documents already in CREXi's possession, custody, or control, and which CREXi has not produced to CoStar.

Subject to and without waiving the foregoing General and Specific objections, CoStar  will  produce  the  November  24,  2021  Consent  Terms  and  Permanent Injunction.

**REQUEST FOR PRODUCTION NO. 94:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the declaration executed by Kunal Bagla on November 24, 2021, including any drafts of that declaration and any COMMUNICATIONS RELATING TO that declaration.

**RESPONSE TO REQUEST NO. 94:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 94 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case including to the extent it seeks "all" documents and communications over an unlimited time period.  CoStar further objects to this Request to the extent it seeks communications and drafts that are protected by the attorney client privilege or work product doctrine.  CoStar further objects to this Request to the extent it seeks communications that are privileged or otherwise non-discoverable under applicable foreign law.  CoStar further objects to this Request to the extent it is duplicative and cumulative of Request Nos. 92 and 93.  CoStar further objects to Request No. 94 to the extent responsive documents and communications are already in CREXi's possession, custody, or control, and which CREXi has not produced to CoStar.

Subject to and without waiving the foregoing General and Specific objections, CoStar will produce the November 24, 2021 declaration of Kunal Bagla.

**REQUEST FOR PRODUCTION NO. 95:**

All DOCUMENTS RELATING TO any COMMUNICATION with a THIRD PARTY RELATING TO ARCGATE.

**RESPONSE TO REQUEST NO. 95:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 95 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case

including to the extent it seeks "all" documents related to "any" communication with any "third party" for an unlimited time period that relate in any way to Arcgate. CoStar further objects to Request No. 95 to the extent that it seeks documents that are protected by the attorney client privilege or work product doctrine. CoStar further objects to Request No. 95 to the extent it seeks communications that are privileged or otherwise non-discoverable under applicable foreign law. CoStar further objects to this Request as duplicative and cumulative of other Requests, including Requests No. 92-94.

**REQUEST FOR PRODUCTION NO. 96:**

All contractual or other agreements with ARCGATE.

**RESPONSE TO REQUEST NO. 96:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein. CoStar objects to Request No. 96 as not relevant or reasonably calculated to lead to the discovery of admissible evidence, and overly broad to the extent it seeks "all contractual or other agreements" for an unlimited time period. CoStar further objects to Request No. 96 to the extent it seeks communications that are privileged or otherwise non-discoverable under applicable foreign law. CoStar further objects to Request No. 96 to the extent it seeks publicly available agreements, or documents that are already in CREXi's possession. CoStar further objects to this Request as vague and ambiguous, including its use of the undefined terms "contractual" and "other agreements."

Subject to and without waiving the foregoing General and Specific objections, CoStar responds that the November 24, 2021 Consent Terms are the only agreement between CoStar and Arcgate.

**REQUEST FOR PRODUCTION NO. 97:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any claim for damages or other relief YOU demanded or requested from ARCGATE.

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 569

**RESPONSE TO REQUEST NO. 97:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 97 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case including to the extent it seeks "all" documents and communications relating to "any" claim against Arcgate for an unlimited time period.  CoStar further objects to Request No. 97 as not relevant or reasonably calculated to lead to the discovery of admissible evidence.  CoStar further objects to Request No. 97 to the extent that it is duplicative and cumulative of other Requests.  CoStar further objects to Request No. 97 to the extent that it seeks documents that are attorney client privileged and/or protected by the work product doctrine.  CoStar further objects to Request No. 97 to the extent it seeks communications that are privileged or otherwise non-discoverable under applicable foreign law.

Subject to and without waiving the foregoing General and Specific objections, CoStar will produce the complaint CoStar filed against Arcgate in India, which contains CoStar's claims for relief against Arcgate.

**REQUEST FOR PRODUCTION NO. 98:**

All DOCUMENTS RELATING TO ARCGATE.

**RESPONSE TO REQUEST NO. 98:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 98 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case including to the extent it seeks "all" documents over an unlimited time period and not limited to any subject matter.  CoStar further objects to Request No. 98 because it seeks documents that are entirely unrelated to any claim or defense in this matter, and to the extent that it is duplicative and cumulative of other Requests.  CoStar

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 570

1   further objects to Request No. 98 to the extent it seeks communications that are
2   privileged or otherwise non-discoverable under applicable foreign law.

3        Subject to and without waiving the foregoing General and Specific objections,
4   CoStar reiterates that it will produce, in response to the preceding Requests, the
5   November 24, 2021 Consent Terms and Permanent Injunction and Declaration of
6   Kunal Bagla, and the complaint CoStar filed against Arcgate in India as part of that
7   same action.

8   **REQUEST FOR PRODUCTION NO. 99:**

9        All transcripts, recordings, videotapes, or audiotapes of YOUR "all-hands" or
10  company meetings that reference or relate to CREXi.

11  **RESPONSE TO REQUEST NO. 99:**

12       CoStar incorporates its General Objections and its Objections to Definitions
13  and Instructions as if fully set forth herein.  CoStar objects to Request No. 99 as
14  overly broad, not relevant or reasonably calculated to lead to the discovery of
15  admissible evidence, and not proportional to the needs of this case including to the
16  extent it seeks "all" transcripts, recordings, videotapes, or audiotapes for an
17  unlimited time period.  CoStar further objects to the undefined term "all-hands" as
18  vague and ambiguous, and to the undefined phrase "company meetings" as vague,
19  overbroad, and unduly burdensome.  CoStar also objects to this Request as unduly
20  burdensome in that it would require CoStar to review "recordings, videotapes, and
21  audiotapes" from all of its company meetings on any subject for an unlimited time
22  period, to the extent such recordings exist.

23       Subject to and without waiving the foregoing General and Specific objections,
24  CoStar responds its "all hands" meetings are not transcribed, and that it will produce
25  all responsive materials related to CoStar's December 2019 "all hands" meeting
26  referenced in the Counterclaims at ¶ 3 that reference CREXi.

27

28

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 571

**REQUEST FOR PRODUCTION NO. 100:**

All DOCUMENTS, including but not limited to presentations, prepared for or shared during any of YOUR "all-hands" or company meetings.

**RESPONSE TO REQUEST NO. 100:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 100 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case including to the extent it seeks "all" documents over an unlimited time period and not limited to any subject matter.  CoStar further objects to the undefined term "all-hands" as vague and ambiguous, and to the undefined phrase "company meetings" As vague, overbroad, and unduly burdensome. CoStar also objects to this Request as unduly burdensome in that it would require CoStar to review presentations from all of its "company meetings" on any subject for an unlimited time period, to the extent such presentations exist.

Subject to and without waiving the foregoing General and Specific objections, CoStar will produce responsive materials related to CoStar's December 2019 "all hands" meeting referenced in the Counterclaims at ¶ 3 that reference CREXi.  CoStar will also produce documents responsive to this Request and relevant to the Parties' claims or defenses in this Action that are identified through CoStar's custodial document review, should such documents exist.

**REQUEST FOR PRODUCTION NO. 101:**

All DOCUMENTS RELATING TO YOUR automated access, or scraping of, any website, including broker websites.

**RESPONSE TO REQUEST NO. 101:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 101 as overly broad, unduly burdensome, and not proportional to the needs of this case

1  including to the extent it seeks "all" documents for an unlimited time period.  CoStar

2  further objects to Request No. 101 as not relevant or reasonably calculated to lead

3  to the discovery of admissible evidence because it seeks documents that are entirely

4  unrelated to any claim or defense in this matter.  CREXi has not alleged any

5  "automated access" or "scraping" of any website by CoStar.  CoStar further objects

6  to Request No. 101 as vague and ambiguous, including in its use of the undefined

7  terms and phrases "automated access," "scraping," and "broker websites."  CoStar

8  also objects to Request No. 101 as duplicative and cumulative of Request No. 102,

9  and also Request Nos. 39 and 40 in response to which CoStar has already agreed to

10  conduct a reasonable search and produce responsive documents.

11  **REQUEST FOR PRODUCTION NO. 102:**

12       All policies, practices, background materials or training guides RELATING

13  TO YOUR automated access, or scraping of, any website, including broker websites.

14  **RESPONSE TO REQUEST NO. 102:**

15       CoStar incorporates its General Objections and its Objections to Definitions

16  and Instructions as if fully set forth herein.  CoStar objects to Request No. 102 as

17  overly broad, unduly burdensome, and not proportional to the needs of this case to

18  the extent it seeks "all" materials for an unlimited time period.  CoStar further objects

19  to Request No. 102 as not relevant or reasonably calculated to lead to the discovery

20  of admissible evidence because it seeks documents that are entirely unrelated to any

21  claim or defense in this matter.  CREXi has not alleged any "automated access" or

22  "scraping" of any website by CoStar.  CoStar also objects to Request No. 102 as

23  vague and ambiguous, including in its use of the undefined terms and phrases

24  "automated access," "scraping," and "broker websites."  CoStar further objects to

25  Request No. 102 as duplicative and cumulative of Request No. 101, and also Request

26  Nos. 39 and 40, in response to which CoStar has already agreed to conduct a

27  reasonable search and produce responsive documents.

28

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 573

**REQUEST FOR PRODUCTION NO. 103:**

All DOCUMENTS RELATING TO training guides, resource guides or background materials concerning YOUR Portfolio Research Tool.

**RESPONSE TO REQUEST NO. 103:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 103 as overly broad and unduly burdensome including to the extent it seeks "all" documents for an unlimited time period.  CoStar further objects to Request No. 103 as not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case as it seeks documents that are entirely unrelated to any claim or defense in this matter.  CoStar further objects to Request 103 as vague and ambiguous, including in its use of the undefined terms and phrases "training guides," "resource guides," "background materials," and "Portfolio Research Tool."

Subject to and without waiving the foregoing General and Specific objections, CoStar is willing to meet and confer with CREXi to understand the relevance of this Request.

**REQUEST FOR PRODUCTION NO. 104:**

All DOCUMENTS RELATING TO policies, practices, background materials or training guides RELATING TO obtaining photographs from CREXi.

**RESPONSE TO REQUEST NO. 104:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 104 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case including to the extent it seeks "all" documents for an unlimited time period.  CoStar further objects to Request No. 104 as seeking irrelevant information as there are no allegations that CoStar has improperly "obtain[ed] photographs from CREXi."

1  CoStar further objects to Request No. 104 as vague and ambiguous, including in its

2  use of the undefined terms and phrases "policies," "practices," "background

3  materials," "training guides," and "obtaining photographs from CREXi."  CoStar

4  further objects to Request No. 104 as duplicative and cumulative of Request Nos.

5  101 and 102, and also Request Nos. 39 and 40, in response to which CoStar has

6  already agreed to conduct a reasonable search and produce responsive documents.

7  **REQUEST FOR PRODUCTION NO. 105:**

8      All DOCUMENTS RELATING TO YOUR cropping or altering of broker or

9  competitor watermarks, logos or other information from photographic images.

10  **RESPONSE TO REQUEST NO. 105:**

11      CoStar incorporates its General Objections and its Objections to Definitions

12  and Instructions as if fully set forth herein.  CoStar objects to Request No. 105 as

13  overly broad, unduly burdensome, and not proportional to the needs of this case to

14  the extent it seeks "all" documents for an unlimited time period.  CoStar further

15  objects to Request No. 105 as not relevant or reasonably calculated to lead to the

16  discovery of admissible evidence because there are no allegations that CoStar is

17  "cropping or altering" "broker or competitor watermarks, logos, or other

18  information."  CoStar further objects to Request No. 105 as vague and ambiguous

19  including in its use of the undefined terms and phrases "cropping," "altering,"

20  "competitor watermarks," "logos," or "other information."  CoStar further objects to

21  this Request as duplicative and cumulative of Request Nos. 12, 23, and 24, in

22  response to which CoStar has already agreed to conduct a reasonable search and

23  produce responsive documents.

24  **REQUEST FOR PRODUCTION NO. 106:**

25      DOCUMENTS sufficient to show YOUR policies, procedures, and practices

26  RELATING TO Dynamic Keyword Insertion.

27

28

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 575

**RESPONSE TO REQUEST NO. 106:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 106 as overly broad, unduly burdensome, and not proportional to the needs of this case including to the extent it seeks "all" documents for an unlimited time period.  CoStar further objects to Request No. 106 as not relevant or reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are entirely unrelated to any claim or defense in this matter.  CoStar further objects to this Request to the extent that it is duplicative and cumulative of Request No. 107.

Subject to and without waiving the foregoing General and Specific objections, CoStar will conduct a reasonable search of centrally maintained, non-custodial documents and produce responsive, non-privileged documents in response to this Request, to the extent such documents exist.

**REQUEST FOR PRODUCTION NO. 107:**

All DOCUMENTS RELATING TO any limitations on the use of any copy in Dynamic Keyword Insertion advertisements.

**RESPONSE TO REQUEST NO. 107:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 107 as overly broad, unduly burdensome, and not proportional to the needs of this case including to the extent it seeks "all" documents for an unlimited time period.  CoStar further objects to Request No. 107 as not relevant or reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are entirely unrelated to any claim or defense in this matter.  CoStar further objects to this Request to the extent that it is duplicative and cumulative of Request No. 106.

Subject to and without waiving the foregoing General and Specific objections, CoStar will conduct a reasonable search of centrally maintained, non-custodial

1   documents and produce responsive, non-privileged documents in response to this

2   Request, to the extent such documents exist.

3   **REQUEST FOR PRODUCTION NO. 108:**

4       All DOCUMENTS RELATING TO statements claiming, alleging, or

5   suggesting that YOU hold monopoly power.

6   **RESPONSE TO REQUEST NO. 108:**

7       CoStar incorporates its General Objections and its Objections to Definitions

8   and Instructions as if fully set forth herein.  CoStar objects to Request No. 108 as

9   overly broad, unduly burdensome, not relevant or reasonably calculated to lead to

10  the discovery of admissible evidence, and not proportional to the needs of this case

11  including to the extent it seeks "all" documents for an unlimited time period and is

12  not limited to the U.S., commercial real estate, or CREXi's alleged "relevant

13  markets".  CoStar further objects to Request No. 108 as duplicative and cumulative

14  of Request No. 54, in response to which CoStar has agreed to conduct a reasonable

15  search and produce responsive documents.  CoStar further objects to Request No.

16  108 as vague and ambiguous, including in its use of the undefined term "monopoly

17  power" which has a particular meaning under the antitrust laws.  In responding to

18  this Request, CoStar does not admit that any document it may produce represents

19  "monopoly power" in a legal sense, or relates in any way to a legally cognizable

20  relevant antitrust market.

21      Subject to and without waiving the foregoing General and Specific objections,

22  CoStar is willing to meet and confer with CREXi to understand what information

23  this Request seeks that is not already covered by CoStar's response to Request No.

24  54.

25  **REQUEST FOR PRODUCTION NO. 109:**

26      DOCUMENTS sufficient to identify the name(s) of your internal customer

27  relationship software, or any software used by YOUR sales department to track or

28

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 577

1   record information RELATING TO YOUR customers, including potential and

2   former customers.

3   **RESPONSE TO REQUEST NO. 109:**

4        CoStar incorporates its General Objections and its Objections to Definitions

5   and Instructions as if fully set forth herein.  CoStar objects to Request No. 109 as

6   not relevant or reasonably calculated to lead to the discovery of admissible evidence

7   because it seeks documents that are entirely unrelated to any claim or defense in this

8   matter.   CoStar further objects to Request No. 109 as vague and ambiguous,

9   including in its use of the undefined terms and phrases "internal customer

10  relationship software," "customers," and "potential and former customers."  CoStar

11  further objects to Request No. 109 as duplicative and cumulative of Request No.

12  110.  CoStar also objects to this Request because it seeks information that is properly

13  sought through an interrogatory.

14        Subject to and without waiving the foregoing General and Specific objections,

15  CoStar will conduct a reasonable search of centrally maintained, non-custodial

16  documents and produce responsive, non-privileged documents in response to this

17  Request, to the extent such documents exist.

18  **REQUEST FOR PRODUCTION NO. 110:**

19        DOCUMENTS sufficient to identify YOUR policies, procedures, and

20  practices RELATING TO YOUR internal customer relationship software, or any

21  software used by YOUR sales department to track or record information

22  RELATING TO YOUR customers, including potential and former customers.

23  **RESPONSE TO REQUEST NO. 110:**

24        CoStar incorporates its General Objections and its Objections to Definitions

25  and Instructions as if fully set forth herein.  CoStar objects to Request No. 110 as

26  overly broad, unduly burdensome, not relevant or reasonably calculated to lead to

27  the discovery of admissible evidence, and not proportional to the needs of this case

28  as it seeks documents that are entirely unrelated to any claim or defense in this

matter.   CoStar further objects to Request No. 110 as vague and ambiguous, including in its use of the undefined terms and phrases "internal customer relationship software," "customers," and "potential and former customers."

Subject to and without waiving the foregoing General and Specific objections, CoStar is willing to meet and confer with CREXi to understand the relevance of this Request.

**REQUEST FOR PRODUCTION NO. 111:**

All DOCUMENTS RELATING TO YOUR use, access, or review of data or photographs from CREXi in connection with creating, populating, or updating listings on any COSTAR website.

**RESPONSE TO REQUEST NO. 111:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 111 as overly broad, unduly burdensome, and not proportional to the needs of this case including to the extent it seeks "all" documents for an unlimited time period.  CoStar further objects to Request No. 111 as overly broad, unduly burdensome, and not relevant or reasonably calculated to lead to the discovery of admissible evidence because it seeks documents that are entirely unrelated to any claim or defense in this matter.  CoStar also objects to this Request as overly broad to the extent that it seeks information that is not limited to commercial real estate.

CoStar further objects to this Request to the extent it is duplicative of Request Nos. 12, 21, 23, 24, 39 and 40, in response to which CoStar has agreed to conduct a reasonable search and produce responsive documents, as well as Interrogatory No. 17, in response to which CoStar provided detailed responses, produced documents, and agreed to produce additional documents sufficient to show the training that field researchers (photographers) and other researchers receive.

COSTAR'S OBJS. & RESPS. TO CREXI'S THIRD SET OF RFPS CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 579

**REQUEST FOR PRODUCTION NO. 112:**

All DOCUMENTS RELATING TO policies, practices, training guides, or background materials RELATING TO YOUR use, access, or review of data or photographs from CREXI in connection with creating, populating, or updating listings on any COSTAR website.

**RESPONSE TO REQUEST NO. 112:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 112 as overly broad, unduly burdensome and not proportional to the needs of this case including to the extent it seeks "all" documents for an unlimited time period.  CoStar further objects to Request No. 112 as not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case as it seeks documents that are entirely unrelated to any claim or defense in this matter.

CoStar further objects to Request No. 112 as duplicative and cumulative of Request Nos. 12, 24, and 40, in response to which CoStar has agreed to conduct a reasonable search and produce responsive documents, as well as Interrogatory No. 17, in response to which CoStar provided detailed responses, produced documents, and agreed to produce additional documents sufficient to show the training that field researchers (photographers) and data researchers receive.

**REQUEST FOR PRODUCTION NO. 112(a):**[1]

All DOCUMENTS RELATING TO targets, metrics, incentives, bonuses, or other financial or business metrics in connection with creating, populating, or updating listings on any COSTAR website.

---

[1] CREXi's Third Set of Requests for Production inadvertently listed "Request for Production No. 112" twice.  CoStar has amended the second Request to "Request No. 112(a)" to avoid any additional confusion.

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

**RESPONSE TO REQUEST NO. 112(a):**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 112(a) as overly broad, unduly burdensome, and not proportional to the needs of this case including to the extent it seeks "all" documents for an unlimited time period.  CoStar further objects to Request No. 112(a) as not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case as it seeks documents that are entirely unrelated to any claim or defense in this matter.  CoStar further objects to this Request as overly broad to the extent that it is not limited to CoStar's commercial real estate websites.  CoStar further objects to this Request as vague and ambiguous including in its use of the undefined terms "targets," "metrics," "incentives," "bonuses," "other financial" or "business metrics."

Subject to and without waiving the foregoing General and Specific objections, CoStar is willing to meet and confer with CREXi to understand the relevance of this Request.

**REQUEST FOR PRODUCTION NO. 113:**

All DOCUMENTS RELATING TO the strategic value to YOU or YOUR business of having brokers or customers utilize YOUR LOOPLINK feature.

**RESPONSE TO REQUEST NO. 113:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 113 as overly broad, unduly burdensome, and not proportional to the needs of this case including to the extent it seeks "all" documents for an unlimited time period.  CoStar further objects to Request No. 113 as not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case as it seeks documents that are entirely unrelated to any claim or defense in this

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 581

#:29220

matter.   CoStar further objects to Request No. 113 as vague and ambiguous, including in its use of the undefined phrase "strategic value."

Subject to and without waiving the foregoing General and Specific objections, CoStar will produce documents responsive to this Request that are identified through CoStar's custodial document review, should such documents exist.

**REQUEST FOR PRODUCTION NO. 114:**

DOCUMENTS sufficient to show every broker or customer that utilizes YOUR LOOPLINK feature.

**RESPONSE TO REQUEST NO. 114:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 114 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case including because it seeks information regarding "every broker" or "customer" who has utilized LoopLink for an unlimited time period.  There are no allegations in this case that require that CoStar identify "every" broker or "customer" who has ever used LoopLink for an unlimited time period.

**REQUEST FOR PRODUCTION NO. 115:**

All DOCUMENTS relating to YOUR efforts to block COSTAR competitors, including but not limited to CREXI, from accessing any portion of a customer's or broker's website, including pages hosted by or affiliated with LOOPLINK.

**RESPONSE TO REQUEST NO. 115:**

CoStar incorporates its General Objections and its Objections to Definitions and Instructions as if fully set forth herein.  CoStar objects to Request No. 115 as overly broad, unduly burdensome, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of this case including to the extent it seeks "all" documents for an unlimited time period,.  CoStar further objects to Request No. 115 as duplicative and cumulative of Request No. 29,

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

Exhibit V, Page 582

1  in response to which CoStar has already agreed to conduct a reasonable search and

2  produce responsive documents.

3

4  Dated: March 4, 2022                    Respectfully submitted,

5                                          */s/ Nicholas J. Boyle*

6

7                                          Jessica Stebbins Bina (Bar No. 248485)
                                           Elyse M. Greenwald (Bar No. 268050)

8                                          10250 Constellation Boulevard
                                           Suite 1100

9                                          Los Angeles, CA 90067

10                                         Tel: 424.653.5525
                                           Fax: 424.653.5501

11                                         Email: jessica.stebbinsbina@lw.com

12                                                 elyse.greenwald@lw.com

13                                         Belinda S Lee (Bar. No. 199635)

14                                         505 Montgomery Street
                                           Suite 2000

15                                         San Francisco, CA 94111

16                                         Tel: 415.391.0600
                                           Fax: 415.395.8095

17                                         Email: belinda.lee@lw.com

18

19                                         Nicholas J. Boyle
                                           (admitted *pro hac vice*)

20                                         Sarah A. Tomkowiak
                                           (admitted *pro hac vice*)

21                                         555 Eleventh Street, NW

22                                         Suite 1000
                                           Washington, D.C. 20004

23                                         Tel: 202.637.2200

24                                         Fax: 202.637.2201
                                           Email: nicholas.boyle@lw.com

25                                                 sarah.tomkowiak@lw.com

26

27                                         *Counsel for CoStar Group, Inc., and*

28                                         *CoStar Realty Information, Inc.*

COSTAR'S OBJS. & RESPS. TO
CREXI'S THIRD SET OF RFPS
CASE NO. 2:20-cv-08819-CBM-AS

# CERTIFICATE OF SERVICE

I am employed in the County of San Francisco, State of California.  I am over the age of 18 years and not a party to this action.  My business address is Latham & Watkins LLP, 505 Montgomery Street, Suite 2000, California 94111.

On March 4, 2022, I caused the following document(s) to be served:

- **COSTAR'S OBJECTIONS AND RESPONSES TO CREXI'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

via electronic mail delivery to the person(s), address(es), and email address(es) set forth below:

Elliot R. Peters
Warren A. Braunig
Elizabeth K. McCloskey
Nicholas S. Goldberg
Ann Niehaus
Christi Zaleski
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email: CREXSTAR@keker.com

*Attorneys for Defendant Commercial Real Estate Exchange, Inc.*

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 4, 2022, at San Francisco, California.

*/s/ Elizabeth Yandell*
Elizabeth H. Yandell

# EXHIBIT W

**Elizabeth K Levin**
# Lives in Oakland, California

People / L / Levin / Elizabeth Levin / CA / Oakland

# Elizabeth K Levin  Age 41 (Feb 1981)

Full Background Report ➜ Ad

---



### Also Known As

Elizabeth K McCloskey, Elizabeth Katherine Mc Closkey, Eliza McCloskey, Elizabeth Mc

---



### Current Address

7 Emery Ln
Oakland, CA 94618
Alameda County
(Mar 2018 - Aug 2022)

---



### Phone Numbers

(917) 291-1330 - Wireless
Last reported Jul 2022

(917) 683-9834 - Wireless
Last reported Aug 2013

(510) 524-9014 - Landline
Last reported Jul 2020

(510) 527-7931 - Landline
Last reported May 2020

(510) 525-5106 - Landline
Last reported Mar 2016

---



### Full Background Report  Sponsored Link

- Arrest Records
- Court Records
- Marriage & Divorce Records
- Birth & Death Records
- Police Records
- Search Warrants
- Criminal Records Data
- Property Records

- Current and Past Contact Info
- Reverse Phone Lookups
- AKAs, Age, Date of Birth
- Addresses and Phone Numbers
- Relatives and Associates
- Public Records Data
- Bankruptcies, Judgments, Liens
- Complete Background Check

View Full Background Report

### Sponsored Links



🏠 **Previous Addresses**

111 Windsor Ave
Kensington, CA 94708
Contra Costa County
(Aug 1997 - May 2020)

255 Capricorn Ave
Oakland, CA 94611
Alameda County
(Jan 2013 - Jan 2020)

2101 Baker St #4
San Francisco, CA 94115
San Francisco County
(Oct 2011 - Jun 2014)

255 Capricorn Ave
Piedmont ,CA 94611
Alameda County
(Aug 2013 - Nov 2013)

PO Box 573058
Washington, DC 20057
District Of Columbia County
(Sep 2000 - Apr 2012)

PO Box 577081
Washington, DC 20057
District Of Columbia County
(Feb 2000 - Apr 2012)

834 6th St #102
Santa Monica, CA 90403
Los Angeles County
(Aug 2006 - Jun 2011)

310 E 70th St #10M
New York, NY 10021
New York County
(Oct 2004 - Mar 2008)

328 W 11th St #4H
New York, NY 10014
New York County
(Jul 2006 - Mar 2007)

235 E 13th St #3L
New York, NY 10003
New York County
(Nov 2004 - Dec 2005)

1432 36th St NW
Washington, DC 20007
District Of Columbia County
(Nov 2004)

1501 M St NW #300
Washington, DC 20005
District Of Columbia County
(Aug 2004)

2115 1/2 O St NW #B
Washington, DC 20037
District Of Columbia County
(Sep 2003)

1237 33rd St NW
Washington, DC 20007
District Of Columbia County
(Aug 2001)

## Sponsored Links

---



### Possible Relatives

Matthew I McCloskey, Ann S Levin, Florence Levin, Florence Levin, James L Levine, Jane E Levin, Margaret E Dr Heisel, Michelle R McCarthy, Richard A Levin, Sally Anne McGreevy, Barbara G McCloskey, Timothy J McCloskey.

---



### Possible Associates

Andrew M Tikofsky, Bradley A Benbrook, Charles F Fischer, Ellen S Doren, Frank H Jorden, Jay R Delaney, John B Dickson, Marc A Prager, Margarita I Federman, Mitchell T Welenken, Sergey N Konovalov, Viktoriya I Konovalova, Yael Yakar Tikofsky, Basil Y Salem, Elizabeth D Tupper, Jumana Y Salem, Nathalie El Omeiri, Suzanne Marie Miller, Alan Lewis Levine, Arthur S Levine, Arthur Saul Levine, Carl James Desando, Carl James Desando, Carolyn M Ebers, Charna F Levine, Courtney P Hughes, Dianne M Desando, Donald J Berman, Elizabeth A Heisel, Kara M McKeown, Kathryn M Heisel, Lawrence C Heisel, Lisa M Dellacorte, Lisa M Dellacorte, Margaret M Heisel, Marva M Levine, Mary A Dellacorte, Michele Desando, Patrick Allen McCarthy, Sandra W Levine, Sarah A Lamb, Stanley Richard Gorman.

---



### Full Background Report  Sponsored Link

- Arrest Records
- Court Records
- Marriage & Divorce Records
- Birth & Death Records
- Police Records
- Search Warrants
- Criminal Records Data
- Property Records

- Current and Past Contact Info
- Reverse Phone Lookups
- AKAs, Age, Date of Birth
- Addresses and Phone Numbers
- Relatives and Associates
- Public Records Data
- Bankruptcies, Judgments, Liens
- Complete Background Check

View Full Background Report

---

advertisement

**FAQ**

Where does **Elizabeth K Levin** live?

**Elizabeth K Levin's** current address is 7 Emery Ln Oakland, CA 94618.

How old is **Elizabeth K Levin**?

**Elizabeth K Levin** is 41 years old.

What is **Elizabeth K Levin's** phone number?

**Elizabeth K Levin's** number is (917) 291-1330.

TruePeopleSearch.com is not a Consumer Reporting Agency (CRA) as defined by the Fair Credit Reporting Act (FCRA). This site can't be used for employment, credit or tenant screening, or any related purpose.

# EXHIBIT X

| | |
|---|---|
| **From:** | Elizabeth K. McCloskey <emccloskey@keker.com> |
| **Sent:** | 21 July 2022 01:03 |
| **To:** | #C-M COSTAR - CREXI - LW TEAM |
| **Cc:** | crexstar@keker.com |
| **Subject:** | CoStar Group, Inc., et al. v. Commercial Real Estate Exchange, Inc. |

Counsel,

We understand that, on July 11, 2022, CoStar sued Neptune, an independent contractor who has performed work for CREXi, in India, and that, as with CoStar's complaint against Arcgate, CoStar's complaint against Neptune is filled with misleading and inaccurate information regarding both CREXi and Neptune, and the scope of Neptune's services for CREXi.

CoStar's actions in India against Neptune and Arcgate are closely related to this one and are intended, in significant part, to gather evidence to be used in this case against CREXi.  Indeed, CoStar went so far as to file in this action certain Indian pleadings, including a misleading declaration it had prepared for the CEO of Arcgate to sign, based on the assertion that the actions are "related."  We therefore request with respect to Neptune, as we have with respect to Arcgate, that CoStar provide to us any documents, photographs or electronic data, including communications with Neptune, Neptune personnel and Neptune's counsel, that CoStar receives or possesses.  Although a formal Request for Production will be served today for these items, since they are already called for by prior RFPs we have served, we would expect your production to come quickly.  We also request that CoStar serve on CREXi, any and all pleadings that are filed in the action against Neptune, concurrent with such pleadings being filed, and to take no measures to conceal from CREXi, any action CoStar takes against Neptune, or any other independent contractor or vendor with which CREXi has worked.

We also write to put CoStar on notice that CoStar explicitly does not have CREXi's authorization or permission to access any platform, account, storage, or data source of CREXi's, through any means of access which CoStar learns about or discovers through Neptune, or any other independent contractor or vendor with which CREXi has worked.  If CoStar accesses any CREXi platform, account, storage or data source of CREXi's, such access will be in violation of both federal and state law, and we will promptly bring it to the attention of Judge Marshall and Judge Sagar.

Finally, we also write to put CoStar on notice that, if CoStar uses any improper or unethical means to extract testimony from Neptune, CREXi will—as it will soon do relating to CoStar's improper and unethical conduct in relation to Arcgate—raise that conduct with Judge Marshall and Judge Sagar, and ask for all appropriate remedies, including sanctions.

Please respond to confirm that CoStar will provide (1) any documents, photographs or electronic data, including communications with Neptune, Neptune personnel and Neptune's counsel, that CoStar receives or possesses from Neptune; and (2) serve on CREXi all pleadings from CoStar's action against Neptune, as well as any subsequent action CoStar files which relates, in any way, to CREXi, and that such service will occur concurrent with the filing of such pleadings.

Thanks,
Elizabeth

**Elizabeth K. McCloskey**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1890

+14156762269 direct | 415 391 5400 main
emccloskey@keker.com | vcard | keker.com

Exhibit X, Page 590