KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS #158708
epeters@keker.com
WARREN A. BRAUNIG #243884
wbraunig@keker.com
NICHOLAS S. GOLDBERG #273614
ngoldberg@keker.com
KATIE LYNN JOYCE #308263
kjoyce@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendant and Counterclaimant
COMMERCIAL REAL ESTATE EXCHANGE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>COMMERCIAL REAL ESTATE EXCHANGE, INC.,<br><br>Defendant.<br><br>COMMERCIAL REAL ESTATE EXCHANGE, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC.,<br><br>Counterdefendants | Case No. 2:20-cv-08819 CBM (ASx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:       May 9, 2023<br>Time:      10:00 a.m.<br>Ctrm:      8D, 8th Floor<br>Judge:     Hon. Consuelo B. Marshall<br><br>Date Filed:  September 25, 2020<br><br>Discovery Cutoff:  May 31, 2023<br>Pre-Trial Conference:  February 6, 2024<br>Trial Date: March 26, 2024 |

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................... 2

    A. Costar's watermark logo does not convey copyright information. ............ 2

    B. This Court dismisses CoStar's DMCA claims as a matter of law. ............. 4

    C. CoStar re-alleges its defeated DMCA claims based on similar facts. ........ 5

III. ARGUMENT ......................................................................................................... 6

    A. CoStar's watermark is not CMI, as a matter of law. ................................. 7

    B. CoStar's reliance on its logo alone as CMI would impermissibly blur the line between trademark law and copyright law ............................. 11

    C. CoStar's new allegations are irrelevant to determining whether the watermark is CMI as a matter of law. .............................. 13

IV. CONCLUSION .................................................................................................... 16

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 2:20-cv-08819 CBM (ASx)

2093539

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aaberg v. Francesca's Collections, Inc.*,
No. 17-CV-115 (AJN), 2018 WL 1583037 (S.D.N.Y. Mar. 27, 2018) .................................................................................................................. 10

*Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*,
No. CV 16-1968-GW, 2017 WL 10350547 (C.D. Cal. Nov. 13, 2017) ................................................................................................. 9, 10, 11, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 6

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ...................................................................................... 15

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) ...................................................................... 12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) .................................................................................. 12, 13

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
No. 222CV01463RGKMAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) .......................................................................................................... 7

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........................................................................ 16

*Fischer v. Forrest*,
968 F.3d 216 (2d Cir. 2020) ......................................................................... 14

*Goldstein v. Metro. Reg'l Info. Sys., Inc.*,
No. TDC-15-2400, 2016 WL 4257457 (D. Md. Aug. 11, 2016) ............. 11, 14

*IQ Grp., Ltd. v. Wiesner Pub., LLC*,
409 F. Supp. 2d 587 (D.N.J. 2006) ..................................................... 9, 12, 13

*Izmo, Inc. v. Roadster, Inc.*,
No. 18-CV-06092-NC, 2019 WL 13210561 (N.D. Cal. Mar. 26, 2019) ................................................................................................... 9, 16

*Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*,
   No. 17 Civ. 8613 (JFK), 2018 WL 4830091 (S.D.N.Y. Oct. 4,
   2018) .......................................................................................................... 9, 10

*Maule v. Anheuser Busch, LLC*,
   No. 17-00461, 2018 WL 3608934 (E.D. Pa. July 27, 2018) .................. 10, 11, 14

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015) ......................................................................... 7

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295 (3d Cir. 2011) ............................................................................ 9

*Pires v. UOB Holdings (USA) Inc.*,
   No. 20-CV-01612-LTS-GWG, 2022 WL 902464 (S.D.N.Y. Mar.
   28, 2022) ........................................................................................................ 11

*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*,
   804 F. App'x 668 (9th Cir. 2020) ..................................................................... 14

*Shihab v. Complex Media, Inc.*,
   No. 21-CV-6425 (PKC), 2022 WL 3544149 (S.D.N.Y. Aug. 17,
   2022) ............................................................................................................... 11

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) .................................................................... 7, 15

**Federal Statutes**

17 U.S.C. § 1202(b) ............................................................................................. 7

17 U.S.C. § 1202(c) ..................................................................................... *passim*

## I. INTRODUCTION

Defendant CREXi moves to dismiss two claims by Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar") that this Court previously dismissed, as a matter of law, two years ago. At the outset of this case, CoStar alleged that CREXi had violated the Digital Millennium Copyright Act ("DMCA") by removing copyright management information ("CMI") from copyrighted photographs and distributing those photographs on CREXi's website. CoStar argued at the time that its faint grey watermark logo—which does not include CoStar's name, a copyright symbol or any other information identifying that CoStar owns a copyright on the images upon which it appears—is CMI. This Court disagreed, holding that CoStar's DMCA claims "fail[ed] as a matter of law because [CoStar's] watermark logo does not constitute CMI." Dkt. 71 at 6. The Court's order of dismissal did not grant CoStar leave to amend.

Nonetheless, in its recently filed Second Amended Complaint ("SAC"), CoStar attempts to resuscitate these long-buried causes of action. CoStar's recycled claims are just as deficient now as they were two years ago. CoStar relies upon the same failed argument that its unadorned logo, which the Court found does not adequately indicate copyright ownership, is CMI. All that CoStar has added this time around are allegations that CREXi knew the logo was affiliated with CoStar and sought to remove images with that logo from CREXi's website. But those allegations are irrelevant as a matter of law. Whether a watermark qualifies as CMI is an ***objective, not subjective*** test. And even if CREXi's subjective understanding mattered, the SAC does not sufficiently allege that CREXi knew the logo indicated ***copyright ownership***, only that CREXi affiliated it with CoStar ***branding***.

CoStar's bare logo does not convey copyright ownership to the public, and therefore, CoStar's DMCA claims fail as a matter of law. The Court should again dismiss CoStar's DMCA causes of action (Counts II and III) with prejudice.[1]

---

[1] In its prior motion to dismiss, CREXi also sought to dismiss the Fourth, Fifth,

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 2:20-cv-08819 CBM (ASx)

2093539

## II. BACKGROUND

### A. Costar's watermark logo does not convey copyright information.

CREXi and CoStar operate competing commercial real estate listing platforms, on which brokers and property owners can list properties for sale or lease. CoStar 2d Am. Compl. (SAC), Dkt. 337 ¶¶ 47, 49.[2] On CREXi, brokers either upload listing information and photographs directly through the CREXi platform or instruct CREXi to create listings for them. CREXi's listing platform includes hundreds of thousands of listings and millions of real estate images. Despite never serving CREXi with a single takedown notice under the DMCA, CoStar now seeks to invoke the DMCA to claim that its bare logo constitutes CMI under that statute. *See id.* ¶¶ 325, 332.

CoStar alleges that some (but not all) of the images on CoStar's website include a CoStar logo. *Id.* ¶ 101. The CoStar logo is comprised of five small blocks that create a pentagon. The CoStar logo looks like other well-recognized symbols, including the recycling and google chrome symbols, included below.

| CoStar logo | Recycling symbol | Google chrome symbol |
|---|---|---|
| ▱ | ♻ | ◉ |

On CoStar's website, the logo typically appears in faint grey ink in the bottom right corner of a photograph, often against a grey background, occupying a tiny space that makes up less than 1% of the photograph. Below are two examples.

---

Sixth and Seventh Causes of Action. Dkt. 55-1. The Court declined to dismiss those claims. Dkt. 71 at 7. To the extent required to preserve those arguments for appeal, CREXi incorporates those arguments and reasserts them here but does not seek a further ruling on them.

[2] Yesterday, CoStar filed a corrected version of the SAC (Dkt. 351). The paragraph numbers are the same between both versions of the SAC.

## CoStar Copyrighted Photograph



## CoStar's Copyrighted Photograph



*Id.* ¶¶ 146, 204.

Images bearing the watermark logo do not identify CoStar's company name,

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 2:20-cv-08819 CBM (ASx)

2093539

website URL, or any other identifying information. *See id.* ¶¶ 146, 204. Nor does CoStar's name, or any other indication of CoStar's supposed ownership appear on the logo, near the logo, or anywhere else on the images. The images also do not include the copyright symbol ©, a copyright registration number, or even the word "copyright"—any of which might indicate copyright ownership. Further, CoStar *does not allege* that its logo appears only on images for which it owns a copyright and not on images owned by a third party—a basic precondition of the logo functioning as valid CMI.

### B. This Court dismisses CoStar's DMCA claims as a matter of law.

In its First Amended Complaint ("FAC"), filed on December 14, 2020, CoStar asserted two causes of action for alleged violations of the DMCA. Dkt. 33 ¶¶ 208–19. CoStar alleged in the FAC that CREXi had violated the DMCA—first, by cropping CoStar's logo from digital photographs, and second, by distributing (i.e., displaying) images with the logo cropped out. *See id.* ¶¶ 210, 216. CoStar alleged in the FAC that its watermark "publicly identifies CoStar's ownership of the images," *id.* ¶ 65, and thus "constitutes copyright management information," *id.* ¶ 209; *see also id.* ¶ 215. The FAC also included allegations about the subjective meaning of CoStar's logo. Specifically, CoStar contended that its logo was understood by "third parties" to signify copyright, alleging that the "the presence of watermarks helps third parties, including other companies in the commercial real estate industry, recognize and remove infringing images." *Id.* ¶ 66.

CREXi moved to dismiss, arguing that CoStar's DMCA claims were defective, "as a matter of law," because CoStar's logo was not CMI. Dkt. 55-1 at 20–22. This Court agreed, holding that the DMCA claims "fail[ed] as a matter of law because the watermark logo does not constitute CMI." Dkt. 71 at 6. The Court rejected CoStar's allegation that its logo was CMI because it "publicly identifies CoStar's ownership of the images and protects CoStar's property," properly

4

recognizing that allegation was a legal conclusion. *Id.* at 5 (quoting Dkt. 33 ¶ 65). Focusing on CoStar's logo, the Court explained that "the watermark logo, itself, does not contain any identifying information about the author of the work pursuant to § 1202(c)." *Id.* And "[i]n contrast" to the cases CoStar cited, CoStar's "logo does not include the author's name, title, an alphanumerical designation, or identifying symbols referring to such information." *Id.* at 6. The DMCA claims were dismissed as a matter of law without leave to amend.

### C. CoStar re-alleges its defeated DMCA claims based on similar facts.

Two years later, CoStar is trying another bite at the apple. CoStar's Second Amended Complaint includes the same previously dismissed DMCA causes of action. Dkt. 337 ¶¶ 324–36. Those claims are based primarily on the same facts and legal conclusion as before: a description of the logo; a claim that it is applied to CoStar copyrighted photographs; allegations that the watermark helps it identify infringers and "helps third parties . . . recognize and remove infringing images"; and a legal conclusion that CoStar's "watermark constitutes copyright management information." *Id.* ¶¶ 325, 332.

In further support of the recycled allegation that the watermark logo is utilized by "third parties" to "recognize and remove infringing images," FAC ¶ 66, the SAC adds three new allegations in an attempt to establish that *CREXi* understood the CoStar logo to be affiliated with CoStar copyrights.

*First*, CoStar contends that CREXi "engaged a vendor, Restb, 'for the purpose of identifying photographs on the CREXi platform that contain the logo of a third party;'" that Restb "states that it uses 'artificial intelligence to quickly recognize photographs that contain company logos or watermarks;'" and that "CREXi utilizes Restb's services in order to identify photographs in the real estate listings it receives from brokers that *might be* copyright protected." Dkt. 337 ¶¶ 100, 280 (emphasis added). According to CoStar, "[t]he purpose of [Restb's]

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 2:20-cv-08819 CBM (ASx)

2093539

review of logos is to flag copyright ownership" and thus "prevent infringement." *Id.* ¶ 100 (emphasis omitted); *see also id.* ¶¶ 325, 332.

***Second***, the SAC alleges that CREXi instructed its vendors (in contracts and in videoconference trainings) not to upload photographs bearing the watermark or logo of a third party, including CoStar, because those can be "indicat[ors] of copyright protection." *Id.* ¶¶ 283–84. Of course, as CoStar acknowledges, those admonitions took place "***after CoStar filed its original complaint in 2020***," when CoStar had begun arguing that its logo was intended to indicate copyright protection. *Id.* ¶ 283 (emphasis added).

***Third***, CoStar alleges that because brokers recognize CoStar's watermark as indicating copyright ownership, CREXi must have known that CoStar's watermark indicates ownership. *See id.* ¶ 282. The SAC identifies a photograph "licensed from CoStar by a broker" to which "it appears the broker added" a watermark stating: "Photo Courtesy of CoStar Group." *Id.* According to CoStar, "[t]he addition of that language evidences that the broker clearly knew CoStar's watermark signified ownership." *Id.* CoStar then contends that because that one photograph was later displayed on CREXi, "CREXi's own website reflects industry knowledge—and CREXi's knowledge—that the CoStar logo signifies copyright ownership." *Id.*

As discussed below, regardless of the adequacy of these allegations, whether CREXi (or any other third party) subjectively associates CoStar's trademarked logo with copyright ownership is beside the point—because the legal test for copyright management information under the DMCA is an objective one.

## III.  ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The factual allegations "must plausibly suggest an entitlement to relief,

6

such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (citation and internal quotation marks omitted). Although factual allegations are taken as true and construed in the light most favorable to the plaintiff, *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015), "courts need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Whitaker*, 985 F.3d at 1176 (quoting *Iqbal*, 556 U.S. at 668).

### A.    CoStar's watermark is not CMI, as a matter of law.

CoStar's revived DMCA claims fail as a matter of law, again, because CoStar's watermark logo is not CMI. "The DMCA prohibits either intentionally removing or altering copyright management information ('CMI'), or distributing works while knowing that CMI has been removed or altered without authorization." *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 222CV01463RGKMAA, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022) (citing 17 U.S.C. § 1202(b)(1), (3)).[3] The *sine qua non* for a DMCA claim is that the information removed or altered in fact qualifies as CMI.

"[C]opyright management information" is defined in the DMCA to mean:

> any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:

---

[3] The DMCA provides in full: "No person shall, without the authority of the copyright owner or the law--

(1) intentionally remove or alter any copyright management information, [or] . . .

(3) distribute . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b).

> **(1)** The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> **(2)** The name of, and other identifying information about, the author of a work.
>
> **(3)** The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
>
> **(4)** With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.
>
> **(5)** With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.
>
> **(6)** Terms and conditions for use of the work.
>
> **(7)** Identifying numbers or symbols referring to such information or links to such information.
>
> **(8)** Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

17 U.S.C. § 1202(c). CoStar conclusorily contends that its "watermark constitutes [CMI], as it identifies CoStar as the copyright owner of such photographs." Dkt. 337 ¶ 325.

But CoStar's watermark, and the facts alleged about it, fail to establish ***any aspect*** of the requisite statutory test. CoStar's watermark does not convey "the name" of the copyright owner (i.e., CoStar), "identifying information about" the copyright owner, or any of the information "set forth in a notice of copyright." *See* 17 U.S.C. § 1202(c)(3). Printed in faint grey ink in a corner of the image, CoStar's watermark is comprised of a logo that closely resembles the well-recognized recycling symbol. The watermark does not include CoStar's name, website, address, or any information about CoStar. It does not include the copyright symbol,

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 2:20-cv-08819 CBM (ASx)

2093539

1 the copyright registration number, or the word copyright.

2      Indeed, it would be virtually impossible for CoStar to do **less** to convey that
3 it owns a copyright on a given image.  "[T]he point of CMI is to inform the public
4 that something is copyrighted and to prevent infringement." *Izmo, Inc. v. Roadster,*
5 *Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *2 (N.D. Cal. Mar. 26, 2019)
6 (quoting *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d
7 920, 928 (N.D. Ill. 2013)).  CoStar's use of a bare logo—the same trademarked
8 logo CoStar uses for its non-copyright-related branding (Dkt. 337 ¶ 98)—does just
9 the opposite.  It obscures the fact that CoStar owns a copyright, entraps
10 competitors, and makes infringement lawsuits like this one more likely, rather than
11 less likely.

12      Not surprisingly then, courts across the country have repeatedly rejected the
13 notion that a bare logo, like CoStar's, may constitute CMI, and required something
14 more.  *See, e.g.*, *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, No. CV 16-
15 1968-GW, 2017 WL 10350547, at *12 (C.D. Cal. Nov. 13, 2017) (brand logo
16 displayed "without any adjacent copyright symbol or contact information" would
17 not be actionable); *Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, No. 17 Civ. 8613
18 (JFK), 2018 WL 4830091, at *4 (S.D.N.Y. Oct. 4, 2018) (holding that the "stylized
19 words 'Marc Jacobs' with nothing more" were insufficient to constitute CMI); *IQ*
20 *Grp., Ltd. v. Wiesner Pub., LLC*, 409 F. Supp. 2d 587, 592–93, 598 (D.N.J. 2006)
21 (holding that logo with the stylized letters I and Q is not CMI).[4]

22      For example, in *Aardwolf*, a court in this district was confronted with
23 advertisements that contained a brand's logo—sometimes with additional
24 identifying information, and sometimes without.  2017 WL 10350547, at *12.
25 Although the court noted that "the Logo was not always displayed with CMI"—a

---

[4] The Third Circuit later rejected an unrelated aspect of *IQ* that is not implicated here.  *See Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (holding there is no requirement that CMI be implemented electronically or automatically).

9

Case 2:20-cv-08819-CBM-AS   Document 363-1   Filed 03/14/23   Page 14 of 20   Page ID
#:170522

scenario that the court indicated would preclude a DMCA violation—the court denied summary judgment for the defendant because there were other advertisements in the record where "the Logo *was* identified with Plaintiff's business name, address, phone number, website, and/or accompanied by a copyright symbol," creating a possibility that **CMI** was removed when the logo was utilized by defendant. *Id.* at *11–12 (emphasis added). The mere formulation of the *Aardwolf* court's analysis—whether a Logo was "accompanied by" or "displayed without" CMI—confirms that a logo itself is not CMI.[5]

Similarly, in *Maule v. Anheuser Busch, LLC*, No. 17-00461, 2018 WL 3608934 (E.D. Pa. July 27, 2018), the district court dismissed the plaintiff's DMCA claim against Anheuser Busch for the company's use of the plaintiff's photograph of the Philadelphia skyline in a neon Budweiser beer sign. *Id.* at *6. The court found that the plaintiff's claimed CMI, a text banner that read "Visit Philly Skyline Dot Com" printed on the photo, referring to a website the plaintiff owned, was not sufficient to identify him as the author or copyright owner, because it "d[id] not contain [his] name or any identifying information about him as the author of the photograph or owner of the copyright to that work, *see* § 1202(c)(2–3), nor d[id] it inform the public that something is copyrighted or prevent infringement." *Id.* (internal quotation marks and citation omitted).

By contrast, consistent with the statutory scheme, courts have found CMI where there is a combination of an owner's name or trade name, a logo, a copyright symbol, a legal notice, or other identifying information. *See, e.g., Aaberg v. Francesca's Collections, Inc.*, No. 17-CV-115 (AJN), 2018 WL 1583037, at *7 (S.D.N.Y. Mar. 27, 2018) (combination of the plaintiffs' names, brand name, logo

---

[5] The logo in *Aardwolf*, a stylized version of the plaintiff's name, came far closer to identifying the copyright holder than CoStar's recycling-symbol logo. 2017 WL 10350547, at *1 n.2. And, notably, CoStar *has* a logo that is a stylized version of its name, which CoStar emblazons on images over which it *holds no copyright*. CoStar's approach to CMI under the DMCA is exactly backward.

10
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT COMMERCIAL REAL
ESTATE EXCHANGE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No. 2:20-cv-08819 CBM (ASx)

2093539

and website address sufficient to constitute CMI); *Pires v. UOB Holdings (USA) Inc.*, No. 20-CV-01612-LTS-GWG, 2022 WL 902464, at *3 (S.D.N.Y. Mar. 28, 2022) (watermark containing Plaintiff's name and copyright symbol was CMI); *Shihab v. Complex Media, Inc.*, No. 21-CV-6425 (PKC), 2022 WL 3544149, at *1, *5 (S.D.N.Y. Aug. 17, 2022) (combination of the artist's trade name "JAMIL GS" and a copyright symbol was sufficient); *Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. TDC-15-2400, 2016 WL 4257457, at *7–8 (D. Md. Aug. 11, 2016) (combination of the copyright symbol "©" with the author's website URL, which included his name, sufficient to constitute CMI).

Here, like in *Maule* and *Aardwolf* and unlike the cases noted just above, CoStar's logo does not include, nor is it accompanied by, sufficient information to identify CoStar as the author or owner of the copyright. CoStar's logo does not include the copyright symbol (©) or **any** identifying information about CoStar, such as a web address or company name. And, unlike the watermarked website name in *Maule*, which a member of the public could visit for additional information, CoStar's watermark does not even point the public to a location that reflects copyright information. CoStar's watermark logo therefore does not meet the statutory definition of CMI.

In its order previously dismissing CoStar's DMCA claims, this Court agreed, correctly holding that CoStar's "watermark logo, itself, does not contain any identifying information about the author of the work," Dkt. 71 at 5, and thus, "as a matter of law . . . does not constitute CMI," *id.* at 6. Nothing has changed, and the Court should again dismiss those claims.

### B. CoStar's reliance on its logo alone as CMI would impermissibly blur the line between trademark law and copyright law.

CoStar's logo cannot be CMI for a second, independent reason: because treating a mere logo as CMI would foster confusion, rather than certainty, and obliterate the distinction between trademark and copyright law, "creat[ing] a

11

species of mutant copyright law." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003).  In *Dastar*, the U.S. Supreme Court declined to recognize a cause of action, under the Lanham Act, for misrepresentation of authorship over no-longer-copyrighted works, because it would render certain copyright law provisions "superfluous." *Id.* at 34–35.  The Court in *Dastar* explained:  "[I]n construing the Lanham Act, we have been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." *Id.* at 34 (citation and internal quotation marks omitted).

If a trademarked logo could be CMI, a trademark would be serving as a proxy for copyright notification—which extends far beyond the information a trademark is intended to convey.  "[L]ogos are usually considered to invoke trademark protection, not copyright protection." *IQ Grp.*, 409 F. Supp. 2d at 593; *see also Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999) (purpose of a trademark is to signify the marketer of goods or services).  Indeed, CoStar acknowledges in the SAC that its watermark logo "is present on six separate registered CoStar trademarks." Dkt. 337 ¶ 98.

Under CoStar's formulation of the DMCA, CoStar's trademark logo would become CoStar's signifier of copyright.  That argument has been tried and rejected.  In *IQ Group*, the plaintiff argued that its logo—"the outline of a capital 'Q' with the outline of a lower-case 'I' in the center," both shaded as in graphical relief—was CMI that put the public on notice that it owned the copyright for certain advertisements.  409 F. Supp. 2d at 589, 591.  The district court disagreed:

> The problem is that this construction allows a trademark to invoke DMCA protection of copyrights, eliminating the differentiation of trademark from copyright that is fundamental to the statutory schemes. If every removal or alteration of a logo attached to a copy of a work gives rise [to] a cause of action under the DMCA, the DMCA becomes an extension of, and overlaps with, trademark law.

*Id.* at 592–93.  Moreover, as the court in *IQ Group* recognized, allowing a trademarked logo to serve as CMI would create confusion and undermine the DMCA's goal of requiring a clear indication of copyright ownership.  *Id.* at 593; *see* 17 U.S.C. § 1202(c).  The public would have no clear way of knowing whether a logo on a work was intended to convey copyright ownership or mere branding.  Consistent with the Supreme Court's guidance in *Dastar*, this Court should not countenance a result that blends the distinct "statutory schemes" and renders trademark a species of copyright designation.

### C. CoStar's new allegations are irrelevant to determining whether the watermark is CMI as a matter of law.

In a last-ditch effort to revive its DMCA claims, CoStar's SAC adds new allegations about ***CREXi's purported understanding*** of CoStar's watermark.  Dkt. 337 ¶¶ 280–84.  CoStar's theory seems to be that its logo constitutes CMI so long as "CREXi knows that [it] signals CoStar's copyright ownership over a photograph."  *Id.* ¶ 280.  But, as a matter of law, CREXi's understanding of what CoStar's logo "signals" is irrelevant.  In fact, CoStar's prior Complaint similarly included allegations about subjective third-party understanding of CoStar's watermark (FAC ¶ 66)—but this Court nonetheless dismissed CoStar's DMCA claims based on objective factors.

In evaluating purported CMI, and consistent with the DMCA itself, courts apply an ***objective test*** that evaluates the words, placement, and context of the supposed copyright information, not the subjective understanding of the defendant.  Indeed, courts universally look to objective, not subjective, factors in assessing whether a logo constitutes CMI.  In *SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*, 804 F. App'x 668 (9th Cir. 2020), for example, the Ninth Circuit explained that "CMI is defined as information . . . that identifies the owner, author, or title of the work."  *Id.* at 670.  The court held that plaintiff's information, a "fictitious name" that failed to "identify the title of Plaintiff's website" was not

13

CMI because it "did not identify Plaintiff as the owner or author of any content on the website." *Id.* And, in *Fischer v. Forrest*, 968 F.3d 216, 223 (2d Cir. 2020), the Second Circuit rejected a plaintiff's argument that his name, in an advertisement, was CMI because it was "part of a product name," rather than "a reference to [him] as the owner of the copyrighted text." *Id.*

District courts have similarly looked to objective factors on the watermark in question. In *Goldstein*, a case also involving copyrighted photographs, the district court carefully parsed the wording and placement of the watermark, which read "© www.goldsteinphoto.com centered at the bottom of the image." 2016 WL 4257457, at *1. The court concluded it was CMI. *Id.* at *7–8. Whether the defendant understood that to be CMI played no part in the analysis. *Id.*; *see also Aardwolf*, 2016 WL 9275401, at *11–12 (evaluating logo and other information displayed with it); *Maule*, 2018 WL 3608934, at *7 (rejecting DMCA claim because the phrase "Visit Philly Skyline Dot Com" did not "contain Maule's name or any identifying information about him as the author of the photograph or copyright owner"). All of these courts focused on the information present on the copyrighted work to determine whether it identified the copyright owner.

Likewise, this Court's prior opinion dismissing CoStar's DMCA claims utilized an objective test. The Court correctly explained that courts evaluate whether the purported CMI "contain[s] any identifying information about the author of the work pursuant to § 1202(c)." Dkt. 71 at 5. The Court appropriately gave no weight to CoStar's allegations that other companies in the commercial real estate ("CRE") industry recognize CoStar's logo and use it to identify CoStar's copyrighted materials. *See* Dkt. 58 at 20 (citing FAC ¶¶ 65–66). CoStar's revised allegations about CREXi's understanding as a CRE industry member are similarly irrelevant.

The case law's exclusive use of objective factors is consistent with the DMCA's statutory text. The DMCA articulates a long list of objective information

14

that may qualify as copyright management information.  17 U.S.C. § 1202(c).  Had Congress intended to include, within that list, ***whether the defendant or other third parties understand information to be a signal of copyright ownership***, it would have done so.  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." (citation omitted)).  CoStar invites the Court to invent a subjective standard that would essentially overrule the plain language of section 1202(c).  The Court should decline to do so.

Even if CREXi's subjective understanding were relevant, however (it is not), the SAC does not allege, with non-conclusory facts, that CREXi or anyone else understood CoStar's tiny recycling-symbol logo to mean that CoStar owns a copyright.  *See Whitaker*, 985 F.3d at 1176 (conclusory assertions insufficient to survive motion to dismiss).  CoStar alleges that "CREXi engaged a third-party vendor, Restb, for purposes of identifying photographs on the CREXi platform containing the logo of a third party" and that CREXi removes those images when they are identified.  Dkt. 337 ¶¶ 280–81.  But that allegation only establishes that CREXi removes third-party branding from its site.  CoStar's logical leap that CREXi "knows" that CoStar's logo is an indication of copyright ownership is not a factual allegation, but rather a conclusion entitled to no weight on a motion to dismiss.  *See Whitaker*, 985 F.3d at 1176.  Likewise, CoStar points to instructions given by CREXi to its vendors telling them not to post images with CoStar's watermark logo, because it is an "indicator[] of copyright protection."  Dkt. 337 ¶¶ 283–84.  But those instructions were given ***after CoStar filed suit in this case***, and merely reflect CoStar's asserted legal position.  CoStar has not alleged non-conclusory facts supporting the allegation that CREXi understood, prior to the filing of this action, that CoStar's logo was indicative of copyright ownership.[6]

---

[6] CoStar also points to a broker's acknowledgement that CoStar owned a photo as somehow demonstrating CREXi's knowledge of copyright ownership.  But according to CoStar's own allegations, the broker knew that CoStar owned the

In any event, what CREXi did or did not understand (then or now) has no bearing on the legal analysis. "[T]he point of CMI is to inform *the public* that something is copyrighted." *Izmo*, 2019 WL 13210561, at *2 (emphasis added) (quoting *Pers. Keepsakes*, 975 F. Supp. 2d at 928). Accordingly, CoStar's watermark must establish CoStar's copyright ownership to the public, **based on the objective information on the photographs**. CoStar's logo fails to do so. Accordingly, the SAC's new allegations about CREXi's understanding of the watermark cannot save CoStar's DMCA claims.

## IV. CONCLUSION

Accordingly, the Court should again dismiss CoStar's second and third causes of action. Dismissal should be **with prejudice** because CoStar has already amended its complaint twice and the second and third causes of action suffer from fatal defects that cannot be cured by further amendment. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016).

Dated: March 14, 2023          By: KEKER, VAN NEST & PETERS LLP

/s/ *Warren A. Braunig*
Elliot R. Peters
Warren A. Braunig
Nicholas S. Goldberg
Katie Lynn Joyce
Connie P. Sung
Jason S. George
Niall M. Frizzell
Christine M. Zaleski
Kelly S. Kaufman

Attorneys for Defendant and Counterclaimant
COMMERCIAL REAL ESTATE EXCHANGE, INC.

---

photo because he or she *licensed it* from CoStar. Dkt. 337 ¶ 282. The addition of the language "Photo Courtesy of CoStar Group" shows that the recycling symbol was **insufficient** to demonstrate CoStar's ownership of the photo. *Id.*