1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   WESTERN DIVISION

4        THE HON. CONSUELO B. MARSHALL, JUDGE PRESIDING

5

6   CoStar Group, Inc., et al.,        )
                                       )
7              Plaintiff,              )
                                       )
8        vs.                           ) No. CV 20-8819-CBM
                                       )
9   Commercial Real Estate Exchange,   )
    Inc.,                              )
10                                     )
               Defendant.              )
11   _____)

12

13

14

15

16           REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                Los Angeles, California

18              Tuesday, February 14, 2023

19

20

21

22

23

24              Wil S. Wilcox, CSR 9178
           Official U.S. District Court Reporter
                  350 West 1st Street
25            Los Angeles, California 90012
                  wil.wilcox@gmail.com

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFF, COSTAR GROUP, INC.:

 3              Nicholas J. Boyle
                Latham and Watkins LLP
 4              555 Eleventh Street NW, Suite 1000
                Washington, DC 20004-1304
 5              Phone: 202-637-2200
                Fax: 202-637-2201
 6              Email: nicholas.boyle@lw.com

 7              Jessica Stebbins Bina
                Latham and Watkins LLP
 8              10250 Constellation Boulevard Suite 1100
                Los Angeles, CA 90067
 9              Phone: 424-653-5500
                Fax: 424-653-5501
10              Email: jessica.stebbinsbina@lw.com

11              Caitlin E. Dahl
                Pro Hac Vice
12              Latham and Watkins LLP
                330 North Wabash Avenue, Suite 2800
13              Chicago, IL 60611
                Phone 312-876-7700
14              Fax: 312-993-9767
                Email: caitlin.dahl@lw.com
15

16    FOR THE DEFENDANT, COMMERCIAL REAL ESTATE EXCHANGE INC.:

17              Elliot R Peters
                Keker Van Nest and Peters LLP
18              633 Battery Street
                San Francisco, CA 94111
19              415-391-5400
                Fax: 415-397-7188
20              Email: epeters@keker.com

21              Warren Andrew Braunig
                Keker Van Nest and Peters LLP
22              633 Battery Street
                San Francisco, CA 94111
23              415-391-5400
                Fax: 415-397-7188
24              Email: wbraunig@keker.com

25
```

1    **LOS ANGELES, CA; TUESDAY, FEBRUARY 14, 2023; 10:11 AM**

2                              **-oOo-**

3              THE CLERK:  Civil case CV 20-8819-CBM, Costar

4    Group, Inc., et al., v. Commercial Real Estate Exchange.

5              Counsel, state your appearance at the lectern.

6              MR. BOYLE:  Good morning, Your Honor.  Nick Boyle

7    from Latham representing plaintiff CoStar. I'm here with

8    Jessica Bina and Caitlin Dahl.

9              THE COURT:  Good morning.

10             MR. PETERS:  Good morning, Your Honor.  Elliot

11   Peters of Keker Van Nest & Peters appearing for defendant

12   counterclaimant Commercial Real Estate Exchange known as

13   CREXi, appearing with my colleagues, Warren Braunig and

14   Jason George.

15             THE COURT:  Good morning.

16             MR. PETERS:  Good morning, Your Honor.

17             THE COURT:  So the first question; masks, may you

18   remove those when you're at the lectern?  And so the answer

19   is "yes."  I think there's sufficient protection in the

20   room.

21             You will decide.  I mean, you are sitting close

22   together at counsel table.  So that's a decision for you to

23   make as to whether everybody wants to be masked.  I feel

24   with the plexiglass that we have staff is protected.  And

25   unless somebody in the room is more sensitive maybe than

1    others and feels that everybody should be masked, then the

2    rule would be when you're at the lectern you can unmask.

3           So the matter before the Court today, we have

4    three things that I plan to accomplish.  The first one is

5    plaintiff's motion to file a second amended complaint.  And

6    then we have defendant's motion for sanctions and some

7    requests to file things under seal.  So those would be the

8    things that we'll be addressing this morning.

9           I do have some specific comments and questions.

10   So I'll just start out with those and then give you an

11   opportunity to put on the record those things that you think

12   need to be a part of the record.

13          And then for the motions that were filed,

14   plaintiff's motion for leave to file a second amended

15   complaint, and defendant's motion for sanctions, the movant

16   of course had the last opportunity to file something.

17   Generally, it's the reply.

18          The other side pursuant to our rules doesn't have

19   an opportunity to address that at least in writing.  So you

20   may address, if there was something in the reply that you

21   did not have an opportunity to address, then this would be a

22   good time to do that.

23          So one of the questions that I have for the

24   plaintiffs.  So in chambers we've received 19 boxes of

25   documents.  And these documents were delivered for the

1    Court's consideration re the motion for leave to file a

2    second amended complaint.  And I'm sure the other side has

3    probably the same 19 boxes.

4          The question is what to do with those materials

5    once the Court rules on the motion and what was the primary

6    purpose for providing those materials.

7          So I'm going to give plaintiff's counsel an

8    opportunity to address that.  Chambers is small, smaller

9    than it was in the old courthouse where we had just a

10   bigger space.  And we have a number of cases or I do,

11   administrative records that need to be reviewed.  And so

12   those records are voluminous.  And at some point we just run

13   out of space.

14         So while parties may feel it's necessary for the

15   Court to have these items to review for purposes of ruling

16   on a motion or even trial based on an administrative record,

17   we don't need to keep them once we've ruled on the motion.

18   So that's really the question.  What do we do with them

19   afterwards, and what was the primary purpose for making them

20   available to the Court.

21         So I'll let counsel address that question first.

22         MR. BOYLE:  Thank you, Your Honor.  It sounds like

23   we need to do a slightly better job coordinating with your

24   chambers with respect to courtesy copies.

25         I think the short answer to your question is that

1    once the motion is ruled upon, we can either pick up the

2    boxes or they can be shredded, whatever is most convenient

3    for the Court.

4            With respect to --

5            THE COURT:  Well, I will just comment on the

6    shredding.  If we think that they may be needed again for

7    some future motion that may be filed, then we wouldn't want

8    to shred them and then have to recreate them again.

9            So certainly, we can return them as we do at the

10   end of trial.  Generally, we'll return the exhibits to the

11   counsel who has offered the exhibits.  And they're being

12   returned to you just for safekeeping so that if they're

13   needed again for the trial court or for the reviewing court,

14   you know, they're still available.  So maybe through the

15   clerk once the Court rules on the motion.  I'll let you work

16   with the clerk in terms of the best way to return them to

17   you.

18           But for the record describe what's in those boxes

19   now that we have them and have reviewed them and what the

20   main purpose was for providing them to the Court.  I'm just

21   wondering if we really needed them.

22           MR. BOYLE:  Certainly, Your Honor.  And thank you

23   for offering that coordination which we will absolutely take

24   you up on.

25           My sense of the contents of the boxes is that the

1    bulk will be exhibits to the second amended complaint.  And

2    the reason, Your Honor, for the volume really gets to the

3    core of our motion which is over the past several months

4    predating the filing of the motion in December a very

5    significant amount of evidence came into our possession

6    through discovery in this case through.

7              THE COURT:  From the case in India, correct?

8              MR. BOYLE:  Yes, through the case here.  And I can

9    touch upon that.  And then through the four cases or the

10   three cases against four agents that we have brought in

11   India.

12             So with respect to the documents that primarily

13   relate to discovery in this case, CREXi over the summer

14   ending in October produced to us approximately 90,000 images

15   in their systems.

16             Now, it turned out that many of those were

17   duplicates.  Some of them were actually not photographs, but

18   a very significant volume of images that purportedly belong

19   to CoStar.

20             And as Your Honor is aware, we sifted through

21   those as quickly as we could.  As I say, the production was

22   only completed in October and that generated voluminous

23   exhibits relating to the more than 50,000 infringing images

24   that we're now moving on.

25             And then with respect to the Indian cases, I think

1    the volume reflects a couple of things.  I think the volume

2    reflects the fact that we have sued four separate agents of

3    CREXi's who are working in India to facilitate CREXi's

4    scheme of infringement.

5            As Your Honor knows, we brought those contributory

6    infringement cases.  And they're also a product of the fact

7    that in the Indian system a significant amount of evidence

8    which included a mass, I should say, of CREXi emails.  So a

9    lot of documents, a lot of WhatsApp messages, a lot of

10   listings, a lot of other images was collected at the

11   beginning of the case by court commissioners.

12           And so unlike in the discovery process as we would

13   understand it where those things might take time, in the

14   Indian case this was kind of front-loaded.  The

15   commissioners secured a huge amount of information.  And in

16   the most recent case in the High Court of Delhi, and I think

17   Your Honor is aware that's India's leading intellectual

18   property court.

19           THE COURT:  Right.  And so the Court is aware of

20   this and the commissioners.  And the parties have addressed

21   that in the filings in support or in opposition to some of

22   these motions.

23           MR. BOYLE:  Yes, Your Honor.  And I will say that

24   those commissions I will just say generates a lot of paper.

25   They generated a lot of paper in terms of the reports that

1  the commissioners produce.  But they also generated a lot of

2  paper because they were collecting a very significant amount

3  of evidence.  So they uncovered emails with the agent

4  saying, Please crop these images to get rid of the CoStar

5  watermark.

6         There were CoStar reports.  There were WhatsApp

7  messages among the agents saying, Let's put CREXi's

8  directions into effect and crop the CoStar logo out of the

9  CoStar images.

10        There's just a huge volume of evidence that ended

11  up in those reports which I think reflects well on the

12  commissioners but also that evidence is so critical to this

13  case.  And I say that because the core of CREXi's case here

14  is no volitional conduct.  That's the core of the case.

15        And that mountain of evidence contained in the 19

16  boxes is the counterweight to that assertion.  So you have

17  an assertion on the one side:  There's no volitional

18  conduct. You won't find any evidence of us doing anything.

19  We are a passive platform.  So there's no evidence that we

20  are cropping photos.  There's no evidence that we're

21  uploading photos.  There's no evidence that we are getting

22  rid of documents.

23        Those 19 boxes are the counterweight because those

24  19 boxes contain internal CREXi emails saying, Crop out the

25  CoStar image; emails to the agent saying, Please effect that

1   direction; WhatsApp messages at the agent saying, Here's a

2   CoStar image, Crop out the logo.

3          And that's why that's so important because the

4   19 boxes represent the rejoinder to the CREXi repeated

5   mantra, We don't do anything.

6          THE COURT:  Well, let me stop you for a minute.

7          So, yes, I can understand that once we get to

8   trial and maybe even other motions that are being made, the

9   parties then are providing evidence to the Court.  And

10  obviously the Court has to consider that evidence to rule on

11  the motions.

12         I'm a little bit surprised though to see that

13  volume of material on a motion to amend.  So while we did go

14  through the 19 boxes, and it's important to remember at

15  least in my case, I only have two law clerks.  So one law

16  clerk is the one person that has to go through all of these

17  materials.

18         So my questions was to the law clerks initially or

19  the law clerk who was going through it, Is it needed for the

20  Court to review to rule on a motion to amend?  You obviously

21  felt that it was, but why?

22         MR. BOYLE:  Yes, Your Honor.  Yes and no, I guess,

23  because I think the volume is attached to the second amended

24  complaint.  And what the Court could certainly look at to

25  rule on is the motions papers and the second amended

1  complaint itself which I hope does a good job of summarizing

2  the materials that are attached to the second amended

3  complaint.

4           THE COURT:  So the Court would always consider the

5  proposed amended complaint.  And to the extent that there

6  are attachments they are incorporated by reference, and so

7  we know all of those rules.  But I guess you've answered my

8  question.  But it is a lot of material to ask the Court to

9  review for purposes of ruling on a motion for leave to

10  amend.

11           I can see it when we get to the summary judgment

12  motion, we get to trial.  All of this then becomes evidence.

13  But we realized that most of it was attached to the proposed

14  complaint.

15           MR. BOYLE:  Yes, Your Honor.

16           THE COURT:  While you're at the lectern, since

17  defendants have filed a motion for sanctions, is there

18  anything in their reply that you have not had an opportunity

19  to respond to?  And if so, this is a good time to respond.

20           MR. BOYLE:  Thank you, Your Honor. My Partner,

21  Ms. Stebbins Bina, will be arguing the sanctions motion.  So

22  with your indulgence I will ask her to step up to the

23  lectern.

24           THE COURT:  Okay.  And I don't really need

25  an argument on the motion itself.  But if there's

```
 1   anything raised in the reply, you've not been able to
 2   address that.
 3            So quite often parties will ask the Court to file
 4   a sur-reply.  And generally I'll deny those requests because
 5   we have to stop someplace.  So if we permit the sur-reply,
 6   then the movant of the motion wants to respond to that
 7   sur-reply.  So the best time to do that is just orally here
 8   at this hearing.
 9            So, Counsel?
10            MR. BOYLE:  Thank you.
11            MS. BINA:  Good morning, Your Honor.
12            THE COURT:  Good morning.
13            MS. BINA:  Very briefly because I do believe that
14   the reply mostly addressed arguments that we had already
15   made and I am sure Your Honor considered thoroughly.
16            THE COURT:  And I'm glad to hear you say that
17   because that's what it should be.  But quite often what we
18   get in motions is the reply doesn't track the opposition.
19            So there's these arguments that get raised.  And,
20   of course, the Court can say, That's outside the scope, so
21   I'm not considering it anyway or the Court can consider it
22   and then give the other side.  So if there was anything
23   there that you feel you didn't get to address, this is the
24   time.
25            MS. BINA:  The only thing I would comment on, Your
```

1    Honor, is the argument with respect to the timeliness of

2    CREXi's motion.  I think on the merits we've laid out our

3    position clearly, that the material wasn't relevant, wasn't

4    something we would have anticipated preserving.

5         But CREXi cites *Goodman v. Praxair Services*.  And

6    I think the citation is not accurate in the sense that

7    argument is made that you can bring a motion for sanctions

8    at any point as long as discovery hasn't closed.

9         What the *Goodman* case actually says is quote --

10   and I'm quoting here from page 508 of that case:

11        "The lesson to be learned from the cases that have

12   sought to define when a spoliation motion should be filed,

13   in order to be timely, is that there is a particular need

14   for these motions to be filed as soon as reasonably possible

15   after discovery of the facts that underlie the motion."

16        And Your Honor, the facts here were as we laid

17   out in our papers discovered well over a year before CREXi

18   filed their motion.  They were fully teed up in a letter

19   in January 2022.  And we do think that there is an element

20   of mischievous timing in connection with our motion to

21   amend and the evidence that's come out about spoliation in

22   India.

23        I won't rehash all of that here.  But I did want

24   to note the mis- -- in my view, the miscitation of *Goodman*.

25        Thank you, Your Honor.

1        THE COURT:  All right.  Thank you.

2        Well, I thought the motion -- and I will say this

3   so that the movement of the motion will have an opportunity

4   to address it.  I actually thought the motion was premature.

5        So it is the type of motion that the Court

6   generally sees closer to trial where the parties have

7   conducted discovery on the very issue of something that may

8   have been destroyed and no longer available and are able to

9   provide additional evidence to the Court so that the Court

10  can make that determination, especially when the Court is

11  being asked to instruct the jury to draw an adverse

12  inference.

13       I actually think it's too soon for me to decide

14  that I would want to so instruct the jury.  So it's not just

15  the nature of the motion.  I've read the rule.  And I know

16  what the rule says.  But, typically -- and the Court has

17  seen these motions before, and there have been times that

18  the Court did instruct the jury to draw the adverse

19  inference.

20       But as we move closer to trial, the Court just

21  simply has more evidence to make the findings that are

22  necessary under Rule 37.

23       And so for the record the Court would just

24  indicate what I think those findings are at this point in

25  order for me to grant the motion.

1           Defendants ask that the Court promptly set a case

2   management conference to address how the parties will try

3   the case based on the voluminous number of images that are

4   attached to the second amended complaint.

5           And there will come a point in time when obviously

6   we will have such a conference.  But I feel the same way

7   about the documents or the motion and the findings that the

8   Court has to make in order to grant this motion.

9           So it seems to me that the motion itself or at

10  least the request being made of the Court based upon the

11  filing of the motion is premature.  So I'll give defense an

12  opportunity too.

13          How could the Court at this early stage in your

14  opinion actually make such findings?

15          And I would say just a further comment.  I am not

16  inferring that because CoStar made a motion to amend then

17  defendants decided to make this motion.

18          No, I assume defendants thought it was a proper

19  motion based upon the information that they have.  But I

20  don't know how you expected that the Court would be able to

21  instruct a jury at this early stage to draw an adverse

22  inference when I don't know that much about the case.

23          The other part of that -- and it can be addressed

24  at the same time.  Typically, what I'm accustomed to seeing

25  is there would be some discovery on about how records are

1  kept and when records are destroyed, something to that

2  effect.

3          In this case it may be that the parties are in

4  agreement on the subject of how records are kept by CoStar

5  and when CoStar decides that those records don't need to be

6  kept any longer.

7          There's also a question in the Court's mind, I'm

8  under the impression that in this electronic stage that

9  nothing is ever completely destroyed.  It typically is out

10 there somewhere.

11         So during discovery often the party that's the

12 movant in this motion, the defendants, would have evidence

13 of that type even from technical people, whoever those

14 people are who are responsible for destroying the records.

15 Has the record totally been destroyed?  Is there no way of

16 retrieving the logs?

17         So a few years ago I tried a case, and the

18 interrogatory was sent to counsel.  Counsel responded to the

19 interrogatories and said, We don't have those records any

20 longer.  But as we got closer to trial those records still

21 existed.  It was the technical people in the company that

22 said, Oh, yes, we still have those.  They are on a hard

23 drive someplace.

24         So without discovery I don't know that you can

25 make the showing that is necessary I think for the Court to

1    find prejudice to the movant, for the Court to make the

2    determination as to whether there was some bad faith or an

3    intentional destroying, assuming that the logs have been

4    destroyed.  So those are the concerns that I have.  And

5    defense may respond to those.

6              MR. PETERS:  May we confer for just a moment, Your

7    honor?  Mr. Braunig is going to address the Court.

8              THE COURT:  Of course.

9                   *(Counsel conferred.)*

10             THE COURT:  And so just before you start, so I'm

11   just looking at some of the notes that I took.  So I would

12   feel if I were granting this motion that I needed to find

13   that CoStar failed to take reasonable steps to preserve.  So

14   while that's addressed, I don't know that I have any real

15   evidence as to how logs are kept and how logs are destroyed.

16             I understand from the papers that maybe they

17   are kept for a year and then they are destroyed.  But if

18   there's more to the story than that, then the Court would

19   need to know that, and that whatever you think has been

20   destroyed cannot be restored or replaced through additional

21   discovery.

22             The Court would need to make those findings.  The

23   Court would need to find it's prejudicial to the other side,

24   in this case, the movant of the motion, the defendants.  But

25   in order to make that finding, I would need to feel

1    comfortable that those records don't exist anymore.  They're

2    just not available.  You cannot offer them.

3         And then the other part of Rule 37, a finding that

4    the party acted with intent to deprive another party.  So

5    evidence on that issue, and maybe you feel you've presented

6    that evidence to the Court.  And so you may want to address

7    that.

8         And so what you've asked the Court to find is to

9    presume that the lost information was unfavorable to the

10   party, instruct the jury that it may or must presume the

11   information was unfavorable, dismiss the action or enter a

12   default judgment and included in that is asking the jury to

13   draw the adverse inference.  It just seems too soon for me

14   to make that decision.

15        So I'll let you be heard now.

16        MR. BRAUNIG:  Thank you, Your Honor.  Warren

17   Braunig from Kecker Van Nest & Peters for CREXi.  And I

18   appreciate Your Honor's thoughtful comments on this issue.

19        And if Your Honor wishes to hold the motion in

20   abeyance and allow us to take additional discovery and

21   supplement, I think we would be happy to do that.

22        Our reason for bringing the motion when we did was

23   that we felt at least preliminarily that we had gotten to a

24   place where it was established that these records are gone,

25   based on representations of counsel and verified

1   interrogatory responses.  So we believe that we're there.

2           That doesn't mean we can't take additional

3   discovery to confirm it.  Your Honor is right.  We haven't

4   yet taken a deposition of a person most knowledgeable about

5   their systems.

6           But we did -- to counsel for CoStar's point, we

7   wanted to, once it became clear that, number one, we believe

8   the evidence has been destroyed, the outbound logs have been

9   destroyed, and that we attempted -- we spent time trying to

10  see whether we could effectively recreate them from our end

11  and we determined that we couldn't.  And so that was when --

12  why we brought the motion at that point when we did.

13          But I do believe that if Your Honor will endeavor

14  to hold the motion open and allow us to continue to develop

15  additional discovery, it may be that we can get to a point

16  where, Your Honor, would have greater confidence that the

17  records in fact are gone and can't be replaced, can't be

18  located anywhere.

19          And at that point we do believe that a motion for

20  sanctions would be appropriate and sanctions would be

21  appropriate for the reasons that were laid out in our

22  motion.

23          And to Your Honor's question about what findings

24  would need to be made, I think it's worth noting that it's

25  not -- the requirement under Rule 37 is not prejudice and

1  intent.  It's prejudice or intent.  And the difference is

2  what sanctions may issue depend on whether there's

3  intentionality or not.

4        And we think that there is evidence of intent

5  based on the law which says that if someone has reasonable

6  knowledge that the evidence is there and makes a decision

7  not to preserve it, then you can infer intent from that.

8  And you can also infer intent where there is what's called

9  selective preservation, where a party says, We're going to

10  keep this, but we're going to not keep this, that an

11  inference can be drawn from that.

12        But we will continue to if Your Honor -- if Your

13  Honor does as it seems the Court may be so inclined, if the

14  Court holds the motion open, we will continue to develop

15  that evidence, and we will ask for permission to supplement

16  with additional evidence as it's developed.

17        THE COURT:  And the fact that CoStar's counsel

18  just indicated that the motion's untimely may be another

19  reason that the motion's being made at this time, that you

20  just didn't want to wait even longer and have to face,

21  Why didn't you bring the motion earlier.

22        MR. BRAUNIG:  That's certainly correct, Your

23  Honor.

24        THE COURT:  All right.  And since you're at the

25  lectern, you may not be the person that's going to respond.

1   Is there anything in the reply of CoStar re their motion to

2   amend that you've not had an opportunity to address?

3           So whoever -- whichever counsel is going to

4   address that, assuming that you feel that needs to be

5   addressed, this is a good time.

6           MR. BRAUNIG:  Your Honor, that will be Mr. Peters

7   who will return to the lectern.

8           THE COURT:  All right.  Mr. Peters.

9           MR. PETERS:  Thank you, Your Honor.  Elliot Peters

10  for CREXi.

11          Really just two things, Your Honor.  The first is

12  that we cited, but in a footnote, the case *BMG Rights*

13  *Management*.  It's a December 5th, 2022, case from your

14  colleague, Judge Scarsi, right in this building where he

15  stayed a case entirely because there had been no DMCA

16  takedown notice ever sent in the case.

17          And, of course, under the DMCA, it's a safe

18  harbor.  If somebody else thinks that you're violating their

19  copyrights, they send you a takedown notice.  You take down

20  the infringing photograph.  You can't be sued for it.  And

21  we cited that case and CoStar didn't even mention it or

22  respond to it.

23          So following Your Honor's direction that -- I'm

24  not going to say more about it other than to ask you,

25  please, look at that case because in this matter we

1    don't--- we don't dispute that there are CoStar

2    copyrighted photographs that appeared on our site.

3            Now, we would have a dispute about whether we

4    ever intended for that.  We operated a filter to try and

5    filter things out.  Most of our photos are uploaded directly

6    by brokers which is also a safe harbor under the DMCA.  But

7    it says something about CoStar that while they were planning

8    this lawsuit, they never once sent the DMCA takedown notice.

9    And so that's the one point.

10           The second point is, if I may Your Honor, just

11   respond very briefly to the comments about the 19 boxes that

12   Mr. Boyle made.

13           THE COURT:  You have those boxes too.  So you know

14   how voluminous they are.  But, of course, you have a staff

15   that can go through those 19 boxes and kind of sort them

16   out.  We just don't happen to have that kind of staff.

17           MR. PETERS:  I guess that's true.  But we feel

18   that pain too because CoStar is a really huge company with a

19   very large law firm representing it.  And CREXi's a lot

20   smaller.

21           And so what's in those 19 boxes and how were they

22   used?

23           As the Court probably recalls, at almost the

24   same time that all those 19 boxes were delivered to your

25   chambers, each of our investors -- each of our investors

1  received a subpoena which contained this proposed amended

2  complaint and all of these incendiary allegations in it.

3      Now, our investors don't have anything to do with

4  what photographs get posted on the site.  Those subpoenas

5  have since been withdrawn.

6      Why did CoStar serve all this voluminous

7  information about Indian litigation and so on, on our

8  investors?  It's a rhetorical question.  But they did it to

9  try to interfere with our business, drive us under.  That's

10 why they did it.  There's no other explanation.

11     Why is all this "stuff" -- that's not a very

12 legalistic term.  But why is it all in this amended

13 complaint?

14     It doesn't add any new causes of action.  It's

15 just all of this information that they want to spread around

16 about what happened in India.  And it's hotly contested and

17 disputed and it's confidential.  Why?  Why make this case

18 more complicated?

19     We've got 10,000 photos alleged in the original

20 complaint.  Everybody in this room knows that the vast

21 majority of those aren't really actionable as copyright

22 violations because we didn't intend to have them on our

23 site.  We were trying to filter out things and keep them off

24 our site.

25     But if they're uploaded by brokers, and if no one

1   knows that they are even copyrighted because they put this

2   little symbol on them, which as this Court has already found

3   doesn't indicate that they're copyrighted, and we don't get

4   a takedown notice under the DMCA, we just got slapped with

5   this big lawsuit.  We've got 10,000 of those to deal with.

6          What does it add to this case to allege a whole

7   lot more which gets us into the same morass?

8          We produced to them all of these photographs.  We

9   produced to them.  We went through all that.  They came from

10  our filter.  They came from our filter because we didn't

11  want them on our site.

12         And we've produced a log to CoStar which shows

13  that many of these, the majority, the vast majority of them,

14  were uploaded by brokers, not by us.  But they want to add

15  the number because the lawsuit itself -- the lawsuit itself

16  becomes so vast and expensive and oppressive that it drives

17  a competitor out of business.  They've done it before.

18  CoStar has done this before numerous times.  They've driven

19  other competitors out of business.

20         Your Honor, we're prepared to litigate this case

21  on the merits to establish our defenses.  We ask that the

22  Court consider the prejudice to us of just adding all this

23  information which doesn't advance the ball to this

24  complaint.

25         We think there's no basis for them to amend to try

1    and get a second bite at the apple on their little recycle

2    symbol.  Your Honor already looked at it.  Your Honor

3    already ruled on it.  It's not proper to amend a complaint

4    that's already been dismissed with prejudice when you don't

5    ever seek reconsideration.  That's not proper.

6            That's an argument we make in our papers.  I'm not

7    going to repeat myself.  Unless, Your Honor, has any further

8    questions for me, I thank you for offering us the time to

9    address the Court.

10           THE COURT:  Thank you.  No further questions.  And

11   I would permit CoStar just to respond to the oral argument

12   that's been made here addressing your motion for leave to

13   amend.

14           And I think the Court is correct, in the amended

15   complaint there are 40,000 additional images.

16           MR. BOYLE:  Yes, Your Honor.  Thank you, Your

17   Honor.

18           Let me just clear away a couple of issues that

19   Mr. Peters raised.  And then I will pivot to the second

20   amended complaint.

21           His first point was that we did not address the

22   *BMG* case.  Mr. Peters is incorrect.  At page eight of our

23   reply we address *BMG*.  And I say that not just because it

24   was an oversight by Mr. Peters, but because I think it's an

25   important substantive point.

 1          Mr. Peters said that in *BMG* the case was stayed

 2    because no DMCA notice was provided.  What the Court found

 3    there was:  There was a failure to, quote, allege that

 4    defendants have selected any material for upload, download,

 5    transmission or storage.

 6          That, Your Honor, is at the core of what we have

 7    added to the second amended complaint.  And it gets back to

 8    this idea that CREXi is somehow an innocent company that

 9    offers a platform that has no idea what is getting onto the

10    platform, and then CoStar, the big, bad bully, comes along

11    and files a complaint.

12          Your Honor, if you read any page of any of the

13    revisions that we have made to the second amended complaint,

14    it shows that that assertion is just not true, and it

15    underscores why these new allegations, which admittedly are

16    fairly voluminous, why these new allegations are so

17    important, because it's impossible for CREXi to say anything

18    about this case without saying we are a passive platform.

19          And the evidence in the SAC says to the contrary.

20    CREXi picks images, uses offshore agents to upload those

21    images, tries to obscure the origin of those images.  Those

22    all go to the core of CREXi's case.

23          And then with respect to Mr. Peters' second point,

24    he said the images, that the 40,000 images -- he made a

25    couple of points.  He said, They come from our filter.  And

1    I just want to address that.

2         Many of those images were identified by a filter

3    that is used by CREXi.  That filter is operated by a company

4    called Restb, R-E-S-T-B.

5         How does that filter identify by CoStar

6    copyrighted images?  How does it do that?

7         It uses artificial technology to find what?  To

8    find the CoStar logo.  That is how CoStar's ownership is

9    conveyed to the public.  And it is used by the vendor that

10   CREXi has hired to identify CoStar copyrighted images.

11        So CREXi is using a copyright protection vendor to

12   identify images using our logo.  At the same time, in the

13   same year, 2019, we just learned the same time they're using

14   this filter, they are affirmatively telling their agents in

15   India, Upload these images, sending them over, and upload

16   them after you have cropped out that very same logo.

17        So you have, we would submit, the paradigmatic

18   example of that DMCA violation, the removal of CMI, because

19   on the one hand at the same time you're using that logo to

20   identify copyrighted images, you're telling your agents,

21   Before you put it up on our site, you better be sure to

22   remove that CMI, to remove the CoStar logo.

23        So when Mr. Peters says, Nobody knows that it was

24   copyrighted at CREXi, that is incorrect.  Their vendor knew

25   it was copyrighted.  And they knew it was copyrighted

1    because they saw the logo.  And their agents were told,

2    Remove that logo to obscure CoStar ownership.

3          Mr. Peters also said in various ways, most of

4    these images were uploaded by brokers.  Even that is not

5    what discovery has shown either, because as Your Honor will

6    see from the SAC; of the 10,000 images that we originally

7    pled, two-thirds, of those, two-thirds of those were

8    uploaded by CREXi.  That's not in dispute.  CREXi, including

9    its Indian agents.  And so even just on the numbers we can

10   see the involvement of CREXi.

11         And then with respect to the 40,000 images, the

12   40,000 images are indisputably CoStar's.  We have the

13   copyright registration.  They are indisputably in CREXi

14   systems.  They're indisputably published by CREXi.

15         The only consequence of not litigating those

16   additional infringements which we determined in the last few

17   months were infringing would be to create the need for

18   CoStar to file another case on those 40,000.

19         It's not a situation where if Your Honor were to

20   deny the motion, the 40,000 infringements would go away.

21   They are ours.  They are on their site.  They were uploaded

22   in many cases by CREXi.  We'd need to file a new case.  That

23   would be incredibly inefficient.  It would either go on for

24   the next few years or be rolled -- or be ruled into this

25   case.

1      THE COURT:  So it's an interesting point that

2  counsel raises.  What's before the Court is a motion to

3  amend.  So, yes, experience dictates if the Court were to

4  deny this motion, and if the party felt strongly about it,

5  they would just file another, a new lawsuit, assuming that

6  it's not time barred.

7      Under our system I would be asked to take that new

8  case under our low-number rule because it's related to the

9  case that I already have to reduce the likelihood of

10  inconsistent rulings or the additional judicial time that it

11  would take for another judge to adjudicate some issues that

12  maybe the first trial judge has already addressed.

13      And then if I take the new lawsuit under the

14  low-number rule, the next request is consolidate it with

15  that first case that was filed.

16      So, typically, this is what happens with a request

17  to file an amended pleading that the Court may deny.  It

18  doesn't mean that it goes away.  It just means that it may

19  end up before the same trial judge but in a different

20  lawsuit.  So I don't think that that's a reason for the

21  Court to deny the motion to amend.  And so I intend to just

22  put that on the record as well.

23      So as we know Rule 15 is a liberal rule.  There

24  are instances where the Court would deny a motion to amend

25  just based upon the history of the case.  But just because

1   it may take more time to adjudicate or it's voluminous is

2   not a basis for denying the motion.

3           Did counsel have anything else that you wanted to

4   put on the record concerning response to defendant's

5   comments?

6           MR. BOYLE:  Just one other quick point, Your

7   Honor, with respect to -- one other point with respect to

8   the Indian evidence.

9           The point was made that it was hotly contested,

10  which is absolutely true.  I just did want to emphasize that

11  the bulk of the evidence featured in the SEC and featured in

12  the reports are CREXi's own documents and communications.

13  There will be hotly contested issues.  But those are

14  documents and communications going to these issues of

15  volition and damages.

16          And just to end on one final example, actually,

17  two quick examples, one is we highlighted the fact that

18  those emails to CREXi, which haven't been produced in this

19  case, I should mention, which is why we're lucky that we

20  were able to see them in the Indian case.

21          One is an email from a broker saying, and I'm

22  paraphrasing.  What is my listing doing up on CREXi?  I

23  don't know you.  I've never put up my listing.  What is it

24  doing there?  I put it up on CoStar.

25          And that encapsulates exactly what is happening

1   here.  CREXi is taking listings and putting them up.  The

2   broker's not putting them up.  In fact, the broker doesn't

3   even know what CREXi is.

4          And the second example I wanted to mention is the

5   fact that one of the findings in the recent *Yansh* case was

6   that.

7          THE COURT:  Do you want to spell the name of the

8   case, please.

9          MR. BOYLE:  Y-A-N-S-H.  It's one of CREXi's

10  biggest offshore agents involved in the infringement and

11  misappropriation.

12         But what it turned out was happening there was

13  that according to the CEO, listings containing our images

14  taken from our sites were being uploaded to the CREXi system

15  at CREXi's direction for seven months after we sued in this

16  courtroom, for seven months before CREXi told them to stop.

17         And even worse -- and this kind of gets back to

18  the sanctions motion that Ms. Bina argued -- even worse, all

19  of those listings were destroyed.

20         And so why this is so important on -- I've talked

21  a lot about volition.  It absolutely torpedoes any idea that

22  this is non-volitional.  It's directed.  But it also goes to

23  willfulness.

24         There's not just deliberate copying.  There's not

25  just hiding the copying by snipping or cropping our logo.

1    There's actually hiding the creation of the listings in the

2    sense that seven months of listings created during the

3    pendency of this lawsuit are gone.

4           I hope Your Honor is right that there's some way

5    to retrieve those, but according to CREXi's own agent, those

6    are gone.

7           Thank you.

8           THE COURT:  There are a few other topics that the

9    Court will raise and give the parties an opportunity to

10   address.  The Court understands that CREXi, the defendant,

11   suggests that if the Court is to grant the motion, the Court

12   should allow an early summary judgment motion.

13          What would be the nature of that summary judgment

14   motion?

15          It's the Court's experience that summary judgment

16   motions tend to be filed after the completion of discovery.

17   It's usually one of the last motions that we see before

18   pretrial motions in limine and things of that type.

19          And so if one files that motion early, of course,

20   the summary judgment rules permit the opposing party to ask

21   the Court to either continue that motion or to deny that

22   motion without prejudice so that discovery can be conducted

23   that would permit them to respond to the motion.  So I'm

24   sure we've all seen those motions and sometimes granted

25   because it's too early.

1           So what would be the nature of the early summary

2   judgment motion?

3           MR. PETERS:  Thank you, Your Honor.  Elliot Peters

4   again for CREXi.

5           I wanted to first respond by, Your Honor asked the

6   question, if I grant the motion, what would be the purpose

7   of the early summary judgment motion?

8           On the first "if," I want to remind the Court that

9   there is this separate issue here about them trying to

10  replead this part of the motion that's already been

11  dismissed by the Court.  And maybe if Your Honor --

12          THE COURT:  And the Court -- obviously, that's

13  something that the Court has considered that, are there

14  additional facts directed to that claim that was earlier

15  dismissed that cures the defect that the Court saw?

16          MR. PETERS:  And on that subject, the Court's

17  analysis which was firmly rooted in the DMCA last time was

18  that if you look at this little recycle symbol, it doesn't

19  say anything about copyright.  It doesn't have a copyright

20  sign.

21          And the evidence that Mr. Boyle just referred

22  to is that CREXi doesn't want anything to do with CoStar

23  because CoStar is the big bully.  And CREXi's -- this

24  recycling symbol which is what it looks like doesn't

25  communicate anything about copyright or the DMCA or copying.

```
1          And that's exactly what the Court said in its
2    order last time.  And I think it was based on Your Honor's
3    examination of that symbol alongside the legal requirements
4    of the Digital Millennium Copyright Act and for what's
5    copyright management information.
6          So when Your Honor revisits that issue, I would
7    just ask you to consider your prior reasoning which in our
8    view is completely correct.
9          THE COURT:  And of course, the Court always would.
10   And so whenever we see either an amended pleading filed as a
11   result of the Court dismissing without prejudice or in this
12   case a motion to amend, the Court clearly compares the new
13   cause of action with the previous cause of action reviewing
14   the order that has been issued.
15         MR. PETERS:  Yeah, except that the prior dismissal
16   wasn't without prejudice.
17         THE COURT:  Well, but I'm saying either way.  I
18   obviously know that in the previous dismissal there was this
19   claim.
20         MR. PETERS:  Right.
21         THE COURT:  And now we have a request to file an
22   amended complaint with the same claim.
23         MR. PETERS:  Right.
24         THE COURT:  How does it differ from the one that
25   the Court felt was deficient?
```

1          MR. PETERS:  Right.

2          THE COURT:  So obviously that would be -- the

3  Court would go through that process.  So the question is --

4          MR. PETERS:  Okay.  Early summary judgment.

5          THE COURT:  So the question is, if you are

6  requesting to file an early summary judgment, what would be

7  the nature of that?  What's the subject that you feel should

8  be addressed or would be addressed?

9          MR. PETERS:  Let me just share our thinking

10  with the Court and also try to assist the Court in dealing

11  with what's going to be an ongoing 19-box problem in this

12  case.

13          What we're struggling with is that if there's

14  10,000 or 50,000 images at issue in this case, everyone

15  knows that the vast majority of them were in fact uploaded

16  directly by brokers.  They're not volitional.

17          That there's an email here or there from a CREXi

18  employee from which they can argue that people did things

19  that they shouldn't have with respect to a couple of photos,

20  doesn't change that.

21          So we've got this universe of 40,000 photos.  And

22  at some point I think what CoStar would like to do is come

23  in here and just dump it on the Court.

24          THE COURT:  No.  We're not going to allow them to

25  do that, dump it on the Court.

```
1            But I'm more interested in the summary judgment

2    motion and what would be the nature.  What would you be

3    addressing in that summary judgment motion?

4            MR. PETERS:  Well, here's what we'd be doing.

5    We'd be addressing those photos.  And maybe what Your Honor

6    would want us to do is to take some bellwether group of

7    them; I mean, obviously 50,000 or 40,000 or even 10,000.

8            THE COURT:  So the motion would be directed to the

9    images?

10           MR. PETERS:  Yes.

11           THE COURT:  And the argument would be what?

12           What is the legal argument that you think you

13   would be making in that summary judgment motion?

14           MR. PETERS:  The arguments, and they are arguments

15   plural, the argument would be based on the undisputed facts

16   there's no evidence of volitional conduct with respect to

17   some very, very significant number of those photographs.

18           THE COURT:  So let me ask another question.  Have

19   you completed your discovery on that issue?

20           MR. PETERS:  Well, I don't think we really have

21   because we haven't taken any depositions.

22           THE COURT:  So that's the Court's point.  So an

23   early summary judgment -- and of course, I don't know how

24   early.  But to suggest an early summary judgment motion

25   directed at an issue where the parties have not completed
```

1   the discovery, would probably result in the opposing party

2   saying, We haven't had an opportunity to complete our

3   discovery on this issue.

4           And under the summary judgment rules, the Court,

5   of course, could continue that.  I probably wouldn't

6   continue it just because I wouldn't want to have an old

7   motion continued.  But I would just permit the parties to

8   file the motion later.

9           So what I'm trying to understand is what would be

10  accomplished?  What do you think would be accomplished

11  filing an early summary judgment motion directed to that

12  issue when you haven't completed the discovery?

13          MR. PETERS:  Let me just add to that issue just so

14  I can complete the thought.

15          Not only would it be directed at the volitional

16  conduct, but also at the Digital Millennium Copyright Act

17  safe harbors that apply to images directly uploaded by

18  someone else.

19          THE COURT:  And you believe no discovery would be

20  needed or you've already completed the discovery?

21          MR. PETERS:  No, Your Honor.  And what we were

22  suggesting -- and maybe we weren't clear enough about this.

23          THE COURT:  The word "early" is what the Court

24  saw.

25          MR. PETERS:  Yes.

|  |  |
|---|---|
| 1 | THE COURT:  And as I said, typically, we would |
| 2 | expect a summary judgment motion after the parties have |
| 3 | completed discovery.  But, obviously, it could be a motion |
| 4 | directed to something specific in which the discovery as to |
| 5 | that issue has been completed. |
| 6 | MR. PETERS:  Yes. |
| 7 | THE COURT:  So that's what the Court is trying to |
| 8 | understand what your thoughts may be. |
| 9 | MR. PETERS:  And we're thinking exactly the same |
| 10 | way, Your Honor.  It may have been we were improvidently |
| 11 | using the word "early."  And we also mentioned case |
| 12 | management. |
| 13 | What we're searching for is a way not just for the |
| 14 | parties but to assist the Court in streamlining this case so |
| 15 | that the issues can be resolved in an efficient way, which, |
| 16 | quite frankly, doesn't put us out of business litigating it, |
| 17 | which we believe is our opponent's objective. |
| 18 | So rather than go through tens of thousands of |
| 19 | images where the same issues keep popping up, what we are |
| 20 | struggling to find is a way to present those issues to the |
| 21 | Court perhaps by identifying some sample as bellwethers so |
| 22 | they could be adjudicated by the Court.  And then those |
| 23 | rules could be absorbed by the parties.  And then perhaps we |
| 24 | could work to resolve the case.  Perhaps that we would be |
| 25 | referred to our special master.  We have a discovery judge, |

| | |
|---|---|
| 1 | Judge Vaughn Walker, to try and undertake that kind of |
| 2 | exercise. |
| 3 | THE COURT:  Are you referring to Judge Segal? |
| 4 | MR. PETERS:  No, Your Honor. |
| 5 | THE COURT:  How does Judge Walker get into it?  I |
| 6 | didn't know that he was a discovery master. |
| 7 | MR. PETERS:  He's not.  He's a settlement judge. |
| 8 | THE COURT:  Ah, okay. |
| 9 | MR. PETERS:  But we could do it in front of |
| 10 | Judge Segal.  But what I'm struggling with -- and maybe this |
| 11 | doesn't help Your Honor, but I'm just -- what we're |
| 12 | struggling with is, how can we streamline this case so that |
| 13 | these issues which are going to be repeated over and over |
| 14 | again can be addressed and either agreed on by the parties |
| 15 | which is unlikely or addressed by the Court in an efficient |
| 16 | way.  And some courts used bellwether examples, you know. |
| 17 | Okay, you've got 50,000 -- |
| 18 | THE COURT:  Yes. |
| 19 | MR. PETERS:  -- take 20 -- and you take 20 and |
| 20 | let's see what we've got. |
| 21 | THE COURT:  Yes.  I think we're all interested in |
| 22 | that.  And there will come a point in time when that will be |
| 23 | something that will be addressed by all the parties. |
| 24 | How can we try this case?  How much time is it |
| 25 | really going to take?  It's a jury trial.  Can we actually |

 1   find jurors that will devote the time?

 2           We just selected a jury.  We started last week.

 3   And it was surprising the number of people that were asking

 4   to be excused, hardship, and other reasons.

 5           So I think we're all interested in that topic that

 6   you're raising with 40,000 additional images, how would we

 7   try the case.

 8           So the time will come that we will have to do some

 9   case management and be creative in terms of how it can be

10   done.  But those arguments don't suggest to the Court that

11   that's a reason to deny the motion to amend.

12           So they're all legitimate issues to be raised,

13   things that would have to be done during the litigation of

14   the case.  How could we try it?  How long is it going to

15   take?  Would the Court even have that amount of time?  Could

16   we find enough jurors that would serve for a large amount of

17   time?

18           So I think all of us have to face that issue.  I

19   think you're perfectly right to raise it at this point.  But

20   I think not -- I don't think it would support denying a

21   motion to amend.

22           MR. PETERS:  I understand what Your Honor's

23   saying.  But I also continue to be concerned that trying to

24   resolve it on summary judgment is going to be another 19-box

25   misery for the Court with just a lot of the same issues

1   resurfacing.

2       Okay.  Now, we're on image 12,526, and it's a lot.

3   And maybe we need to think this through better.  But there

4   needs to be a way to streamline this.  And I don't think

5   that adding 40,000 photos does anything except complicate

6   the case and prejudice CREXi.  For example, we want very

7   much to hold on to the March 31st, 2024, trial date.  That's

8   in 13 months.

9       THE COURT:  So that is the next topic that the

10  Court wants to discuss and something that it is appropriate

11  for the Court to consider in deciding whether the motion to

12  amend gets granted or denied.  It's the present dates and

13  how much additional time would need to be added if the Court

14  were to grant the motion to amend.  So that is the next

15  topic that we're going to be discussing.

16      MR. PETERS:  It sounds like we're there, Your

17  Honor.

18      THE COURT:  Okay.  So since you're standing, let's

19  take a look at what the present dates are.  So you have a

20  fact discovery completion date, the expert discovery

21  completion date, the motion hearing date, the settlement, of

22  course, and then the pretrial and trial.

23      So the most important dates I think at this point

24  would be, what is the present pretrial date?  What is the

25  present trial date?  And I'll ask the courtroom deputy to

1    give those to me.

2          And then how much additional time would be needed

3    if the Court were to at this point grant the motion to

4    amend, as counsel said, adding 40,000 additional images to a

5    case that already has 10,000 images.  I understand the

6    argument very well.  And, of course, the Court's thought of

7    all of this.

8          But the clerk will tell us.  And the parties may

9    remember the date.  What is the pretrial date and the trial

10   date?  But if you don't have it just at your fingertips, the

11   clerk can give it to us.

12          THE CLERK:  Your Honor, the pretrial; February

13   6th, 2024; the jury trial, March 26th, 2024.  Estimated

14   30 days.

15          THE COURT:  And so at the time, of course, 30 days

16   the Court thought and the parties probably too, is

17   unrealistic in this district, finding jurors that would stay

18   with us for 30 days.

19          The case that for which we just selected a jury,

20   the time estimate is only 12 days.  But we still had lots of

21   companies that would only pay for ten days that would create

22   this financial hardship.  And while the Court may or may not

23   excuse jurors for financial hardship, the question is always

24   how attentive will they be if they're not being compensated

25   by their employer.

1        And it's interesting, you know, there are law

2    firms that also only pay ten days.  The issue for us, of

3    course, if we seat a juror that works for one of these law

4    firms, we can usually make a phone call and the law firm

5    will assure us that this jury is going to be compensated for

6    whatever the time is.  But that's not true with other

7    companies.

8        Then we have all of the additional; child care,

9    family care, just everything that life presents when you're

10   asking laypersons to stay for 30 days.  So 30 days, I would

11   say, is an unrealistic estimate anyway.

12       But counsel may continue.

13       MR. PETERS:  Your Honor, we would ask whatever you

14   do, please don't change the trial date.

15       THE COURT:  And so that is the question.

16       MR. PETERS:  It's critical to us that we try this

17   case.  That's 13 months from now.

18       THE COURT:  Yes.

19       MR. PETERS:  But being further bled by CoStar

20   through litigation is really prejudicial to CREXi.  We want

21   our day in court.  We want to rebut these charges, however

22   many of them there are.  It becomes more unwieldy I think to

23   try the case.  I don't think it makes discovery that much

24   more complex because the vast majority of these things

25   arrived on our site because brokers uploaded them.

```
1            And eventually we're going to have to deal with,
2   is there any actually admissible evidence from India that
3   makes any difference in this case.
4            I don't think it's helpful to the Court to get
5   into that now.  But that's going to have to be addressed.  I
6   think that's just a complete sideshow.
7            THE COURT:  Let me ask this question at least from
8   your perspective.  So you'd like to keep the pretrial date
9   which is February of next year and the trial date is March
10  of next year.
11           Just talking about planning and what would
12  happen if, so if the Court granted this motion from your
13  perspective, would you be asking for additional time to
14  either conduct discovery or motions which would change the
15  pretrial date and the trial date?
16           Also, there's that possibility that instead of an
17  answer, you'd file a 12(b)(6) and so that all consumes time
18  too.  And during that pleading stage generally discovery is
19  not being conducted.
20           So let's approach it just from your perspective.
21  If the Court grants the motion, what is it that you would
22  need to do that could cause the pretrial conference date and
23  the trial date to change, anything?
24           MR. PETERS:  I don't think so, Your Honor.  We are
25  close to the substantial completion of document discovery
```

```
 1   dates.  Probably an hour doesn't go by where I don't see on
 2   my computer screen some email going back and forth between
 3   this team and our team about document discovery.  We're very
 4   busy about it.
 5            Now that we have Judge Segal in place I think
 6   that's going to help a lot because there are some issues
 7   that have to be resolved.
 8            We may need some relief on the discovery cutoff.
 9   But I think it's premature to say.  But the trial date, we
10   don't want to move the trial date.
11            THE COURT:  Okay.
12            MR. PETERS:  And we don't think that Your Honor
13   would give us 30 days.  We don't think jurors would sit here
14   to listen to this stuff about photographs of warehouses and
15   strip malls for 30 days.  And we don't think we're going to
16   need 30 days to try this case.
17            I would want to look at what we filed, our side,
18   in connection with the original CMC.  But I bet it was a lot
19   less than 30 days.  And so I don't think we need any 30 days
20   to try this case.  And I wouldn't expect us to get them if
21   we thought we did.  Two weeks, because a lot of this is
22   repetitive stuff.
23            THE COURT:  And so I think all you're saying is
24   you just agree.  It's unrealistic to think that it would be
25   30 days.  The 30 days -- generally, I take the date, the
```

1   longest date at the scheduling conference just for planning

2   purposes so that we don't have too many trials set for the

3   same date.  But I agree with you.  It is unrealistic.  I

4   don't think we could find a jury that would spend 30 days

5   with this case.

6           So let me hear from CoStar on similar questions.

7   These are just questions about planning and how much

8   additional time would the dates really change.

9           MR. PETERS:  Thank you, Your Honor.

10          THE COURT:  So the court is interested in that

11  because, you know, the Court can sever claims, the Court can

12  bifurcate.  But it would not reduce I think ultimately the

13  amount of time and the costs to the parties.

14          So what's CoStar's response?

15          We have a pretrial date of February 2024, a year

16  away, and a trial date in March.

17          Would you anticipate that those dates would need

18  to be changed because of the additional discovery that would

19  need to be conducted or motion practice that would need to

20  take place?

21          MR. BOYLE:  Thank you, Your Honor.

22          The short answer is we don't believe that those

23  dates will hold.  But there's more of an explanation other

24  than just the second amended complaint.

25          The second amended complaint does contain a

```
 1   significant number of additional infringements.  I guess on
 2   that point I would say that CREXi has said both; that
 3   wouldn't affect the case, and that would affect the case.
 4            I think it is indisputable that additional
 5   allegations are going to lead to some additional discovery.
 6            THE COURT:  What is the additional discovery that
 7   you would anticipate?
 8            There are more images.  But what's really
 9   different about the case that the parties would need to
10   conduct discovery?
11            MR. BOYLE:  Certainly, Your Honor, I think it's
12   kind of twofold.  And then I do not want to lose sight of
13   the other factors that I think are going to impact the trial
14   date.
15            So twofold in the sense that with respect to the
16   40,000 additional infringements, we will need discovery just
17   as a baseline matter.  How did those images get up onto the
18   CoStar site.  I think we're going to need to understand who
19   uploaded them, at whose direction, a bunch of questions
20   about each of those.
21            THE COURT:  What do you anticipate?  That you
22   would take some additional depositions?  How many additional
23   depositions or would it be written discovery?
24            MR. BOYLE:  Your Honor, I think it would depend on
25   understanding who was involved in the uploading.  We already
```

know the names of a multitude of people who were including a

multitude of CREXi employees.  As I said, the vast majority

of the first 10,000 were uploaded by CREXi employees.  We

have the names.  We don't have the names obviously for the

40,000.

I'm guessing, if you're asking me to guess, I'm

guessing --

THE COURT:  No.  I'm not asking you to guess.  But

I'm just trying to figure out how much additional time if

the Court grants this motion.  The pretrial conference date

and the trial date are already a year away.  So how much

additional time do you anticipate would be added to that?

MR. BOYLE:  Well, Your Honor, with respect to that

additional discovery, additional discovery that is going to

flow from those revelations of misconduct in India because,

just to take one quick example there, and this goes to

needing additional depositions.

One of the points made by the CEO of one of

CREXi's agents was, he named particular people at CREXi.

These are the people who sent me CoStar images.  These are

the people who told me to crop out the CoStar, star logo.

And we hadn't seen those names until just before

we filed this motion literally in November.  So those are

particular employees of CREXi who I think are going to be

deposition candidates.  So the Indian discovery is going

1  to -- the Indian revelations is going to -- that will drive

2  some discovery.  The 40,000 will drive some discovery.

3          But I do want to say, putting aside the second

4  amended complaint, just to very quickly update Your Honor on

5  where we stand on Discovery.

6          There are multiple motions.  I've kind of lost

7  count -- multiple discovery motions that judge -- that

8  are going be before Judge Segal.  Both sides, in

9  addition -- Mr. Peters is right, we're talking every day --

10  are going to file additional discovery motions.

11          CREXi is taking additional written discovery

12  every week.  We just got their seventh set of requests for

13  production.  And as Your Honor knows, the substantial

14  completion date is tomorrow.

15          THE COURT:  No.  I didn't remember that.  So

16  that's the fact discovery?

17          MR. BOYLE:  Just the substantial completion.  The

18  fact discovery deadline is the end of May.  But we're

19  literally being served with new discovery requests.  As,

20  Your Honor, will understand while we are going to produce a

21  bunch of documents tomorrow, I'm sure CREXi is too, we're

22  still talking to them about the fourth set of their request,

23  the sixth, the seventh.

24          There's a huge amount that we need to do just to

25  respond to their discovery requests which keep on coming.

1   And I will also say, just because this connects with the

2   Indian litigation, Mr. Peters said, That's a sideshow.

3        We got an email from CREXi saying they are going

4   ask the special master to issue -- I think it may be that,

5   Your Honor, that Judge Segal actually has to sign it --

6   issue ten separate letters of request under the Hague

7   Convention so that CREXi can take discovery in India; ten,

8   including depositions and document discovery.

9        And I will say, full transparency, Your Honor, we

10  also have Hague Convention requests that have been kind of

11  on ice for a few months because we're waiting for the

12  special master to be appointed.

13       But this case can't be resolved without

14  taking -- both sides agree, apparently, this case can't be

15  resolved without taking depositions in India.

16       And that's aside from whether Your Honor grants

17  the motion and the SAC.  That Indian stuff is out there,

18  come what may.

19       We also, just to mention one single discovery

20  dispute that will be before Judge Segal because it also

21  impacts the case.  We have a motion to try to understand

22  whether we're done at the 50,000 number, because our best

23  understanding is CREXi hasn't actually done a full check of

24  its image library.

25            THE COURT:  You're not suggesting that you may

```
 1   file another motion to amend to add even more images?
 2              MR. BOYLE:  We don't know, Your Honor.  But what
 3   we said I think in the briefing was, we don't want to file
 4   seriatum motions.  That's not our practice.  And as Your
 5   Honor knows this case has been going on for a while.  This
 6   is just the second amended complaint, the first time we have
 7   sought leave.
 8              I think for efficiency purposes -- and; we're very
 9   focused on efficiency.  We have the same reaction to CREXi's
10   proposal on summary judgment.  We didn't really understand.
11              But we would like to try and find a way to
12   streamline.  And one thing that we've done in past
13   corporate cases where, as Your Honor knows in discovery
14   it is very typical for more instances of infringement to
15   come to light.
16              What we've suggested to the other side is if they
17   do a check of their image library as we're asking, and we
18   can get to a definitive number.  And maybe it's no more or
19   maybe it's a few thousand more.  I have no idea.  They
20   haven't checked.
21              That, hopefully, we could just agree that we don't
22   have to -- we can just stipulate that those are the images
23   that we will litigate.  And we don't have to go through this
24   whole rigmarole because that would not be efficient for
25   either side.
```

```
1          But just to get back to Your Honor's question
2     about timing because --
3          THE COURT:  Well, I hear you saying that even if
4     the Court did not grant the motion to amend, you believe
5     that at least the discovery dates that the Court has given
6     probably will need additional time, and that then may affect
7     the motions to be filed, and that typically affects the
8     pretrial conference and the trial.
9          So I think for the parties in the case in spite of
10    the motions that are before the Court today, the parties
11    need to be realistic in terms of this is a public forum in
12    which you have chosen to try the case.  And so we do have
13    the realities of life with all of these decisions.  And
14    that's something I think that you have more control over
15    than the Court.
16         MR. BOYLE:  Absolutely.
17         THE COURT:  All right.  I think I've heard enough.
18    And I noticed that I have not given the court reporter a
19    break.  So I'm going to take about a 15-minute recess.  Then
20    the parties will return.  The Court will rule from the bench
21    on the motions that are presently pending.
22         MR. BOYLE:  Thank you, Your Honor.
23         THE COURT:  So we're in recess for about
24    15 minutes.
25         THE CLERK:  Please rise.  This court is in recess.
```

```
 1                         (Recess.)

 2              THE COURT:  Back on the record.  Counsel are here.

 3    And the Court's ready now to rule on the motions that are

 4    pending.

 5              Plaintiff's motion for leave to file a second

 6    amended complaint is granted.  And it will be deemed filed

 7    as of today's date.

 8              So the courtroom deputy has indicated even though

 9    it's attached as an exhibit, she can deem it filed.  So in

10    the days when everything had to be bluebacked -- and I just

11    tell you this in case you're filing a complaint, we could

12    not file an attachment.  So you would have had to actually

13    file another complaint.  But she says it can be done.  So

14    it's deemed filed as of today's date.

15              Defendant's motion for sanctions is denied without

16    prejudice.  So that means that defendant could bring the

17    motion again.  The Court indicated the Court feels that just

18    more information is needed because it involves or to some

19    extent it would involve directing the jury to do certain

20    things because of the logs that were not kept.  And so I

21    think that motion is better brought once discovery is

22    complete.

23              The other motion that's before the Court is there

24    are motions to file under seal.  And so those motions are

25    denied.  And the reason is that counsel rely on the
```

 1   protective order.

 2          Our local rule indicates you can't rely just on

 3   the protective order.  The protective order is something

 4   that's for the benefit of the parties in the case, that is

 5   counsel.

 6          You've agreed that you'll provide something to the

 7   other side on condition, whatever that condition might be.

 8   So the protective order -- you cannot just rely on that

 9   protective order for purposes of sealing documents or

10   redacting big portions of documents.

11          The parties don't cite any cases to support this.

12   There are cases.  I see them in certain motions like trade

13   secrets, things of that type.  There've been some cases from

14   appellate courts where appellate courts either found it was

15   not an abusive discretion for a trial court to seal or that

16   something should be sealed.  So the Court denies the motion

17   to seal.

18          What the Court is balancing is the public's right

19   to know.  This is a public forum.  It's not like an

20   arbitration or a forum where things could be private.  This

21   forum is public.  And so it's the people's right to know

22   what comes before the court.  And we balance that against

23   private information.

24          So, typically, it's information like Social

25   Security numbers, health records, things that are personal,

1  no reason to make them public and probably not even relevant

2  to the case that's before the Court.

3          The Court will not issue separate orders on these

4  three motions.  What you will see is just the minutes that

5  will be prepared by the courtroom deputy.

6          On the motion for leave to file a second amended

7  complaint, the motion for sanctions, that's denied without

8  prejudice.  So I expect I'll see that motion again with more

9  evidence to support.

10         And then the ex parte motion to seal documents,

11 the parties are not precluded from filing those motions.

12 And the way it works in this district, the document is

13 kept -- is not made public until the Court actually rules on

14 it.  So if you file an ex parte motion to seal documents,

15 those documents do not become public until the Court rules.

16         So at this point these documents will become

17 public, whatever they are that the clerk has been keeping

18 from the public.  And, of course, we see these motions all

19 the time.

20         That does complete the Court's ruling on the

21 motions before the Court.  Thank you.

22         THE CLERK:  Please rise.  This court is adjourned.

23

24         (At 12:07 p.m. proceedings were adjourned.)

25

1                                --oOo--

2

3                              CERTIFICATE

4          I hereby certify that pursuant to Section 753,

5     Title 28, United States Code, the foregoing is a true and

6     correct transcript of the stenographically reported

7     proceedings held in the above-entitled matter and that the

8     transcript page format is in conformance with the

9     regulations of the Judicial Conference of the United States.

10

11    Date:  May 9, 2023

12

13                          /S/____WIL S. WILCOX _____

14                           U.S. COURT REPORTER
                                CSR NO. 9178
15

16

17

18

19

20

21

22

23

24

25

MR. BOYLE: [20]
MR. BRAUNIG: [3]
 18/16 20/22 21/6
MR. PETERS: [34]
MS. BINA: [3]   12/11
 12/13 12/25
THE CLERK: [4]   3/3
 42/12 52/25 55/22
THE COURT: [62]

-

-- take [1]   39/19
--oOo [1]   56/1
-oOo [1]   3/2

/

/S [1]   56/13

1

10,000 [7]
1000 [1]   2/4
10250 [1]   2/8
10:11 [1]   3/1
1100 [1]   2/8
12 [1]   44/17
12 days [1]   42/20
12,526 [1]   41/2
12:07 [1]   55/24
13 months [2]   41/8
 43/17
1304 [1]   2/4
14 [2]   1/18 3/1
15 [1]   29/23
15 minutes [1]   52/24
15-minute [1]   52/19
19 [9]
19 boxes [2]   9/23
 10/4
19-box [2]   35/11
 40/24
1st [1]   1/24

2

20 [2]   39/19 39/19
20-8819-CBM [2]   1/8
 3/3
20004-1304 [1]   2/4
2019 [1]   27/13
202-637-2200 [1]   2/5
202-637-2201 [1]   2/5
2022 [2]   13/19 21/13
2023 [3]   1/18 3/1

56/11
2024 [4]   41/7 42/13
 42/13 46/15
2200 [1]   2/5
2201 [1]   2/5
26th [1]   42/13
28 [1]   56/5
2800 [1]   2/12

3

30 [2]   43/10 45/25
30 days [11]
312-876-7700 [1]   2/13
312-993-9767 [1]   2/14
31st [1]   41/7
330 [1]   2/12
350 [1]   1/24
37 [3]   14/22 18/3
 19/25

4

40,000 [14]
415-391-5400 [2]   2/19
 2/23
415-397-7188 [2]   2/19
 2/23
424-653-5500 [1]   2/9
424-653-5501 [1]   2/9

5

50,000 [5]   7/23 35/14
 36/7 39/17 50/22
508 [1]   13/10
5400 [2]   2/19 2/23
5500 [1]   2/9
5501 [1]   2/9
555 [1]   2/4
5th [1]   21/13

6

60611 [1]   2/13
633 [2]   2/18 2/22
6th [1]   42/13

7

7188 [2]   2/19 2/23
753 [1]   56/4
7700 [1]   2/13

9

90,000 [1]   7/14
90012 [1]   1/25
90067 [1]   2/8
9178 [2]   1/23 56/14

9411 [2]   2/18 2/22
9767 [1]   2/14

A

abeyance [1]   18/20
above [1]   56/7
above-entitled [1]
 56/7
absolutely [4]   6/23
 30/10 31/21 52/16
absorbed [1]   38/23
abusive [1]   54/15
accomplish [1]   4/4
accomplished [2]
 37/10 37/10
according [2]   31/13
 32/5
accustomed [1]   15/24
Act [2]   34/4 37/16
acted [1]   18/4
action [4]   18/11
 23/14 34/13 34/13
actionable [1]   23/21
add [5]   23/14 24/6
 24/14 37/13 51/1
added [3]   26/7 41/13
 48/12
adding [3]   24/22 41/5
 42/4
addition [1]   49/9
addition -- Mr [1]
 49/9
address [18]
adjourned [2]   55/22
 55/24
adjudicate [2]   29/11
 30/1
adjudicated [1]   38/22
administrative [2]
 5/11 5/16
admissible [1]   44/2
admittedly [1]   26/15
advance [1]   24/23
adverse [4]   14/11
 14/18 15/21 18/13
affirmatively [1]
 27/14
afterwards [1]   5/19
agent [4]   9/3 9/25
 10/1 32/5
agents [10]
agreement [1]   16/4
Ah [1]   39/8

**A**

al [2]   1/6 3/4
allegations [4]   23/2
 26/15 26/16 47/5
allege [2]   24/6 26/3
alleged [1]   23/19
allow [4]   18/20 19/14
 32/12 35/24
almost [1]   22/23
alongside [1]   34/3
amend [20]
amend and [1]   13/21
amended [24]
amount [8]
analysis [1]   33/17
Andrew [1]   2/21
Angeles [4]   1/17 1/25
 2/8 3/1
answer [4]   3/18 5/25
 44/17 46/22
anticipate [4]   46/17
 47/7 47/21 48/12
anticipated [1]   13/4
anymore [1]   18/1
anything raised [1]
 12/1
appearance [1]   3/5
APPEARANCES [1]   2/1
appellate [2]   54/14
 54/14
apple [1]   25/1
apply [1]   37/17
appointed [1]   50/12
appreciate [1]   18/18
approach [1]   44/20
arbitration [1]   54/20
are going [1]   49/8
are kept [1]   17/17
aren't [1]   23/21
argue [1]   35/18
argued [1]   31/18
arguing [1]   11/21
argument [9]
arguments [5]   12/14
 12/19 36/14 36/14
 40/10
arrived [1]   43/25
artificial [1]   27/7
assertion [3]   9/16
 9/17 26/14
assist [2]   35/10
 38/14
assume [1]   15/18

assuming [3]   17/2
 21/4 27/16
assure [1]   43/5
attached [5]   10/23
 11/2 11/13 15/4 53/9
attachment [1]   53/12
attachments [1]   11/6
attempted [1]   19/9
attentive [1]   42/24
Avenue [1]   2/12

**B**

balance [1]   54/22
balancing [1]   54/18
ball [1]   24/23
barred [1]   29/6
baseline [1]   47/17
basis [2]   24/25 30/2
Battery [2]   2/18 2/22
becomes [3]   11/12
 24/16 43/22
bellwether [2]   36/6
 39/16
bellwethers [1]   38/21
belong [1]   7/18
bench [1]   52/20
benefit [1]   54/4
bet [1]   45/18
bifurcate [1]   46/12
bigger [1]   5/10
bigger space [1]   5/10
biggest [1]   31/10
Bina [4]   2/7 3/8
 11/21 31/18
bite [1]   25/1
bled [1]   43/19
bluebacked [1]   53/10
BMG [4]   21/12 25/22
 25/23 26/1
Boulevard [1]   2/8
box [2]   35/11 40/24
boxes [15]
Boyle [4]   2/3 3/6
 22/12 33/21
Braunig [4]   2/21 3/13
 17/7 18/17
briefing [1]   51/3
broker [2]   30/21 31/2
broker's [1]   31/2
brokers [6]
building [1]   21/14
bulk [2]   7/1 30/11
bully [2]   26/10 33/23

bunch [2]   47/19 48/21
business [4]   23/9
 24/17 24/19 38/16
busy [1]   45/4

**C**

CA [4]   2/8 2/18 2/22
 3/1
Caitlin [2]   2/11 3/8
caitlin.dahl [1]   2/14
CALIFORNIA [3]   1/2
 1/17 1/25
candidates [1]   48/25
CBM [2]   1/8 3/3
CENTRAL [1]   1/2
CEO [2]   31/13 48/18
CERTIFICATE [1]   56/3
certify [1]   56/4
chambers [4]   4/24 5/8
 5/24 22/25
charges [1]   43/21
Chicago [1]   2/13
child [1]   43/8
chosen [1]   52/12
citation [1]   13/6
cite [1]   54/11
cited [2]   21/12 21/21
cites [1]   13/5
Civil [1]   3/3
claim [3]   33/14 34/19
 34/22
claims [1]   46/11
clear [3]   19/7 25/18
 37/22
clerk [7]
clerks [2]   10/15
 10/18
close [2]   3/21 44/25
closed [1]   13/8
closer [3]   14/6 14/20
 16/20
CMC [1]   45/18
CMI [2]   27/18 27/22
Code [1]   56/5
colleague [1]   21/14
colleagues [1]   3/13
collected [1]   8/10
comfortable [1]   18/1
comment [3]   6/5 12/25
 15/15
comments [4]   4/9
 18/18 22/11 30/5
Commercial [4]   1/9

**C**

**Commercial... [3]**
2/16 3/4 3/12
**commissioners [5]**
8/11 8/15 8/20 9/1
9/12
**commissions [1]** 8/24
**communicate [1]** 33/25
**communications [2]**
30/12 30/14
**companies [2]** 42/21
43/7
**company [4]** 16/21
22/18 26/8 27/3
**compares [1]** 34/12
**compensated [2]** 42/24
43/5
**competitor [1]** 24/17
**competitors [1]** 24/19
**complaint [29]**
**complete [5]** 37/2
37/14 44/6 53/22
55/20
**completed [7]**
**completion [6]**
**complex [1]** 43/24
**complicate [1]** 41/5
**complicated [1]** 23/18
**computer [1]** 45/2
**concerns [1]** 17/4
**condition [2]** 54/7
54/7
**conduct [6]**
**conducted [4]** 14/7
32/22 44/19 46/19
**confer [1]** 17/6
**conference [7]**
**conferred [1]** 17/9
**confidence [1]** 19/16
**confidential [1]**
23/17
**confirm [1]** 19/3
**conformance [1]** 56/8
**connection [2]** 13/20
45/18
**connects [1]** 50/1
**consequence [1]** 28/15
**consideration [1]** 5/1
**consolidate [1]** 29/14
**Constellation [1]** 2/8
**CONSUELO [1]** 1/4
**consumes [1]** 44/17
**contain [2]** 9/24

**C**
46/25
**contained [2]** 9/15
23/1
**containing [1]** 31/13
**contents [1]** 6/25
**contested [3]** 23/16
30/9 30/13
**continued [1]** 37/7
**contrary [1]** 26/19
**contributory [1]** 8/5
**control [1]** 52/14
**convenient [1]** 6/2
**Convention [2]** 50/7
50/10
**conveyed [1]** 27/9
**coordinating [1]** 5/23
**coordination [1]** 6/23
**copyright [9]**
**copyrighted [9]**
**copyrighted**
**photographs [1]** 22/2
**copyrights [1]** 21/19
**core [5]** 7/3 9/13
9/14 26/6 26/22
**corporate [1]** 51/13
**corporate cases [1]**
51/13
**CoStar [40]**
**CoStar's [5]** 19/6
20/17 27/8 28/12
46/14
**count [1]** 49/7
**counterclaimant [1]**
3/12
**counterweight [2]**
9/16 9/23
**court [123]**
**Court's [8]**
**courtesy [1]** 5/24
**courthouse [1]** 5/9
**courtroom [4]** 31/16
41/25 53/8 55/5
**courts [3]** 39/16
54/14 54/14
**create [2]** 28/17
42/21
**created [1]** 32/2
**creation [1]** 32/1
**creative [1]** 40/9
**CREXi [44]**
**CREXi's [14]**
**critical [2]** 9/12
43/16

**C**
crop [5] 8/4 9/8 9/24
10/2 48/21
**cropped [1]** 27/16
**cropping [2]** 9/20
31/25
**CSR [2]** 1/23 56/14
**cures [1]** 33/15
**cutoff [1]** 45/8
**CV [2]** 1/8 3/3

**D**

**Dahl [2]** 2/11 3/8
**damages [1]** 30/15
**DC [1]** 2/4
**deadline [1]** 49/18
**December [2]** 7/4
21/13
**decide [2]** 3/21 14/13
**decided [1]** 15/17
**decides [1]** 16/5
**decision [3]** 3/22
18/14 20/6
**decisions [1]** 52/13
**deem [1]** 53/9
**deemed [2]** 53/6 53/14
**default [1]** 18/12
**defect [1]** 33/15
**defendant [5]** 1/10
2/16 3/11 32/10 53/16
**defendant's [4]** 4/6
4/15 30/4 53/15
**defendants [7]**
**defense [2]** 15/11
17/5
**defenses [1]** 24/21
**deficient [1]** 34/25
**definitive [1]** 51/18
**Delhi [1]** 8/16
**deliberate [1]** 31/24
**delivered [2]** 4/25
22/24
**denied [4]** 41/12
53/15 53/25 55/7
**denies [1]** 54/16
**deny [8]**
**denying [2]** 30/2
40/20
**depend [2]** 20/2 47/24
**deposition [2]** 19/4
48/25
**depositions [6]**
**deprive [1]** 18/4
**deputy [3]** 41/25 53/8

# D

**deputy... [1]** 55/5
**destroyed [11]**
**destroying [2]** 16/14
17/3
**determination [2]**
14/10 17/2
**determined [2]** 19/11
28/16
**develop [2]** 19/14
20/14
**developed [1]** 20/16
**devote [1]** 40/1
**dictates [1]** 29/3
**difference [2]** 20/1
44/3
**Digital [2]** 34/4
37/16
**directed [7]**
**direction [4]** 10/1
21/23 31/15 47/19
**directions [1]** 9/8
**discovered [1]** 13/17
**discovery [59]**
**discretion [1]** 54/15
**dismiss [1]** 18/11
**dismissal [2]** 34/15
34/18
**dismissed [3]** 25/4
33/11 33/15
**dismissing [1]** 34/11
**dispute [4]** 22/1 22/3
28/8 50/20
**disputed [1]** 23/17
**district [5]** 1/1 1/2
1/24 42/17 55/12
**DIVISION [1]** 1/3
**DMCA [9]**
**document [4]** 44/25
45/3 50/8 55/12
**documents [15]**
**don't--- we [1]** 22/1
**download [1]** 26/4
**draw [4]** 14/11 14/18
15/21 18/13
**drawn [1]** 20/11
**dump [2]** 35/23 35/25
**duplicates [1]** 7/17

# E

**early [15]**
**effect [3]** 9/8 9/25
16/2

**effectively [1]** 19/19
**efficiency [2]** 51/8
51/9
**efficient [3]** 38/15
39/15 51/24
**eight [1]** 25/22
**electronic [1]** 16/8
**element [1]** 13/19
**Eleventh [1]** 2/4
**Elliot [4]** 2/17 3/10
21/9 33/3
**email [9]**
**emails [5]** 8/8 9/3
9/24 9/25 30/18
**emphasize [1]** 30/10
**employee [1]** 35/18
**employees [3]** 48/2
48/3 48/24
**employer [1]** 42/25
**encapsulates [1]**
30/25
**endeavor [1]** 19/13
**enter [1]** 18/11
**entirely [1]** 21/15
**entitled [1]** 56/7
**epeters [1]** 2/20
**especially [1]** 14/10
**establish [1]** 24/21
**established [1]** 18/24
**Estate [4]** 1/9 2/16
3/4 3/12
**estimate [2]** 42/20
43/11
**Estimated [1]** 42/13
**et [2]** 1/6 3/4
**ever intended [1]**
22/4
**every week [1]** 49/12
**everybody [3]** 3/23
4/1 23/20
**everyone [1]** 35/14
**evidence [32]**
**ex [2]** 55/10 55/14
**examination [1]** 34/3
**examples [2]** 30/17
39/16
**Exchange [4]** 1/9 2/16
3/4 3/12
**excuse [1]** 42/23
**excused [1]** 40/4
**exercise [1]** 39/2
**exist [1]** 18/1
**expensive [1]** 24/16

**experience [2]** 29/3
32/15
**expert [1]** 41/20
**explanation [2]** 23/10
46/23
**extent [2]** 11/5 53/19

# F

**face [2]** 20/20 40/18
**facilitate [1]** 8/3
**fact [11]**
**factors [1]** 47/13
**facts [4]** 13/15 13/16
33/14 36/15
**failed [1]** 17/13
**failure [1]** 26/3
**faith [1]** 17/2
**family [1]** 43/9
**Fax [5]** 2/5 2/9 2/14
2/19 2/23
**featured [2]** 30/11
30/11
**February [5]** 1/18 3/1
42/12 44/9 46/15
**figure [1]** 48/9
**file [23]**
**files [2]** 26/11 32/19
**filings [1]** 8/21
**filter [10]**
**final [1]** 30/16
**financial [2]** 42/22
42/23
**findings [7]**
**fingertips [1]** 42/10
**firmly [1]** 33/17
**firms [2]** 43/2 43/4
**flow [1]** 48/15
**focused [1]** 51/9
**footnote [1]** 21/12
**foregoing [1]** 56/5
**format [1]** 56/8
**forum [4]** 52/11 54/19
54/20 54/21
**fourth [1]** 49/22
**Francisco [2]** 2/18
2/22
**frankly [1]** 38/16
**front [2]** 8/14 39/9
**front-loaded [1]** 8/14

# G

**generated [3]** 7/22
8/25 9/1
**generates [1]** 8/24

**G**

George [1]  3/14
gets [5]  7/2 24/7
 26/7 31/17 41/12
glad [1]  12/16
gmail.com [1]  1/25
Goodman [3]  13/5 13/9
 13/24
gotten [1]  18/23
grant [7]
granted [4]  32/24
 41/12 44/12 53/6
granting [1]  17/12
grants [3]  44/21
 48/10 50/16
greater [1]  19/16
group [4]  1/6 2/2 3/4
 36/6

**H**

Hac [1]  2/11
Hague [2]  50/6 50/10
happen if [1]  44/12
happy [1]  18/21
harbor [2]  21/18 22/6
harbors [1]  37/17
hardship [3]  40/4
 42/22 42/23
health [1]  54/25
hearing [2]  12/8
 41/21
helpful [1]  44/4
here's [2]  10/1 36/4
hereby [1]  56/4
hiding [2]  31/25 32/1
highlighted [1]  30/17
hired [1]  27/10
history [1]  29/25
hold [4]  18/19 19/14
 41/7 46/23
HON [1]  1/4
honor [72]
Honor's [6]
hope [2]  11/1 32/4
hopefully [1]  51/21
hotly [3]  23/16 30/9
 30/13
hour [1]  45/1
huge [4]  8/15 9/10
 22/18 49/24

**I**

I'll [8]

I'm [26]
I've [15]  17/15 30/23
 31/20 49/6 52/17
ice [1]  50/11
IL [1]  2/13
image [5]  9/25 10/2
 41/2 50/24 51/17
images [36]
impact [1]  47/13
impacts [1]  50/21
impossible [1]  26/17
impression [1]  16/8
improvidently [1]
 38/10
Inc [5]  1/6 1/9 2/2
 2/16 3/4
incendiary [1]  23/2
inclined [1]  20/13
inconsistent [1]
 29/10
incorporated [1]  11/6
incorrect [2]  25/22
 27/24
incredibly [1]  28/23
India [10]
India's [1]  8/17
Indian [11]
indisputable [1]  47/4
indisputably [3]
 28/12 28/13 28/14
indulgence [1]  11/22
inefficient [1]  28/23
infer [2]  20/7 20/8
inference [5]  14/12
 14/19 15/22 18/13
 20/11
inferring [1]  15/16
information [11]
infringement [4]  8/4
 8/6 31/10 51/14
infringements [4]
 28/16 28/20 47/1
 47/16
infringing [3]  7/23
 21/20 28/17
initially [1]  10/18
innocent [1]  26/8
instances [2]  29/24
 51/14
instead [1]  44/16
instruct [5]  14/11
 14/14 14/18 15/21
 18/10

intellectual [1]  8/17
intend [2]  23/22
 29/21
intended [1]  22/4
intent [6]
intentional [1]  17/3
intentionality [1]
 20/3
interested [4]  36/1
 39/21 40/5 46/10
interfere [1]  23/9
internal [1]  9/24
interrogatories [1]
 16/19
interrogatory [2]
 16/18 19/1
investors [4]  22/25
 22/25 23/3 23/8
involvement [1]  28/10
issue [18]
issued [1]  34/14
issues [11]
it is [1]  51/14
items [1]  5/15

**J**

January [1]  13/19
Jason [1]  3/14
Jessica [2]  2/7 3/8
Jessica Bina [1]  3/8
jessica.stebbinsbina
[1]  2/10
job [2]  5/23 11/1
judge [16]
Judge Segal [1]  39/10
judgment [20]
judicial [2]  29/10
 56/9
juror [1]  43/3
jurors [5]  40/1 40/16
 42/17 42/23 45/13
jury [13]

**K**

Kecker [1]  18/17
Keker [3]  2/17 2/21
 3/11
keker.com [2]  2/20
 2/24
knowledgeable [1]
 19/4
knows [8]

**large [2]**   22/19 40/16
**Latham [4]**   2/3 2/7
  2/12 3/7
**law [9]**
**lawsuit [8]**
**laypersons [1]**   43/10
**lead [1]**   47/5
**leading [1]**   8/17
**learned [2]**   13/11
  27/13
**lectern [7]**
**legal [2]**   34/3 36/12
**legalistic [1]**   23/12
**legitimate [1]**   40/12
**lesson [1]**   13/11
**letter [1]**   13/18
**letters [1]**   50/6
**liberal [1]**   29/23
**library [2]**   50/24
  51/17
**life [2]**   43/9 52/13
**light [1]**   51/15
**likelihood [1]**   29/9
**limine [1]**   32/18
**listen [1]**   45/14
**listings [6]**
**literally [2]**   48/23
  49/19
**litigate [2]**   24/20
  51/23
**litigating [2]**   28/15
  38/16
**litigation [4]**   23/7
  40/13 43/20 50/2
**LLP [5]**   2/3 2/7 2/12
  2/17 2/21
**loaded [1]**   8/14
**local [1]**   54/2
**log [1]**   24/12
**logo [11]**
**logs [6]**
**longest [1]**   46/1
**Los [4]**   1/17 1/25 2/8
  3/1
**low-number [2]**   29/8
  29/14
**lucky [1]**   30/19
**lw.com [3]**   2/6 2/10
  2/14

## M

**main [1]**   6/20

**majority [1]**   49/7
**malls [1]**   15/15
**management [5]**   15/2
  21/13 34/5 38/12 40/9
**mantra [1]**   10/5
**March [4]**   41/7 42/13
  44/9 46/16
**March 31st [1]**   41/7
**MARSHALL [1]**   1/4
**masked [2]**   3/23 4/1
**masks [1]**   3/17
**mass [1]**   8/8
**master [4]**   38/25 39/6
  50/4 50/12
**material [4]**   10/13
  11/8 13/3 26/4
**materials [4]**   5/4 5/6
  10/17 11/2
**matter [4]**   4/3 21/25
  47/17 56/7
**merits [2]**   13/2 24/21
**messages [3]**   8/9 9/7
  10/1
**Millennium [2]**   34/4
  37/16
**mis [1]**   13/24
**misappropriation [1]**
  31/11
**mischievous [1]**   13/20
**miscitation [1]**   13/24
**misconduct [1]**   48/15
**misery [1]**   40/25
**moment [1]**   17/6
**months [8]**
**morass [1]**   24/7
**mostly [1]**   12/14
**motion [108]**
**motion's [2]**   20/18
  20/19
**motions [28]**
**mountain [1]**   9/15
**movant [5]**   4/15 12/6
  16/12 17/1 17/24
**movement [1]**   14/3
**Mr [12]**
**Mr. [2]**   25/19 50/2
**Mr. Peters [2]**   25/19
  50/2
**Ms [1]**   31/18
**Ms. [1]**   11/21
**Ms. Stebbins [1]**
  11/21
**multiple [2]**   49/6

**multitude [2]**   48/1
  48/2

## N

**nature [5]**   14/15
  32/13 33/1 35/7 36/2
**necessary [3]**   5/14
  14/22 16/25
**Nest [4]**   2/17 2/21
  3/11 18/17
**Nicholas [1]**   2/3
**nicholas.boyle [1]**
  2/6
**Nick [1]**   3/6
**Nobody [1]**   27/23
**non [1]**   31/22
**non-volitional [1]**
  31/22
**North [1]**   2/12
**notice [5]**   21/16
  21/19 22/8 24/4 26/2
**noticed [1]**   52/18
**November [1]**   48/23
**number [11]**
**numbers [2]**   28/9
  54/25
**numerous [1]**   24/18
**NW [1]**   2/4

## O

**objective [1]**   38/17
**obscure [2]**   26/21
  28/2
**October [2]**   7/14 7/22
**offer [1]**   18/2
**offering [2]**   6/23
  25/8
**offers [1]**   26/9
**Official [1]**   1/24
**offshore [2]**   26/20
  31/10
**Oh [1]**   16/22
**ongoing [1]**   35/11
**oOo [2]**   3/2 56/1
**open [2]**   19/14 20/14
**operated [2]**   22/4
  27/3
**opinion [1]**   15/14
**opponent's [1]**   38/17
**opportunity [11]**
**opposing [2]**   32/20
  37/1
**opposition [2]**   8/21

opposition... [1]
 12/18
oppressive [1]   24/16
oral [1]   25/11
orally [1]   12/7
order [11]
orders [1]   55/3
origin [1]   26/21
original [2]   23/19
 45/18
originally [1]   28/6
ours [1]   28/21
out in [1]   13/17
outbound [1]   19/8
oversight [1]   25/24
ownership [2]   27/8
 28/2

**P**
p.m [1]   55/24
page [4]   13/10 25/22
 26/12 56/8
pain [1]   22/18
paper [3]   8/24 8/25
 9/2
papers [4]   10/25
 13/17 17/16 25/6
paradigmatic [1]
 27/17
paraphrasing [1]
 30/22
part [4]   4/12 15/23
 18/3 33/10
parte [2]   55/10 55/14
parties [25]
Partner [1]   11/20
party [8]
passive [2]   9/19
 26/18
pay [2]   42/21 43/2
pendency [1]   32/3
pending [2]   52/21
 53/4
people [9]
people's [1]   54/21
perfectly [1]   40/19
perhaps [3]   38/21
 38/23 38/24
permission [1]   20/15
permit [5]   12/5 25/11
 32/20 32/23 37/7
person [3]   10/16 19/4

personal [1]   54/25
perspective [3]   44/8
 44/13 44/20
Peters [18]
Peters' [1]   26/23
phone [4]   2/5 2/9
 2/13 43/4
photograph [1]   21/20
photographs [6]
photos [8]
pick [1]   6/1
picks [1]   26/20
pivot [1]   25/19
place [3]   18/24 45/5
 46/20
plaintiff [3]   1/7 2/2
 3/7
plaintiff's [4]   4/5
 4/14 5/7 53/5
plaintiffs [1]   4/24
plan [1]   4/4
planning [4]   22/7
 44/11 46/1 46/7
platform [4]   9/19
 26/9 26/10 26/18
pleading [3]   29/17
 34/10 44/18
pled [1]   28/7
plexiglass [1]   3/24
plural [1]   36/15
point [25]
points [2]   26/25
 48/18
popping [1]   38/19
position [1]   13/3
possession [1]   7/5
possibility [1]   44/16
posted [1]   23/4
practice [2]   46/19
 51/4
Praxair [1]   13/5
precluded [1]   55/11
predating [1]   7/4
prejudice [11]
prejudicial [2]   17/23
 43/20
preliminarily [1]
 18/23
premature [3]   14/4
 15/11 45/9
prepared [2]   24/20
 55/5

41/12 41/19 41/24
 41/25
presently [1]   52/21
preservation [1]   20/9
preserve [2]   17/13
 20/7
preserving [1]   13/4
PRESIDING [1]   1/4
presume [2]   18/9
 18/10
pretrial [11]
primarily [1]   7/12
primary [2]   5/5 5/19
private [2]   54/20
 54/23
Pro [1]   2/11
problem [1]   35/11
proceedings [3]   1/16
 55/24 56/7
process [2]   8/12 35/3
produce [2]   9/1 49/20
product [1]   8/6
production [2]   7/21
 49/13
promptly [1]   15/1
proper [3]   15/18 25/3
 25/5
property [1]   8/18
proposal [1]   51/10
proposed [3]   11/5
 11/13 23/1
protected [1]   3/24
protection [2]   3/19
 27/11
protective [5]   54/1
 54/3 54/3 54/8 54/9
public [9]
public's [1]   54/18
published [1]   28/14
purportedly [1]   7/18
purposes [5]   5/15
 11/9 46/2 51/8 54/9
pursuant [2]   4/18
 56/4

**Q**
question [17]
questions [8]
quick [3]   30/6 30/17
 48/16
quickly [2]   7/21 49/4
quote [2]   13/9 26/3

**Q**

quoting [1]   13/10

**R**

R-E-S-T-B [1]   27/4
raise [2]   32/9 40/19
raised [4]   12/1 12/19
 25/19 40/12
raises [1]   29/2
raising [1]   40/6
re [2]   5/1 21/1
reaction [1]   51/9
ready [1]   53/3
realistic [1]   52/11
realities [1]   52/13
realized [1]   11/13
rebut [1]   43/21
recent [2]   8/16 31/5
recess [4]   52/19
 52/23 52/25 53/1
reconsideration [1]
 25/5
record [9]
records [13]
recreate [2]   6/8
 19/10
recycle [2]   25/1
 33/18
recycling [1]   33/24
redacting [1]   54/10
reduce [2]   29/9 46/12
reference [1]   11/6
reflects [3]   8/1 8/2
 9/11
registration [1]
 28/13
regulations [1]   56/9
rehash [1]   13/23
rejoinder [1]   10/4
relief [1]   45/8
rely [3]   53/25 54/2
 54/8
remind [1]   33/8
removal [1]   27/18
remove [4]   3/18 27/22
 27/22 28/2
repeated [2]   10/4
 39/13
repetitive [1]   45/22
replaced [2]   17/20
 19/17
replead [1]   33/10
reply [11]

REPORTER'S [1]   1/16
reports [4]   8/25 9/6
 9/11 30/12
representations [1]
 18/25
request [6]
requests [6]
requirement [1]   19/25
requirements [1]   34/3
resolve [2]   38/24
 40/24
resolved [4]   38/15
 45/7 50/13 50/15
response [2]   30/4
 46/14
responses [1]   19/1
Restb [1]   27/4
restored [1]   17/20
result [2]   34/11 37/1
resurfacing [1]   41/1
retrieve [1]   32/5
retrieving [1]   16/16
return [5]   6/9 6/10
 6/16 21/7 52/20
revelations [2]   48/15
 49/1
review [3]   5/15 10/20
 11/9
revisions [1]   26/13
revisits [1]   34/6
rhetorical [1]   23/8
rid [2]   9/4 9/22
Rights [1]   21/12
rigmarole [1]   51/24
rise [2]   52/25 55/22
rolled [1]   28/24
room [3]   3/20 3/25
 23/20
rooted [1]   33/17
rule [16]
ruled [4]   5/17 6/1
 25/3 28/24
rules [9]
ruling [3]   5/15 11/9
 55/20
rulings [1]   29/10

**S**

SAC [3]   26/19 28/6
 50/17
safe [3]   21/17 22/6

safekeeping [1]   6/12
same time [1]   22/24
sample [1]   38/21
San [2]   2/18 2/22
sanctions [11]
Scarsi [1]   21/14
scheduling [1]   46/1
scheme [1]   8/4
scope [1]   12/20
screen [1]   45/2
seal [6]
sealed [1]   54/16
sealing [1]   54/9
searching [1]   38/13
seat [1]   43/3
SEC [1]   30/11
second [21]
secrets [1]   54/13
Section [1]   56/4
secured [1]   8/15
Security [1]   54/25
seek [1]   25/5
sees [1]   14/6
Segal [6]
selected [3]   26/4
 40/2 42/19
selective [1]   20/9
sense [4]   6/25 13/6
 32/2 47/15
sensitive [1]   3/25
seriatum [1]   51/4
serve [2]   23/6 40/16
served [1]   49/19
Services [1]   13/5
settlement [2]   39/7
 41/21
seven [3]   31/15 31/16
 32/2
seven months [3]
 31/15 31/16 32/2
seventh [2]   49/12
 49/23
sever [1]   46/11
share [1]   35/9
short [2]   5/25 46/22
shown [1]   28/5
shred [1]   6/8
shredded [1]   6/2
shredding [1]   6/6
side [9]
sides [2]   49/8 50/14
sideshow [2]   44/6

**S**

sideshow... [1]   50/2
sifted [1]   7/20
sight [1]   47/12
sign [2]   33/20 50/5
single [1]   50/19
site [9]
sites [1]   31/14
situation [1]   28/19
sixth [1]   49/23
slapped [1]   24/4
slightly [1]   5/23
small [1]   5/8
smaller [2]   5/8 22/20
snipping [1]   31/25
Social [1]   54/24
someplace [2]   12/5
 16/23
soon [3]   13/14 14/13
 18/13
sought [2]   13/12 51/7
sounds [2]   5/22 41/16
space [2]   5/10 5/13
special [3]   38/25
 50/4 50/12
specific [2]   4/9 38/4
spell [1]   31/7
spend [1]   46/4
spent [1]   19/9
spite [1]   52/9
spoliation [2]   13/12
 13/21
spread [1]   23/15
staff [3]   3/24 22/14
 22/16
stage [4]   15/13 15/21
 16/8 44/18
stand [1]   49/5
standing [1]   41/18
star [1]   48/21
state [1]   3/5
STATES [3]   1/1 56/5
 56/9
stay [2]   42/17 43/10
stayed [2]   21/15 26/1
Stebbins [2]   2/7
 11/21
stenographically [1]
 56/6
step [1]   11/22
steps [1]   17/13
stipulate [1]   51/22
storage [1]   26/5

story [1]   17/18
stream [3]   39/12
 41/4 51/12
streamlining [1]
 38/14
Street [4]   1/24 2/4
 2/18 2/22
strip [1]   45/15
strongly [1]   29/4
struggling [4]   35/13
 38/20 39/10 39/12
submit [1]   27/17
subpoena [1]   23/1
subpoenas [1]   23/4
substantial [3]   44/25
 49/13 49/17
substantive [1]   25/25
sued [3]   8/2 21/20
 31/15
sufficient [1]   3/19
suggest [2]   36/24
 40/10
suggested [1]   51/16
suggesting [2]   37/22
 50/25
suggests [1]   32/11
Suite [3]   2/4 2/8
 2/12
summarizing [1]   11/1
summary [19]
summer [1]   7/13
supplement [2]   18/21
 20/15
support [4]   8/21
 40/20 54/11 55/9
sur [3]   12/4 12/5
 12/7
sur-reply [3]   12/4
 12/5 12/7
surprised [1]   10/12
surprising [1]   40/3
symbol [5]   24/2 25/2
 33/18 33/24 34/3
system [3]   8/7 29/7
 31/14
systems [3]   7/15 19/5
 28/14

**T**

table [1]   3/22
takedown [4]   21/16
 21/19 22/8 24/4
taking -- both [1]

team [2]   45/3 45/3
technical [2]   16/13
 16/21
technology [1]   27/7
teed [1]   13/18
ten days [2]   42/21
 43/2
tend [1]   32/16
tens [1]   38/18
term [1]   23/12
terms [4]   6/16 8/25
 40/9 52/11
thank [17]
There've [1]   54/13
thinking [2]   35/9
 38/9
thirds [2]   28/7 28/7
thoroughly [1]   12/15
thought [7]
thoughtful [1]   18/18
thoughts [1]   38/8
thousand [1]   51/19
thousands [1]   38/18
time [40]
timeliness [1]   13/1
timely [1]   13/13
times [2]   14/17 24/18
timing [2]   13/20 52/2
Title [1]   56/5
today's [2]   53/7
 53/14
topic [3]   40/5 41/9
 41/15
topics [1]   32/8
torpedoes [1]   31/21
totally [1]   16/15
touch [1]   7/9
track [1]   12/18
transcript [3]   1/16
 56/6 56/8
transmission [1]   26/5
transparency [1]   50/9
trial [27]
trials [1]   46/2
tries [1]   26/21
Tuesday [2]   1/18 3/1
two-thirds [2]   28/7
 28/7
twofold [2]   47/12
 47/15
typical [1]   51/14
typically [7]

**U**

U.S **[2]**   1/24 56/14
ultimately **[1]**   46/12
uncovered **[1]**   9/3
underlie **[1]**   13/15
underscores **[1]**   26/15
understanding **[2]**
 47/25 50/23
undertake **[1]**   39/1
undisputed **[1]**   36/15
unfavorable **[2]**   18/9
 18/11
UNITED **[3]**   1/1 56/5
 56/9
universe **[1]**   35/21
unless **[2]**   3/25 25/7
unlike **[1]**   8/12
unlikely **[1]**   39/15
unmask **[1]**   4/2
unrealistic **[4]**   42/17
 43/11 45/24 46/3
untimely **[1]**   20/18
unwieldy **[1]**   43/22
update **[1]**   49/4
upload **[4]**   26/4 26/20
 27/15 27/15
uploaded **[12]**
uploading **[2]**   9/21
 47/25
us **[20]**

**V**

Van **[4]**   2/17 2/21
 3/11 18/17
vast **[6]**
Vaughn **[1]**   39/1
vendor **[3]**   27/9 27/11
 27/24
verified **[1]**   18/25
Vice **[1]**   2/11
violating **[1]**   21/18
violation **[1]**   27/18
violations **[1]**   23/22
volition **[2]**   30/15
 31/21
volitional **[6]**
volume **[7]**
voluminous **[7]**
vs **[1]**   1/8

**W**

Wabash **[1]**   2/12
Walker **[2]**   39/1 39/5

warehouses **[1]**   45/14
Warren **[3]**   2/21 3/13
 18/16
Washington **[1]**   2/4
watermark **[1]**   9/5
Watkins **[3]**   2/3 2/7
 2/12
wbraunig **[1]**   2/24
we'd **[3]**   28/22 36/4
 36/5
West **[1]**   1/24
WESTERN **[1]**   1/3
WhatsApp **[3]**   8/9 9/6
 10/1
whenever **[1]**   34/10
whichever **[1]**   21/3
Why didn't **[1]**   20/21
Wil **[2]**   1/23 56/13
wil.wilcox **[1]**   1/25
Wilcox **[2]**   1/23 56/13
willfulness **[1]**   31/23
wishes **[1]**   18/19
withdrawn **[1]**   23/5
wondering **[1]**   6/21
worse **[2]**   31/17 31/18
worth **[1]**   19/24

**Y**

Y-A-N-S-H **[1]**   31/9
Yansh **[1]**   31/5
you'd **[2]**   44/8 44/17