UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSTAR GROUP, INC. AND COSTAR REALTY INFORMATION, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Defendant. <br> And Related Cases. | Case No. CV 20-8819 CBM (ASx) <br><br> SPECIAL MASTER'S ORDER DENYING WITHOUT PREJUDICE COSTAR'S MOTION TO COMPEL DISCOVERY REGARDING CREXI'S THIRD-PARTY AGENTS [DKT. NO. 259] |

On December 05, 2022, the Plaintiffs CoStar Group, Inc., etc. ("CoStar" or "Plaintiffs") submitted a Motion To Compel ( the "Motion") Discovery Regarding Crexi's ("Crexi" or "Defendants") Third-Party Agents. The parties submitted a Joint Stipulation with the Motion reflecting their respective positions. The parties submitted related briefs and exhibits. The Motion was referred to the Special Master for resolution. The Special Master has considered the Motion, the Joint

Stipulation, and all related filings. On June 12, 2023, the Special Master held a hearing on the Motion. For the reasons discussed below, the Motion is DENIED WITHOUT PREJUDICE.

## A. COSTAR'S CONTENTIONS

CoStar's own investigation and discovery to date has revealed that CREXi's industrial-scale infringement of CoStar's copyrighted images is facilitated in significant part by CREXi's use of a vast network of business process outsourcing entities (BPOs) and other agents. At CREXi s direction, these BPOs and other agents source and build commercial real estate (CRE) listings for CREXi's platforms, thereby playing a vital role not only in CREXi's business model, but also in mass infringement of CoStar's photographs (part and parcel of that business model). CREXi has the contractual ability to request, and receive [documents] and exercises that ability when it is convenient to do so. But CREXi now disclaims that authority and has even instructed its agents that they have no contractual or legal obligation to provide the information that CoStar is requesting. Accordingly, and after months of CREXi dragging its feet, CoStar was required to file the instant Motion. At the outset of discovery, CoStar propounded requests targeted at determining how CREXi via its employees and agents amassed tens of thousands of CoStar copyrighted images and came to display those images on the CREXi website. As relevant here, CoStar asked CREXi to identify and describe its relationships with its BPOs (Interrogatory No. 5) and identify the persons who uploaded the sample of 10,000 infringing

images identified in CoStar's First Amended Complaint ("FAC") (Interrogatory No. 12). CoStar also asked CREXi to identify all persons who accessed CoStar's intellectual property and websites, and what IP addresses, anonymization services, credentials, or accounts were used by such persons to cover their tracks or otherwise access CoStar products (Interrogatory Nos. 2, 3, 13, and 14, and Request for Production No. 5 (the "Requests")). In response to Interrogatory No. 5, CREXi initially refused to provide any response at all (in an effort to obfuscate even the identities of its BPOs). . . CREXi agreed to identify BPOs and other agents that create and update its CRE listings (including with CoStar photographs), and represented that it would produce its contracts with those agents, pursuant to Rule 33(d).2 And in response to Interrogatory No. 12, CREXi admitted its agents uploaded nearly two-thirds of the 10,000 infringing images identified in the FAC. In response to the Requests, however, while CREXi provided certain information for its own employees (e.g., CoStar log-in credentials and IP addresses used by CREXi employees), CREXi objected to providing similar information held solely by its agents (without denying its plain relevance, proportionality to the needs of the case, or claiming an undue burden). [After] months of the protracted meet-and-confer efforts on this issue, CREXi claimed that information in its agents' possession was outside of CREXi's possession, custody, or control and adamantly maintained that it does not have the right to obtain the information sought by CoStar from its agents. Only after CoStar informed CREXi that it planned to seek judicial relief did CREXi finally agree to ask the agents identified in CREXi's supplemental response to CoStar's Interrogatory No. 5 (other

than Arcgate) to provide information responsive to the Requests. Roughly two weeks after this about-face, CREXi finally produced some contracts with only 6 of its 39 agents, which reinforce CREXi s control over the materials sought by the Requests. Nearly two months later, and only after repeated prompting, CREXi produced to CoStar its correspondence transmitting the Requests to its agents (the Letters) and the sparse responses it received. At that time, CoStar learned that CREXi wrote Letters to only 13 of the 39 agents identified in its prior discovery responses. Even worse, the substance of the Letters revealed that they were nothing more than a delay tactic to avoid motion practice, rather than a good-faith attempt to obtain the discovery requested. The Letters [indicated] that the Agents did not have any legal obligation to respond, and encouraged the Agents not to comply with the requests therein if they would prefer not to. (Jt. Stip. 1-4).

## B. CREXI'S CONTENTIONS

Costar's motion is an exercise in misdirection. In almost thirty pages of argument, CoStar pays scant attention to the specific interrogatories and the specific document requests on which it moves. The interrogatories and document requests on which CoStar moves seek specific information: . . . CREXi has provided this information, and CoStar does not complain about the substance of responses as to CREXi. Instead, CoStar argues that CREXi should be ordered to command additional information from third parties that CREXi has engaged for various services. As to the third parties, CREXI does not

4

have the right to the requested information; nor does it have the right to demand any and all information from those entities. For example, usernames, passwords, IP addresses, and other vendor technical information do not belong to CREXi and are far beyond its reach. It is true, at least in most cases, Deliverables, e.g., completed spreadsheets or reports are the property of CREXi. But the present discovery requests do not seek these Deliverables, which CREXi already possesses and has agreed to produce, to the extent they are responsive and relevant to the issues in this case. Further, as described below, CREXi has already asked its vendors to provide the requested information voluntarily. While some declined, many others provided the requested information. CREXi has shared all of the responses with CoStar . . In any event, to the extent CoStar remains unsatisfied, CoStar has other means to obtain the requested information, as CoStar can seek documents or deposition testimony from the third parties that actually control that information. Indeed, CoStar subpoenaed a US-based vendor seven months ago, and it has indicated its intention to pursue information from non-US vendors under the Hague Convention, an option CREXi does not universally oppose, subject of course to reasonable and appropriate limits. In many ways, that fact alone makes this motion unnecessary and duplicative; and the Court certainly need not wade into the thicket of principal-agent law, regarding a factual determination that will be contested at summary judgment or trial. This motion presents a straightforward legal issue. CREXi is right on that issue, and the motion is duplicative and unnecessary in any event.

(Jt. Stip. 4-6).

## C. DISCUSSION

A party must produce documents that are in that party's possession custody or control. Under Ninth Circuit law, the phrase "possession, custody or control" means the legal right to obtain the documents from a third parties.

It appears that at least some of CREXi's contracts with its agents or third parties provide that CREXI is the ultimate owner of the information (or a portion of the information) or documents involved in the parties' transactions. Based on this contractual relationship, it appears that CREXI did request information from those vendors and provided to COSTAR what was produced. It also appears that some third party vendors either ignored or denied CREXi's requests for documents.

At the hearing before the Special Master, CoStar argued that the CREXI letters to vendors were equivocal and vague. CoStar asserted that the vendors could not have understood that they had a legal obligation to produce documents based on the language of the letters. According to counsel's comments at the hearing, the majority of vendors reside in either India or the Philippines.

The Special Master notes that, despite CoStar's criticism of CREXi's letters, multiple third party vendors did produce documents. The Special Master is not convinced that certain vendors in foreign jurisdictions, possibly unfamiliar with federal discovery rules, would react differently even if CREXi had used stronger language in its letters.

In any event, CoStar has availed itself of alternative means to obtain this discovery, either through litigation in the foreign jurisdiction or through Hague Convention procedures. Because the foreign litigation or Hague Convention procedures may allow CoStar to obtain the same documents that are allegedly at issue in the present Motion, any further letter writing to these same third parties from CREXI may be duplicative, redundant and unnecessary.

Accordingly, the Motion to Compel Regarding Third Parties is DENIED. This denial is without prejudice, however, to renewing the Motion in the event that CoStar believes, after conclusion of the foreign litigation and the Hague Convention procedures, that further efforts by CREXI with third party vendors is necessary.

IT IS SO ORDERED.

DATED: June 14, 2023

_Hon. Suzanne Segal (Ret.)_
Honorable Suzanne H. Segal (Ret.)
Special Master