1  JESSICA STEBBINS BINA (BAR NO. 248485)
   jessica.stebbinsbina@lw.com
2  ELYSE M. GREENWALD (BAR NO. 268050)
   elyse.greenwald@lw.com
3  LATHAM & WATKINS LLP
   10250 Constellation Boulevard
4  Suite 1100
   Los Angeles, CA 90067
5  Tel: 424.653.5500
   Fax: 424.653.5501
6
   *Attorneys for Plaintiffs and Counterdefendants*
7  *CoStar Group, Inc. and CoStar Realty Information, Inc.*

8  [Additional Counsel Listed on the Next Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Defendant. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Counterclaimant, <br><br> v. <br><br> COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC., <br><br> Counterdefendants. | CASE NO. 2:20-cv-08819-CBM-AS <br><br> **DISCOVERY DISPUTE SUBMITTED TO SPECIAL MASTER** <br><br> Assigned to Hon. Consuelo B. Marshall <br> Hon. Alka Sagar, Magistrate Judge <br><br> **COSTAR'S MOTION TO COMPEL CREXI'S SLACK COMMUNICATIONS & DOCUMENTS** <br><br> Date Filed:   September 25, 2020 <br> Trial Date:    October 22, 2024 <br><br> **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

NICHOLAS J. BOYLE*
nicholas.boyle@lw.com
SARAH A. TOMKOWIAK*
sarah.tomkowiak@lw.com
ROBERTO J. BORGERT*
roberto.borgert@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201

CAITLIN E. DAHL*
caitlin.dahl@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: 312.876.7700
Fax: 312.993.9767

*Admitted pro hac vice*

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND ................................................................................................... 2

III. ARGUMENT ........................................................................................................ 4

    A.    CREXi's Slack Messages Are Relevant ................................................ 4

    B.    CoStar's Requested Slack Discovery Is Proportional to the Needs of the Case ............................................................................................ 5

IV. CONCLUSION ..................................................................................................... 6

i

CASE NO. 2:20-cv-08819-CBM-AS
COSTAR'S MOT. TO COMPEL CREXI'S
SLACK COMMUNICATIONS & DOCS.

...

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Benebone LLC v. Pet Qwerks, Inc.*,
  2021 WL 831025 (C.D. Cal. Feb. 18, 2021).................................................. 4, 5, 6

*Calendar Rsch. LLC v. StubHub, Inc.*,
  2019 WL 1581406 (C.D. Cal. Mar. 14, 2019)....................................................... 4

*FTC v. Am. Future Sys., Inc.*,
  2023 WL 3559899 (E.D. Pa. Mar. 28, 2023)..................................................... 4, 6

*Heh v. County of Los Angeles*,
  2020 WL 2240072 (C.D. Cal. Feb. 13, 2020)........................................................ 6

*Mavrix Photographs, LLC v. LiveJournal, Inc.*,
  873 F.3d 1045 (9th Cir. 2017) .............................................................................. 5

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ................................................................................ 5

**STATUTES**

17 U.S.C. § 504(c)(2)...................................................................................................... 5

**OTHER AUTHORITIES**

Stefan Junge, *Mike DeGiorgio: Founder of Crexi*, Ideamensch (July 14, 2022),
  https://ideamensch.com/mike-degiorgio/ ............................................................. 4

ii

CASE NO. 2:20-cv-08819-CBM-AS
COSTAR'S MOT. TO COMPEL CREXI'S
SLACK COMMUNICATIONS & DOCS.

## I.     INTRODUCTION

CoStar seeks the production of a narrow set of internal Slack communications from a subset of CREXi custodians. CREXi has refused. As an initial matter, CREXi claims there is "***little to no relevant information on Slack***." That is false; and CREXi knows it. Discovery has revealed that Slack is CREXi's preferred "███████████████████████" to "stay in close touch, both in office and at home;" that its employees used Slack to discuss whether their access to CoStar's LoopNet website ████████████████████████████████████████ and that CREXi communicated via Slack about its strategy for competing with CoStar. When CoStar initially brought this dispute to the Special Master for guidance, the Special Master recommended that CREXi produce a "sample" of internal Slack communications so the parties could evaluate the extent to which CREXi used the platform to communicate internally about matters relevant to this case. CREXi, aware that the disclosure of any internal Slack messages would underscore the centrality of this communications platform, thumbed its nose at the Special Master's guidance, claiming that producing even one such message would be too burdensome. That excuse fails.

*First*, the limited set of communications that CoStar seeks undermines CREXi's claimed burden. CoStar seeks responsive Slack communications hitting on ten tailored search terms from a mere six of the eighteen CREXi custodians who use Slack: (1) Eli Randel, CREXi's COO; (2) Lawson Dees, CREXi's VP of Operations; (3) Paul Cohen, CREXi's US Director; (4) Doug Shankman, CREXi's former Senior VP of Revenue; (5) James Burton, CREXi's Manager of Business Operations; and (6) Michael Rosenfeld, a CREXi Regional Director. And CREXi has already performed some collection from Slack in connection with its production of Slack communications with its agents. The circumscribed discovery CoStar seeks is proportional to the needs of the case.

*Second*, CREXi should not be rewarded for failing to disclose Slack as a relevant (indeed critical) repository at the outset of the parties' document production negotiations, dragging its feet during the meet and confer process, and then claiming that—after forcing CoStar to file a motion—it is too late in the discovery process to fulfill obligations it should have fulfilled long ago.

CoStar respectfully requests an order granting its Motion.

1

CASE NO. 2:20-cv-08819-CBM-AS
COSTAR'S MOT. TO COMPEL CREXI'S
SLACK COMMUNICATIONS & DOCS.

## II. BACKGROUND

In October 2021, CoStar issued its first set of requests for production, which sought the production of relevant "Communications," expressly including those on Slack. Dahl Decl., Ex. A. CREXi, however, initially limited its production of communications to emails.

In March 2022, CREXi belatedly identified Slack as a repository of relevant communications between CREXi and its offshore agents—but not for internal communications. Dkt. 444-1, George Decl., Ex. B at 21. CoStar thus promptly pursued the production of CREXi's Slack messages with its agents and more broadly asked CREXi to confirm that it had "preserved documents and communications that took place on [Slack]." Dahl Decl., Ex. B. CREXi ignored that request. *Id.* Ex. C. Instead, in March 2023, a year after CREXi identified Slack as a repository with responsive communications, CREXi claimed (falsely) that the parties had not discussed "the appropriateness of collecting chat systems for review."[1] *Id.* ¶ 3. Given CREXi's refusal to produce Slack messages with its agents, CoStar raised the issue with the Special Master at the April 21, 2023 informal discovery conference ("IDC"), and the Special Master recommended that the parties continue meeting and conferring on the issue. *Id.* Ex. D. While CREXi ultimately agreed to produce responsive communications between CREXi and its agents on Slack, it nonetheless insisted that there was "***little to no relevant information on Slack***." *Id.* Ex. E (emphasis added).[2]

In parallel with CoStar's pursuit of CREXi's Slack communications with its agents, CoStar was reviewing thousands of documents that CREXi produced in February 2023 to comply with the "substantial completion" deadline for written discovery. Dkt. 221. Contrary to CREXi's representations, a produced CREXi training manual confirmed that Slack is CREXi's preferred "█████████████████████" and contains unique communications directly relevant to the claims and defenses in this case. Dahl Decl., Ex. F (emphasis added); *see also id.* Ex. G. For example:

- CREXi's production included email "notifications" containing snippets of internal Slack communications. One such notification shows that a CREXi employee messaged—via

---

[1] To this day, CREXi has refused to disclose whether it has preserved communications on its Slack platform, at the same time as it lobs spurious spoliation claims at CoStar.

[2] Since agreeing to produce Slack messages with its agents in May 2023, CREXi has not produced a single such communication. Dahl Decl. ¶ 4.

2

CASE NO. 2:20-cv-08819-CBM-AS
COSTAR'S MOT. TO COMPEL CREXI'S
SLACK COMMUNICATIONS & DOCS.

1   Slack—custodian Michael Rosenfeld, CREXi's Regional Director, to say she was going to

2   "█████████████████████████████████████████████████████████████

3   █████████████████" (*i.e.*, to search CoStar's LoopNet site ████████████████

4   ████████████████████████████████). Dahl Decl., Ex. H.

- CREXi's production included an email from US Director Paul Cohen to a Senior Product Manager, asking whether "████████████████████████████████████████████████████████████████████████████████████████████" given that CREXi's CEO "████████████████████████████████████████████████████████████████████████████████" *Id.* Ex. I. (And in fact, CREXi *did* use LoopNet listings to build listings on CREXi, and it circulated links to those LoopNet listings *via Slack*. In another email notification of a Slack message produced by CREXi, an account executive used Slack to send ████████████████████████████████████████████████████████████████████. *Id.* Ex. J. )

- CREXi's production reflects that CREXi also used Slack to monitor the risks associated with a business strategy that relied on scraping data and images from LoopNet. Specifically, CREXi employees "████████████████████████████████" regarding CoStar's copyright infringement lawsuit against Xceligent, Inc. *Id.* Ex. K. (That suit resulted in a record $500 million judgment against Xceligent for copyright infringement on an industrial scale, strikingly similar to CREXi's conduct here. Dkt. 351 ¶ 2.)

- CREXi employees used Slack to discuss CREXi's plans for competing with CoStar. One email notification shows that former CREXi executive Doug Shankman messaged CREXi COO Eli Randel on Slack about CREXi's plan "█████████" ████████████████ ████████████. Dahl Decl., Ex. L. Separately, Shankman emailed CREXi's Marketing Director Courtney Ettus that CREXi has a "████████████" in which employees discussed how to "██████████████████████████████████████████". *Id.* Ex. M. And CREXi executives Eli Randel and Lawson Dees used Slack to exchange investor and client pitch decks. *Id.* Ex. N ("████████████████████████████████."); *Id.* Ex. O ("█████ ████████████████████████████████████████████████.").

3

CASE NO. 2:20-cv-08819-CBM-AS
COSTAR'S MOT. TO COMPEL CREXI'S
SLACK COMMUNICATIONS & DOCS.

1    Given the habitual way in which CREXi employees "Slacked"[3] one another to discuss
2    multiple matters relevant to the case, CoStar asked CREXi to confirm that it was producing
3    responsive internal Slack communications along with its Slack communications with its agents.
4    *Id.* ¶ 5. CREXi refused, forcing CoStar to raise the issue with the Special Master at the July 24,
5    2023 IDC. *Id.* ¶ 6. During that IDC, the Special Master "agree[d] that there could be relevant
6    information in internal Slack communications" and recommended that CREXi produce a sample
7    of internal communications from its Slack platform so the parties could evaluate the extent to
8    which "CREXi employees are communicating about the issues in this lawsuit" on Slack. *Id.* Ex.
9    Q at 56:10-11, 57:15-19. Two days later, CoStar asked CREXi to run a subset of the parties'
10   agreed search terms across Slack custodial accounts to determine whether it was necessary to
11   further tailor the search terms or custodians. *Id.* Ex. R. CREXi ignored the request. At the next
12   IDC two weeks later, CREXi represented to the Special Master that it was "working diligently to
13   meet [CoStar's] request to produce a hit count report." *Id.* Ex. S at 80:13-15. It was not. Rather,
14   on August 15, CREXi told CoStar that it was refusing to provide a hit report and that CoStar would
15   have to move to compel if it wanted ***any*** of CREXi's internal Slack communications. *Id.* Ex. R.

16   **III.    ARGUMENT**

17       **A.    CREXi's Slack Messages Are Relevant**

18       CoStar seeks standard discovery from a platform that has uniquely relevant documents. In
19   modern litigation, discovery into Slack communications is "generally comparable to requiring
20   search and production of emails," *Benebone LLC v. Pet Qwerks, Inc.*, 2021 WL 831025, at *3
21   (C.D. Cal. Feb. 18, 2021) (J. MacKinnon), and courts routinely order Slack discovery. *See, e.g.*,
22   *Calendar Rsch. LLC v. StubHub, Inc.*, 2019 WL 1581406, at *1–2 (C.D. Cal. Mar. 14, 2019)
23   (J. Segal); *FTC v. Am. Future Sys., Inc.*, 2023 WL 3559899, at *5 (E.D. Pa. Mar. 28, 2023), *aff'd*
24   *in relevant part*, 2023 WL 3559319 (May 17, 2023). That is particularly true where, as here,
25   "Slack messages are likely to contain relevant information." *Benebone*, 2021 WL 831025, at *2.

---

[3] CREXi employees' use of Slack was so routine they used it as a verb, asking one another to
"▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Dahl Decl., Ex. P. CREXi's CEO Mike DeGiorgio trumpeted
that CREXi uses Slack "to stay in close touch, both in office and at home." Stefan Junge, *Mike
DeGiorgio: Founder of Crexi*, Ideamensch (July 14, 2022), https://ideamensch.com/mike-
degiorgio/.

The Slack-related documents produced to date reveal that CREXi used Slack to discuss matters central to several of CoStar's claims (including, *inter alia*, copyright infringement, misappropriation, and breach of contract), and CREXi's defenses thereto. For example, and as noted above, CREXi employees "Slacked" one another to discuss " ███████ "—*i.e.*, using LoopNet ███████ . Moreover, CREXi used Slack to discuss whether sourcing commercial real estate information from ███████ ███████ (*i.e.*, the litigation risks CREXi faced from engaging in similar business practices as Xceligent). *See supra* at 3. Communications purposely had via Slack (and not email) reflecting that CREXi knew that scraping CoStar listings and CoStar-watermarked images to populate its website raised "███████"—and its decision to do so anyway—are critically relevant to CoStar's claims, the willfulness of CREXi's conduct, CREXi's DMCA safe-harbor defense, and the Court's damages analysis. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 748 (9th Cir. 2019) (stating that infringement is willful if a party has "actual notice" of, or shows "reckless disregard" to, the infringement); *see also Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1057 (9th Cir. 2017) (noting defendant could not benefit from DMCA safe harbor if it had "red flag knowledge" of infringement); 17 U.S.C. § 504(c)(2) (statutory damages of up to $150,000 per violation available if infringement was willful).

In addition, CREXi's internal Slack messages about its business model are independently relevant. CREXi executives used Slack to message about CREXi's business plans (including plans to compete with CoStar), CREXi's growth plans, and pitch decks to potential investors and clients. *See supra* at 3–4. Those documents are relevant to CREXi's liability because they will show how CREXi's planned and advertised growth relied on willfully infringing CoStar's legal rights. Dkt. 489-1 at 1–2, 4–6; Dkt. 522-1 at 10–15. And documents showing that CREXi's business plans included accessing LoopNet for customer leads and to copy listings go directly to CREXi's unjust enrichment at CoStar's expense, which is relevant to statutory damages. Dkt. 489-1 at 4.

**B.     CoStar's Requested Slack Discovery Is Proportional to the Needs of the Case**

5

CASE NO. 2:20-cv-08819-CBM-AS
COSTAR'S MOT. TO COMPEL CREXI'S
SLACK COMMUNICATIONS & DOCS.

Because CREXi's Slack communications are relevant, CREXi "has the burden of showing that discovery should not be allowed." *Benebone*, 2021 WL 831025 at *2. CREXi cannot meet that burden. Indeed, CREXi has refused point blank to substantiate its position via sampling and has instead—tellingly—hidden the ball. By contrast, CoStar has limited the scope of its request to Slack materials that hit on ten tailored search terms across six custodians. Such a circumscribed request is proportional given the relevance of the information sought. *See Am. Future Sys., Inc.*, 2023 WL 3559899, at *5 (holding that Slack discovery was proportional where the producing party could "reduce its review through search terms").

CREXi has also represented that reviewing internal Slack message would be unduly burdensome given "this late stage of the discovery process." Dahl Decl., Ex. T. But any delay flows from CREXi's foot-dragging, not any lack of diligence by CoStar. CoStar sought the production of Slack messages in its initial discovery requests served two years ago, but CREXi ignored the request. *See supra* at 2. Months later, CREXi admitted that it used Slack to communicate **with its agents** about matters relevant to the case—but it failed to disclose that it also used Slack internally to discuss matters equally as (if not more) relevant. Only after CREXi produced some emails did CoStar uncover that Slack was CREXi's preferred platform "to stay in close touch, both in office and at home." *Supra* at 2–4 & n.3. CoStar then promptly asked CREXi to confirm its production of Slack messages was not limited to those with its offshore agents. CREXi refused, forcing CoStar to raise the issue with the Special Master. *See supra* at 4. CREXi then snubbed the Special Master's recommendation for CREXi to produce a "sample" of its internal Slack communications and forced CoStar to file this Motion. Any burden resulting from CREXi's effort to try to avoid producing responsive discovery by running out the clock is not undue. *See Heh v. County of Los Angeles*, 2020 WL 2240072, at *2 (C.D. Cal. Feb. 13, 2020) ("Defendant's position would create . . . perverse incentives by rewarding defendants for withholding required information during the discovery process and punishing plaintiffs by failing to intuit the information that defendants withheld.").

IV.   **CONCLUSION**

CoStar respectfully requests that the Special Master grant its Motion to Compel.

6

CASE NO. 2:20-cv-08819-CBM-AS
COSTAR'S MOT. TO COMPEL CREXI'S
SLACK COMMUNICATIONS & DOCS.

| | |
|---|---|
| Dated: September 12, 2023 | Respectfully submitted, |
| | **LATHAM & WATKINS LLP** |
| | By: */s/ Nicholas J. Boyle* |
| | Nicholas J. Boyle |
| | (admitted *pro hac vice*) |
| | Sarah A. Tomkowiak |
| | (admitted *pro hac vice*) |
| | Roberto J. Borgert |
| | (admitted *pro hac vice*) |
| | 555 Eleventh Street, NW |
| | Suite 1000 |
| | Washington, D.C. 20004 |
| | Tel: 202.637.2200 |
| | Fax: 202.637.2201 |
| | Email: nicholas.boyle@lw.com |
| | sarah.tomkowiak@lw.com |
| | roberto.borgert@lw.com |
| | |
| | Jessica Stebbins Bina |
| | (Bar No. 248485) |
| | Elyse M. Greenwald |
| | (Bar No. 268050) |
| | 10250 Constellation Boulevard |
| | Suite 1100 |
| | Los Angeles, CA 90067 |
| | Tel: 424.653.5500 |
| | Fax: 424.653.5501 |
| | Email: jessica.stebbinsbina@lw.com |
| | elyse.greenwald@lw.com |
| | |
| | Caitlin E. Dahl |
| | (admitted *pro hac vice*) |
| | 330 North Wabash Avenue |
| | Suite 2800 |
| | Chicago, IL 60611 |
| | Tel: 312.876.7700 |
| | Fax: 312.993.9767 |
| | Email: caitlin.dahl@lw.com |
| | |
| | *Attorneys for Plaintiffs and Counterdefendants CoStar Group, Inc. and CoStar Realty Information, Inc.* |

7

CASE NO. 2:20-cv-08819-CBM-AS
COSTAR'S MOT. TO COMPEL CREXI'S
SLACK COMMUNICATIONS & DOCS.