DocuSign Envelope ID: 87B96A1C-228A-4D12-ADCA-3649047263EB

Honorable Suzanne H. Segal (Ret.)
Signature Resolution
633 W. 5th Street, Suite 1000
Los Angeles, CA 90071
JudgeSegal@SignatureResolution.com
Special Master

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSTAR GROUP, INC. AND COSTAR REALTY INFORMATION, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>COMMERCIAL REAL ESTATE EXCHANGE, INC.,<br><br>Defendant.<br><br>And Related Cases. | Case No. CV 20-8819 CBM (ASx)<br><br>SPECIAL MASTER'S ORDER GRANTING IN PART AND DENYING IN PART COSTAR'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS ABOUT CREXI'S BUSINESS MODEL AND INVESTOR COMMUNICATIONS<br><br>(Dkt. No. 489-1 and related filings) |

On August 11, 2023, Plaintiffs CoStar, Group, Inc., etc. ("CoStar") filed a Motion to Compel Production of Documents About CREXi's Business Model and Investor Communications (the "Motion") (Dkt. 489-1). Defendant CREXi filed

an Opposition on August 15, 1012 (Dkt. 532), and CoStar filed a Reply on September 1, 2023 (Dkt. 544-1).

The Special Master has considered the Motion, the Opposition, the Reply, and all related filings. Due to the volume of motions filed, the parties have agreed to waive hearings on their discovery motions and no hearing was held on the Motion. For the reasons discussed below, the Motion is GRANTED in part and DENIED in part.

### A. COSTAR'S CONTENTIONS

CoStar contends the following:

Materials presented to investors regarding CREXi's business plans, including its growth targets and obstacles thereto, are relevant to CoStar's copyright, misappropriation, DMCA, unfair competition, and advertising claims, and probative of CREXi's DMCA safe harbor defense. These documents are also relevant to CoStar's alleged damages and the willfulness of CREXi's infringement. Copyright law permits CoStar to seek statutory damages or actual damages, including CREXi's direct profits and indirect profits attributable to its infringement. Discussions of CREXi's business model with its investors, which would likely include communications regarding CREXi's practice of sourcing listings from competitors, its plans to increase the number of listings on its website, and the associated profits (and expenses saved by piggybacking on CoStar instead of hiring its own photographs and researchers), go directly to the

question of the indirect profits CREXi achieved as the result of its infringement, and are factors commonly considered when awarding statutory damages. Moreover, documents shared with CREXi's investors regarding CREXi's growth and valuations of CREXi are also relevant to CoStar's damages theories, including for the purpose of estimating the value of CoStar's stolen intellectual property.

## B. CREXI'S CONTENTIONS

CREXi contends as follows:

The requests on which CoStar moves have little to do with CREXi's business model. Instead, they target every document in CREXi's eight-year history relating to its investors, its fundraising activities, and its valuations. That information is plainly irrelevant. CREXi's investors and fundraising have no connection to the underlying issues in this litigation. Meanwhile, CREXi has already produced hundreds of documents, both custodial and non-custodial, that detail its business model, along with business plans, marketing plans, and financials (i.e., everything CoStar needs to develop a damages case). These additional requests are irrelevant to CoStar's case; seek documents that would be burdensome to produce; and are calculated to harass CREXi's investors and disrupt CREXi's future financing efforts.

## C. COSTAR'S REPLY

In its Reply Brief, CoStar contends as follows:

> The information CoStar seeks regarding CREXi's business model and valuations, including documents shared with its investors, are relevant to CoStar's liability and damages theories, and to probe CREXi's "safe harbor" defense. And, CREXi's burden arguments are either overblown or generic.

## D. DISCUSSION

CoStar's Motion concerns six requests for documents. CoStar demands documents sufficient to show CREXi's relationship with its investors and board of directors, including their identities and the type and amount of investments made (No. 45); all documents relating to CREXi's capital raises and debt and equity funding, including all documents and communications CREXi provided to actual or potential lenders (Nos. 46, 202, and 203); all documents and communications relating to external and internal valuations of CREXi or any part of its business (No. 201); and all documents and communications relating to CREXi's (i) annual reports; (ii) business plans; (iii) year-end results; (iv) financial budgets; (v) comparisons of financial budgets to end results; (vi) growth milestones; (vii) performance targets; (viii) obstacles impeding growth; and (ix) requests for additional capital provided to actual or potential investors or lenders. (No. 204) (Braunig Decl. Ex. A.) CoStar asserts such documents are relevant to liability and damages and to CREXi's defense under the DCMA. (Dkt. 489-1.)

In response to other requests from CoStar, CREXi has already agreed to produce various financial, marketing, and sales documents, and documents relating to how CREXi sources its listings, including:

- CREXi's annual, quarterly, and monthly budgets for marketing and sales functions (RFP No. 47);
- CREXi's annual corporate revenue, costs, and profits (RFP No. 48);
- the volume of closed deals on www.crexi.com (RFP No. 49);
- documents reflecting who CREXi's competitors are, the markets in which they compete, CREXi's market share, and related competitive analyses (RFP No. 59);
- CREXi's business, marketing or sales plans or projections that refer to CoStar, LoopNet, or Ten-X (RFP No. 121);
- all documents relating to competitive intelligence regarding CRE services markets or any submarket thereof (RFP No. 123);
- CREXi's annual audited financial statements (RFP No. 124); and
- documents relating to barriers or challenges preventing or limiting CREXi's ability to expand the number of property listings, brokers, or customers using CREXi (RFP No. 129).
- centrally maintained documents concerning the process by which CREXi obtains information to add listings, including any discussion about the copying of property information from any other website (RFP No. 14)
- training manuals or memoranda concerning the preparation of online property listings on crexi.com (RFP No. 24);
- CoStar customer lists, directories, lead lists, or broker records from the relevant CoStar databases in CREXi's possession (RFP Nos. 34 and 35);
- centrally maintained corporate guidance or plans for creating broker lists or lead lists (RFP No. 35);
- all documents concerning instances where brokers directed CREXi to gather listing information from public listings on LoopNet or a LoopNet-hosted website (RFP No. 75);
- centrally maintained documents concerning the process by which CREXi obtains information to add to listings (RFP No. 83);

- materials regarding CREXi's process for creating, marketing, and publishing listings (RFP No. 155);

- all CREXi API agreements, the processes CREXi uses to source property listings from an MLS or CRE website, the names of each MLS, CRE website, or CRE online marketplace CREXi has sourced listings from, and whether CREXi sources listings from MLSs, CRE websites, or CRE online marketplaces regularly as a business practice (RFP No. 173);

- CREXi's practices, policies, and procedures for creating brochures relating to commercial real estate listings (RFP 192); and

- documents sufficient to show CREXi's practices, policies, and procedures for creating marketing campaigns or other bespoke marketing materials relating to commercial real estate (RFP 193).

(Braunig Decl. ¶¶ 4, 6.) The Special Master finds that the documents identified above (which CREXi has already agreed to produce) are the general categories of documents that are relevant to CoStar's claim for copyright damages and for its DCMA claims.

CREXi has also agreed to run search terms to identify documents relating to any gathering of data or images from CoStar (Braunig Decl. ¶ 7), relating to how CREXi represents itself to the public (*Id.* ¶ 8), and relating to CREXi's knowledge of CoStar's prior involvement in any intellectual property litigation, including *CoStar Group Inc., et al v. Xceligent Inc*. (*Id.* ¶ 9.) Again, these searches will provide relevant and responsive documents, if they exist, to CoStar's claim for damages and its DCMA claims.

While CoStar is entitled to documents relevant to liability and damages, such requests are subject to Rule 26's proportionality considerations. The Special Master agrees that there may be relevant information in the documents relating to external and internal valuations of CREXi and any part of its business that is in CREXi's possession, custody or control. Accordingly, the Special Master grants

DocuSign Envelope ID: 87D96A1C-228A-4D12-ADCA-3649047263EB

the Motion to Compel as to Request for Production No. 201, which seeks documents in CREXi's possession relating to the valuation of CREXi.

However, the scope of CoStar's remaining requests is overbroad and burdensome. The remaining requests seek documents that are not likely to be relevant to CoStar's damages or DCMA analysis, and are disproportional to the needs of this case under Rule 26(b)(1). CoStar's reliance on *Maplebear Inc. v. Uber Techs., Inc.*, 2021 WL 1845535 (N.D. Cal. Mar. 23, 2021), is misplaced. In *Maplebear*, Instacart alleged that its competitor Cornershop had "scraped" Instacart's data and used it for Cornershop's benefit. Instacart subpoenaed nonparty Uber, which had acquired a majority interest in Cornershop, seeking a broad range of documents. The court declined to order Uber to produce documents "duplicative of information sought from Cornershop[,]" and ordered Uber to produce only "(1) any information about Uber's knowledge, before the acquisition of the majority interest in Cornershop, of Cornershop's practice of scraping intellectual property from Instacart's website and valuation of that practice and the resulting data, and (2) Uber's valuation of Cornershop's large stock of images and pricing data that were taken from Instacart." *Id.* *2 (N.D. Cal. Mar. 23, 2021). As noted below, the Special Master is ordering documents relating to the "valuation" of CREXi or "part of its business." CoStar's other requests to CREXi, however, are overbroad and go far beyond what was ordered in *Maplebear*.

CoStar also relies on patent cases to support its motion:

> Valuations of CREXi are also independently relevant to estimating the value of CoStar's stolen intellectual property. See, e.g., *Symantic Corp. v. Zscaler, Inc.*, 2019 WL 2288278, at *1-2 (N.D. Cal.

7

May 29, 2019) (compelling production of documents exchanged with third-party investors regarding "any valuations of [defendant company] or the accused products"); *Kajeet, Inc. v. Qustodio, LLC*, 2019 WL 8060078, at *10 (C.D. Cal. Oct. 22, 2019) (finding discovery regarding third-party investors relevant to assess the valuation of patents at issue and damages in patent infringement case). Indeed, such discovery is standard in intellectual property cases. *Intel Corp. v. Prot. Cap.* LLC, 2013 WL 12313348, at *3 (S.D. Cal. Oct. 2, 2013) ("courts in California generally find discovery into third party investors relevant in patent litigation").

(CoStar Motion To Compel at 6).

The patent cases cited by CoStar are not applicable to this copyright litigation. In *Symantic*, the plaintiff accused Zscaler of infringing Symantic's patents. The discovery requests sought documents shared with third-party investors discussing the market for the accused products (essential the defendant's entire security platform) and any valuations of the accused products. However, in *Symantic*, the value of the accused product (the platform) was the same as the value of the *entire* company, i.e., all the revenue of the company was derived from the accused product, i.e., the cloud security platform, and therefore could be relevant to the damages from infringement of Symantic's patents. The *Symantic* court found that asks for valuations of Zscaler, the company, as a whole was relevant "given the large role that the cloud security platform" plays in the company, i.e., the accused products include every product or service that Zscaler ever offered. *Symantic*, 2019 WL 2288278, at *1-2. The value of the accused products were essentially the same as the valuation of the entire Zscaler company.

Symantic could at least argue that the value of the company (the equivalent of the value of the accused products) was evidence of Symantic's damages. In contrast, CoStar has asserted that CREXi infringed 50,000 of CoStar's copyrighted images, representing only a relatively small portion of CREXi's total value. *See Dees Decl. ¶ 6*. *Symantic*, therefore, is inapplicable here.

The *Kajeet* case is also inapplicable because while the decision repeats the general statement that investor discovery may be relevant to *patent* value, the court recognized that no relevant investor documents existed in *Kajeet*. The Court ordered a declaration confirming the *lack* of responsive documents, but did not order further production. *Kajeet*, 2019 WL 8060078, at * 1-2. Finally, the *Intel* case is also not persuasive, as the *Intel* investor subpoenas sought documents concerning third-party investments in "USEI's patents", the specific and exclusive IP at issue. *Intel*, like *Symantic*, looked at the price a third party was willing to pay directly for the allegedly infringed IP that arguably might be relevant to a damages analysis in a patent infringement case. Here, investors were investing in an entire company, CREXi, which was not dependent for valuation exclusively on CoStar's 50,000 images. The patent cases cited by CoStar do not provide authority for the requested investor discovery here.

The nexus between investors JSV and Foundation Collective's investments in CREXi – some of which occurred years before CREXi's alleged infringement – and the value of CoStar's allegedly infringed intellectual property and/or CREXi's unjust enrichment is too attenuated to justify the broad scope of documents and communications relating to such investments that CoStar requests.

*Complete Entertainment Rescource LLC v. Live Nation Entertainment, Inc.*, No. CV159814DSFAGRX, 2017 WL 11682915 (C.D. Cal. Mar. 2, 2017), cited by CoStar, is also inapposite. There, the defendant subpoenaed the "internal analyses" of nonparty investors regarding the plaintiff's pre-infringement value for "potential impeachment" of the plaintiff's claimed valuation, and the court agreed the documents were relevant for such purpose. *Id.* at *2. CoStar does not claim JSV and Foundation Collective's internal valuations of CREXi are relevant to impeach any valuation claimed by CREXi. CREXi has not offered the valuation of its business as evidence in this litigation.

CoStar's document requests, other than Request No. 201, are disproportionately overbroad and burdensome, particularly given breadth and scope of documents that CREXi has already agreed to produce. While CoStar argues that the documents produced by CREXi are insufficient, CoStar has not offered adequate proof for this assertion.

Copyright infringement damages include actual damages caused by the infringement (typically lost profits) or disgorgement of profits wrongfully obtained by infringement, or statutory damages. *See* 17 U.S.C. § 504. The documents CoStar demands are not relevant or necessary to establish CoStar's lost profits. To the extent CoStar's requests encompass information relevant to CREXi's alleged unjust enrichment, such information is covered by categories of documents CREXi has already agreed to produce, such as CREXi's annual corporate revenue, costs, and profits (RFP No. 48) and CREXi's annual audited financial statements (RFP No. 124). (*See* Braunig Decl. ¶ 4.) Nor are the documents CoStar seeks essential to any potential statutory damages claim. Statutory damages may be determined

by consideration of a variety of factors, including factors already addressed in the discovery CREXi agreed to produce.

Similarly, any documents responsive to CoStar's requests that would be probative to CREXi's DMCA defense because they may show whether CREXi presented itself as a "passive platform" (Dkt. 48-1 at p.6.) are addressed by other discovery requests, and CREXi has already agreed to search terms aimed at documents relating to how CREXi represents itself to the public. (Braunig Decl. ¶ 8.)

As discussed above, the Special Master GRANTS the Motion to Compel as to Request No. 201. The Special Master DENIES the Motion to Compel as to the remaining requests, because they are overbroad, burdensome and duplicative of the financial information CREXi has already produced. The additional requests are disproportionate to the needs of this case. CoStar has not adequately demonstrated that CREXi is withholding responsive financial information. Accordingly, the Motion is GRANTED in part and DENIED in part. CREXi shall produce documents responsive to Request No. 201 within 14 days of the date of this Order.

IT IS SO ORDERED.

DATED: October 9, 2023

DocuSigned by:

Hon. Suzanne Segal (Ret.)
2B739185DE71459...
_____
Honorable Suzanne H. Segal (Ret.)
Special Master