1  KEKER, VAN NEST & PETERS LLP
   ELLIOT R. PETERS - # 158708
2  epeters@keker.com
   WARREN A. BRAUNIG - # 243884
3  wbraunig@keker.com
   NICHOLAS S. GOLDBERG - # 273614
4  ngoldberg@keker.com
   KATIE LYNN JOYCE - # 308263
5  kjoyce@keker.com
   633 Battery Street
6  San Francisco, CA 94111-1809
   Telephone:   415 391 5400
7  Facsimile:   415 397 7188

8  Attorneys for Defendant and Counterclaimant COMMERCIAL
   REAL ESTATE EXCHANGE, INC.,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION INC., <br><br> Plaintiffs, <br><br> v. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Defendant. | Case No. 2:20-CV-08819 CBM (ASx) <br><br> **DISCOVERY DISPUTE SUBMITTED TO SPECIAL MASTER** <br><br> **CREXI'S OPPOSITION TO COSTAR'S RENEWED MOTION TO COMPEL CREXI TO RUN IMAGE MATCHING SOFTWARE** <br><br> Date Filed:  September 25, 2020 <br> Discovery Cutoff: November 30, 2023 <br> Pre-Trial Conference: September 24, 2024 <br> Trial Date:  October 22, 2024 |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Counterclaimant, <br><br> v. <br><br> COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION, INC., <br><br> Counterdefendants. | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................1

III. ARGUMENT ..........................................................................................................3

    A. CoStar's three-year-old evidence is not "newly discovered" and could have been discovered years ago with proper diligence. .....................................4

    B. CoStar's newly identified images do not demonstrate noncompliance that would justify reconsideration. ....................................................................5

    C. CoStar's approach would be unduly burdensome and upend the schedule. .............6

IV. CONCLUSION.......................................................................................................6

i

CREXI'S OPPOSITION TO COSTAR'S RENEWED MOTION TO COMPEL CREXI TO RUN IMAGE
MATCHING SOFTWARE
Case No. 2:20-CV-08819 CBM (ASx)

2373252

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*,
    649 F. Supp. 2d 1063 (E.D. Cal. 2009)..........................................................................4

*Costa v. Postmates Inc.*,
    2020 WL 13526733 (N.D. Cal. June 26, 2020)................................................................4

*Rhinehart v. Harrington*,
    2011 WL 2372399 (E.D. Cal. June 10, 2011) .................................................................6

*Richards v. Cnty. of San Bernardino*,
    2019 WL 8226074 (C.D. Cal. Dec. 17, 2019) .............................................................4, 5

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ............................................................................................3

*U.S. v. Strain*,
    2019 WL 5399475 (D. Alaska Oct. 22, 2019)..................................................................6

*In re Viagra*,
    2016 WL 7336411 (N.D. Cal. Oct. 14, 2016) .................................................................5

**Federal Statutes**

17 U.S.C § 512(c)(3).................................................................................................................5

**Rules**

Fed. R. Civ. P. 26(b)(1)..............................................................................................................1

L.R. 7-18 ...................................................................................................................................4

I.      INTRODUCTION

CoStar's request to compel CREXi to run an image-matching software across 21 million images in CREXi's image library has been rejected four times. In this fifth request, CoStar rehashes the same repeatedly rejected arguments, adding one new twist: it claims it found a set of purported CoStar-owned images on CREXi's website that CREXi did not produce. But these images are not newly discovered—by CoStar's own admission, it has possessed these publicly available images for more than *two years* but never acted on them. CoStar cannot sit on evidence for years, decline to raise it in four rounds of briefing and argument, then spring it on CREXi and the Court as the basis for reopening long-decided issues after the close of document discovery. The Court should reject CoStar's renewed motion out of hand because it has not offered any "newly discovered" evidence, as required to succeed on a motion for reconsideration.

In any event, CoStar's arguments fail on the merits for at least three reasons. *First*, of the 500 images to which CoStar refers in its motion, it claims to actually *own* only 122. CoStar has been monitoring CREXi's website continuously since at least April 2020, during which time more than 14 million images have been displayed publicly. The fact that CoStar is accusing CREXi of missing 122 CoStar images proves, rather than undermines, the robustness of the Court-ordered methodology. *Second*, not a single image to which CoStar points falls into the four categories that Judge Sagar's April 18, 2022 Order ("the April 18 Order") compelled CREXi to produce, so CoStar has not provided *any* evidence of noncompliance. *Third*, implementing an image-matching software across CREXi's entire library of 21 million images would impose a huge burden on CREXi and delay the case schedule considerably.

Five bites at the apple is enough. CREXi requests that the Court deny CoStar's renewed motion to run an image-matching software across CREXi's image library, with prejudice.

II.     BACKGROUND

The April 18 Order, which was not appealed to Judge Marshall, established a protocol for identifying potential CoStar photographs in CREXi's image library. The April 18 Order rejected CoStar's request to run an image-matching software across CREXi's entire library, because Judge Sagar found that approach did not "satisf[y] the proportionality requirement" under Fed. R. Civ.

1

P. 26(b)(1). ECF 135 at 7. Instead, the Court ordered CREXi to produce images falling into four categories: (1) images that "contain, in whole or in part, a CoStar watermark;" (2) images that "have been captured by any filters" as containing a CoStar watermark, including the image filter Restb that CREXi voluntarily employed; (3) images captured by the Getty image filter that CREXi voluntarily employed; and (4) images that "were obtained from CoStar's website . . . by CREXi's employees, officers, . . . agents, [or vendors]." *Id*.

CREXi worked diligently to comply with the April 18 Order, investing hundreds of hours of work to produce more than 89,000 images and a half million data points concerning those images. *See* ECF 272-1 at 20–23 (detailing CREXi's methodology); ECF 272-5, ¶ 9. Contrary to CoStar's claim that the "only methodology that CREXi used . . . is the Restb software," ECF 589 at 4 ("Mot."), CREXi's production included all images flagged by two separate filters CREXi voluntarily adopted: the Restb filter, which flags images containing CoStar's logo; and the Getty filter, which flags images matching a library that CoStar represented is a full set of CoStar's copyrighted images. *See* ECF 272-1 at 20–21. **In addition**, CREXi ran numerous search terms across millions of email and database records to identify additional images obtained from CoStar's websites, including 47 terms specifically aimed at cropped images (including "crop," "delete," "remove," and "destroy," in proximity to words associated with CoStar images). *See id.* at 21. This combined methodology proved robust, capturing thousands of images that CoStar has now added to this case, plus thousands of images that were flagged by the filters but apparently are not owned by CoStar. Dees Decl. ¶ 3. In March 2023, CoStar filed an amended complaint that included fewer than half of the images CREXi had produced per the April 18 Order. *Id*.

Judge Sagar's approach struck a reasonable and appropriate balance; yet CoStar has spent eighteen months attempting to undo it. CoStar first moved for reconsideration of the April 18 Order in December 2022. ECF 272. On July 5, 2023, the Special Master denied that motion, holding that "CoStar has not satisfied the high burden for reconsideration of Judge Sagar's order," because it had not "shown a failure to comply with Judge Sagar's order sufficient to justify an additional search." ECF 457-1, 10–11. That order was not appealed. Instead, on July 10, 2023, CoStar sought reconsideration at an informal discovery conference, based on a purported

"sample" of 100 CoStar images that were not produced—but those were from outside the relevant time period for the April 18 Order. The Special Master stated that even if those images reflected some noncompliance (and they do not), only "100 noncompliant [images] isn't indicative of a failure to comply with Judge Sagar's . . . order" and would not "materially change the outcome" of the Special Master's July 5 Order. Zaleski Decl. Ex. C. On July 24, CoStar sought reconsideration a third time, based on CREXi's supposed failure to produce "cropped images," which the Special Master had already addressed and rejected in the July 5 Order. The Special Master again denied CoStar's request, reminding the parties that discovery "is imperfect," and noting the absence of proof that CREXi had failed to comply with Judge Sagar's order. *Id*. Ex. D.

CoStar's present fourth request for reconsideration is based on a set of 500 images CoStar admits it identified on CREXi's website years ago. Mot. at 1–2. CoStar admits it has possessed 73% of those images since before it filed the ***initial complaint*** in this action on September 25, 2020, and has possessed the remainder since before June 23, 2021. Zaleski Decl. ¶ 4. In the intervening years, CoStar never sent a takedown notice as to any of these images, nor were they alleged in CoStar's original, first amended, or second amended complaints. Dees Decl. ¶ 4. CREXi learned of them for the first time just last month, in September. *Id.*

### III.    ARGUMENT

CoStar's motion, which requests the same relief it sought in April 2022 and three more times since, is a motion for reconsideration. A court may grant a motion for reconsideration only if it "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993). CoStar's motion does not argue clear error or rely on new law. Instead, it rehashes arguments this Court has rejected multiple times relating to CREXi's identification of allegedly cropped images.[1] The only new part of CoStar's motion is its reference to 500 images it never before brought to the

---

[1] For example, *compare* CoStar's Mar. 2022 Mot. to Compel, ECF 116 at 22 (arguing that CREXi's methodology would not identify images "where CoStar's logo has been cropped out or otherwise removed by CREXi"); *with* CoStar's Dec. 2022 Mot. for Reconsideration, ECF 272-1 at 3 (same) *and* CoStar's Sep. 2023 Mot. for Reconsideration, ECF 589 at 4 (same).

Court's attention. Where, as here, a motion for reconsideration is based on previously unraised evidence, the burden on the moving party is "high." *Richards v. Cnty. of San Bernardino*, 2019 WL 8226074, at *1 (C.D. Cal. Dec. 17, 2019). Such a party must show three elements: that the evidence "(1) is truly newly-discovered; (2) could not have been discovered through due diligence; and (3) is of such a material and controlling nature that it demands a probable change in the outcome." *Id.*; *see also* L.R. 7-18 (same). CoStar fails on all three fronts.

### A. CoStar's three-year-old evidence is not "newly discovered" and could have been discovered years ago with proper diligence.

CoStar has not offered "newly discovered" evidence to support its motion for reconsideration. "'[N]ewly discovered evidence' is evidence that was not in the possession of the party before the order is issued and could not have been discovered with reasonable diligence." *Costa v. Postmates Inc.*, 2020 WL 13526733, at *3 (N.D. Cal. June 26, 2020). By its own admission, CoStar has possessed all the evidence on which it relies in its motion for at least two years, since June 23, 2021. *See* Mot. at 4 n.3. Because these images were in CoStar's possession nearly a year before the Court issued the April 18 Order (and long before any of its three prior motions for reconsideration) CoStar fails to show it lacked this evidence "before the order[s] . . . issued." *Costa*, 2020 WL 13526733, at *3. CoStar has also not shown that it exerted due diligence to identify these images during the three years it possessed them. CoStar offers no explanation for why it is raising these images for the first time now. *See* Mot. at 3–4. At an informal discovery conference on these 500 images, CoStar told the Special Master that it identified these images on CREXi's website before filing its complaint "but for whatever reason [they] just got left on the cutting board when we filed our complaint." Zaleski Decl. Ex. E.[2] CoStar "cannot choose to create evidence . . . then claim that such evidence is now newly-discovered." *Richards*, 2019 WL 8226074, at *2; *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1070 (E.D. Cal. 2009) ("[T]he failure to file documents in an original motion . .

---

[2] CoStar's Motion states that it used TinEye to identify these images before June 23, 2021, but that "CoStar had not yet reviewed" them as of August 2023. Mot. at 3 n.2, n.3. CoStar's unexplained failure to review images it possessed for more than two years amounts to an admission that it failed to exercise due diligence to timely raise this evidence.

. does not turn the late filed documents in[to] 'newly discovered evidence.'").

### B. CoStar's newly identified images do not demonstrate noncompliance that would justify reconsideration.

CoStar's motion fails for the independent reason that the images CoStar identified do not reflect *any* noncompliance with the Court's April 18, 2022 Order, let alone noncompliance of "a material and controlling nature." *Richards*, 2019 WL 8226074, at *1.[3]

*First*, in the context of this case, the number of images that CoStar claims were missed is, at most, *de mimimis*. Though CoStar's motion refers vaguely to 500 "TinEye identified" images, CoStar Mot. at 3, CoStar claims to *own* only 122 of those images. When CoStar first notified CREXi of the 500 TinEye-identified images by email on September 6, 2023, CREXi immediately asked CoStar to provide verification of ownership, as required by the Digital Millennium Copyright Act. *See* 17 U.S.C §512(c)(3) (requiring "a notification of claimed infringement" to include a statement "under penalty of perjury" that the work's use is "not authorized by the copyright owner"); *see also* Zaleski Decl. Ex. B. On September 22, CoStar served amended interrogatory responses verifying its claim of ownership over only 122 of the 500 images. *Id.* ¶ 7. Since CoStar began monitoring CREXi's website in April 2020, more than 14.5 million images have been added to and displayed on CREXi's website. Dees Decl. ¶ 13. Even if CoStar's claims are taken at face value, missing only 122 images out of more than 14 million is strong evidence that CREXi's compliance method was robust. The standard for discovery is "not perfection, or using the 'best' tool, but whether the search results are reasonable and proportional." *See In re Viagra*, 2016 WL 7336411, at *1 (N.D. Cal. Oct. 14, 2016).

*Second*, CoStar fails to show that any of the years-old images it claims were missed should have been produced pursuant to the April 18 Order. CoStar has not offered evidence that any of the 122 images falls into any of the four categories from the April 18 Order. CREXi's independent review of those images suggests that none were missed: none were flagged by Restb as containing a CoStar logo; none were flagged by Getty; and none appear to have been obtained

---

[3] Ordering CREXi to run a specific, CoStar-chosen image matching software across CREXi's entire library of images would also be unprecedented. *See* ECF 272-1, at 27–28 (collecting cases).

by CREXi from CoStar. *See* Dees Decl. ¶ 12.

***Third***, it is not even clear that the accused CREXi images match any CoStar images. CoStar has not provided CREXi with all the images it relies on for this motion (which would allow a comparison), but, for a number, CoStar contends that a single CREXi image is an exact match for ***two different*** CoStar images, taken by two different CoStar photographers, months or years apart. Dees Decl. ¶¶ 6–9. That's impossible. CoStar's failure to accurately identify matches using its preferred image-matching software,[4] even among a small set of 500 images, reveals how difficult such a software would be to implement across 21 million images. *See id.* ¶ 14.

**C.     CoStar's approach would be unduly burdensome and upend the schedule.**

CREXi already spent six months of work and tens of thousands of dollars to comply with the April 18 Order. It then took the parties another year to exchange data about the accused images, an incredibly complicated process. To now force CREXi to run a new and untested image-matching software across its entire library of 21 million images would both substantially duplicate that work and require a huge amount of new effort to collect images, process them, and manually check the results. The document discovery deadline passed on September 29, 2023, and the fact discovery deadline is looming on November 30, 2023. Granting CoStar's motion would set the case schedule back at least six months, if not far longer. Raising these images so late is consistent with CoStar's repeated efforts to delay resolution of this case and increase CREXi's costs. CoStar's assertion of 122 images it has been sitting on for years does not justify that delay.

**IV.    CONCLUSION**

CREXi has now been forced to relitigate the April 18 Order four times in the past year, at great cost and distraction. CREXi respectfully requests that the Court deny CoStar's renewed motion to compel CREXi to run an image matching software ***with prejudice***.[5]

---

[4] For years, CoStar has sought to impose a search by Tineye. Now, CoStar seeks to impose a search by a different image-matching company, Imatag. But CoStar provides no factual support that Imatag would be more successful than the flawed Getty Filter that CoStar insisted CREXi run. *See Tomelleri v. Zazzle, Inc.*, 2014 WL 6895610, at *1–2 (D. Kan. Dec. 5, 2014).

[5] Successive motions for reconsideration "waste[] valuable judicial resources and belie[] finality." *U.S. v. Strain*, 2019 WL 5399475, at *1, n.6 (D. Alaska Oct. 22, 2019); *Rhinehart v. Harrington*, 2011 WL 2372399, at *1 (E.D. Cal. June 10, 2011) (denying second motion with prejudice).

| | | |
|---|---|---|
| 1 | Dated: October 17, 2023 | KEKER, VAN NEST & PETERS LLP |
| 2 | | |
| 3 | | By: */s/ Warren A. Braunig* |
| | | ELLIOT R. PETERS |
| 4 | | WARREN A. BRAUNIG |
| | | NICHOLAS S. GOLDBERG |
| 5 | | KATIE LYNN JOYCE |
| | | CONNIE P. SUNG |
| 6 | | JASON S. GEORGE |
| | | NIALL M. FRIZZELL |
| 7 | | CHRISTINE M. ZALESKI |
| | | KELLY S. KAUFMAN |
| 8 | | |
| | | Attorneys for Defendant and |
| 9 | | Counterclaimant COMMERCIAL REAL ESTATE EXCHANGE, INC., |