| | |
|---|---|
| 1 | JESSICA STEBBINS BINA (BAR NO. 248485) |
|   | jessica.stebbinsbina@lw.com |
| 2 | ELYSE M. GREENWALD (BAR NO. 268050) |
|   | elyse.greenwald@lw.com |
| 3 | LATHAM & WATKINS LLP |
|   | 10250 Constellation Boulevard |
| 4 | Suite 1100 |
|   | Los Angeles, CA 90067 |
| 5 | Tel: 424.653.5500 |
|   | Fax: 424.653.5501 |
| 6 | |
| 7 | *Attorneys for Plaintiffs and Counterdefendants* |
|   | *CoStar Group, Inc. and CoStar Realty Information, Inc.* |
| 8 | [Additional Counsel Listed on the Next Page] |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 11 | COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC., | CASE NO. 2:20-cv-08819-CBM-AS |
| 12 | | **DISCOVERY DISPUTE SUBMITTED TO SPECIAL MASTER** |
| 13 | Plaintiffs, | |
| 14 | v. | Assigned to Hon. Consuelo B. Marshall |
| 15 | COMMERCIAL REAL ESTATE EXCHANGE, INC., | Hon. Alka Sagar, Magistrate Judge |
| 16 | Defendant. | **REPLY IN SUPPORT OF COSTAR'S RENEWED MOTION TO COMPEL CREXI TO RUN IMAGE-MATCHING SOFTWARE** |
| 17 | COMMERCIAL REAL ESTATE EXCHANGE, INC., | |
| 18 | | Date Filed:    September 25, 2020 |
| 19 | Counterclaimant, | Trial Date:    October 22, 2024 |
| 20 | v. | |
| 21 | COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC., | |
| 22 | Counterdefendants. | |

CASE NO. 2:20-cv-08819-CBM-AS
REPLY ISO COSTAR'S MOT. TO COMPEL CREXI
TO RUN IMAGE-MATCHING SOFTWARE

1  NICHOLAS J. BOYLE*
   nicholas.boyle@lw.com
2  SARAH A. TOMKOWIAK*
   sarah.tomkowiak@lw.com
3  LATHAM & WATKINS LLP
   555 Eleventh Street, NW
4  Suite 1000
   Washington, D.C. 20004
5  Tel: 202.637.2200
   Fax: 202.637.2201
6

7  CAITLIN E. DAHL*
   caitlin.dahl@lw.com
8  KAREN D. FRANKENTHAL*
   karen.frankenthal@lw.com
9  LATHAM & WATKINS LLP
   330 North Wabash Avenue
10 Suite 2800
   Chicago, IL 60611
11 Tel: 312.876.7700
   Fax: 312.993.9767
12

13 * Admitted pro hac vice

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CREXi fills its Opposition to CoStar's Motion to Compel CREXi to run Image-Matching Software with red herrings and excuses rather than responding to CoStar's Motion. Your Honor instructed CoStar to develop its argument to "justify a new search methodology or a new process for review of CREXi's image library." Dkt. 457-1 at 12. CoStar has done exactly as directed. Focusing on the discovery needed for its DMCA claims (revived after CREXi implemented its prior search methodology), CoStar undertook the challenging task of identifying CoStar Photographs that were (1) displayed on CREXi.com (and thus necessarily in CREXi's possession), (2) *with CoStar's star logo removed*, (3) but CREXi did *not* produce to CoStar. CoStar identified 500 such images; and CREXi does not dispute that it failed to produce to CoStar *all 500*. These missing images, coupled with ever-increasing evidence of CREXi's practice of cropping CoStar's star logo, *see* Tomkowiak Decl. ¶¶ 3-9, Exs. A-E, while it uses software that searches in vain for those missing logos, justify a new process for searching CREXi's image library.

***CoStar's Motion provides compelling evidence of CREXi's non-compliance.*** CoStar explained why CREXi's search methodology was destined to avoid finding the CoStar images that CREXi cropped, but proving the omission of specific images—by definition images that CREXi had not produced—was a difficult task. CoStar went back to the raw results of TinEye's prior review of CREXi's website, pulled 500 images without CoStar's star logo previously unreviewed by CoStar, confirmed that CoStar owned each image,[1] and searched for each image in CREXi's production. Edalatkhah Decl. ¶ 4.[2] CoStar found none of these images, a conclusion that CREXi cannot dispute. Instead, CREXi claims that none of these images fall within the scope of the Court's April 18 order, because "*none* appear to have been obtained by CREXi from CoStar." Dkt.

---

[1] CREXi speculates that CoStar only owns 122 of the 500 images. *See* Dkt. 616 at 5. Not so. CoStar owns all 500 images. Edalatkhah Decl. ¶ 4. Separately, in a supplemental interrogatory response, CoStar provided a wealth of information for a subset of these images (122) for which CoStar has determined to pursue claims against CREXi. It has never disclaimed ownership over the remaining 378. CREXi is also wrong that CoStar's 500-image sample includes duplicates. Four images *appeared* as duplicates (on paper) due to a clerical error in CoStar's identification of CREXi's URL on CREXi's website. *Id.* ¶ 6. This inadvertent error only underscores the pitfalls associated with manual efforts to identify images, as opposed to image-matching software.

[2] That the images appeared on CREXi years ago, Dkt. 616 at 4, does not negate the fact that CoStar newly discovered that CREXi had not produced these images to CoStar. As CoStar has explained, CREXi's haphazard production of CoStar Photographs included many non-photograph files and PDF brochures with embedded images, which makes it unwieldy to search.

616 at 5-6. But tellingly, CREXi's only support for this vague statement is a CREXi employee's testimony that a mere "28 images were uploaded [to CREXi] directly by users." Dees Decl. ¶ 12. Even if true, that non sequitur comes nowhere close to supporting CREXi's conclusion that CREXi obtained *none* of the 500 from CoStar. And the evidence is to the contrary: CREXi identified only 28 images uploaded by users, as opposed to CREXi. At the same time, CREXi was hitting LoopNet millions of times;[3] and CREXi's emails show its practice of copying images from LoopNet, using screenshots to hide its conduct, and then cropping CoStar's logo from those images. Tomkowiak Decl. at Exs. A-E. In any event, that *100%* of the sampled images were not produced by CREXi supports a "new search methodology," the issue before the Court.

***CoStar's revived DMCA claims amplify the need for image-matching software.*** As CREXi knows, after Judge Sagar issued her April 18 Order, and after CREXi purportedly completed its production of CoStar Photographs, Judge Marshall reinstated CoStar's DMCA claims, a new reality that further underscores the need for image-matching software, the most effective way to find CoStar images from which CoStar's star logo has been cropped. *See* Dkt. 406 at 6.[4] CREXi itself has argued that the revival of CoStar's DMCA claims justifies an expansion of the scope of discovery that CoStar must provide to CREXi regarding the application of CoStar's star logo to images.[5] At the very least, CREXi must search for and produce the cropped CoStar images in its possession, the most basic discovery surrounding claims of cropping. Where there is ample evidence that CREXi engaged in cropping, possesses such images, and has systematically failed to produce them, the use of image-matching software to locate such cropped images is proportional to the needs of the case; indeed, it is vital. Tomkowiak Decl. at Exs. A-E.

***Without utilizing image-matching software, CoStar will be unable adequately to address CREXi's core litigation theme.*** CREXi has made central to its defense a claim that CoStar's

---

[3] *See* Edalatkah Decl. ¶ 5 (CREXi accessed listings containing images from this sample).
[4] The changed landscape underscores that CoStar is not seeking reconsideration of the April 18 Order, which did not address the proper scope of discovery as it relates to CoStar's DMCA claims.
[5] *See, e.g.*, October 16, 2023 Hr'g Tr. at 10:9-20 (CREXi's counsel explaining that Judge Marshall denied CREXi's motion to dismiss CoStar's DMCA claims in its second amended complaint, so "that issue is [] live issue in the case…" and CREXi "want[s] to be able to demonstrate" evidence related to this topic); Dkt. 612 (CREXi's motion to compel additional responses to recently served RFPs that "sought documents that are critical to CoStar's late-revived claim under the [DMCA]").

accused images (over 50,000) purportedly amount to an insignificant portion of CREXi's now 21-million image library.[6] *See* Dkt. 532-2 ¶ 6. Having put at issue (and touted) the percentage of infringing images in its library, CoStar will be seriously prejudiced if CREXi does not adequately search that library to determine the real percentage. Indeed, this Court has already once cited CREXi's purported "percentage" as a reason to deny CoStar critical discovery. *See* Dkt. 607-1. Tellingly, CREXi's Opposition is utterly silent on this point.

***CREXi articulates no cognizable burden of running image-matching software.*** CREXi still identifies no burden it would suffer as a result of using such technology. CREXi claims to have spent "tens of thousands of dollars to comply with the April 18 Order," Dkt. 616 at 6, but that money has been spent, it has not located any of the sampled images, and CoStar has committed to pay for the cost of the image-matching software. *See* Dkt. 589 at 6. CREXi complains that "[g]ranting CoStar's motion would set the case schedule back at least six months, if not far longer." Dkt. 616 at 6. Why? Running the software can be done promptly and requires no attorney time. And it is pure speculation that the parties would need months to address any additional images that were added to the case. Based on work performed on the 50,000 images, image-matching would expeditiously resolve any ambiguity over the set of images in the case, and can run in tandem with depositions, causing no undue delay.[7]

***CoStar is willing to run the software across a subset of CREXi's library.*** CoStar believes that a full search of CREXi's library is justified. But if the Court disagrees that such a search is proportional, CoStar proposes that the Court order the parties to use Imatag's image-matching software, against a subset of the libraries: namely, only images that were uploaded to CREXi's platform on or before September 25, 2020, the date CoStar filed its complaint. This comports with the pre-suit period during which there is significant evidence that CREXi had a practice of cropping CoStar's logo, and reduces the volume of images on which the software will run by 75%.[8]

---

[6] This asserted figure, which conflicts with other figures recently offered by CREXi, is itself extremely misleading. *See* Dkt. 532-2. CREXi has registered a few thousand images with the Copyright Office, compared with CoStar's millions of registered images. At best, "CREXi's" library is almost certainly (close to entirely) comprised of images CREXi does not own.

[7] Further, CREXi's speculation comes close to an admission that image-matching would likely yield a large number of additional CoStar images, further justifying this discovery.

[8] Per CREXi, its library had five million images when CoStar filed this lawsuit. Dkt. 272-1 at 5.

CoStar respectfully requests that the Court grant its Motion.

Dated: October 24, 2023

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: */s/ Nicholas J. Boyle*
Nicholas J. Boyle
(admitted *pro hac vice*)
Sarah A. Tomkowiak
(admitted *pro hac vice*)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201
Email: nicholas.boyle@lw.com
sarah.tomkowiak@lw.com

Jessica Stebbins Bina
(Bar No. 248485)
Elyse M. Greenwald
(Bar No. 268050)
10250 Constellation Boulevard
Suite 1100
Los Angeles, CA 90067
Tel: 424.653.5500
Fax: 424.653.5501
Email: jessica.stebbinsbina@lw.com
elyse.greenwald@lw.com

Caitlin E. Dahl
(admitted *pro hac vice*)
Karen D. Frankenthal
(admitted *pro hac vice*)
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: 312.876.7700
Fax: 312.993.9767
Email: caitlin.dahl@lw.com
karen.frankenthal@lw.com

*Attorneys for Plaintiffs and Counterdefendants CoStar Group, Inc. and CoStar Realty Information, Inc.*