KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS #158708
epeters@keker.com
WARREN A. BRAUNIG #243884
wbraunig@keker.com
NICHOLAS S. GOLDBERG #273614
ngoldberg@keker.com
KATIE LYNN JOYCE #308263
kjoyce@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendant and Counterclaimant
COMMERCIAL REAL ESTATE EXCHANGE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION INC.,<br><br>Plaintiffs,<br><br>v.<br><br>COMMERICAL REAL ESTATE EXCHANGE, INC.,<br><br>Defendant. | Case No. 2:20-CV-08819 CBM (ASx)<br><br>**CREXI'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        June 25, 2024<br>Time:       10:00 a.m.<br>Ctrm:       8D<br>Judge:      Hon. Consuelo B. Marshall |
| COMMERCIAL REAL ESTATE EXCHANGE, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>COSTAR GROUP, INC. AND COSTAR REALTY INFORMATION, INC.,<br><br>Counterdefendants. | |

# NOTICE OF MOTION AND MOTION

## TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 25, 2024, at 10:00 a.m., or as soon thereafter as this matter can be heard, in the courtroom of District Judge Consuelo B. Marshall, located at the First Street Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 8B, Defendant and Counterclaimant Commercial Real Estate Exchange, Inc. ("CREXi") will move this Court for an order pursuant to Federal Rule of Civil Procedure 15(a)(2) granting leave to file Second Amended Counterclaims.

CREXi's proposed Second Amended Counterclaims would add factual allegations and two causes of action under California's Unfair Competition Law, based on late-disclosed discovery that Plaintiffs and Counterdefendants CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar") hacked into CREXi's computer systems and scraped at least 70 million pieces of information, then used that information to unfairly compete with CREXi.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Connie P. Sung, the Proposed Order filed herewith, all files and records in this action, and such other evidence and argument as may be allowed.

**Compliance with Local Rule 7-3.** This Motion is made following telephonic conferences between counsel for CoStar and counsel for CREXi on May 2 and 20, 2024, as well as CREXi sharing its proposed Second Amended Counterclaims with CREXi on May 16, 2024. The parties were unable to resolve the issues raised by this Motion, and on May 20, 2024, counsel for CoStar notified counsel for CREXi that it would oppose leave to amend.

i

CREXI'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:20-CV-08819 CBM (ASx)

Dated: May 23, 2024                    KEKER, VAN NEST & PETERS LLP

By:    /s/ Katie Lynn Joyce
       ELLIOT R. PETERS
       WARREN A. BRAUNIG
       NICHOLAS S. GOLDBERG
       KATIE LYNN JOYCE

       Attorneys for Defendant and
       Counterclaimant
       COMMERCIAL REAL ESTATE
       EXCHANGE, INC.

ii

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

CREXi seeks leave to amend its counterclaims against CoStar, to incorporate allegations regarding CoStar's misconduct that have only recently come to light. For years, CoStar denied that it ever improperly accessed or copied information from CREXi's website for its own business advantage.  Then, in the very last week of the fact discovery period, CoStar served an amended interrogatory response which stated that "[i]n March 2020, CoStar scraped CREXi's website" and further conceded the results of this scrape may have been used for a CoStar marketing campaign.  Sung Decl., Ex. C at 10–11.  This admission was directly contrary to CoStar's previous sworn discovery response that it had no knowledge of any instance in which CoStar copied any image or data from CREXi's website.  *See* Sung Decl., Ex. D at 13.  CREXi immediately pursued discovery on these new revelations, obtaining documents that had been improperly withheld and securing (over CoStar's initial objection) additional deposition questioning of CoStar's corporate designee on CoStar's scraping.  CREXi has now learned that, at the direction of CoStar's most senior executives, CoStar repeatedly hacked into CREXi's back-end platform and scraped at least *70 million pieces of data* to unfairly compete with CREXi and target CREXi's customers with marketing campaigns.

To conform its operative pleading to this recently discovered evidence, CREXi seeks leave to file Second Amended Counterclaims.  These proposed amendments would include additional factual allegations regarding CoStar's hacking into and scraping CREXi's platform and using the stolen information to further CoStar's own business objectives, along with two corresponding causes of action under the unfair and unlawful prongs of California's Unfair Competition

1

Law.  Because Federal Rule of Civil Procedure 15(a)(2) mandates that the Court "freely give leave," and no prejudice to CoStar would result from CREXi's prompt and good-faith request, CREXi respectfully requests that the Court grant CREXi leave to amend. [1]

## II.    FACTUAL BACKGROUND

CoStar initiated the present lawsuit in September 2020 by baselessly accusing CREXi of "unauthorized use of CoStar's services," theft of intellectual property, and "piggyback[ing] on [CoStar's] business."  *See* Dkt. No. 1 at ¶¶ 1, 10. What has now become clear, however, is that just a few months before it filed suit, *CoStar* unlawfully hacked into CREXi's back-end platform, stole tens of millions of pieces of data, and then used that data to unfairly compete against CREXi and target CREXi's customers in marketing campaigns.  For years, CoStar hid from CREXi information about its scraping operation, and only recently was it forced to reveal the nature and scale of its misconduct.

In sworn discovery responses served November 18, 2021, CoStar claimed to have "no knowledge of any instance, unrelated to this Action, in which CoStar copied any image or data from CREXi."  Sung Decl., Ex. D at 13.  But documents later produced by CoStar contradicted that claim, suggesting that CoStar had secretly hacked into CREXi's platform and mass-harvested data from CREXi. CREXi diligently pursued discovery on this subject, seeking Rule 30(b)(6) testimony on the topic of "COSTAR's access to, use of, and scraping of third-party

---

[1] On July 20, 2023, the Court granted CREXi's motion for entry of partial final judgment under Federal Rule of Civil Procedure 54(b), to enable CREXi to appeal the dismissal of its antitrust and tortious interference counterclaims.  Dkt. No. 461. CREXi's appeal of the Court's dismissal order is currently pending before the United States Court of Appeals for the Ninth Circuit.  *See* Case No. 23-55662. CREXi's sought amendment does not impact its antitrust and tortious interference counterclaims.  Thus, leave to amend is appropriately granted by this Court, which "retains jurisdiction to address aspects of the case that are not the subject of the appeal."  *United States v. Pitner*, 307 F.3d 1178, 1183 n.5 (9th Cir. 2002).

2

websites, including the CREXI platform, to obtain commercial real estate listing information, broker information, or images." Sung Decl., Ex. E at 5.

At every turn, CoStar prevented CREXi from learning the truth about CoStar's scraping. When Brad McGetrick, CoStar's Vice President of Research, testified in January 2024, he admitted that CoStar had scraped data from CREXi in early 2020 to perform a "competitive analysis" but claimed CoStar did not use the information it obtained for other purposes. Sung Decl., Ex. F at 286:12–25, 287:17–22, 290:11–25. And Lisa Ruggles, CoStar's Senior Vice President of Global Operations, sat for a deposition in this case and purported not to have any oversight over CoStar's scraping of CREXi, even though CoStar documents and other CoStar personnel identified her as an "executive stakeholder" for CoStar's scraping campaign. *See* Sung Decl., Ex. G at 95:15–18; 302:12–303:2, Ex. F at 287:1–4.

Then, on the evening of February 13, 2024, three days before the close of fact discovery, CoStar served an amended interrogatory response, admitting that—in contravention of its prior sworn discovery response from over two years earlier—CoStar had, in March 2020, "scraped listings and listing broker contact information available on CREXi's website." Sung Decl., Ex. C at 10. Moreover, for the first time in this lawsuit, CoStar admitted that "[t]he broker information that CoStar scraped from CREXi may have been used by the marketing team for the May 2020 LoopNet campaign." Sung Decl., Ex. C at 11.

Based on this new information, CREXi promptly demanded further testimony and documents regarding CoStar's scraping activities. CoStar refused, and CREXi was forced to take this issue to the Special Master in an informal discovery conference. Sung Decl., ¶ 7. It was only after the Special Master provided guidance in CREXi's favor that CoStar finally relented and furnished Mr.

3

McGetrick for an additional 2.5 hours of deposition questioning about CoStar's scraping. *See* Sung Decl., ¶ 8. In his second deposition in March 2024, Mr. McGetrick admitted that CoStar conducted mass-scrapes of data from CREXi's site, and then shared the collected information with CoStar's marketing department for use in CoStar's marketing strategy. *See* Sung Decl., Ex. H at 39:20–40:11, 48:3–8. After CREXi continued to press for additional missing documents, CoStar dribbled out further documentation about its scraping efforts (evidence CoStar had improperly withheld in discovery)—even as recently as May 6, 2024.

The facts now show that on at least ten occasions in the spring of 2020 (just months before filing this suit falsely accusing *CREXi* of scraping CoStar), CoStar scraped a massive amount of information from CREXi's platform without authorization, obtaining real estate listing information that was on CREXi's platform as well as information on approximately 45,000 CREXi customers. Sung Decl., Ex. K at ¶¶ 85–92. The scraped data included property details, broker contact information, and brokers' CREXi subscription status. *Id.* In order to mask its identity and avoid detection while scraping, CoStar used proxy servers and rotating IP address technology to access CREXi's application programming interface. Sung Decl., Ex. H at 54:10–55:3; Ex. I; Ex. K at ¶¶ 85–86. In total, CoStar scraped over 70 million pieces of data from CREXi's platform. Sung Decl., Ex. K at ¶¶ 88–92. CoStar then used the pilfered information to target CREXi's customers with multiple CoStar marketing campaigns and gain an unfair advantage in competing against CREXi. See Sung Decl., Ex. J at CoStar00381688.000002 (noting that CoStar marketing campaign audience included "Listing contacts for all live Crexi listings ~33,000 broker contacts") & Ex. K at ¶¶ 93–94.

In short, CoStar executed a scheme to surreptitiously hack into CREXi's platform and scrape colossal amounts of data, sued CREXi for what CoStar itself

4

had done, then tried to hide its own misconduct from discovery in this lawsuit.[2] Now that CoStar's wrongdoing has been laid bare, CREXi requests amendment of its counterclaims to incorporate allegations based on the evidence it diligently obtained. Specifically, CREXi's proposed amendment adds the factual allegations described above, and adds two new causes of action under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (UCL). *See* Sung Decl., Exs. A (CREXi's proposed Second Amended Counterclaims) & B (redline of proposed amendments). The first new cause of action seeks relief under the "unfair" prong of the UCL. CoStar's hacking and scraping of CREXi, without permission, in order to target CREXi's customers and attempt to divert business, serves no legitimate public purpose; is unethical, oppressive, unscrupulous and substantially injurious to consumers; and is inconsistent with California public policy. *See* Sung Decl., Ex. A. ¶¶ 413–20. The second new cause of action seeks relief under the "unlawful business practice" prong of the UCL. CoStar's conduct violates both the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), and the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502(c)(2). *Id.* ¶¶ 421–24. As a result of these violations, CREXi has suffered and will continue to suffer loss of money and property, including but not limited to lost business, and CREXi seeks injunctive relief because it has no adequate remedy at law. *Id.* ¶¶ 419–20, 423–24.

On May 2, 2024, on a telephone call between counsel, CREXi informed CoStar that it intended to amend its counterclaims. Sung Decl., ¶ 5. On May 16, 2024, CREXi provided CoStar a draft of its Second Amended Counterclaims and

---

[2] Notably, CoStar has now declared it will dismiss its cause of action alleging CREXi's "common law misappropriation" of CoStar data, a dramatic retreat from CoStar's original (and unfounded) claim in this lawsuit that CREXi's business was built on scraping data from CoStar. *See* Dkt. No. 1.

inquired whether CoStar would oppose amendment. *Id.* Four days later, on a telephonic meet-and-confer call, CoStar confirmed it would oppose leave to amend. *Id.*

## III.    ARGUMENT

Courts shall grant requests to amend pleadings under Federal Rule of Civil Procedure 15 freely and with "extreme liberality" when justice so requires. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). All inferences should be drawn in favor of granting a motion to amend. *See Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

In determining whether to grant leave to amend under Rule 15, courts consider the *Foman* factors, "including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Not all factors, however, are weighted equally; instead, the most important factor is prejudice to the opposing party. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* Allowing parties to amend pleadings "based on information obtained through discovery is common and well established." *Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006).

Here, leave to amend CREXi's counterclaims is warranted and in the interests of justice. The balance of factors tips heavily in CREXi's favor: there is no prejudice to CoStar (indeed, it was CoStar who deliberately concealed evidence of its misconduct for years), CREXi moved for leave promptly and in good faith, and the requested amendments are not futile. Accordingly, CREXi's motion should

6

be granted.

## A. Amendment would not prejudice CoStar.

In the context of pleading amendments, prejudice "typically arises where the opposing party is surprised with new allegations which require more discovery or will otherwise delay resolution of the case." *Allison v. City of Los Angeles*, 2023 WL 8165523, at *1 (C.D. Cal. Mar. 10, 2023) (Marshall, J.) (internal quotations omitted). No such prejudice against CoStar is present here. The parties have spent the last several months litigating, and taking discovery about, CoStar's scraping campaign. CoStar has now collected and produced dozens of documents about its scraping and prepared multiple witnesses, including a 30(b)(6) witness on two occasions, to testify about the manner and extent of CoStar's scraping. CoStar cannot honestly claim surprise over this issue.

Moreover, neither scraping nor unfair competition claims are new to this case. UCL causes of action already exist in CREXi's counterclaims (and have existed since CREXi filed its original counterclaims in June 2021), based on allegations of CoStar's unlawful business practices that have irreparably harmed CREXi.[3] In addition, the topic of CoStar's own scraping falls within the ambit of CoStar's complaint (which falsely accused CREXi of scraping CoStar's website) and CREXi's defenses against CoStar's allegations. Indeed, CoStar acted with unclean hands, for it is ***CoStar***—not CREXi—that engaged in the unfair behavior. *See Hip Hop Beverage Corp. v. RIC Representacoes Importacao e Comercio Ltda.*,

---

[3] CREXi's claim under the unlawfulness prong of the UCL (Count 13) was not dismissed in the Court's February 23, 2023 Order and remains a live claim in this case, to the extent it is predicated on CoStar's unlawful infringement of CREXi's trademark. *See* Dkt. No. 340 at 16. CREXi's sought amendment would add two UCL claims for relief, organized as claims separate from CREXi's existing UCL claim, because they are based on CoStar's scraping conduct that has surfaced in CoStar's belated deposition testimony and document productions.

7

220 F.R.D. 614, 622 (C.D. Cal. 2003) (granting leave to amend after finding that issues contained in defendant's proposed counterclaims were "substantially related to the issues contained in Plaintiff's Complaint").

CREXi's sought amendment does not alter the essential nature of the litigation, and CREXi does not seek any case schedule extension to incorporate its additional UCL causes of action. *Cf. Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The testimony and documents demonstrate that CoStar repeatedly hacked into CREXi's computer systems to scrape massive amounts of data, and then used that stolen information to unfairly compete against CREXi and target CREXi's customers. There can be no question that CoStar understands its scraping of CREXi's platform is an issue that will be presented at trial, and CoStar therefore cannot claim prejudice from the addition of these UCL causes of action. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir. 1986) ("[A]ppellants were not prejudiced by the post-trial amendment because they clearly understood that the issue . . . was before the court.").

Finally, any claim of prejudice would ring particularly hollow here, given that all the information about CoStar's scraping has been uniquely in CoStar's possession for years—and CoStar hid the truth by issuing false discovery responses, providing incomplete testimony, and withholding responsive documents. *See Wang v. EHang Holdings Ltd.*, 2022 WL 17369132, at *2 (N.D. Cal. Mar. 8, 2022) (finding defendants had not identified prejudice that would result from proposed amendment, and noting that all information with respect to the proposed new claim was "within Defendants' control"). It would not serve the interests of justice for CoStar to take advantage of its own concealment of key evidence.

**B.      CREXi promptly and in good faith sought leave to amend.**

Courts generally permit amendment past the commencement of discovery

8

"provided the moving party has a reasonable explanation for the delay." *Hip Hop Beverage Corp.*, 220 F.R.D. at 621. Here, CREXi's motion is timely in relation to the late disclosure of evidence regarding CoStar's scraping. CoStar waited until February 13, 2024, three days before the end of fact discovery, to serve an amended interrogatory response admitting it scraped CREXi's website (a full about-face from its previous sworn interrogatory response). *Compare* Sung Decl., Ex. C at 10–11 *with* Ex. D at 13. It was not until March 2024 that CoStar furnished a witness who testified that CoStar used the data furtively obtained from CREXi's platform for use in its own marketing. Sung Decl., Ex. H at 39:20–40:11, 48:3–8. And, as recently as May 6, 2024, CoStar has continued to produce pivotal documents about its wrongdoing, including internal Slack messages discussing its scraping activities. CREXi has acted expeditiously in seeking this amendment following these recent developments. *See U.S. Equal Emp. Opportunity Comm'n v. Fresh Venture Foods, LLC*, 2023 WL 6890765, at *1–2 (C.D. Cal. Apr. 27, 2023) (Marshall, J.) (finding Rule 15 motion timely "in light of recent discovery that revealed" crucial facts); *Macias v. Cleaver*, No. 2016 WL 8730687, at *7 (E.D. Cal. Apr. 8, 2016) (granting leave to amend where request "is based on newly discovered evidence" and the motion was made "within a short time of discovering the facts relevant to [the] claim").

In addition, CREXi brings this motion in good faith. For a court to deny leave to amend based on bad faith, it would need to find that CREXi "merely is seeking to prolong the litigation by adding new but baseless legal theories." *Griggs*, 170 F.3d at 881. No such showing can be made here. CREXi's requested amendments regarding CoStar's scraping are amply substantiated by testimony and documents, and CREXi does not seek any extension of the case schedule; it merely

wishes to conform its pleadings to the proof that will be established at trial.

### C.    Amendment is not futile.

An amendment is futile only if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) (internal quotations omitted).  To prevail on this factor, CoStar would need to "demonstrate that *no* set of facts can be proved to support [the] suggested amendments."  *Munro v. Univ. of S. California*, 2019 WL 4544427, at *3 (C.D. Cal. July 2, 2019) (emphasis added).  CoStar has not and cannot meet its burden on this factor.  CREXi's proposed UCL counts state well-pleaded claims against CoStar based on CoStar's unfair and unlawful scraping of CREXi's site.

## IV.    CONCLUSION

For these reasons, the Court should grant CREXi's motion for leave to file Second Amended Counterclaims.


Dated:  May 23, 2024                                    KEKER, VAN NEST & PETERS LLP


                                        By:    */s/ Katie Lynn Joyce*
                                               ELLIOT R. PETERS
                                               WARREN A. BRAUNIG
                                               NICHOLAS S. GOLDBERG
                                               KATIE LYNN JOYCE

                                               Attorneys for Defendant and Counterclaimant
                                               COMMERCIAL REAL ESTATE EXCHANGE, INC.

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant and Counterclaimant Commercial Real Estate Exchange, Inc., certifies that this memorandum of points and authorities contains 2,723 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 23, 2024                KEKER, VAN NEST & PETERS LLP


                               By:  /s/ Katie Lynn Joyce
                                    KATIE LYNN JOYCE

                                    Attorneys for Defendant and Counterclaimant
                                    COMMERCIAL REAL ESTATE
                                    EXCHANGE, INC.

11