1  ELYSE M. GREENWALD (BAR NO. 268050)
2  elyse.greenwald@lw.com
   LATHAM & WATKINS LLP
3  10250 Constellation Boulevard
4  Suite 1100
   Los Angeles, CA 90067
5  Tel: 424.653.5500
6  Fax: 424.653.5501

7  *Attorneys for Plaintiffs and Counterdefendants*
8  *CoStar Group, Inc. and CoStar Realty Information, Inc.*

9  [Additional Counsel Listed on the Next Page]

10                **UNITED STATES DISTRICT COURT**
11               **CENTRAL DISTRICT OF CALIFORNIA**

12

13  COSTAR GROUP, INC., and            CASE NO. 2:20-cv-08819-CBM-AS
    COSTAR REALTY INFORMATION,
14  INC.,

15              Plaintiffs,            **COSTAR'S STATEMENT OF**
                                       **UNCONTROVERTED FACTS IN**
16         v.                          **SUPPORT OF MOTION FOR**
                                       **PARTIAL SUMMARY JUDGMENT**
17  COMMERCIAL REAL ESTATE
    EXCHANGE, INC.,                    Date:      December 10, 2024
18                                     Time:      10 a.m.
                Defendant.             Courtroom: 8B
19                                     Before:    Hon. Consuelo Marshall

20  COMMERCIAL REAL ESTATE             Trial Date: March 11, 2025
    EXCHANGE, INC.,
21
                Counterclaimant,
22                                     **REDACTED VERSION OF**
           v.                          **DOCUMENT PROPOSED TO BE**
23                                     **FILED UNDER SEAL**
    COSTAR GROUP, INC., and
24  COSTAR REALTY INFORMATION,
    INC.,
25
                Counterdefendants.
26

27

28

1    NICHOLAS J. BOYLE*
     nicholas.boyle@lw.com
2    SARAH A. TOMKOWIAK*
     sarah.tomkowiak@lw.com
3    ANNE C. MALINEE*
     anne.malinee@lw.com
4    LATHAM & WATKINS LLP
     555 Eleventh Street, NW
5    Suite 1000
     Washington, D.C. 20004
6    Tel: 202.637.2200
     Fax: 202.637.2201
7

8    CAITLIN E. DAHL*
     caitlin.dahl@lw.com
9    LATHAM & WATKINS LLP
     330 North Wabash Avenue
10   Suite 2800
     Chicago, IL 60611
11   Tel: 312.876.7700
     Fax: 312.993.9767

12

13

14

15

16   *Admitted pro hac vice*

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Local Rule 56-1 of the Local Civil Rules for the United States District Court for the Central District of California and Federal Rule of Civil Procedure 56, Plaintiffs and Counterdefendants CoStar Group Inc. and CoStar Realty Information, Inc. (collectively, "Plaintiffs") submit this Statement of Uncontroverted Facts ("Statement") in support of their Motion for Summary Judgment. This Statement sets forth the material facts as to which Plaintiffs contend there is no genuine issue, and is based on the Declaration of Anne C. Malinee and accompanying exhibits; the Declaration of Daniel McCallum and accompanying exhibits; all records and files in this case; and on other and further evidence that the Court may consider at or before the hearing on the motion.

| UNCONTROVERTED FACT | EVIDENCE |
| --- | --- |
| **CoStar's Business** | |
| 1.    CoStar was founded in 1987. | • Declaration of Anne C. Malinee ("Malinee Decl.") Ex. 191 (CoStar00461280, at -287) |
| 2.    CoStar is the nation's leading provider of commercial real estate ("CRE") information, analytics, and online property listing marketplaces. | • Malinee Decl. Ex. 191 (CoStar00461280, at -287)<br>• Malinee Decl. Ex. 13 (J. Aceves Dep. Tr. (Mar. 7, 2024), at 115:18–116:7 (broker J. Aceves: "I mean, I'll say this, I couldn't – I couldn't do my job without CoStar's data on one hand, right. . . . I have to have a source of comps. . . . So I have to have a CoStar subscription in order to do my job, in order to create proposals.  As of right now, CREXi doesn't have a lease comp system.  It doesn't have a platform to do |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | that.")); *id.* at 273:16–17 ("I think CoStar's data is better than CREXi's data.") |
| 3.   CoStar owns and operates digital marketplaces containing listings of real estate for sale and for lease, including LoopNet.com (a platform for CRE listings). | • Malinee Decl. Ex. 191 (CoStar00461280, at -287, -293)<br>• https://www.loopnet.com/solutions/about-us |
| 4.   CoStar employs more than six thousand people worldwide. | • Malinee Decl. Ex. 191 (CoStar00461280, at -299) |
| 5.   CoStar employs many architectural photographers in the U.S. who capture photos of CRE properties. | • Malinee Decl. Ex. 20 (M. Adams Dep. Tr. (Jan. 25, 2024) (30(b)(6) testimony), at 8:1–7 (M. Adams, CoStar head of photography, manages 395 architectural photographers in U.S.)) |
| 6.   CoStar also has hired photographers as independent contractors to take photos of CRE properties. | • Malinee Decl. Ex. 20 (M. Adams Dep. Tr. (Jan. 25, 2024) (30(b)(6) testimony), at 61:14–62:18 (CoStar employs photographers and has historically engaged independent contractors to take images for CoStar))<br>• Declaration of Daniel McCallum ("McCallum Decl.") ¶ 2 ("In addition to employing photographers directly, CoStar has historically hired a limited number of photographers as independent contractors to take photos of commercial real estate for |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | CoStar.") |
| **CoStar's Image Library** | |
| 7. CoStar owns one of the largest libraries of CRE images in the world, which includes millions of copyrighted photographs of CRE properties and took more than three decades to develop. | • McCallum Decl. ¶ 9 ("CoStar's image library, which has taken more than three decades to develop, contains millions of images of commercial real estate, making it one of the largest libraries (if not the largest library) of commercial real estate images in the world.")<br>• Malinee Decl. Ex. 20 (M. Adams Dep. Tr. (Jan. 25, 2024) (30(b)(6) testimony), at 121:24–122:1 ("Q.  How many pictures do you have in [CoStar's] database?  A.  A lot.  Tens of millions, I guess."))<br>• Malinee Decl. Ex. 191 (CoStar00461280, at -296 (explaining that CoStar "filed for copyright registration for many . . . photographs")) |
| 8. CoStar has expended millions of dollars to populate and maintain its library of CRE photographs. | • CoStar Group, Inc., Fourth Quarter and Full Year 2023 Investor Presentation, at 10, *available at* https://investors.costargroup.com/system/files-encrypted/nasdaq_kms/assets/2024/02/21/11-00-16/Investor%20Presentation_Q4_2023.pdf (last accessed Aug. 17, 2024) (showing |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CoStar makes a "$5 billion + investment in research and technology")) |
| | • Malinee Decl. Ex. 23 (M. Swartz Dep. Tr. (Feb. 7, 2024), at 318:10–22 (CoStar "invest[s] hundreds of millions of dollars in our photography and in our, you know, taking of pictures of properties")); *id.* at 376:1–8 ("[T]he cost each year that we [CoStar] spend in our field research teams . . . amount[s] to millions of millions over the course of a year.") |
| | • Malinee Decl. Ex. 1 (A. Florance Dep. Tr. (Mar. 8, 2024), at 212:17–21 (CoStar CEO testifying CoStar has "invested a lot of capital and effort" to create CoStar's intellectual property)) |
| | • Malinee Decl. Ex. 13 (J. Aceves Dep. Tr. (Mar. 7, 2024), at 220:14–18 ("And so my understanding is that these big markets, like New York and Chicago, I think they [CoStar] actually have airplanes – they're actually taking high quality images and sending people out to do photography.")) |
| | • Malinee Decl. Ex. 248 (CoStar's Seventh Suppl. Objs. & Resps. to CREXi's First Set of Interrogs. (Nos. 6, 7, 8, & 11) (Dec. 1, 2023), at 30 (No. 11) ("CoStar has invested |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | substantial time, labor, skill, and financial resources into the creation and maintenance of CoStar's services, content, images, database, and websites.")) |
| 9.    CoStar takes hundreds of thousands of images of CRE properties annually. | • Malinee Decl. Ex. 190 (CoStar00428734 (spreadsheet showing hundreds of thousands of field research images for commercial real estate in the U.S. added to CoStar's database yearly from 2016 to 2023))<br>• Malinee Decl. Ex. 191 (CoStar00461280, at -290 (describing the field research process, which includes taking photographs of each building, "capturing interior images" and taking "aerial photographs")) |
| 10.    CoStar registers photographs of CRE properties with the United States Copyright Office. | • McCallum Decl. ¶ 10 ("Tens of thousands of commercial real estate images taken by CoStar photographers each month are submitted for registration to the United States Copyright Office.")<br>• Malinee Decl. Ex. 153 (Dep. Ex. 1181, CoStar00452073, at -075–076 (Decl. of Dariush Edalatkhah (Feb. 5, 2022) ¶¶ 4–5) (explaining that all photographs taken by each CoStar photographer covered by a time interval are applied for under a single |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | application)) |
| | • Malinee Decl. Ex. 249 (CoStar's Suppl. Resps. & Objs. To CREXi's First Set of Interrogs. (Nos. 2, 3, 4, 9, 14, 15, 16, 18) (Feb. 13, 2024) (No. 15), at 28–32 (describing CoStar's process for registering its ownership in its photographs with the United States Copyright Office eight times a year)) |
| **CoStar's Watermark** | |
| 11.   CoStar watermarks the images it owns with a logo in the bottom righthand corner. | • Malinee Decl. Ex. 152 (Dep. Ex. 1177, CoStar's Eighth Suppl. Objs. & Resps. to CREXi's First Set of Interrogs. (Nos. 2, 3, 4, 9, 14, 15, 16, 18) (Feb. 13, 2024), at 14–15, 21–28 (Nos. 4, 14) (explaining CoStar's automated process for applying its watermark when images are displayed in CoStar's products)) |
| | • Malinee Decl. Ex. 81 (Dep. Ex. 350, CoStar00108285, at -285 (example photo with CoStar watermark)) |
| | • Malinee Decl. Ex. 22 (M. Osborn Dep. Tr. (Nov. 30, 2023), at 11:13–17 (identifying watermark in Dep. Ex. 350, CoStar00108285, at -285 as CoStar logo)); *id.* at 25:23–26:17 (CoStar watermark |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | conveys ownership of imagery) |
|  | • Malinee Decl. Ex. 27 (R. Padfield Dep. Tr. (Dec. 14, 2023), at 181:8–20 (CREXi's R. Padfield acknowledging that the CoStar logo "indicates CoStar ownership")) |
|  | • Malinee Decl. Ex. 26 (P. Cohen Dep. Tr. (Nov. 30, 2023), at 27:24–28:3 ("Q.  Do you recognize the logo in the bottom right-hand corner?  A.  Yes.  Q.  What is it?  A. It looks to me like a CoStar logo.")) |
|  | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 223:5–20 ██████████████████████████████████████████████████████████████████████████████████████ |
|  | • Malinee Decl. Ex. 16 (K. Mason Dep. Tr. (Aug. 7, 2024), at 45:22–46:4 ("Q.  Do you have an understanding of what it means when CoStar applies this star logo to photos?  A.  It's my understanding that that was part of the identification process, saying that that's a photo that had been created, and captured, processed by our team, of field research photographers, and |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | that that occurred through an automated process after upload.")); *id.* at 48:19–49:1 (explaining "the process was that all photos taken and created by CoStar photographers that had gone through the appropriate uploading process should have that star logo added to it as a watermark"); *id.* at 53:21–54:2 ("What I understand of the star logo on there is it that identifies that CoStar is the source and created the photo.  In terms of owning the IP, that's – that sounds right.  And it was created by the photographers who captured the photo, edited the photo, added it to the system."); *id.* at 64:4–8 (similar); *id.* at 129:16–21 (similar) |
| 12.    CoStar's watermark consists of five polygons, which represent map pins and are arranged in a circular fashion so that the inner figure forms a five-pointed star. | • Malinee Decl. Ex. 152 (Dep. Ex. 1177, CoStar's Eighth Suppl. Objs. & Resps. to CREXi's First Set of Interrogs. (Nos. 2, 3, 4, 9, 14, 15, 16, 18) (Feb. 13, 2024), at 22 (No. 14)(picturing CoStar watermark)) • Malinee Decl. Ex. 1 (A. Florance Dep. Tr. (Mar. 8, 2024), at 202:20–204:6 (describing involvement in designing the logo, which was intended to be "something that didn't distract people from the photograph" and was "a clear marking that |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | indicated it belonged to us and also sufficiently represented that it was a copyright photograph that belonged to us")) |
| 13.    Instances in which CoStar's watermark has been inadvertently applied to broker images (as a result of a coding error) are rare. | • Malinee Decl. Ex. 151 (Dep. Ex. 1176 CoStar's Third Suppl. Objs. & Resps. to CREXi's First Set of Interrogs. (Nos. 1–20) (Jan. 21, 2022), at 41–43 (No. 14) (stating that "CoStar's policy is that it only displays a watermark on copyrighted photographs and other images in which it owns rights"))<br><br>• Malinee Decl. Ex. 8 (D. Edalatkhah Dep. Tr. (Feb. 14, 2024), at 133:2–8 (confirming that CoStar's interrogatory response in Dep. Ex. 1176 that "CoStar's policy is that it only displays a watermark on copyrighted photographs and other images in which it owns rights" is truthful and correct for the time period of January 1, 2016 to June 23, 2021))<br><br>• Malinee Decl. Ex. 16 (K. Mason Dep. Tr. (Dec. 15, 2023), at 142:22–143:2 (explaining that watermarking process included "an option there called broker as the source, then the intention there and part of the training was, okay, you do that if a broker gives you an image that is not ours |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | and then the watermark is not applied to that")); *id.* at 150:11–14 (explaining that "the process was not to put a watermark on user-submitted photos[] . . . [i]t was only on the photos that we created, as we talked about earlier today")<br><br>• Malinee Decl. Ex. 152 (Dep. Ex. 1177, CoStar's Eighth Suppl. Objs. & Resps. to CREXi's First Set of Interrogs. (Nos. 2, 3, 4, 9, 14, 15, 16, 18) (Feb. 13, 2024), at 11–14 (No. 3) (explaining that "CoStar's policy is that CoStar does not add the CoStar star logo to any photograph provided by a Third Party"; supplemental responses discussing 15 images in which CoStar's watermark was inadvertently applied to third-party photos as a result of inadvertent coding errors))<br><br>• Malinee Decl. Ex. 8 (D. Edalatkhah Dep. Tr. (Feb. 14, 2024), at 240:22–241:13 (stating, with respect to 14 images identified in CoStar's Second Supplemental Response to Interrogatory No. 3, "What I can say about that is CoStar has a process, a process that has been in existence for over a decade at this point to watermark CoStar images. What we're talking about here are 14 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | images on the edges of millions of images. With respect to -- with respect to how that came to be, these images, you know, exist on the edge.  Again, they're 14 images out of tens of millions of images that CoStar has flagged as field research and it -- it could have been a mistake, a human error in the tagging of those images, but, again, 14 images out of millions of images.")) <br>• Malinee Decl. Ex. 22 (M. Osborn Dep. Tr. (Nov. 30, 2023), at 50:9–21 ("Q.   Okay. Putting aside the percentage.  My question is are you aware of instances where users came to CoStar and said you've got an image on your website which has your logo on it and it doesn't belong to you it belongs to me? A.   A handful of those I'm aware of. Q.   In other words, the CoStar logo has ended up on photographs CoStar does not own; correct? A.   The handful of cases I've seen, yes. Q.   How many cases have you seen? A.   Hard to say, but a small number. I've personally seen, I would say, less than 30 or 40 cases. That's an estimate.")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| **CoStar's Creation of LoopNet Listings** | |
| 14.    Photos from CoStar's image library are used to build and enhance property listings on CoStar's digital marketplaces. | • Malinee Decl. Ex. 191 (CoStar00461280, at -284, -289, -293 (explaining that CoStar's "comprehensive database" of commercial real estate information includes "digital images" as well as "building photographs, aerial photographs and videos"; LoopNet, CoStar's online commercial real estate marketplace that enables customers "to advertise properties for-sale or for-lease and to submit detailed information about property listings," "leverages [CoStar's] commercial real estate database")) <br><br> • Malinee Decl. Ex. 20 (M. Adams Dep. Tr. (Jan. 25, 2024), (30(b)(6) testimony), at 132:13–17 ("I would also say that every property that has a photo appears in the CoStar product, I mean, it's – it helps build out the visual aspect of CoStar to make sure it's comprehensive, and that's what our customers pay us for.")) <br><br> • https://www.loopnet.com/solutions/ (explanation of LoopNet listing service, stating: "Large eye-catching displays [in LoopNet listings] are enhanced with professional photography, 3D virtual tours, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | professional video tours and drone footage." And "Our team creatively crafts an inspiring narrative with unique content and impactful visuals to elevate the style and story of your property.") |
| 15.    Brokers and property owners recognize that photographs enhance property listings. | • Malinee Decl. Ex. 13 (J. Aceves Dep. Tr. (March 7, 2024), at 262:19–263:10 ("Q. Have all of your listings on CREXi included images?  A.  I can't think of any listing I have had that doesn't include images" because it "is important for listings to have images"))<br>• Malinee Decl. Ex. 26 (P. Cohen Dep. Tr. (Nov. 30, 2023), at 17:4–17, 18:14–19 ("Q. So in your experience as a broker in commercial real estate, would you ever try to sell a property without using photographs?  A. It's doable.  Q. Doable?  A. Sure.  Q. Is it advisable?  A. I wouldn't recommend it.  Q. Why not?  A. Well, if you're going to market a property, people would want to see those photos.  If you're sending it to a large group of people, then photos are useful.  Videos, things like that. The data on the property."))<br>• CREXi's Answer to Second Am. Compl. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | ¶ 150 (Dkt. 438, at 30–31) ("CREXi admits . . . that a Realtors Property Resource blog post titled "How to Get More Eyes on Your Listings With Eli Randel" attributes the following quote to Mr. Randel: "Tip number three, I'm going to jump to right now, is images matter. I learned this while at CBRE. Really good property photos, virtual tours, drone videos, all of those help further engage buyers to your property.")<br>• https://vimeo.com/407692492 ("How to Get More Eyes on Your Listings With Eli Randel" video blog post, at 4:34 (tip three)) |
| 16.    Brokers and property owners can and often do incorporate CoStar copyrighted photographs into their LoopNet listings. | • McCallum Decl. ¶ 11 ("When using LoopNet, a selling or leasing broker can select the address of the property he or she represents, and if the property is in the CoStar database, brokers can and do choose to populate their listing with CoStar's copyrighted photographs.")<br>• Malinee Decl. Ex. 16 (K. Mason Dep. Tr. (Dec. 15, 2023), at 130:14–21 (images on listings "come from user-contributed photos, CoStar-created photos, and . . . [CoStar] vendors")); *id.* at 134:7–13 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | (explaining that brokers contract with CoStar for photography to use in their listings)<br><br>• Malinee Decl. Ex. 21 (M. DeGiorgio Dep. Tr. (Feb. 2, 2024), at 59:21–25 ("Q. Are you aware that CoStar supplies many brokers with photos of property listings and brochures?  A. I've become more aware of that since this lawsuit."))<br><br>• Malinee Decl. Ex. 242 (QUASAR_0000410, at -410 (example of broker using CoStar images in listing sent to potential buyers through an "email blast"))<br><br>• Malinee Decl. Ex. 31 (Dep. Ex. 17, CREXI-CS-00544934, at -952 (████████████████████ ))<br><br>• Malinee Decl. Ex. 43 (Dep. Ex. 43, CREXI-CS-00624390, at -392–394 (same))<br><br>• Malinee Decl. Ex. 89, (Dep. Ex. 470, CREXI-CS-00616350, at -366 (same))<br><br>• Malinee Decl. Ex. 166, (Dep. Ex. 1402, CREXI-CS-00615775, at -777, -787–790 (example LoopNet broker flyer incorporating CoStar photos)) |
| 17.    CoStar allows brokers and property owners to use CoStar-copyrighted photos in accordance | • Malinee Decl. Ex. 122 (Dep. Ex. 737, CoStar00134769, at -769–771 (CoStar |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| with the CoStar Terms and Conditions (Commercial) and LoopNet Terms of Use. | Terms and Conditions (Commercial) granting brokers "a nonexclusive, nontransferable license to use the Licensed Product," defined to include CoStar images, for "internal research purposes," "to provide information regarding particular properties to [their] clients and prospective clients," "to market particular properties," and "to support [their] valuation, appraisal or counseling regarding a specific property," including displaying on their own websites CoStar photographs "that depict properties that [the broker] owns, controls, represents or holds exclusives, provided that under no circumstances shall such photographs be posted on any website that may compete with [CoStar].")) <br><br> • Malinee Decl. Ex. 121 (Dep. Ex. 700, CoStar00000214, at -215 (LoopNet Terms of Use granting brokers "a limited, revocable, exclusive and non-sub-licensable license to use [Company Information, defined to include CoStar images] in connection with [your] LoopNet listing")) <br><br> • Malinee Decl. Ex. 20 (M. Adams Dep. Tr. (Jan. 25, 2024), at 30:23–31:3 (30(b)(6) testimony) ("CoStar licenses images in its |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | database to all users as covered by their terms and conditions.")) |
| 18.    The CoStar Terms and Conditions (Commercial) and LoopNet Terms of Use expressly state that CoStar retains its copyright in its photos. | • Malinee Decl. Ex. 122 (Dep. Ex. 737, CoStar00134769, at -771–772 (CoStar Terms and Conditions (Commercial): "Licensee acknowledges that the Information is comprised of data that is owned by CoStar and its licensors and that CoStar and its licensors have and shall retain exclusive ownership of all proprietary rights to the Licensed Product, including all U.S., Canadian and international intellectual property and other rights such as patents, trademarks, copyrights and trade secrets.")) <br> • Malinee Decl. Ex. 121 (Dep. Ex. 700, CoStar00000214, at -220 (LoopNet Terms of Use: "LoopNet retains all rights (including Intellectual Property Rights [, defined to mean "all intellectual property rights . . . arising under statutory or common law, contract, or otherwise," including "copyrights, . . . copyright applications, copyright registrations"]), title and interest in . . . LoopNet Materials," including CoStar images.)) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 19.    CoStar's Terms and Conditions (Commercial) and LoopNet's Terms of Use prohibit brokers and property owners from posting CoStar photos on competing websites, including CREXi. | • Malinee Decl. Ex. 122 (Dep. Ex. 737, CoStar00134769, at -771 (CoStar Terms and Conditions (Commercial): "Notwithstanding any other provision herein, Licensee shall not . . . upload, post or otherwise transmit any portion of the Licensed Product through, the Internet, any bulletin board system, any electronic network, any listing service or any other data sharing arrangement not restricted exclusively to Licensee and the Authorized Users)); *see also id.* ("Notwithstanding any other provision herein, Licensee shall not . . . access or use the Licensed Product if you are a direct or indirect competitor of CoStar or provide any portion of the Licensed Product to any direct or indirect competitor of CoStar . . . .")
• Malinee Decl. Ex. 121 (Dep. Ex. 700, CoStar00000214, at -214 (LoopNet Terms of Use: "No employee, independent contractor, agent, or affiliate of any competing real estate information, analytics or listings service is permitted to be a User or a Customer or to view, use, or access the LoopNet website without express written permission from LoopNet.  By viewing, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | using, or accessing the Service, You represent and warrant that You are not a competitor of LoopNet, CoStar Realty Information, Inc. or any of its affiliates, including, without limitation, any company owned or operated by [CoStar] or acting on behalf of a competitor of LoopNet in registering for or accessing the Service.")) |
| **CREXi's Business** | |
| 20.    CREXi was founded in 2015. | • CREXi's First Am. Countercls. ¶ 2 (Dkt. 161-1, at 1) |
| 21.    CREXi competes with CoStar's listings, auction, and data products nationally. | • Malinee Decl. Ex. 17 (L. Dees Dep. Tr. (Feb. 13, 2024), at 160:1–7 ("CREXi's competitors today" are "CoStar," "LoopNet," and "Ten-X.")) <br>• Malinee Decl. Ex. 9 (D. Shankman Dep. Tr. (Feb. 16, 2024), at 96:6–8 (CREXi founded as "competitive alternative" to CoStar)) <br>• Malinee Decl. Ex. 27 (R. Padfield Dep. Tr. (Dec. 14, 2023), at 78:17–79:5 (CREXi competes with CoStar "nationally" and "coast to coast"); *id.* at 83:5–18 ("Q. Did [CREXi Auctions] compete with Ten-X? [Objection] A. Yes.")) <br>• Malinee Decl. Ex. 21 (M. DeGiorgio |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | Dep. Tr. (Feb. 2, 2024), at 57:17–58:10 ("Q. Did you want Crexi to have national reach? A. Yes, of course.  Q. You wanted to cover major geographic markets?  A. Again, I wanted to cover everything.  Q. Did Crexi want to overtake LoopNet as a listings marketplace? A. I think CoStar is one of the worst companies ever established in this country, so I wanted to overtake everything about them. Q. Crexi wants to overtake CoStar as the leading provider of CRE information? A. That's absolutely the goal. Q. Did Crexi want to overtake Ten-X as a platform for CRE transactions? A. We weren't an auction product when we started. That was something we decided to build later on. But I do think – and we're still working our way towards it."); *id.* at 107:11–15 ("Q. Did Crexi want to be the place that people went to for all of the commercial real estate listings?  A. We wanted to be the place that people went to for everything."))<br><br>• Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023), at 89:11–13 (██████████████); *id.* at |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | 75:20–76:5 (█████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ • Malinee Decl. Ex. 101 (Dep. Ex. 605, CREXI-CS-00581168, at -168–170 (emails with CREXi's Chief Marketing Officer, C. Ettus, with subject line "Competitor Matrix: CREXi vs Ten-X" planning marketing materials)) |
| 22.    CREXi views CoStar as a key competitor. | • Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 27, 2024), at 51:12–24 ████████████ ████████████████████████████ ██████████████████ • Malinee Decl. Ex. 6 (C. Ettus Dep. Tr. (Jan. 22, 2024), at 66:21–67:1 & 275:1–2 (identifying CoStar as a main competitor of CREXi)); *id.* at 63:15–16 (identifying Ten-X as a competitor of CREXi) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024), at 76:15–18; 77:18–24; 83:8–14 ███████████████ ████████ ) |
| | • Malinee Decl. Ex. 54 (Dep. Ex. 67, CREXI-CS-00611491, at -491 & -508 ████████████████████████ |
| | • Malinee Decl. Ex. 106 (Dep. Ex. 618, CREXI-CS-00581621, at -621 ████████████████████████ |
| 23.    CREXi has stated that its goal is to "████████" the commercial real estate industry and surpass CoStar to become the "█████████████████████████" | • Malinee Decl. Ex. 210 (CREXI-CS-00565026, at -026 (██████████████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████ ) |
| | • Malinee Decl. Ex. 201 (CREXI-CS-00439377 (P. Cohen to CBRE broker: "Following up with you on our Crexi.com site. This is going to replace loopnet!")) |
| | • Malinee Decl. Ex. 209 (CREXI-CS-00563303, at -303 ████████████████████████████████████████ |
| **Importance of Listings to CREXi's Platform** | |
| 24.    CREXi's website (www.crexi.com) has listings for CRE properties in markets across the country. | • https://www.crexi.com/properties |
| 25.    CREXi has recognized that listings are necessary to attract users to its platform. | • Malinee Decl. Ex. 129 (Dep. Ex. 816, CREXi Business plan dated Q4 2014, at 23 ("A critical success factor of the launch of the CREX community will be a healthy pipeline of quality assets from natural holders of real estate to enable marketability of the platform to attract quality marketplace traffic. Once successful |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | transactions have been achieved displaying a true marketplace effect – buyers become sellers and vice versa.")) <br><br> • Malinee Decl. Ex. 21 (M. DeGiorgio Dep. Tr. (Feb. 2, 2024), at 76:10–17 (agreeing "healthy pipeline of quality assets" in Dep. Ex. 816 refers to property listings)); *id.* at 77:15–17 ("Q. Was building a healthy supply of property listings critical for Crexi's success over time? A. Yes. Yes."); *id.* at 141:17–142:7 ("Q. When users went to crexi.com, they wanted to see property listings?  A. That's one of many reasons they would go to crexi.com.  Q. And more listings, more selection, that was better, from their perspective?  A. More listing would be better than less listings if it fit the criteria they were looking to purchase or eventually lease, when we turned on leasing.  More criteria is not good if it's not what they're looking for.  Q. So when buyers go to Crexi, they want to see more of the type of property they're looking for?  A. One of many reasons they'd want to go to Crexi, yes.") <br><br> • Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 27, 2024), at 69:18–70:8 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ <br>• Malinee Decl. Ex. 25 (N. DeGiorgio. Tr. (Feb. 6, 2024), at 45:4–20 (agreeing that "more inventories on the website, the better it would be for crexi.com" because "[i]t would make our inventory or database bigger" and "bring more users to the website")) <br>• Malinee Decl. Ex. 26 (P. Cohen Dep. Tr. (Nov. 30, 2023), at 31:22–32:4 (testifying that "it was important to expand the company. To build a marketplace with listings. That was the goal of the company" and "[i]f you don't have listings, you don't have a marketplace")) <br>• Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023), at 87:23–88:3 (██████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████)); *id.* at 94:17–22 (█ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | ; *id.* at 187:10–24 (  • Malinee Decl. Ex. 30 (Z. Zlotnick Dep. Tr. (Oct. 3, 2023), at 69:17–22 (  )) • Malinee Decl. Ex. 13 (J. Aceves Dep. Tr. (Mar. 7, 2024), at 284:21–25 ("Q. Would you agree with me that nobody is going to shop at an empty store? [Objection] A.  I would agree with that.")) • Malinee Decl. Ex. 9 (D. Shankman Dep. Tr. (Feb. 16, 2024), at 39:15–20 ("Q. So there had to be listings in CREXi's marketplace in order for people to transact on the platform, right?  There had to be stock in the store for people to buy?  A. That analogy is fair.  There had to be inventory, sure.")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 46:2–8 (testifying CREXi "would be less valuable" if it did not have any listings on its website)) |
| | • Malinee Decl. Ex. 88 (Dep. Ex. 412, CREXI-CS-00634792, at -799–800 ▮▮▮▮▮▮▮ |
| | • Malinee Decl. Ex. 86 (Dep. Ex. 399, CREXI-CS-00570772, at -773 ▮▮▮▮▮▮ *id.* ▮▮▮▮▮▮ |
| | • Malinee Decl. Ex. 87 (Dep. Ex. 402, CREXI-CS-00568874 at -877 ▮▮▮▮▮▮ |
| | • Malinee Decl. Ex. 131 (Dep. Ex. 823, CREXI-CS-00571705, at -713 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | • Malinee Decl. Ex. 183 (CoStar00084715, at 6:07–6:21 (video of September 8, 2020 podcast hosted by Everything Marketplaces in which Eli Randel stated: "[s]upply begets demand, and then the second half of that recipe or equation is that demand begets monetization.  So first and foremost, nobody wants to shop in an empty store, so you better stock the shelves with supply."))<br>• Malinee Decl. Ex. 184 (CoStar00084717, at 11:28–11:48 (video of June, 24, 2020 podcast hosted by Two Sided in which M. DeGiorgio represented that by driving "the supply side," i.e., adding large numbers of listings for free, CREXi would necessarily get the "demand for free too"))<br>• CREXi's First Am. Countercls. ¶ 168 (Dkt. 161-1, at 50) ("[I]nternet CRE listing, information, and auction service markets are characterized by 'network effects.' A Network effect exists in a market if (1) an increase in the number of users of a service |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | on one side of a market leads to (2) an increase in the value of a complementary service on the other side of the market, which can then increase the value of the first service.  For example, an increase in the number of CRE brokers representing sellers or lesser who utilize internet CRE listing services leads to an increase in the value of the internet CRE listing service to CRE brokers representing buyers or lessees. The resulting increase in the number of CRE brokers representing buyers or lessees who utilize the internet CRE listing service leads to an increase in the value of the listing service to CRE brokers representing sellers or lessors.") |
| 26.    CREXi's key performance metrics and subscription revenue are tied to increases in CREXi's userbase. | • Malinee Decl. Ex. 87 (Dep. Ex. 402, CREXI-CS-00568874, at -877 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████ |
| | • Malinee Decl. Ex. 219 (CREXI-CS-00718798, at -799–803 ████████████████ |
| | • Malinee Decl. Ex. 88 (Dep. Ex. 412, CREXI-CS-00634792, at -799–800 ( ████████████████ |
| | • Malinee Decl. Ex. 131 (Dep. Ex. 823, CREXI-CS-00571705, at -708, -711–713, ████████████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 216 (CREXI-CS-00663745, at -745–52, -755 |
| | • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 43:16–44:1 (Q. . . .[W]hen you first joined CREXi in 2017.  At that point the company was relatively new . . . .  It started in 2015; right?  A. Yes.  Q. And so the company was trying to grow?  A.  Yes.  Q. Try and subscribe new users?  A. Yes.  Q. Try and get new listings?  A. Yes.")) |
| | • Malinee Decl. Ex. 9 (D. Shankman Dep. Tr. (Feb. 16, 2024), at 23:7–13 ("Q.   And was one of your goals [in 2016] to get brokers to list properties on the CREXi free platform? A. My goal was to have brokers |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | on our platform.  I was focused on broker acquisition, understanding that brokers were our – what's called ICP, our ideal customer profile.  That was my goal, was to focus on the brokers who you could monetize.")) • Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023), at 244:13–20 ████████ • Malinee Decl. Ex. 30 (Z. Zlotnick Dep. Tr. (Oct. 3, 2023), at 35:24–25, 39:1–2 ████████ • Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 27, 2024), at 97:3–16 (████ ; *id.* at 162:1–4 ( |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ; *id.* at 207:10–209:10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>• Malinee Decl. Ex. 15 (J. Drapeau Dep. Tr. (Jan. 17, 2024), at 39:7–14 ("Q. And one of your responsibilities as a BDR was to try to increase the number of brokers and listings on CREXi sites; is that right?  A. Increase the number of brokers.  Q. So one of your responsibilities was to increase the number of brokers.  Did that also mean that the number of listings would increase as Well?  A. Typically brokers have listings."))<br><br>• Malinee Decl. Ex. 26 (M. DeGiorgio Tr. (Feb. 2, 2024), at 92:15–93:23 (having more users on CREXi's platform is "good for a hundred reasons" including because "[m]ore users obviously can help you generate more revenue" and "[m]ore people using Crexi is more people you can sell a subscription to")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| **CREXi's Claims Regarding Listings on Its Platform** | |
| 27.    CREXi has claimed that it has "more listings in most markets across the USA" and has "by far" "more listings than the competitors out there." | • Malinee Decl. Ex. 188 (CoStar00362184, at -211:14–5 (transcript of CREXi's "The Baltimore Market Report" from May 2020 in which P. Cohen stated that CREXi has "more listings than . . . the competitors out there" and "more listings [in] most markets across the U.S.A."))<br><br>• Malinee Decl. Ex. 187 (CoStar00362117, at -120:19–22, -156:3–4) (transcript of CREXi's "The Tampa Commercial Market Report" from June 2020 in which Mr. Cohen stated, "we're the site where all the listings are.  And the reason for that is quite simple, it's a free to list platform," and "[w]e have all the listings for the market—they're already in there."))<br><br>• CREXi's Answer to Second Am. Compl. ¶ 138 (Dkt. 438, at 27) ("CREXi admits that, a May 15, 2020 event attributes the following quote to Mr. Cohen: 'We by far have more listings than the competitors out there, the other sites you might be using. So go and check that. We have more listings in most markets across the USA.'"); *id.* ("CREXi further admits that a June 19, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | 2020 event attributes the following quotes to Mr. Cohen: CREXi is the "place where all the listings are" and "We have all the listings for the market—they're already in there.")<br><br>• Malinee Decl. Ex. 189 (CoStar00362231, at -255:11–17 (transcript of CREXi's "The Richmond Commercial Market Report" video from June 2020 in which CREXi employee Paul Cohen claimed that CREXi was "the place where all the listings are," and that CREXi "ha[d] more listings in Richmond tha[n] the competitor does. And actually, if you go around the country, you'll see CREXi has more listings in most markets than [its] competitors."))<br><br>• Malinee Decl. Ex. 182 (CoStar00084613, at -629:18–20, 662:16–18 (transcript of May 4, 2020 podcast hosted by Tech Nest in which CREXi employee Matt Cors stated, "CREXi is adding 'thousands of properties a week on here on both sides of the marketplace'" and the "whole goal is to continue just building up the whole marketplace side of things"))<br><br>• CREXi's Answer to Second Am. Compl. ¶ 142 (Dkt. 438, at 29) (admitting that "a |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | May 4, 2020 TECH NEST podcast attributes the following quote to Mr. Cors: 'We've got over 100,000 for-sale properties, over 200,000 for-lease properties, all active on the platform today. We're adding, you know, thousands of properties a week on here, on both sides of the marketplace, the for-sale and the for-lease side.'")) <br><br> • Malinee Decl. Ex. 21 (M. DeGiorgio Dep. Tr. (Feb. 2, 2024), at 107:11–15 ("Q. Did Crexi want to be the place that people went to for all of the commercial real estate listings?  A. We wanted to be the place that people went to for everything.")) |
| 28.    CREXi has claimed that it has exclusive listings on its site. | • Malinee Decl. Ex. 188 (CoStar00362184, at -211:1–5 (transcript of CREXi's "The Baltimore Market Report" from May 2020 in which CREXi employee Paul Cohen stated that CREXi has "more listings than . . . the competitors out there" and "more listings [in] most markets across the U.S.A.")) <br><br> • CREXi's Answer to Second Am. Compl. ¶ 138 (Dkt. 438, at 27) ("CREXi admits that, a May 15, 2020 event attributes the |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | following quote to Mr. Cohen: 'We by far have more listings than the competitors out there, the other sites you might be using. So go and check that. We have more listings in most markets across the USA.'")<br>• Malinee Decl. Ex. 189 (CoStar00362231, at -255:11–17 (transcript of CREXi's "The Richmond Commercial Market Report" video from June 2020 in which P. Cohen claimed that CREXi was "the place where all the listings are," and that CREXi "ha[d] more listings in Richmond tha[n] the competitor does.  And actually, if you go around the country, you'll see CREXi has more listings in most markets than [its] competitors."))<br>• Malinee Decl. Ex. 131 (Dep. Ex. 823, CREXI-CS-00571705, at -708<br><br>• Malinee Decl. Ex. 161 (Dep. Ex. 1225, CREXI-CS-00599350 (M. Cors: "I told [a broker] we can't have any other info from |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | 3rd party sites LIVE on our platform and we only except [sic] exclusive listings on the site . . . .")) <br><br> • Malinee Decl. Ex. 5 (B. McGetrick Dep. Tr. (Mar. 26, 2024) (30(b)(6) testimony), at 20:23–21:9 ("A.   So there was a meeting . . . between Jason Butler, Lisa Ruggles and Jaye Campbell to discuss doing a competitive analysis of Crexi's listings to determine if marketing claims that CREXI had more listings in markets was correct or not.  And – and also to see if the feedback that was received from CoStar sales representatives that they were hearing from brokers that they were only listed on CREXI and not on CoStar, to see if that was true or not.")) |
| **Photos in CREXi's Products** | |
| 29.    Listings on CREXi's website include photographs of properties. | • https://www.crexi.com/properties <br> • Malinee Decl. Ex. 27 (R. Padfield Dep. Tr. (Dec. 14, 2023), at 234:7–18 (testifying that photographs of properties are "something that listings need. . . .  Whether on CREXi, on the MLS, or on any other market that exists")) <br> • Malinee Decl. Ex. 14 (J. Burton Dep. Tr. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | (Jan. 24, 2024), at 94:18–25 ("Q. Did you ever instruct offshore to create listings without images?  A. No.  The [CREXi] system doesn't allow you to add listings without an image. . . .  So no.  Like if there was no picture for the deal, as you can see in the email, we had to use our stock photo."))<br>• Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023), at 104:20–24 ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *id.* 149:3–5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* 157:16–20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)<br>• Malinee Decl. Ex. 9 (D. Shankman Dep. Tr. (Feb. 16, 2024), at 109:9–12 ("Q.  . . . When CREXi built property listings on its website, it included photos of the properties, right? A.  It did."))<br>• Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 78:22–24 ("Q. So there are no active listings without photographs? |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | A. To the best of my knowledge, no.")) |
| | • Malinee Decl. Ex. 15 (J. Drapeau Dep. Tr. (Jan. 17, 2024), at 45:11–14 ("Q. So the majority of the listings that you've seen, during your time at CREXi, feature photos of commercial real estate; is that right? A. Yeah."); *id.* at 151:22–152:1 (CREXi listings "typically" include "a picture, address, [and] property description")) |
| 30.    CREXi recognizes that photographs enhance property listings on CREXi's marketplace. | • Malinee Decl. Ex. 27 (R. Padfield Dep. Tr. (Dec. 14, 2023), at 233:8–9 ("[A] listing with pictures is always better.")) |
| | • Malinee Decl. Ex. 26 (P. Cohen Dep. Tr. (Nov. 30, 2023), at 17:4–17, 18:14–19 ("Q. So in your experience as a broker in commercial real estate, would you ever try to sell a property without using photographs? A. It's doable. Q. Doable? A. Sure. Q. Is it advisable? A. I wouldn't recommend it. Q. Why not? A. Well, if you're going to market a property, people would want to see those photos. If you're sending it to a large group of people, then photos are useful. Videos, things like that. The data on the property.")) |
| | • Malinee Decl. Ex. 25 (N. DeGiorgio Dep. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Tr. (Feb. 6, 2024), at 154:13–18 ("Q. Is it helpful for listings to have images of the properties that are being sold? [Objection] A. I think so.")) |
| | • CREXi's Answer to Second Am. Compl. ¶ 150 (Dkt. 438, at 30–31) ("CREXi admits . . . that a Realtors Property Resource blog post titled 'How to Get More Eyes on Your Listings With Eli Randel' attributes the following quote to Mr. Randel: 'Tip number three, I'm going to jump to right now, is images matter. I learned this while at CBRE. Really good property photos, virtual tours, drone videos, all of those help further engage buyers to your property.') |
| | • https://vimeo.com/407692492 ("How to Get More Eyes on Your Listings With Eli Randel" video blog post, at 4:34–5:22 ("Images matter. I learned this while at CBRE. Really good property photos . . . help further engage buyers to your property. . . . In my opinion, and this is a pretty strong opinion, images do matter.")) |
| | • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 78:1–3 ("Q. Because photographs are pretty important to the listing?  A. Yeah.")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 119 (Dep. Ex. 649, CREXI-CS-10035665, at -665 (CREXi employee writing to broker: "If we upload what you provided, it won't be the best quality photos unfortunately. I'd suggest you send us better photos of those deals if you have them. It makes a huge impact on the interest and traffic.")) |
| 31.    CREXi's CRE database product, Intelligence, also incorporates photos. | • Malinee Decl. Ex. 17 (L. Dees Dep. Tr. (Feb. 13, 2024), at 52:1–3; 53:16–17 ("[I]mages are displayed on the same properties generally in the same way whether they're in the Intelligence product or not" and "[i]n general, if a property is closed, it's in – it's in a component of our Intelligence product")) <br> • Malinee Decl. Ex. 27 (R. Padfield Dep. Tr. (Dec. 14, 2023), at 75:23–76:11 (testifying that CREXi Intelligence includes "[c]omps and marketing," and comps include pictures of the property "[m]ost of the time")) <br> • Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (Nos. 12 and 24), Second Am. App'x D (Aug. 14, 2024), at Column S ██████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)) |
| **CREXi's Acquisition of Photos** | |
| 32.    CREXi does not employ or contract with photographers to take photos of CRE properties for CREXi's listings. | • Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 170:16–171:3, 171:12–22 (testifying that "I don't think we [CREXi] have . . . a bunch of photos" for new listings, and he was not aware of "any photographers that took . . . pictures of real estate for listings" for CREXi or "any library of photographs of commercial real estate" licensed by CREXi))<br>• Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 56:15–23 ("[Q.] Did CREXi have any internal sources of listing information or listing images?  [Objection.] [A]: I don't know.  [Q.]: You're not aware of any?  [Objection.]  [A]: I'm not sure."))<br>• Malinee Decl. Ex. 15 (J. Drapeau Dep. Tr. (Jan. 17, 2024), at 46:3–47:3 ("Q. . . . Does CREXi have a library of photos from which to choose images for its listings? [Objection.]  [A]:  I'm not sure. . . .  Q. . . . [H]ave you ever personally accessed a CREXi image library to choose images for listings?  [Objection.]  [A]: No. . . .  Q. And if you know, does CREXi employ any |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | photographers to take photographs of commercial real estate properties? [Objection.]  [A]: Not that I know of.")) <br>• Malinee Decl. Ex. 21 (M. DeGiorgio Dep. Tr. (Feb. 2, 2024), at 21:21–22:1 ("Q. Do you agree that Crexi has expended time, money, and effort into delivering the listings it displays on its platform?  A. No. We spent the time talking to the industry about what we built so that they put their listings on our platform.")) <br>• Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023) (30(b)(6) testimony), at 322:9–13 ■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■ ) <br>• Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 28, 2024), at 222:17–20 (■■■■■■■■■■■■■■■■ ) <br>• Malinee Decl. Ex. 9 (D. Shankman Dep. Tr. (Feb. 16, 2024), at 280:19–22 ("Q. CREXi didn't employ photographers to photograph CRE property? A. Not that I'm aware of.")); *id.* at 110:8–16 (similar) <br>• Malinee Decl. Ex. 6 (C. Ettus Dep. Tr. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | (Jan. 22, 2024), at 35:14–25 (testifying that she has no knowledge of CREXi hiring photographers to take photographs for its listings))<br>• Malinee Decl. Ex. 26 (P. Cohen Dep. Tr. (Nov. 30, 2023), at 41:20–24 (same)) |
| 33.    CREXi does not expend significant resources on photography. | • Malinee Decl. Ex. 228 (CREXI-CS-00733781 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)<br>• Malinee Decl. Ex. 18 (L. Dees. Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at 155:23–24 ("Q. Does CREXi own any drones itself? A. Not that I'm aware of."))<br>• Malinee Decl. Ex. 29 (T. Laehy Dep. Tr. (Mar. 12, 2024), at 193:5–19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 34.    CREXi states that it relies on CRE brokers, owners, and other customers to supply photos of properties. | • Malinee Decl. Ex. 250 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24) (Aug. 14, 2024), at 29 (explaining that "CREXi obtains CRE photographs" from users either (1) uploading "photographs directly to the CREXi platform"; (2) sending "photographs to CREXi for upload, either via email or via an upload portal"; and/or (3) "direct[ing] CREXi to gather" the photographs from a source such a "website" or "public flyer")) <br> • Malinee Decl. Ex. 21 (M. DeGiorgio Dep. Tr. (Feb. 2, 2024), at 68:18–69:4 ("Q. How did Crexi plan to obtain photos for property listings?  A. The same way we retain everything else from our users.  Q. So Crexi didn't plan to hire photographers?  A. No. Brokers can go snap some pictures with an iPhone. There's no need to hire photographers. Q. Crexi didn't plan to license CRE photos for use in property listings, did it? A. Not that I'm aware of.")) <br> • Malinee Decl. Ex. 17 (L. Dees Dep. Tr. (Feb. 13, 2024), at 222:13–19 ("Q. Do you know how CREXi obtained 4.3 million photographs between the time it was founded and September 25th, 2020, when |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CoStar filed this lawsuit?  A. Through either brokers . . . uploading images directly, . . . them sending images to us to upload at their direction.  Or via API.")) <br> • Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023), at 167:2–10 ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> • Malinee Decl. Ex. 2 (A. Maddox Dep. Tr. (Mar. 12, 2024), at 75:5–8 ("Q And CREXi similarly obtains images from outside sources, right?  [Objection.]  [A]: We get them from brokers.")) |
| 35.    CREXi states that it relies on CRE brokers, owners, and other customers to certify that they have the right to use the images that they supply to CREXi. | • Malinee Decl. Ex. 250 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24) (Aug. 14, 2024), at 18–19 (stating that "CREXi users represent and warrant that they have all rights necessary" to use and display the content they submit to CREXi)) <br> • Malinee Decl. Ex. 239 (ELSTEN-CREXI-CS-00001055, at -058  (CREXi's Terms of Service, providing at Section 3.5(b): "You acknowledge and agree that any Customer Content that you submit does not and will not violate third-party rights of |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | any kind, including without limitation any intellectual property rights or rights of privacy.")) |
| **Brokers' Creation of Listings on CREXi.com** | |
| 36.    CREXi offers a feature where brokers can build their own listings. | • Malinee Decl. Ex. 250 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24) (Aug. 14, 2024), at 29 (explaining that "CREXi has developed a proprietary tool that allows brokers to upload listing information and photographs directly to the CREXi platform")) |
| | • Malinee Decl. Ex. 17 (L. Dees Dep. Tr. (Feb. 13, 2024), at 66:2–9 ("testifying that CREXi added a feature allowing a broker to "create a listing themselves" in or around October 2016)) |
| | • Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at 198:18–20 (CREXi's "new feature . . . . allowed brokers to build their own listings")) |
| | • Malinee Decl. Ex. 21 (M. DeGiorgio Dep. Tr. (Feb. 2, 2024), at 157:4–10 ("[W]e were testing this new feature of letting brokers build their own deals, to see if they actually would.  Brokers tend to sometimes |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | be lazy, and so we weren't sure if the brokers would still send us the property to add or if they would add the deals themselves.  So this is about when launched the build your own feature.")) <br> • Malinee Decl. Ex. 2 (A. Maddox Dep. Tr. (Mar. 12, 2024), at 75:18–22 ("Q . . .  A broker could build a listing themselves; is that correct?  [Objection.]  [A]: Brokers can add their listings themselves.")) |
| 37.    CREXi's CEO directed that all broker-built listings be "subject to review" for "quality control." | • Malinee Decl. Ex. 130 (Dep. Ex. 822, CREXI-CS-00562775, at -775, -777 (November 2016 email from E. Randel to L. Morris and M. DeGiorgio stating: "We need quality control. People are uploading deals with Co-Star pictures or no pictures at all. We're out there pitching quality control and this contradicts it" and M. DeGiorgio response stating that "all [listing] submissions are subject to review")) |
| **CREXi Employees' and Agents' Creation of Listings on CREXi.com** | |
| 38.    CREXi offers a service to build listings on Crexi.com. | • https://learn.crexi.com/en/articles/653533 7-listing-properties-on-crexi ("You can utilize Crexi's white glove service where one of our skilled Crexi professionals can help you with the process.")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • https://www.crexi.com/add-properties, (advertising CREXi's ability to curate listings)<br>• Malinee Decl. Ex. 220 (CREXI-CS-00724865, at -866 (page on CREXi's website describing the process for adding a listing, which states: "Get started by uploading a flyer, offering memorandum, or brochure and our team will do the rest.")) |
| 39.    Brokers often ask CREXi to build listings for them. | • Malinee Decl. Ex. 250 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24) (Aug. 14, 2024), at 29 (explaining that "brokers send listing information and photographs to CREXi for upload, either via email or via an upload portal"))<br>• Malinee Decl. Ex. 27 (R. Padfield Dep Tr. (Dec. 14, 2023), at 208:15–24 ("Q. [B]rokers could send their fliers or brochures or listing links and CREXi would build out the listing for them?  A.  Correct. Q.  Okay.  And what does it mean to build out a listing?  A.  To put in all the property information needed to sell or lease the property based on what the broker has."))<br>• Malinee Decl. Ex. 25 (N. DeGiorgio Dep. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Tr. (Feb. 6, 2024), at 88:8–24 ("[Q.] In your experience, what proportion of listings are created by brokers themselves, and what proportion are created by CREXi at the broker's request? . . .  A. More times they would request us to do it on their behalf."))<br>• Malinee Decl. Ex. 2 (A. Maddox Dep. Tr. (Mar. 12, 2024), at 78:3–10 ("Q.  In your experience, did brokers primarily choose to build listings themselves?  [Objection]  A. In my experience, . . . I would say most of them would prefer us to add them[.]"))<br>• Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 24:2–11 (explaining that sometimes brokers "may necessarily not want to build [listings] out themselves . . . and they want us to do it for them," in which case brokers have the option to create a listing by "giving [CREXi] authorization to go to [the broker's] website, and . . . take the data" to create a listing on CREXi))<br>• Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 165:11–16 ("Q.  How often . . . did brokers say, yeah, I want to put my listings on CREXi.com, but I'll build them myself, you guys don't need to do that?  A.  Yeah.  I don't – I don't think |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | very often in – as a [business development representative], I don't think very often.")); *id* at 150:7–16 (Discussing brokers: "Q. They're busy?  A.  Probably, right.  Q. Yeah.  And they don't want to spend time and effort to recreate their listings on multiple platforms?  [Objection]  Q. Is that fair? [Objection]  A.  Yeah . . .")<br><br>• CREXi's Countercls. ¶ 118 (Dkt. 74, at 34) ("Once brokers prepare listing information for a new property, they do not want to re-create it. So, brokers frequently share links to their listings with competing CRE platforms, expecting them to post the same listing.")<br><br>• Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023), at 81:1–13 ████████████ ████████████████████████ ████████████████████████ ████████████████████<br><br>• Malinee Decl. Ex. 21 (M. DeGiorgio Dep. Tr. (Feb. 2, 2024), at 46:21–25 (same)); *see also id.* at 170:4–9 ("Q.  The trouble of posting listings could be a friction point that would dissuade [brokers] from using Crexi to list? A.  If what you're asking is if it took four weeks to put a listing on Crexi, I don't think anybody |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | would use us.") <br><br> • Malinee Decl. Ex. 9 (D. Shankman Dep. Tr. (Feb. 16, 2024), at 99:24–100:2 ("I would agree that brokers had their listings on other marketplaces and that as a result, they may not have been willing at times to list on others, sure.")) <br><br> • Malinee Decl. Ex. 225 (CREXI-CS-00731920, at 34:10–25 ███████ <br><br> • Malinee Decl. Ex. 240 (HANNA00000010, at Page 6, Row 8, Column E ████████ <br><br> • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 46:24–49:4 (testifying that CREXi would "add[] whatever [brokers] sent us")); *id.* at 49:15–19 ("Q. And, in fact, you offered a white glove service to make it as easy as possible for customers to post their listings on your website, right?  A.  Yes.  So whatever they requested, help them out and add their |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | information per their request.) |
| | • Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 163:24–164:4 ("Q. And so you made a practice of telling potential [broker] customers that CREXi would undertake the task of building their listings for them?  A. Yeah, yeah.")) |
| 40.    CREXi creates listings from links sent by brokers. | • Malinee Decl. Ex. 38 (Dep. Ex. 38, CREXI-CS-00628175, at -175–176 (email from R. Smith to broker stating: "I'll have these prepared in DRAFT mode by tomorrow for you" after broker sent "information for the three LoopNet listings" in a Word document)) |
| | • Malinee Decl. Ex. 58 (Dep. Ex. 91, CREXI-CS-10100892 (email from CREXi employee C. Vien to broker saying "we can get [listings] up for you" and providing LoopNet link saying "[t]hese are the ones that I am currently able to see… Feel free to send over any of [your] other listings")) |
| | • Malinee Decl. Ex. 60 (Dep. Ex. 93, CREXI-CS-00666026, at -027 (email from CREXi  employee C. Vien to broker offering to "add your listings")) |
| | • Malinee Decl. Ex. 61 (Dep. Ex. 95, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CREXI-CS-10101287, at -287) (email from CREXi employee C. Vien to broker saying "our team mirrors all the same information from your current [listings] onto the CREXi platform, so it's quite effortless on your end")) |
| | • Malinee Decl. Ex. 62 (Dep. Ex. 96, CREXI-CS-10102025, at -025 (email from C. Vien to broker saying "I'm going to link below all the listings I saw below, feel free to respond letting me know if any of them are no longer active or if you have any updates to them you'd like me to include when adding them onto CREXi" and providing five LoopNet property listing links)) |
| | • Malinee Decl. Ex. 155 (Dep. Ex. 1211, CREXI-CS-00603049, at -049 (D. Shankman emailing broker, "If it's easier, we are able to grab your listings from the link below or the CBC website and our deal upload team can begin the process," and including a link to the broker's LoopNet profile)) |
| | • Malinee Decl. Ex. 165 (Dep. Ex. 1401, CREXI-CS-00722316, at -316 (email from CREXi employee A. Maddox to broker |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | explaining ways for CREXi to add new listings or make updates to existing listings)) |
| | • Malinee Decl. Ex. 167 (Dep. Ex. 1403, CREXI-CS-00665616, at -616 (email from CREXi employee A. Maddox to broker confirming he was "able to find these listings [the broker] currently ha[s] up on LoopNet and ha[s] sent them over to be added to [CREXi's] site")) |
| | • Malinee Decl. Ex. 169 (Dep. Ex. 1411, CREXI-CS-10056325, at -325 (email from CREXi employee T. Wallace to broker stating: "If there are sale listings missing [from your property listings on CREXi], please send me the info and I am happy to get those added for you.")) |
| | • Malinee Decl. Ex. 13 (J. Aceves Dep. Tr. (Mar. 7, 2024), at 86:19–24 ("CREXi when they first launched . . . had a service you can email a listing and they would put [it] in for you, which sounds helpful but I . . . would find mistakes in it and, you know, so like the address would be wrong or something," leading Aceves to start creating his own listings)) |
| | • Malinee Decl. Ex. 15 (J. Drapeau Dep. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Tr. (Jan. 17, 2024), at 23:5–16 ("Q. And at a high level, how would you describe your day-to-day as a BDR?  A. So I reach out to brokers and agents and introduce CREXi to them.  And if they are interested in listing their listings and in creating an account with CREXi, basically they would direct me to or send me their properties, their photos, PDFs, links to their websites, and various different amount of listing platforms where they have all their listings.  And I was responsible for relaying that information to our listings team to then create accounts and build out their properties and their photos for them.")) <br>• Malinee Decl. Ex. 2 (A. Maddox Dep. Tr. (Mar. 12, 2024), at 76:3–5 ("Q.  Could a broker send materials to CREXi to add a listing?  A.  Yes, they can.")) |
| 41.    CREXi creates listings from PDF flyers, brochures and offering memoranda ("OMs") sent by brokers, including PDFs sourced from LoopNet. | • Malinee Decl. Ex. 250 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24) (Aug. 14, 2024), at 29 (explaining that "brokers direct CREXi to gather information and photographs from the broker's website, from Google or from some other source, such as a public flyer, in |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | order to build out the listing.")) |
| | • Malinee Decl. Ex. 41 (Dep. Ex. 41, CREXI-CS-00627119, at -119 (email from CREXi employee R. Smith to broker stating: "I am willing to build your listings out for you moving forward . . . . All you have to do is send me the brochures/updates and I can take care of the rest, eliminating the work on your end.")) |
| | • Malinee Decl. Ex. 77 (Dep. Ex. 214, CREXI-CS-00553770, at -771 (email from P. Cohen to broker stating: "Best of all, there is no cost to using CREXi. All we need to get you started are your OM's or Flyers, and my team will create your deal pages, your profile, and your log-in")) |
| | • Malinee Decl. Ex. 13 (J. Aceves Dep. Tr. (Mar. 7, 2024), at 257:9–14 ("[Y]ou could take your offering memorandum and just email it to CREXi and they would attempt to put it into their platform," including "photos" in the offering memorandum)) |
| | • Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 27, 2024), at 248:23–249:4 (■■■■■■■■■■■■■■■■■■■■ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████████████████ |
| | • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 49:20–22 (Q. You'd ask potential brokers to send fliers, and you did the rest? A. Yeah.")); *id.* at 53:16–22 ("Q. So you take the flier, and you take the information on it, and then insert it onto CREXi's platform? A. Yep. Q. To make the process as easy as possible for customers? A. Yeah."); *id.* at 60:23–61:5 (same); *id.* at 93:17–94:13 (testifying that "my practice" was to create listings from "PDFs sent to us by brokers" including PDFs that came "directly from LoopNet"); *id.* at 123:22–124:2 (same) |
| 42.  CREXi selects the most relevant photos for listings. | • Malinee Decl. Ex. 175 (Dep. Ex. 1586, CREXI-CS-00731924, at 3:50–4:15 (June 26, 2020 training video by J. Burton explaining that agents should "just take the most relevant photos" and not "add in every single picture")) • Malinee Decl. Ex. 27 (R. Padfield Dep. Tr. (Dec. 14, 2023), at 79:6–80:18 (explaining it was "within [CREXi |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | customer success representatives'] wheelhouse" to assist customers in choosing which pictures to use for their listings)) <br> • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 91:8–23 |



| UNCONTROVERTED FACT | EVIDENCE |
|---|---|



); *id.* at 461:22–24 )

*id.* at 479:15–24

: *id.* at 480:19–25

- Malinee Decl. Ex 227 (CREXI-CS-00731931), at 21:13–21:53

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | <br><br><br><br><br><br><br><br><br><br><br><br> |
| | • Malinee Decl. Ex. 46 (Dep. Ex. 49, CREXI-CS-00717895, at -895 (CREXi directing employees to create listings "only using the main photo and aerial/overview photo" of a property)) |
| 43.   CREXi rejects photos proposed for listings. | • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 68:4–9 ("Q.  So if a broker asked you to edit photos, how would you know what to do?  A.  I mean, editing photos such as removing them or in some cases changing the order of the photos on their listing."))<br>• Malinee Decl. Ex. 25 (N. DeGiorgio Dep. Tr. (Feb. 6, 2024), at 107:21–108:6 (admitting to taking "down images |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | [be]cause they were pixilated, not at a broker's request")) <br> • Malinee Decl. 118 (Dep. Ex. 648, CREXI-CS-00414224, at -224–225 (N. DeGiorgio instructing J. Burton to ensure agents "remove any pixilated, or blurry photos" from listings and J. Burton instructing BPOs to "make sure all of the pictures are high quality")) |
| 44.    CREXi gets "creative" in deciding which photos to display. | • Malinee Decl. Ex. 175 (Dep. Ex. 1586, CREXI-CS-00731924, at 5:55–7:00 (explaining that agents should "be creative" in deciding which images to display)) <br> • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Services Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 101:23–103:8 <br> ; *id.* at 480:19–25 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████████████ |
| 45.    CREXi decides the order in which to display photos. | • Malinee Decl. Ex. 49 (Dep. Ex. 52, CREXI-CS-00513832, at -832–833, -838 ████████████████████████ |
| | • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 69:22–70:19 (testifying that CREXi would "change the order of photos in, like, the gallery view.  So like which photo they want to be shown first, that would be editing a photo for them")) |
| | • Malinee Decl. Ex. 13 (J. Aceves Dep. Tr. (Mar. 7, 2024), at 256:20–21 (broker testifying that he would "routinely come [to crexi.com] and find that . . . the [listing] photos were in a weird order")) |
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Services Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 175:11–24 ████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | |
| 46.    CREXi used manual screenshotting and snipping tools to extract images chosen by CREXi from listings. | • Malinee Decl. Ex. 46 (Dep. Ex. 49, CREXI-CS-00717895, at -895 ("Understanding (at times) this [CoStar, LoopNet, Showcase, CityFeet] is the only place you can find some of these listings, the process to submit to JIRA goes as follows . . . Photographs (YOU MUST TAKE A SCREENSHOT OF THE PHOTOS . . . TO ENSURE THAT THE WATERMARK LOGO IS REMOVED)")) <br>• Malinee Decl. Ex. 244 (Dep. Ex. 471, CREXI-CS-00522454, at 454) ("DO NOT ADD WATERMARKED PICTURES, PLEASE CROP")) <br>• Malinee Decl. Ex. 59 (Dep. Ex. 92, CREXI-CS-00717670, at -670 (C. Vien |

65

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | responds "Got it!" to email from N. DeGiorgio instructing CREXi employees on "the process to submit" information from CoStar, LoopNet, Showcase and CityFeet)) • Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 129:2–133:13 (testifying that he passed the instruction from N. DeGiorgio to "TAKE A SCREENSHOT OF THE PHOTOS… TO ENSURE THAT THE WATERMARK LOGO IS REMOVED" to the CREXi listing team and expected that team to crop out the CoStar logo)) • Malinee Decl. Ex. 47 (Dep. Ex. 50, CREXI-CS-00522572, at -572–573 (R. Smith emails A. Maddox and J. Burton: "I mean the[] [BPO] could potentially screen shot and not include the LN watermark. . . . @James Burton cool with that??," to which J. Burton replied: "Yessir!")) • Malinee Decl. Ex. 112 (Dep. Ex. 636, CREXI-CS-00522575 (CREXi directing agents to "[p]lease make sure you ALWAYS use a CREXi flyer and please make sure that you don't use any images with a watermark, you can crop over those. Anything from our competitors it is |

| UNCONTROVERTED FACT | EVIDENCE |
| --- | --- |
|  | extremely important we use a CREXi flyer!")) <br> • Malinee Decl. Ex. 176  (Dep. Ex. 1587, MB002720, at -724 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> • Malinee Decl. Ex. 234 (CREXI-CS-10100795, at -795 ("Make sure to crop any loopnet watermarks from bottom right")) <br> • Malinee Decl. Ex. 197 (CREXI-CS-00349288, at -292 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 127:11–18 ("Q.  Why would BDRs be instructed to take a screenshot of photos?  A.  Brokers were sending them over photographs.  Our practice was not to put competitor logos on our website.  Q.  So you would take a screenshot of the photo that they sent over?  A. Correct.")); *id.* at 135:12–136:2 (same) <br> • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 168:22–169:3 ▮▮▮▮▮▮▮▮▮ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | <br><br><br><br><br>• Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 72:4-6 ("Q.  So would you crop the image so it fit in the specifications you were trying to fit it in? A.  Sure.")) |
| 47.    CREXi added listings to its website even when brokers did not request this. | • Malinee Decl. Ex. 32 (Dep. Ex. 30, CREXI-CS-00498447, at -450 (email from broker stating: "I heard from a buyer that Parmer Crossing is on your website. We do not have permission from the seller to advertise the property on the Internet only on our website. It needs to come down ASAP. Please remove all of our listings for now. We would like to post the information on your website rather than have one of your staffers grab the information from our website."))<br>• Malinee Decl. Ex. 33 (Dep. Ex. 31, CREXI-CS-10033622 (email from broker stating: "For some reason CREXI has uploaded listings from our website without permission? These are open listings or other broker's listings and must be removed |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | immediately.”)) |
|  | • Malinee Decl. Ex. 30 (Z. Zlotnick Dep. Tr. (Oct. 3, 2023), at 168:3–172:12 ▓▓▓▓▓▓▓ ); *id.* at 172:13–173:5 ▓▓▓▓▓▓▓ |
|  | • Malinee Decl. Ex. 34 (Dep. Ex. 32, CREXI-CS-00543928, at -928 (CREXi's Vice President of Operations L. Dees instructing an employee to add listings from LoopNet to CREXi "[a]ll day"—even though the listing broker did not authorize CREXi to do so)) |
|  | • Malinee Decl. Ex. 44 (Dep. Ex. 47, CREXI-CS-00522481, at -481 (broker: "You need to call me ASAP about my listing at 4221 James P. Cole Blvd., Flint, MI. I have not provided you that listing information nor have I created any kind of marketing account with you …. Get me and all my listing off your system NOW!")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 45 (Dep. Ex. 48, CREXI-CS-00629356, at -357 <br><br><br><br><br><br><br> • Malinee Decl. Ex. 80 (Dep. Ex. 230, CREXI-CS-00639356, at -358 (broker complaining that "we are having a big issue with CREXi.  Our listings were made live from our website without our permission. … Our marketing manager asked for a demo not to make all our listings live.")) <br> • Malinee Decl. Ex. 132 (Dep. Ex. 825, CREXI-CS-00532580, at -580 (email from broker to "Team CREXi" stating that "[a]t some point, I recall being called by someone at CREXI and asked if you could advertise a certain investment sale listing of mine. I remember giving permission on that one listing and CREXI did the input. It appears they used that permission as a blanket permission to upload other properties off of CoStar or Loopnet. I don't recall specifically giving that permission, but I generally don't really have an issue |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | with expanding my marketing. However, I expect some minimal degree of care when my license and reputation are at risk.")) |

• Malinee Decl. Ex. 185 (CoStar00084746, at -746 (declaration of broker A. Clenney, President and Owner of Brentwood Properties, stating that in or around May 2020, "Brentwood Properties' listings had been posted on CREXi.com," even though Clenney did not "give CREXi permission to copy any content from LoopNet in order to post my listings on CREXi.com" and did not "sen[d] [CREXi] any data or photographs regarding these listings"))

• Malinee Decl. Ex. 186 (CoStar00084748, at -748–749 (declaration of broker P. Dawit, Marketing and Business Development Manager at Quasar Property Management and Real Estate, stating that in or around April 2020, CREXi "posted [Quasar's] listing . . . on its website," even though Quasar did not "provide[] CREXi with any information or marketing material for the property," did not "upload CoStar photographs or other content from LoopNet to the CREXi website, and at no point . . . g[a]ve CREXi permission to copy content

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | from LoopNet or any other CoStar site")) |
| 48.   CREXi alleges that ███████ CoStar images (excluding TAC Images, *see* n.1) were uploaded to its site by CREXi's employees or agents "at the direction of" a user.[1] | • Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (Nos. 12 and 24), Second Am. App'x D (Aug. 14, 2024), at Column E ███████ ███████████████████████████████ |
| 49.   For those ███████ CoStar images, CoStar asked CREXi to provide information in discovery concerning the "direction" it purportedly received. | • Malinee Decl. Ex. 250 (CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24) (Aug. 14, 2024), at 45 (No. 24) (seeking, "for each image allegedly 'uploaded at direction of user'" the "name of the 'user,' the direction given by the user, and the means by which the direction was given to the uploader")) |
| 50.   For ██████ of those ██████ CoStar images, CREXi did not produce *any* responsive information. | • Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x D (Aug. 14, 2024), at Column E ████████ █████████████████████████ ████████) <br><br> • Malinee Decl. Ex. 246 (CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (No. |

---

[1] Until the eve of filing, CREXi had not produced discovery on the 1,392 images that the Court granted CoStar leave to pursue via its Third Amended Complaint (the "TAC Images"), *see* Dkt. 830.  Malinee Decl. ¶ 7.  After business hours on August 19, 2024, CREXi produced a set of data regarding the TAC Images, and CoStar did not have sufficient time to analyze it before filing this Motion. *Id.*

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | 24), App'x E (Sept. 15, 2023) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> • Malinee Decl. Ex. 252 (CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12, and 24), Second Am. App'x F (Aug. 14, 2024) (specifying documents pursuant to Rule 33(d) that purport to reflect responsive information for 21,697 images)) |
| 51.   For the remaining images (excluding TAC Images), the evidence CREXi has offered does not reflect broker directions. | • Malinee Decl. Ex. 252 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12, and 24), Second Am. App'x F (Aug. 14, 2024), at Column B ("Relevant Bates") (reflecting supposed broker "direction")) <br> • Malinee Decl. Ex. 145 (Dep. Ex. 1050, CREXI-CS-00542395 (example of supposed broker "direction," consisting of internal CREXi email exchange of LoopNet links to brokers' listings)) <br> • Malinee Decl. Ex. 150 (Dep. Ex. 1085, CREXI-CS-10115517 (example of supposed broker "direction," consisting of a broker's question regarding deleting a listing that was "accidentally inputted")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 172 (Dep. Ex. 1570, CREXI-CS-10139377) (example of supposed broker "direction," consisting of an unrelated email notifying CREXi that broker "unsubscribed from Marketing Emails"))
• Malinee Decl. Ex. 238 (CREXI-CS-10159931 (example of supposed broker "direction," consisting of a broker's property brochure))
• Malinee Decl. Ex. 235 (CREXI-CS-10110629 (same))
• Malinee Decl. Ex. 237 (CREXI-CS-10131858 (same))
• Malinee Decl. Ex. 233 (CREXI-CS-10068524 (example of supposed broker "direction," consisting of an unrelated marketing email with the broker's property listing))
• Malinee Decl. Ex. 230 (CREXI-CS-10017038 ███████████████ ██████████████████ ██████████████████ ████████
• Malinee Decl. Ex. 230 (CREXI-CS-10017038 (same))
• Malinee Decl. Ex. 231, CREXI-CS-10039473 (example of supposed broker |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | "direction," consisting of an unrelated internal CREXi email regarding whether broker's email address was correct)) |
| 52.    Where CREXi was ordered to provide a narrative explanation regarding the direction it purportedly received, its explanations were vague and general. | • Order (Dkt. 692-1, at 7) (Jan. 8, 2024 Special Master Order directing CREXi to "provide[] a narrative response for a sample of 500 images")<br>• Malinee Decl. Ex. 246 (CREXi's Second Suppl. Resps. & Objs. to CoStar's Interrogs. (No. 24), App'x. E (Sept. 15, 2023) |
| **CREXi's Curation of Listings on CREXi.com** | |
| 53.    CREXi performs quality control review of photographs and associated listings uploaded to CREXi. | • Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 17:12–20 (explaining that "it was always [CREXi's] process to QC listings for quality control, for all purposes")); *id.* at 19:17–20:6 (explaining CREXi's "QC process," which included "basic listing data review" whereby the QC team would "fix" "simple" errors or "give [] |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | the listing back to brokers to do so when "something looked off") |
| | • Malinee Decl. Ex. 25 (N. DeGiorgio Dep. Tr. (Feb. 6, 2024), at 67:3-5 ("Currently, I believe there's a system in place that kind of quality checks the – the information that's inputted" by brokers)) |
| | • Malinee Decl. Ex. 131 (Dep. Ex. 823, CREXI-CS-00571705, at -708 ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| | • Malinee Decl. Ex. 135 (Dep. Ex. 927, CREXI-CS-00543719, at -719 (email from B. Barajas assigning broker-built deals to CREXi employees for review)) |
| | • Malinee Decl. Ex. 140 (Dep. Ex. 940, CREXI-CS-10011254, at -255 ("Deals ready to be pushed live after concerns above are QC'ed")) |
| | • Malinee Decl. Ex. 157 (Dep. Ex. 1214, CREXI-CS-00495601, at -602 (J. Zhang email to broker: "I noticed it's been a while since a member of our team has thoroughly examined your office's CREXi listings. I'd like for our quality assurance team to |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | complimentarily ensure your listings are up-to-date / add new listings."))<br>• Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 173:20–174:5 ⬛⬛⬛<br>⬛⬛⬛); *id.* at 175:3–8 ⬛⬛⬛ |
| 54.    CREXi selects high-quality images for display. | • Malinee Decl. Ex. 25  (N. DeGiorgio Dep. Tr. (Feb. 6, 2024), at 224:6–13 ("Q. Would you use your judgment to decide whether [an] image was pixilated, blurry, or sideways? [Objection] A. When I was the one uploading listings on behalf of brokers, yes, I would make that distinction.")); *id.* at 100:24–102:24 (recalling broker complaints about "pixilated or just unclear photos" and asking brokers to provide "updated better photos")); *id.* at 107:21–108:6 ("Q.  So does |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | that mean that there was a time when you took down images [be]cause they were pixilated, not at a broker's request? [Objection]  A.  Yes.")<br>• Malinee Decl. Ex. 224 (CREXI-CS-00731919, at 12:13–20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ )<br>• Malinee Decl. Ex. 226 (CREXI-CS-00731925, at 9:12–10:05 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>• Malinee Decl. Ex. 113 (Dep. Ex. 638, CREXI-CS-00640854, at -973 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>• Malinee Decl. Ex. 117 (Dep. Ex. 647, CREXI-CS-10002403, at 403 (directing agent to replace "photos [that] are bad quality"))<br>• Malinee Decl. 118 (Dep. Ex. 648, CREXI-CS-00414224, at -224–225 (N. DeGiorgio instructing J. Burton to ensure |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | agents "remove any pixilated, or blurry photos" from listings and J. Burton instructing BPOs to "make sure all of the pictures are high quality")) • Malinee Decl. 119 (Dep. Ex. 649, CREXI-CS-10035665, at -665 (informing broker that "[i]f we upload what you provided, it won't be the best quality photos . . . .  I'd suggest you send us better photos[.]")) • Malinee Decl. Ex. 141 (Dep. Ex. 941, CREXI-CS-00377862, at -862 ▮▮▮ • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 128:18–129:16 (▮▮▮); *id.* at 242:7–13 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 176 (Dep. Ex. 1587, MB002720, at -727 ███████ |
| 55.    CREXi rejects blurred or pixelated images. | • Malinee Decl. Ex. 25  (N. DeGiorgio Dep. Tr. (Feb. 6, 2024), at 223:33–224:13 (agreeing it was important to use the best quality photos on listings including "them not being pixilated, um, blurry, sideways, upside down. I mean really anything besides them looking crisp")); *id.* at 248:17–249:7 ("Q.  Were there any circumstances when you would take down an image other than when it was requested from a client?  A. Possibly, yeah.  Q.  What circumstances? A.  Very early on, when the website was very like, new and fresh, we wanted every – every listing – 'cause there weren't a ton – to look very good.  So, for an example, if a blurry, upside down, pixilated photo was added, I might have went in and removed it. Q.  Oh, and you say 'might have,' do you recall doing that?  A.  I mean, this is long ago, it's hard for me – I mean – it's in the – right here on the sheet.  So, if it's on the |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | sheet, then yes."); *id.* at 100:24–102:24 (recalling broker complaints about "pixilated or just unclear photos" and asking brokers to provide "updated better photos")<br><br>• Malinee Decl. Ex. 134 (Dep. Ex. 926, CREXI-CS-00570833, at -833 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>• Malinee Decl. 118 (Dep. Ex. 648, CREXI-CS-00414224, at -224–225 (N. DeGiorgio instructing J. Burton to ensure agents "remove any pixilated, or blurry photos" from listings and J. Burton instructing BPOs to "make sure all of the pictures are high quality")) |
| 56.    CREXi checks for competitors' materials on its site. | • Malinee Decl. Ex. 25  (N. DeGiorgio Dep. Tr. (Feb. 6, 2024), at 77:9-23 (agreeing that part of the QC process for broker-uploaded listings included making sure the flyer uploaded is "not a CoStar or LoopNet flyer"))<br><br>• Malinee Decl. 134 (Dep. Ex. 926, CREXI-CS-00570833, at -833 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | <br><br><br>• Malinee Decl. Ex. 207 (CREXI-CS-00554289, at -289 (email from B. Barajas to P. Cohen, N. DeGiorgio, and L. Dees stating "[L]oop[N]et verbiage" found on broker-built CREXi listing after "[l]ooking at this [broker's] package")) |
| 57.   CREXi checks to ensure listings are appropriate for its site (e.g., are for commercial properties and are for real deals) and rejects listings, and their images, when they do not meet CREXi's criteria. | • Malinee Decl. Ex. 46 (Dep. Ex. 49, CREXI-CS-00717895, at -895 (N. DeGiorgio addressing "CREXi BDR" team, stating "[w]e're having issues again with . . . adding residential listings")) <br>• Malinee Decl. Ex. 148 (Dep. Ex. 1074, CREXI-CS-00571793, at -793 (email from B. Barajas to E. Benz and E. Randel regarding "fake deals on the platform" Barajas noticed after reviewing the "property name on Admin . . . and then looking through [the] brokers and . . . job description")) |
| 58.   CREXi decides how listings (and associated images) will be sorted and displayed on its website, including by boosting listings from | • Malinee Decl. Ex. 104 (Dep. Ex. 612, CREXI-CS-00575852, at -855 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| its paying "Pro" subscribers, which appear higher in search results. | • Malinee Decl. Ex. 159 (Dep. Ex. 1219, CREXI-CS-00575746, at -761 ██████ |
| 59. ████████ | • Malinee Decl. Ex. 73 (Dep. Ex. 186, CREXI-CS-00724973, at -973 (depicting search score))<br>• Malinee Decl. Ex. 159 (Dep. Ex. 1219, CREXI-CS-00575746, at -762 ████ <br><br>• Malinee Decl. Ex. 12 (E. Reshetnikov Dep. Tr. (Nov. 29, 2024), at 77:23–78:8 |
| **CREXi's Use of Agents** | |
| 60.    Since its inception, CREXi has used offshore business process | • CREXi's Answer to Second Am. Compl. ¶¶ 14, 65, 75–79 (Dkt. 438, at 4, 16–20) (admitting to using BPOs) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| outsourcing firms ("BPOs") and other agents. | • Malinee Decl. Ex. 247 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. Nos. 1, 3, 5-7, 9, 12, 14, 17 and 24 (Sept. 29, 2023), at 26–38 (identifying CREXi's relationships with several BPOs and agents)) <br> • Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at 167:5–17 (explaining CREXi hired BPOs because "we were growing the number of brokers that we were servicing and needed to increase head count")) <br> • Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 27, 2024), at 114:14–18 ▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 61.    CREXi describes the BPOs as its "internal teams." | • Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 64:3–25 ("Q. What do you mean by internal teams? A. Everyone that's involved with adding listings for the brokers.  Updating.  Q. Does that include offshore?  A. Yes.")) <br> • Malinee Decl. Ex. 174 (Dep. Ex. 1585, CREXI-CS-00731937, at 9:35–10:10 ▮▮▮▮▮▮▮▮▮▮▮▮▮ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████████████ <br><br> • Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024), at 167:5–13 ("Q. Why did CREXi decide to engage vendors offshore rather than just hire more employees in the United States?  A.  We were – we were growing the number of brokers that we were servicing and needed to increase head count.  And so we could do that onshore or offshore.")) |
| 62.    CREXi described Ritesh Jaiswal, co-founder of BPOs 247 Web Support and Yansh, as CREXi's ████████ ████████" | • Malinee Decl. Ex. 223 (CREXI-CS-00731919 ████████████ |
| 63.    CREXi provided Mr. Jaiswal with a CREXi email address. | • Malinee Decl. Ex. 205 (CREXI-CS-00520958, at -958 (J. Burton email to ritesh@crexi.com: "PLEASE ADD ASAP AND PLEASE CREATE CREXI FLYERS, DO NOT ADD WATERMARKED PICTURES, PLEASE CROP")) <br> • Malinee Decl. Ex. 211 (CREXI-CS-00575632, at -632 ████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████ |
| 64.    CREXi grants the BPOs authority to (1) create and update listings on CREXi.com; (2) perform quality control for CREXi, and (3) make broker-provided material available on CREXi.com pursuant to "CREXi's specifications." | • Malinee Decl. Ex. 247 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. (Nos. 1, 3, 5–7, 9, 12, 14, 17, and 24) (Sept. 29, 2023), at 27 (describing services BPOs performed, including "ma[king] broker-provided information accessible on CREXi, based on CREXi's specifications," "creating or updating CREXi listings," and "perform[ing] quality control work for CREXi")) <br>• Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 35:9–21 (testifying that the BPO Neptune "creates and updates broker listings on CREXi" and makes information available on CREXi "[f]ollowing CREXi specifications")); *id.* at 64:8–21 (testifying that BPOs' job was "to upload listings that we receive from the brokers on a day-to-day basis"); *id.* at 140:7–9 ("Q.  And you instructed CREXi's offshore teams not to include watermarks as |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | well? A. That was our practice") |
| | • Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 186:25–187:7 (agreeing that "offshore" would "take these listings from LoopNet and they would use the information and the images from the LoopNet listings to create listings on CREXi.com")) |
| | • Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 27, 2024), at 114:14–115:2 (███████████████████████████████████████████████████████████████████) |
| | • Malinee Decl. Ex. 15 (J. Drapeau Dep. Tr. (Jan. 17, 2024), at 23:5–16 (testifying that brokers would "send me their properties, their photos, PDFs, links to their websites, and various different amount of listing platforms where they have all their listings. And I was responsible for relaying that information to our listings team to then create accounts and build out their properties and their photos for them")) |
| | • Malinee Decl. Ex. 37 (Dep. Ex. 36, CREXI-CS-00444078, at -078–079 (R. Smith emailing BPO Neptune, stating: "Most tasks will require efforts such as |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | removing users from listings, editing photos, updating listings in mass quantities, etc.  I will be available to offer training/webinar to the team as needed."))<br><br>• Malinee Decl. Ex. 42 (Dep. Ex. 42, CREXI-CS-00624559, at -559–560, -605 (R. Smith forwarding listing from broker with CoStar photo to upload, stating "I've tried submitting this twice to the portal, can you just have Ritesh & the boyzzz crank these bitches out the ballpark.  Ya know what I'm sayin??  Thanks brotato chip."))<br><br>• Malinee Decl. Ex. 49 (Dep. Ex. 52, CREXI-CS-00513832, at -833, -868 ████████████████████████████ |
| 65.    CREXi supervises the BPOs' work. | Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 14:13–22 (testifying to interacting with and managing BPOs)); *id.* at 15:4–20 ("Q.  Okay.  And what sort of processes did you discuss with the offshore team?  [Objection] A.  A lot of different ones.  Essentially processes to make their team more efficient.  Q. Like?  A. Changing |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | the way that listings get submitted to the platform and what services we use to provide our clients the ability to add those listings."); *id.* at 46:11–17 ("Q. And managing the offshore team operations, that encompassed the processes by which the offshore team would build property listings on crexi.com? [Objection] A. Yes. I managed the process in which offshore vendors would work with us. Add listings, data, exactly."); *id.* at 59:25–60:3 (testifying that he trained offshore on "how to use [CREXi's] admin system"); *id.* at 73:2–74:5 (testifying that "offshore" would "cross-reference" broker's listings "as instructed"); *id.* at 76:8–78:21 (agreeing that "offshore teams were provided with CREXi credentials for various systems," including Zendesk, Salesforce, and Slack, and that at least one BPO had its own CREXi email account); *id.* at 96:7–10 (J. Burton expected the offshore team "to listen to me and follow my instruction")<br>• Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 43:7–15 ("Q. CREXi provided -- or performed quality control, would you say, over Arcgate's work? |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | [Objection]  A.  Yes.")); *id.* at 32:1–17 ("Q. All right. In your role at CREXi, one of your responsibilities was to communicate with business processing organizations; is that right?  A. What do you mean by that?  Q.  Offshore agents.  A.  Yeah, we have an offshore team.  Q.  And you communicate with them?  A. Yeah, my team is offshore.  Q.  And one of those organizations you communicate with is SOPHI?  A.  Yes. . . . Q.  And 247 Web Support?  A.  From time to time.  Q.  And Neptune Business Solutions?  A. From time to time."))<br>• Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 42:25–43:15 (testifying that "offshore" refers to the CREXi listings team in India); *id.* at 112:12–113:9 (explaining he would download listing information from LoopNet and send it by email to the listings team for that team to "build-out" the listing on CREXi); *id.* at 182:15–23 (testifying it was "a frequent thing" to instruct the offshore listing team to crop out the LoopNet watermark from photos to upload to CREXi listings); *id.* at 192:17–25 ("Q. Did you ever notice images that were blurry or low resolution and make |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | a decision to take them down?  [Objection] A. I – so, yeah, I think with the offshore team, if – if I had personally, like, looked and seen that they were, I could maybe bring something up with them.”) • Malinee Decl. Ex. 247 (CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (Nos. 1, 3, 5–7, 9, 12, 14, 17, 24) (Sept. 29, 2023), at 27 (“CREXi also performs quality control over the work that Mobius provides.”)); *id.* at 28–29, 31–33 (same for 247 Digitize LLC, Yansh Technologies, 247 Web Support, Neptune Business Solutions Private Limited, and Arcgate) • Malinee Decl. Ex. 36 (Dep. Ex. 34, CREXI-CS-10012388 ██████████ • Malinee Decl. Ex. 63 (Dep. Ex. 100, CREXI-CS-00666010 (CREXi employee C. Vien providing instructions to offshore listings team to “add the following listings from the Dropbox file below. Exclude/cropout any LoopNet watermarks found in photos… Do not add the print screen PDF's to crexi.”)) • Malinee Decl. Ex. 24 (Mobius365 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 33:16-34:11, 36:25–38:23; 39:3–41:4; 43:22–44:13; 46:5–7; 49:19–22; 391:9–393:8; 449:12–21 ███████████████████████████████████████████████████████████ |
| 66.    CREXi's contracts with its BPOs require the BPOs to "█████████████████████ in the performance of their services and provide BPOs will use CREXi tools and training materials. | • Malinee Decl. Ex. 195 (CREXI-CS-00006679, at -679 ████████████████████████████████) <br> • Malinee Decl. Ex. 194 (CREXI-CS-00006662, at -662 ████████████) <br> • Malinee Decl. Ex. 196 (CREXI-CS-00006692, at -694 (████████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ███████████████████████ |
| | • Malinee Decl. Ex. 193 (CREXI-CS-00006649, at -650 ██████████ |
| | • Malinee Decl. Ex. 198 (CREXI-CS-00349325, at -330–332 ██████ |
| 67. CREXi issues BPOs instructions on how to create listings. | • Malinee. Decl. Ex. 243 (CREXi's Suppl. Resp. & Objs. to CoStar's First Set of Interrogs. (Nos. 1–23) (Dec. 23, 2021) (Nos. 4, 11), at 43 ██████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | • Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 64:3–12 (testifying to "creat[ing] instruction documents" for "offshore"); *id.* at 59:25–60:3 (J. Burton testifying that he trained offshore "how to use [CREXi's] admin system")) |
|  | • Malinee Decl. Ex. 59 (Dep. Ex. 92, CREXI-CS-00717670, at -670 (C. Vien responds "Got it!" to email from N. DeGiorgio instructing CREXi employees on "the process to submit" information from CoStar, LoopNet, Showcase and Cityfeet)) |
|  | • Malinee Decl. Ex. 107 (Dep. Ex. 627, CREXI-CS-00577465, at -473–481 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) |
|  | • Malinee Decl. Ex. 108 (Dep. Ex. 628, CREXI-CS-10019461, at -467–472 (step-by-step instructions for obtaining and building listings and broker information for specific brokerages)) |
|  | • Malinee Decl. Ex. 109 (Dep. Ex. 629, CREXI-CS-00434419, at -419 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) |
|  | • Malinee Decl. Ex. 114 (Dep. Ex. 639, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CREXI-CS-00606989, at -990 (reflecting discussion between J. Burton and BPO Mobius regarding "best practices" for handling images))<br>• Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 162:22–164:14 (describing "assessment questions" BPO Mobius sent J. Burton after a training session))<br>• Malinee Decl. Ex. 42 (Dep. Ex. 42, CREXI-CS-00624559, at -559 (R. Smith directing J. Burton: "[C]an you just have Ritesh & the boyzzz crank these bitches out the ballpark. Ya know what I'm sayin?? Thanks brotato chip."))<br>• Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 64:15–24, ("Q. [W]hat did you mean by 'crank these bitches out of the ballpark'? A. To upload the fliers sent to myself provided by the broker. Q. How did they know what that meant? A. That was their job, to upload listings that we receive from the brokers on a day-to-day basis. Q. And you wanted these fliers turned into listings on CREXi's website? A. Yeah, me and the broker, correct."))<br>• Malinee Decl. Ex. 24 (Mobius365 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 33:16-34:11, 36:25–38:23; 39:3–41:4; 43:22–44:13; 46:5–7; 49:19–22; 391:9–393:8; 449:12–21 ███████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ *id.* at 477:20–23 (███████████ ███████████████████████████████ ███████████████████████████████ • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 169:5–170:25 ████████████ ███████████████████████████████ ███████████████████████████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ██████████████████████ |
| | • Malinee Decl. Ex. 113 (Dep. Ex. 638, CREXI-CS-00640854, at -871–75 ████ |
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 198:13–203:22 (████ |
| | • Malinee Decl. Ex. 177 (Dep. Ex. 1593, MB030102, MB030102-0001–0001.00022 ████ |
| | Malinee Decl. Ex. 176 (Dep. Ex. 1587, MB002720, -722–730 ████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ■■■■■■■■■■■■■ |
| 68.    CREXi issues instructions to BPOs on how to crop images. | • Malinee Decl. Ex. 199 (CREXI-CS-00409703, at -703 (CREXi providing instructions to offshore to "PLEASE ADD [listings] ASAP AND PLEASE CREATE CREXI FLYERS, DO NOT ADD WATERMARKED PICTURES, PLEASE CROP")) <br> • Malinee Decl. Ex. 64 (Dep. Ex. 109, CREXI-CS-00666107 (after instruction from N. DeGiorgio, C. Vien instructing offshore team to "cropout any LoopNet watermarks found in photos" and not to upload any "Print Screens" to listings but use them "as reference points for adding information")) <br> • Malinee Decl. Ex. 65 (Dep. Ex. 110, CREXI-CS-00666108 (same)) <br> • Malinee Decl. Ex. 66 (Dep. Ex. 111, CREXI-CS-00666109 (same)) <br> • Malinee Decl. Ex. 67 (Dep. Ex. 112, CREXI-CS-00666110 (same)) <br> • Malinee Decl. Ex. 63 (Dep. Ex. 100, CREXI-CS-00666010 (two months after instruction from N. DeGiorgio, C. Vien instructing offshore team to create listing |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | using "screenshots of the loopnet listings" and to "cropout any LoopNet watermarks found in photos")) |
| | • Malinee Decl. Ex. 68 (Dep. Ex. 113, CREXI-CS-00666009 (same)) |
| | • Malinee Decl. Ex. 69 (Dep. Ex. 114, CREXI-CS-00666011 (same)) |
| | • Malinee Decl. Ex. 70 (Dep. Ex. 115, CREXI-CS-00666046 (same)) |
| | • Malinee Decl. Ex. 71 (Dep. Ex. 116, CREXI-CS-00666047 (same)) |
| | • Malinee Decl. Ex. 72 (Dep. Ex. 117, CREXI-CS-00666048 (same)) |
| | • Malinee Decl. Ex. 110 (Dep. Ex. 631, CREXI-CS-00525714, at -714 (J. Burton stating to a BPO: "Some of the photos for property ID: 261172 need to be Cropped. Can you check the photos to make sure that they are cropped correctly?  They have the watermark in the bottom right hand corner of the pictures.  Going forward this CANNOT happen.")) |
| | • Malinee Decl. Ex. 174 (Dep. Ex. 1585, CREXI-CS-00731937, at 20:20–20:55 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████████████████ ████████████████████████████ <br>• Malinee Decl. 149 (Dep. Ex. 1079, CREXI-CS-00726881, Slack message from A. Maddox to R. Jaiswal: "Hi ritesh… can I have this listing added and can we use the photos but crop out the LoopNet watermarked logo at the bottom right?")) <br>• Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 95:16–96:9 ████████████████ ████████████████████████████ ████████████████████████████); *id.* at 117:6-20 (similar) <br>• Malinee Decl. Ex. 178 (Dep. Ex. 1598, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | MB000768, at -770 ███████ |
| 69. ███████ | • Malinee Decl. Ex. 178 (Dep. Ex. 1598, MB000768, at -771 ███████ |
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 276:24–280:3 ███████ |
| **CREXi's Use of CoStar Photos From LoopNet** | |
| 70.   CREXi's former Senior Vice President of Revenue admitted that CREXi's business strategy "revolves around taking listings from LoopNet," an "approach" that had been "use[d] very effectively." | • Malinee Decl. Ex. 78 (Dep. Ex. 219, CREXI-CS-00561654, at -654 (D. Shankman: "The issue I see with the approach below, and is in line with our prior discussions, is it revolves around taking listings from LoopNet.  This approach will get us volume (Steve has used very |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | effectively), but for the most part these listings are tired and have been obtained on the second hand market.")) <br> • Malinee Decl. Ex. 86 (Dep. Ex. 399, CREXI-CS-00570772, at -774 <br><br><br><br> • Malinee Decl. Ex. 158 (Dep. Ex. 1215, CREXI-CS-00568782, at -783 <br><br><br><br><br><br><br> |
| 71.    Before CoStar's lawsuit, it was the practice at CREXi to copy listings from LoopNet links and LoopNet PDF flyers and brochures, crop out the watermark from listing photos, and build the listing on CREXi. | • Malinee Decl. Ex. 56 (Dep. Ex. 77, VIEN00000023, at -023–024 (<br><br><br> • Malinee Decl. Ex. 57 (Dep. Ex. 79, VIEN00000003, at -003–004 (same)) <br> • Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 110:8–17 (discussing Dep. Ex. 77: "Q. But that – but that was |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | something that you did from time to time for work purposes at CREXi, right, was download PDF fliers from LoopNet?  A.  Yes.  Q. Okay.  And you did that in order to put the listings up on the CREXi.com, right?  A. Yeah.  The broker had, you know, agreed to do so, yeah.")); *id.* at 114:18–24 (discussing Dep. Ex. 79: "Q.  And it wouldn't surprise you because it reflects the practice at CREXi to copy the listing from LoopNet, crop out the watermark, and build the listing on CREXi -- CREXi.com, right?  [Objection] A.  I mean, yeah, it had been done."); *id.* at 154:13–17 ("Q.  And so CREXi's practice was to look at these other marketplaces and then mirror the listing, meaning copy the contents of the listing from those sites and upload it to CREXi.com?  A.  Yeah."); *id.* at 186:25–187:7 ("Q. And your expectation when you sent this to the CREXi offshore team was that they would take these listings from LoopNet and they would use the information and the images from the LoopNet listings to create listings on CREXi.com, right?  [Objection] A.  I – I believe so.") |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 90 (Dep. Ex. 581, CREXI-CS-10070714, at -714, -717–722 (instructing CREXi offshore agents to build out broker's listing using attached LoopNet printouts))<br><br>• Malinee Decl. Ex. 91 (Dep. Ex. 583, CREXI-CS-10143091, at -091–157 (same))<br><br>• Malinee Decl. Ex. 92 (Dep. Ex. 584, CREXI-CS-10071004, at -004, -006–013 (same))<br><br>• Malinee Decl. Ex. 93 (Dep. Ex. 585, CREXI-CS-10071744, at 744–745 (same))<br><br>• Malinee Decl. Ex. 94 (Dep. Ex. 586, CREXI-CS-10070751, at -751, -753 (same))<br><br>• Malinee Decl. Ex. 95 (Dep. Ex. 587, CREXI-CS-10070806, at -806–807 (same))<br><br>• Malinee Decl. Ex. 96 (Dep. Ex. 588, CREXI-CS-10103700, at 700–701 (same))<br><br>• Malinee Decl. Ex. 97 (Dep. Ex. 589, CREXI-CS-10070838, at -838–839 (same))<br><br>• Malinee Decl. Ex. 98 (Dep. Ex. 590, CREXI-CS-00573230, at -230–231 (same))<br><br>• Malinee Decl. Ex. 99 (Dep. Ex. 592, CREXI-CS-00573200, at - 200–201 (same))<br><br>• Malinee Decl. Ex. 138 (Dep. Ex. 937, CREXI-CS-10021696, at -696, -706, (N. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | DeGiorgio directing listings to be built using flyers with CoStar images)) |
| | • Malinee Decl. Ex. 25 (N. DeGiorgio Dep. Tr. (Feb. 6, 2024), at 203:6–205:7 (testifying that he was "[n]ot necessarily" surprised that the image at -706 in Dep. Ex. 937 appeared on CREXi's website)) |
| | • Malinee Decl. Ex. 139 (Dep. Ex. 938, CREXI-CS-10034381 (N. DeGiorgio directing R. Jaiswal to build out a lease page and CREXi flyer and including a link to a LoopNet listing)) |
| | • Malinee Decl. Ex. 144 (Dep. Ex. 1049, CREXI-CS-00537628 (L. Dees forwarding to T. Benz LoopNet links of a broker's property after broker sent offering memoranda)) |
| | • Malinee Decl. Ex. 154 (Dep. Ex. 1206, CREXI-CS-00600819 (S. Narish emailing link to http://www.costar.com/ costarconnect/MasterPage/Main.asox?SiteId =25393&CheckSum=696216474#Listings to D. Shankman with the subject "Get them all BABYYYY")) |
| | • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 72:7–25 (testifying that CREXi would not include "competitor |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | branding" on its website, including through "[c]ropping")) |
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 193:2–15 |

*id.* at 189:10–18 (

*id.* at 263:17–264:10 (

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | |
| 72.    CREXi's written policy was to copy and crop CoStar photographs CREXi used on crexi.com. | • Malinee Decl. Ex. 46 (Dep. Ex. 49, CREXI-CS-00717895, at -895 ("Understanding (at times) this [CoStar, Loopnet, Showcase, Cityfeet] is the only place you can find some of these listings, the process to submit to JIRA goes as follows . . . Photographs (YOU MUST TAKE A SCREENSHOT OF THE PHOTOS . . . TO ENSURE THAT THE WATERMARK LOGO IS REMOVED)")) <br> • Malinee Decl. Ex. 142 (Dep. Ex. 943, CREXI-CS-00718289, at -289–290 ("If you are submitting L**pnet/Co* flyers to JIRA . . . As an extra precaution, I also request to 'PLEASE BE SURE TO REMOVE/CROP OUT ANY WATERMARKS ON ANY PHOTOGRAPHS.'")) <br> • Malinee Decl. Ex. 17 (L. Dees Dep. Tr. (Feb. 13, 2024), at 79:2–7 (confirming that a CREXi policy could be communicated by email); *id.* at 114:10–12 ("[W]hen brokers |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | could not provide the information any other way, we then went to -- to LoopNet."); *id.* at 127:14–25 ("Q. Prior to this lawsuit, what was CREXi's policy on cropping logos from images on its listings?  A.  Prior to the lawsuit, um, and I guess still today, CREXi's policy is to always—always upload at the broker's direction.  Um, prior to the lawsuit, um, there's an emphasis on not having third-party branding on the website.  And so there were times when, um, a third-party logo or watermark was cropped from images.  Q. And that includes the CoStar logo that we looked at earlier?  A.  It would include that logo."))<br><br>• Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at 175:12–176:8 ("Q.  Okay.  And then there's the exceptions to that policy, right?  There's sometimes when CREXi does not steer clear of LoopNet?  A.  I don't know.  I guess the exceptions would — would — would be within the policy.  The policy is to steer clear from LoopNet as much as possible.  Q.  Unless LoopNet is the only source of information for the particular listing, in which case, then the policy is to |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | get the information from LoopNet, right? A. Ah, our policy would've been to first ask brokers for their marketing document. Um, and if that's not available, then to — um, then to ask for a link to their website to go source their -- their own information. If that wasn't available, ask for that information anywhere else. If not, prior to the litigation, we would have used — we would've allowed a LoopNet flyer. And in the rarest of circumstances, we — where — where the information was available nowhere else and the broker wanted their information on CREXi, some people went to LoopNet.")) • Malinee Decl. Ex. 25 (N. DeGiorgio Dep. Tr. (Feb. 6, 2024), at 131:15–132:15 (confirming that CREXi policy permitted the access to LoopNet for listing information)); *id.* ("Q. And then what was the policy if they [brokers] didn't have any other information, if it was exclusively on LoopNet? A. Um, I don't know, like, the written policy, but to our knowledge, we were just doing what the broker asked us to do. . . . Q. And in that instance, CREXi policy permitted the access to LoopNet for |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | listing information? [Objection] A. Based off the broker's discretion. We were always trying to do what the broker asked of us or wanted us to do. So. . . Q. Is that a 'yes?' [Objection] A. Yes."); *id.* at 144:23–145:21 ("before the lawsuit," an image with a "CoStar logo on the bottom right" could not be uploaded to crexi.com "without being cropped out or something like that"); *id.* 182:2–9 ("Q. And so long [as] it was at the broker's discretion, is your understanding that CREXi policy permitted its employees to access LoopNet to build listing information? [Objection] A. Prior to the lawsuit, yes, that's correct."); *id.* at 229:14–21 ("Q. Um, and the direction to crop out CoStar's watermark from images before uploading them to crexi.com, did you understand that was CREXi's policy at the time in June 2020? [Objection] A. Um, this was, I suppose, yeah, part of the policy, yeah.")<br>• Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 115:5–15 ("Yeah, so like I said before, it's always our policy, it always has been since I started there, to decline the submission of any LoopNet |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CoStar information.  However, on rare occasion, and I did say this before, like you can see -- read in the email, he didn't have any fliers or listings on any other site.  So like on rare occasions when that would happen, we would add the fliers, the information from the fliers, as you can see, which I -- which I sent to DM.")); *id.* at 225:21–226:5 (similar); *id.* 32:14–18 ("On rare occasion, when, you know, at the direction of the broker, that broker would not have their data anywhere else, and they are trying to do business with us.  So on very rare occasion, we would use the broker's PDFs from LoopNet."); *id.* at 101:25–102:1 ("[I]t's always been our policy to crop out all watermarks."); *id.* at 102:23–24 ("It was again always part of our policy to crop out those watermarks."); *id.* at 107:1–109:9 (testifying that it used to be CREXi's policy to crop out CoStar's watermark); *id.* at 171:10–15 ("Yes, so our policy, when I first started, was if an image or whatever we received from the broker, if it had like their broker, brokerage logo or another company's logo, the CoStar logo, we would—all watermarks we would |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | remove.") |
|  | • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 72:21–73:10 (testifying that CREXi "didn't put competitor branding on our website" so R. Smith would "[a]djust[] [the image] to not showcase" competitor branding by "cropping it")); *id.* at 75:22–76:4 ("Q. And you said that it was your practice to crop out competitor logos, right? A. I mean, yeah. I wouldn't put a competitor logo on the website if I saw it. Q. And CoStar is a competitor, right? A. Yeah. Q. CoStar's watermark is a competitor logo? A. Sure.") |
|  | • Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 126:12–19 ("Q. So the instruction from CREXi management to you and the entire BDR team is, when you're copying from LoopNet and other competing sites, you must take a screenshot of the pictures to make sure the logo gets cropped out, right? [Objection] A. It looks like that, yeah.")); *id.* at 132:6–12 ("Q. So you were just following – your testimony is you were following instructions from management and passing those on to the listing team in terms of cropping the logo |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | out?  [Objection] A. Well, yeah, yeah."); *id.* at 140:3–19 ("Q. Well, you just received an instruction [by email] from Mr. DeGiorgio to crop out the watermarks.  It can't be that surprising [that photos appeared on a CREXi listing with the CoStar watermark cropped out], right?  [Objection] A.  I guess that aspect of it, sure, it would not be.  Q. Not surprising?  A. Yeah."); *id.* at 182:16–23 (Q.  And was it common for you to instruct the CREXi offshore listing team to crop out the LoopNet watermark? [Objection]  A.  I – I think if you're just saying to exclude them or crop would be a frequent thing in an e-mail of instruction, yeah.") |
| 73.    CREXi's management issued instructions to employees and BPOs to use LoopNet listings and CoStar images to create CREXi listings. | • Malinee Decl. Ex. 236 (CREXI-CS-10122393, at -394 (CREXi directing agent to "PLEASE ADD ASAP AND PLEASE CREATE CREXI FLYERS, DO NOT ADD WATERMARKED PICTURES, PLEASE CROP"))
• Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 119:17–128:2 (describing email instructions from the "go-to person" with a manager-like role, N. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | DeGiorgio, and with managers A. Kobovitch and J. Burton copied on the email, to take screenshots of LoopNet images to use on CREXi))
• Malinee Decl. Ex. 34 (Dep. Ex. 32, CREXI-CS-00543928, at -928 (CREXi's Vice President of Operations L. Dees instructing an employee to add listings from LoopNet to CREXi "[a]ll day"))
• Malinee Decl. Ex. 63 (Dep. Ex. 100, CREXI-CS-00666010 (C. Vien directing "CREXi Listings" listserv to "Please add the following listings" from "screenshots of the loopnet listings" and to "[e]xclude/cropout any LoopNet watermarks found in photos."))
• Malinee Decl. Ex. 111 (Dep. Ex. 633, CREXI-CS-00515239, at -239–240 (CREXi directing agents to use CoStar-watermarked and copyrighted images to build listings for a broker who "didn't have any flyers or listings on any other site [other than LoopNet]"))
• Malinee Decl. Ex. 112 (Dep. Ex. 636, CREXI-CS-00522575 (CREXi directing agents to "[p]lease make sure you ALWAYS use a CREXi flyer and please |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | make sure that you don't use any images with a watermark, you can crop over those. Anything from our competitors it is extremely important we use a CREXi flyer!"))<br><br>• Malinee Decl. Ex. 156 (Dep. Ex. 1212, CREXI-CS-00586404, at -404–406 (broker sending list of "people want Crexi accounts and want to include there listings on Crexi" to D. Shankman, attaching list of brokers with links to LoopNet profiles) & Dep. Ex. 1213, CREXI-CS-00603262, at -262–263 (D. Shankman forwarding list to "CREXi Client" list serv and instructing "Please upload the 56 listings for the brokers that are hyperlinked within the attached" with attachment containing LoopNet links))<br><br>• Malinee Decl. Ex. 146 (Dep. Ex. 1052, CREXI-CS-00543825 (L. Dees directing "CREXi Listings" to "build [broker listings] based on the [LoopNet] links below"))<br><br>• Malinee Decl. Ex. 168 (Dep. Ex. 1407, CREXI-CS-00522503 (CREXi directing Indian agent to "please create listings from the LoopNet PDF Printouts attached" and to "use the photos but make sure to crop out if there is LoopNet logo on them.")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 204 (CREXI-CS-00518202, at -202 (CREXi directing Indian agent to "buildout the attached," noting that "[s]ome of the photos have Co***r branding so please advise offshore to crop out.")) |
| 74.    CREXi instructed BPOs not to use flyers or photographs to build listings "if there is a watermark from our competitors like CoStar/LoopNet," and to crop out CoStar's watermark. | • Malinee Decl. Ex. 63 (Dep. Ex. 100, CREXI-CS-00666010 (C. Vien directing "CREXi Listings" listserv to "[p]lease add the following listings" from "screenshots of the loopnet listings" and to "[e]xclude/cropout any LoopNet watermarks found in photos.")) <br> • Malinee Decl. Ex. 111 (Dep. Ex. 633, CREXI-CS-00515239, at -239–240 (CREXi directing agents to use CoStar-watermarked and copyrighted images to build listings for a broker who "didn't have any flyers or listings on any other site [other than LoopNet]")) <br> • Malinee Decl. Ex. 112 (Dep. Ex. 636, CREXI-CS-00522575 (CREXi directing Indian agents to "[p]lease make sure you ALWAYS use a CREXi flyer and please make sure that you don't use any images with a watermark, you can crop over those. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Anything from our competitors it is extremely important we use a CREXi flyer!")) |
| | • Malinee Decl. Ex. 113 (Dep. Ex. 638, CREXI-CS-00640854, -875 |
| | • Malinee Decl. Ex. 177 (Dep. Ex. 1593, MB030102, at 102-0001.00005 |
| | • Malinee Decl. Ex. 236 (CREXI-CS-10122393, at -394 (CREXi directing Indian agent to "PLEASE ADD ASAP AND PLEASE CREATE CREXI FLYERS, DO |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | NOT ADD WATERMARKED PICTURES, PLEASE CROP")) |
| | • Malinee Decl. Ex. 168 (Dep. Ex. 1407, CREXI-CS-00522503 (CREXi directing Indian agent to "please create listings from the LoopNet PDF Printouts attached" and to "use the photos but make sure to crop out if there is LoopNet logo on them")) |
| | • Malinee Decl. Ex. 222 (CREXI-CS-00731914, at 15:35–45 ████████████████ |
| | • Malinee Decl. Ex. 204 (CREXI-CS-00518202, at -202 (CREXi directing Indian agent to "buildout the attached," noting that "[s]ome of the photos have Co***r branding so please advise offshore to crop out.")) |
| 75.    When BPOs failed to add CoStar images to crexi.com, CREXi employees made sure the images were added. | • Malinee Decl. Ex. 232 (CREXI-CS-10062845, at -845–846 (A. Maddox email noting that agent "didn't pull any of the photos from the LoopNet listings I sent them" and R. Smith responding "I mean they could potentially screen shot and not include the LN watermark.  I'd send to DM |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | if not done with proper instructions" and J. Burton responding, "Yessir!")) <br><br> • Malinee Decl. Ex. 217 (CREXI-CS-00665577, at -577–578 (CREXi emailing agent to "please also use the photos from the LoopNet Listings" and to "[m]ake sure to exclude the LoopNet Water mark at the bottom right when you screen shot them" *after* agent claimed new properties were "done.")) <br><br> • Malinee Decl. Ex. 179 (Dep. Ex. 1603, MB012199, -199–200 |
| 76.    CREXi knew brokers were uploading CoStar photos to CREXi's platform in 2016. | • Malinee Decl. Ex. 143 (Dep. Ex. 1046, CREXI-CS-00544204 (alerting L. Morris, B. Barajas, and L. Dees that a broker "dragged his photos str8 from loopnet and his flyer is a loopnet print screen flyer" and warning that "[t]his could be a serious issue going forward")) <br><br> • Malinee Decl. Ex. 17 (L. Dees Dep. Tr. (Feb. 13, 2024), at 87:7–90:23 (testifying |

119

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | that CREXi did not make any changes to its "broker build deal feature" despite knowing that brokers were uploading images with CoStar watermarks)) |
| 77.    CREXi understood that copying images from LoopNet infringed on CoStar's intellectual property rights. | • Malinee Decl. Ex. 142 (Dep. Ex. 943, CREXI-CS-00718289, at -289 ("Things like this [using LoopNet images on CREXi] puts us at risk for a potential legal issue[.]")) <br> • Malinee Decl. Ex. 173 (Dep. Ex. 1584, CREXI-CS-00731913, at 32:21–45 <br><br> • Malinee Decl. Ex. 222 (CREXI-CS-00731914, at 12:10–20 <br><br> • Malinee Decl. Ex. 31 (Dep. Ex. 17, CREXI-CS-00544934, at -934 <br><br> • Malinee Decl. Ex. 39 (Dep. Ex. 39, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CREXI-CS-00627271, at -271–272 (email from R. Smith to broker responding, "[w]e would need the flyers/brochures shared with us from you/team directly, for legal purposes" after broker stated, "[w]e are happy to have our listings on [y]our site as long as it is at no cost and you can handle the information using LoopNet or CoStar."))<br>• Malinee Decl. Ex. 40 (Dep. Ex. 40, CREXI-CS-00627134, at -134 ("We can't pull anything off LN due to legality reasons."))<br>• Malinee Decl. Ex. 46 (Dep. Ex. 49, CREXI-CS-00717895, at -895 ("Some websites that we CANNOT submit for any reason: CoStar[,] Loopnet[,] Showcase[,] Cityfeet[.]")<br>• Malinee Decl. Ex. 48 (Dep. Ex. 51, CREXI-CS-00629123, at -123 ("We aren't able to add any of their [CoStar] watermarked photos/documents for legal purposes."))<br>• Malinee Decl. Ex. 55 (Dep. Ex. 75, CREXI-CS-10119870, at -871 ("For copyright purposes, we are not allowed to pull from their site.")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 74 (Dep. Ex. 205, CREXI-CS-00555322 (email from P. Cohen to broker, explaining that CREXi does not "like to" pull listings from LoopNet "for legal reasons")) |
| | • Malinee Decl. Ex. 75 (Dep. Ex. 206, CREXI-CS-00543235, at -235 (email from P. Cohen to broker, explaining that CREXi does not "take" listings "off loopnet/costar for legal reasons" and that he knows that a couple of websites are in "legal disputes" with CoStar for "that")) |
| | • Malinee Decl. Ex. 79 (Dep. Ex. 223, CREXI-CS-00568799, at -799 (E. Randel, stating, with respect to copying from LoopNet: "Also want to look for any pitfalls that could get us in trouble. Doug – we discussed one . . .")) |
| | • Malinee Decl. Ex. 83 (Dep. Ex. 392, CREXI-CS-00570537, at -537 (E. Randel stating "[l]et's be careful (or not use) loopnet photo")) |
| | • Malinee Decl. Ex. 116 (Dep. Ex. 646, CREXI-CS-00726874 (Slack message from R. Jaiswal to J. Burton: "[W]hile adding images from flyers, we normally used to crop any company name/logo and take only |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | images. We have been doing this since start to avoid any copyright issue.")) |
| | • Resp't's Opp. to CoStar's Mot. to Compel at 2, *CoStar Grp. Inc. v. Restb.ai, LLC*, No. 2:22-mc-00228-CBM-AS (C.D. Cal. Nov. 2, 2022), Dkt. 23 ("CREXi utilizes Restb's services in order to identify photographs in the real estate listings it receives from brokers that might be copyright protected, so that those photographs can be removed from CREXi's website.")) |
| | • Malinee Decl. Ex. 133 (Dep. Ex. 826, CREXI-CS-00617912, at -912 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ |
| | • Malinee Decl. Ex. 136 (Dep. Ex. 931, CREXI-CS-00578274, at -274 ("For legality reasons, we cannot pull anything off Loopnet.")) |
| | • Malinee Decl. Ex. 137 (Dep. Ex. 933, CREXI-CS-10149320, at -320 ("For legal reasons, we cannot access anything from |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Co* or L**Pnet.") (emphasis in original))<br><br>• Malinee Decl. Ex. 162 (Dep. Ex. 1227, CREXI-CS-00598674, at -675 ████████████████████████████████████████████████<br><br>• Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023) (30(b)(6) testimony), at 27:10–28:1 ████████████████████████████████████████<br><br>• Malinee Decl. Ex. 76 (Dep. Ex. 207, CREXI-CS-00561685 (E. Randel sending link to The Real Deal article on CoStar's lawsuit against Xceligent to CREXi employees and stating "[l]et's continue to be smart"))<br><br>• Malinee Decl. Ex. 82 (Dep. Ex. 381, "CoStar Files Suit Against Xceligent, Its Biggest Rival," at 1–2 (article circulated by E. Randel discussing CoStar's "previous lawsuits against data startups RealMassive, LoopNet, and against users of CompStak")) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 27, 2024), at 244:23–248:5 ■■■■■ |
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 85:10–17 ■■■■■ |
| 78.   Nick DeGiorgio, the CREXi CEO's cousin and CREXi's Supply Growth Manager, acknowledged that CoStar and LoopNet were "WEBSITES . . . WE CANNOT ACCESS." | • Malinee Decl. Ex. 46 (Dep. Ex. 49, CREXI-CS-00717895, at -895 (N. DeGiorgio directing the "CREXi BDR" team: "AS A REMINDER PLEASE DO NOT SUBMIT **ANY** LINKS TO WEBSITES THAT WE CANNOT ACCESS," including CoStar, LoopNet, Showcase, and CityFeet, but stating: "Understanding (at times) [CoStar websites are] the only place you can find . . . listings, the process to submit . . . goes as follows (no exceptions) . . . **YOU MUST TAKE A SCREENSHOT OF THE PHOTOS . . .** |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | **TO ENSURE THAT THE WATERMARK LOGO IS REMOVED** . . . . All of which you should be manually submitting")) |
| 79.    CREXi decided the benefit of displaying CoStar content outweighed CREXi's potential legal liability. | • Malinee Decl. Ex. 46 (Dep. Ex. 49, CREXI-CS-00717895, at -895 ("Understanding (at times) this [CoStar, Loopnet, Showcase, Cityfeet] is the only place you can find some of these listings, the process to submit to JIRA goes as follows . . ."))<br>• Malinee Decl. Ex. 25  (N. DeGiorgio Dep. Tr. (Feb. 6, 2024), at 196:4–12 ("Q. Was your expectation that people receiving this email would follow the information set forth in it?  A.   Yeah, the expectation is that they would respond to this email saying that they understand.  Q.   Okay.  And that they would comply with what you put forth in this email?  A.   Received, read, and understand the email, yes."))<br>• Malinee Decl. Ex. 59 (Dep. Ex. 92, CREXI-CS-00717670, at -670 (C. Vien responds "Got it!" to email from N. DeGiorgio instructing CREXi employees on "the process to submit" information from |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CoStar, LoopNet, Showcase, and Cityfeet)) |

• Malinee Decl. Ex. 229 (CREXI-CS-00741651, at -654 (CREXi's Manager of Business Operations explaining before this lawsuit that "LN listings are okay" if "BDRs submit a [LoopNet] printout" since "I don't have time to not decline those everyday . . . that is all they submit . . . so fuck it . . . not my problem anymore"))

• Malinee Decl. Ex. 161 (Dep. Ex. 1225, CREXI-CS-00599350 (D. Shankman explaining decision not to ban infringing user: "The guy just keeps getting dirtier and dirtier now uploading LoopNet flyers and CoStar brochures and putting them into DD vault.  You have told him at least 10X that he cant do this and it doesn't seem to resonate.  Not sure why.  I don't think we ban him, because that can have negative repercussions on CREXi, but I do think someone else needs to step in and have a direct conversation with him."))

• Malinee Decl. Ex. 9 (D. Shankman Dep. Tr. (Feb. 16, 2024) at 301:18–25 ("Q.  Do you agree that if CREXi banned users from its platform, that's one less user that it can monetize?  [Objection]  A.  Do I agree that

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | if we banned a user, that that is one less user we can monetize?  I do.”)) <br> • Malinee Decl. Ex. 164 (Dep. Ex. 1231, CREXI-CS-00546441, at -441 ██████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ <br> • Malinee Decl. Ex. 206 (CREXI-CS-00553983, at -983) (email exchange among P. Cohen, T. Benz, D. Shankman, E. Randel in which Cohen writes “What if brokers are uploading unauthorized brochures.  What is our liability?  If it’s 75+ per day, we can show Ritesh how to do it and switch them out.  If we have a nice CREXi brochure that would help.”)) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 80.    CREXi had a practice of not writing out "CoStar" or "LoopNet" in internal emails and substituting asterisks for letters when referencing these entities. | • Malinee Decl. Ex. 31 (Dep. Ex. 17, CREXI-CS-00544934, at -934 ████████████████ ███████████████████████ |
| | • Malinee Decl. Ex. 102 (Dep. Ex. 606, CREXI-CS-00532735, at -735 (email from L. Dees to E. Randel using "C*" to refer to CoStar)) |
| | • Malinee Decl. Ex. 142 (Dep. Ex. 943, CREXI-CS-00718289, at -289–290 ("If you are submitting L**pnet/Co* flyers to JIRA . . . As an extra precaution, I also request to 'PLEASE BE SURE TO REMOVE/CROP OUT ANY WATERMARKS ON ANY PHOTOGRAPHS.'")) |
| | • Malinee Decl. Ex. 204 (CREXI-CS-00518202, at -202 (CREXi directing Indian agent to "buildout the attached," noting that "Some of the photos have Co***r branding so please advise offshore to crop out.")) |
| | • Malinee Decl. Ex. 30 (Z. Zlotnick Dep. Tr. (Oct. 3, 2023), at 120:7–121:8 ████████████████ |
| | • Malinee Decl. Ex. 27 (R. Padfield Dep. Tr. (Dec. 14, 2023), at 87:11–88:2 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | (acknowledging that the "most likely" reasons why CREXi did not "write out the word 'CoStar'" is because CoStar is litigious)) <br> • Malinee Decl. Ex. 163 (Dep. Ex. 1228, CREXI-CS-00570122, at -122 (email from D. Shankman to L. Morris, C. Ettus, M. DeGiorgio, and E. Randel regarding "C**** Earnings")) <br> • Malinee Decl. Ex. 9 (D. Shankman Dep. Tr. (Feb. 16, 2024), at 310:14–22 (acknowledging "C****" in Dep. Ex. 1228 is a reference to CoStar.")) <br> • Malinee Decl. Ex. 59 (Dep. Ex. 92, CREXI-CS-00717670, at -671 (J. Burton email to N. DeGiorgio referencing "websites owned by C*/LN/LLink" and stating "[b]asically anything owned by C*/LN is a no go")) <br> • Malinee Decl. Ex. 7 (C. Vien Dep. Tr. (Nov. 15, 2023), at 122:7–123:8 (confirming "C*/LN" in Dep. Ex. 92 refers to CoStar and LoopNet)) <br> • Malinee Decl. Ex. 100 (Dep. Ex. 603, CREXI-CS-00581896, at -897 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 6 (C. Ettus Dep. Tr. (Jan. 22, 2024), at 104:8–105:2 (confirming "L*****t" in Dep. Ex. 603 refers to LoopNet)) |
| **CoStar's Infringed Images** | |
| 81. CoStar has identified 48,756 CoStar images in CREXi's possession; CoStar is moving for summary judgment on 46,506 of those images (the "Infringed Images"). | • Proposed TAC (Dkt. 776-3, at Ex. A) (identifying CoStar owned and copyrighted photos copied, reproduced, distributed or publicly displayed on CREXi's website)<br>• Malinee Decl. Exs. 253 & 254 (CoStar's Suppl. Resps. & Objs. to CREXi's Interrogs. (Nos. 1, 22, and 25), Fourth Am. Master Image Spreadsheet (Aug. 14, 2024) ("FRAMIS"), at Column E (filtering for "DMCA & Infringement" and "Infringement Only")) |
| 82. Each of the Infringed Images is the subject of a valid copyright registration. | • Malinee Decl. ¶¶ 5–6 & Exs. 271 (index identifying registrations for Infringed Images ) & 272 (copyright registrations and title sheets)<br>• Malinee Decl. Ex. 254 (FRAMIS), at Column E (filtering for "DMCA & Infringement" and "Infringement Only")<br>• Malinee Decl. Ex. 153 (Dep. Ex. 1181, CoStar00452073, at -090–091 (Decl. of |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Dariush Edalatkhah (Feb. 5, 2022) ¶ 13 (CoStar has "verif[ied] that [it] has applied for, and received, copyright registrations for each of the photographs in this case for which CoStar is . . . claiming copyright infringement[.]")); *id.* at -090–092 ¶¶ 13–18 (describing CoStar's method for confirming ownership of each image) |
| 83.     The Infringed Images are covered by 7,250 registrations. | • Malinee Decl. ¶¶ 5–6 & Exs. 271 (index linking images to registrations) & 272 (copyright registrations and title sheets)) |
| 84.     A subset of 1,095 of the Infringed Images were taken by independent contractors. | • Malinee Decl. Ex. 254 (FRAMIS), at Column E (filtering for "DMCA & Infringement" and "Infringement Only") and Column Q (filtering for "Independent Contractor"))<br>• McCallum Decl. ¶¶ 3–4 ("CoStar often hired independent contractors through third-party vendors," but occasionally "entered into agreements directly with independent contractors.") |
| 85.     Infringed Images taken by independent contractors are "works for hire." | • McCallum Decl. ¶ 5 ("Regardless of whether agreements were made directly with independent contractors or through |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | third-party vendors, I understand that the terms of CoStar's arrangements with these contractors made clear that images taken by independent contractors were works for hire and owned by CoStar.") <br> • McCallum Decl. Ex. 1 (CoStar00365744, at -747 (illustrative agreement between CoStar and independent contractor Debbie Dunn providing at Section 3.1 that "all documentation, writings, photographs . . . that he or she generates pursuant to this Agreement . . . [are] owned exclusively by [CoStar] immediately on its creation and regardless of the stage of its completion.")) <br> • McCallum Decl. Ex. 2 (CoStar00004576, at -576–577 (CoStar certificate of registration for images taken by Ms. Dunn reflecting that CoStar marked "Yes" to the question "Was this contribution in the work a 'work made for hire'?")) |
| **CREXi's Violation of CoStar's Copyrights in Infringed Images** | |
| 86.    CREXi made and stored copies of all of the Infringed Images on its servers. | • Malinee Decl. Ex. 243 (CREXi's Resps. & Objs. to CoStar's First Set of Interrogs. (Nos. 1–23) (Dec. 23, 2021) (Nos. 4, 11), at 27 ██████████████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 12 (E. Reshetnikov Dep. Tr. (Nov. 29, 2024) (30(b)(6) testimony), at 21:12–16 ███████ ); *id.* at 24:5–8 ███████ • Malinee Decl. Ex. 17 (L. Dees Dep. Tr. (Feb. 13, 2024), at 100:18–23 (CREXi keeps a record of deleted listings and images)) |
| 87.    CREXi admits it displayed ███ CoStar images (excluding TAC Images) on CREXi.com.[2] | • Malinee Decl. Ex. 243 (CREXi's Resps. & Objs. to CoStar's First Set of Interrogs. (Nos. 1–23) (Dec. 23, 2021) (Nos. 4, 11), at 27 ███████ ) • Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. To CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x D (Aug. 14, 2024), at Column L ███ |

[2] At this time, CoStar does not know how many of the TAC Images CREXi claims were displayed on CREXi.com. Malinee Decl. ¶ 7; *see supra* n.1.

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 88. ███████ of CoStar's images (excluding TAC Images) were directly uploaded to CREXi.com by CREXi's employees and agents.[3] | • Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. To CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x D (Aug. 14, 2024), at Column D ███████ |
| 89. ███████ of CoStar's images (excluding TAC Images) were uploaded to CREXi.com by brokers.[4] | • Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. To CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x D (Aug. 14, 2024), at Column D ███████ ██████████) |
| 90. CoStar's logo was cropped out of 34,416 Infringed Images before they were posted on CREXi.com. | • Malinee Decl. ¶ 8. |
| 91. CREXi sent out promotional emails for CREXi.com listings or "e-blasts" that included CoStar's images. | • Malinee Decl. Ex. 203 (CREXI-CS-00511951, at -951 ███████ ██████████) <br> • Malinee Decl. Ex. 25  (N. DeGiorgio Dep. Tr. (Feb. 6, 2024), at 138:10–140:23 (explaining that CREXi e-blasts typically contained the main image or first photo |

[3] At this time, CoStar has not analyzed how many of the TAC Images CREXi claims were directly uploaded to CREXi.com by CREXi's employees and agents.  Malinee Decl. ¶ 7; *see supra* n.1.

[4] At this time, CoStar has not analyzed how many of the TAC Images CREXi claims were uploaded to CREXi.com by brokers.  Malinee Decl. ¶ 7; *see supra* n.1.

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | from a listing)) |
| | • Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 71:20–72:1 ("[W]hatever images the broker put[s] on their listing or gave us to add, they would get sent out in the Eblast, but it was just the first image on the – on the listing.")) |
| | • Malinee Decl. Ex. 46 (Dep. Ex. 49, CREXI-CS-00717895, at -895 ("Understanding (at times) [CoStar websites are] the only place[s] you can find some of these listings . . . I would suggest only using the main photo and aerial/overview photo")) |
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 91:8–23 ████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ |
| | • Malinee Decl. Ex. 251(CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (Nos. 12 and 24), Second Am. App'x D (Aug. 14, 2024), at Column V ████████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | ████████████████ |
|  | • Malinee Decl. Ex. 202 (CREXI-CS-00443700, at -701 (example "e-blast" featuring a property at 1647 Gordon Highway, Augusta, GA, an address associated with Infringed Images))<br><br>• Malinee Decl. Ex. 103 (Dep. Ex. 611, CREXI-CS-10008336, at -336–337 (broker email to CREXi stating that it was "awesome that CREXi sent this out," forwarding a CREXi email highlighting his properties and asking why CREXi excluded other properties))<br><br>• Malinee Decl. Ex. 6 (C. Ettus Dep. Tr. (Jan. 22, 2024), at 207:19–21 (testifying that CREXi Elite users have their properties sent in email blasts by CREXi))<br><br>• Malinee Decl. Ex. 105 (Dep. Ex. 613, CREXI-CS-00582621, at -625 (████████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| **CREXi's "Repeat Infringer Policy"** | |
| 92.  CREXi purports to maintain a policy of terminating users deemed to be "repeat infringers." | • Malinee Decl. Ex. 192 (CREXI-CS-00000064, at -072 (CREXi Terms of Service § 5.2 ("In accordance with the DMCA and other applicable law, we have adopted a policy of terminating, in appropriate circumstances, users who are deemed to be repeat infringers."))<br>• Malinee Decl. Ex. 50 (Dep. Ex. 59, CREXI-CS-00541775, at -776–784 ██████████████████████████ )<br>• Malinee Decl. Ex. 52 (Dep. Ex. 61, CREXI-CS-00726772, at -772 ████████ |
| 93.  Multiple CREXi executives and managers testified that they | • Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023), at 176:6–11 |

138

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| have never seen CREXi's repeat infringer policy. | ████████████████████████ |
|  | • Malinee Decl. Ex. 12 (E. Reshetnikov Dep. Tr. (Nov. 29, 2023), at 154:14–22 ████████████████████████ |
|  | • Malinee Decl. Ex. 26 (P. Cohen Dep. Tr. (Nov. 30, 2023), at 216:13–23 (testifying that he did not recognize CREXi's 2022 DMCA policy and that the policy "d[id] not look familiar at all")) |
|  | • Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 27, 2024), at 281:7–17 ████████████████████████ |
|  | • Malinee Decl. Ex. 27 (R. Padfield Dep. Tr. (Dec. 14, 2023), at 94:7–95:17 (testifying that he had "never heard of the DMCA")) |
| 94.    CREXi did not take any measures to implement its policy until 2022. | • Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x. D (Aug. 14, 2024), at Column P ████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████████████████████ |
| | • Malinee Decl. Ex. 51 (Dep. Ex. 60, CREXI-CS-00726755 ██████ ██████████████████) |
| | • Malinee Decl. Ex. 52 (Dep. Ex. 61, CREXI-CS-00726772, at -772 ██████████████████) |
| | • Malinee Decl. Ex. 28 (R. Smith Dep. Tr. (Nov. 14, 2023), at 190:22–191:20 (testifying that the process to "flag anything that was related to DMCA" was implemented "[i]n the past two years")); *id.* at 195:1–199:2 (testifying regarding Dep. Ex. 60 ██████ that the only action taken to "enforce this policy" is issue "strikes," which, "to the best of [his] knowledge" is "like a warning to a user"); *id.* at 209:4–210:5 (R. Smith does not remember receiving a version of Dep. Ex. 61 ██████████) |
| | • Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 269:12–20 (testifying he was not aware of an earlier version of Dep. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Ex. 61, ████████████████ ██████ ) |
| 95. Erek Benz was CREXi's DMCA designated agent from December 2016 to fall/winter 2019. | • Malinee Decl. Ex. 245 (CREXi's Resps. & Objs. to CoStar's Req. for Admission (Mar. 15, 2023), at 10–12 (admitting E. Benz was publicly identified on the U.S. Copyright Office's DMCA Designated Agent Directory from December 12, 2016 to October 21, 2019))<br>• Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 28, 2024), at 258:23–259:7 ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ); *id.* at 266:20–270:1 (similar) |
| 96. When Erek Benz was CREXi's designated agent from 2016-2019, CREXi had no ████████████████████ ████████████ ' did not ████ any ████████ ████████ had no location to | • Malinee Decl. Ex. 10 (E. Benz Dep. Tr. (Feb. 28, 2024), at 278:13–279:19, 280:4–14)<br>• Malinee Decl. Ex. 50 (Dep. Ex. 59, CREXI-CS-00541775, at -776–784 ████████████████████████ ) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| notices, and had no "█████████ ███████████████ or any ██████████████████' for "█████████████████████" | |
| 97.    When Erek Benz was CREXi's designated agent, CREXi also "████████████████' to ████████████████████████ ████████████████████ | • Malinee Decl. 10 (E. Benz Dep. Tr. (Feb. 28, 2024), at 287:1–288:1 ██████████████████████ |
| 98.    CREXi's subsequent designated DMCA agent, Lawson Dees, testified that CREXi has no "steps . . . in[] place" to prevent terminated users from rejoining the site (if CREXi ever decides to terminate a known repeat infringer). | • Malinee Decl. Ex. 245 (CREXi's Resps. & Objs. To CoStar's Req. for Admission (Mar. 15, 2023), at 12–15 (admitting L. Dees was publicly identified on the U.S. Copyright Office's DMCA Designated Agent Directory from October 21, 2019 to (April 26, 2022)) • Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at 43:17–44:20 (describing "aspirational" steps to prevent a terminated repeat infringer from creating a new account; "Q. So at what point would CREXi be taking steps to make sure that [a repeat infringer] |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | was not able to create that new account?  A. I'd want to talk that through with our technical team to see how we put those in place.")) |
| 99.    James Burton, the CREXi manager presently responsible for terminating known repeat infringers—testified that he did not know whether CREXi's policy was to "remove the actual deals from CREXi or if we remove the user" when CREXi becomes aware of a repeat infringer. | • Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at 37:15–38:11, 38:18–21, 40:9–41:2 (testifying that J. Burton is "[p]rimarily" responsible for implementing CREXi's repeat infringer policy by "activat[ing] [CREXi's takedown notice] flow," "banning users" and "[l]ocking banned user IDs from uploads"))
• Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 283:12–25 ("Q. Okay. Do you – is the policy in those circumstances to delete the user's listing the one that includes the infringing images? Or the ones that include the infringing images, I should say. [Objection] . . . I haven't looked at this in a while. . . . A. I haven't personally done this before. So I don't remember. . . . Yeah, I'm not sure if we like remove the actual deals from CREXi or if we remove the user.  I'm not totally sure."))
• Malinee Decl. Ex. 53 (Dep. Ex. 62, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CREXI-CS-00726756, at -757–758 ████████████████████████ |
| 100.  CREXi's written "policy" requires CREXi to terminate users who CREXi " ██████████████ | • Malinee Decl. Ex. 52 (Dep. Ex. 61, CREXI-CS-00726772, at -772 ( ██████████████ |
| 101.  CoStar identified the Infringed Images in its pleadings. | • CoStar's Compl. (Sept. 25, 2020) ¶¶ 134–36, 144–46, 155–58 (Dkt. 1, at 43–53) (providing examples of Infringed Images)<br>• CoStar's Compl. (Sept. 25, 2020) (Dkt. 1-3, at Ex. C) (listing 100 examples of |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Infringed Images, the image address, registration number, and photographer) • CoStar's Second Am. Compl. (Mar. 13, 2023) ¶¶ 62–68, 19 –208 (Dkt. 351, at 25–32, 76–81) • CoStar's Second Am. Compl. (Mar. 13, 2023) (Dkt. 351, at Ex. C) (identifying more than 25,000 Infringed Images uploaded or displayed on CREXi after CoStar filed its Complaint) |
| 102.  CREXi claims to have the ability to identify who uploads infringing images.[5] | • Malinee Decl. Ex. 12, (E. Reshetnikov Dep. Tr. (Nov. 29, 2023), at 73:18–74:7 ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ • Malinee Decl. Ex. 200 (CREXI-CS-00431409, at -409–411 ████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ |

---

[5] While CREXi claims that its records concerning the CoStar images are accurate, evidence in the record casts doubt on this assertion.  For example, CREXi's records indicate that ████████████████████████████ (Malinee Decl. Ex. 251 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x D (Aug. 14, 2024), at Columns C & F)), and the corporate representative for Mobius testified that ████████████████████████████ ████████████████████" (Malinee Decl. Ex. 24) (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 476:13-18; *see also id.* at 53:12-15 ("████████████████████████████ ████████████████████████████ all rights to dispute CREXi's claims as to the CoStar images.

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████████<br><br>• L. Dees Decl. (Nov. 15, 2022) ¶¶ 8–9 (Dkt. 272-5, at 3 (explaining CREXI's process for "compil[ing] data about each" Infringed Image, which included data on "the person who uploaded the image" and noting that "[s]ince CREXi began operations in late 2015, CREXi has maintained images and data in multiple repositories"))<br>• Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. To CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x D, at Column C (Aug. 14, 2024) ████████ |
| 103.  CREXi did not issue any strikes to users who submitted CoStar-copyrighted photographs to CREXi until April 2023. | • Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. To CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x D (Aug. 14, 2024)) ████████████████████ )<br>• Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at 47:17–49:22, 57:6–58:9 (explaining that a user who uploaded more than 100 CoStar |

146

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | images "received one strike" on April 6, 2023 per CREXi's policy of "aggregate[ing] [] instances of infringement")) |
| | • Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan 24, 2024), at 287:24–293:8 ("Q. Yeah. And you'll see that every single – for every single image, except the last three, for every single image, the date ["user was warned, suspended, terminated, or received a strike as a CREXi registered user"] is April 6, 2023. Do you see that? A. Yes. Q. And then for the last three, it's April 6th and July 14th. Do you see that? A. Okay¨")) |
| | • Malinee Decl. Ex. 221 (CREXI-CS-00725137) ███████████████ |
| 104. CREXi gave users a single strike regardless of the number of infringing photographs they uploaded and how many times they had done so. | • Malinee Decl. Ex. 251 (CREXi's Suppl. Resp. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x D (Aug. 14, 2024)) ████████ ████████████████████ ) • Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | 47:17–25) ("Q. So this reflects that Ms. Ames-Waitt uploaded over 100 of the images in this case between 2018 to 2022. And my question is, so under CREXi's repeat infringer policy, how many strikes should Ms. Ames-Waitt at have?  A. Were any of these images claimed by CoStar in the second amended complaint?  Q. Yes.  A. Then she received one strike.")); *id.* at 48:1–49:22 (describing the "business" reasons for CREXi's decision to issue only one strike to a repeat infringer of CoStar photographs)<br>• Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 288:2–293:8 (user who uploaded scores of CoStar images received a single strike because, according to CREXi, "CoStar included certain images from [the user's] listing in its alleged claim"))<br>• Malinee Decl. Ex. 221 (CREXI-CS-00725137) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 105.  Some users had uploaded more than 100 CoStar-owned images over months or years. | • Malinee Decl. Ex. 120 (Dep. Ex. 655, at 1–4 (excerpt of CREXi's First Am. App'x D ███████████████ )<br><br>• Malinee Decl. Ex. 147 (Dep. Ex. 1066, at 1–6 (excerpt of CREXi's First Am. App'x D ████████████ ) |
| 106.  CREXi issued only one strike to users because "from a *business perspective*, to issue . . . multiple strikes at once when a user is otherwise unaware, falls outside of the spirit of our repeat infringer policy." | • Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at 48:9–18 ("I think I stated earlier our policy – our repeat infringer policy is designed to notify users when they have – when they have offended our DMCA policy such that they then stop offending it. But to stop, they would – they would need to be notified at least once. Um, and to – from a business perspective, to issue multiple strikes when – to issue multiple strikes at once when a user is otherwise unaware, falls outside of the spirit of our repeat infringer policy.")) |
| 107.  CREXi has never terminated a repeat infringer from its platform. | • Malinee Decl. Ex. 221 (CREXI-CS-00725137 ( ████████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | ████████████████ |
|  | • Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan 24, 2024), at 274:3–10 ("[W]e have banned users but not for the purpose of repeat infringer before")) <br><br> • Malinee Decl. Ex. 18 (L. Dees Dep. Tr. (Feb. 14, 2024) (30(b)(6) testimony), at 35:18–24 ("Q.  Has CREXi ever terminated a user under this repeat infringer policy?  A. No user has ever been a repeat infringer under this repeat infringer policy.  Q.  And therefore, no user has ever been terminated pursuant to this repeat infringer policy?  A. Not that I'm aware of.")) |
| 108.  CREXi has never terminated one of its BPOs for posting copyrighted content on its platform. | • Malinee Decl. Ex. 14 (J. Burton Dep. Tr. (Jan. 24, 2024), at 293:9–14 ("Q. . . . Has CREXi applied its DMCA policy to issue a warning or strike or suspension or transportation to anyone in its offshore team?  A.  I'm not sure.  Q.  To your knowledge, can you think of one?  A. No.  I don't know.")) <br><br> • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | 367:19–368:9 ███████████████████ |
| 109. ████████████████████ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 368:11–17 ████████████████ |
| **CREXI's Post-Litigation Coordination With Its BPOs** | |
| 110.  After CoStar brought suit, CREXi asked its BPOs, including Mobius, to sign declarations stating they are independent contractors rather than agents. | • Malinee Decl. Ex. 180 (Dep. Ex. 1605, CREXI-CS-00640698, at -698–699 (CREXi outside counsel sending K. Khan draft declaration stating: "Mobius has served as an independent contractor for CREXi . . . and we never acted as CREXi's agent.")) • Malinee Decl. Exs. 212 & 213 (CREXI- |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CS-00640754 & CREXI-CS-00640755 at -754, -757 (CREXi outside counsel sending R. Jaiswal of Yansh Technologies and 247 Web Support draft declaration stating: "Yansh and 247 Web Support served as independent contractors for CREXi . . . and we never acted as CREXi's agent."))<br><br>• Malinee Decl. Exs. 214 & 215 CREXi-CS-00640823 & CREXI-CS-00640824, at -823–824 (CREXi's outside counsel sending M. Kasehagen of 247Digitize LLC f/k/a Kensium LLC draft declaration stating: "247Digitize has served as an independent contractor for CREXi . . . we have never acted as CREXi's agent.")) |
| 111. ▮▮▮▮▮▮▮▮<br>CREXi's proposed declaration stating it was an independent contractor. | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 329:24–332:11 (▮▮▮▮▮▮▮ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  |  |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 112.  CREXi asked its BPOs, including Mobius, to sign declarations that they understood that CoStar's watermark is a form of branding. | • Malinee Decl. Ex. 180 (Dep. Ex. 1605, CREXI-CS-00640698, at -698, -700 (CREXi outside counsel sending K. Khan of Mobius365 Knowledge Services draft declaration containing statement "We just understood [CoStar and LoopNet's logo] to be a form of CoStar branding.")) <br> • Malinee Decl. Exs. 212 & 213 (CREXI-CS-00640754 & CREXI-CS-00640755 at -754, -757 (Yansh Technologies and 247 Web Support draft declaration stating same)) |
| 113.  ███████████ CREXi's proposed declaration stating that it understood that CoStar's watermark is a form of branding. | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 334:9–335:17 ███████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | ███████████████████ |
| 114.  CREXi and Mobius did not include in the declaration requested by CREXi and signed by Mobius the fact that CREXi told Mobius to use LoopNet PDFs in order to create listings on CREXi.com. | • Malinee Decl. Ex. 180 (Dep. Ex. 1605, CREXI-CS-00640698, at -698, -700 (draft declaration containing statement "During the course of our engagement, CREXi repeatedly instructed us not to use competitor websites, in particular LoopNet.com and CoStar.com, to collect information for listings."))<br>• Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 335:18–337:1 ██████████ |

155

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | )) |
| 115. ▮ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 13:23–14:2; 22:18–23 ▮ |
| 116. ▮ | • Malinee Decl. Ex. 241 (MB012071, -71–73 ▮ |
| 117. ▮ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 12:2–25, 13:14–20 ( ▮ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | |
| 118.  Mobius's corporate representative ▉▉▉▉▉▉ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 13:1–7 ▉▉▉▉▉ |
| 119.  Mobius's corporate representative ▉▉▉▉▉▉ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 59:4–61:8 ( |
| 120.  Mobius's corporate representative ▉▉▉▉▉ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | (Aug. 7, 2024) (30(b)(6) testimony), at 56:14–57:11, 61:10–63:22, 67:8–68:25 ... *id.* at 71:8–11 ...); *id.* 190:2–25 ( ... ; *id.* at 308:4–8 ... |
| 121.  Mobius's corporate representative | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  | (Aug. 7, 2024) (30(b)(6) testimony), at 102:13–103:8 (CoStar questioning)

• Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 129:1–16 (CoStar questioning) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████████████████ |
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 408:11–15 (CREXi questioning) ████ |
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 408:11–15 (CoStar questioning) ( |

160

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  |  |
| 122.  Mobius's corporate representative ███████ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 260:1–8 ███████ *; id.* at 286:17–287:3 ███████ *id.* at 297:9–298:4 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ; *id.* at 301:10–17 |
| | ); *id.* at 308:22–309:13 (" |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 123. ▮▮▮ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), 245:4–9 ▮▮▮); *id.* at 247:5–9 ▮▮▮; *id.* at 249:5–15 (▮▮▮; *id.* at 251:2–16 ▮▮▮ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ; *id.* at 252:4–9 ( |
| 124.  Mobius's corporate representative testified | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 38:4–10 |
| | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 33:16–34:11, 36:25–38:23; 39:3–41:4; 43:22–44:13; 46:5–7; 49:19–22; 391:9– 393:8; 449:12–21 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
|  |  |
| 125.  Mobius's corporate representative testified | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 189:10–18 |
| 126.  Mobius's corporate representative testified | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 176:20–177:4 ... ); *id.* at 461:22–24) ( |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 127.  Mobius's corporate representative testified | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 99:24–100:1 ; *id.* at 102:19–21 *id.* at 102:25–103:8 ( |
| 128.  Mobius's corporate representative testified | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 175:11–24 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | █████████████████ |
| 129.  Mobius's corporate representative testified ████████████████ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 95:16–96:9 ████████████ |
| 130.  Mobius's corporate representative testified ██████████ | • Malinee Decl. Ex. 24 (Mobius365 Knowledge Services' K. Khan Dep. Tr. (Aug. 7, 2024) (30(b)(6) testimony), at 173:20–174:5 █████████████ *id.* at 175:3– 8 █████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| **CREXi's Use of Image Filter Restb** | |
| 131.  In 2019, CREXi hired Restb.ai ("Restb") to "prevent infringement" on CREXi's website by identifying CoStar-watermarked images on the site. | • https://restb.ai/solutions/watermark-detection/ (advertising Restb's watermark detection tool as a way to "[p]rotect your company from copyrights [sic] lawsuits")
• Malinee Decl. Ex. 218 (CREXI-CS-00718676, at -676–677 (CREXi executives discussing engaging Restb to "avoid lawsuits associated to copyright"))
• Malinee Decl. Ex. 84 (Dep. Ex. 395, CREXI-CS-00662816, at 816 (reflecting "CREXi & Restb.ai – intro" meeting invitation to discuss how Restb's "watermark detection tool can help mitigate the risk of lawsuits"))
• Malinee Decl. Ex. 85 (Dep. Ex. 398, CREXI-CS-00662910, at 910 [REDACTED]
• Malinee Decl. 115 (Dep. Ex. 643, CREXI-CS-00522504, at -505 ("[W]e do have a company that helps us remove any watermarked pictures to ensure our safety."))
• Resp't's Opp. to CoStar's Mot. to Compel |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | at 2, *CoStar Grp. Inc. v. Restb.ai, LLC*, No. 2:22-mc-00228-CBM-AS (C.D. Cal. Nov. 2, 2022), Dkt. 23, (stating "CREXi utilizes Restb's services in order to identify photographs in the real estate listings [CREXi] receives from brokers that might be copyright protected"))<br>• Malinee Decl. Ex. 123 (Dep. Ex. 799, CREXI-CS-00444117, at -123, -132<br><br>• Malinee Decl. Ex. 3, (A. Soto Dep. Tr. (Jan 26, 2024) (30(b)(6) testimony), at 36:1–21 ; *id.* at 77:16–22 ; *id.* at 144:17–22 |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ████████████<br><br>• Malinee Decl. Ex. 259 Apr. 30, 2021 Ltr. from E. McCloskey to N. Boyle, at 2 (CREXi counsel admitting that "CREXi has contracted with a third-party vendor that regularly scans CREXi's website to identify images that include CoStar's logo. . . .")) <br><br>• Malinee Decl. Ex. 262 July 6, 2021 Ltr. from E. McCloskey to N. Boyle, at 2 (same)) |
| 132.  CREXi claims it hired Restb to identify images with "third-party branding, specifically a CoStar logo" from CREXi's image library. | • Joint Stip. Re CoStar's Mot. to Compel (Dkt. 116, at 32) ("Since February 2019, CREXi has utilized a vendor, Restb, to identify and remove images on CREXi that contain third-party watermarks.  . . . CREXi employs Restb in a good faith effort to prevent infringement and to preserve the integrity of CREXi's brand by avoiding displaying third-party logos on its website.")<br><br>• Malinee Decl. Ex. 243 (CREXi's Suppl. Resp. & Objs. to CoStar's First Set of Interrogs. (Nos. 1-23) (Dec. 23, 2021) (Nos. 4, 11), at 44 ██████████<br>████████████████████<br>████████████████████<br>████████████████████<br><br>• Malinee Decl. Ex. 247 (CREXi's Suppl. |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | Resps. & Objs. To CoStar's Interrogs. (Nos. 1, 3, 5–7, 9, 12, 14, 17 and 24) (Sept. 29, 2023), at 35 ("Beginning in February 2019 and continuing through the present, CREXi engaged with Restb.ai ("Restb") for the purpose of identifying photographs on the CREXi platform that contain the logo of a third party."))
Malinee Decl. Ex. 17 (L. Dees Dep. Tr. (Feb. 13, 2024), at 173:22–174:3, 194:23–195:4 (CREXi testifying that it engaged Restb "to not have images on CREXi with third-party branding, specifically a CoStar logo . . ." and that Restb had reviewed every image "that was in CREXi's library")) |
| 133. Restb scanned CREXi's library ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | • Malinee Decl. Ex. 3 (A. Soto Dep. Tr. (Jan. 26, 2024) (30(b)(6) testimony), at 40:1–10, 66:6–67:1, 79:4–82:8, 85:20–86:3, 169:18–170:6, 170:15–171:2, 171:21–23, 180:7–16 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
• Malinee Decl. Ex. 17 (L. Dees Dep. Tr. (Feb. 13, 2024), at 194:22–195:4 (testifying that Restb reviewed every image in CREXi's image library))
• Malinee Decl. Ex. 123 (Dep. Ex. 799, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CREXI-CS-00444117, at -123, -132 ████████ |
| | • Malinee Decl. Ex. 124 (Dep. Ex. 801, RESTB-ESI-00036814, at -814, -816 ████████ |
| | • Malinee Decl. Ex. 125 (Dep. Ex. 803, RESTB-ESI-00035747, at -749 ████████ |
| | • Malinee Decl. Ex. 126 (Dep. Ex. 806, RESTB-ESI-00036885, at -887 ████████ |
| | • Malinee Decl. Ex. 127 (Dep. Ex. 808, RESTB-ESI-00000581, at -583 ████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ <br><br> • Malinee Decl. Ex. 128 (Dep. Ex. 809, RESTB-ESI-00000844, at -846 ▉▉▉▉▉▉▉▉▉▉▉▉ <br><br> • Malinee Decl. Ex. 12 (E. Reshetnikov Dep. Tr. (Nov. 29, 2023), at 59:16–24 ▉▉▉▉▉▉▉▉▉▉▉▉ |
| 134.  This process resulted in the identification of ▉▉▉ CoStar images. | • Malinee Decl. Ex. 251 (CREXi's Suppl. Resps. & Objs. to CoStar's Interrogs. (Nos. 1, 6, 7, 12 and 24), Second Am. App'x D (Aug. 14, 2024), at Column I ▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ ) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 135. Restb's watermark detection solution ▮▮▮ | • Malinee Decl. Ex. 3, A. Soto Dep. Tr. (Jan. 26, 2024) (30(b)(6) testimony), at 24:15–18; 57:20–58:12; 135:4–10 ▮▮▮<br><br>• Malinee Decl. Ex. 12 (E. Reshetnikov Dep. Tr. (Nov. 29, 2023), at 63:13–18 ▮▮▮ |
| **CREXI's Continuing Infringement** | |
| 136. CREXi has continued to display CoStar-owned images identified in CoStar's pleadings as recently as July 3, 2024. | • Malinee Decl. Ex. 257 (Mar. 18, 2021 Ltr. from N. Boyle to E. Peters) (identifying CREXi's continued infringement of CoStar images)<br>• Malinee Decl. Ex. 258 (Apr. 23, 2021 Ltr. From N. Boyle to E. Peters) (similar)<br>• Malinee Decl. Ex. 260 (May 24, 2021 Ltr. From N. Boyle to E. Peters) (similar)<br>• Malinee Decl. Ex. 261 (June 25, 2021 Ltr. From N. Boyle to E. Peters) (similar) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | • Malinee Decl. Ex. 262 (July 29, 2021 Ltr. From N. Boyle to E. Peters) (similar)
• Malinee Decl. Ex. 264 (Jan. 29, 2024 Ltr. From N. Boyle to E. Peters & W. Braunig) (similar)
• Malinee Decl. Ex. 265 (Feb. 5, 2024 Ltr. From N. Boyle to W. Braunig) ("Your letter asserts that CREXi is not liable for the infringement of photographs that are only accessible using specific 'links.'")
• Malinee Decl. Ex. 266 (Feb. 28, 2024 Ltr. from N. Boyle to W. Braunig) ("Given that we are continuing to find infringing images on CREXi.com, and given that you are arguing that certain publicly-displayed images somehow don't count because they're not attached to an active listing, we are very skeptical that CREXi is actually removing infringing images when it is representing that they have been 'take[n] down.'")
• Malinee Decl. Ex. 267 (Mar. 13, 2024 Ltr. From N. Boyle to W. Braunig) ("We have received no explanation, beyond a (new) argument, which has no basis in the law, that CREXi is only responsible for some of its infringing activity—i.e., that it |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | is not liable for infringement if a copyrighted photograph is not attached to a then-active property listing.")<br><br>• Malinee Decl. Ex. 268 (Apr. 8, 2024 Ltr. From N. Boyle to W. Braunig) ("And your insistence that CREXi's infringement of CoStar 'images associated with inactive [CREXi] listings,' does not count as infringement under the Copyright Act, and does not harm CoStar . . . remains an incorrect statement of law and fact, no matter how often you state otherwise.")<br><br>• Malinee Decl. Ex. 269 (May 20, 2024 Ltr. from N. Boyle to W. Braunig) ("CREXi soon pivoted to arguing that CREXi's continuing infringement 'could not possibly' harm CoStar because CREXi's public display of those images was on 'inactive listings' on its website. . . .")<br><br>• Malinee Decl. Ex. 270 (July 3, 2024 Ltr. from N. Boyle to W. Braunig, at 1–4) (noting CREXi's continuing infringement of CoStar-owned images years after CoStar first filed suit) |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| ***Xceligent* Lawsuit** | |
| 137.  CoStar competitor Xceligent, Inc. ("Xceligent") used offshore BPOs to copy CoStar-owned images. | • Am. Compl. ¶¶ 91–113, *CoStar Grp. Inc. v. Xceligent, Inc.*, No. 4:16-cv-01288 (W.D. Mo. 2012), ECF No. 84 (describing how "Xceligent and Avion [BPO] researchers uploaded into Xceligent's system the vast majority of the 100 sample CoStar-copyrighted photographs identified in the original Complaint) |
| 138.  CoStar sued Xceligent for copyright infringement. | • Am. Compl. ¶¶ 2–3, *CoStar Grp. Inc. v. Xceligent, Inc.*, No. 4:16-cv-01288 (W.D. Mo. 2012), ECF No. 84 ("CoStar brings this case against Defendant Xceligent, Inc. ('Xceligent') to redress its brazen and widespread theft of CoStar's intellectual property" including "steal[ing] CoStar-copyrighted photographs") |
| 139.  A permanent injunction and $500 million judgment was entered against Xceligent. | • Malinee Decl. Ex. 181 (CoStar00078737, at -737 (Judgment in *CoStar Group Inc., et al. v. Xceligent, Inc.*, No. 16-CV-01288 (W.D. Mo. 2012) entered "in favor of CoStar and against Xceligent in the amount of five hundred million dollars")) |
| 140.  CREXi monitored the *Xceligent* lawsuit. | • Malinee Decl. Ex. 11 (E. Randel Dep. Tr. (Dec. 5, 2023) (30(b)(6) testimony), at 27:10–28:1 ███████████ |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | ███████████████████████ ███████████████████████ ███████████████████████ ███████ *id.* at 29:13–33:8 ████ ███████████████████████ ███████████████████████ ███████████████████████ |
| | • Malinee Decl. Ex. 76 (Dep. Ex. 207, CREXI-CS-00561685 (December 2016 email from E. Randel with link to "The Real Deal" article about CoStar's lawsuit against Xceligent stating "[l]et's continue to be smart")) |
| | • Malinee Decl. Ex. 82 (Dep. Ex. 381, December 2016 "The Real Deal" article titled "CoStar files suit against Xceligent, its biggest rival") |
| | • Malinee Decl. Ex. 35 (Dep. Ex. 33, CREXI-CS-00571897 (November 2017 email from Z. Zlotnick to D. Shankman, E. Randel, and S. Narish regarding "squabbles" between CoStar and Xceligent)) |
| | • Malinee Decl. Ex. 208 (CREXI-CS-00561348 (April 2018 email from E. Randel to M. DeGiorgio, E. Benz, L. Morris, and A. Green with article from "The Real Deal" on the *Xceligent* case and subject line |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | "Interesting (Nothing We Haven't Heard)")) <br> • https://web.archive.org/web/2018042421 1042/https://therealdeal.com/2018/04/24/co star-prepares-to-sic-the-lawyers-on-30000-freeloaders/ (April 2018 "The Real Deal Article" referencing *Xceligent* case) <br> • Malinee Decl. Ex. 160 (Dep. Ex. 1224, CREXI-CS-00539765, at -765 (March 2020 email from D. Shankman to colleagues with link to article on CoStar's $500 million judgment against Xceligent)) |
| 141.  CREXi infringed hundreds of the same images at issue in the *Xceligent* lawsuit. | • McCallum Decl. ¶ 12 ("CoStar conducted a comparison of the images infringed by CREXi in this lawsuit and the images infringed by Xceligent in *CoStar Group, Inc. v. Xceligent, Inc.*, No. 16-CV-01288 (W.D. Mo. 2012). The images at issue in *Xceligent* were identified on the public docket.  *See* Dkt. 1-7 through 1-10.  The comparison revealed that 307 images at issue in this case were also subject to the settlement and permanent injunction entered in *Xceligent*.") |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| **CoStar's Competitive Intelligence on CREXi.com** | |
| 142.  In late March and early April 2020, CoStar scraped publicly available property listing and broker information from CREXi.com. | • Malinee Decl. Ex. 4 (B. McGetrick Dep. Tr. (Jan. 16, 2024) (30(b)(6) testimony), at 285:24–286:2 (testifying that CoStar scraped CREXi's website))<br>• Malinee Decl. Ex. 5 (B. McGetrick Dep. Tr. (Mar. 26, 2024) (30(b)(6) testimony), at 19:14–20, 31:5–7, 64:13–22 (testifying that the scrape occurred on March 23 and April 8, 2020)) |
| 143.  The scrape was performed to conduct competitive intelligence for research, sales, and marketing purposes. | • Malinee Decl. Ex. 4 (B. McGetrick Dep. Tr. (Jan. 16, 2024) (30(b)(6) testimony), at 286:12–22 ("Q. Okay. How did that come to pass, that CoStar scraped Crexi's website?  A.  Sales had given feedback to research that in certain markets the sales people felt that they were losing or potentially losing clients because the broker said that Crexi had more listings than CoStar did in those markets.  To do a competitive analysis, a scrape was done to see if that story bore out on what the sales people were saying."))<br>• Malinee Decl. Ex. 5 (B. McGetrick Dep. Tr. (Mar. 26, 2024) (30(b)(6) testimony), at 21:4–8 (testifying that one intent of the |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | scrape was "to see if the feedback that was received from CoStar sales representatives that they were hearing from brokers that they were only listed on CREXI and not on CoStar, to see if that was true or not.")); *see also id.* at 30:1–31:15 (testifying that part of the scrape was done at the direction of a CoStar marketing employee)<br>• Malinee Decl. Ex. 19 (L. Ruggles Dep. Tr. (Feb. 2, 2024), at 96:7–11 ("So CREXi was advertising that it was the place with all the listings. And so I asked Jaye -- I'm sorry, Jason if we could scrape CREXi's data to do a market comparison and analysis of market share."))<br>• Malinee Decl. Ex. 8 (D. Edalatkhah Dep. Tr. (Feb. 14, 2024), at 120:23–121:5 (testifying that a scrape was conducted to verify the accuracy of CREXi's marketing claims)) |
| 144.  CoStar did not scrape any CRE photographs. | • Malinee Decl. Ex. 5 (B. McGetrick Dep. Tr. (Mar. 26, 2024) (30(b)(6) testimony), at 18:15–20 (testifying that the scrape involved "listings, property, and contact data"))<br>• Malinee Decl. Ex. 170 (Dep. Ex. 1416, |

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| | CoStar00461789 (spreadsheet containing scraped data)) |
| | • Malinee Decl. Ex. 171 (Dep. Ex. 1417, CoStar00461790 (spreadsheet containing scraped data)) |

Dated:  August 20, 2024

Respectfully submitted,

**LATHAM & WATKINS LLP**

By:      */s/ Nicholas J. Boyle*
Nicholas J. Boyle
(admitted *pro hac vice*)
Sarah A. Tomkowiak
(admitted *pro hac vice*)
Anne C. Malinee
(admitted *pro hac vice*)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201
Email: nicholas.boyle@lw.com
sarah.tomkowiak@lw.com
anne.malinee@lw.com

Elyse M. Greenwald
(Bar No. 268050)
10250 Constellation Boulevard
Suite 1100
Los Angeles, CA 90067
Tel: 424.653.5500
Fax: 424.653.5501
Email: elyse.greenwald@lw.com

Caitlin E. Dahl
(admitted *pro hac vice*)
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: 312.876.7700
Fax: 312.993.9767
Email: caitlin.dahl@lw.com

1

2

3          *Attorneys for Plaintiffs and*
           *Counterdefendants CoStar Group, Inc. and*
           *CoStar Realty Information, Inc.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28