KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS #158708
epeters@keker.com
WARREN A. BRAUNIG #243884
wbraunig@keker.com
NICHOLAS S. GOLDBERG #273614
ngoldberg@keker.com
KATIE LYNN JOYCE #308263
kjoyce@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendant and Counterclaimant
COMMERCIAL REAL ESTATE EXCHANGE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COSTAR GROUP, INC., AND COSTAR REALTY INFORMATION INC., <br><br> Plaintiffs, <br><br> v. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Defendant. | Case No. 2:20-CV-08819 CBM (ASx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT COMMERCIAL REAL ESTATE EXCHANGE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date:           December 10, 2024 <br> Time:           10:00 a.m. <br> Ctrm:          8D, 8th Floor <br> Judge:         Hon. Consuelo B. Marshall |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Counterclaimant, <br><br> v. <br><br> COSTAR GROUP, INC. AND COSTAR REALTY INFORMATION, INC., <br><br> Counterdefendants. | Date Filed:           September 25, 2020 <br><br> Pre-Trial Conf.:    February 11, 2025 <br> Trial Date:           March 11, 2025 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.    BACKGROUND ............................................................................. 3

    A.    CREXi's platform is populated with images uploaded directly by or at the direction of its users. ............................... 3

    B.    CoStar's logo has never been used or understood as conveying copyright ownership. ............................................. 4

    C.    CoStar filed this lawsuit without ever sending a takedown request. ...................................................................................... 4

III.    ARGUMENT ................................................................................. 5

    A.    CREXi is entitled to summary judgment on CoStar's second and third causes of action (the DMCA claims). ................ 6

        1.    CoStar cannot show cognizable CMI. ......................... 6

        2.    CoStar cannot show either of the two scienter elements. ............................................................................ 10

    B.    CREXi is entitled to partial summary judgment on copyright infringement because CoStar cannot prove volitional conduct. ................................................................................ 11

    C.    CREXi is entitled to partial summary judgment on copyright infringement based on CREXi's safe-harbor defense. ........ 13

        1.    CREXi satisfies the threshold elements for safe-harbor protection. ....................................................................... 14

        2.    All images uploaded "at the direction of a user" qualify for safe-harbor protection. ............................. 15

        3.    CREXi satisfies the secondary conditions for the safe harbor. .............................................................................. 17

            a.    CREXi did not have knowledge of infringement, and acted expeditiously to remove the accused images once notified. .......................................... 17

            b.    CREXi did not exert substantial influence over users' activities on its platform or receive a financial benefit. ............................................... 19

    D.    CREXi is entitled to summary judgment on all time-barred claims. .................................................................................. 20

IV.    CONCLUSION ............................................................................ 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aaberg v. Francesca's Collections, Inc.*,
2018 WL 1583037 (S.D.N.Y. Mar. 27, 2018) ...................................................... 8

*Art of Design, Inc. v. Pontoon Boat, LLC*,
2017 WL 3608219 (N.D. Ind. Aug. 22, 2017) .................................................... 8

*Avila v. Travelers Ins. Co.*,
651 F.2d 658 (9th Cir. 1981) ............................................................................. 5

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
644 F. Supp. 3d 602 (C.D. Cal. 2022) ............................................................. 18

*Bolano v. Grant*,
2023 WL 4291980 (C.D. Cal. May 16, 2023) .................................................... 20

*Cal. Sansome Co. v. U.S. Gypsum*,
55 F.3d 1402 (9th Cir. 1995) ........................................................................... 20

*Color Image Apparel, Inc. v. Jaeschke*,
2022 WL 2643476 (C.D. Cal. June 7, 2022) .................................................... 21

*Columbia Pictures Indus., Inc. v. Fung*,
2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) .................................................... 9

*Costar Grp. Inc. v. Loopnet, Inc.*,
164 F. Supp. 2d 688 (D. Md. 2001),
*aff'd*, 373 F.3d 544 (4th Cir. 2004) ................................................................ 16

*CoStar Grp., Inc. v. LoopNet, Inc.*,
373 F.3d 544 (4th Cir. 2004) ........................................................... 10, 12, 13, 16

*Davis v. Pinterest, Inc.*,
2023 WL 5695992 (9th Cir. Sept. 5, 2023) ...................................................... 16

*Diamond Resorts U. S. Collection Dev., LLC v. Pandora Mktg., LLC*,
656 F. Supp. 3d 1073 (C.D. Cal. 2023) ............................................................ 20

*Fahmy v. Jay-Z*,
835 F. Supp. 2d 783 (C.D. Cal. 2011) .............................................................. 21

ii

*Fashion Nova, LLC v. Blush Mark, Inc.,*
  2023 WL 2540418 (C.D. Cal. Mar. 15, 2023) ................................................... 6, 9

*Fashion Nova, LLC v. Blush Mark, Inc.,*
  2023 WL 4307646 (C.D. Cal. June 30, 2023) ......................................................... 8

*Fischer v. Forrest,*
  286 F. Supp. 3d 590 (S.D.N.Y. 2018),
  *aff'd,* 968 F.3d 216 (2d Cir. 2020) ......................................................................... 9

*Fox Broad. Co. v. Dish Network L.L.C.,*
  747 F.3d 1060 (9th Cir. 2014) ............................................................................. 11

*Gutenberg v. Move, Inc.,*
  2021 WL 3710014 (C.D. Cal. Aug. 20, 2021) ..................................................... 13

*Harrington v. Pinterest, Inc.,*
  2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) ..................................................... 10

*Hunley v. Instagram, LLC,*
  73 F.4th 1060 (9th Cir. 2023) ............................................................................... 11

*IQ Grp., Ltd. v. Wiesner Pub., LLC,*
  409 F. Supp. 2d 587 (D.N.J. 2006), *abrogated on other grounds* ...................... 8

*Kepner-Tregoe, Inc. v. Exec. Dev., Inc.,*
  79 F. Supp. 2d 474 (D.N.J. 1999),
  *aff'd,* 276 F.3d 577 (3d Cir. 2001) ....................................................................... 21

*Logan v. Meta Platforms, Inc.,*
  636 F. Supp. 3d 1052 (N.D. Cal. 2022) ............................................................... 10

*Long v. Dorset,*
  369 F. Supp. 3d 939 (N.D. Cal. 2019) ........................................................... 18, 19

*Media Rights Techs., Inc. v. Microsoft Corp.,*
  922 F.3d 1014 (9th Cir. 2019) ............................................................................. 20

*Minden Pictures, Inc., v. Buzzfeed, Inc.,*
  390 F. Supp. 3d 461 (S.D.N.Y. 2019) .................................................................. 21

*Obodai v. Demand Media, Inc.,*
  2012 WL 2189740 (S.D.N.Y. June 13, 2012),
  *aff'd,* 522 F.App'x 41 (2d Cir. 2013) .................................................................. 15

iii

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   971 F.3d 1042 (9th Cir. 2020)............................................................20, 21

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007)..................................................14, 15, 19

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017).......................................................2, 11, 12

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
   2012 WL 414803 (N.D. Ill. Feb. 8, 2012)...........................................8

*Schneider v. YouTube, LLC*,
   674 F. Supp. 3d 704, 724 (N.D. Cal. 2023) .......................................11

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018)............................................................6, 11

*Stross v. Zillow, Inc.*,
   2023 WL 8518904 (9th Cir. Dec. 8, 2023) .......................................13

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013)..................................................14, 17, 18

*UMG Recordings, Inc. v. Veoh Networks Inc.*,
   665 F. Supp. 2d 1099 (C.D. Cal. 2009),
   *aff'd*, 718 F.3d 1006 (9th Cir. 2013) .................................................15

*UMG Recordings v. Veoh Networks, Inc.*,
   620 F. Supp. 2d 1081 (C.D. Cal. 2008)............................................16

*Ventura Content, Ltd. v. Motherless, Inc.*,
   885 F.3d 597 (9th Cir. 2018).....................................................*passim*

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019)..................................................11, 12, 13

*Viacom Int'l Inc. v. YouTube, Inc.*,
   718 F. Supp. 2d 514 (S.D.N.Y. 2010), *rev'd on other grounds*.........15

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
   43 F.4th 1313 (11th Cir. 2022)....................................................10, 11

*Warner Chappell Music, Inc. v. Nealy*,
   144 S. Ct. 1135 (2024) .......................................................................20

iv

**Federal Statutes**

15 U.S.C. § 1127...................................................................................................8

17 U.S.C. § 507.............................................................................................3, 19

17 U.S.C. § 512...........................................................................................*passim*

17 U.S.C. § 1202.........................................................................................*passim*

**Rules**

Fed. R. Civ. P. 56...............................................................................................5

**Other Authorities**

4 Nimmer on Copyright § 12B.04 (2024) ..................................................17

## I.    INTRODUCTION

CREXi moves for summary judgment to streamline CoStar's overblown case. The claims in CoStar's complaint have crumbled. CoStar has abandoned four of its seven causes of action, including its misappropriation, breach of contract, false advertising, and unfair competition claims. CoStar's only remaining claims are (1) for removal of copyright management information ("CMI"), or distribution of images with removed CMI, in violation of the Digital Millennium Copyright Act ("DMCA"); and (2) for copyright infringement as to 44,339 images. These remaining claims have all but fallen apart in discovery. No fact dispute remains as to CoStar's DMCA claims or the vast majority of allegedly infringing images. CREXi is entitled to partial summary judgment accordingly.

***DMCA***: The Court should grant summary judgment on the entirety of CoStar's DMCA claims for two ***separate but independent*** reasons.

*First*, CoStar cannot prove that its pinwheel logo is CMI, which is a prerequisite to a DMCA claim. CoStar's logo does not include CoStar's name, the © copyright symbol, information about the registration, or any other indicia that CoStar owns the copyright in the marked image, as the law requires. In fact, prior to this lawsuit, CoStar routinely applied its logo to images *it does not own*, and told users it would do so. CoStar's executives and employees have testified that they do not understand CoStar's logo to mean CoStar owns a copyright in the image. And a survey conducted by Dr. Tülin Erdem, Professor of Business and Marketing at NYU, confirms that the public does not understand CoStar's logo as a sign of copyright ownership. *Each* of these points is fatal to CoStar's theory of CMI, and thus fatal to its DMCA claims.

*Second*, CoStar cannot demonstrate the requisite double scienter for a DMCA claim. CoStar cannot show that CREXi removed CoStar's logo knowing it was CMI. Nor can CoStar show that CREXi did so knowing that such removal would "induce, enable, facilitate, or conceal" copyright infringement. 17 U.S.C. § 1202(b).

1

***Copyright infringement***: The Court should grant partial summary judgment, as to subsets of images accused in this case, on two separate grounds.

*First*, as to the subset of images **uploaded by CREXi's users**, CoStar cannot prove that CREXi engaged in the requisite "volitional conduct."[1] *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) ("*Perfect 10 I*"). CREXi is a listing platform that relies on users to provide content and images for their listings. Of the 20 million images uploaded to CREXi since its founding, CoStar has alleged that a tiny fraction (44,339, or 0.2%) are CoStar-copyrighted images. But even as to this tiny fraction, it is undisputed that most were never touched by CREXi, and were instead uploaded *directly by the users themselves*. As to these User-Uploaded Images, CoStar's infringement claims fail as matter of black-letter law. CREXi did not engage in "volitional conduct" as required under the Copyright Act, and CoStar's decision to continue pursuing claims for these images is indefensible.

*Second*, CREXi is entitled to safe-harbor protection from CoStar's copyright infringement claims for all images **stored "at the direction of a user."**[2] 17 U.S.C. § 512(c)(1). The copyright safe harbor creates a notice-and-takedown procedure that gives copyright-holders a straightforward means of preventing infringement, while protecting entities (like CREXi) that host third-party content, so long as they maintain a legally compliant takedown process. Here, CREXi always had such a process, and it is undisputed that CoStar never submitted a takedown notice before filing suit. Indeed, when CoStar finally served CREXi with a takedown notice, *three years after filing suit*, CREXi promptly removed the identified images, as the law contemplates. Accordingly, for all images that were uploaded or supplied by a

---

[1] There are 23,609 images in this subset. Statement of Uncontroverted Facts ("SUF"): 46.

[2] There are 36,637 images in this subset, which includes the 23,609 images uploaded *directly* by CREXi's users, plus an 13,028 additional images. SUF:46, 73.

user, and thus hosted "at the direction of a user," CREXi is entitled to safe-harbor protection.

***Statute of limitations***: As to 5,456 images, CoStar's DMCA and copyright infringement claims are also barred by the three-year statute of limitations. 17 U.S.C. § 507(b). CoStar had actual knowledge that CoStar images were appearing on CREXi's site by December 2019, and had constructive knowledge even earlier. But CoStar did not accuse thousands of those images until February 2023. CoStar's infringement and DMCA claims for those images are time-barred.

## II.    BACKGROUND[3]

### A.    CREXi's platform is populated with images uploaded directly by or at the direction of its users.

CREXi operates a commercial real estate ("CRE") listing platform that facilitates buying, selling, and leasing properties. SUF:27-29. The CRE data and images appearing on CREXi's platform are supplied by users. SUF:28-30. CREXi *hosts* the images and data supplied by users, but CREXi is not the source of the data or images.

There are various ways for users to get images onto the CREXi platform. In most instances, a user uploads the images directly to a listing through a webform on CREXi.com. SUF:30-36. CREXi also maintains relationships with third parties, like Multiple Listing Services ("MLSs"), that allow automatic upload of images through an API—a software link, created by the user, that allows CREXi's website to receive data on a regular basis. SUF:40-43. For these User-Uploaded Images, CREXi plays no affirmative role in the upload and display process.

Alternatively, CREXi users may direct CREXi to upload their images. Users may do so by sending CREXi an electronic flyer that contains the images, by sharing images via a cloud service like Dropbox, or by directing CREXi to a

---

[3] Except as otherwise stated, all emphases in quoted text are added, and all citations, alterations, and internal quotation marks are omitted.

website where the listing already exists (e.g, the broker's own website). SUF:60-72. For these User-Directed Images, CREXi employees and vendors implement the brokers' direction, consistent with CREXi's policy to obtain broker permission before uploading images. *Id.*

Under either method, CREXi requires its users to affirm that they own or have appropriate permission to upload images to CREXi's platform. SUF:49-59. In addition, CREXi has always maintained a robust system for ensuring that the rights of third-party copyright-holders are respected. SUF:85-97. CREXi's Terms explain the process for submitting takedown notices regarding a suspected copyright violation, and further explain that repeat infringers will be terminated. *Id.* Internally, CREXi has always maintained detailed instructions for CREXi employees to follow when a notice is submitted. *Id.*

### B. CoStar's logo has never been used or understood as conveying copyright ownership.

CoStar is also in the commercial real estate industry. CoStar stamps a semi-transparent version of its corporate logo (a pinwheel shape, ✿) in the bottom right-hand corner of certain real estate images. SUF:1. CoStar's logo does not identify CoStar by name, and does not use the word "copyright" or the © symbol. *Id.* Prior to filing this lawsuit, CoStar's Terms of Service stated that CoStar would apply its logo to images owned by third parties. SUF:2-3. Numerous real estate brokers have complained to CREXi and CoStar about CoStar watermarking images owned by brokers. SUF:4. Even CoStar's own executives and employees do not understand CoStar's logo as a sign of copyright ownership. SUF:5-13, 25. Unsurprisingly, an empirical survey found that only 3% of respondents (even when conservatively limited to those transacting in real estate) understand CoStar's logo to indicate copyright ownership. SUF:23-24.

### C. CoStar filed this lawsuit without ever sending a takedown request.

CoStar knew its images were on CREXi's site for months, if not years,

before filing the present suit. SUF:74-81. Yet CoStar never submitted a takedown notice to CREXi for the tens of thousands of images it accused in the First and Second Amended Complaints. SUF:82-84. Instead, it chose to sit on its rights to manufacture this costly, abusive litigation. CoStar waited years, until June 2023, to send its first takedown notice, eventually accusing 1,978 images. SUF:98-105. CREXi immediately took those images down, but undeterred, CoStar insisted on filing a Third Amended Complaint to accuse 1,386 of the images that were the subject of those takedown notices. SUF:106-113. In any event, for thousands of images, CoStar had knowledge of their appearance on CREXi in 2019-2020, but did not add them to this case until 2023. SUF:74-81.

On September 25, 2020, CoStar filed the present suit alleging copyright infringement, violations of the DMCA, common-law misappropriation, breach of contract, false advertising and unfair and unlawful competition. After discovery closed, CoStar abandoned its causes of action for misappropriation, breach of contract, false advertising, and unfair competition claims. ECF-776.

## III.  ARGUMENT

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once . . . [the movant's] burden is met by presenting evidence which, if uncontradicted, would entitle the moving party to a directed verdict at trial, Rule 56(e) shifts the burden to the opposing party to set forth specific facts showing that there is a genuine issue for trial." *Avila v. Travelers Ins. Co.*, 651 F.2d 658, 660 (9th Cir. 1981).

Here, the Court should grant summary judgment as to (1) CoStar's DMCA claims in their entirety; (2) CoStar's claims of copyright infringement regarding 23,609 User-Uploaded images for which CREXi engaged in no volitional conduct; (3) CoStar's claims of copyright infringement regarding all User-Uploaded images, plus 13,028 additional User-Directed images, because CREXi is entitled to safe-

5

harbor protection; and (4) copyright infringement and DMCA claims, as to 5,456 images that are time-barred.

### A.    CREXi is entitled to summary judgment on CoStar's second and third causes of action (the DMCA claims).

As relevant here, the DMCA bars (1) "intentionally remov[ing] or alter[ing] . . . copyright management information" or (2) "distribut[ing] . . . works, [or] copies of works, . . . knowing that copyright management information has been removed or altered." 17 U.S.C. § 1202(b)(1), (3).[4] As an initial matter, the plaintiff must establish that some information conveyed with the work is CMI—*i.e.*, something that "informs the public" that the work is copyrighted. *Fashion Nova, LLC v. Blush Mark, Inc.*, 2023 WL 2540418, at *3 (C.D. Cal. Mar. 15, 2023). The plaintiff must also prove that the defendant "knew" or had "reasonable grounds to know" that its conduct would "induce, enable, facilitate, or conceal [copyright] infringement." 17 U.S.C. § 1202(b); *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018). Because CoStar cannot establish these elements, CREXi is entitled to summary judgment on CoStar's DMCA claims.

*First*, CoStar cannot carry its burden to show that the accused images contain legally cognizable "copyright management information," or CMI. CoStar relies solely on its pinwheel logo as the alleged CMI. But CoStar's pinwheel logo meets none of the criteria of CMI, is not recognized by the public as CMI, and is not even known and used *within CoStar* as CMI. *Second*, there is no evidence suggesting that CREXi ever had the requisite knowledge or intent. For each of these separate and independently sufficient reasons, CoStar's DMCA claims fail.

### 1.    CoStar cannot show cognizable CMI.

CMI is defined in the DMCA as any of the following information, when "conveyed in connection with copies . . . of a work":

---

[4] CoStar's second claim for relief is premised on the former, 17 U.S.C. § 1202(b)(1). CoStar's third claim for relief is premised on the latter, 17 U.S.C. § 1202(b)(3).

- "title and other information identifying the work, including the information set forth on a notice of copyright," 17 U.S.C. § 1202(c)(1);

- "name of, and other identifying information about, the author of a work," *id.* § 1202(c)(2);

- "name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright," *id.* § 1202(c)(3); or

- "[i]dentifying numbers or symbols referring to such information or links to such information," *id.* § 1202(c)(7).

Here, it is undisputed that CoStar does not convey the title of any "works," the name of the author, the name of the copyright owner, or any other information "set forth on a notice of copyright." *Id.* § 1202(c)(1)-(3). CoStar admits as much. SUF:1. CoStar's entire CMI theory instead rests on the notion that a small, gray, semi-transparent pinwheel logo in the corner of an image (✿) suffices in lieu of *any and all* of the foregoing information. *Id.* It does not, as demonstrated by multiple points of undisputed fact, each fatal to CoStar's theory.

First, CoStar's policies prior to this lawsuit are irreconcilable with its new, litigation-driven position regarding CMI. Until March 2021, CoStar expressly stated in the LoopNet terms of service that it may add watermarks to images that CoStar/LoopNet *does not own*—images uploaded by LoopNet users. SUF:2-3. CoStar explained that it did so "to protect against the copying or further distribution of *your photographs* without your permission." *Id.* CoStar said the same in sworn discovery responses in prior litigation. SUF:2. And CoStar repeatedly told its own customers that its policy was to stamp the logo on customers' images. SUF:6-8. Plainly, a logo used by CoStar to mark *other parties'* images cannot be CoStar's CMI. *See* 17 U.S.C. § 1202(c).

Second, CoStar admits that another logo CoStar historically applied to images—a stylized version of CoStar's name—is not CMI, even though it conveys *more* information than the pinwheel. SUF:16. CoStar admits that it adopted the pinwheel logo to replace the stylized name logo; that the two logos are intended to

7

serve the same purpose; and that the pinwheel was designed to be more "subtle" to viewers. SUF:17. It cannot be that the pinwheel logo is CMI, when its more explicit predecessor, conveying more information, is *not*.

Third, CoStar's pinwheel logo is a trademark owned by CoStar. SUF:18; *see also* 15 U.S.C. § 1127. Courts have recognized that a symbolic logo, standing alone, cannot be CMI, because holding otherwise would improperly "turn[] the DMCA into a species of mutant trademark/copyright law, blurring the boundaries between the law of trademark and that of copyright." *IQ Grp., Ltd. v. Wiesner Pub., LLC*, 409 F. Supp. 2d 587, 592 (D.N.J. 2006), *abrogated on other grounds*. The trademarked logo cannot give rise to a DMCA claim standing alone. *Id.* ("If every removal or alteration of a logo attached to a copy of a work gives rise [to] a cause of action under the DMCA, the DMCA becomes an extension of . . . trademark law."); *see also, e.g.*, *Aaberg v. Francesca's Collections, Inc.*, 2018 WL 1583037, at *7 (S.D.N.Y. Mar. 27, 2018) (accord).

Fourth, inconsistencies in CoStar's use of the pinwheel logo negate Costar's ability to use it as CMI. For example, CoStar has sued for copyright infringement on numerous images that *do not* bear its logo. SUF:19. CoStar has further admitted that it applied its logo to images that it does not own, and that were taken by brokers and uploaded to CoStar's site. SUF:20. There is independent evidence from brokers and photographers confirming as much. *Id.* And there are tens of thousands of other images bearing CoStar's logo, which have appeared on CREXi's website, as to which CoStar does not allege infringement at all. SUF:22. CoStar's pinwheel logo is, at best, commercial branding, SUF:21, rather than CMI. *Fashion Nova, LLC v. Blush Mark, Inc.*, 2023 WL 4307646, at *6 (C.D. Cal. June 30, 2023) ("[A]llow[ing] Plaintiff to make out a DMCA claim based on alleged CMI that does not link up in any way to the copyright registration is an invitation to unfair litigation."); *see also, e.g.*, *Art of Design, Inc. v. Pontoon Boat, LLC*, 2017 WL 3608219, at *5 (N.D. Ind. Aug. 22, 2017) (same); *Pers. Keepsakes, Inc. v.*

8

*Personalizationmall.com, Inc.*, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012) (same).

Fifth, CoStar's logo is plainly not understood by the public as indicating copyright ownership. After this Court initially dismissed CoStar's DMCA claims, ECF-71, CoStar revised its claims to allege that its logo was widely understood as an indicator of copyright, ECF-289-1. That allegation may have been enough to overcome a motion to dismiss, ECF-406 at 6, but uncontroverted evidence now demonstrates it isn't true. In an empirical study conducted by NYU professor Dr. Tülin Erdem, only *3%* of respondents presented with a CRE image bearing the CoStar pinwheel logo understood the logo to convey that CoStar owns a copyright. SUF:23-24. More respondents believed that the pinwheel logo means that Zillow, Star Alliance, or the American Recycling Center owns the image. *Id.* CoStar has no responsive survey, or any other evidence, that proves CoStar's logo is widely understood as CMI, which is fatal to CoStar's claim. "[T]he point of CMI is *to inform the public* that something is copyrighted and to prevent infringement." *Fashion Nova*, 2023 WL 2540418, at *3; *see also Fischer v. Forrest*, 286 F. Supp. 3d 590, 610-11 (S.D.N.Y. 2018) (if alleged CMI does not "inform *the public* that a work is copyrighted and by whom," it is not CMI), *aff'd*, 968 F.3d 216 (2d Cir. 2020). The Court can grant summary judgment based on the uncontroverted survey evidence alone. *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 2009 WL 6355911, at *4 (C.D. Cal. Dec. 21, 2009).

Finally, although CMI is intended to convey the requisite copyright information "to the public," *even CoStar's own executives and employees* do not understand its pinwheel logo as CMI. From senior management to rank-and-file client representatives, CoStar's employees repeatedly confirmed that the CoStar pinwheel logo was ***not*** limited to CoStar-owned images and expressed confusion about the logo's connection to copyright status. SUF:5-13, 25-26.

It was only after filing this lawsuit that CoStar devised the position that its

9

2698362

pinwheel logo is CMI. But CoStar's litigation-driven CMI theory is irreconcilable with multiple independent points of undisputed fact. CoStar's pinwheel logo is not CMI. CoStar's DMCA claims therefore fail.

### 2.    CoStar cannot show either of the two scienter elements.

Even if CoStar's logo were CMI (it is not), CoStar's DMCA claims fail for a separate and distinct reason—because CoStar cannot establish the requisite scienter. To prevail on its DMCA claim, CoStar must prove that CREXi **intentionally** removed material that it knew to be CMI or that CREXi distributed the accused images knowing that such material was removed. 17 U.S.C. § 1202(b)(1), (3). Second, CoStar must prove that CREXi had **knowledge** that its actions would "induce, enable, facilitate, or conceal" copyright infringement. 17 U.S.C. § 1202(b). CoStar cannot satisfy either prong of this "double scienter requirement." *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1064 (N.D. Cal. 2022).

On the first prong, it is undisputed that CREXi lacked knowledge that CoStar's logo was CMI. CREXi witnesses testified that CREXi did not know CoStar's logo was copyright information and cropped CoStar's logo because CREXi wanted to avoid CoStar branding on CREXi's platform. SUF:14. That is unsurprising. At the time, CoStar's public-facing terms of service stated that CoStar's logo would be applied to **third-party** images uploaded to LoopNet. SUF:2-3. And as CoStar has admitted, CRE businesses routinely apply logos for branding purposes, despite not owning a copyright to the branded images. SUF:15. Indeed, *CoStar* itself cropped out third-party logos from images for the same reason. SUF:22. Summary judgment can be granted on this basis alone. *See Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1323 (11th Cir. 2022) (DMCA claims fail where "[t]here is no indication in the record that [the defendant] knew at the relevant time" that the alleged CMI was being used as CMI); *Harrington v. Pinterest, Inc.*, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) (DMCA claims fail absent "sufficient facts from which to infer [the defendant] knew as to any

particular [w]ork that [the alleged CMI] constituted CMI").

On the second prong, CoStar has no evidence that CREXi cropped CoStar's logo or distributed cropped images with the requisite intent to facilitate any act of infringement. No evidence connects any removal of CMI to any particular risk of infringement, much less knowledge or intent to bring about infringement. *See Corelogic*, 899 F.3d at 676 n.6 (affirming summary judgment of no DMCA violation where "[t]here is no evidence . . . that the infringement identified had anything to do with the removal [of alleged CMI]"); *Victor Elias*, 43 F.4th at 1323 (same). Importantly, "[a] generic assertion that a general possibility of infringement exists because CMI was removed won't wash." *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 724 (N.D. Cal. 2023). CoStar must have "affirmative evidence" of scienter to survive summary judgment. *Corelogic*, 899 F.3d at 673. CoStar does not; and for this independent reason, CREXi is entitled to summary judgment on CoStar's DMCA claims.

## B. CREXi is entitled to partial summary judgment on copyright infringement because CoStar cannot prove volitional conduct.

In its copyright claim, CoStar alleges infringement of 44,339 images. SUF:37. More than half of those images are plainly not actionable as a matter of law—namely, the 23,609 User-Uploaded Images added to CREXi's system directly by CREXi users. SUF:46. As to those images, CoStar cannot carry its burden to show that CREXi engaged in "volitional conduct" causing infringement. *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1074 (9th Cir. 2023); *Perfect 10 I*, 847 F.3d at 666.

To prove volitional conduct, CoStar must show that CREXi "exercised control" beyond the "general operation of" its website. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019). Specifically, CREXi must have selected the accused images "for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of" the accused CoStar images. *Id.* Merely "operating a system used to make copies" is not enough. *Fox Broad. Co. v. Dish*

2698362

*Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014); *Zillow*, 918 F.3d at 732 (no copyright liability for "automatic copying, storage, and transmission of copyrighted materials, when instigated by others").

CoStar cannot carry its burden as to User-Uploaded Images. All User-Uploaded Images were uploaded directly to CREXi's online marketplace without intervening action from CREXi. SUF:46. As a technical matter, the User-Uploaded Images were uploaded in one of two ways. The vast majority (22,664) were uploaded by a user who clicked the "Add Images" option on the CREXi web portal. SUF:38. This is akin to a user uploading a photo to Instagram or Facebook. The rest (945) were uploaded through users' API feeds—a software link, set up by users, that pushes data to CREXi's website automatically. SUF:44. In both scenarios, the user's upload of images is not "volitional conduct" by CREXi. *Zillow*, 918 F.3d at 734.

As to all User-Uploaded Images, CoStar has no evidence that CREXi did *anything* beyond offering its platform to users. Decisions regarding selection or appearance of images were exclusively in users' hands. SUF:31-36, 39. CREXi had no role in selecting images for transmission or storage; determining how images would be ordered; or reviewing images for content or quality, SUF:31-36, 39, 47, other than two automatic filters (one implemented at CoStar's request) that scan for images CoStar claims to own, so that CREXi can avoid potential infringement in the first place, SUF:47. But employing a technological system that is designed to "avoid and eliminate copyright infringement" is not volitional conduct. *Zillow*, 918 F.3d at 733.

It is settled law that CREXi cannot be liable for "passively storing material at the direction of users in order to make that material available to other users upon request." *Perfect 10 I*, 847 F.3d at 668. Indeed, CoStar previously lost a copyright case on these very grounds. *See CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004). In that case, LoopNet (then CoStar's competitor) provided a

12

service similar to CREXi's—"a web hosting service that enable[d] users . . . to post listings" online. *Id.* at 547. Although LoopNet employees were considerably *more* involved in content monitoring than CREXi—manually reviewing each uploaded image—the Fourth Circuit affirmed summary judgment for LoopNet, and against CoStar, because there was no "volitional conduct." *Id.* As the court concluded, "an ISP who owns an electronic facility that responds automatically to users' input is not a direct infringer." *Id.* at 550. The same is true for User-Uploaded Images on CREXi's platform.

The Ninth Circuit adopted the same approach in *Zillow*, holding that certain photos on Zillow's residential real estate listing marketplace were submitted by "third-party sources" and "not selected by Zillow," thus negating the required element of "volitional conduct." 918 F.3d at 733. The court contrasted these user-uploaded photos—for which Zillow was not liable as a matter of law—with photos that Zillow itself "curated, selected, and tagged for searchable functionality" on a separate website. *Id.* at 737; *see also Stross v. Zillow, Inc.*, 2023 WL 8518904, at *1 (9th Cir. Dec. 8, 2023); *Gutenberg v. Move, Inc.*, 2021 WL 3710014, at *3 (C.D. Cal. Aug. 20, 2021). So too here. CoStar cannot show that CREXi engaged in volitional conduct as to User-Uploaded Images. The Court should grant summary judgment for CREXi as to these images.

### C. CREXi is entitled to partial summary judgment on copyright infringement based on CREXi's safe-harbor defense.

CREXi is also entitled to summary judgment as to 36,637 images based on the copyright safe harbor, 17 U.S.C. § 512.[5] This safe harbor protects service providers, such as CREXi, from liability as to certain works uploaded "at the direction of" users. 17 U.S.C. § 512(c). To qualify for the safe harbor, the service

---

[5] These 36,637 images consist of (1) the 23,609 User-Uploaded Images to which CoStar is *also* unable to carry its burden on the "volitional conduct" element; and (2) an additional 13,028 User-Directed Images that CREXi uploaded at user direction.

provider must first satisfy certain threshold requirements, and the copyright-holder must be unable to show that the service provider had knowledge of specific infringing works. *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014-15 (9th Cir. 2013). Here, the threshold requirements are readily satisfied. And CoStar, which failed to provide notice of the copyrights it is now suing on, cannot show that CREXi had the requisite knowledge of infringement.

### 1.    CREXi satisfies the threshold elements for safe-harbor protection.

Three threshold elements must be satisfied for safe-harbor eligibility: the party claiming safe harbor must (1) be a "service provider," (2) have "adopted and reasonably implemented" a repeat infringer policy, and (3) "not interfere with standard technical measures" used by copyright-holders. *See* 17 U.S.C. § 512(i). There is no genuine dispute that CREXi satisfies all three elements.

*First*, as an online platform hosting user-submitted content, CREXi is a "service provider," defined broadly as "a provider of online services or network access." *Id.* § 512(k); SUF:27-29. The Ninth Circuit recognizes platforms that allow users to submit images as service providers. *See Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 600, 619 (9th Cir. 2018).

*Second*, CREXi has adopted and reasonably implemented a repeat infringer policy. A service provider satisfies this element if it "has a working notification system [and] a procedure for dealing with [legally compliant] notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) ("*Perfect 10 II*").

Since its inception in 2015, CREXi has maintained a thorough system for dealing with notifications, both internally and in CREXi's public terms of use.[6]

---

[6] As contemplated by section 512, CREXi publicly displayed its designated agent's contact information on its website and provided that information to the Copyright Office. *See* 17 U.S.C. § 512(c)(2); SUF:88-90.

SUF:85-97. Despite CREXi's policies, it is undisputed that CoStar never availed itself of the notification or takedown system—as to any image—before filing its original complaint. SUF:82-84. Indeed, CREXi never received a takedown notice from CoStar until 2023, roughly three years after filing this action. SUF:98. CoStar has previously suggested that CREXi nonetheless had "red flag" knowledge of infringement as to images identified by an automated filter as containing a CoStar pinwheel logo. But CoStar's logo does not communicate ownership and is not CMI. *See supra* section III.A.1. And numerous courts have held that an automated filter does not give rise to "red flag" knowledge sufficient to require a service provider to invoke its repeat infringer policy. *See UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1117 (C.D. Cal. 2009), *aff'd*, 718 F.3d 1006 (9th Cir. 2013); *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 528 (S.D.N.Y. 2010), *rev'd on other grounds*.

**Third**, CREXi has not interfered with any "standard technical measures" taken by CoStar to protect its alleged copyright. Interference with technical measures refers to, for example, "advis[ing] or encourag[ing] users to conceal a work's copyrighted status," *Obodai v. Demand Media, Inc.*, 2012 WL 2189740, at *5 (S.D.N.Y. June 13, 2012), *aff'd*, 522 F.App'x 41 (2d Cir. 2013), or "actively prevent[ing] copyright owners from collecting information needed to issue such notifications," *Perfect 10 II*, 488 F.3d at 1109. CREXi did nothing of the sort. To the contrary, CREXi's terms of service require users to warrant that they have permission to upload the images to CREXi's platform. SUF:49-59. CREXi is thus eligible for safe-harbor protection under section 512.

### 2. All images uploaded "at the direction of a user" qualify for safe-harbor protection.

Having satisfied the threshold requirements, CREXi is entitled to safe-harbor protection for all accused images uploaded "at the direction of the user." The "at the direction" requirement is met where the internet service provider either (1) "played

15

no role in making th[e] . . . material accessible on its site," or (2) only "carried out activities that were 'narrowly directed' towards enhancing the accessibility of the posts," such as reformatting posts or "screen[ing] out" unlawful material. *Ventura*, 885 F.3d at 605.

Two categories of CREXi images qualify. First, as to the 23,609 User-Uploaded Images, it is undisputed that CREXi played no role whatsoever in upload. *See supra* section III.B. These images were stored "at the direction of a user" and protected under section 512 because CREXi "played no role in making [them] accessible on its site." *Id.*; *see also Costar Grp. Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 702 (D. Md. 2001), *aff'd*, 373 F.3d 544 (4th Cir. 2004).

Second, an additional 13,028 User-Directed Images were uploaded at a CREXi user's express direction to do so.[7] Although CREXi mechanically uploaded these images at the direction of users, the act of uploading qualifies as conduct "narrowly directed towards enhancing the accessibility" of those images. *Davis v. Pinterest, Inc.*, 2023 WL 5695992, at *1 (9th Cir. Sept. 5, 2023). The Ninth Circuit has held that manual intervention by an employee does not preclude application of the safe harbor, so long as the intervention is not "discretionary." *Ventura*, 885 F.3d at 607. And it is undisputed that CREXi employees and vendors do not exercise discretion over the selection of images appearing on users' listings. SUF:69-72. Under similar circumstances, the *LoopNet* court found that LoopNet was entitled to safe-harbor protection even where employees were engaged in manual review of images, because that manual review "serve[d] only as a gateway" to access and not as "a selection process." *Costar*, 164 F. Supp. 2d at 702. Here too, CREXi employees and vendors served a narrow gateway function, converting content submitted by users into a form that can appear on CREXi's platform—an

---

[7] CREXi intends to prove at trial that it received direction from users to upload *every* image in this case. However, CREXi has taken a conservative approach to this motion, and moves for summary judgment only on the images as to which there cannot be any possible dispute of material fact as to the user's direction.

2698362

accessibility-enhancing function within the safe harbor. *See UMG Recordings v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081, 1092 (C.D. Cal. 2008).

### 3. CREXi satisfies the secondary conditions for the safe harbor.

Finally, the safe harbor defense requires that the service provider

(1)    did not "have actual knowledge that the material . . . on the system or network is infringing," **or** was not "aware of facts or circumstances from which infringing activity is apparent," **or** "upon obtaining such knowledge or awareness, act[ed] expeditiously to remove, or disable access to, the material";

(2)    did "not receive a financial benefit directly attributable to the infringing activity"; and

(3)    upon receiving a valid takedown notice, "respond[ed] expeditiously to remove . . . the material."

17 U.S.C. § 512(c)(1). These conditions are all satisfied here.

#### a. CREXi did not have knowledge of infringement, and acted expeditiously to remove the accused images once notified.

The Ninth Circuit has recognized that internet service providers generally "cannot readily ascertain what material is copyrighted and what is not." *UMG*, 718 F.3d at 1022. Accordingly, section 512 "places the burden of policing infringement on the copyright owner." *Ventura*, 885 F.3d at 608 (citing 17 U.S.C. § 512(c)(1)(A)). To defeat CREXi's entitlement to safe harbor, ***CoStar has the burden*** to establish "specific knowledge" of infringement—whether actual or apparent—for ***each image alleged***. *UMG*, 718 F.3d at 1021; *see also Ventura*, 885 F.3d at 610 n.37 (copyright-holder "must show knowledge, actual or red flag," for the "particular material" alleged to be infringing); 4 Nimmer on Copyright § 12B.04 (2024).

CoStar cannot carry this burden. CoStar's failure to send a takedown notice until after filing suit, and its failure to send *any* takedown notice as to all but a tiny fraction of images, SUF:82-84, "strip[s] it of the most powerful evidence of [CREXi]'s knowledge," *UMG*, 718 F.3d at 1020. Further, as discussed above,

CREXi had no red-flag knowledge of any infringing images. *See supra* section III.C.1. The Ninth Circuit has consistently upheld summary judgment for service providers when copyright-holders failed to give notice of specific infringing content before filing suit. *See Ventura*, 885 F.3d at 612; *UMG*, 718 F.3d at 1015. This is common sense. Copyright-holders "know precisely what materials they own, and are thus better able to efficiently identify infringing copies." *UMG*, 718 at 1022. Further, the Copyright Act "*assumes* that, from time to time, material belonging to someone else end[s] up on service providers' websites." *Id.* at 1024. It is therefore incumbent on a copyright-holder to make use of takedown notices—a step CoStar never took before suing.

Recognizing the importance of takedown notices to the integrity of the Copyright Act, the Central District has applied this precedent to halt abusive copyright litigation when the copyright-holder made no effort to avail itself of the takedown procedure. *BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 644 F. Supp. 3d 602, 610 (C.D. Cal. 2022). Here, as in *BMG*, CoStar sent no takedown notice before suing for infringement. SUF:82-84. Instead, CoStar lay in wait, then launched an overblown lawsuit to "leverage discovery procedures and effectively spread the substantial investigative costs to [the defendant] through this litigation." *BMG*, 644 F. Supp. 3d at 609-10. The Copyright Act does not allow this outcome.

Further, even if the Court concluded that CoStar carried its burden of showing that CREXi knew of infringement as to certain images, CREXi would still be entitled to safe-harbor protection as to those images, because it expeditiously removed *every* image identified by CoStar. Expeditious removal means that the service provider acts within days or weeks. *See e.g. Long v. Dorset*, 369 F. Supp. 3d 939, 946 (N.D. Cal. 2019) (collecting cases reflecting that removal in days or weeks is appropriate). When CoStar finally did send takedown notices in 2023, as to just 1,386 accused images, CREXi acted immediately, taking these images down within days, as the DMCA requires. SUF:98-113. For the remainder of the Asserted

18

Images, rather than serving a takedown notice, as section 512 requires, CoStar informed CREXi of the allegedly infringing images through its complaints, discovery responses, and letters sent by CoStar's counsel. SUF:111-113. Nonetheless, upon receiving each communication identifying the URL of a claimed infringement, CREXi removed the identified images expeditiously. *Id.*; *Ventura*, 885 F.3d at 612 (URLs required to identify infringing videos); *Long*, 369 F. Supp. at 946. CREXi thus took steps far beyond what the law requires to expeditiously remove all content brought to its attention.

### b. CREXi did not exert substantial influence over users' activities on its platform or receive a financial benefit.

A service provider may be deemed ineligible for safe-harbor protection if it "exert[s] 'substantial influence' on its users' activities" or receives a direct financial benefit due to alleged infringement. *Ventura*, 885 F.3d at 613. Neither applies here.

First, there is no evidence that CREXi exerts "substantial influence" over its users. CREXi's users are independent third parties. SUF:27-29. CREXi users decide what images are uploaded, when and how they are displayed, and when they are removed, with extremely limited exceptions (such as if the number of images exceeds CREXi's technical limits). SUF:69-72.

Second, there is no evidence that CREXi directly benefitted financially due to infringement. To satisfy that high bar, CoStar must show revenue "distinctly attributable to the infringing material at issue," *Ventura*, 885 F.3d at 613. But CREXi did not sell or license any of the accused images. SUF:48. It is undisputed that it is free to list properties on CREXi, and CREXi does not charge customers or earn revenues for images appearing on its platform. SUF:28. Although some users purchase a subscription for CREXi Pro or CREXi Intelligence services, there is no evidence that CREXi "attracted or retained subscriptions because of the infringement." *Perfect 10 II*, 488 F.3d at 1118. CREXi did not derive any "direct financial benefit" from the accused images. The safe-harbor applies in full.

19

**D.    CREXi is entitled to summary judgment on time-barred claims.**

Finally, CoStar's infringement and DMCA claims as to at least 5,456 images are barred by the applicable three-year statute of limitations. SUF:75-77; 17 U.S.C. § 507(b); *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1025 (9th Cir. 2019). Given that CoStar asserted these images on February 13, 2023, CoStar cannot assert copyright infringement or DMCA violations as to images that initially appeared on CREXi more than three years earlier, as CoStar had actual or constructive knowledge of the alleged infringement. CREXi is entitled to summary judgment for these images.

A claim may accrue under the Copyright Act when "an infringing act occurs," such as when the allegedly infringing work is reproduced or distributed. *Warner Chappell Music, Inc. v. Nealy*, 144 S. Ct. 1135, 1138 (2024). Under the "discovery rule," a claim may accrue once the plaintiff "had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [claim]." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020). However, the Supreme Court has "never decided" whether "the discovery rule governs the timeliness of copyright claims." *Warner*, 144 S. Ct. at 1138-39.

Even assuming the discovery rule applies, CREXi bears the initial burden of demonstrating that CoStar's claims would be time-barred, setting aside whether CoStar had notice. *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995). This requirement is met because these images were displayed more than three years before the SAC, in which they were first alleged. *See infra* section II.D. CoStar then bears the burden of showing the claims were not discovered and reasonably could not have been discovered within three years of the operative pleading. *Diamond Resorts U. S. Collection Dev., LLC v. Pandora Mktg., LLC*, 656 F. Supp. 3d 1073, 1087 (C.D. Cal. 2023). Summary judgment is appropriate where, as here, the copyright-holder's supposed lack of knowledge was not reasonable

1  under the circumstances. *Bolano v. Grant*, 2023 WL 4291980, at *3 (C.D. Cal. May
2  16, 2023).

3        Applying the discovery rule, CoStar's claims are barred as to 5,456 accused
4  images.[8] These images were either live on CREXi.com as of December 18, 2019,
5  when CoStar indisputably had actual knowledge of potential infringement, or
6  became live between that date and February 13, 2020, three years before CoStar
7  added them to this case. CoStar has admitted in sworn interrogatory responses that
8  it knew "CoStar-owned images were appearing on CREXi's website . . . as early as
9  late 2019." SUF:78. CoStar's privilege log confirms that CoStar anticipated the
10 present copyright litigation against CREXi no later than *December 18, 2019*.
11 SUF:79-80. Accordingly, as a matter of law, CoStar had *at least* constructive notice
12 of all accused images displayed on CREXi as of December 18, 2019. *Oracle Am.,*
13 *Inc.*, 971 F.3d at 1047-48 ("[S]uspicion of copyright infringement places upon the
14 plaintiff a duty to investigate further into possible infringements of its
15 copyrights.").

16       Courts have recognized that actual notice of one potential infringement
17 creates inquiry notice as to the defendant's other published works—particularly
18 where the plaintiff has actual notice of another alleged infringement on the same
19 platform. *See Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 790 (C.D. Cal. 2011)
20 (awareness of potential infringement creates "constructive notice that there may be
21 more infringing works on the market (especially produced by the same alleged
22 infringer)"); *see also, e.g.*, *Color Image Apparel, Inc. v. Jaeschke*, 2022 WL
23 2643476, at *5 (C.D. Cal. June 7, 2022); *Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*,
24 79 F. Supp. 2d 474, 488 (D.N.J. 1999), *aff'd*, 276 F.3d 577 (3d Cir. 2001). This
25 conclusion is particularly apt here, given that CoStar is a sophisticated actor that
26 has sued more than a dozen other entities to enforce its copyrights. SUF:81; *see*

27 ─────────────────
28 [8] If the discovery rule is inapplicable, then even more images are time-barred: a
   total of 7,300 images that were displayed on CREXi more than three years before
   CoStar filed suit on them.

*also Minden Pictures, Inc., v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) (fact that plaintiff was "a seasoned litigator that has filed 36 lawsuits to protect its copyrights" relevant to the constructive notice inquiry). CoStar's copyright infringement and DMCA claims for at least these 5,456 images are time-barred.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in CREXi's favor, as specified above and in CREXi's proposed order.


Dated: August 20, 2024             KEKER, VAN NEST & PETERS LLP



By:  */s/ Elliot R. Peters*
     Elliot R. Peters
     Warren A. Braunig
     Nicholas S. Goldberg
     Katie Lynn Joyce

     Attorneys for Defendant and Counterclaimant
     COMMERCIAL REAL ESTATE
     EXCHANGE, INC.

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant and Counterclaimant Commercial Real Estate Exchange, Inc., certifies that this brief contains 6,981 words, which complies with the word limit of Local Rule 11-6.1.

Dated: August 20, 2024                    KEKER, VAN NEST & PETERS LLP


                                          By:  */s/ Niall Frizzell*
                                               Niall Frizzell

                                               Attorneys for Defendant and Counterclaimant
                                               COMMERCIAL REAL ESTATE
                                               EXCHANGE, INC.

2698362