1  ELYSE M. GREENWALD (BAR NO. 268050)
   elyse.greenwald@lw.com
2  LATHAM & WATKINS LLP
   10250 Constellation Boulevard
3  Suite 1100
   Los Angeles, CA 90067
4  Tel: 424.653.5500
   Fax: 424.653.5501
5
   *Attorneys for Plaintiffs and Counterdefendants*
6  *CoStar Group, Inc. and CoStar Realty Information, Inc.*
7
   [Additional Counsel Listed on the Next Page]
8
                    **UNITED STATES DISTRICT COURT**
9                   **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC., | CASE NO. 2:20-cv-08819-CBM-AS |
| Plaintiffs, | **COSTAR'S OPPOSITION TO CREXI'S MOTION TO STAY** |
| v. | Date: September 23, 2025 |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., | Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Hon. Consuelo B. Marshall |
| Defendant. | |
| COMMERCIAL REAL ESTATE EXCHANGE, INC., | |
| Counterclaimant, | |
| v. | |
| COSTAR GROUP, INC., and COSTAR REALTY INFORMATION, INC., | |
| Counterdefendants. | |

NICHOLAS J. BOYLE*
nicholas.boyle@lw.com
SARAH A. TOMKOWIAK*
sarah.tomkowiak@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201


CAITLIN E. DAHL*
caitlin.dahl@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: 312.876.7700
Fax: 312.993.9767




*Admitted pro hac vice

1

## <u>**TABLE OF CONTENTS**</u>

2                                                                                          **Page**

3    I.      INTRODUCTION ........................................................................................ 1

4    II.     BACKGROUND ........................................................................................ 2

5          A.     CREXi's Antitrust Counterclaims ...................................................... 2

6          B.     CoStar's Copyright Claims & CREXi's Trademark

7                 Counterclaims ...................................................................................... 6

8    III.    LEGAL STANDARD ................................................................................ 8

9    IV.     ARGUMENT .............................................................................................. 9

10         A.     Staying The Copyright Claims Will Cause Harm To

11                CoStar .................................................................................................... 9

12         B.     CREXi Will Not Face Hardship Or Inequity Absent A

13                Stay ........................................................................................................ 12

14         C.     A Stay Would Undermine The Orderly Course Of Justice .............. 16

15   V.      CONCLUSION .......................................................................................... 20

16

17

18

19

20

21

22

23

24

25

26

27

28

1  <u>**TABLE OF AUTHORITIES**</u>

2                    **Page(s)**

3            **CASES**

4 *Bd. of Comm'rs of Port of New Orleans v. Va. Harbor Servs., Inc.*,

5  2012 U.S. Dist. LEXIS 199501 (C.D. Cal. Jan. 19, 2012).................................12

6 *Bennett v. Homesite Ins. Co.*,

7  2021 WL 5918593 (W. Dist. Wash. Dec. 15, 2021).........................................13

8 *Clinton v. Jones*,

9  520 U.S. 681 (1997) .......................................................................................9

10 *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,

11  141 F.4th 1075 (9th Cir. 2025).............................................................17, 18, 19

12 *CoStar Grp., Inc. v. Com. Real Est. Exchange, Inc.*,

13  No. 23-55662 (9th Cir. Oct. 13, 2023) ..........................................................3, 4, 5

14 *CoStar Grp., Inc. v. Zillow Grp., Inc.*,

15  No. 25-CIV-6248 (S.D.N.Y. July 30, 2025) ....................................................15

16 *Elec. Solidus, Inc. v. Proton Mgmt. Ltd.*,

17  2025 WL 1090941 (C.D. Cal. Apr. 9, 2025), *appeal docketed*, No.

18  25-2763 (9th Cir. Apr. 29, 2025)........................................................................16

19 *Ernest Bock, LLC v. Steelman*,

20  76 F.4th 827 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 554 (2024)...................8, 9

21 *In re Homestore.com, Inc. Sec. Litig.*,

22  347 F. Supp. 2d 814 (C.D. Cal. 2004)...............................................................11

23 *In re Netflix Antitrust Litig.*,

24  506 F. Supp. 2d 308 (N.D. Cal. 2007) .........................................................11, 12

25 *In re PG&E Corp. Sec. Litig.*,

26  100 F.4th 1076 (9th Cir. 2024)...........................................................................9

27 *In re: NFL Antitrust Litig.*,

28  No. 2:15-ml-02668 (C.D. Cal.) ........................................................................11

*Innovative Health LLC v. Biosense Webster, Inc.*,

   No. 8:19-cv-01984 (C.D. Cal.)...................................................................11

*Katz v. Am. Honda Motor Co.*,

   2017 WL 6547201 (C.D. Cal. Aug. 29, 2017) (Marshall, J.) .....................10, 19

*Landis v. N. Am. Co.*,

   299 U.S. 248 (1936) ........................................................................8, 9, 12, 16

*Levya v. Certified Grocers of Cal., Ltd.*,

   593 F.2d 857 (9th Cir. 1979) ....................................................................19

*Lockyer v. Mirant Corp.*,

   398 F.3d 1098 (9th Cir. 2005)...............................................................10, 16

*Malava, LLC v. Innovative Beverage Grp. Holdings, Inc.*,

   2009 WL 10671335 (S.D. Cal. Aug. 13, 2009) .......................................10

*Marantz Bros., LLC v. Tate & Lyle Ingredients Ams. LLC*,

   No: 2:20-cv-00317 (C.D. Cal.)................................................................11

*Murray v. City of Carlsbad*,

   2010 WL 4822744 (S.D. Cal. Nov. 22, 2010) .......................................10

*PersonalWeb Techs., LLC v. Apple Inc.*,

   69 F. Supp. 3d 1022 (N.D. Cal. 2014) ..................................................16

*Pochiro v. Prudential Ins. Co.*,

   827 F.2d 1246 (1987) ............................................................................14

*Rosenow v. Facebook, Inc.*,

   2023 WL 12004759 (S.D. Cal. July 28, 2023)......................................13

*Rygg v. Hulbert*,

   2013 WL 64769 (W.D. Wash. Jan. 4, 2013)...........................................9

*Samp v. JPMorgan Chase Bank, N.A.*,

   2012 WL 12888434 (C.D. Cal. May 7, 2012)......................................16

*Smith v. JP Morgan Chase Bank, N.A.*,

   2020 WL 5033532 (C.D. Cal. Aug. 21, 2020) (Marshall, J.) ....................10, 19

*Thimes Sols. Inc. v. TP Link USA Corp.*,
  No. 2:19-cv-10374 (C.D. Cal.)......................................................................11

*Top Rank, Inc. v. Haymon*,
  2015 WL 9952887 (C.D. Cal. Sept. 17, 2015)...........................................12

*United Farm Workers v. U.S. Dep't of Lab.*,
  598 F. Supp. 3d 878 (E.D. Cal. Apr. 4, 2022)............................................20

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
  2001 WL 34046241 (D. Or. Sept. 14, 2001)...............................................10

*Vicious Brands, Inc. v. Face Co.*,
  2025 WL 754068 (N.D. Cal. Mar. 10, 2025)..................................................9

*White v. U.S. Army Corps of Eng'rs*,
  659 F. Supp. 3d 1045 (N.D. Cal. 2023) .......................................................10

## STATUTES

17 U.S.C. § 512(c) ............................................................................................7

## RULES

Federal Rule of Civil Procedure 56(g) ...............................................................7

Federal Rule of Civil Procedure 54(b) ..........................................................3, 4

## OTHER AUTHORITIES

*Auctions Heat Back Up: Crexi Auction H1 Performance Shows*
  *Market Momentum Building*, PR Newswire (July 24, 2025)...........................14

*CRE Professionals*, CREXi (Oct. 25, 2024)...................................................14

*CREXi IPO: CREXi Company Details*, Forge Global, (last updated
  July 16, 2025) .............................................................................................14

Monica Hunter-Hart, *How Daily Border Crossings Helped Turn This
  Mexican American Into A Billionaire*, Forbes (Dec. 29, 2024) ....................14

# I.  INTRODUCTION

CREXi's Motion to Stay (the "Motion") tries to portray its makeweight, on-hold antitrust counterclaims as so factually related to CoStar's trial-ready copyright claims that they all must be tried together.  But beyond the rhetoric, CREXi struggles to identify actual overlapping facts.  No wonder.  CREXi previously told this Court—when seeking entry of partial final judgment to pursue appellate review—that its dismissed antitrust counterclaims were distinct, both legally and factually, from CoStar's copyright (and CREXi's trademark) claims.  More importantly, this Court agreed.  The core facts in this case relate to CREXi's mass infringement of CoStar's intellectual property—a claim ripe for trial.  The antitrust counterclaims, by contrast, concern CoStar's expressly non-exclusive contracts (alleged as exclusive) and CoStar's right to refuse to give CREXi access to CoStar's LoopLink product.  Those issues constitute an unrelated sideshow, injected three quarters of a year into the copyright case to try to manufacture settlement leverage.

Trial can and should proceed on CoStar's infringement claims, already pending for half a decade, and should not be further delayed for two to three years—a likely timeline given the length of antitrust cases, post resolution of dismissal motions, in this district.  The infringement case is virtually trial-ready.  The Court's summary judgment order made several key findings regarding CoStar's proof of widescale, systematic infringement that significantly narrowed the case, such that a streamlined trial on CoStar's copyright claims can occur at this Court's convenience.  Conversely, to the extent CREXi's concocted counterclaims survive CoStar's petition for en banc review in the Ninth Circuit, they would require antitrust discovery, and would moreover have to overcome summary judgment (a hurdle CREXi will almost certainly not clear, and which precedent shows would likely not occur until 2027), proceeding to trial (if ever) at the earliest in 2028.  That delay would certainly harm CoStar—the victim of mass infringement that continued throughout the pendency of this lawsuit, and continues to this day—by depriving

1  CoStar of the injunctive relief it seeks.  CREXi, on the other hand, has not

2  demonstrated it would suffer cognizable hardship if the two sets of claims continue

3  to move forward on parallel tracks, as they have done for years.  Finally, due to the

4  lack of factual overlap or efficiencies to be gained, a stay would undermine—not

5  serve—the orderly course of justice.

6  CREXi's Motion should be denied.

7  **II.    BACKGROUND**

8  CoStar initiated this litigation in September 2020 when it filed a lawsuit

9  against CREXi, alleging willful copyright infringement, among other misconduct

10  (including CoStar's remaining claims under the Digital Millennium Copyright Act).

11  *See* Dkt. 1.  The pleadings showed CREXi displaying thousands and thousands of

12  CoStar watermarked images, and featured evidence—including statements by

13  broker customers—that CREXi was actively harvesting its competitor's intellectual

14  property.  *See id.* ¶¶ 136, 142-159.  Nine months later, in late June 2021, CREXi

15  filed counterclaims against CoStar alleging, as relevant here, trademark

16  infringement, unfair and unlawful competition, and various antitrust violations.  *See*

17  Dkt. 74.  In the intervening four years, CoStar's claims and CREXi's antitrust

18  counterclaims proceeded on parallel, diverging tracks.

19  **A.    CREXi's Antitrust Counterclaims**

20  In August 2021, CoStar moved to dismiss CREXi's counterclaims.  Dkt. 82.

21  The Court granted CoStar's motion as to the majority of the counterclaims but

22  allowed CREXi leave to amend.  *See* Dkt. 146.  In August 2022, CREXi filed its

23  First Amended Counterclaims, pleading largely the same causes of action against

24  CoStar as it had originally.  *See* Dkt. 171.  CoStar again moved to dismiss CREXi's

25  amended counterclaims, except for CREXi's claims of trademark infringement and

26  trademark-based unlawful competition, for which the Court had previously found

27  CREXi plausibly stated claims.  *See* Dkt. 203; Dkt. 146.  In February 2023, the Court

28

1   once again agreed with CoStar and dismissed CREXi's antitrust and tortious

2   interference counterclaims (Claims 1-8, 10-12, and 14) with prejudice.  Dkt. 340.

3         After this second dismissal, CREXi requested that the Court enter partial final

4   judgement on the dismissed counterclaims under Rule 54(b) so CREXi could seek

5   appellate review.  *See* Dkt. 368.  In July 2023, the Court granted CREXi's request

6   for partial final judgment and allowed CREXi to appeal its antitrust claims.  In doing

7   so, the Court specifically noted that the purpose of Rule 54(b) is "to avoid the

8   possible injustice of delay[ing] judgment o[n] **a distinctly separate claim** [pending]

9   adjudication of the entire case," Dkt. 461 at 3 (emphasis added) (citation omitted),

10  and that the only limitation on Rule 54(b)'s application is to avoid "piecemeal

11  appeals in cases which should be reviewed only as single units."  *See id.* at 4 (citation

12  omitted).[1]  The Court also held that "CREXi's dismissed counterclaims are not

13  legally or factually related to the remaining counterclaims related to trademark

14  infringement and unlawful competition predicated on CoStar's alleged trademark

15  infringement."  *Id.* at 6.[2]

16        The Court's ruling on this issue was made after considering CREXi's *own*

17  arguments (at the time).  CREXi repeatedly argued before this Court that review

18  under Rule 54(b) was appropriate because:

19

20  [1] The Court's granting of the Rule 54(b) motion underscores that the Court believed
    this purpose was served because CREXi's antitrust counterclaims were distinctly
21  separate from the rest of the case.  CREXi itself argued this point before the Ninth
    Circuit.  *See* CREXi's Opp. to CoStar's Mot. to Dismiss Appeal at 9, *CoStar Grp.,*
22  *Inc. v. Com. Real Est. Exchange, Inc.*, No. 23-55662 (9th Cir. Oct. 13, 2023), Dkt.
    10 (stating that, in granting Rule 54(b) motion, the Court "specifically rejected the
23  notion that, under applicable Ninth Circuit law, there is any meaningful overlap
    between CREXi's dismissed counterclaims and the remainder of the district court
24  case").

25  [2] CREXi speculates that in granting Rule 54(b) relief, "[t]his Court undoubtedly
    recognized the benefit of reuniting any remanded counterclaims with the remainder
26  of this case, thereby enabling all claims and counterclaims to be resolved in a single
    proceeding."  Mot. at 3.  However, given that the Court dismissed CREXi's frivolous
27  counterclaims twice, it is equally if not more plausible that in granting partial
    judgment the Court believed its dismissal opinion would be affirmed and the
28  antitrust counterclaims would be resolved fully and never reunited with any
    remaining claims.  The Court did not say.

- The copyright and trademark claims that remained before the Court were "'**legally and factually distinct**' from the antitrust and tortious interference claims dismissed by the Court's order";

- The antitrust counterclaims were "**substantially different** from the claims remaining in this case";

- "CREXi's dismissed antitrust and tortious interference claims involve '**distinct** points of law' from the claims still pending before the court";

- There was "**no risk**" that "Rule 54(b) certification [would] result in **duplicative proceedings** in the trial or appellate court";

- "CoStar identifie[d] **no meaningful overlap** between the dismissed counterclaims and the issues remaining in this case"; and

- CREXi's trademark infringement claim and the antitrust counterclaims "[were] **not meaningfully intertwined**, such that appealing the latter would interfere with continuing to litigate the former."

*See* Dkt. 368-1 at 2, 4 (emphases added);  Dkt. 387 at 1, 2-3 (emphases added).

Before the Ninth Circuit, CREXi similarly and forcefully argued that its antitrust counterclaims "have **no meaningful connection** . . . **to the copyright** and trademark **claims still pending** before the district court," and therefore, "there is no just cause for waiting [to allow appeal] until after trial on **the unrelated claims pending in the district court**."  *See* CREXi's Opp. to CoStar's Mot. to Dismiss Appeal at 1, *CoStar Grp., Inc. v. Com. Real Est. Exchange, Inc.*, No. 23-55662 (9th Cir. Oct. 13, 2023), Dkt. 10 (emphases added); *see also id.* at 7 ("**nothing in CREXi's dismissed counterclaims overlaps with the claims remaining in the case**" (emphasis added)); *id.* at 12-18 (throughout argument section, CREXi asserts the "dismissed counterclaims have **no meaningful overlap with any of the claims or defenses remaining**" (emphasis added)).

More than two years later, CREXi's "legally and factually distinct" antitrust counterclaims remain on appeal. On June 23, 2025, a Ninth Circuit panel issued an opinion reversing the Court's decision to dismiss CREXi's antitrust counterclaims. Dkt. 1244. CoStar requested en banc review of that decision in early August. *See* CoStar's Pet. for Rehearing En Banc, *CoStar*, No. 23-55662 (9th Cir. Aug. 6, 2025), Dkt. 65. The Ninth Circuit may yet request a response from CREXi, hold a vote on whether to rehear the case, consider briefs from amicus curiae (already filed in support of CoStar by the technology industry and antitrust scholars and former enforcers),[3] request further briefing from the parties, and/or amend or vacate the panel's disposition. Because of the discretionary nature of the en banc process, it is unclear when the Ninth Circuit will enter a final decision on the antitrust counterclaims and whether or when it might ultimately remand these counterclaims to this Court.

Even if ultimately remanded, CoStar firmly believes that the deficiencies in CREXi's antitrust counterclaims will be apparent once past the pleading stage. The counterclaims are and have always been based on a deliberately pled mischaracterization of CoStar's contracts. Contrary to CREXi's allegation that "[o]nce signed up with CoStar, . . . brokers are foreclosed from working with CREXi," CREXi's Opening Br. at 17, *CoStar*, No. 23-55662 (9th Cir. Jan. 19, 2024), Dkt. 21, CoStar has never intentionally blocked customers from working with CREXi or any other competitor, either by contract or technical means. CREXi's own admissions that it has "over 500 existing customers who use CoStar's LoopLink tool" and "many more" who otherwise use LoopNet prove this. Dkt. 161-1 at 74. CoStar's terms of use are expressly non-exclusive. Brokers retain the rights to their

---

[3] *See* File Clerk Order, *CoStar*, No. 23-55662 (9th Cir. Aug. 20, 2025), Dkt. 71; Mot. for Leave to File Br. for Amici Curiae Former Antitrust Officials & Antitrust Scholars in Supp. of CoStar's Pet. for Rehearing, *CoStar*, No. 23-55662 (9th Cir. Aug. 18, 2025), Dkt. 68-1; Mot. for Leave to File Br. of Amicus Curiae Chamber of Progress in Supp. of CoStar's Pet. for Rehearing, *CoStar*, No. 23-55662 (9th Cir. Aug. 18, 2025), Dkt. 67-1.

original images and can license to, or use those images on, CREXi or any other third-party listing service. As the Court recognized, "the practical effect of these contractual provisions is that the public and brokers" are free to work with whomever they want—they just "cannot copy and reuse" CoStar-owned images pulled from CoStar's websites. Dkt. 340 at 7. And even if CoStar were engaged in the alleged technological blocking as a matter of policy (it was and is not, as discovery will show), antitrust refusal-to-deal principles would permit CoStar to block CREXi from using CoStar's LoopLink tool (which "links" to CoStar's LoopNet site).

Thus, CREXi's antitrust counterclaims are destined to fail. And setting aside that CREXi's antitrust claims lack merit, since CREXi brought its counterclaims, CoStar has addressed the issues of which CREXi complained. First, by (unnecessarily) updating its terms and conditions. *See* Tomkowiak Decl. ¶ 3. And second, even though CoStar believes it has a right to block competitive access to CoStar's LoopLink tool, it does not do so as a policy, and has lifted any inadvertent blocks as it becomes aware of them, including for CREXi—as CREXi knows. *See id.* ¶ 4. CREXi's specious allegations of harm, baseless when made, are of no current relevance—underscoring that CREXi is suffering no ongoing harm, notwithstanding its naked assertion that "CoStar's anticompetitive conduct continues unchecked in the marketplace." Mot. at 1-2.

**B.    CoStar's Copyright Claims & CREXi's Trademark Counterclaims**

By contrast, CoStar's copyright claims *do* relate to an ongoing harm, as CREXi has continued to infringe CoStar's copyrighted images throughout this litigation, and indeed to this day. It has done so despite CoStar continuously pointing to specific instances of ongoing infringement and providing CREXi with URLs showing where infringing content is displayed. *See, e.g.*, Tomkowiak Decl. ¶¶ 5-7.

In the two years that CREXi's antitrust counterclaims (the "On-Hold Antitrust Claims") have been on appeal, the remaining claims in the case, including CoStar's copyright infringement claims (the "Trial-Ready Copyright Claims") and CREXi's

trademark infringement counterclaims, have progressed to impending resolution. Discovery concluded more than a year ago, in May 2024; this year the Court ruled on the parties' summary judgment motions and three *Daubert* motions, Dkts. 1150, 1237-1240; and the parties have fully briefed thirty two motions in limine, Dkts. 1042-1052, 1063-1081, 1201-1219, 1224-1234, and exchanged initial witness lists, exhibit lists, and affirmative deposition designations, Tomkowiak Decl. ¶¶ 8-10. As CREXi itself recognizes, the only pending motions for the Court to resolve before trial are three remaining *Daubert* motions, the parties' motions in limine, and the parties' cross-motions for sanctions. *See* Mot. at 5.

Most significantly, the Court's summary judgment ruling significantly narrowed the issues in dispute, positioning the parties to move efficiently and expeditiously to trial. Specifically, the Court made the following findings, amongst others, which are binding at trial under Federal Rule of Civil Procedure 56(g):[4]

- CoStar owns the images for which it sought summary judgment;
- CREXi engaged in volitional conduct as to images uploaded to its website allegedly at the direction of users before this lawsuit was filed;
- CREXi's third-party vendors were its agents and copied images under CREXi's instructions prior to the lawsuit; and
- CREXi cannot obtain safe harbor protection under 17 U.S.C. § 512(c) for images uploaded to CREXi's website by CREXi or its agents at the direction of users.

Dkt. 1237 at 43.

In light of these findings, the scope of issues in the copyright case are far narrower than the parties contemplated prior to summary judgment, making the infringement case all the more trial ready. Consider: The core of CREXi's defense

---

[4] The Court also ruled that CoStar could not pursue claims for a fraction of images, primarily based on the Court's holding that they were time-barred. Dkt. 1237 at 43.

was that it was a passive platform. Layered on top were claims that CoStar did not own the images at issue, and acted with unclean hands. Those arguments, in factual and legal form, pervaded every brief and every argument CREXi made for five years. The findings in the Court's detailed summary judgment ruling largely resolved those arguments against CREXi. "There is ample evidence that CREXi and its BPOs [i.e., offshore teams in India] copied listing information, including images, from LoopNet when a listing could only be found on LoopNet, and that CREXi would take screenshots of photos or otherwise crop out CoStar's watermarks from photos to build out listings on its website." *Id.* at 18. "[T]here is evidence that this was an established practice or policy at CREXi, at least before this lawsuit was filed." *Id.* at 27. Thus, CREXi can no longer argue it is like YouTube; it actively enforced a copy-and-crop policy against CoStar. And CREXi is likewise barred from invoking its core and related legal defense—that it is entitled to safe harbor protection under the Digital Millennium Copyright Act—with regard to the copyrighted listing images that CREXi and its offshore agents copied from LoopNet. *Id.* at 37 ("Accordingly, the Court finds that § 512(c)'s safe harbor does not apply to the User-Directed images."). Similarly, the Court ruled against CREXi on its purported "unclean hands" defense as to approximately 93% of the images at issue. *Id.* at 40. CoStar's infringement case has been greatly simplified, and readied for trial, because CREXi's defense has been—to say the least—significantly narrowed. No wonder CREXi now seeks years of delay.

## III.  LEGAL STANDARD

District courts possess "inherent authority to stay federal proceedings pursuant to [their] docket management powers." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 554 (2024). The decision to stay proceedings is discretionary and "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). In considering whether to grant a docket

management stay, district courts in the Ninth Circuit weigh three non-exclusive factors: "(1) 'the possible damage which may result from the granting of a stay'; (2) 'the hardship or inequity which a party may suffer in being required to go forward'; and (3) 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law.'" *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (quoting *Ernest Bock*, 76 F.4th at 842).

The party requesting a stay bears the burden of proving that a stay is necessary. *Rygg v. Hulbert*, 2013 WL 64769, at *2 (W.D. Wash. Jan. 4, 2013) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). If there is "even a fair possibility that the stay . . . will work damage to some one else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *In re PG&E*, 100 F.4th at 1087 (quoting *Landis*, 299 U.S. at 255 (ellipsis in original)).

## IV. ARGUMENT

All three *Landis* factors weigh against granting CREXi's Motion. Damage to CoStar will result from a stay; CREXi will not suffer hardship or inequity in being required to move forward; and the orderly course of justice counsels against a stay.

### A. Staying The Copyright Claims Will Cause Harm To CoStar

After years of declaring the need to proceed quickly to a trial of the infringement claims, *see, e.g.*, Dkt. 787 at 1, 10, CREXi now makes an about-face in the wake of its summary judgment losses and argues that trial must be delayed indefinitely. But CoStar's Trial-Ready Copyright Claims have been pending for five years, and final resolution could be imminent. Granting a stay would throw them into legal limbo and delay, potentially for years, adjudication of these long-pending claims. Courts in this circuit have found that staying a case in similar circumstances would cause substantial prejudice to plaintiffs. *See, e.g.*, *Vicious Brands, Inc. v. Face Co.*, 2025 WL 754068, at *12 (N.D. Cal. Mar. 10, 2025) (denying motion to stay because delaying trial for several months to allow administrative proceedings to go forward would harm plaintiff); *Murray v. City of Carlsbad*, 2010 WL 4822744,

at *1 (S.D. Cal. Nov. 22, 2010) (denying motion to stay because delaying case "almost ready to be tried" qualifies as damage to non-movant); *see also Katz v. Am. Honda Motor Co.*, 2017 WL 6547201, at *1-2 (C.D. Cal. Aug. 29, 2017) (Marshall, J.) (denying motion to stay where "it is unknown when a decision will be rendered" by the appellate court and where "only the pretrial and trial remain"); *Smith v. JP Morgan Chase Bank, N.A.*, 2020 WL 5033532, at *2 (C.D. Cal. Aug. 21, 2020) (Marshall, J.) (denying motion for stay where it was "purely speculative" whether other case which stay would seek to await would be resolved "within a year").

The injury to CoStar resulting from this delay is exacerbated because—contrary to CREXi's focus on a delay of monetary recovery, *see* Mot. at 5-6—a stay will deprive CoStar of a ruling on its claims for injunctive relief, allowing CREXi's infringement to continue unchecked. *See White v. U.S. Army Corps of Eng'rs*, 659 F. Supp. 3d 1045, 1056 (N.D. Cal. 2023) (where there is claim for injunctive relief, "a stay could harm Plaintiff by allowing Defendants 'to engage in unlawful behavior with no concrete end date'" (citation omitted)); *cf. Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (in analyzing harm caused by a delay, making distinction between whether there was claim for injunctive or declaratory relief or a claim only for monetary relief). As noted above, CREXi has continued to infringe CoStar's copyrighted images throughout the pendency of this litigation and to this day displays CoStar's watermarked images on its site. *See, e.g.*, Dkt. 1124-1 at 1, 6, 18; Dkt. 1193-2 at SUF 136; Tomkowiak Decl. ¶¶ 5-7. Courts have declined to issue a stay when doing so would allow alleged continuing infringement, thus harming the plaintiff. *See Malava, LLC v. Innovative Beverage Grp. Holdings, Inc.*, 2009 WL 10671335, at *3 (S.D. Cal. Aug. 13, 2009) (denying motion to stay in trademark infringement trial where plaintiff made a showing that purported infringement was ongoing); *Versa Corp. v. Ag-Bag Int'l Ltd.*, 2001 WL 34046241, at *2 (D. Or. Sept.

14, 2001) (denying motion to stay in patent infringement action where plaintiff would be harmed by continuing infringement).

Moreover, as discussed above, there is no indication of when (or if) CREXi's On-Hold Antitrust Claims will be remanded from the appellate court. That alone weighs against granting a stay. *In re Homestore.com, Inc. Sec. Litig.,* 347 F. Supp. 2d 814, 820 (C.D. Cal. 2004) (denying motion to continue trial where "there is no telling when the pending appeal will be decided"). And if those On-Hold Antitrust Claims are remanded, the parties face the prospect of antitrust discovery and summary judgement briefing, a process that could take years. *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) ("[I]n antitrust cases . . . discovery tends to be . . . time-consuming and expensive.").

CREXi correctly points out that the passage of time inherently risks loss of evidence (or witness availability and memories), Mot. at 7, but to state the obvious, this risk applies to CoStar's Trial-Ready Copyright Claims. Delaying the adjudication of those claims increases that risk while doing nothing to speed up the resolution of the antitrust counterclaims. CREXi asserts that a stay will "enable its antitrust counterclaims to be efficiently readied for trial." Mot. at 7 n.4. But a copyright trial does not stay the antitrust counterclaims. CREXi does not even ballpark what it means by "efficiently," but recent antitrust cases in this district took one-and-a-half to two years or more to proceed from the resolution of a motion to dismiss through to summary judgment (not to mention trial).[5] And no matter how efficiently conducted, antitrust discovery can be very time consuming. *See, e.g.*, *In*

---

[5] *See, e.g.*, *Innovative Health LLC v. Biosense Webster, Inc*., No. 8:19-cv-01984 (C.D. Cal.) (motion for summary judgment fourteen months after final motion to dismiss); *Marantz Bros., LLC v. Tate & Lyle Ingredients Ams. LLC*, No: 2:20-cv-00317 (C.D. Cal.) (motion for summary judgment decided two years after motion to dismiss); *Thimes Sols. Inc. v. TP Link USA Corp.*, No. 2:19-cv-10374 (C.D. Cal.) (motion for summary judgment decided more than twenty months after final motion to dismiss); *In re: NFL Antitrust Litig.*, No. 2:15-ml-02668 (C.D. Cal.) (motion for summary judgment decided more than four years after final motion to dismiss).

1  *re Netflix Antitrust Litig.*, 506 F. Supp. 2d at 321; *Top Rank, Inc. v. Haymon*, 2015

2  WL 9952887, at *2 (C.D. Cal. Sept. 17, 2015) (acknowledging high burden of

3  discovery in antitrust cases).  Granting a stay will thus further delay trial on CoStar's

4  Trial-Ready Copyright Claims, likely for two to three more years.  *See Bd. of*

5  *Comm'rs of Port of New Orleans v. Va. Harbor Servs., Inc.*, 2012 U.S. Dist. LEXIS

6  199501, at *8-9 (C.D. Cal. Jan. 19, 2012) (acknowledging complex and protracted

7  nature of antitrust litigation).  This reality counsels toward proceeding to trial now

8  on the Trial-Ready Copyright Claims, rather than waiting years for the On-Hold

9  Antitrust Claims to be ready to try (if they ever are).

10    **B.    CREXi Will Not Face Hardship Or Inequity Absent A Stay**

11    Conversely, CREXi has not shown any actual or likely harm it will face absent

12  a stay.  When "there is even a fair possibility that the stay . . . will work damage to

13  [the plaintiff]," *see supra* at 9, the defendant seeking a stay "must make out a ***clear***

14  case of hardship or inequity in being required to go forward" in order for the second

15  *Landis* factor to weigh in its favor.  *Landis*, 299 U.S. at 255 (emphasis added).

16  CREXi does not meet this high burden.

17    CREXi baldly asserts in the introduction of its brief that "CoStar's

18  anticompetitive conduct continues unchecked in the marketplace." Mot. at 1-2.  But

19  CREXi does *not* then return to that claim, or argue that a stay would harm CREXi

20  due to any ongoing conduct relating to its antitrust allegations.  Because it cannot.

21  That argument is missing from CREXi's brief because CoStar already adjusted its

22  practices, notwithstanding the lack of merit in CREXi's antitrust counterclaims, to

23  address CREXi's supposed "concerns."  *See supra* at 5-6.  CREXi instead pivots to

24  supposed harm unrelated to the substance of its claims, and those arguments fail.

25    **1.**    *The Present Risk of Financial Exposure Does Not Justify a Stay*

26    CREXi claims it would be "profoundly inequitable . . . to stagger trial such

27  that [CREXi] is threatened with more immediate financial exposure than [CoStar]."

28  Mot. at 6.  But CREXi cites no authority supporting the proposition that the

theoretical possibility of future competing damages awards resulting in an "offset" justifies a stay.  Mot. at 6.[6]  These potential "competing damages awards" would only materialize *if*, after a jury awards CoStar damages on its Trial-Ready Copyright Claims, a subsequent jury in the On-Hold Antitrust Claims awards CREXi significant damages years later.  This purported "inequity" is built upon multiple tenuous assumptions (including that the On-Hold Antitrust Claims twice rejected by this Court survive dispositive post-discovery motion practice) that does not provide a basis for a stay.  *Rosenow v. Facebook, Inc.*, 2023 WL 12004759, at *3 (S.D. Cal. July 28, 2023) (denying motion for stay where movant's "contentions relating to hardship and equity are speculative . . . provid[ing] insufficient support for [its] contention that [it] would incur more than ordinary hardships of litigation absent a stay"); *Bennett v. Homesite Ins. Co.*, 2021 WL 5918593, at *1 (W. Dist. Wash. Dec. 15, 2021) (denying motion for stay where movant's argument "is pure speculation based on [movant's] assumptions, which does not evidence a 'clear case of hardship or inequity'").

CREXi's "inequity" argument is merely a reframing of CREXi's hollow, tired characterization of this lawsuit as a contest between David and Goliath, calculated to drive a small, innocent start-up competitor out of business.  This narrative is as untrue as it is irrelevant.  CoStar filed this lawsuit to protect its intellectual property, CREXi's claim to be a mere passive platform has been rejected, and CoStar has made out its prima facie infringement case.  Indeed, as this Court found, CREXi had a practice of actively harvesting CoStar's copyrighted images prior to being sued.  Moreover, CREXi is no David.  CREXi is a decade-old company backed by a plethora of major venture capital firms, from which CREXi has raised more than a hundred million dollars in financing.  Dkt. 1235, Ex. 5.  As of July 2024, Leon Capital, CREXi's founding investor, alone held a $200 million stake in CREXi, and

---

[6] CREXi's speculation that it was "partly to avoid this problem that the Court entered partial judgment in the first place," is again putting words in the Court's mouth.  *See* Mot. at 6 (citing Dkt. 461 at 3).

projected that CREXi would shortly have a "multi-billion-dollar valuation." *Id.*, Ex. 7. *Three years ago*, before continued growth, CREXi was already valued at half a billion dollars.[7]  And since then, CREXi has grown in size, revenue, and product offerings, supposedly facilitating transactions totaling more than a trillion dollars for its two million monthly active users.[8]  CREXi's newest iteration of its false theme that CoStar is "litigat[ing] CREXi to death," seen in its speculative new argument about the potential for "profound inequity" emerging from staggered financial risk, is as devoid of factual and legal support as it always has been.[9]

Because CREXi cannot support its arguments of hardship or inequity directly, it merely points to caselaw supporting the basic proposition that claims and counterclaims are usually tried together.[10]  As CREXi's own cited authorities show, however, that proposition holds true as a general matter because combining trial of claims and counterclaims usually leads to efficiencies in discovery and adjudication due to extensive factual overlap.  *See, e.g.*, *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1249-50 (1987) (agreeing judicial economy is served by trying claims and counterclaims together where they "are bottomed on a single paragraph of factual allegations").  Not so here, where discovery on the infringement claims is complete but the parties will have to undertake significant antitrust discovery, and where CREXi tries and fails to point to any significant factual overlap.  *See infra* at 16-20.

---

[7]  *CREXi IPO: CREXi Company Details*, Forge Global, https://forgeglobal.com/crexi_ipo/#companyDetails (last updated July 16, 2025); Dkt. 1235, Ex. 6, Monica Hunter-Hart, *How Daily Border Crossings Helped Turn This Mexican American Into A Billionaire*, Forbes (Dec. 29, 2024).

[8] *Auctions Heat Back Up: Crexi Auction H1 Performance Shows Market Momentum Building*, PR Newswire (July 24, 2025), https://www.prnewswire.com/news-releases/auctions-heat-back-up-crexi-auction-h1-performance-shows-market-momentum-building-302512649.html.

[9] Dkt. 787 at 9-10; *see* Dkt. 1061-22, Shankman Dep. 162:24-163:3, 267:12-15; *see also Crexi Expands Lease Data Offering: Unlocking Insights for CRE Professionals*, CREXi (Oct. 25, 2024), https://www.crexi.com/blog/crexi-lease-data (announcing expansion of CREXi's Lease Data offering).

[10] CREXi makes the conclusory statement that CoStar could not satisfy the standard for bifurcation.  Mot. at 7.  Putting aside the lack of basis for that statement, whether CoStar can satisfy that standard is not presently before the Court.

At bottom, all CREXi has shown is that it perceives a stay to be strategically advantageous because it *might* allow CREXi to use its makeweight antitrust claims to try to minimize (through unmerited offset) the amount it must pay for its mass copyright infringement.  CREXi's desire to execute on its litigation strategy does not constitute "clear hardship" justifying delay of the Trial-Ready Copyright Claims.

### 2. *The Parties Can Litigate These Claims In Parallel*

CREXi argues that denying its Motion would be "tantamount to granting a stay" of the On-Hold Antitrust Claims until "post-trial proceedings" on CoStar's Trial-Ready Copyright Claims are complete.  Mot. at 8.  That extraordinary statement appears to be based on CREXi's new assertion that it would be too expensive and impractical for the parties to conduct discovery on the On-Hold Antitrust Claims until post-trial proceedings have concluded (and further based on a presumption that the Court would entertain a stay of that length).  *Id.* at 7-8.[11]  Not so.  There is no reason these claims cannot continue down the parallel tracks they have been on for years.  CoStar and CREXi are represented by sophisticated counsel, with large teams accustomed to handling multiple cases at once.  CoStar can proceed to trial on the Trial-Ready Copyright Claims, while addressing discovery on the On-Hold Antitrust Claims (if they are remanded), while simultaneously litigating its newly filed copyright infringement case against Zillow in the Southern District of New York, and attending to any number of other matters.[12]

The Trial-Ready Copyright Claims could be tried and resolved in the near term, especially given the narrowed scope of issues for trial following the Court's

---

[11] CREXi's new argument also contradicts its own prior assertion that "CoStar is perfectly capable of litigating an appeal while the case proceeds in the trial court, and will suffer no cognizable prejudice from doing so."  Dkt. 387 at 6.

[12] Complaint, *CoStar Grp., Inc. v. Zillow Grp., Inc.*, No. 25-CIV-6248 (S.D.N.Y. July 30, 2025), Dkt. 1 (alleging direct and vicarious infringement of over 46,000 CoStar owned photographs).  Contrary to CREXi's tired narrative that CoStar uses lawsuits to drive smaller competitors out of business, CoStar in fact engages in litigation when necessary to protect its intellectual property rights—including against industry giants like Zillow.

summary judgment rulings.  During that time, CREXi's On-Hold Antitrust Claims could still be pending before the Ninth Circuit, if CoStar's request for en banc review is granted.  And in any event, courts overwhelmingly reject CREXi's argument that the burden of defending a suit, even in tandem with parallel litigation, is a "harm" justifying a stay.  *See Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."); *Samp v. JPMorgan Chase Bank, N.A.*, 2012 WL 12888434, at *4 (C.D. Cal. May 7, 2012) (denying stay where movant argued "they would have to expend significant 'time and resources'" if case proceeded; *Elec. Solidus, Inc. v. Proton Mgmt. Ltd.*, 2025 WL 1090941, at *19 (C.D. Cal. Apr. 9, 2025) (denying stay where movant argued "burden and hardship of simultaneously litigating this case . . . [would lead to] substantial cost," noting movant "needs to defend itself as to the . . . tort claims at issue"), *appeal docketed*, No. 25-2763 (9th Cir. Apr. 29, 2025).

In sum, because CREXi fails to meet its burden to "make out a ***clear*** case of hardship or inequity" that would result from denial of its Motion, the second *Landis* factor weighs against the stay CREXi seeks.  *See Landis*, 299 U.S. at 255 (emphasis added).

## C.   A Stay Would Undermine The Orderly Course Of Justice

The third *Landis* factor, which considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay," likewise weighs against granting a stay.  *See Lockyer*, 398 F.3d at 1110 (citation omitted) (expanding upon third *Landis* factor).  This factor favors a stay when two cases arise from the same set of facts and the issues substantially overlap such that proceeding to trial in one case could eliminate the need for trial in the second case.  *See, e.g.*, *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1027 (N.D. Cal. 2014) (granting stay because "the landscape of the litigation could change dramatically in light of [the

other relevant case's] ruling"). That does not hold true here. CREXi struggles to point to facts that will overlap between claims at trial, because they are few and far between. CREXi's dubious prediction that two separate juries would review "many of the same exhibits" and "hear overlapping testimony," Mot. at 10, is unsupported and untethered to reality. Moreover, document discovery, fact and expert depositions, *Daubert* motions, and briefing on motions in limine are complete in CoStar's Trial-Ready Copyright Claims but have yet to begin on CREXi's On-Hold Antitrust Claims. Only the presentation of the trials offers the potential for time saving, *IF* there are facts that overlap between the cases, and *IF* the On-Hold Antitrust Claims survive summary judgment. These are big *IFs*.

CREXi grossly exaggerates the Ninth Circuit's opinion to imply that court found that a factual overlap exists between CoStar's and CREXi's claims. Though the Ninth Circuit acknowledged "there is factual overlap between CREXi's claims on appeal and CoStar's and CREXi's unresolved copyright and trademark claims," it also noted "agree[ment] with the district court that the claims are sufficiently legally severable." *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 141 F.4th 1075, 1083 (9th Cir. 2025). Contrary to CREXi's assertions, nothing in the Ninth Circuit's decision reviving CREXi's antitrust counterclaims suggests that they are so interrelated to CoStar's copyright claims such that the claims are inseparable and must be tried together.

In a further attempt to gin up some factual overlap, CREXi points to this Court's conclusion that a triable question of fact exists as to CREXi's "unclean hands" defense to CoStar's Trial-Ready Copyright Claims, only "[t]o the extent [that defense] is based on CoStar including images in this lawsuit that it does not own," Dkt. 1237 at 41. CREXi claims that defense overlaps with its antitrust theory "that CoStar falsely claims copyright over data and images that brokers and others own."

Mot. at 9.[13]   This attempt to manufacture a factual overlap fizzles out, however, because the Court's summary judgment opinion also means that for 93% of the images at issue in this case (all of the images for which CoStar is pursuing copyright infringement claims), CREXi's unclean hands defense *does not apply*.   That is because the Court granted CoStar's request for summary judgment on the issue of image ownership as to the 45,114 images for which CoStar is pursuing infringement claims (out of the 48,756 presently in the case) that CoStar moved on.   *See* Dkt. 1124-1, CoStar Mot. Partial Summ. J. at 7 n.4.   Thus, the limited grounds on which the Court allowed CREXi's unclean hands defense to proceed does not provide CREXi with the factual link it needs to show that consolidating the years-apart trials would serve the interest of judicial efficiency.   In fact, allowing CREXi to tell the jury that they cannot trust CoStar's claims of ownership (i.e., CREXi's antitrust theory) in the same trial in which the jury will be instructed that CoStar owns all of the images for which it is pursuing copyright infringement claims would be confusing and counsels *against* issuing a stay.

The only other example of potential factual overlap to which CREXi points relates to its trademark infringement counterclaim, which is proceeding alongside CoStar's Trial-Ready Copyright Claims, and premised on CoStar's (inadvertent) use of CREXi's trademarked name to advertise CoStar's Ten-X auction service—the similar premise of one of CREXi's (many) antitrust theories.   Mot. at 10.   But CREXi's assertion that trying its trademark and antitrust counterclaims separately would be inefficient significantly overstates the relevance of the trademark infringement facts to CREXi's On-Hold Antitrust Claims.   As the Ninth Circuit observed, "CREXi's Sherman Act claims . . . turn primarily on whether CoStar

---

[13] The relevance of CREXi's allegations of false copyright ownership to the On-Hold Antitrust Claims is also questionable.   The Ninth Circuit said that this Court should "revisit" those allegations because they "*may* be related to or overlapping with [CREXi's] technological barriers theory."   *CoStar*, 141 F.4th at 1083 n.2 (emphasis added).   How CREXi will demonstrate the connection between these theories, yet alone provide proof of harm, is unclear.

1    entered exclusive agreements." *CoStar Grp.*, 141 F.4th at 1084.  The Ninth Circuit's

2    two references to CREXi's trademark claims were to note that the Ninth Circuit

3    "agree[s] with the district court that the claims are sufficiently legally severable"

4    from the antitrust claims, and that the Ninth Circuit "do[es] not address" whether the

5    trademark counterclaim is relevant to CREXi's antitrust theories.  *Id.* at 1083 & n.2

6    (citation omitted).    In fact, CREXi's own pleadings show the trademark

7    counterclaim has little, if anything, to do with the antitrust counterclaims, as CREXi

8    devoted just 20 paragraphs of its 386 paragraph First Amended Counterclaims to the

9    trademark issue.  *See* Dkt. 171 at ¶¶ 11, 29, 118-135. And in any event, findings

10   relating to CREXi's trademark counterclaim in the first trial could have a preclusive

11   effect in any future antitrust trial, rendering CREXi's claim that evidence would

12   *have* to be presented twice even more speculative.  Mot. at 10.

13        If CREXi prefers to try its trademark counterclaim with its antitrust

14   counterclaims later, rather than now with CoStar's Trial-Ready Copyright Claims,

15   CoStar has no objection to proceeding in that manner.  But what would really serve

16   the interest of resolving these various disputes in an orderly and efficient fashion

17   would be to allow a jury to hear CoStar's Trial-Ready Copyright Claims instead of

18   delaying them on the possibility that CREXi's On-Hold Antitrust Claims *might*

19   someday make it to trial.  *See, e.g.*, *Smith*, 2020 WL 5033532, at *2 (Marshall, J.)

20   (denying motion for stay where it was "purely speculative" whether other case which

21   stay would seek to await would be resolved "within a year"); *Katz*, 2017 WL

22   6547201, at *1 (Marshall, J.) ("Since it is unknown when a decision will be rendered

23   [in case stay would seek to await], an indefinite delay . . . weighs against the issuance

24   of a stay"); *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir.

25   1979) ("A stay should not be granted unless it appears likely the other proceedings

26   will be concluded within a reasonable time in relation to the urgency of the claims

27   presented to the court.").  CoStar filed its lawsuit nearly five years ago and "can

28   conceive of no better way to preserve judicial resources than to bring this case to a

1  conclusion." *United Farm Workers v. U.S. Dep't of Lab.*, 598 F. Supp. 3d 878, 887

2  (E.D. Cal. Apr. 4, 2022) (denying motion for stay).

3  **V.    CONCLUSION**

4      CREXi's request for a stay is not about judicial efficiency, it is a transparent

5  attempt to delay the inevitable consequences of its widespread theft from CoStar.

6  CoStar respectfully requests that the Court deny CREXi's Motion and set a trial date

7  on CoStar's Trial-Ready Copyright Claims.

8

9  Dated:  August 25, 2025                Respectfully submitted,

10                                         **LATHAM & WATKINS LLP**

11                                         By:  */s/ Sarah. A. Tomkowiak*

12                                         Sarah A. Tomkowiak
                                           (admitted *pro hac vice*)

13                                         Nicholas J. Boyle
                                           (admitted *pro hac vice*)
                                           555 Eleventh Street, NW

14                                         Suite 1000
                                           Washington, D.C. 20004

15                                         Tel: 202.637.2200
                                           Fax: 202.637.2201

16                                         Email: sarah.tomkowiak@lw.com
                                                nicholas.boyle@lw.com

17
                                           Elyse M. Greenwald

18                                         (Bar No. 268050)
                                           10250 Constellation Boulevard

19                                         Suite 1100
                                           Los Angeles, CA 90067

20                                         Tel: 424.653.5500
                                           Fax: 424.653.5501

21                                         Email: elyse.greenwald@lw.com

22                                         Caitlin E. Dahl
                                           (admitted *pro hac vice*)

23                                         330 North Wabash Avenue
                                           Suite 2800

24                                         Chicago, IL 60611
                                           Tel: 312.876.7700

25                                         Fax: 312.993.9767
                                           Email: caitlin.dahl@lw.com

26

27                                         *Attorneys for Plaintiffs and*
                                           *Counterdefendants CoStar Group, Inc.*

28                                         *and CoStar Realty Information, Inc.*

1

## **CERTIFICATE OF COMPLIANCE**

2   The undersigned, counsel of record for Plaintiffs and Counterdefendants

3 CoStar Group, Inc. and CoStar Realty Information, Inc., certifies that this brief

4 contains 6,661 words, which complies with the word limit of L.R. 11-6.1.

5

6 Dated: August 25, 2025    By: */s/ Sarah A. Tomkowiak*
                Sarah A. Tomkowiak

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28