1   ELYSE M. GREENWALD (BAR NO. 268050)
    elyse.greenwald@lw.com
2   LATHAM & WATKINS LLP
    10250 Constellation Boulevard
3   Suite 1100
    Los Angeles, CA 90067
4   Tel: 424.653.5500
    Fax: 424.653.5501
5
6   *Attorney for Plaintiffs and Counterdefendants*
    *CoStar Group, Inc. and CoStar Realty Information, Inc.*

7   [Additional Counsel Listed on the Next Page]

8              UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
9

10  COSTAR GROUP, INC., and COSTAR       CASE NO. 2:20-cv-08819-CBM-AS
    REALTY INFORMATION, INC.,
11
12              Plaintiffs,            **COSTAR'S NOTICE OF MOTION
                                       AND MOTION TO DISQUALIFY
13       v.                            QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP; MEMORANDUM
14  COMMERCIAL REAL ESTATE             OF POINTS AND AUTHORITIES**
    EXCHANGE, INC.,
15                                     Date:      February 24, 2026
             Defendant.               Time:      10:00 A.M.
16                                     Courtroom: 8D
                                       Before:    Hon. Consuelo B. Marshall
17

18  ───────────────────────────────
    COMMERCIAL REAL ESTATE
19  EXCHANGE, INC.,

20              Counterclaimant,

21       v.

22  COSTAR GROUP, INC., and COSTAR
    REALTY INFORMATION, INC.,
23
                Counterdefendants.
24

25

26

27

28

1   NICHOLAS J. BOYLE*
    nicholas.boyle@lw.com
2   SARAH A. TOMKOWIAK*
    sarah.tomkowiak@lw.com
3   ANNE MALINEE*
    anne.malinee@lw.com
4   LATHAM & WATKINS LLP
    555 Eleventh Street, NW
5   Suite 1000
    Washington, D.C. 20004
6   Tel: 202.637.2200
    Fax: 202.637.2201
7

8   CAITLIN E. DAHL*
    caitlin.dahl@lw.com
9   LATHAM & WATKINS LLP
    330 North Wabash Avenue
10  Suite 2800
    Chicago, IL 60611
11  Tel: 312.876.7700
    Fax: 312.993.9767
12

13

14  * Admitted pro hac vice
15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 24, 2026 at 10:00 A.M., or as soon thereafter as this matter can be heard, in the courtroom of the Honorable Consuelo B. Marshall, located at the First Street Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 8D, Plaintiffs and Counterdefendants CoStar Group, Inc., and CoStar Realty Information, Inc. (collectively "CoStar") will move for an order to disqualify Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") from representing Defendant and Counterclaimant Commercial Real Estate Exchange, Inc. ("CREXi") in this case.   This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Stefanee Handon, the pleadings on file in this matter, and such arguments as the Court may consider.

**Compliance with Local Rule 7-3.**   This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 5, 2026. The parties were unable to resolve the issues raised by this Motion.

Respectfully submitted,

Dated: January 13, 2026           LATHAM & WATKINS LLP

By:  /s/ *Nicholas J. Boyle*
    Nicholas J. Boyle
    (admitted *pro hac vice*)
    Sarah A. Tomkowiak
    (admitted *pro hac vice*)
    Anne C. Malinee
    (admitted *pro hac vice*)
    555 Eleventh Street, NW
    Suite 1000
    Washington, D.C. 20004
    Tel: 202.637.2200
    Fax: 202.637.2201
    Email: nicholas.boyle@lw.com
        sarah.tomkowiak@lw.com
        anne.malinee@lw.com

Elyse M. Greenwald
(Bar No. 268050)
10250 Constellation Boulevard
Suite 1100
Los Angeles, CA 90067
Tel: 424.653.5525
Fax: 424.653.5501
Email:  elyse.greenwald@lw.com

Caitlin E. Dahl
(admitted *pro hac vice*)
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: 312.876.7700
Fax: 312.993.9767
Email: caitlin.dahl@lw.com


*Attorneys for Plaintiffs and
Counterdefendants CoStar Group, Inc., and
CoStar Realty Information, Inc.*

# **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

    A.    Quinn's Representation of CoStar in *Kutagula* ................................... 3

    B.    Quinn Substituted as CREXi's Counsel Despite Its
        Concurrent Representation of CoStar and Without
        Receiving CoStar's Consent ................................................................. 5

    C.    Quinn Threatens to Withdraw as CoStar's Counsel in
        *Kutagula* Because CoStar Declines to Sign a Retroactive
        Conflict Waiver ................................................................................... 7

LEGAL STANDARD ........................................................................................... 8

ARGUMENT ...................................................................................................... 10

    A.    An Attorney-Client Relationship Exists Between CoStar
        and Quinn Based on the Firm's Conduct in *Kutagula* ...................... 10

    B.    As Counsel to CoStar, Quinn's Duty of Loyalty Requires
        the Firm's Disqualification in This Case ........................................... 11

    C.    An Engagement Letter Signed by a Separate Company
        and Expressly Applicable to Only That Company Does
        Not Provide CoStar's Informed Written Consent ............................. 13

CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*24-7 Bright Star Healthcare, LLC v. Res-Care, Inc.*,
  2022 WL 1432439 (N.D. Ill. Mar. 24, 2022) ...................................................... 14

*Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*,
  913 F. Supp. 2d 900 (C.D. Cal. 2012) ............................................................... 10

*Avocent Redmond Corp. v. Rose Elecs.*,
  491 F. Supp. 2d 1000 (W.D. Wash. 2007) ......................................................... 14

*Bd. of Trs. of Leland Stanford Junior Univ. v. Zhang*,
  659 F. Supp. 3d 1061 (N.D. Cal. 2023) ......................................................... 9, 12

*Bernstein v. State Bar*,
  50 Cal. 3d 221 (1990) ....................................................................................... 10

*Blue Water Sunset, LLC v. Markowitz*,
  192 Cal. App. 4th 477 (2011) ............................................................................ 11

*Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*,
  264 F. Supp. 2d 914 (N.D. Cal. 2003) ............................................................... 10

*Civ. Serv. Com. v. Superior Ct.*,
  163 Cal. App. 3d 70 (1984) ............................................................................ 9, 11

*Concat LP v. Unilever, PLC*,
  350 F. Supp. 2d 796 (N.D. Cal. 2004) ......................................................... 11, 12

*Davis v. State Bar*,
  33 Cal. 3d 231 (1983) ....................................................................................... 10

*Flatt v. Superior Ct.*,
  9 Cal. 4th 275 (1994) ...................................................................................... 9, 12

*Hecht v. Superior Ct.*,
  192 Cal. App. 3d 560 (1987) ............................................................................. 15

*In re Charlisse C.*,
  45 Cal. 4th 145 (2008) ........................................................................................ 9

*In re Cnty. of L.A.*,
    223 F.3d 990 (9th Cir. 2000) ............................................................................ 8

*Netlist, Inc. v. SK hynix Inc.*,
    2016 WL 8905079 (C.D. Cal. Dec. 5, 2016) ............................................. 10, 12

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
    20 Cal. 4th 1135 (1999) ........................................................................... 9, 10, 12

*Pour Le Bebe, Inc. v. Guess? Inc.*,
    112 Cal. App. 4th 810 (2003) ....................................................................... 9

*State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*,
    72 Cal. App. 4th 1422 (1999) ...................................................................... 11

*Streit v. Covington & Crowe*,
    82 Cal. App. 4th 441 (2000) ........................................................................ 11

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.*,
    6 Cal. App. 4th 1050 (1992) ..................................................................... 9, 12

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
    98 F. Supp. 3d 1074 (C.D. Cal. 2015) (Marshall, J.) ................................. *passim*

*Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*,
    991 F.2d 1501 (9th Cir. 1993) ................................................................ 10, 11

## RULES

Cal. R. Prof. Cond.
    1.0.1(e) ................................................................................................ 12, 15
    1.0.1(e-1) .................................................................................................. 12
    1.7(a) ..................................................................................................... 9, 11
    1.10(a) ......................................................................................................... 9

L. R. 83-3.1.2 .............................................................................................. 9

# INTRODUCTION

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") should be disqualified from representing Commercial Real Estate Exchange, Inc. ("CREXi") because Quinn is litigation counsel for CoStar Group, Inc. ("CoStar") in California and owes CoStar an undivided duty of loyalty. At the time Quinn sought to represent CREXi against CoStar, Quinn already represented CoStar in California federal court, in *Kutagula v. CoStar Group, Inc. et al.*, No. 5:25-cv-05383 (N.D. Cal.).  Under settled law, by seeking to represent CREXi in concurrent litigation against its client, CoStar, in this Court, Quinn is violating its duty of loyalty—and must be disqualified under California's *per se* disqualification rule.

Quinn's disqualification is not only legally required but amply justified by the interests of justice.  Despite representing CoStar in active litigation, Quinn made the self-interested decision to represent one of CoStar's key competitors adverse to its client.  Quinn did not even raise the adverse representation with CoStar.  It simply pursued the opportunity and was hired by CREXi.  When confronted by CoStar after CREXi filed a notice of substitution, Quinn had no coherent response.

Quinn first argued that it had an engagement letter with a now-CoStar affiliate called Matterport that included language regarding future conflicts. But: that letter was signed by Matterport seven months before CoStar acquired Matterport; Quinn drafted the engagement letter to apply only to Matterport and specifically to exclude affiliates; the conflicts clause therein purports to waive conflicts solely as to Matterport; the letter states that any affiliates seeking representation in the future would need to review conflicts and sign a separate engagement letter; and the Matterport letter itself can only be amended in writing.  Moreover, when, on a previous occasion, Quinn had sought to represent a party adverse to CoStar, and CoStar had objected, Quinn had never pressed such an argument, but had instead apologized.

Facing a slew of independently dispositive (and Quinn-drafted) provisions fatal to its position, Quinn then pivoted. Acknowledging that there was no agreement between the parties as to the application of the Matterport-Quinn engagement letter—from which Quinn excluded Matterport affiliates—to Matterport's affiliate CoStar, Quinn instead demanded that CoStar sign a new letter that retroactively waived Quinn's conflict, or Quinn would fire CoStar as a client, in the middle of briefing on a dismissal motion in *Kutagula*.

Quinn's demand for a written retroactive waiver admits, and underscores, that CoStar did not agree to Quinn's representation of CREXi. And its latest gambit— seeking to fire CoStar at a critical juncture in the *Kutagula* case—not only compounds its breaches of duty to CoStar, it is for nought. As a matter of California law, the conflict is assessed at the time it arises. Trying later to fix the conflict by firing the original client does not cure the conflict—rather, it further reveals the law firm's disregard for that client and its legal and ethical obligations.

Put simply, Quinn is conflicted, cannot represent CREXi in this litigation, and cannot now fix its breach, whether by prejudicing CoStar in the *Kutagula* matter or otherwise. This Court should disqualify Quinn under California's *per se* rule requiring disqualification of a firm that creates a concurrent conflict without its client's consent.

## **BACKGROUND**

CoStar filed this lawsuit in September 2020 alleging mass copyright infringement and other claims against CREXi, a key CoStar competitor. Dkt. 1. Nine months later, CREXi filed antitrust counterclaims. Dkt. 74. On June 25, 2025, this Court denied CREXi's summary judgment motion on CoStar's claims, and CoStar's claims are on the brink of trial. Dkt. 1237; *see* Dkt. 1261 (denying CREXi's motion to stay the trial). From the outset of this litigation and until December 29, 2025, CREXi was represented by counsel at Keker, Van Nest & Peters LLP. Dkt. 12. On that date, Quinn was substituted as CREXi's counsel. Dkt. 1269.

### A.    Quinn's Representation of CoStar in *Kutagula*

CoStar is also a party to a separate lawsuit that was filed in California federal court on June 26, 2025.  *See Kutagula v. CoStar Grp, Inc. et al.*, No. 5:25-cv-05383 (N.D. Cal.).  In *Kutagula*, Quinn represents CoStar and its co-defendant, Matterport, LLC.[1]  As Quinn told the court in that case, Matterport is a separate subsidiary that CoStar acquired on February 28, 2025.  Handon Decl. ¶ 3.  Though a subsidiary, Matterport is and always has been a corporate entity wholly distinct from CoStar.  *Id.*

In *Kutagula*, Quinn entered an appearance for CoStar on August 15, 2025.  *Kutagula*, No. 5:25-cv-05383, Dkts. 8, 12-13.  On September 22, Quinn filed a motion to dismiss the original complaint on behalf of CoStar.  *Id.*, Dkt. 19.  On October 20, Quinn filed a motion to dismiss the amended complaint on behalf of CoStar.  *Id.*, Dkt. 26.  Both of those briefs were signed by Quinn as counsel for CoStar (in addition to Matterport), as shown below.

| | |
|---|---|
| DATED:  September 22, 2025 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By _Kyle Batter_ |
| | Kyle Batter |
| | *Attorneys for Matterport LLC and CoStar Group* |

*Id.*, Dkt. 19 at i, 15.

| | |
|---|---|
| DATED:  October 20, 2025 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By _Kyle Batter_ |
| | Kyle Batter |
| | *Attorneys for Matterport LLC and CoStar Group* |

---

[1] The *Kutagula* plaintiff errantly named the defendant "Matterport, Inc."  Matterport, Inc. ceased to exist as an entity when CoStar acquired it on February 28, 2025, at which time it merged into a wholly owned subsidiary of CoStar that was renamed Matterport, LLC.  Handon Decl. ¶ 3; *see Kutagula*, No. 5:25-cv-05383, Dkt. 19 at i n.1; *id.*, Dkt. 26 at i n.1.  Matterport, LLC is a subsidiary and entity wholly distinct from CoStar.  Handon Decl. ¶ 3.

1    *Id.*, Dkt. 26 at. i, 15.

2       Further, in both motions to dismiss, Quinn made specific arguments

3 applicable to CoStar but not its co-defendant, Matterport. *Id.*, Dkt. 19 at 9-11, 13-

4 15; *id.*, Dkt. 26 at 10-11, 13-15. And in connection with both motions, counsel at

5 Quinn filed declarations stating that Quinn is "counsel for Defendants Matterport

6 LLC and CoStar Group." *Id.*, Dkt. 19-1 ¶ 1; *id.,* Dkt. 26-1 ¶ 1.

> 2     1.    I am an attorney at the law firm Quinn Emanuel Urquhart & Sullivan, LLP, counsel
>
> 3 for Defendants Matterport LLC[1] and CoStar Group in the above-captioned action. I am a member in
>
> 4 good standing of the Bar of the State of California. I am submitting this Declaration in support of
>
> 5 Defendants' Motion to Dismiss, Compel Arbitration, and Stay Claims. I have personal knowledge of
>
> 6 the matters set forth in this Declaration, and if called as a witness, I would testify competently thereto.

12    *Id.,* Dkt. 19-1 ¶ 1.

> 2     1.    I am an attorney at the law firm Quinn Emanuel Urquhart & Sullivan, LLP, counsel
>
> 3 for Defendants Matterport LLC[1] and CoStar Group in the above-captioned action. I am a member in
>
> 4 good standing of the Bar of the State of California. I am submitting this Declaration in support of
>
> 5 Defendants' Motion to Dismiss First Amended Complaint, Compel Arbitration, and Stay Claims. I
>
> 6 have personal knowledge of the matters set forth in this Declaration, and if called as a witness, I
>
> 7 would testify competently thereto.

19    *Id.* Dkt. 26-1 ¶ 1

20       Briefing on the current motion to dismiss is ongoing and scheduled through

21 February 2026. *Id.*, Dkt. 32. Kutagula filed its opposition on December 31, and

22 CoStar's reply is due on February 4, 2026. *Id.*, Dkt. 30, 32. A hearing on the motion

23 is scheduled for February 18, 2026. *Id.*, Dkt. 32.[2]

24

---

25 [2] On January 5, 2026, the parties in *Kutagula* filed a Joint Stipulation and [Proposed] Order to
26 Continue Hearing on and Extend Time to File Responsive Brief to Defendants' Motion to Dismiss,
*Kutagula*, No. 5:25-cv-05383, Dkt. 31, requesting that CoStar's deadline to file a reply be extended
27 to February 4, 2026 and that the hearing on the motion be extended to February 18, 2026. Quinn
did not obtain CoStar's consent prior to filing the stipulation. Handon Decl. ¶ 14. The *Kutagula*
28 Court signed the parties' stipulation on January 6, 2026. *See Kutagula*, No. 5:25-cv-05383,
Dkt. 32.

**B.    Quinn Substituted as CREXi's Counsel Despite Its Concurrent Representation of CoStar and Without Receiving CoStar's Consent**

On December 3, 2025—after CREXi lost its motion to stay trial in this matter pending remand of its counterclaims—CREXi filed a request to substitute Quinn as its counsel in the instant litigation.    Dkt. 1262; *see also* Dkt. 1264 (CREXi's corrected request to substitute counsel).    That is, Quinn sought to represent CREXi—adverse to CoStar—despite the firm's representation of CoStar in *Kutagula* and consequent duty of loyalty to CoStar.

Quinn's representation of CREXi in this case created a concurrent conflict given the firm's representation of CoStar in *Kutagula*.    The conflict arose because of Quinn's new representation of CREXi in this case, not because of CoStar's acquisition of Matterport—which, as explained, occurred many months earlier in February 2025.

CoStar did not and has not provided its informed consent permitting Quinn to breach its duty to CoStar and represent CREXi in this case.    To be sure, Matterport—CoStar's subsidiary and co-defendant in *Kutagula*—signed an engagement letter with Quinn *prior to Matterport's acquisition by CoStar* (the "Matterport-Quinn engagement letter") that contains language addressing future conflicts.    But the Matterport-Quinn engagement letter purports to waive potential future conflicts as to Matterport *only*.    *See* Handon Decl., Ex. A, at 4 ("We may currently or in the future represent one or more other clients in matters involving ***Matterport*** and we may represent the parties that are adverse to you in this matter in other unrelated matters." (emphasis added)).    This provision was drafted by Quinn and is applicable solely to Matterport.    CoStar never agreed to such a purported blanket waiver, or to the Matterport-Quinn engagement letter more generally.    Nor did CoStar ever give any consent—informed or otherwise—to Quinn's representation of CREXi against CoStar.

1    That the Matterport-Quinn engagement letter does not apply to CoStar is plain
2    for several independent reasons.  Quinn drafted that engagement letter to specifically
3    cover its representation of only Matterport Inc.  Indeed, the Matterport-Quinn
4    engagement letter expressly disclaims application of its terms to "any subsidiary,
5    parent, or other affiliate of Matterport." *Id.* at 1.  The Matterport-Quinn engagement
6    letter further states that if any of Matterport's affiliates "think that they may require
7    counsel" in the future, that representation "would need to be covered by a separate
8    engagement letter, and would depend on a review by us and disclosure to all
9    concerned of the conflicts of interest that would or could arise."  *Id.*; *see also id.* at
10   11 ("The provisions of this letter may only be amended in writing, signed by both
11   parties").  There is no such separate engagement letter with CoStar, and the
12   Matterport letter was never amended in writing.  Moreover, CoStar and Matterport
13   are (and always have always been) distinct corporate entities, as Quinn has
14   recognized in filing motions to dismiss on behalf of CoStar.  *Kutagula*, No. 25-cv-
15   05383, Dkt. 19 at n.1 (acknowledging that "CoStar Group acquired Matterport, Inc.
16   … on February 28, 2025 and merged it into a wholly owned subsidiary"); *id.*, Dkt.
17   26 at n.1 (same).

18   Further, Matterport signed the engagement letter on July 30, 2024—seven
19   months before CoStar acquired Matterport.  Handon Decl., Ex. A at 13.  And as best
20   as CoStar can tell, Quinn had never provided CoStar with a copy of the engagement
21   letter until December 3, 2025—after Quinn sought to substitute as counsel in this
22   case.  *Id.* ¶ 8.

23   Neither did Quinn even mention to its client CoStar, in advance of the request
24   to substitute as counsel for CREXi, that it intended to seek to represent another
25   company adverse to CoStar.  Certainly Quinn did not ask CoStar in advance to waive
26   the concurrent conflict.  (CoStar does not know whether Quinn asked CREXi to
27   waive the conflict.)

28

Indeed, it was only after agreeing to represent CREXi in a major federal case with an upcoming trial, a significant matter for the firm, that Quinn decided to press the argument that the Matterport letter somehow constitutes a blanket conflicts waiver by CoStar. Quinn's prior conduct suggests that the assertion is, at best, one of convenience. In connection with another, prior, conflict, Quinn acknowledged that it represented CoStar and apologized. On July 9, 2025 (after the *Kutagula* complaint was filed), Quinn sent CoStar's in-house counsel a letter on behalf of another client—adverse to CoStar—in connection with a separate matter. *Id.* ¶ 7. CoStar's in-house counsel confirmed receipt, but also informed the sending Quinn attorney that "Quinn is currently representing CoStar Group in another matter" (*i.e.,* the *Kutagula* matter). *Id.* In response, Quinn apologized that its conflict-check system had not yet picked up on the firm's representation of CoStar, noted that it typically would have discussed any adverse representation in advance of undertaking it, and did not again contact CoStar as counsel for the adversary. *Id.*

## C. Quinn Threatens to Withdraw as CoStar's Counsel in *Kutagula* Because CoStar Declines to Sign a Retroactive Conflict Waiver

On December 15—less than two weeks after Quinn sought to substitute as CREXi's counsel—CoStar's in-house counsel sent its Quinn lawyers a letter asking the firm to withdraw from the CREXi matter or explain why it believed it did not have a conflict with CoStar. *Id.*, Ex. B. Quinn responded on December 18, stating that "Quinn Emanuel has represented both Matterport and CoStar consistent with the engagement agreement Matterport" (and not CoStar) "signed." *Id.*, Ex. C at 1. Quinn further stated that CoStar had been "paying [Quinn] under th[e] agreement" that Matterport signed. *Id.* Nonetheless, Quinn then acknowledged there was no agreement between the parties that the Matterport letter applied to CoStar, given CoStar's position. *Id.* at 2. Accordingly, Quinn stated that CoStar would *now* need to waive the conflict or face the consequences. Specifically, Quinn demanded that

1  unless CoStar agreed to grant a retroactive waiver, Quinn would "need to withdraw

2  or be substituted out as counsel for CoStar" in *Kutagula*.  *Id.*

3       On December 24—Christmas Eve—Quinn followed up with CoStar

4  regarding the firm's demand that CoStar sign an engagement letter retroactively

5  waiving the conflict it had created.  *Id.* ¶ 11.  Quinn said that "[i]f CoStar wishes to

6  avoid" Quinn's withdrawal motion in *Kutagula*, it would need to agree to "[Quinn's]

7  terms of representation" by New Year's Eve, December 31.  *Id.*  The demand to its

8  client could hardly have been more prejudicial.  New Year's Eve was two weeks

9  before the then deadline for CoStar to file a reply brief in support of its motion to

10 dismiss in *Kutagula*, and one month before the hearing on that motion.  *See*

11 *Kutagula, No. 25-cv-05383*, Dkt. 26.

12      CoStar responded on December 29.  CoStar explained that it had been

13 comfortable proceeding in *Kutagula* despite the absence of a written engagement

14 letter with Quinn.  Handon Decl., Ex. D, at 2.  Nonetheless, CoStar stated that it was

15 not opposed to entering "an engagement letter that adequately protects CoStar's

16 interests."  *Id.*  CoStar further explained, however, that it would not be comfortable

17 signing an engagement letter that waived conflicts for "litigation adverse to CoStar

18 in matters involving a competitor" (let alone a retroactive conflict waiver).  *Id.*

19      Quinn responded on the same day, December 29.  Quinn continued to insist

20 that CoStar must retroactively waive the conflict that Quinn had created, stating that

21 "[u]nless CoStar is able to confirm by the close of business on December 31, 2025

22 that it has agreed to our engagement terms or has arranged for substitute counsel, we

23 will need to file our withdrawal motion."  *Id.*, Ex. E.

24                        **<u>LEGAL STANDARD</u>**

25      State law governs attorney disqualification.  *In re Cnty. of L.A.*, 223 F.3d 990,

26 995 (9th Cir. 2000) ("Because we apply state law in determining matters of

27 disqualification, we must follow the reasoned view of the state supreme court when

28 it has spoken on the issue.").  Here, California supplies the relevant legal principles.

1  *See W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1080

2  (C.D. Cal. 2015) (Marshall, J.) (applying California law to disqualify attorney); *see*

3  *also* L. R. 83-3.1.2.

4      Under California law, an attorney owes her client a "duty of undivided

5  loyalty" that strictly prohibits the attorney from taking a "representation adverse to

6  a present client." *Truck Ins. Exch. v. Fireman's Fund Ins. Co*., 6 Cal. App. 4th 1050,

7  1056 (1992). Under this duty of loyalty, "an attorney may simply not undertake to

8  represent an interest adverse to those of a current client without the client's

9  approval." *Civ. Serv. Com. v. Superior Ct*., 163 Cal. App. 3d 70, 78 n.1 (1984).

10 These principles of California common law are reflected in the state's Rules of

11 Professional Conduct. *See* Cal. R. Prof. Cond. 1.7(a) (prohibiting representation

12 adverse to a current client absent the client's "informed written consent"); *id.* at

13 1.10(a) (providing that a lawyer's conflicts under Rule 1.7(a) are imputed to all

14 attorneys at the same firm).

15     "In the case of concurrent adverse representation," California follows a "per

16 se rule of disqualification." *Bd. of Trs. of Leland Stanford Junior Univ. v. Zhang*,

17 659 F. Supp. 3d 1061, 1067 (N.D. Cal. 2023) (quoting *People ex rel. Dep't of Corps.*

18 *v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1139 (1999)). "[I]n all but a few

19 instances, the rule of disqualification in simultaneous representation cases is a per se

20 or 'automatic one.'" *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 284-85 (1994) (citation

21 omitted). Disqualification is automatic "because the 'primary value at stake in cases

22 of simultaneous or dual representation is the attorney's duty—and the client's

23 legitimate expectations—of *loyalty*, rather than confidentiality." *W. Sugar Coop.*,

24 98 F. Supp. 3d at 1082 (Marshall, J.) (quoting *Pour Le Bebe, Inc. v. Guess? Inc*., 112

25 Cal. App. 4th 810, 822, (2003)). "This strict *per se* rule recognizes that a client

26 cannot be expected to sustain trust and confidence in his or her counsel who is also

27 representing the client's adversary in litigation." *Id.* (citing *In re Charlisse C.*, 45

28 Cal. 4th 145, 160 (2008)). Though disqualification imposes hardship, "the important

right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Id.* (quoting *SpeeDee Oil*, 20 Cal. 4th at 1145).

For law firms, one "attorney's conflict is imputed to the law firm as a whole." *W. Sugar Coop.*, 98 F. Supp. 3d at 1082 (Marshall, J.) (citing *Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F. Supp. 2d 900, 906 (C.D. Cal. 2012)). And "[i]n determining whether the automatic disqualification rule applies, a court should evaluate the conflict of interest at the time it arose, not at the time a disqualification motion is adjudicated in court." *Netlist, Inc. v. SK hynix Inc.*, 2016 WL 8905079, at *4 (C.D. Cal. Dec. 5, 2016).

## ARGUMENT

Quinn represented CoStar in *Kutagula* before the firm substituted as counsel in the instant case. Because CoStar did not consent to this conflict—let alone provide the informed written consent the law requires—California law mandates Quinn's automatic disqualification from this case. "Simply put, an attorney (and his or her firm) cannot simultaneously represent a client in one matter while representing another party suing that same client in another matter." *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 919 (N.D. Cal. 2003) (cited by Quinn in *Multimedia Patent Trust v. Apple Inc. et al.*, No. 3:10-cv-02618-H-KSC, Dkt. 48 at 6 (S.D. Cal April 14, 2011)).

### A.    An Attorney-Client Relationship Exists Between CoStar and Quinn Based on the Firm's Conduct in *Kutagula*

An attorney-client relationship exists between Quinn and CoStar based on Quinn's conduct in the *Kutagula* litigation. "No formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client." *Bernstein v. State Bar*, 50 Cal. 3d 221, 230 (1990) (citation omitted). That is especially true where "the existence of the relationship is demonstrated and reinforced by the attorney's own conduct" notwithstanding the parties' lack of "formal arrangements."

*Davis v. State Bar*, 33 Cal. 3d 231, 237 (1983); *see also Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1505 (9th Cir. 1993) (a court "look[s] to the intent and conduct of the parties" to determine whether an attorney-client relationship exists). In *Kutagula*, Quinn has entered appearances on behalf of CoStar, filed motions to dismiss on behalf of CoStar, and stated in declarations that it is "counsel for … CoStar Group." *Kutagula*, No. 5:25-cv-05383, Dkts. 19-1, 26-1. Indeed, Quinn has made arguments to dismiss the case applicable solely to CoStar and not its co-defendant, Matterport. *Id.*, Dkt. 19 at 9-11, 13-15 (arguing that plaintiff's claims should be dismissed against CoStar given the lack of an employment agreement with CoStar and that CoStar can compel arbitration even though it is not a signatory to the relevant arbitration agreement); *id.*, Dkt. 26 at 10-11, 13-15 (similar). Under settled law, these acts establish an attorney-client relationship between Quinn and CoStar. *See, e.g.*, *Blue Water Sunset, LLC v. Markowitz*, 192 Cal. App. 4th 477, 487-88 (2011); *Streit v. Covington & Crowe*, 82 Cal. App. 4th 441, 446 (2000).

## B. As Counsel to CoStar, Quinn's Duty of Loyalty Requires the Firm's Disqualification in This Case

As counsel to CoStar in *Kutagula*, Quinn owed CoStar a duty of undivided loyalty. *See State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1430-31 (1999) (recognizing that the duty of undivided loyalty inheres in every attorney-client relationship). As part of that duty of loyalty, Quinn may not "represent an interest adverse to" CoStar "without [CoStar's] approval." *Civ. Serv. Com.*, 163 Cal. App. 3d at 78 n.1.

Quinn's representation of key CoStar competitor CREXi is, of course, adverse to CoStar. It is thus forbidden unless CoStar "agree[d] in writing to waive the conflict." *W. Sugar Coop.*, 98 F. Supp. 3d at 1082 (Marshall, J.); *see* Cal. R. Prof. Cond. 1.7(a) (requiring a client's "informed written consent" to waive a concurrent conflict). A client's waiver, including any "advanced waiver," must be "fully

informed." *W. Sugar Coop.*, 98 F. Supp. 3d at 1082 (Marshall, J.); *see Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 820 (N.D. Cal. 2004) (requiring "full disclosure" and that "both clients agree in writing to waive the conflict"). Under the California Rules of Professional Conduct, "informed written consent" requires a client to agree—in writing—"to a proposed course of conduct after the lawyer has communicated and explained (i) the relevant circumstances and (ii) the material risks, including any actual and reasonably foreseeable adverse consequences of the proposed course of conduct." Cal. R. Prof. Cond. 1.0.1(e), (e-1).

None of those necessary steps occurred. The present conflict arose when Quinn began representing CREXi in this case. Yet CoStar has not provided *any* consent, let alone the informed written consent, necessary to waive this conflict. Thus, Quinn's disqualification is mandatory under California's "per se rule of disqualification." *SpeeDee Oil Change*, 20 Cal. 4th at 1147; *see also Flatt*, 9 Cal. 4th at 288 (holding that firm that created conflict by entering litigation adverse to its conflict must be disqualified from that litigation); *Truck Ins. Exch.*, 6 Cal. App. 4th at 1055 (same).

To be sure, Quinn cannot cure this conflict by withdrawing from its representation of CoStar in *Kutagula*. A conflict of interest must be analyzed "at the time [the conflict] arose"—*i.e.*, at the time Quinn created the instant conflict by representing CREXi. *Netlist*, 2016 WL 8905079, at *4. And a law firm cannot escape the per se disqualification rule by withdrawing from the first representation and "unilaterally converting a present client into a former client prior to [a] hearing on the motion for disqualification." *Zhang*, 659 F. Supp. 3d at 1067 (citation omitted); *see W. Sugar Coop.*, 98 F. Supp. 3d at 1084 (Marshall, J.) (disqualifying law firm that "terminated its relationship with [the first client] after it would not agree to waive the conflict"); *Netlist*, 2016 WL 8905079, at *5 (holding that law

1    firm's instruction "not to perform any additional work" for first client did not cure

2    conflict).[3]

3        **C.**    **An Engagement Letter Signed by a Separate Company and**

4                  **Expressly Applicable to Only That Company Does Not Provide**

5                  **CoStar's Informed Written Consent**

6          Grasping for a way out of the per se disqualification rule, Quinn suggests that

7    CoStar had consented to the conflict because Quinn was "represent[ing] both

8    Matterport and CoStar consistent" with the Matterport-Quinn engagement letter, and

9    CoStar had been paying Quinn's legal fees "under that agreement."  Handon Decl.,

10   Ex. C at 1.  For multiple independent reasons, the Matterport-Quinn engagement

11   letter does not provide CoStar's informed written consent, and thus it does not waive

12   Quinn's conflict.

13         As an initial matter, Quinn's position is internally incoherent.  On the one

14   hand, Quinn claims that CoStar is bound by the Matterport-Quinn engagement

15   letter—including the purported advance conflict waiver—that Matterport signed

16   months before it was even affiliated with CoStar.  On the other hand, Quinn

17   threatened to withdraw from its representation of CoStar in *Kutagula* based on the

18   lack of any agreed engagement terms.  *See id.* at 2.  (To be clear, Quinn did not

19   threaten to withdraw from *Kutagula* because CoStar was unwilling to sign a written

20   engagement letter:  CoStar offered to sign an engagement letter, but it was unwilling

21   to accept Quinn's demand that CoStar waive adverse litigation with competitors and

22   provide a retroactive waiver for this case.  *Id.,* Ex. D at 2.)

23         Quinn's contradictory positions aside, there are several reasons why CoStar

24   did not provide an informed conflict waiver in the Matterport-Quinn engagement

25   letter.  To begin, CoStar did not sign the Matterport-Quinn engagement letter, and

26   Quinn drafted that letter to disclaim any application to "any subsidiary, parent, or

27

28

---

[3] While disqualification is mandatory, any prejudice to CREXi is in any event de minimis, given that Quinn has only just appeared in the case, and has not, for example, filed a single brief with the Court.

other affiliate of Matterport." *Id.*, Ex. A at 1.  Quinn further drafted the Matterport engagement letter to state that if any of Matterport's affiliates "think that they may require counsel," that representation "***would need to be covered by a separate engagement letter***, and would depend on a review by us and disclosure to all concerned of the conflicts of interest that would or could arise." *Id.*  Given these terms, neither CoStar nor Quinn could have reasonably understood any terms of the Matterport-Quinn engagement letter to apply to CoStar.  *See 24-7 Bright Star Healthcare, LLC v. Res-Care, Inc.*, 2022 WL 1432439, at *6 (N.D. Ill. Mar. 24, 2022) (holding that an engagement letter signed by a corporate affiliate before the defendant became an affiliate "d[id] not bind Defendant").  Moreover, the plain terms of the advance waiver clause in the Matterport-Quinn engagement letter purport to waive future conflicts only as to *Matterport*.  Handon Decl., Ex. A at 4.  So even if the Matterport engagement letter applies to CoStar at all— notwithstanding the clear language disavowing such application—the advance waiver clause itself could not apply to CoStar.  *See Avocent Redmond Corp. v. Rose Elecs.*, 491 F. Supp. 2d 1000, 1004 n.3, 1006-07 (W.D. Wash. 2007) (holding that prospective waiver in engagement letter did not apply to corporation's affiliates because "only [the corporation] agreed to waive prospective conflicts").

CoStar's supposed "informed written consent" makes even less sense when considering the relevant sequence of events.  Matterport signed the engagement letter in July 2024.  At that time, CoStar had no affiliation with Matterport, and CoStar did not acquire Matterport until seven months later, in February 2025.  Handon Decl. ¶ 3.  CoStar could not have provided informed written consent through a writing signed by an unrelated entity with which it had no affiliation.  *See 24-7 Bright Star Healthcare, LLC*, 2022 WL 1432439, at *6 (disqualifying law firm and rejecting argument that advance waiver signed by an affiliate "before Defendant was its affiliate" could bind the defendant).

1    Nor could CoStar have provided the required consent through any implicit
2    assumption of the terms of the Matterport-Quinn engagement letter as Quinn now
3    contends.  "Informed written consent" requires a client to agree—in writing—to a
4    course of conduct after counsel has communicated the relevant circumstances and
5    materials risks, none of which occurred here.  *See* Cal. R. Prof. Cond. 1.0.1(e), (e-
6    1).[4]  Moreover, Quinn had not pressed the implicit assumption argument previously,
7    despite the clear opportunity to do so.  In July 2025, when CoStar identified a
8    different conflict arising from Quinn's purported representation of another party
9    adverse to CoStar, Quinn apologized for a failure in its conflicts system and did not
10   again contact CoStar as counsel for the adversary.  Handon Decl. ¶ 7.

11   CoStar's payment of Quinn's legal fees is of no moment either.  Certainly,
12   that payment, along with the parties' conduct, are "indicia" that an attorney-client
13   relationship exists.  *Hecht v. Superior Ct.*, 192 Cal. App. 3d 560, 564-65 (1987).
14   And as explained above, an attorney-client relationship between CoStar and Quinn
15   indisputably exists.  But the pertinent question here is whether CoStar provided
16   Quinn informed consent, in writing, that would allow Quinn to represent CREXi.
17   For the reasons explained above, CoStar provided no such consent.

18                                        *    *    *

19   As Quinn itself has acknowledged, "lawyers cannot sue current clients."
20   *Multimedia Patent Tr.*, No. 3:10-cv-02618-H-KSC, Dkt. 48 at 12.  Quinn's
21   disqualification is both legally compelled and warranted by the interests of justice.
22   While representing CoStar in active litigation, Quinn pursued a significant
23   engagement to represent a CoStar competitor in litigation against CoStar—without
24   first consulting CoStar.  When confronted, Quinn demanded a retroactive waiver
25   while simultaneously claiming that an unsigned engagement letter somehow already
26   waived the conflict.  But that waiver was executed by Matterport seven months

27

28   [4] *See also W. Sugar Coop.*, 98 F. Supp. 3d at 1084 (Marshall, J.) (finding advance waiver insufficient to support informed consent).

before CoStar acquired Matterport; the Quinn-drafted engagement letter specifically applies only to Matterport; the waiver, on its face, also purports to apply only to Matterport; and, in a prior adverse-representation misstep, Quinn apologized to CoStar for a failure in its conflicts system and was not heard from again in that matter.  The record leaves no doubt:  Disqualification is required.

## **CONCLUSION**

For the foregoing reasons, CoStar respectfully requests the Court disqualify Quinn from representing CREXi in this matter.

Dated: January 13, 2026                    Respectfully submitted,

LATHAM & WATKINS LLP

By:  /s/ *Nicholas J. Boyle*
     Nicholas J. Boyle
     (admitted *pro hac vice*)
     Sarah A. Tomkowiak
     (admitted *pro hac vice*)
     Anne C. Malinee
     (admitted *pro hac vice*)
     555 Eleventh Street, NW
     Suite 1000
     Washington, D.C. 20004
     Tel: 202.637.2200
     Fax: 202.637.2201
     Email: nicholas.boyle@lw.com
         sarah.tomkowiak@lw.com
         anne.malinee@lw.com

     Elyse M. Greenwald
     (Bar No. 268050)
     10250 Constellation Boulevard
     Suite 1100
     Los Angeles, CA 90067
     Tel: 424.653.5525
     Fax: 424.653.5501
     Email:  elyse.greenwald@lw.com

1

2      Caitlin E. Dahl
       (admitted *pro hac vice*)
3      330 North Wabash Avenue
       Suite 2800
4      Chicago, IL 60611
       Tel: 312.876.7700
5      Fax: 312.993.9767
6      Email: caitlin.dahl@lw.com

7

8      *Attorneys for Plaintiffs and*
       *Counterdefendants CoStar Group, Inc., and*
9      *CoStar Realty Information, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs and Counterdefendants CoStar Group, Inc. and CoStar Realty Information, Inc., certifies that this brief contains 4,781 words, which complies with the word limit of L.R. 11-6.1.


Dated: January 13, 2026         By: */s/ Nicholas J. Boyle*
                                       Nicholas J. Boyle