UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSTAR GROUP, INC. *et al*, <br><br> Plaintiffs, <br> v. <br><br> COMMERCIAL REAL ESTATE EXCHANGE, INC., <br><br> Defendant. | Case No.:  2:20-cv-8819-CBM(ASx) <br><br> **ORDER RE: PLAINTIFFS' MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN LLP** |

The matter before the Court is Plaintiff's and Counterdefendants CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar")'s "Motion to Disqualify Quinn Emanuel Urquhart & Sullivan, LLP" from representing Defendant and Counterclaimant Commercial Real Estate Exchange, Inc. ("CREXi") in this action.  (Dkt. No. 1272 (the "Motion").)  The matter is fully briefed. (Dkt. Nos. 1279, 1280.)

## I.      BACKGROUND

This is a copyright infringement action filed by CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively, "CoStar") in September 2020 against Commercial Real Estate Exchange Inc. ("CREXi").  (Dkt. No. 1.)  CoStar

1

alleges three claims in the Third Amended Complaint: (1) copyright infringement (17 U.S.C. §§ 106, 501); (2) removal of copyright management information in violation of the Digital Millenium Copyright Act ("DMCA," 17 U.S.C. § 1202(b)(1)); and (3) distribution of works with removed or altered copyright management information (17 U.S.C. § 1202(b)(3)). (*See* Dkt. No. 912 ("TAC"), ¶¶ 219–247.) CoStar alleges CREXi infringed on 48,756 images in total. (*See id.* Ex. A.) CREXi denies all claims. (*See* Dkt. No. 923 ("Answer to TAC"), ¶¶ 219–247.) In June 2021, CREXi brought counterclaims against CoStar alleging violations of antitrust laws, trademark infringement, and related state law claims. (Dkt. No. 74.)

## II. STATEMENT OF THE LAW

"The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers." *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003) (citing *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996)). "[D]isqualification motions are generally disfavored and, because of their potential for abuse, must be 'subjected to particularly strict judicial scrutiny.'" *Block v. Augme Techs., Inc.*, 2010 WL 11549566, at *4 (C.D. Cal. May 28, 2010) (quoting *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1349 (9th Cir. 1988)); *see also Visa*, 241 F. Supp. 2d at 1104 ("Motions to disqualify counsel are strongly disfavored").

"Motions to disqualify proceed in two steps. First, the court determines whether counsel has committed an ethical violation. Second, assuming a violation occurred, the court considers whether disqualification is appropriate. When considering a motion to disqualify counsel, a court must balance such varied interests as a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that tactical abuse underlies the disqualification motion." *Fitzgerald v. Mercedes Benz USA, LLC*, 2021 WL 3620429, at *3 (C.D. Cal. Apr. 5, 2021). District courts "apply

state law in determining matters of disqualification." *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

"When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged." *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656 (1999). "The State Fund rule holds attorneys to a reasonable standard of professional conduct when confidential or privileged materials are inadvertently disclosed." *Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 818 (2007). "Mere exposure to the confidences of an adversary does not, standing alone, warrant disqualification"—but "disqualification might be justified if an attorney inadvertently receives confidential materials and fails to conduct himself or herself in the manner specified above, assuming other factors compel disqualification." *State Fund*, 70 Cal. App. 4th at 657.

"[D]isqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed; an affirmative showing of existing injury from the misuse of privileged information is not required." *McDermott Will & Emery LLP v. Superior Ct.*, 10 Cal. App. 5th 1083, 1120 (2017). "[T]he significant question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court. Thus, disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel has obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation." *Id.*

## III.    DISCUSSION

**A.    Request for Judicial Notice**

Attached to their Opposition, Defendant and Counterclaimant CREXi requests the Court take judicial notice of the following five facts and records:

1. The Agreement and Plan of Merger and Reorganization dated April 21, 2024, between CoStar Group, Inc. and Matterport, Inc., which was attached to CoStar Group Inc.'s 8-K filing dated February 28, 2025, attached as **Exhibit A** to the Declaration of Michael Lifrak (Dkt. No. 1279-4);

2. CoStar's "Brands" page published on its website, attached as **Exhibit B** to the Declaration of Michael Lifrak (Dkt. No. 1279-5);

3. The Declaration of Kyle Batter in Support of Quinn Emanuel's Motion to Withdraw as Counsel of Record for Defendant CoStar Group, which is Dkt. 33-1 in *Kutagula v. Matterport, Inc. and CoStar Group, Inc.*, No. 25-cv-05383 (N.D. Cal. Jan. 13, 2026), attached as **Exhibit C** to the Declaration of Michael Lifrak filed (Dkt. No. 1279-6);

4. Matthew Zinn's LinkedIn post, attached as **Exhibit D** to the Declaration of Michael Lifrak (Dkt. No. 1279-7); and

5. CoStar's June 26, 2025 Press Release page published on its website, attached as **Exhibit E** to the Declaration of Michael Lifrak (Dkt. No. 1279-8).

(Dkt. No. 1279-9 (the "Request") at 3.)  Plaintiff does not oppose the Request or dispute the accuracy of each requested document.

Fed. R. Evid. 201(b) states, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Courts in the Ninth Circuit have cautioned against judicially noticing the entirety of documents. *See Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1183 n.3 (C.D. Cal. 2011) (citing *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005)); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000–01 (9th Cir. 2018) (holding district court abused discretion by judicially noticing entire documents without identifying and assessing what fact or facts therein were judicially

4

noticed).  Therefore, the Court rules as follows:

Courts may take judicial notice of documents filed with the SEC.  *Lambert v. Baker Tilly Hong Kong Ltd.*, 2016 WL 6272465, at *2–3 (C.D. Cal. May 23, 2016).  Accordingly, the Court takes judicial notice of the existence of Exhibit A.

Courts may take judicial notice of court filings. *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014).  Accordingly, the Court takes judicial notice of the existence of Exhibit C.

CREXi requests that the Court judicial notice of Exhibits B, D, and E, "the contents of publicly available websites."  (Request at 4.)  Courts may take judicial notice of publicly available webpages as they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (stating that "[s]everal district courts have found judicial notice proper over publicly available websites" and collecting cases); *Craigslist, Inc. v. DealerCMO, Inc.*, 2017 WL 6334142, at *3 n.3 (N.D. Cal. Apr. 11, 2017) (taking judicial notice of "the appearance of the webpages located at the URLs referenced in the requests").  Accordingly, the Court takes judicial notice of Exhibits B, D, and E.

**B.    Motion to Disqualify**

**1. Quinn's Conduct**

CoStar moves the Court to disqualify Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") from representing CREXi in the instant action arguing Quinn has breached its duty of loyalty to CoStar, whom Quinn represents in federal court in California, in an un-related matter, *Kutagula v. CoStar Group, Inc. et al.*, No. 5:25-cv-05383 (N.D. Cal.). (Mot. at 1.)  In *Kutagula*, Quinn entered an appearance as counsel for CoStar Group, Inc. on August 15, 2025. (*Id.* at 3.)  Four months later, Quinn was substituted as CREXi's counsel in the instant action on December 29, 2025. (*Id.* at 2; *see* Dkt. No. 1269.)  CoStar argues that Quinn owes

CoStar, its client, an undivided duty of loyalty and should be disqualified from representing Defendant, as it creates a "concurrent conflict given the firm's representation of CoStar in *Kutagula*." (Mot. at 1, 5.)

"When evaluating whether a law firm may concurrently represent two clients, even on unrelated matters, it is presumed that the duty of loyalty has been breached and counsel is automatically disqualified, unless full reasonable disclosure is made and both clients knowingly agree in writing to waive the conflict." *Western Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1082 (C.D. Cal. 2015) (internal citations omitted). Here, CoStar contends that Quinn failed to obtain CoStar's consent or ask CoStar to waive the concurrent conflict prior to assuming the role of counsel for CREXi in the instant action. (Mot. at 5; Opp. at 6; Handon Decl. Ex. B at 1.) CoStar also states that Quinn "apologized that its conflict-check system had not yet picked up on the firm's representation of CoStar, noted that it typically would have discussed any adverse representation in advance of undertaking it, and did not again contact CoStar as counsel for the adversary." (*Id.*) CoStar has requested Quinn withdraw from representing CREXi or explain why Quinn believed it did not have a conflict with CoStar. (Mot. at 7.)

Defendant CREXi contends there is no prejudice to CoStar by allowing Quinn to remain as its counsel because "there is no overlap between the Quinn Emanuel lawyers working on *Kutagula* and this case, zero similarity between the facts, claims, witnesses, and timelines of the two cases, and an ethical wall that Quinn Emanuel promptly erected." (Opp. at 1, 6; Decl. of Harry Olivar ¶¶ 4–5, 7.) CREXi relies on an engagement letter entered into between Matterport, Inc.[1]

---

[1] On April 21, 2024, CoStar Group Inc. and Matterport Inc., a then-publicly traded company with no corporate affiliation to CoStar, executed an Agreement and Plan of Merger and Reorganization. (Opp. at 3) (citing Lifrak Decl. Ex. A.) The Engagement Letter was entered into on July 30, 2024 and on February 28, 2025, CoStar completed the merger of Matterport, Inc., whereby Matterport became a

and Quinn which includes the following language which CREXi alleges is a "clear and explicit waiver of future conflicts":

> We are undertaking this Engagement on condition that Matterport gives its express consent and agreement that we may represent other clients, including the parties adverse to you in this matter, in the future in other matters in which we do not represent Matterport even if the interests of the other clients are adverse to Matterport (including the appearance on behalf of another client adverse to Matterport in an unrelated negotiation, litigation or arbitration), provided that the other matter is not substantially related to our representation of Matterport....

(Dkt. No. 1272-2 Handon Decl., Ex. A at 1.)

CREXi argues that because CoStar's acquisition of Matterport occurred prior to entering the engagement letter, CoStar is now subject to the terms of the engagement letter, constituting informed written consent to the conflict. (Opp. at 3–4.) However, CoStar submits evidence that "Quinn then acknowledged there was no agreement between the parties that the Matterport letter applied to CoStar" and then "demanded that unless CoStar agreed to grant a retroactive waiver, Quinn would 'need to withdraw or be substituted out as counsel for CoStar' in *Kutagula*." (Mot. at 7–8) (citing Ex. C at 2.) Courts in other districts have declined to enforce advance waivers against affiliates on the basis that the affiliate did not provide informed consent. *See, e.g.*, *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F.Supp. 3d 1100, 1119 (E.D. Cal. 2015); *24-7 Bright Star Healthcare, LLC v. Res-Care, Inc.*, 2022 WL1432439, at *5–6 (N.D. Ill. Mar. 24, 2022); *GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 212-14 (2d Cir. 2010); *Avocent Redmond Corp. v. Rose Elecs.*,491 F. Supp. 2d 1000, 1004 n.3, 1007 (W.D. Wash. 2007). Further, courts in the Ninth Circuit have disqualified law firms in concurrent representation cases despite the presence of an ethics wall.

---

wholly owned subsidiary of CoStar. (Mot. at 3 n.1; Opp. at 4.)

*See Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 822 (N.D. Cal. 2004) (disqualifying firm and holding that ethical wall cannot cure conflict "arising from concurrent adverse client relationships"); *Lennar*, 105 F. Supp. 3d at 1114 (same); *Elliott v. Elliott*, 2021 WL 5360091, at *3 (E.D. Cal. Nov. 17, 2021) (same).

Because CoStar did not provide informed consent of Quinn's concurrent representation, the Court finds that the duty of loyalty has been breached and Quinn is disqualified from representing CREXi in the instant action. *See, e.g., People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1147 (1999) ("[I]f an attorney—or more likely a law firm—simultaneously represents clients who have conflicting interests, a more stringent per se rule of disqualification applies . . . regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other."); *see also* Cal. R. Prof. Cond. 1.7(a); *id.* at 1.10(a).

## IV.   CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motion to Disqualify Quinn Emanuel.

**IT IS SO ORDERED.**

DATED: July 13, 2026.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE